**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SINGULAR COMPUTING LLC, | Civil Action No. 1:19-cv-12551 FDS |
| Plaintiff, | |
| v. | Hon. F. Dennis Saylor IV |
| GOOGLE LLC, | |
| Defendant. | |

**[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1.      **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

2.      **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

3.      **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

b)      The parties have discussed the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

c)      The parties will agree to 11 custodians per party for whom ESI will be preserved;

a)      The Parties need only preserve ESI created or received between January 2008 and December 20, 2019;

d)      These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

  1. backup systems and/or tapes used for disaster recovery; and

  2. systems no longer in use that cannot be accessed.

e)      Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

1

1. voicemail messages

2. information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

3. instant messaging;

4. automatically saved versions of documents and emails;

5. video and audio recordings;

6. deleted, slack, fragmented, or other data accessible only by forensics;

7. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

8. on-line access data such as temporary internet files, history, cache, cookies, and the like;

9. dynamic fields of databases or log files that are not retained in the usual course of business; and

10. data in metadata fields that are frequently updated automatically, such as last opened dates.

**4.    SEARCH**

a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

b) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software

Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary files, Dynamic Link Library, Event Log Files, Executables Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. Source code files will be provided according to the Protective Order and not included in custodial data productions.

      c)      Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA`-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

      d.  **Source Code.** No provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

**5.     PRODUCTION FORMATS**

      The parties agree to produce documents in the formats described in Appendix 1 to this

3

Order. If particular document warrants a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

**6.     DOCUMENTS PROTECTED FROM DISCOVERY**

a)    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney work product shall be returned immediately if such information appears on its face to have been inadvertently produced or if requested.

b)    Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

c)    Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

d)    Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supercede the previous Stipulated Order.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:  July 30, 2020                              By: */s/ Gregory F. Corbett*
                                                    Gregory F. Corbett (BBO #646394)
                                                    gregory.corbett@wolfgreenfield.com
                                                    Nathan R. Speed (BBO # 670249)
                                                    nathan.speed@wolfgreenfield.com
                                                    Elizabeth A. DiMarco (BBO #681921)
                                                      elizabeth.dimarco@wolfgreenfield.com
                                                    WOLF, GREENFIELD & SACKS, P.C.
                                                    600 Atlantic Avenue
                                                    Boston, MA 02210
                                                    Telephone: (617) 646-8000
                                                    Fax: (617) 646-8646

                                                    Asim Bhansali (*pro hac vice*)
                                                    abhansali@kblfirm.com
                                                    Michael Kwun (*pro hac vice*)
                                                    mkwun@kblfirm.com
                                                    KWUN BHANSALI LAZARUS LLP
                                                    555 Montgomery Street, Suite 750
                                                    San Francisco, CA 94111

                                                    Robert A. Van Nest (*pro hac vice*)
                                                    rvannest@keker.com
                                                    Matthias Kamber (*pro hac vice*)
                                                    mkamber@keker.com
                                                    Michelle Ybarra (*pro hac vice*)
                                                    mybarra@keker.com
                                                    KEKER, VAN NEST & PETERS LLP
                                                    633 Battery Street
                                                    San Francisco, CA 94111-1809

                                                    *Attorneys for Defendant Google LLC*

Dated:  July 30, 2020                      By: */s/ Daniel McGonagle*
                                           Paul J. Hayes (BBO #227000)
                                           Matthew D. Vella (BBO #660171)
                                           Kevin Gannon (BBO #640931)
                                           Daniel McGonagle (BBO #690084)
                                           Alex Breger (BBO #685537)
                                           PRINCE LOBEL TYE LLP
                                           One International Place, Suite 3700
                                           Boston, MA 02110
                                           Tel: (617) 456-8000
                                           Email: phayes@princelobel.com
                                           Email: mvella@princelobel.com
                                           Email: kgannon@princelobel.com
                                           Email: dmcgonagle@princelobel.com
                                           Email: abreger@princelobel.com

                                           *Attorneys for Plaintiff*


**IT IS ORDERED** that the foregoing Agreement is approved.


Dated:  8/4/2020                           */s/ F. Dennis Saylor IV*

                                           Chief Judge, United States District Court

# APPENDIX 1
# PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
    - Delimiter = ¶ (ASCII:020)
    - Text-Qualifier = þ (ASCII:254)
    - New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |

7

| Field Name | Field Description |
|---|---|
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

8

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **NATIVE FILE PRODUCTIONS.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.