## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC, | Civil Action No. 1:19-cv-12551-FDS |
| Plaintiff, | |
| v. | Hon. F. Dennis Saylor IV |
| GOOGLE LLC, | |
| Defendant. | |

## PLAINTIFF SINGULAR COMPUTING LLC'S
## PRELIMINARY CLAIM CONSTRUCTION BRIEF

Paul J. Hayes (BBO #227000)
Matthew D. Vella (BBO #660171)
Kevin Gannon (BBO #640931)
Daniel McGonagle (BBO #690084)
Brian M. Seeve (BBO #670455)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Fax: (617) 456-8100
Email: phayes@princelobel.com
Email: mvella@princelobel.com
Email: kgannon@princelobel.com
Email: dmcgonagle@princelobel.com
Email: bseeve@princelobel.com

ATTORNEYS FOR THE PLAINTIFF

3619336.v1

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    CLAIM TERMS FOR WHICH THE PARTIES REQUEST CONSTRUCTION ............... 1

III.   LEGAL STANDARDS ................................................................................................... 2

       A.    The Claims ........................................................................................................ 3

       B.    The Specification .............................................................................................. 3

       C.    The Prosecution History .................................................................................... 4

       D.    Extrinsic Evidence ............................................................................................ 4

       E.    Indefiniteness .................................................................................................... 4

IV.    THE DISPUTED CLAIM TERMS ................................................................................ 5

       A.    "Execution Unit" .............................................................................................. 5

             1.    Singular's Proposed Construction is Supported by the Intrinsic Record ............... 6

             2.    Singular's Proposed Construction is Supported by Extrinsic Evidence ................ 8

       B.    "Low Precision High Dynamic Range Execution Unit" ................................... 9

       C.    "A First Input Signal Representing a First Numerical Value" ........................ 12

       D.    "Repeated Execution" ..................................................................................... 14

V.     CONCLUSION ............................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*,
 329 F. Supp. 3d 1, No. 16-10914-FDS, 2018 WL 4292285 (D. Mass. Sept. 7, 2018) ............... 2

*BASF Corp. v. Johnson Matthey Inc.*,
 875 F.3d 1360 (Fed. Cir. 2017) ................................................................................................ 4, 5

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,
 338 F.3d 1368 (Fed. Cir. 2003) .................................................................................................. 15

*Britax Child Safety, Inc. v. Nuna Int'l B.V.*,
 No. 17-cv-2724, 2019 WL 7161687 (E.D. Pa. 2019) ................................................................ 16

*Cox Communications, Inc. v. Sprint Communication Co. LP*,
 838 F.3d 1224 (Fed. Cir. 2016) .................................................................................................. 15

*CSB-Sys. Int'l Inc. v. SAP Am., Inc.*,
 No. CIV.A. 10-2156, 2011 WL 3240838 (E.D. Pa. July 28, 2011) ........................................... 16

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
 809 F.3d 1223 (Fed. Cir. 2015) .................................................................................................. 15

*Elbex Video, Ltd. v. Sensormatic Elec. Corp.*,
 508 F.3d 1366 (Fed. Cir. 2007) .................................................................................................... 4

*Exxon Research & Eng'g Co. v. United States*,
 265 F.3d 1371 (Fed. Cir. 2001) .................................................................................................... 5

*Housey Pharm., Inc. v. Astrazeneca UK Ltd.*,
 366 F.3d 1348 (Fed. Cir. 2004) .................................................................................................... 9

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
 802 F.2d 1367 (Fed. Cir. 1986) .................................................................................................... 4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
 381 F.3d 1111 (Fed. Cir. 2004) .................................................................................................... 3

*Intel Corp. v. VIA Techs., Inc.*,
 319 F.3d 1357 (Fed. Cir. 2003) .................................................................................................. 15

*Int'l Dev. LLC v. Richmond*,
 No. CIV.A. 09-2495, 2010 WL 4703779 (D.N.J. Nov. 12, 2010) ............................................ 16

*Junker v. Med. Components, Inc.*,
 No. CV 13-4606, 2017 WL 4922291 (E.D. Pa. Oct. 31, 2017) ................................................ 16

*K-2 Corp. v. Saloman S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)..........................................................................................10, 14

