**PUBLIC VERSION**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC, | Civil Action No. 1:19-cv-12551 FDS |
| Plaintiff, | |
| v. | Hon. F. Dennis Saylor IV |
| GOOGLE LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL

Defendant Google LLC ("Google") brings this motion to compel Singular to produce test code and related output files supporting its infringement contentions and responses to Google's Interrogatories Nos. 11 and 14.  First, Singular must produce the test code, output files, and related documents that it has relied upon to support its infringement contentions and the allegations in its complaint, which is required under the Court's Corrected Scheduling Order, ECF No. 70.  Second, rather than incorporating more than 200 documents and directing Google to sift through them, Singular must provide a narrative response to Google's Interrogatory No. 11, which requests a description of Singular's attempts to commercialize the Asserted Patents. Finally, Singular must respond to Interrogatory No. 14, which seeks Singular's contentions about the validity of the Asserted Patents.  Singular must provide this information in accordance with its discovery obligations and the Court's Scheduling Order.

## I.      BACKGROUND

Singular filed its First Amended Complaint ("FAC") on March 20, 2020, repeatedly citing to the "Singular test results," which purportedly provide the basis for Singular's allegation that Google's accused Tensor Processing Units (TPUs) meet the minimum error rates claimed in the Asserted Patents.  *See, e.g.*, FAC, ECF No. 37, ¶¶ 94, 111, 129.  The "Singular test" also serves as a foundation for the Infringement Contentions Singular served in September 2020. Despite Singular's reliance on its tests and the related outputs, Singular has resisted producing those outputs.  Since receiving Singular's Infringement Contentions, Google has repeatedly requested the test code, the test code's output, and related documents on which Singular relied in its infringement allegations, which Singular is required to produce under the Court's Scheduling Order.  That order requires the patentee to produce "all documents supporting its [infringement] contentions."  ECF. No. 70.  Google has also formally requested this information in its Request for Production (RFP) No. 68, which seeks:

> All documents relating to the "Singular test" referenced in . . . Singular's [FAC], including documents detailing how the tests were conducted, the parameters for the tests (including the assumptions made), the full results of the tests, and documents

1

explaining what constituted "a mathematically representative sample of all possible valid pairs of inputted float32 numerical values."

Declaration of Anna Porto in Support of Google's Motion to Compel Exhibit ("Ex.") 1 (Google's RFP Set 1).  In response, Singular agreed to "produce to Google all non-privileged documents responsive to the request."  Ex. 2 (Singular's Responses to RFP Set 1).  Despite its commitment to produce responsive documents and being required to do so under the Court's Scheduling Order, Singular has refused to produce the results of its testing and related documents.

Singular has similarly resisted responding to several of Google's interrogatories, including two at issue here: Nos. 11 and 14.  Google's Interrogatory No. 11 seeks information related to Singular's attempt to commercialize the Asserted Patents:

> For each of the Patents-in-Suit, describe in detail all facts related to any attempts to commercialize, including identifying: each commercialization attempt; each person, including third parties, who were involved in efforts to commercialize the alleged invention, including each person's role; any third parties to whom commercialization efforts were targeted; and all documents constituting, evidencing, or otherwise relating to any attempts to commercialize.

Ex. 3 (Google First Set of Interrogatories).  Singular initially responded to this interrogatory on August 26, 2020, indicating that Singular would "produce documents . . . on September 4, 2020," and "simultaneously supplement its response . . . to identify the responsive documents[.]"  Ex. 4 (Singular's Responses and Objections to Defendant's First Set of Interrogatories).  It failed to do so.  It also failed to meet subsequent agreed-upon deadlines for supplementation and production over the following three months, despite Google's repeated requests.  Finally, on December 9, 2020, Singular served its supplemental response, which merely "identifie[d] . . . by production number" more than 200 documents "pursuant to Fed. R. Civ. P. Rule 33(d)."  Ex. 5 (Singular's Supplemental Responses and Objections to Defendants' Interrogatories).  Google asked Singular to provide a narrative response.  Singular refused.

Finally, Google's Interrogatory No. 14 relates to Google's Responsive Contentions Regarding Non-Infringement and Invalidity, and particularly requests:

> Separately for each claim chart in Google's Responsive Contentions on Non-Infringement and Invalidity, served on November 6, 2020, identify what if any limitations of the Asserted Claims you contend are not in the related prior art reference and any reason(s) for that contention.

Ex. 6 (Google's Second Set of Interrogatories).  Singular did not respond, instead resting on several objections, including that Google's request is "premature because it seeks Singular's ultimate position on its contentions, given that discovery is still in its early stages."  Ex. 7. (Singular's Responses to Defendant's Second Set of Interrogatories).

