# Exhibit 17

Brian M. Seeve
Direct Dial: 617-456-8049
bseeve@princelobel.com

December 22, 2020

**BY EMAIL**

Matthias Kamber
Keker, Van Nest, & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

RE:   *Singular Computing LLC v. Google LLC*, 1:19-cv-12551-FDS (D. Mass.)

Dear Matthias:

 I write in response to your email of December 11th, in which you demand various pieces of information relating to the testing that Singular performed in preparing its First Amended Complaint and its infringement contentions.

 Singular will not produce further information relating to these tests. The output of the tests and the testing code itself are privileged attorney work product that has been prepared for the purposes of this litigation. They are not "documents supporting [Singular's] contentions," as you claim; Singular's contentions are supported by copious documentary evidence, published by Google and its affiliates, detailing the operation of the Accused Products. Singular analyzed this evidence by, among other things, performing the tests you reference in your letter. Based on this analysis, Singular concluded that the Accused Devices infringe the asserted claims of the patents-in-suit.

 In the interest of transparency, Singular provided the code for the tests referenced in its infringement contentions, even though it was under no obligation to do so. At Google's request, Singular even agreed to produce this code as if it were an ordinary document, allowing Google to bypass the requirements of the protective order governing the production and examination of source code.

 As part of this production, Singular provided details about the machine architecture on which the testing was performed, the compiler used to run the tests, and the complier command-line arguments. Google apparently failed to notice this information, even though it appeared at the top of the first page of Singular's testing code (on line 6 of 289), and repeatedly demanded that Singular provide answers to questions that Singular had already answered weeks prior.

 Singular was not obliged to answer these queries, and is not required in general to explain source code that Google is unable or unwilling to understand on its own. However, as a gesture of good faith, Singular answered Google's questions about the testing environment and identified for Google the precise line numbers on which this information could be found.

 It has become clear that Google does not reciprocate Singular's desire to establish a cordial and open working relationship between the parties in this case, and instead is trying to use it to justify additional demands for irrelevant and privileged information about Singular's tests. For example, Google argues that because Singular produced the test code for its infringement



contentions, it must now produce the test code referenced in its First Amended Complaint. Under the same "logic," it also argues that because it included test results in its First Amended Complaint, it must therefore also produce the results of the tests referenced in the infringement contentions.

      Singular will produce neither.

      Sincerely,

Brian M. Seeve