```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2


 3                                    )
 4    SINGULAR COMPUTING LLC,         )
                                      )
 5            Plaintiff,              )
                                      )    Civil Action
 6    v.                              )    No. 1:19-cv-12551-FDS
                                      )
 7    GOOGLE LLC                      )
                                      )
 8            Defendant.              )
                                      )
 9


10


11            BEFORE THE HONORABLE DONALD L. CABELL
                 UNITED STATES MAGISTRATE JUDGE
12


13                       MOTION HEARING
                          Via Zoom
14


15                      April 30, 2021
                         2:00 p.m.
16


17        John J. Moakley United States Courthouse
                    One Courthouse Way
18              Boston, Massachusetts 02210


19


20


21


22            Linda Walsh, RPR, CRR
                Official Court Reporter
23    John J. Moakley United States Courthouse
              One Courthouse Way, Room 5205
24            Boston, Massachusetts 02210
                 lwalshsteno@gmail.com
25
```

```
 1    APPEARANCES:

 2   On Behalf of the Plaintiff:

 3        PRINCE LOBEL TYE LLP
          By: Michael Ercolini, Esq.
 4            Kevin Gannon, Esq.
          One International Place, Suite 3700
 5        Boston, Massachusetts 02110
          617-456-8084
 6        mercolini@princelobel.com

 7
     On Behalf of the Defendant:
 8
          KEKER, VAN NEST & PETERS LLP
 9        By: Andrew Bruns, Esq.
              Matthias A. Kamber, Esq.
10        633 Battery Street
          San Francisco, California 94111
11        415-351-9400
          abruns@keker.com
12

13        WOLF, GREENFIELD & SACKS, PC
          By: Gregory F. Corbett, Esq.
14        600 Atlantic Avenue
          Boston, Massachusetts 02210
15        617-646-8249
          gcorbett@wolfgreenfield.com
16

17

18

19

20              Proceedings reported and produced
                 by computer-aided stenography.
21

22

23

24

25
```

P R O C E E D I N G S

1          THE CLERK:  Court is now open in the case of Singular

2   Computing versus Google LLC, Civil Action Number 19-12551.

3          Counsel, please identify yourself for the record.

4          MR. ERCOLINI:  Michael Ercolini for the plaintiff,

5   Singular Computing LLC.

6          THE COURT:  Good afternoon.

7          MR. ERCOLINI:  Good afternoon, Your Honor.

8          MR. GANNON:  Kevin Gannon for the plaintiff as well.

9          THE COURT:  And good afternoon, Mr. Gannon.  I can

10  tell it was Gannon because I can read it, but your voice did

11  seem a little garbled there.  So if you do speak during this,

12  just, I guess, just do your best to make sure you're speaking

13  nice and clearly since we do have a court reporter who is

14  transcribing.

15         MR. GANNON:  Will do.

16         MR. CORBETT:  Good afternoon, Your Honor.  Greg

17  Corbett with Wolf Greenfield for Google, and with me is my

18  co-counsel Andrew Bruns from Keker, Van Nest & Peters, who will

19  be speaking on our behalf, also his colleague, Matthias Kamber.

20         THE COURT:  Good afternoon to you all.

21         MR. BRUNS:  Good afternoon, Your Honor.

22         THE COURT:  All right.  So to set the stage, I think

23  that when we had set this down for a hearing for today, there

24  was a pending motion for a protective order.  Previous to the

1    motion for a protective order there had actually been a motion

2    filed for a status conference, and I didn't really take much

3    action on that because usually when we do it, we like to see a

4    consensus on both sides that, yeah, that makes sense to kind of

5    get together.  That did not seem to be there.  And then

6    thereafter I just kind of just thought about it, but then we

7    had the motion for a protective order.  We set this down for a

8    hearing.  And then subsequent -- and that was Google's motion

9    for a protective order.

10          And then we get a renewed motion to compel filed by

11   Google.  That was just a number of days ago.  I don't think a

12   response to that has been filed.

13          And then yesterday we got a surreply filed by Singular

14   addressing the prior motion for a protective order.  So let me

15   begin with that.  The essence of the surreply is that from

16   Singular's perspective they think the issue is now moot because

17   the principal concern that Google had before was wanting to be

18   able to get all of the ESI or the pertinent ESI before its

19   folks sat down to be deposed.  They say that has now taken

20   place and therefore there is no longer anything there.

