# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SINGULAR COMPUTING LLC,

                Plaintiff,

    v.

GOOGLE LLC,

                Defendant.

Civil Action No. 1:19-cv-12551 FDS

Hon. F. Dennis Saylor IV

**GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION
TO STAY PENDING *INTER PARTES* REVIEW**

Google first moved to stay this case late last year, shortly after filing six petitions for *inter partes* review ("IPR"), which targeted all three asserted patents in Singular's First Amended Complaint and collectively challenged all claims asserted in this action.  The Court denied that motion without prejudice as premature because the Patent Trial and Appeal Board ("PTAB") had not yet decided whether to institute review of Google's petitions.  Now the PTAB has instituted IPRs on all three asserted patents.  On May 12, the PTAB instituted review of Google's petition no. IPR2021-00155, targeting asserted Patent No. 10,416,961, making the issue of a stay ripe for decision.[1]  Over the following two days, the PTAB instituted review of Google's two remaining related petitions (IPR2021-00165 and IPR2021-00179), which attack Patent No. 9,218,156 and Patent No. 8,407,273, respectively.  Google therefore brings this renewed motion, asking the Court to stay this litigation pending the PTAB's final written decisions on Google's petitions, which are certain to save substantial judicial and party resources and which must be issued within a year.

Courts liberally stay cases once IPR has been instituted by the PTAB, particularly those cases at similar stages of litigation as this one.  In reviewing motions to stay in these circumstances, courts look to three factors, all of which counsel in favor of a stay here.

***First***, this case is in relatively early stages as it relates to factors relevant for a stay: discovery is far from complete[2], the Court has yet to issue its claim construction order, and no

---

[1] Shortly after the PTAB issued its first decision, Google's counsel reached out to counsel for Singular to discuss the possibility of a stay based on the institution of Google's petitions. Singular refused to stipulate to a stay. Singular stood by that position after the PTAB had instituted IPR related to all three asserted patents on May 14, 2021. *See* Ex A to Declaration of Andrew Bruns in Support of Renewed Motion to Stay ("Bruns Decl.").
[2] Singular has indicated it will not complete its ESI production until June, after the current written discovery deadline and less than two months before the scheduled close of fact discovery, which at this point, will likely need to be extended.

1

trial date is set.  Moreover, the ongoing coronavirus pandemic effectively places this case even farther behind, as any future trial date will almost certainly be delayed along with other civil cases in this District.

*Second*, the outcome of Google's IPR petitions will significantly narrow the scope of this case, if not eliminate it altogether.  In roughly 80% of cases in which the PTAB institutes review and reaches a final written decision ("FWD"), it invalidates some or all of the targeted claims.  And even if the asserted patent claims are not invalidated, the case would still be simplified: Google would be estopped from making certain invalidity arguments and the PTAB will have provided guidance on matters of claim scope.

*Finally*, a stay would not prejudice Singular, which has not sought injunctive relief and is not in competition with Google.  Furthermore, a stay now would have only a limited effect on the case if Singular's claims are not invalidated because final written decisions on the IPR petitions are statutorily required to issue within twelve months.

For these reasons, Google respectfully requests that the Court order a stay of the proceedings pending the PTAB's final written decisions on Google's IPRs.

## I.    BACKGROUND

### A.    Procedural History

When Google filed its initial motion for a stay pending resolution of its IPR petitions on November 16, 2020, ECF No. 91, the parties had made relatively little progress on discovery and even less progress on the merits.  The same is true today.

A significant proportion of discovery remains to be completed in this case.  So much so that the upcoming discovery deadlines—May 24, 2021, for written discovery, July 23, 2021, for fact discovery—are unlikely to remain in place regardless of the outcome of this motion, ECF

No. 59.  The pleadings stage concluded when the Court denied Google's motion to dismiss Singular's First Amended Complaint on June 25, 2020. ECF No. 51.  Since then, the parties have made progress on written discovery, but those efforts remain ongoing.  Although written discovery closes on May 24, 2021, neither party has exhausted any form of discovery request. Bruns Decl. ¶ 3.