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    347 F.3d 1367 (Fed. Cir. 2003)..................................................................................................3

*Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GmbH*,
    No. 6:16-CV-00445-RWS, 2018 WL 4289342 (E.D. Tex. 2018)...........................................16

*Nautilus, Inc. v. Biosig Instrs., Inc.*,
    572 U.S. 898 (2014)....................................................................................................................5

*Nevro Corp. v. Boston Scientific Corp.*,
    955 F.3d 35 (Fed. Cir. 2020).......................................................................................................5

*Ossur SF Össur Ams., Inc. v. iWalk, Inc.*,
    No. 12-11061-FDS, 2013 WL 4046709 (D. Mass. Aug. 8, 2013).............................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..........................................................................................passim

*Resonate Inc. v. Alteon Websystems, Inc.*,
    338 F.3d 1360 (Fed. Cir. 2003).................................................................................................14

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005)...................................................................................................4

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
    270 F. Supp. 3d 390 (D. Mass. 2018).........................................................................................3

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017).................................................................................................15

*St. Jude Med., Inc. v. Access Closure, Inc.*,
    729 F.3d 1369 (Fed. Cir. 2013)...................................................................................................5

*Thorner v. Sony Comuter Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)............................................................................................2, 14

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996).....................................................................................................2

Plaintiff, Singular Computing LLC ("Singular"), respectfully submits this Preliminary Claim Construction Brief.

## I.     INTRODUCTION

Singular alleges that defendant, Google LLC ("Google"), infringes four claims of three Singular patents:

Claim 53 of U.S. Patent No. 8,407,273 ("the '273 Patent); *see* Declaration of Kevin Gannon ("Gannon Dec."), Exhibit A;

Claim 7 of U.S. Patent No. 9,218,156 ("the '156 Patent"); Gannon Dec., Exhibit B; and

Claims 4, 13 of U.S. Patent No. 10,416,961 ("the '961 Patent"); Gannon Dec., Exhibit C.

The Court has familiarity with the patented technology, via the Court's Memorandum and Order on Defendant's Motion to Dismiss. *See* Dkt. No. 51. As the Court noted therein, the three patents-in-suit are all related and share a common specification. *Id.* at 3.

Singular requests the Court to construe one term ("execution unit") according to a definition of that term provided in the specification.

Google, by contrast, asks the Court to rewrite the claims, by construing terms already explicitly defined within the claims themselves, by conflating several distinct claim terms, and by simply adding elements to the claim without justification.

Google also argues that a term is indefinite, based, of all things, on a construction of that term proposed *by Google itself*. Setting aside Google's audacity, its indefiniteness argument is premature at law because it is necessarily based on disputed facts.

Singular requests that the Court adopt Singular's sole proposed construction and reject Google's proposed constructions and invalidity positions.

## II.    CLAIM TERMS FOR WHICH THE PARTIES REQUEST CONSTRUCTION

Singular requests the Court to construe the following term:

| Term | Asserted Claims |
|------|-----------------|
| "execution unit" | All |

Google requests the Court to construe the following terms:

| Term | Asserted Claims |
|------|-----------------|
| "Low precision high dynamic range execution unit" | All |
| "A first input signal representing a first numerical value" | All |
| "Repeated execution" | All |

## III.   LEGAL STANDARDS

The Federal Circuit has "frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). There are only two exceptions to this general rule: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution. *Thorner v. Sony Comuter Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *see also Abiomed, Inc. v. Maquet Cardiovascular LLC*, 329 F. Supp. 3d 1, No. 16-10914-FDS, 2018 WL 4292285, at *52 (D. Mass. Sept. 7, 2018) (a compelling reason must exist for departing from the plain and ordinary meaning of a claim term).