Google and Singular held a discovery conference pursuant to Local Rule 37.1 on January 12, 2021.[1]  The parties failed to reach agreement on Singular's production of its test outputs and related information, as well as Singular's responses to Google's Interrogatories No. 11 and 14. As a result, Google now moves to compel on all three issues.

## II.    ARGUMENT

### A.    Singular should be compelled to produce the test code and output files cited in its Complaint and Infringement Contentions.

#### 1.    Singular bases the infringement allegations in its Complaint and its Infringement Contentions on "tests" it conducted but has refused to satisfy its obligation to produce the documents on which it relies.

In the FAC, Singular repeatedly cites "the Singular test," which it alleges shows that Google's accused TPUs satisfy the Asserted Patents' claimed minimum error rates.  The FAC alleges that Singular's test compared a "mathematically representative sample of all possible valid pairs of inputted float32 numerical values" to those values "produced by the exact full precision multiplication operations."  FAC ¶¶ 94, 111, and 129.  Based on this test, Singular asserts that it determined the relevant values "differ, for at least 5% of those multiplied pairs . . . by at least .05%," satisfying the claimed error rates.  *Id.* ¶¶ 94, 111; *see also id.* ¶ 129.  The FAC

---

[1] Matthias Kamber, Christopher Sun, Andrew Bruns, and Anna Porto participated on behalf of Google, and Brian Seeve, Michael Ercolini, and Kevin Gannon participated on behalf of Singular.  The conference began at 11:00am Pacific and lasted just under thirty minutes.

includes screenshots of the test's outputs, which Singular claims "illustrate[] . . . the Singular test results." *Id.* ¶¶ 94, 111, and 129.

|  |  | bf16 |
|---|---|---|
| % of valid > 1.00% |  | 4.65% |
| % of valid > 0.50% |  | 55.39% |
| % of valid > 0.20% |  | 92.69% |
| % of valid > 0.10% |  | 98.15% |
| % of valid > 0.05% |  | 99.52% |

In its infringement contentions, Singular again describes a "test" that purportedly demonstrates the accused TPUs satisfy the claimed error ranges, offering slightly more specific detail on the tests it relies on. In its claim chart on the '156 patent, for example, Singular alleges that it "has computed the result" of "each of the possible valid inputs to the multiplication operation performed by the multipliers within the MXU . . . and compared it to the result of an exact mathematical calculation." Ex. 8 at 9 ('156 Patent Infringement Contention Chart). "The results of this test," according to Singular, "showed that for **more than 10%** of the possible valid inputs, the numerical value represented by the output signal of each MXU multiplier differs by **more than 0.2%** from the result of an exact mathematical calculation[.]" *Id.* (emphasis in original). Singular relied on this test throughout its contentions to show that the Asserted Patents' claimed error rates were allegedly satisfied. *See e.g.*, Ex. 9 at 9 ('273 Patent Infringement Contention Chart); Ex. 10 at 19 ('961 Patent Infringement Contention Chart).

Google has repeatedly requested that Singular produce the results of the tests underlying its infringement theories and related documents. After Singular served its infringement contentions in September 2020, Google requested that Singular produce the results of the test referred to in Singular's contentions. As Google explained, Singular was required to produce the code and all related documents under the Court's Scheduling Order, which provides that the patentee must produce "all documents supporting its [infringement] contentions." *See* ECF 70 at 1(c). In response, Singular represented that the test results included "more than *206 billion* gigabytes of information," and suggested that rather than provide these results, Singular could

"provide to Google the program code used to generate these test results."  Ex. 11 (Sept. 16, 2020 letter from Seeve to Kamber) (emphasis in original).  In light of Singular's representation about the size of the data, Google agreed to accept production of the test code "as well as any compilations of statistics summarizing the test(s)."  Ex. 12 (Sept. 21, 2020 letter from Kamber to Seeve).  In accepting Singular's proposal, Google "reserve[d] the right to seek production of Singular's data following [its] review of the code."  *Id.*

Singular produced the test code on October 16, 2020.  Over the next several weeks, Google requested information about the code that would allow Google to try to replicate the test data, which Singular had not produced.  *See* Ex. 13 (Oct. 22, 2020 email from Kamber to Counsel).  Singular ultimately answered Google's questions, informing Google that the information it requested was in the testing code that Singular had already produced.  Ex. 14 (Nov. 18, 2020 email from Seeve to Kamber).