21          I did note that there was at least, also, this other

22   issue of the list of topics and whether it should be shortened

23   or whether it should be on one piece of paper as opposed to in

24   serial fashion.  I don't know what's become of that.

25          So let me begin by asking Google, do you agree or

1    disagree that the motion for a protective order has been mooted

2    by Singular's filing yesterday; and if not, from your

3    perspective what still remains?

4           MR. BRUNS:   Thank you, Your Honor.   So I would say

5    it's not moot.   I don't think Singular's position is that their

6    filing yesterday moots the 30(b)(6) issue, which I think is

7    kind of a stand-alone entity.   They can correct me if I'm

8    wrong.

9           As to the issue that the surreply does address, the

10   outstanding ESI production, I'm glad that Singular has now

11   produced, as of about 20 minutes ago, what it says are all

12   Google documents that we've been seeking.   I'm a little

13   hesitant to accept that that issue is mooted at this point for

14   a couple of reasons.

15          One, it is not entirely clear to Google what it is

16   Singular has produced this morning.   As Your Honor probably

17   noted in the briefing, there's been a protracted kind of

18   disagreement about the ESI search terms that remains

19   outstanding.   One topic in there that's still outstanding is

20   some Google-specific search terms.   And as of this morning,

21   we're still waiting to hear back on a now three-week-old email

22   related to those search terms.   And so it would be helpful to

23   know a little bit more what exactly was produced this morning

24   and what we'll expect to see in those documents.   And we also

25   appreciate just some time to kind of look at them before

 1    accepting that the issue is fully mooted on that score.

 2         THE COURT:  Okay.  So if we say you are going to need

 3    a little time to take a look at what you've got, as it relates

 4    to a motion for protective order, what remains ripe that we

 5    should be discussing now?

 6         MR. BRUNS:  I would say the 30(b)(6) issue, which I'm

 7    happy to discuss if you'd like to turn to that unless you'd

 8    like to continue with the ESI topic.

 9         THE COURT:  Well, I guess -- well, I don't know what I

10    need to do about the ESI topic.  I mean, I'm being guided by

11    you guys.  I thought what I just heard you say was we don't

12    know what we've got yet, and so we don't know enough to know

13    whether this issue -- this particular issue, sub-issue, ESI

14    issue has been resolved.  We have got to take a look at what

15    we've got first.

16         MR. BRUNS:  Yes.

17         THE COURT:  So I guess I thought you may be saying

18    there may not be a way to completely satisfactorily put this

19    issue to bed as we sit here, unless what you are also saying is

20    you'd like to hear from Singular some recitation from them as

21    to what they provided you?

22         MR. BRUNS:  Yes, I think both of those things are

23    true, Your Honor.  I think it would be helpful to know a little

24    bit more about what is being produced.  I think, kind of

25    regardless of that answer, it would be helpful for us to look

1    at it before saying that issue is moot.  I think your

2    recitation of that is accurate.

3            THE COURT:  So why don't we hear from Singular then

4    about what it is they've done.

5            MR. ERCOLINI:  Okay.  Thank you, Your Honor.

6            The issue that was before said motion for a protective

7    order was a concern by Google that it might see exhibits at a

8    deposition -- witnesses might see exhibits at a deposition that

9    were from Google that it had authored that it might have

10   subsequently destroyed.  And to the extent that was the case,

11   if Singular had it in its ESI production, they were concerned

12   they might be unfairly surprised at a deposition.

13           You know, whatever -- however you want to credit that

14   as a concern, we thought we should at least answer that because

15   if that's holding up depositions, we're three months out from

16   the close of fact discovery and that just shouldn't be.  So

17   what we did was we had already started this process weeks ago.

18   I won't get into many of the details about the ESI, the back

19   and forth.

20           Google said that it served a request in January.  That

21   request hit every single email over a ten-year period.  The

22   terms were very broad.  They included things like "patent" and

23   so forth, but I'd rather not get into that.

24           They served a replacement request in March.  That had

25   491 terms.