Fact discovery does not close until late July, and much remains to be completed. Although Google completed its production of electronically stored information ("ESI") in March, Singular has yet to do so and has indicated that its ESI production will not be complete until early June. Singular's failure to complete its ESI production owes to its own repeated delays in correspondence regarding Google's search terms.  Google has repeatedly tried to work with Singular to narrow those search terms, eliminating or narrowing roughly one-third of its original terms. But Singular has not matched Google's diligence.  For instance, it has repeatedly ignored emails from Google for weeks at a time.  *See* ECF No. 154 at 12-13; ECF No. 163 at 6 n.10.  As a result of Singular's ESI delays, Google has been unable to begin deposing fact witnesses or serve a Rule 30(b)(6) notice on Singular.

Singular has been dilatory in its handling of other written discovery, as well. For instance, in response to requests from Google regarding an interrogatory served on March 5, 2021, Singular waited until May 12, 2021 to supplement its response to provide requested detail about its own product, which it contends embodies the patents-in-suit. Moreover, that response refers to material that Singular promises to produce but has not yet produced. These delays have further hindered Googe's discovery efforts.

Singular's delayed ESI has also forestalled the depositions of certain Google witnesses who allegedly had direct communications with Singular.  Only after Google filed a related

1677528.v3

motion for a protective order, ECF No. 153, did Singular agree to produce, on April 30, 2021,

documents related to those interactions.  ECF No. 175.  The parties are now working to schedule

the deposition of Google witnesses who fit that description, but no such depositions have yet

been scheduled.  Singular has also deposed a former Google employee—Catherine Tornabene—

and a current Google employee—David Patterson. In total, the parties have thus far completed

just three of the 32 depositions they are allotted pursuant to their joint Local Rule 16.1(d)

statement.  ECF No. 54 at 5.

Singular's handling of Google's Rule 30(b)(6) deposition has further complicated matters

and delayed discovery.  Singular served a 102-topic notice pursuant to Rule 30(b)(6) on October

2, 2020.  *See* ECF No. 155-1.  Over the course of the next three weeks, Google twice wrote to

Singular, noting objections to this notice and requested to meet and confer: once in a letter and

later in formal objections.  ECF Nos. 155-2, 155-3.  Despite Rule 30(b)(6)'s requirement to meet

and confer on the topics of examination[3], Singular ignored both Google's letter and its formal

objections for more than five months.  Instead of engaging with Google's objections, Singular

sought to avoid them by serving a new notice on March 10, 2020, containing a subset of 12 of

the original 102 topics and promising to serve the rest (and possibly more) in subsequent, serial

Rule 30(b)(6) notices.  ECF No. 155-4; *see also* EFC No. 154 at 4.  Google objected to this

approach as inefficient and inconsistent with the Federal Rules of Civil Procedure, and ultimately

moved for a protective order requiring Singular to (a) serve an exhaustive list of topics for

examination, and (b) meet and confer with Google as to those topics as required by Rule

30(b)(6).  ECF. No. 153.  At a hearing held on April 30, 2021, Magistrate Judge Cabell

---

[3] *See* Fed. R. Civ. P. 30(b)(6) ("Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination.").

instructed Singular to serve a pared down, exhaustive list of deposition topics and confer with

Google as to a final list.  Ex. B to Bruns Decl. (April 30, 2021 Tr.) at 22 ("Singular should try to

turn over an exhaustive list to the extent it can.").  Singular served a third Rule 30(b)(6) notice on

May 5, 2021, Ex. F to Bruns Decl.  Google responded with formal objections on May 12, 2021.

The parties' negotiations as to a final list of terms remains ongoing.

As to the development of the merits, this case remains in its early stages.  The Court held

a *Markman* hearing on March 31, 2021, and its related order is pending.  Expert discovery has

not yet begun.  No dispositive motions have been filed.  And no trial date has been set.