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to one of ordinary skill in the art at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. Moreover, the scope of the claims is not limited by the specification or the disclosed

embodiments. *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 270 F. Supp. 3d 390, 398 (D. Mass. 2018).  In construing claims, courts examine "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

### A.  The Claims

Because the claims of a patent "define the invention to which the patentee is entitled the right to exclude," courts typically start the claim construction analysis with the claims themselves. *Phillips*, 415 F.3d at 1312 (quoting *Innova*, 381 F.3d at 1115).  As the Federal Circuit described in *Phillips*, often times "the use of a term within the claim provides a firm basis for construing the term." 415 F.3d at 1314.  "In some cases, the ordinary meaning of the claim language…may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.*

### B.  The Specification

Next to the claim themselves, the specification is the most important type of intrinsic evidence to be considered in order to ensure that the claims are consistently interpreted. *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003).  The specification is "the single best guide to the meaning of a disputed term" and "usually is dispositive." *Phillips*, 415 F.3d at 1313.

### C. The Prosecution History

The prosecution history is less useful in construing the claims because it "lacks the clarity of the specification" but should be considered to provide evidence of how the PTO and the inventor understood the patent. *Phillips*, 415 F.3d at 1317.  The prosecution history can only narrow claim scope in limited situations: "[f]or a prosecution statement to prevail over the plain language of the claim, the statement must be clear and unmistakable such that the public should be entitled to rely on any 'definitive statements made during prosecution.'" *Elbex Video, Ltd. v. Sensormatic Elec. Corp.*, 508 F.3d 1366, 1373 (Fed. Cir. 2007).  Ambiguous disclaimers do not aid the public notice function of a patent, and therefore, cannot be used to limit a claim term's ordinary meaning. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005).

### D. Extrinsic Evidence

Evidence such as expert and inventor testimony, dictionaries and treatises, can be used as long as they do not contradict the intrinsic evidence. *Phillips*, 415 F.3d at 1322-23.  Because such sources are extrinsic to the patent and prosecution history, however, extrinsic evidence is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id*. at 1319.  Courts may consider, or reject, such evidence at their discretion. *Id*.

### E. Indefiniteness

Pursuant to 35 U.S.C. § 282, an issued patent is presumed to be valid.  Thus, an accused infringer has the burden of proving invalidity by clear and convincing evidence. *See*, *e.g.*, *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *see also BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).  That burden never

shifts to the patentee. *St. Jude Med., Inc. v. Access Closure, Inc.*, 729 F.3d 1369, 1382 (Fed. Cir. 2013); *see also Hybritech*, 802 F.2d at 1375.

Under 35 U.S.C. § 112, the claims of a patent must particularly point out and claim the subject matter regarded as the invention. When viewed in light of the specification and prosecution history, claims should "inform those of ordinary skill in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instrs., Inc.*, 572 U.S. 898, 910 (2014). Importantly, this standard "recogniz[es] that absolute precision is unattainable." *Id.* Thus, reasonable certainty does not require "mathematical precision." *BASF*, 875 F.3d at 1365. Contrary to the belief of many accused infringers, "[d]efiniteness does not require that a potential infringer be able to determine *ex ante* if a particular act infringes the claims." *Nevro Corp. v. Boston Scientific Corp.*, 955 F.3d 35, 40 (Fed. Cir. 2020). A claim is not indefinite as long as its meaning is "discernible, even though the task [of claim construction] may be formidable and the conclusion may be one over which reasonable persons will disagree." *Ossur SF Össur Ams., Inc. v. iWalk, Inc.*, No. 12-11061-FDS, 2013 WL 4046709, at *7 (D. Mass. Aug. 8, 2013) (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).

## IV.    THE DISPUTED CLAIM TERMS

### A.   "Execution Unit"

| Claim Term | Singular's Proposed Construction | Google's Proposed Construction |
|---|---|---|
| "execution unit" | "processing element comprising an arithmetic circuit paired with a memory circuit" | — |

Singular asks that the term "execution unit," recited in all of the asserted claims, be construed to mean "processing element comprising an arithmetic circuit paired with a memory circuit." As explained below, this construction finds support in the intrinsic record, and is

consistent with the understanding of a person of ordinary skill in the art as to the meaning of the term "execution unit."

> 1.  Singular's Proposed Construction is Supported by the Intrinsic Record

Singular's proposed construction of "execution unit" is supported by the specification of the patents-in-suit.[1]

First, the specification unambiguously equates "execution units" with "processing elements."  In particular, it explains that "references herein to *'processing elements'* within embodiments of the present invention *should be understood more generally as any kind of execution unit*, whether for performing LPHDR operations or otherwise." '273 patent at 8:9-11 (emphasis added).  A person of ordinary skill in the art would thus understand that the specification's descriptions and drawings showing "processing elements" apply to the "execution units" recited in the claims.