Following Google's review of Singular's test code, Google reiterated its request that Singular produce the output of the code, which Singular relied upon in its infringement contentions.[2]  *See* Ex. 15 (Dec. 11, 2020 letter from Kamber to Seeve).  Google reminded Singular that it had been obligated to produce all documents supporting its infringement allegations along with the infringement contentions it served months earlier.  *See id.*

In addition to the test code output, Google requested that Singular produce all documents relating to the "Singular test" referenced in Singular's FAC, which Singular had committed to producing in response to Google's RFPs.  *See* Ex. 15.  Google's RFP No. 68 requested "[a]ll documents relating to the 'Singular test' referenced in [the FAC], including documents detailing how the tests were conducted" and "the full results of the tests." Ex. 2.  Google explained that despite Singular's agreement to produce these documents in its discovery responses,[3] Singular

---

[2] Having the code itself does not allow Google to determine whether its outputs align with Singular's outputs; indeed, because the outputs could be different depending on factors including the program's parameters and configuration, as well as the hardware on which the code is run, it is important to be able to compare them.

[3] Singular's response to RFP No. 68 stated that it would produce "all non-privileged documents

had failed to produce "the test output(s) included in the First Amended Complaint or any other related documentation," including "documents related to the sampling process used by Singular." Ex. 15.  Furthermore, to the extent the "test code" referenced in Singular's FAC is different than the code it produced related to its infringement contentions, Google requested that Singular provide the code cited in the FAC.  *Id.*

Singular responded that it would not produce "further information relating to these tests," asserting for the first time that the test code and its outputs are "attorney work product," and that the documents Google requested did not "support[] Singular's infringement contentions," which were instead supported by Google's and its affiliates' documentation.  Ex. 17 (Dec. 22, 2020 letter from Seeve to Kamber).  During the parties' discussion of this issue on their January 12, 2021 meet-and-confer call, Singular refused to confirm whether the test cited in Singular's FAC was the same one referred to in its infringement contentions.  Google informed Singular that it would move to compel (1) the test output files supporting Singular's infringement contentions, and (2) the test code and outputs cited in Singular's FAC, along with related documents requested in RFP No. 68.

### 2.   Under the Court's scheduling order, Singular must produce the test output files supporting its infringement contentions.

Singular is required to produce the outputs of the tests it relies on in its infringement contentions under the Court's Scheduling Order.  That Order provides that "[i]f the patentee has not already done so," by September 4, 2020, the date on which Singular's infringement contentions were due, Singular "shall produce ***all*** documents supporting its contentions and/or identify any such supporting documents produced by [Google]."  ECF 70 at 1(c) (emphasis added).  By refusing to produce the test outputs, Singular has failed to comply with the Court's Order.  Based on Singular's representations about the size of the data underlying Singular's test, Google permitted Singular initially to produce its test code along with "any compilations of

---

responsive to the request."  *Id.*  In a subsequent meet and confer on various discovery requests, Google confirmed that Singular would not withhold documents unless it specifically so stated, notwithstanding Singular's stated objections.  *See* Ex. 16 (Oct. 2, 2020 Porto email to Gannon).

statistics summarizing the test(s)," while reserving the right to seek more extensive data following Google's review of the code. Ex. 12. But although Singular produced the test code itself, Singular refuses to produce the requested compilations summarizing that test or any "further information relating" to the test, notwithstanding that they are the output of the test code. Ex. 17.

To justify its refusal to produce its test outputs, Singular argues that the documents Google requests are not relevant to Singular's infringement allegations. *Id.* Instead, Singular argues, its "contentions are supported by copious documentary evidence, published by Google and its affiliates." *Id.* That argument is belied by the infringement contentions, in which Singular repeatedly describes a test it conducted to show that the claimed error rates are satisfied. Specifically, Singular asserts "[t]he results of [Singular's] test showed that for more than 10% of the possible valid inputs, the numerical value . . . differs by more than 0.2% from the result of an exact mathematical calculation." Ex. 8; *see also* Ex. 9 (same); Ex. 10 (same). Without reference to the results of its test, Singular has no basis for asserting that the Accused Products satisfy the claimed error range, rendering its contentions improper under the local rules. *See* Mass. Local Rule 16.6(d)(1)(A) (requiring patentee to identify "with as much specificity as reasonably possible . . . an element-by-element description of where and how each element of each asserted claim is found in each accused product or method"). Because Singular "relies on the testing data at issue as evidence to support its infringement claims, justice requires that [Google] has a right to the material in order to defend itself." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 1:CV-09-1685, 2010 WL 4537002, at *2 (M.D. Pa. Nov. 3, 2010).

The fact that Singular also cites Google documents in its contentions has no bearing on whether the test outputs support Singular's infringement allegations. Because Singular used its test to show its allegations to be true, that test "supports" Singular's assertions regardless of the additional evidence on which Singular relies. Ex. 17. In any event, Singular does not rely on its test along with "copious documentary evidence published by Google," as Singular suggests. *Id.* On the contrary, Singular's test is the *only* evidence Singular cites to show the claimed error

rates are satisfied.  The Google documents say nothing of error rates.  *See* Ex. 8; Ex. 9; Ex. 10.