1            And then another request in April which had --
2      basically when you desegregate it, it was 100 terms, 96 to be
3      exact.  So they requested a lot.  We've been going back and
4      forth about that.  But in the meantime, we haven't been able to
5      take depositions because of this sort of discrete issue within
6      all of that.
7            We made our terms very narrow when we requested them.
8      There were 17 terms total.  So, you know, we'll go back and
9      forth on that, I'm sure, but we've already started production.
10     But what we wanted to do was wipe out this issue of if we -- if
11     a Google witness is going to be produced, they're concerned
12     they're going to see emails that they wrote a number of years
13     ago that they don't have, let's get them all out.
14           I'm happy to put a declaration on the record that
15     we've got every email that was from a Google witness to a
16     Google witness copying a Google witness or, you know, we
17     basically did a domain search for X dot team, which is Google
18     X, YouTube people, and then Google.  And we've reviewed all of
19     them.  We've sent all of them out.  Obviously there's nothing
20     privileged in there.  And so that went out this afternoon.
21     Actually, it was just before.  We had to run the production.
22           THE COURT:  How voluminous?  How many emails?
23           MR. ERCOLINI:  There were, I think, about 300
24     documents total.  And they're really -- you know, when I say
25     it's not a large production, it's not a large production in

1    that a lot of the emails were not even hit by their ESI terms.

2    They were things that were irrelevant.  You know, I'm going to

3    be in Cambridge at this time.  Do you want to grab lunch?  So

4    there's -- and this is in addition to about 120 emails and

5    attachments that we served two weeks ago, which were part of

6    the first 376 terms that we said, you know, we'll produce in

7    response to those.  And so that's done.

8         This is also in addition to what Google has produced

9    to us, which is a lot of the same emails.  We haven't been able

10   to verify that it's every single one, but at the end of the

11   day, everything is out there.  I'll put a declaration on the

12   record, if that helps the Court and obviously if it helps

13   Google, just to confirm that that's all that we have.  And they

14   certainly can look through this 300 or so before we take

15   depositions, but it really shouldn't take all that long.  I

16   looked through every one of them actually last night just

17   before the production was finalized.

18        So I think we're good on that score and can move

19   forward with the fact witnesses, to the extent the Court is

20   satisfied that we have done what we need to do on that and that

21   Google is satisfied that we've given them everything we have on

22   that score.  So that's what I have to say about the ESI issues

23   as it relates to the fact witnesses.

24        THE COURT:  All right.  Let's assume, then, for the

25   sake of this discussion, that that issue, if not resolved, is

1   on its way to being resolved.  And Mr. Bruns and his colleagues

2   can confirm the same after they've completed their review of

3   what you've provided.

4       That would then leave, as I understand it, this issue

5   about the list and the topics and the like.  So my pedestrian

6   understanding of things is Google thinks the list is way too

7   long and needs to have -- and wants to have this -- wants to

8   have the list pared down now and wants all of that stuff to be

9   taken care of before anything takes place.  Google is not

10  amenable to this idea of just starting out by doing it sort of

11  a smaller table of, as I say, 12 topics at a time and doing it

12  in that fashion.  Is that generally correct?

13      MR. ERCOLINI:  That's generally correct.  I think that

14  that's the position that they've taken.  I'll say that we

15  served these topics months ago, and their 103, I think, was the

16  total.  I haven't been doing this all that long.  It's been

17  about eight or nine years.  But that's probably middle of the

18  road in terms of what I've seen for deposition topics.

19      But we basically -- because there were too many,

20  because they had objections, they didn't want to produce any

21  witnesses.  So what we said was, well, let's just take a

22  discrete number of them and let's get this going.  Let's move

23  forward with them.  And I haven't -- I've never seen anything

24  in the federal rules that limits doing it this way.  In fact,

25  every litigation I've been involved in involves more than one

1    30(b)(6) notice.  Sorry, Your Honor.

2         THE COURT:  No, no, no.  I'm not cutting you off.  We

3    kind of took the same tack, which is, I tend to approach these

4    sorts of issues from more of a problem-solving perspective

5    rather than sort of a hornbook perspective.  And I didn't see

6    anything in the rules that prohibited from proceeding in this

7    fashion.  I don't know if it's the most efficient way to do

8    things, as Google kind of points out, but I also don't -- I

9    also can't agree that it's not an appropriate solution here.