> **B.**     ***Inter Partes* Review**

Between October 30 and November 6, 2020, Google filed six petitions for *inter partes*

review ("IPR") with the Patent Office's Patent Trial and Appeal Board ("PTAB").  *See* ECF

Nos. 92-1, 92-2, 92-3, 92-4, 92-5, 92-6, Petitions for *Inter Partes* Review.  Congress established

IPR proceedings to "provid[e] a more efficient system for challenging patents that should not

have issued" and "to establish a more efficient and streamlined patent system that will improve

patent quality and limit unnecessary and counterproductive litigation costs."  H.R. Rep. No. 112–

98, 2011 U.S.C.C.A.N. 67, 69, at 39–40

Collectively, Google's petitions challenge the validity of the four asserted claims in this

case, as well as dozens of additional claims.  Specifically, as to each asserted patent, Google filed

two petitions: in one, Google argued that the challenged claims would have been obvious over a

third-party's published patent application ("Dockser") that disclosed a processor that performed

the low-precision, high-dynamic range operations recited in Singular's claims (the "Dockser

petitions"); in the other Google argued that the challenged claims were neither adequately

described nor enabled by an earlier application in the patents' priority chain, thereby making

Singular's own published application indisputable prior art (the "priority petitions").  Google

also explained to the PTAB why both petitions should be granted as to each asserted patent in

these circumstances, where one of the petitions is based on failures to satisfy 35 U.S.C. § 112 in

a published parent application.  See ECF Nos. 92-7.

The PTAB accorded Google's first set of petitions a filing date of October 30, 2020 on

November 13, 2020.  ECF No. 92-8.  Shortly thereafter, Google moved for a stay pending IPR.

ECF No. 90. The Court denied that motion without prejudice as premature prior to institution,

explicitly noting that it "may revisit the issue, as appropriate, should an IPR be instituted."  ECF.

No. 103.

That condition precedent has now been met.  On May 12, 2021, the PTAB instituted IPR

as to one of the two petitions in Google's first set of petitions, directed to Patent No. 10,416,961.

Ex. C. to Bruns Decl.  That petition, number IPR2021-00155, is one of the Dockser petitions

described above.  The PTAB concluded there is "a reasonable likelihood that [Google] would

prevail with respect to all claims challenged in the Petition." *Id.* at 2. The next day, the PTAB

reached the same conclusion as to a second of Google's Dockser petitions, number IPR2021-

00165, which targets Patent No. 9,218,156. Ex. D to Bruns Decl.  And it instituted review of

Google's third and final Dockser petition—number IPR2021-00179, targeting Patent No.

8,407,273—on May 14, 2021. Ex. E to Bruns Decl.[4]

Having instituted IPRs, the PTAB must now issue a Final Written Decision upholding the

claims under review or canceling them within 12 months (*i.e.*, by May 2022). After the PTAB

issues a final written decision, the petitioner is estopped in subsequent litigation from asserting

---

[4] The PTAB denied Google's priority-based petition targeting the '961 patent on May 12, 2021
and similar priority-based petitions attacking the '156 patent on May 13, 2021 and the '273
patent on May 14, 2021.

invalidity on any ground that it raised or reasonably could have raised during the review. *See* 35 U.S.C. § 315(e)(2).  In cases like this one, where the PTAB institutes review, the vast majority of its final written decisions result in a finding of unpatentability.  For instance, in the first ten months of 2020, the PTAB issued 434 final written decisions.  In 247 of those cases (57%), the PTAB found all claims unpatentable; in another 94 cases (22%), it found some claims unpatentable. *See* Matthew Johnson, *JDSupra*, *"Final FY 2020 PTAB Statistics Posted,"* https://www.jdsupra.com/legalnews/final-fy-2020-ptab-statistics-posted-56588/#:~:text=Over%20the%20last%2010%20months,%25)%20found%20no%20claims%20unpatentable.

## II.      LEGAL STANDARD

"District courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings," pending the resolution of an IPR petition.  *Aplix IP Holdings Corp. v. Sony Computer Ent., Inc.*, 137 F. Supp. 3d 3, 4 (D. Mass. 2015) (quoting *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008)).  "A stay is appropriate where it is likely to conserve judicial and party time, resources, and energy." *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 13-12418-DJC, 2014 WL 4804738, at *2 (D. Mass. Sept. 25, 2014) (internal quotations omitted).  Courts across the country, including in this district, are particularly likely to utilize their discretion to stay litigation where, as here, the PTAB institutes an IPR.  *See, e.g.*, *Aplix IP Holdings,* 137 F. Supp. 3d at 4 (granting defendant's motion to stay pending resolution of IPR); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015) (same); *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, No. 3:15-cv-30005-MGM, 2016 WL 1735330, at *5 (D. Mass. Apr. 28, 2016) (same).  In fact, several courts have recognized a "liberal policy in favor of granting motions to stay pending the outcome of

1677528.v3

proceedings pending the outcome of USPTO reexamination or reissuance proceedings," such as

IPR.  *See, e.g.*, *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1035 (2015) (citing

*Pragmatus AV, LLC v. Facebook, Inc.*, No. 11–CV–02168–EJD, 2011 WL 4802958, at *2 (N.D.