Second, the specification states that a "processing element" comprises an arithmetic circuit paired with a memory circuit.  "[F]or purposes of discussion below," the specification explains, "we call each unit, which *pairs memory with arithmetic*, a *Processing Element* or 'PE'." '273 patent at 16:54-56 (emphasis added).  One of ordinary skill in the relevant art would understand from this passage that a "processing element" pairs memory with arithmetic circuitry.

Singular's proposed construction of "execution unit" thus follows directly from the language of the specification.

Further, while the passages above do not explicitly use the term "circuit," it is indisputable that a person of ordinary skill in the art would have understood that the processing

---

[1] As noted above, the three patents-in-suit share identical specifications. For the sake of clarity and readability this brief cites the '273 patent (Gannon Dec., Exh. A), though every figure and passage from the intrinsic record cited herein is present in all three of the patents-in-suit.

elements described in the drawings and specification comprise circuits, among which are "arithmetic" and "memory" circuits.  This is shown, for example, in Figure 4 of the specification and its accompanying description:



**'273 Patent, Fig. 4 (Annotated)**

Figure 4 (reproduced above with colored annotations) shows an exemplary "processing element 400."  A person of ordinary skill in the art would recognize that Figure 4 depicts the layout of a device that comprises circuits.  Indeed, the specification explains that processing elements like the one shown in Fig. 4 can be, "*e.g.*, tiled on a *circuit* board." '273 patent at 10:30-31 (emphasis added).

Figure 4 shows that the exemplary execution unit ("processing element") comprises memory circuits and arithmetic circuits 408 (highlighted in red and blue, respectively).  As the specification explains, "the [Processing Element] 400 stores local data" using memory—in particular, using the "Constants" circuit (for "rarely changing values") and the "Registers" circuit (for "frequently changing values"), both highlighted in red above. '273 patent at 10:36-42.  The specification also explains that the execution unit performs arithmetic operations using an

arithmetic circuit, specifically the "LPHDR arithmetic unit 408," highlighted in blue above. *See* '273 patent at 10:58-67.

       2.   <u>Singular's Proposed Construction is Supported by Extrinsic Evidence</u>

Singular's proposed construction of "execution unit" is not inconsistent with the meaning of this term in textbooks and other reference works that would have been known to a person of ordinary skill in the art, including David Patterson's seminal treatise on computer architecture (whose author works at Google as a "Distinguished Engineer"):

> 1. Following the theme that two-dimensional is better than one-dimensional, Pixel Visual Core uses a two-dimensional SIMD architecture instead of one-dimensional SIMD architecture. Thus it has a two-dimensional array of independent *processing elements* (*PEs*), each of which contains 2 16-bit ALUs, 1 16-bit MAC unit, 10 16-bit registers, and 10 1-bit predicate registers. The 16-bit arithmetic follows the guideline of providing only the precision needed by the domain.

*See* Gannon Dec., Exh. D (Hennessy and Patterson, *Computer Architecture*), p. 584. The excerpt above describes "processing elements" as having memory registers and ALUs (or "**Arithmetic** Logic Units"), which is consistent with the definition of "processing element" (and thus of "execution unit") provided in the specification of the patents-in-suit.

Therefore, a person of ordinary skill in the art would understand, based on both intrinsic and extrinsic evidence, that the claimed "execution unit" is a "processing element comprising an arithmetic circuit paired with a memory circuit." This construction is dictated by the clear language and figures of the specification of the patents-in-suit, and consistent with the meaning of this term as it is used in contemporary textbooks and other reference materials.

### B.   "Low Precision High Dynamic Range Execution Unit"

| Claim Term | Singular's Proposed Construction | Google's Proposed Construction |
|---|---|---|
| "low precision high dynamic range execution unit" | *see* "execution unit" above | "Low precision and high dynamic range processing element designed to perform arithmetic operations on numerical values" |

For the following reasons, Google's proposed construction should be rejected.