And the color coding on which Singular relies to link the relevant limitation with its support

illustrates that the only support Singular has for its contention that the claimed error ranges are

met is the testing data.  *See e.g.*, Ex. 8 (displaying the error range in purple text and the results of

Singular's test, which showed that the output signals differ "by more than 0.2%," also in purple

text).  Because Singular's test results provide support for its infringement allegations, it must

produce them under the Court's Scheduling Order.

### 3. Singular must also produce documents related to the "Singular test" cited in its FAC in accordance with its discovery obligations.

In addition to producing the test output Singular relies on in its infringement contentions,

Singular must also produce "[a]ll documents relating to the 'Singular test' referenced in [the

FAC], including documents detailing how the tests were conducted," documents about

Singular's sampling process, and the test's "results," as requested in Google's RFP No. 68.  Ex.

2.  In its initial response to Google's request, Singular objected "to the extent it [sought]

documents protected by the attorney client privilege or the work-product doctrine," but

nonetheless agreed to produce "all non-privileged documents responsive to the request to the

extent [they] exist; are in Singular's possession, custody and control; can be located after a

reasonable search; and relate to the specific claims and defenses asserted in this action."  *Id.*

Singular also confirmed that it would not withhold responsive documents unless it specifically

stated otherwise.  *See* Ex. 16.  Because this information is central to Singular's infringement

allegations, Singular must produce it.[4]

Singular never objected that RFP No. 68 sought irrelevant information, as it now argues,

nor could it have done so.  Singular cites its "test" throughout its FAC to show that the accused

products satisfy the claimed error rates.  *See* FAC ¶¶ 94, 111, and 129.  The test's results are

---

[4]  Because Singular has refused to explain whether the test code it cites in its infringement
contentions is the same as that excerpted in Singular's FAC, Google assumes those tests are
different for the purpose of this motion.

central to Singular's allegations; without them, Singular may well have lacked a basis for filing its complaint. *See Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-11935-FDS, 2013 WL 2932822, at *3 (D. Mass. June 12, 2013) ("[P]ursuant to Rule 11 'allegations of patent infringement must be supported by a good faith basis . . . that each accused product (or combination of products) meets each limitation of an asserted claim.'"); *View Eng'g, Inc. v. Robotic Vision Sys., Inc*., 208 F.3d 981, 986 (Fed. Cir. 2000) ("The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.").  And while Singular now contends that the tests are irrelevant, it has declined to amend its FAC or infringement contentions to remove reference to them, betraying its position.  Given that Singular's test is central to its allegations, Google has "the right to refute [Singular's] evidence of infringement, and information on [Singular's] tests," . . . is ***clearly relevant*** for that purpose." *Loctite Corp. v. Fel-Pro Inc*., 94 F.R.D. 1, 3 (1980), *aff'd and remanded*, 667 F.2d 577 (1981) (emphasis added).  Singular must therefore produce documents responsive to Google's request.

### 4.    The test code outputs and documents related to the "Singular test" are not protected by the attorney work-product doctrine.

In response to Google's most recent request for the test outputs, test code, and related documents, Singular asserted for the first time that it need not produce the requested information because "the output of the tests and the testing code itself are privileged attorney work product." Ex. 17.  This assertion is incorrect.  Even assuming Singular's test code and related documents would otherwise be protected by work-product privilege, because Singular has relied on the data to support its infringement assertions, it must produce that data.

Courts have determined that patentees who rely on tests to support their infringement contentions must disclose those tests, notwithstanding work-product privilege.  In *Tillotson Corp. v. Shijiazhaung Hongray Plastic Prods., Ltd.*, 244 F.R.D. 683, 693 (N.D. Ga. 2007), for example, the court compelled the plaintiff to disclose its test data "to the extent that the test data supports any of the plaintiff's contentions."  As the court explained, "fairness dictates" that a

defendant be permitted access to "information in order to defend the claims made against them."
*Id.* Although the court acknowledged the testing data would otherwise be protected work
product, it required the plaintiff to disclose the information "[t]o the extent that the plaintiff relies
on that test data to support its infringement claims." *Id.* Other courts have come to similar
conclusions. *See Loctite Corp.*, 94 F.R.D. at 3 ("[C]laims of work product [do] not justify
withholding of the [pre-suit tests] upon which plaintiff based its charges of infringement."); *AM
Int'l, Inc. v. Eastman Kodak Co.*, No. 80 C 4016, 1982 WL 171002, at *4 (N.D. Ill. 1982) ("[I]f a
test has been made concerning a product which plaintiff claims is relevant to the patents at issue,
it is part of discovery and defendants are entitled to access to the reports of that test."). Here too,
Singular has relied upon its test and related documentation to support its claims, including in its
FAC and in its infringement contentions.[5] As discussed above, Singular has provided no other
evidence that the claimed error rates are satisfied, and thus its testing data is crucial to its case.
Thus, "fairness dictates" that Google must have access to the test code, results, and related
documents to test Singular's infringement assertions. 244 F.R.D. at 693.