10        I would freak if I were being told you're going to

11   have to sit for a 30(b)(6) deposition and here are the 125

12   topics you need to be conversant in.  That's probably

13   overwhelming and daunting, and if I were trying to work this

14   out with somebody, I think probably the next step I would get

15   to would be, all right, well, then, why don't we break this up,

16   and we'll do a bunch of topics at a certain -- you know, at a

17   time, grouped around a certain theme, so that it makes sense to

18   have the deposition take place on those subject matters at the

19   same time, and then kind of move on and move on and maybe have

20   a gentleperson's agreement no going back, no second shot at the

21   apples for things you could have done but didn't do.  You know,

22   we've both got to be professional about this.

23        Mr. Bruns, what's wrong with doing it like that?

24   Especially if -- because here's the one piece that I didn't

25   know, but what I'm hearing is that a list that's about 100

1   items long or a little more than that is not necessarily

2   uncommon in this modern world of cases like this.

3          MR. BRUNS:  Well, I guess I'll take that last point

4   first.  I respectfully disagree with Mr. Ercolini's position.

5   This isn't a middle of the road set of requests.  I think a

6   dozen or two is much more common.

7          But I think Your Honor hit on the key point here,

8   which is efficiency.  It's just not the case that these 12

9   topics, even standing on their own, are a discrete set.  I

10  think it was footnote 5 in our opening brief highlights several

11  other topics that are related to similar issues as those in the

12  12 that they've noticed.  And I think beyond that, the reason

13  that's standard if not universal procedure for conducting

14  corporate depositions like this is, as the one we've laid out,

15  is that Singular doesn't know who is the most appropriate

16  witness to designate for the topics they're seeking to examine

17  a designee on.

18         And in this instance, for example, Google has a senior

19  project manager whose role encompasses both technical issues

20  and financial issues.  So it's quite possible that that person

21  would be designated for topics that straddle those two arenas,

22  and that's why it's Google's job to designate and identify

23  witnesses to testify as to certain topics.  And, again, that's

24  why I think it's the standard if not universal practice to get

25  an exhaustive list of the topics that Singular is interested in

1    examining someone on so that we can move forward and try to

2    engage on a meet-and-confer process, identify --

3          THE COURT:  So help me understand, then.  I thought at

4    the beginning of time there was an exhaustive list but the list

5    was too long?

6          MR. BRUNS:  Well, you're absolutely right, Your Honor,

7    but we tried to engage in this process back then.  Rule

8    30(b)(6) requires the parties to meet and confer about the

9    proper list of topics.  A week after we were issued that

10   notice, we sent a letter identifying things we thought should

11   be tweaked about the list and never heard back, ever.  We then,

12   having heard nothing for a few weeks, sent formal objections,

13   and in those formal objections we identified topics on which we

14   would present a witness and again asked to meet and confer and

15   again heard nothing.

16         So it's not accurate to say that, you know, we just

17   walked away from the process because there are 102 topics.  We

18   tried to start this dialogue, which is the standard process for

19   corporate depositions like this.  We just never were engaged

20   with.  And I think rather than kind of engage in the process of

21   meeting and conferring on these subjects, Singular tried to

22   just avoid our objections by serving a subset, which introduces

23   these other problems that we've now discussed.

24         THE COURT:  Well, all right.  So you're saying it's

25   not so much that 102 at one time would be too much.  102 at all

1    would be too much.  So that's the threshold concern you seem to

2    be raising.  And I'm not sure we're ever going to be in the

3    best position to figure out whether the 102 things they want to

4    explore are appropriate in this case.  So I do think meeting

5    and conferring, this is what it was meant for.

6            So let me ask Singular.  Has there been a meaningful

7    meeting regarding the reduction of numbers of topics on the

8    list as opposed to splitting them up over time?

9            MR. ERCOLINI:  So, Your Honor, I'll just say that

10   the -- we didn't decide not to meet and confer just because we

11   were, you know, sort of ignoring their objections.  We waited

12   for documents to be produced.  And it looks like, you know,

13   we've been getting rolling productions probably -- over the

14   past few months, I think we've gotten -- we've got thousands of

15   documents, and I think that the most recent ones came in just

16   weeks ago.  We've been going through those.  Because we're also

17   hoping to keep this process efficient, we don't want to prepare

18   multiple times for the same topics.

19           So, you know, I think a meet and confer could be

20   helpful.  I've generally found that in meet and confers, even

21   in this case, that they generally -- with respect to requests

22   for production of documents, it tends to be a sort of

23   interminable back and forth, well, we're not going to produce

24   in response to this.  We'll further meet and confer about it.