Cal. Oct. 11, 2011)).

Courts typically consider three factors when deciding a motion to stay patent litigation

while an IPR is pending, regardless of whether the IPR is pre- or post-institution: "(1) the stage

of the litigation, including whether discovery is complete and a trial date has been set;

(2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay

will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *ACQIS,*

*LLC*, 109 F. Supp. 3d at 356-57.

### III.    ARGUMENT

**A.    All Three Relevant Factors Favor a Stay.**

   **1.    This case is at a sufficiently early stage to benefit from a stay.**

The first factor concerns "the stage of litigation, including whether discovery is complete

and a trial date has been set."  *SurfCast Inc. v. Microsoft Corp.*, No. 2:12-cv-333-JDL, 2014 WL

6388489, at *1 (D. Maine. Nov. 14, 2014).  As a general rule, "[t]he earlier the stage of

proceedings, the greater the reason to grant a stay."  *Id.* at *2.  This is because staying a case

early on in the litigation is more likely to save time and judicial resources and the stay

"maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing

invalid claims."  *Neste Oil Oyj v. Dynamic Fuels, LLC,* No. 12-662-GMS, 2013 WL

424754, at*5 (D. Del. Jan 31, 2013) (quoting *SenoRx, Inc. v. Hologic, Inc.,* No. 12-173-LPS-

CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013)).  "In assessing the stage of litigation,

courts routinely consider whether discovery is complete, whether a trial date has been set, the

status of pending pretrial motions, and pretrial orders."  *Destination Maternity Corp. v. Target*

*Corp.*, 12 F. Supp. 3d 762, 770 (2014) (citing *Visual Interactive Phone Concepts, Inc. v. Samsung Telecomms. Am., LLC*, No. 11–12945, 2012 WL 1049197, at \*4 (E.D. Mich. Mar. 28, 2012)).

This case was in a nascent phase when Google first moved to stay in November 2020. Relatively little has changed in the interim, and the case remains in a relatively early stage despite being filed in late-December 2019.  In fact, due to the lack of progress on various discovery fronts, it is likely that the fast-approaching written (May 24, 2021) and fact discovery (July 23, 2021) cutoffs, will need to be extended.

As a result of Singular's voluntary amendment following Google's motion to dismiss the initial complaint, the pleadings were not settled until June 25, 2020, nearly six months after Singular first filed.  Since then, written discovery has begun and the parties briefed and argued claim construction.  But the Court has not yet issued its claim construction ruling and, due largely to Singular's delays in discovery, relatively little else has happened in the case.  Google has produced its core technical documentation and ESI, among other things, while Singular has only provided small "rolling" document productions containing 4,321 documents and its ESI production remains at least several weeks from being completed.  As a result, Google has been unable to start deposing Singular witnesses or serve its Rule 30(b)(6) notice.  Singular's production delays have also limited Google's ability to move forward with third-party discovery, as many of Google's search terms target third parties who evaluated the patented technology.

Singular's handling of its own Rule 30(b)(6) notice has stood in the way of further progress.  By refusing to meet and confer with Google and threatening to serve serial Rule 30(b)(6) deposition notices over the course of weeks or months, Singular forced Google to move for a protective order to require Singular to serve an exhaustive notice up front.  ECF No. 153.

On April 30, 2021, the magistrate judge instructed Singular to serve a narrowed and complete Rule 30(b)(6) notice, Ex. B to Bruns Decl. at 22, which Singular subsequently served on May 5, 2021, Ex. F to Bruns Decl.  The parties are in the process of conferring on a final list of topics for examination, but no corporate deposition of Google has yet been scheduled.  As a result, the depositions of likely Google corporate designees in their individual capacity have also been delayed subject to an agreement on a final set of topics.