First, Google's proposal attempts to construe the phrases "low precision" and "high dynamic range," both of which are clearly defined in the asserted claims.  It is a bedrock principle of claim construction that "[c]laim construction begins with the language of the claims." *Housey Pharm., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1351-52 (Fed. Cir. 2004). Google's proposal seeks to violate this principle by brushing aside the claim language that is already present in the asserted claims.

In particular, claim 53 of the '273 patent specifies "low precision" as follows:

> … for at least $\underline{X=5\%}$ of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least $\underline{Y=0.05\%}$ from the result of an exact mathematical calculation of the first operation on the numerical values of that same input; …

'273 patent, claim 53 (emphasis added); *see also* '156 patent, claim 7; *see also* '961 patent, claims 4, 13.  The foregoing claim language defines the term "low precision," not just precisely, but with *mathematical* precision.  Specifically, using the percentages "X=5%" and "Y=0.05%," the claim itself specifies the degree of precision that an LPHDR execution unit must have in order to satisfy the "low precision" ("LP") limitation of the claim.

Similarly, claim 53 of the '273 patent specifies "high dynamic range" as follows:

9

> … wherein the **dynamic range** of the possible valid inputs to the first operation is at least as wide as from **1/1,000,000** through **1,000,000** …

'273 patent, claim 53 (emphasis added); *see also* '156 patent, claim 7; *see also* '961 patent, claims 4, 13.  This language defines "high dynamic range" ("HDR"), again not just precisely, but with *mathematical* precision. Specifically, using the values 1/1,000,000 and 1,000,000, the claim itself specifies the degree of dynamic range that an LPHDR execution unit must have in order to satisfy the "high dynamic range" limitation of the claim.

Google's proposed construction of the terms "low precision" and "high dynamic range," seeks to brush aside definitions of these terms that are *already present in the claims themselves* and thus should be rejected.

Google's proposed construction of the term "execution unit" as a "processing element designed to perform arithmetic operations on numerical values," should also be rejected. Google's proposed construction, as explained below, impermissibly rewrites and imports extraneous limitations into the claims. *See*, *e.g.*, *K-2 Corp. v. Saloman S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead we give effect to the terms chosen by the patentee"); *Phillips*, 415 F.3d at 1319-20 (reiterating that "one of the cardinal sins of patent law [is] reading a limitation from the written specification into the claims.")

The asserted claims recite an "execution unit" that performs operations on *"input signals"* that *represent* "numerical values":

> A device comprising: at least one first low precision high-dynamic range (LPHDR) *execution unit adapted to execute a first operation on a* *first input signal **representing** a first numerical value* to produce a first output signal representing a second numerical value …

'273 patent, claim 53 (emphasis added); *see also* '156 patent, claim 7; '961 patent, claims 4, 13. The above claim language clearly distinguishes the "input signals" on which the claimed execution unit operates from the "numerical values" that these input signals *represent,* by specifying that the execution unit is adapted to execute an operation on an input signal which represents a numerical value.

However, Google's proposed construction would obfuscate and contradict the plain language of the claims, as demonstrated when one compares the claims as written to the claims as they would appear if Google's proposal were adopted:

| Claim as Written | Claim with Google's Attempted Revisions |
|---|---|
| A device comprising: at least one first low precision high-dynamic range (LPHDR) **execution unit** adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value … | A device comprising: at least one first low precision high-dynamic range (LPHDR) **processing element designed to perform arithmetic operations on numerical values** adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value … |

It is clear from this table that Google's proposed construction would rewrite the claim so that the execution unit operates directly on "numerical values," rather than on "input signals" as claimed. For the reasons explained above, Google's construction contradicts the plain language of the asserted claims as written, and thus must be rejected.

But Google's construction goes further, introducing additional ambiguity into the asserted claims and needlessly raising issues that would confuse a person skilled in the art (not to mention a juror).  In particular, Google's proposed construction introduces the term "arithmetic operation" into the claim, without explaining whether or how this "arithmetic operation" differs from the "first operation" that appears a few words later.  It appears that Google's construction would limit the scope of the claim to an *arithmetic* operation, while the claim as written contains

no such limitation.  Importing such a limitation would run contrary to the law of claim construction summarized above.