Furthermore, Singular's production of the test code itself and the questions it
subsequently answered about that code seriously undermine its argument that the code and
related documents are protected by work-product privilege. "[T]he prevailing rule [is] that
disclosure to an adversary, real or potential, forfeits work product protection." *Max-Planck-
Gesellschaft v. Whitehead Inst.*, No. CIV.A. 09-11116-PBS, 2010 WL 4340646, at *2 (D. Mass.
Nov. 2, 2010). Thus, even if Singular's testing data otherwise merited work-product protection,
"by voluntarily disclosing the materials," Singular "waiv[ed] the privilege." *Kimberly-Clark*,
2010 WL 4537002, at *2 ("[Plaintiff] will be deemed to waive attorney work product protection
if it relies upon and discloses the testing data at issue in support of its infringement

---

[5] In *Tillotson*, unlike in this case, the plaintiff had not yet explicitly relied upon test data by
including it in the complaint and infringement contentions. The court thus gave the plaintiff a
choice as to whether it would rely on the test. *See id.*, 244 F.R.D. at 693 (plaintiff must disclose
its test "if it relies on that information to support its infringement claims or will use that
information in the future.").

contentions.").  Singular cannot rely upon testing data to support its infringement contentions,
produce the test code itself, and then attempt to withhold the related output data that it relies
on—and that it seemingly disclosed in its FAC—as privileged.

**B.      Singular's attempt to respond to Interrogatory No. 11 by incorporating
         documents by reference is improper.**

        **1.      Singular's response to Interrogatory No. 11 incorporates documents
        by reference instead of providing a narrative answer.**

Google's Interrogatory No. 11 requests that Singular describe, for each Asserted Patent:

> all facts related to any attempts to commercialize, including identifying: each
> commercialization attempt; each person, including third parties, who were involved
> in efforts to commercialize . . . including each person's role; any third parties to
> whom commercialization efforts were targeted; and all documents constituting,
> evidencing, or otherwise relating to any attempts to commercialize.

Ex. 3.

After Google served this interrogatory, Singular responded on August 26, 2020, by
promising that it would "produce documents responsive to Interrogatory No. 11 on September 4,
2020, and . . . simultaneously supplement its response to th[at] Interrogatory to identify the
responsive documents by production numbers."  Ex. 4.  Singular did not provide the promised
response on September 4, nor did it ask for an extension, explain why it had been unable to
supplement its response, or identify a date by which it would do so.  *See* Ex. 18 (Sept. 10, 2020
Kamber letter to Hayes).  Despite several more promises to provide a supplemental response
throughout October and November, Singular did not provide its supplemental response until
December 9, 2020—***five months*** after Google originally served the interrogatory. *See* Ex. 16;
Ex. 19 (Nov. 30, 2020 email chain).

The supplemental response, it turns out, was not worth the wait.  As Singular had
foreshadowed, its response contained no narrative answer to Interrogatory No. 11.  Instead, the
response incorporated by reference ***212*** documents—spanning ***1,423 pages***—pursuant to Rule
33(d) of the Federal Rules of Civil Procedure.  Of the 212 documents Singular incorporated by
reference, over half seem to be the personal notes of Singular's President, Dr. Joseph Bates. An

additional quarter are presentations about the alleged invention.  The balance comprises various materials including invoices Singular has issued, letters of commitment from Singular to provide consulting services, licensing quotes, and a handful of third-party agreements.

### 2.    Singular should be compelled to supplement its response to Interrogatory No. 11.

As a general matter, "Federal Rule of Civil Procedure 33 requires that each interrogatory be answered separately and fully and not by simply referring to other documents or pleadings." *Conning v. Halpern & CJKI Dictionary Inst., Inc.*, No. 18-cv-12336-ADB, 2021 WL 24573, at *5 (D. Mass. Jan. 4, 2021).  "[A]nswering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33." *Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 93 (2012).  There is, however, an exception to this general principle.  Rule 33(d) "provides an option for a party to produce business records in lieu of answering interrogatories where the answer may be derived or ascertained from such records." *FM Generator, Inc. v. MTU Onsite Energy Corp.*, No. 14-14354-DJC, 2016 WL 8902603, at *5 (D. Mass. Aug. 25, 2016).  Importantly, "[p]roviding business records in lieu of written answers to interrogatories is not the norm, but rather is an exception to the general rule" that a party must not "answer[] interrogatories by referring to pleadings or other discovery[.]"  *Gattineri v. Wynn MA, LLC*, No. 18-cv-11229-FDS, 2020 WL 4698508, at *2 (D. Mass. Aug. 13, 2020).