25           You know, we took 12 topics that we thought were

1    unobjectionable, and to be honest, Your Honor, I think in terms

2    of efficiency, I do think this probably could be more efficient

3    only because if we have 102 topics, obviously someone is going

4    to potentially prepare for all of those.  I'm doubtful that

5    their memory is going to be good enough to be really as rock

6    solid as we need it to be for deposition.  This avoids people

7    having to come back for them.  But more than that, who knows if

8    we actually pursue all 102 topics that are in that original

9    notice because if -- you know, we settle on maybe 36 out of

10   that original 102, that does solve Google's problem about the

11   excessive number of topics, if that's what we go forward with.

12   But --

13        THE COURT:  So what do we need to do to get to this

14   point where potentially you guys are able to agree on 36 topics

15   out of 102?  Should I ask you guys to go back and now have a

16   more focused conversation that doesn't involve splitting these

17   up over time, but rather actually focuses on, of these 102,

18   come on now, you guys have had a chance to look at some of the

19   discovery, and as your sophistication with these issues

20   evolves, what's your thinking?  Maybe you don't need to explore

21   this batch or this batch.  Is that something that there's still

22   value in doing?

23        MR. ERCOLINI:  If I may, Your Honor.  I would say that

24   now that the documents have been produced, I would expect there

25   to be more 30(b)(6) topics coming only because new issues will

1    arise based on those documents.  And I'm not promising that

2    we're going to be serving another exhaustive list, but this is

3    always how I've viewed it.  Discovery is a process.  It's

4    one -- a period for this is about a year, and we try to take

5    topics as they come because we want to get those out of the way

6    and we want to narrow what we're looking at.

7            You know, I think that in terms of paring down, we

8    probably could pare down the number of topics.  But I can't

9    say -- I don't want to come back in in a few weeks or a month

10   and say we have another protective order where we said this was

11   the end of 30(b)(6) topics because we've got hundreds of

12   thousands of pages of documents that we're going through.  We

13   want to make sure that we're keeping it open so that we can

14   still -- but certainly paring down to the 12 that we served was

15   really an effort to do that because, you know, we haven't

16   demanded production of a witness for every one of those 102

17   topics, but that's basically where we are.

18           THE COURT:  Your point is well taken, and especially

19   if you are getting some more discovery, you want to review it.

20   Who knows what that's going to give rise to.  But at the same

21   time, I don't even like the specter, though, of saying so we're

22   not prepared to tell you how long these depositions are going

23   to go on for.  We may be noticing, you know, a whole new batch

24   every two weeks until.

25           I mean, is there something more concrete that we can

1    use so that both sides kind of have a model going forward as to

2    the scope of these, the length of these, the -- and some of

3    these you may want them to start prepping folks sooner rather

4    than later, so by the time you get to them, especially if you

5    are going to have multiple depositions, they will already have

6    had a chance to get up to speed.

7          MR. ERCOLINI:  That's a very good point, Your Honor.

8    Obviously, you know, discovery shouldn't be excessive and we

9    should be within limits, but my response to that would be we've

10   agreed to what the limits for hours are going to be.  So the

11   limits for hours is what the cap is on that.  So we have to

12   kind of mete that out.  So if we decide to take a number of

13   topics, we're counting against our hours so we have got to sort

14   of ration what we're taking.  If there are 102 topics and it's

15   going to take all of our deposition hours to get through it,

16   then that's on us, and then we have no more time left.

17          So I think that that's the protection that's built in

18   for both sides, and that's really why it was built out that

19   way.  So there has to be discretion.  There has to be a limit,

20   and there has to be moderation.

21          THE COURT:  Mr. Bruns, what do you say to that?

22          MR. BRUNS:  Well, I think there's another issue here,

23   Your Honor, which is if they notice 102 topics, yes, they're

24   cabined by the limit on deposition hours, but we're still

25   forced to prepare a witness to testify about all of those

1    topics, which is incredibly onerous, as the cases that Singular

2    cited in its opposition brief made clear.  So I think that's

3    another real issue here.

4          I think you hit the nail on the head earlier when you

5    suggested just paring the topics down now, meeting and

6    conferring and getting a list and moving forward with it.