As noted, the lack of progress on various discovery fronts makes it likely that the fast-approaching fact discovery cutoff of July 23, 2021, will need to be extended.  For instance, with just two months remaining to the end of fact discovery, the parties have completed just a combined three depositions of the 32 allowed for under the parties' joint discovery statement. ECF No. 54.  Moreover, Singular previously indicated it planned to complete its ESI production by mid-May but has since walked back that commitment.  It now says that its ESI production will not be complete until at least early June.  *See* Ex. G to Bruns Decl. (May 7, 2021 email from Porto to Ercolini).  If Singular is unable to complete its production in short order, the fact discovery cutoff will likely need to be extended.  An eventual extension to the discovery cutoff here would be particularly sensible, given that a trial date has not yet been set.  And if discovery is ultimately extended, this factor of the Court's analysis will even more decidedly counsel in favor of a stay.

The merits of the case are in an even earlier stage than fact discovery.  The Court has not issued a claim construction order.  Expert discovery has not begun, summary judgment motions have not been filed, and no trial has been scheduled.[5]  Courts have commonly stayed

---

[5] The coronavirus pandemic may effectively place this case earlier in its timeline than a case at a similar stage of discovery and merits development would have been prior to the pandemic.  As a case that was filed just months before lockdown began and has never had a trial

proceedings at this stage in litigation, pending the resolution of IPRs.  *See, e.g.*, *Gryphon*

*Networks Corp. v. Contact Ctr. Compliance Corp.*, 792 F. Supp. 2d 87, 92 (D. Mass. 2011)

(staying case following *Markman* hearing and prior to claim construction opinion where parties

engaged in substantial written discovery and were beginning deposition process); *Finjan, Inc.*,

139 F. Supp. 3d at 1034  (same); *Koninklijke Philips N.V. v. Wangs All. Corp.*, No. 1:14-cv-

12298-DJC, ECF No. 156 (D. Mass. Jan. 19, 2016) (granting stay where the parties had briefed

and argued claim construction, but the court had not issued a related ruling and no trial date had

been set).  In fact, courts in this district and elsewhere routinely grant motions to stay pending

IPR even where the case is farther along in litigation than this one. *See, e.g., SurfCast,* 2014 WL

6388489, at *2 (granting stay where "discovery is complete, a *Markman* order has been issued,

and briefing is complete on the pending summary judgment, *Daubert,* and related

motions"); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1026 (2014)

(granting stay where "discovery has been completed," the parties "have taken a dozen

depositions," and a claim construction order has issued as to all of the patents-in-suit).

The nature of the remaining discovery further counsels in favor of a stay.  As plaintiff's

counsel has previously acknowledged, the majority of Google's anticipated depositions in this

case will involve third parties, as Singular appears to have few employees beyond its founder,

Dr. Joseph Bates.  *See* ECF No. 91 at 8. These depositions have thus far been delayed by, among

---

date set, the timing of trial in this case may be affected by the backlog of criminal and even older
civil cases that have priority. This means that even if any triable claims survive the IPR, the
actual delay resulting from any stay is even less likely to be substantial than it would otherwise
be absent the pandemic.  By contrast, the PTAB's schedule is not impacted by the pandemic and
its final written decisions on Google's petitions are subject to a statutory deadline of one year
from the date of institution.  35 U.S.C. § 316(a)(11).

1677528.v3

other things[6], Singular's slow ESI production.  But should the Court deny this motion, third-party depositions would necessarily be taken shortly thereafter.  Subjecting third parties to potentially unnecessary depositions would be premature and wasteful.  Not only would a stay preserve scarce judicial and party resources, but it could help these third parties avoid the time and expense of preparing for and giving depositions that may ultimately be for naught.

For these reasons, this factor weighs in favor of a stay.