Google's proposed construction would further contradict the clear text of the specification of the patents-in-suit.  The specification explains, for example, in referring to the "processing element" (and by extension, the "execution unit") of Figure 4, that "[t]he input, output, and intermediate 'values' received by, output by, and operated on by the PE 400 may, for example, take the form of *electrical signals representing numerical values*." '273 patent at 10:64-67 (emphasis added); *see also id.* at 12:54-55.  Thus, in the specification as in the claims, the recited "execution unit" operates on "signals" that *represent* numerical values.  Google's construction would change the claim language and have the execution unit operate directly on the values instead, expressly contradicting not only the language of the claims but also the specification.

Accordingly, for the reasons explained above, Google's proposed construction of "execution unit" should be rejected.

### C.   "A First Input Signal Representing a First Numerical Value"

| Claim Term | Singular's Proposed Construction | Google's Proposed Construction |
|---|---|---|
| "a first input signal representing a first numerical value" | plain and ordinary meaning | "Digital and/or analog representation of a value that the LPHDR processing element operates on" |

Google has proposed that "a first input signal representing a first numerical value" be construed as a "digital and/or analog representation of a value that the LPHDR processing element operates on."  As with its proposed construction of "execution unit" above, Google's proposed construction for this term contradicts the plain language of the claims.  Accordingly, Google's proposed construction should be rejected.

The asserted claims recite an execution unit that performs operations on "input signals" that *represent* "numerical values." *See* '273 patent, claim 53; *see also* '156 patent, claim 7; *see also* '961 patent, claims 4, 13.  The fact that the claimed execution unit operates on "input signals" is made explicitly clear not only in the language of the claims themselves, but also in the specification of the patents-in-suit, which explains that the claimed execution unit operates on "*electrical signals representing numerical values*." '273 patent at 10:64-67 (emphasis added); *see also id.* at 12:54-55.

Once again, Google's proposed construction impermissibly attempts to rewrite the asserted claims so the claimed execution unit operates directly on numerical values, and not on "input signals" that *represent* numerical values.  This is demonstrated when one compares the claim as written to the claim as it would appear if Google were to successfully construe *both* "execution unit" and "a first input signal representing a first numerical value" as it requests:

| Claim as Written | Claim with Google's Attempted Revisions |
|---|---|
| A device comprising: at least one first low precision high-dynamic range (LPHDR) **execution unit** adapted to **execute a first operation *on a first input signal representing a first numerical value*** to produce a first output signal representing a second numerical value … | A device comprising: at least one first low precision high-dynamic range (LPHDR) **processing element designed to perform arithmetic operations on numerical values** adapted to **execute a first operation *on a digital and/or analog representation of a value that the LPHDR processing element operates on*** to produce a first output signal representing a second numerical value … |

In particular, Google seeks to insert the phrase "a value that the LPHDR processing element operates on" into the claim.  As set forth above, this is improper. *See*, *e.g.*, *Phillips*, 415 F.3d at 1319-20 ("one of the cardinal sins of patent law [is] reading a limitation from the written specification into the claims.").  The asserted claims make it clear that the claimed "LPHDR execution unit" operates on "a first input signal *representing* a first numerical value."  Google's proposed construction of "a first input signal representing a first numerical value"—just like its

13

proposed construction of "execution unit," discussed above—improperly attempts to rewrite the claim so the recited LPHDR execution unit operates on numerical values instead.  This Google cannot do. *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1365 (Fed. Cir. 2003) ("Courts may not rewrite claim language based on what has been omitted from a claim, and the district court's attempt to do so here was clear error"); *see also K-2 v. Saloman*, 191 F.3d at 1364 ("Courts do not rewrite claims; instead we give effect to the terms chosen by the patentee").

Google's attempted revisions to the asserted claims also seek to import language that appears in the specification—for example, the term "analog"—directly into the claim.  As explained above, importing limitations from the specification into the claims is only permitted in cases of lexicography or disavowal, neither of which applies to the importation of the term "analog" into the claims at issue. *See Thorner v. Sony*, 669 F.3d at 1365-66.