"In order to properly invoke Rule 33(d), four criteria must be met."  *FM Generator,* 2016 WL 8902603, at *5. "First, the producing party must affirm that the information sought by the interrogatory is in fact available in the specified records."  *Id.*  "Second, the producing party must specify the actual documents where information will be found."  *Id.*  "Third, the producing party must show that answering the interrogatory in the traditional manner would impose a burden on it."  *Id.*  "Finally, the producing party must show that the burden of deriving the answer from the specified documents will be substantially the same for both parties."  *Id.*  At least three of these criteria undermine Singular's invocation of Rule 33(d) here.

*First*, the information requested by Interrogatory No. 11 is not included in the incorporated documents. *See id.* at *5–6 (concluding party had "not met its burden under Rule 33(d)" because it had "not established that the information sought by the interrogatory [wa]s available" from the incorporated materials). Interrogatory No. 11 asks Singular to describe its attempts to commercialize the alleged invention, but any description of Singular's attempts to commercialize the alleged invention are conspicuously absent from the documents it incorporates into its response. As just one example, several of the incorporated documents are ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ *See* Ex. 20 (SINGULAR-00003903, 04086, 11935). But it is not at all clear whether these ████ constitute attempts to commercialize the alleged invention. And, to the extent these █████ are attempts to commercialize that invention, neither the letters nor the other incorporated documents provide any description of these █████ or confirm whether Singular actually provided the ███████████. In short, the letters (and other incorporated documents) establish only that Singular ███████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████ That is far from a fulsome response.

*Second*, Singular has identified no reason that providing a traditional narrative response to Interrogatory No. 11 would be unduly burdensome. Where, as here, "only limited information is sought and the interrogated party can readily answer the interrogatories with reference to its own records, Rule 33[(d)] should not be invoked." *Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 556 (D. Mass. 1986). Tellingly, Singular did not even specifically raise a burden objection in response to Interrogatory No. 11, a fact that, on its own, suggests that Singular's invocation of Rule 33(d) is improper. *See Blake Assocs., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 289–90 (D. Mass. 1988) (concluding there was no burden warranting application of Rule 33(d) in part because the responding party had "interposed no objections based on burdensomeness"). Having

declined to raise such a burden objection, it would be disingenuous for Singular to justify its invocation of Rule 33(d) on that basis now.

*Third*, the burden of deriving the answer to Interrogatory No. 11 from the documents incorporated by reference into Singular's response is not substantially the same for both parties, for a simple reason: Singular is more familiar with the incorporated documents because it created the vast majority of them itself. As previously noted, 75% of the documents constitute either the personal notes of Dr. Bates—Singular's President—or slides from presentations that he gave. The remaining documents were also almost entirely created by Singular. They include, for example, invoices Singular issued, letters and emails written by Dr. Bates, letters of commitment from Singular to provide consulting services, and licensing quotes.

Where, as here, documents incorporated by reference into an interrogatory response were generated by the responding party, that "party's familiarity with its own records can fairly be taken into account in assessing relative burdens." *Sabel*, 110 F.R.D. at 557. In *Sabel*, for example, the Court concluded that the defendant's invocation of Rule 33(d) was improper because, among other things, its "employees generated the documents" it had incorporated and it was therefore "clearly better able to extract the information . . . needed to answer the interrogatories than . . . the plaintiff, who ha[d] no familiarity with the records." *Id.* at 556. That conclusion applies *a fortiori* here. Singular is better placed to synthesize an answer to Interrogatory No. 11 using the incorporated documents not simply because it created those documents, but also because the majority of the documents weren't written to be interpreted or understood—and cannot be interpreted or understood—by anyone else.

Indeed, over half of the incorporated documents are notes that Dr. Bates appears to have written to himself, which make them difficult, if not impossible, to understand in a vacuum. The degree of incomprehensibility varies. Some of the notes, like the below excerpt, are indecipherable:



14

Ex. 21 at 4320 (SINGULAR-00004320).  Although other notes contain recognizable terms or phrases, they are still far from informative:



Ex. 22 (SINGULAR-00006430).

Yet other notes disclose what appears to be relevant information but include so little context that the information is meaningless.  As just one example, one set of notes sets forth a list of individuals and entities. *See* Ex. 23 (SINGULAR-00005112).  Presumably, Singular incorporated this list into its response because these individuals or entities were involved, in some form, in Singular's attempts to commercialize the alleged invention.  But the notes themselves do not state as much and, to the extent the individuals or entities were involved, the notes do not describe how they were involved.