7          And regarding our production, we finished our ESI

8    production I think a month and a half ago at this point.  We

9    recently supplemented a response to a meet and confer with

10   them, but I mean, our production is substantially complete.

11   And so we think it's high time to move forward with this

12   process.  By contrast, we still don't have all their ESI.  So

13   we've been unable to serve our 30(b)(6) notice, but that's a

14   topic for another day.  I would just hope that the Court would

15   kind of follow the standard procedure here and have Singular

16   serve an exhaustive list as soon as possible.

17         THE COURT:  Well, I mean, I'm hearing a few different

18   things.  So I don't know that that's the issue.  I mean, there

19   is still the number which you think to be excessive.  So it

20   does seem to me that there are a couple of things that can be

21   done at the same time.

22         One is the reasonable lawyers on both sides can

23   continue to talk about whether some of these that are topics

24   that are on the list can be pared down or eliminated so that

25   you know ahead of time, you don't have to worry about those.

1    But I am loath to consider ordering that it be pared because I

2    really haven't been directed to any authority, and I just don't

3    know enough to know that the topics that they have indicated

4    they want to explore are not appropriate topics in the context

5    of this case.  And my guess is if there's case law out there on

6    this, it's probably going to be -- it's probably going to

7    militate in favor of allowing maybe more of this to be explored

8    when the case calls for it.  So I just don't know enough.  So

9    if you have some authority that said no, no, no, there's

10   actually some arbitrary numbers that are set and here's what

11   they are, here's what Courts do, I'll look at that.

12          Otherwise, what I would propose is this:  You guys do

13   talk, see if you can pare down that list.  My guess is of that

14   102, there probably are some that you can say, you know what,

15   there's -- this -- you know, there's an A team and a B team.

16   The A team is stuff that we know is critical.  We know without

17   a doubt we are going to be exploring some of this other stuff.

18   As we get towards the back, maybe not so much.  I do think that

19   should continue to go on.

20          I also think you ought to be thinking thematically in

21   that Singular should be trying to provide as exhaustive of a

22   list as it can, and that may be sort of an ongoing work in

23   progress as they continue to review discovery.  And it seems to

24   me, as soon as they know of something from their review of

25   discovery, that really ought to be conveyed to Google.

1        But at the same time, maybe I think you are going to

2   have to start by saying, all right, let's take a finite number

3   of these topics where it makes sense to group them in a batch

4   and start the depositions focusing on those topics and see how

5   that goes.  We could always come back and revisit this if one

6   side thinks that's problematic for some reason.

7        For example, if Google were to think that Singular is

8   using it as a way to really not worry anymore about paring

9   things down, and it's just kind of saying here's another list,

10  here's another list, well, we can look at that.  But at the

11  same time, you know, if it seems as though that's not working

12  well in terms of allowing Google to adequately prepare its

13  folks or if they think that one person is being called upon too

14  often to be the person in the hot seat, but those are -- you

15  know, those are not big highfalutin issues.  Those are more

16  mechanics-related issues that are tweaked as the parties go

17  along.  It just seems to me, we have got to get this process

18  started.

19        So Google has a list of 102.  They think it's too

20  long, fine.  You guys continue to talk, see if you can pare it

21  down some.  But on the stuff that really matters and on stuff

22  that can be grouped together in bunches, pick a manageable

23  amount now and have everybody agree that's what's going to be

24  explored initially, have somebody prepared, and then let's see

25  how this goes.

1          It just seems to me, along the way Singular is going

2     to continue its own review, its own discovery that may help it

3     to eliminate some topics and may cause it to add some topics,

4     but then, you know, as I'm saying, we can then deal with any

5     issues as they arise.  Otherwise, it puts us in the position of

6     having to take a look at that list of 102, probably get more

7     briefing that we don't want on whether those topics are

8     appropriate or not.  That's going to take time for us to do.

9     Chances are we're not the experts to make the decision on

10    whether those topics are adequate.

11         Having said that, if there's a few topics, you know,

12    that's different, but I honestly don't want to kind of

13    interject myself in this process as kind of an ongoing ump, so

14    to speak.

15         MR. BRUNS:  We agree with that last part in

16    particular, Your Honor.  I would say, you're right, that we're

17    not aware of case law that sets some artificial cap, certainly.