## 2.    A stay will simplify the issues in this case.

The second factor assesses "whether a stay will simplify the issues in question and the trial of the case."  *SurfCast*, 2014 WL 6388489, at *1.  As another court in this District has recognized, "[a] stay no doubt simplifies the issues where all of the patents-in-suit are subject to IPR."  *SCVNGR*, 2014 WL 4804738, at *10 (citing *Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. SACV 12-21-JST (JPRx), 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012)).  That is the case here.  As noted, the PTAB instituted review on all three of Google's Dockser-based petitions, which collectively target all three asserted patents and all four asserted claims in this case.  Courts in this district and elsewhere have granted stays pending the PTAB's final decision even where, unlike here, the defendant's instituted petitions targeted *some but not*

---

[6] For instance, Singular's Second Supplemental Response to Google's Interrogatory No. 11 sought all facts related to Singular's attempts to commercialize.  It was the subject of Google's first motion to compel in this case.  ECF No. 116.  Only after that motion was filed did Singular agree to serve a response to Interrogatory No. 11.  *See* ECF No. 129 at 3.  Shortly thereafter, Singular produced a document suggesting that a third party not named in Singular's response was at one time a potential "new evaluation customer" with whom Singular "was negotiating." Google reached out to Singular for an explanation of this oversight on April 27, 2021.  *See* Ex. H to Bruns Decl. (May 7, 2021 email from Ercolini to Porto).  Singular did not respond until a week later, at which point it indicated that it was withholding further information for lack of "third-party consent."  Singular promised to supplement its interrogatory response once it received such consent, but it has not yet done so. By failing to timely identify this third party or obtain its consent, Singular further delayed Google's ability to complete necessary discovery in this case.

*all* asserted claims.  *See Koninklijke Philips N.V.*, No. 1:14-cv-12298-DJC, ECF No. 156 (D.

Mass. Jan. 19, 2016); *Serv. Sols. U.S., LLC v. Autel.US Inc.*, No. 13–10534, 2015 WL 401009, at

\*3 (E.D. Mich. Jan. 28, 2015) ("[T]he Court is not convinced that a stay is inappropriate merely

because only one patent is under review. Though a stay would have greater potential to simplify

the issues if all seven patents were involved in the IPR proceeding, this does not mean that a

more limited review would not help simplify the case."); *Finjan, Inc. v. FireEye, Inc.*, No. C13–

03133, 2014 WL 2465267, at \*4 (N.D. Cal. June 2, 2014) ("When there are overlapping issues

between the re-examined patents and other non-reexamined patents-in-suit, courts have found

that staying the entire case is warranted."); *Bonutti Skeletal Innovations, LLC v. Zimmer*

*Holdings, Inc.*, No. 12–CV–1107, 2014 WL 1369721, at \*5–6 (D. Del. Apr. 7, 2014) ("Contrary

to [the plaintiff's] suggestion, there is no requirement that the issues in the IPR be identical to

those in the litigation.").

        Given its decision to institute review, history teaches that the PTAB is highly likely to

invalidate some or all of Singular's claims.  Where, as here, the PTAB institutes *inter partes*

review, its final written decision contains a finding of unpatentability of some or all claims 80%

of the time.  *See supra* Section I.B.  The PTAB recognized as much in granting Google's

petitions, noting that "[Google] has shown a reasonable likelihood that it would prevail with

respect to all claims challenged."   Ex. C to Bruns Decl. at 2.  But regardless of their outcomes,

Google's IPR petitions are certain to simplify the issues in this case.  If Google prevails outright

on each of its petitions, then all three patents-in-suit will be held invalid and "any pending

litigation based on those invalid claims becomes moot."  *SCVNGR*, 2014 WL 4804738, at \*8.

But "even if most or all of the claims survive *IPR*, the [Board's] order will facilitate trial by

providing the court with the [Board's] expert opinion and likely will clarify the scope of the

13

1677528.v3

claims remaining for trial." *Irwin Indus. Tool Co.*, 2016 WL 1735330, at *3.  "Further, 'if all the

asserted claims survive [IPR], the case could still be simplified because the defendant[] would be

bound by the estoppel provisions for [IPR] and thus could not raise before this court any

arguments that they raised or reasonably could have raised at the PTO.'"  *Id*. (quoting *Verinata*

*Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *2 (N.D. Cal.

Jan. 13, 2014)).