It is also notable that along with its positions on claim construction, Google has raised an indefiniteness argument (discussed in the following section) *that is based entirely on its own importation of the word "analog" into the claims*.  It is settled law that "claims should be construed to preserve their validity." *Phillips*, 415 F.3d at 1327.  Google's brazen attempt to import language into the claim from the specification and, thereafter, argue that the very language it imported renders the claim invalid represents a clear violation of this principle.

### D.   "Repeated Execution"

| Claim Term | Singular's Proposed Construction | Google's Proposed Construction |
|---|---|---|
| "repeated execution" | plain and ordinary meaning | "Indefinite in light of analog and hybrid analog-digital embodiments" |

Google asks the court to invalidate all of the asserted claims based on its assertion that the words "repeated execution" are "indefinite in light of analog and hybrid analog-digital embodiments."

Google bears the burden of proof on the issue of indefiniteness, which here involves numerous factual issues and must be proven by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017); *see also Cox Communications, Inc. v. Sprint Communication Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) ("Any fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence" (*citing Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003)).

Google has offered no basis or rationale for its contention that the phrase "repeated execution" is indefinite, even though it bears the burden on this issue.[2]  No matter the underlying rationale Google has for this contention, its indefiniteness argument fails on its face as premature.  The term "repeated execution" is not an arcane term of art, nor is it ambiguous, Google's apparent intent to dispute this fact renders its indefiniteness argument premature, and thus it should not be taken up by the Court at this stage of the litigation.  The Federal Circuit has held that indefiniteness "is amenable to *resolution by the jury* where the issues are factual in nature." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) (emphasis added).  This principle holds true in particular when indefiniteness hinges on a "question about the state of the knowledge of a skilled artisan," which the Federal Circuit has explicitly identified as "a question of fact." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1225 (Fed. Cir. 2015).

---

[2] Singular will address Google's undisclosed rationale, if any, once Google sets forth such in its Preliminary Claim Construction Brief.

Following the standard handed down by the Federal Circuit, "district courts throughout the country have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase." *Junker v. Med. Components, Inc.*, No. CV 13-4606, 2017 WL 4922291, at *2 (E.D. Pa. Oct. 31, 2017); *see also Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GmbH*, No. 6:16-CV-00445-RWS, 2018 WL 4289342, at *7 (E.D. Tex. 2018) ("The Court recognizes that some indefiniteness questions may not be resolvable at the Markman proceedings and may be submitted to the jury when there are underlying factual disputes; others may not become apparent until after the Court issues its claim construction."); *CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, No. CIV.A. 10-2156, 2011 WL 3240838, at *17 (E.D. Pa. July 28, 2011); *Int'l Dev. LLC v. Richmond*, No. CIV.A. 09-2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12, 2010) ("[R]ather than giving meaning to a claim, as a Markman hearing is meant to do, indefiniteness invalidates the patent claims entirely … This dispositive effect is more appropriately tackled at summary judgment. Thus, this Court finds persuasive the determinations of several other courts to defer indefiniteness until summary judgment."); *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, No. 17-cv-2724, 2019 WL 7161687 (E.D. Pa. 2019).  Therefore, Google's indefiniteness argument should now be rejected as premature.

## V.    CONCLUSION

For the reasons set forth above, Singular asks the Court to adopt its proposed construction of "execution unit," and to reject Google's proposed constructions.

Dated: January 8, 2021                    Respectfully submitted,

                                          */s/ Paul J. Hayes*
                                          Paul J. Hayes (BBO #227000)
                                          Matthew D. Vella (BBO #660171)
                                          Kevin Gannon (BBO #640931)
                                          Daniel McGonagle (BBO #690084)
                                          Brian M. Seeve (BBO #670455)
                                          **PRINCE LOBEL TYE LLP**
                                          One International Place, Suite 3700
                                          Boston, MA 02110
                                          Tel: (617) 456-8000
                                          Fax: (617) 456-8100
                                          Email: phayes@princelobel.com
                                          Email: mvella@princelobel.com
                                          Email: kgannon@princelobel.com
                                          Email: dmcgonagle@princelobel.com
                                          Email: bseeve@princelobel.com

                                          ATTORNEYS FOR THE PLAINTIFF

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 8, 2021, I served this document on Defendant by causing a copy to be sent via electronic mail to its counsel of record.

                                          */s/ Paul J. Hayes*