Significantly, this general incomprehensibility is not limited to Dr. Bates' notes.  The other documents Singular incorporates by reference are similarly vague.  For example, Singular incorporated several of its own invoices into its response, likely because they describe Singular's commercialization attempts, though Singular never states as much expressly.  But the invoices' descriptions of these attempts are inscrutable.  One invoice contains a statement of work performed that includes tasks like ▮▮▮▮▮ Ex. 24 (SINGULAR-00003275).  Other invoices seek compensation for tasks like ▮▮▮▮▮▮▮▮▮▮▮ without specifying who "▮▮▮▮▮▮▮" are, much less who they work for or what their roles are.  Ex. 25 (SINGULAR-00003276).  Even documents that obviously relate to Singular's commercialization attempts are unhelpful.  One of Dr. Bates' presentations, for example, describes how Singular has attracted ▮▮▮ from ▮▮▮▮▮▮▮▮ but does not identify who those companies are, what they were interested in doing with the alleged invention, or whether

15

anything ultimately became of their interest.  Ex. 26 at 4387 (SINGULAR-00004377).  Another

presentation unintelligibly describes Singular's go-to-market strategy as ████ ██ ████ ██

████ ██ ████  Ex. 27 at 4351 (SINGULAR-00004345).

A listing of these indecipherable documents does not qualify as an adequate substitute for

an interrogatory response.  It is not Google's responsibility to divine Singular's response to

Interrogatory No. 11 by parsing these documents like tea leaves.  *Mulero-Abreu*, 675 F.3d at 93.

Google is entitled to a clear narrative response.  *See id.*  At this point, it is hard to interpret

Singular's invocation of Rule 33(d) as anything other than another attempt to avoid providing

such a substantive response.  Singular delayed answering this interrogatory for months.  And

after all of the hemming and hawing, the long-awaited response didn't even answer the question

posed.  Singular's conduct establishes that it will not respond to Interrogatory No. 11 unless and

until it is compelled to do so.  For the reasons described above, the Court should do just that.

### C.      Singular should be compelled to respond to Google's Interrogatory No. 14.

Pursuant to the Scheduling Order and Local Rule 16.6, Google served Responsive

Contentions Regarding Non-Infringement and Invalidity ("Responsive Contentions") on

November 6, 2020.  These Responsive Contentions identified more than two dozen pieces of

prior art that anticipate and/or render obvious one or more claims of the Asserted Patents under

35 U.S.C. §§ 102 and/or 35 U.S.C. § 103.  Google subsequently propounded Interrogatory No.

14, which requests that Singular:

> Separately for each claim chart in Google's Responsive Contentions on Non-
> Infringement and Invalidity, served on November 6, 2020, identify what if any
> limitations of the Asserted Claims you contend are not in the related prior art reference
> and any reason(s) for that contention.

Ex. 6 at 4.  Singular refused to respond.  In its formal objections—and in subsequent meet and

confer communications—Singular argued that this interrogatory is "premature" on two separate

grounds: (1) it "seeks Singular's ultimate position on its contentions," which Singular should not

be required to provide until the close of discovery; and (2) no response is warranted prior to "a

claim construction ruling in this case."  Ex. 7.  These objections are without merit.

16

"Contention interrogatories ask a party to state its contentions, to provide the factual basis for a claim, or to explain how the law applies to the factual basis." *Hypertherm, Inc. v. Am. Torch Tip Co.*, No. 05-cv-373-JD, 2008 WL 5423833 at *2 (D.N.H. Dec. 29, 2008). They "are a proper means to establish the factual and legal bases for the adverse party's claims." *Eveden, Inc. v. The N. Assurance Co. of Am.*, No. 10-10061-GAO, 2012 WL 12345021, at *1 (D. Mass. Feb. 7, 2012) (citation omitted); *see also* Fed. R. Civ. P. 33(a)(2). Contrary to Singular's assertion, responses to contention interrogatories like Interrogatory No. 14 may be compelled long before the close of discovery. The Federal Rules of Civil Procedure broadly contemplate that "methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery." Fed. R. Civ. P. 26(d). More specifically, Rule 33(a)(2) and the accompanying Advisory Committee Notes confer on the district court considerable discretion in deciding when a party must answer contention interrogatories. They also make clear that a delay in responding to such interrogatories is not the default. *See* Wright & Miller, Fed. Practice & Pro., § 2167 at pp. 29-30, n.27 (3d ed. 2010) (power to delay responses to contention interrogatories is not automatic and should be reserved for "appropriate cases"). When faced with disputes over the proper timing for responses to contention interrogatories, courts in this Circuit place the burden on the objector to justify its failure to respond. *See In re Textron, Inc.*, No. 09-383ML, 2012 WL 12876091, at *2 (D.R.I. Apr. 11, 2012). Singular cannot justify its failure here.