18    We've cited case law to Singular, although it wasn't directly

19    in our brief, it's in exhibits to our brief, of quite a few of

20    the 102 topics that are improper as topics for a 30(b)(6)

21    deposition, and we hope that they'll kind of engage with that

22    in whatever list they re-serve following this.

23         The only other thing I would raise, you know, is what

24    the rules do contemplate is subsequent deposition notices under

25    30(b)(6) are served, you know, when good cause is shown for it.

1    And so we would really hope that any effort by Singular to kind

2    of add topics going forward would be subject to that.

3         THE COURT:  Well, what I've heard is that -- and I'm

4    inferring -- is exactly that, which is that they may not have

5    reason now to believe there's a topic to explore, but if on

6    their review of discovery they now learn of something that they

7    did not know before and then notice it, I'm guessing their

8    argument would be that's the good cause.  It's something we

9    didn't know about before.  But obviously, obviously, if

10   anything is raised subsequently, and you think, you know, it

11   should have been raised before or it should not be the topic of

12   the deposition, then we'll be guided by the rules of procedure

13   and the pertinent case law as it relates to whether that's an

14   appropriate area to explore or not.  All right?

15        MR. BRUNS:  Understood.

16        THE COURT:  So, again, as I sort of circle back, it

17   seems to me what I'm proposing, and I'm not sensing major

18   pushback, is you guys will continue to talk about this list.  I

19   think ideally Singular should try to turn over an exhaustive

20   list to the extent it can.  The caveat has been noted here on

21   the record that that list would be subject to change based on

22   what may come up in discovery, but otherwise, the list that has

23   been provided to Google -- and understanding Google thinks it's

24   a little large -- represents right now the list of topics that

25   Singular would like to explore through the 30(b)(6)

1    depositions.

2         So, again, the parties will continue to talk, but

3    otherwise, it seems to me, what we should be thinking of is,

4    okay, if we're going to now start depositions, how does it make

5    sense to do this.  Here's a list of topics that we think are

6    related, and therefore, we would propose X.  And I'd like to

7    think that you guys could come to some understanding on that.

8    I suppose Singular probably would be in the driver's seat more

9    than Google on that, but nonetheless, I'd like to think that

10   you guys could figure that out.

11        And so as a result, the way I would deal with the

12   pending motions is the motion for protective order, I think

13   I'm -- did that motion for protective order -- that was also

14   based on the ESI issue, was it not?

15        MR. BRUNS:  It was both, Your Honor.

16        THE COURT:  Okay.  All right.  I'm likely ultimately

17   to deny the motion for a protective order for the reasons noted

18   in court, which is basically we talked it all out and we

19   figured out a way going forward, but I'm going to hold off on

20   that because I guess I'd like to hear back just something that

21   we've looked at what we just got and we do agree that that

22   moots the ESI component.  And then we'll enter the ruling on

23   the motion for a protective order that way.

24        There was a prior motion seeking a status conference,

25   that will just be deemed moot.

1          There's a renewed motion to compel.  I don't even know

2     if it makes sense to talk about that today because I've only

3     gotten one side's briefing.

4          MR. BRUNS:  Yes, I think it's probably premature, Your

5     Honor.

6          THE COURT:  Fair enough.  It's Friday afternoon.  I'm

7     not going to attempt that.  So I will wait to get something on

8     that, and then we'll look at the papers to see what we can do.

9          So with that, is there anything else that we should be

10    discussing this afternoon?

11         Singular, from your vantage point?

12         MR. ERCOLINI:  No, Your Honor.  I think we've covered

13    it.  Thank you.

14         THE COURT:  All right.

15         Google, from your side, anything else that we should

16    be talking about?

17         MR. BRUNS:  No, I don't think so, Your Honor.  Thank

18    you.

19         THE COURT:  Thank you, everybody.  Enjoy the weekend,

20    stay safe, and we'll be in recess.

21         (Adjourned at 2:34 p.m.)

22

23

24

25

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3           I, Linda Walsh, Registered Professional Reporter

 4   and Certified Realtime Reporter, in and for the United States

 5   District Court for the District of Massachusetts, do hereby

 6   certify that the foregoing transcript is a true and correct

 7   transcript of the stenographically reported proceedings held in

 8   the above-entitled matter, to the best of my skill and ability.

 9           Dated this 9th day of May, 2021.

10

11

12                  /s/ Linda Walsh
                     _____

13                  Linda Walsh, RPR, CRR

14                  Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```