Regardless of the outcome of the PTAB's Final Written Decisions, its analysis will help

frame the issues in this case. *See also Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-

3970-RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) (noting that "[a] stay

effectuates the intent of the AIA by allowing the agency with expertise to have the first crack at

cancelling any claims that should not have issued in the patents-in suit before costly litigation

continues") (citing H.R. Rep. 11298 (part I), at 39-40 (2011)). For instance, regarding the claim

construction issues currently pending before the Court, the institution decisions indicate that the

PTAB's interpretation of the claims is consistent with Google's interpretation.[7]

---

[7] In particular, the PTAB confirmed that the LPHDR unit does not require any particular
hardware structure. *Compare* Ex. C to Bruns Decl. at 18 ("As Petitioner points out, the claim
does not recite any structural characteristics of the execution unit . . . .") *with* ECF No. 138 at 2
(Singular construing the "execution unit" to require "an arithmetic circuit paired with a memory
circuit"). The PTAB also confirmed that the relevant "possible valid inputs" are those to the first
operation rather than "to the LPHDR unit overall." *Compare* Ex. C to Bruns Decl. at 21-22
("The relevant inquiry thus looks at all possible valid inputs to the first operation—not all
possible valid inputs to the LPHDR execution unit overall, or all possible valid inputs to other
operations. . . . The relevant possible valid inputs for assessing the imprecision limitation,
therefore, are the inputs to that operation.") *with* ECF No. 111 at 17 ( explaining Google's
position that "the LPHDR execution unit operates on the numerical value represented by the
'first input signal'").

In short, regardless of what the PTAB does with Google's IPR petitions, the result will dramatically simplify the issues in this case. Accordingly, this factor, too, weighs in favor of staying the case.

**3.      A stay would neither unduly prejudice nor tactically disadvantage Singular.**

The third and final factor weighs "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *SurfCast*, 2014 WL 6388489, at \*1. Because "staying any case pending an IPR risks delaying the final resolution of the dispute," the "potential for delay does not, by itself, establish *undue* prejudice." *SCVNGR*, 2014 WL 4804738, at \*9 (quoting *Neste Oil Oyj,* 2013 WL 424754, at \*2) (emphasis in original). A party seeking to avoid a stay must, therefore, establish undue prejudice separate from the potential for delay, such as a dilatory motive on the part of the party seeking a stay, unavailability of legal remedies once the stay is lifted, or the parties' relationship as direct competitors in the marketplace. *See Irwin Indus. Tool Co.*, 2016 WL 1735330, at \*4 ("Courts are more likely to find undue prejudice when the parties are direct competitors." (quoting *Autoalert, Inc. v. Dominion Dealer Sols.*, LLC, No. SACV 12-1661-JST (JPRx), 2013 WL 8014977, at \*2 (C.D. Cal. May 22, 2013)); *ACQIS, LLC,* 109 F. Supp. 3d at 358 (finding that party's decision to not seek preliminary injunction undermined its claim of undue prejudice because it would have its legal and equitable remedies available when the stay lifted); *SCVNGR*, 2014 WL 4804738, at \*9 (noting that a party's dilatory motive can weigh against a stay).

As the parties' briefing on Google's initial motion to stay made clear, no such undue prejudice exists here. Google has acted expeditiously at every turn. An IPR petitioner must file within one year of the date on which it is served with a complaint alleging infringement of the patent. 35 U.S.C. § 315(b). Here, Google filed its petitions within a few months of the Court's denial of its motion to dismiss and just two months after Singular identified the claims it was

15

asserting.  Google would have been hard pressed to file earlier.  IPR petitions are a significant undertaking—the six petitions here span a total of 546 pages, excluding their voluminous exhibits—and Singular did not identify its asserted claims or its infringement contentions until September 4, 2020—roughly two months before Google filed its petitions.  Further complicating matters, Singular explicitly said it reserved the right to assert (or re-assert) additional claims not included in its infringement contentions just weeks before Google filed its petitions.  Singular's explicit reservation of its right to expand this case beyond the currently asserted claims required Google to challenge in its petitions dozens more claims than the four asserted claims, which necessitated additional preparation time.

On these facts, Google's filing cannot reasonably be considered dilatory.