Singular should be compelled to respond now to Interrogatory No. 14. As an initial matter, the delay Singular advocates would prejudice Google. Singular's position as to what limitations are not disclosed or rendered obvious by the prior art references identified in Google's Responsive Contentions can both narrow the issues and guide Google's third-party discovery efforts going forward. But far less time will remain for third-party discovery *after* the Court issues its *Markman* ruling: the *Markman* hearing is scheduled for March 31, 2021, and fact discovery closes on July 23, 2021. *See* ECF No. 70. Delaying Singular's responsibility to

respond to Interrogatory No. 14 until *after* a claim construction ruling would therefore hinder (if not foreclose) Google's ability to conduct relevant discovery.

Regardless of the prejudice to Google that would result from Singular's proposed timing, Singular should not be permitted to delay its response to Interrogatory No. 14 any further. More than two months ago, Google identified numerous prior art references, which it argues render the asserted claims invalid. To the extent Singular disagrees with Google's understanding of these references and the asserted claims, it is able to say so now and explain why. Interrogatory No. 14 is easily distinguished from the types of interrogatories that courts have deemed premature when served early in discovery, such as those that demand a plaintiff to identify "all facts" that support its claims. *See, e.g., Cardoza v. Bloomin' Brands, Inc.*, No. 2:13-CV-01820-JAD, 2015 WL 3875916, at *1 (D. Nev. June 22, 2015). Unlike those broad, fact-focused interrogatories, additional discovery here is not necessary for Singular to respond to Interrogatory No. 14. But to the extent Singular identifies new defenses later in discovery, it is of course free to supplement its interrogatory responses at any time.

The lone case Singular cited in support of this objection actually stands for the opposite of what Singular contends. In *Sena v. Office of Servicemembers' Group Life Ins.*, the defendant issued contention interrogatories "address[ing] Plaintiff's . . . assertions that Defendant failed to properly administer" two life insurance programs. Def.'s Reply ISO Mtn. to Compel, ECF 26 at 3, *Sena v. Office of Servicemembers' Group Life Ins.*, Case No 02-cv-00842 MV/KBM (D.N.M. June 11, 2003). Unlike here, the plaintiff in *Sena* issued substantive responses to those interrogatories. The defendant moved to compel only after the plaintiff refused to provide *supplemental* responses. The court denied that motion to compel because the parties had recently moved to extend the discovery cutoff in that case, rendering the defendant's request for supplemental information premature. In other words, the court's ruling in *Sena* had nothing to

do with the issue at hand.  To the extent that *Sena* is relevant here, it stands for the proposition that Singular should respond to Interrogatory No. 14 now.[6]

The looming claim construction hearing should not shelter Singular from its discovery obligations.  As an initial matter, there are relatively few disputed terms for the Court to construe here:  Singular proposed a single term for construction, while Google has suggested two constructions (one of which is the same term Singular hopes to construe) and argues that a third term is indefinite.  The Court's ultimate construction of the disputed terms is unlikely to meaningfully impact Singular's response to Interrogatory No. 14.  But to the extent Singular's response hinges on a particular construction, it is free to offer arguments in the alternative in its response and/or it could amend its responses if warranted by the Court's ruling.

Singular's position rests on a fundamental lack of fairness.  Per the Court's Scheduling Order, Google was required to provide its responses to Singular's infringement contentions *before* claim construction.  ECF No. 70.  Those responsive contentions are just as dependent upon claim construction as Singular's response to Google's invalidity contentions, which is all Interrogatory No. 14 seeks.  Because Google was required to issue its Responsive Contentions before claim construction is complete, Singular cannot legitimately refuse to respond to Interrogatory No. 14 because claim construction is incomplete.

For all of these reasons, Singular should be compelled to respond to Interrogatory No. 14 now (or risk waiving its ability to respond if it further delays substantively responding).

## III.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant its motion to compel.

---

[6] If anything, the discovery timeline here militates in favor of Google's motion to compel.  If Singular is able to delay its response to Interrogatory No. 14 until the close of fact discovery, Google will be severely hindered, if not foreclosed, from seeking third-party discovery based on Singular's response.

**PUBLIC VERSION**

Respectfully submitted,

Dated: January 14, 2021

By:    */s/ Matthias Kamber*

Gregory F. Corbett (BBO #646394)
gregory.corbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nathan.speed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
elizabeth.dimarco@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Asim Bhansali (*pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111

Matthias Kamber (*pro hac vice*)
mkamber@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

*Attorneys for Defendant Google LLC*

**PUBLIC VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.


*/s/ Nathan R. Speed*
Nathan R. Speed