In fact, Google filed far more promptly than other petitioners whose filings have been found not to be dilatory.  For instance, courts have refused to find dilatory motive where petitioners file just before the statutory deadline.  *See Software Rights Archive, LLC*, 2013 WL 5225522, at *6 ("Although defendants did wait nearly a year to file the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable under the facts here."); *Asetek Holdings, Inc. v. Cooler Master Co., Ltd*., No. 13–cv–00457–JST, 2014 WL 1350813, at * 4 (N.D. Cal. Apr. 3, 2014) ("Delay alone [within the statutory deadline] does not usually constitute undue prejudice because parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework.") (citations and internal quotations omitted); *Delphix Corp. v. Actifio, Inc.*, No. 13–cv–04613–BLF, 2014 WL 6068407, at *3 (N.D. Cal. Oct. 13, 2015) ("[W]hile the Court does not condone gamesmanship, it will not require a patent infringement defendant to file a petition for *inter partes* review significantly earlier than the time allowed by statute.").  This is true even

where petitioners file on the final day of the statutory window. *See Finjan, Inc.*, 139 F. Supp. 3d at 1036.

Nor did Google miss a beat in seeking a stay after filing its petitions. Google filed its last IPR petition on Friday, November 6, 2020; it raised the prospect of a stay on the very next business day during the November 9, 2020 status conference. Google wrote a letter to Singular regarding a stay two days later, ECF No. 92-10, Singular responded, rejecting the idea of any stay two days after that, ECF No. 92-11, and Google filed its initial motion to stay one court day later, ECF No. 90. In short, Google moved expeditiously after filing its IPR petitions. The same is true of Google's efforts in bringing this renewed motion, which was filed just two days after the PTAB's institution decision on Google's first petitions and just hours after the PTAB's institution decision on Google's last petitions.

On the other side of this coin, Singular's conduct and prior briefing demonstrates that it would not be unduly prejudiced by a stay. Singular seeks only monetary damages and it does not allege—nor is there any reason to believe—that it competes with Google. In fact, Singular admitted that the parties are not competitors by not arguing otherwise in opposition to Google's initial motion to stay. *See* ECF No. 101. Moreover, as illustrated in documents that Singular has itself cited in its amended complaint and its motion to deem admitted, ECF No. 76, the accused Google TPUs were public knowledge long before Singular filed this suit. Moreover, the asserted patents issued long before Singular filed suit: the '156 patent issued in 2015, more than four years before Singular chose to assert it here. Similarly, in its opposition to Google's initial motion to stay, Singular described Google's alleged infringement as "open, notorious, and continuous." ECF No. 101 at 5. By not seeking a preliminary injunction, despite the public nature of Google's TPUs, Singular has further undermined any possible claim of undue prejudice

17

that might be caused by a stay pending institution of IPR proceedings.  *ACQIS, LLC*, 109 F. Supp. 3d at 358.

For these reasons, there is no risk that a delay in this litigation pending a final written decision on Google's IPR petitions will prejudice Singular, unduly or otherwise.  This factor— like the other two—weighs in favor of a stay.

### IV.     CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant a stay of the case, pending the PTAB's final written decisions on Google's IPR petitions on the asserted patents.

Respectfully submitted,

Dated:  May 14, 2021

By:     */s/ Matthias Kamber*
     Gregory F. Corbett (BBO #646394)
     gregory.corbett@wolfgreenfield.com
     Nathan R. Speed (BBO # 670249)
     nathan.speed@wolfgreenfield.com
     Elizabeth A. DiMarco (BBO #681921)
     elizabeth.dimarco@wolfgreenfield.com
     WOLF, GREENFIELD & SACKS, P.C.
     600 Atlantic Avenue
     Boston, MA 02210
     Telephone: (617) 646-8000
     Fax: (617) 646-8646

     Asim Bhansali (*pro hac vice*)
     abhansali@kblfirm.com
     KWUN BHANSALI LAZARUS LLP
     555 Montgomery Street, Suite 750
     San Francisco, CA 94111

     Matthias Kamber (*pro hac vice*)
     mkamber@keker.com
     KEKER, VAN NEST & PETERS LLP
     633 Battery Street
     San Francisco, CA 94111-1809

     *Attorneys for Defendant Google LLC*

18

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.


/s/ Nathan R. Speed
Nathan R. Speed