# Exhibit C

Trials@uspto.gov                                          Paper 16
571-272-7822                                    Entered: May 12, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

―――――――――――

BEFORE THE PATENT TRIAL AND APPEAL BOARD

―――――――――――

GOOGLE LLC,
Petitioner,

v.

SINGULAR COMPUTING LLC,
Patent Owner.

―――――――――――

IPR2021-00155
Patent 10,416,961 B2

―――――――――――

Before JUSTIN T. ARBES, KRISTI L. R. SAWERT, and
JASON M. REPKO, *Administrative Patent Judges.*

PER CURIAM.

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2021-00155
Patent 10,416,961 B2

# I.  INTRODUCTION

Google LLC ("Petitioner") filed a petition to institute *inter partes* review of claims 1–5, 10, 13, 14, 21, and 23–25 of U.S. Patent No. 10,416,961 B2 (Ex. 1001, "the '961 patent"). Paper 2 ("Pet."). Singular Computing LLC ("Patent Owner") filed a Preliminary Response. Paper 7 ("Prelim. Resp.").

To institute an *inter partes* review, we must determine "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). For the reasons discussed below, Petitioner has shown a reasonable likelihood that it would prevail with respect to all claims challenged in the Petition. And we have not been provided a sufficient reason to exercise our discretion to deny institution. Thus, we institute an *inter partes* review.

## A.  Related Matters

According to the parties, the '961 patent has been asserted in *Singular Computing LLC v. Google LLC*, No. 1:19-cv-12551-FDS (D. Mass.). *See* Pet. xi; Paper 6, 1 (Mandatory Notices).

According to the parties, the '961 patent is also challenged in IPR2021-00154. *See* Pet. x; Paper 6, 1. The parties also identify the following *inter partes* reviews as related: IPR2021-00164 and IPR2021-00165 (U.S. Patent No. 9,218,156 B2); and IPR2021-00178 and IPR2021-00179 (U.S. Patent No. 8,407,273 B2). *See* Pet. xi; Paper 6, 1.

IPR2021-00155
Patent 10,416,961 B2

## B. The '961 Patent

The '961 patent, entitled "Processing with Compact Arithmetic
Processing Element," issued on September 17, 2019. Ex. 1001, code (45).
The '961 patent relates to "computer processors or other devices which use
low precision high dynamic range (LPHDR) processing elements to perform
computations (such as arithmetic operations)." *Id.* at 5:58–62.

According to the '961 patent, conventional CPU chips make
inefficient use of transistors as a tradeoff for delivering the high precision
required by many applications. *Id.* at 2:62–3:10. For example, conventional
CPU chips "perform[] exact arithmetic with integers typically 32 or 64 bits
long and perform[] rather accurate and widely standardized arithmetic with
32 and 64 bit floating point numbers," but require "on the order of a million
transistors to implement the arithmetic operations." *Id.* at 3:3–10. According
to the '961 patent, "many economically important applications . . . are not
especially sensitive to precision and . . . would greatly benefit, in the form of
application performance per transistor, from the ability to draw upon a far
greater fraction of the computing power inherent in those million
transistors." *Id.* at 3:11–17. But "[c]urrent architectures for general purpose
computing fail to deliver this power." *Id.* at 16–17.

The '961 patent is therefore "directed to a processor or other device,
such as a programmable and/or massively parallel processor or other device,
which includes processing elements designed to perform arithmetic
operations . . . on numerical values of low precision but high dynamic range
('LPHDR arithmetic')." *Id.* at 1:66–2:15. According to the '961 patent,
"'low precision' processing elements perform arithmetic operations which
produce results that frequently differ from exact results by at least 0.1%." *Id.*

at 2:16–19. In addition, "high dynamic range" processing elements "are capable of operating on inputs and/or producing outputs spanning a range at least as large as from one millionth to one million." *Id.* at 2:23–27. Figure 6, reproduced below "is an example of an LPHDR arithmetic unit according to one embodiment" of the '961 patent.



FIG. 6 provides "an example design for an LPHDR arithmetic unit according to one embodiment of" the '961 patent. Ex. 1001, 2:44–45.

As shown in Figure 6, LPHDR arithmetic unit 408 receives two inputs: A input (602a) and B input (602b), and produces output 602c. *Id.* at 12:55–56. The LPHDR arithmetic unit "is controlled by control signals 412*a-d*, coming from the CU 106, that determine which available arithmetic operation will be performed on the inputs 602*a-b*." *Id.* at 12:62–65. According to the '961 patent, Figure 6 illustrates an embodiment where "all the available arithmetic operations are performed in parallel on the inputs 602*a-b* by adder/subtractor 604, multiplier 606, and divider 608." *Id.* at 12:65–13:1. Finally, multiplexers (MUXes) 610a and 610b choose and send the desired result from among the outputs of the adder/subtractor, multiplier,

IPR2021-00155
Patent 10,416,961 B2

and divider to output 602c. *Id.* at 13:5–14. The '961 patent provides that "[t]he computing architecture literature discusses many variations which may be incorporated into the embodiment illustrated in FIG. 6." *Id.* at 13:12–14.

According to the '961 patent, the "computational tasks" that the LPHDR arithmetic units can perform "enable a variety of practical applications." *Id.* at 17:30–33. The '961 patent provides, as examples, applications including "finding nearest neighbors," *id.* at 17:41–21:43, "distance weighted scoring," *id.* at 21:45–22:35, and "removing motion blur in images," *id.* at 22:37–23:48.

### C.   Claims

Of the claims challenged by Petitioner, claims 1, 10, and 21 are independent. Claim 1 is reproduced below.

> 1. A device comprising:
>
> at least one first low precision high dynamic range (LPHDR) execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,
>
> wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=10% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X % of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=0.2% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input; and

IPR2021-00155
Patent 10,416,961 B2

at least one first computing device adapted to control the operation of the at least one first LPHDR execution unit.

Ex. 1001, 30:17–37.

### D.  Evidence

| Name | Reference | Exhibit No. |
|------|-----------|-------------|
| Dockser | US 2007/0203967 A1, published Aug. 30, 2007 | 1007 |
| Tong et al. ("Tong") | "Reducing Power by Optimizing the Necessary Precision/Range of Floating-Point Arithmetic," IEEE Transactions on Very Large Scale Integration (VLSI) Systems, Vol. 8, No. 3 (June 2000) | 1008 |
| MacMillan | US 5,689,677, issued Nov. 18, 1997 | 1009 |

### E.  Asserted Grounds

Petitioner asserts that claims 1–5, 10, 13, 14, 21, and 23–25 are unpatentable on the following grounds listed in the table below. Pet. 4.

| Claims Challenged | 35 U.S.C. § | Reference(s)/Basis |
|-------------------|-------------|--------------------|
| 1, 2, 4, 5, 10, 13, 14 | pre-AIA 103(a)[1] | Dockser |
| 1, 2, 4, 5, 10, 13, 14, 21, 24, 25 | pre-AIA 103(a) | Dockser, Tong |
| 1–5, 10, 13, 14 | pre-AIA 103(a) | Dockser, MacMillan |
| 1–5, 10, 13, 14, 21, 23–25 | pre-AIA 103(a) | Dockser, Tong, MacMillan |

## II.  ANALYSIS

### A.  Level of Ordinary Skill in the Art

According to Petitioner,

---

[1] Congress amended §§ 102 and 103, among other sections, when it passed the Leahy-Smith America Invents Act (AIA). Pub. L. No. 112–29, § 3(c), 125 Stat. 284, 287 (2011). Here, Petitioner's challenges are based on pre-AIA statutes. *See* Pet. 4.

IPR2021-00155
Patent 10,416,961 B2

> A [person of ordinary skill in the art ("POSA")] in 2009 would
> have had at least a bachelor's degree in Electrical Engineering,
> Computer Engineering, Applied Mathematics, or the equivalent,
> and at least two years of academic or industry experience in
> computer architecture.

Pet. 9 (citing Goodin Decl.[2] ¶ 43).

Patent Owner does not address the level of ordinary skill in the art in its Preliminary Response. Based on the record presented, including our review of the '961 patent and the types of problems and solutions described in the '961 patent and cited prior art, we agree with Petitioner's proposed definition of the level of ordinary skill in the art with one exception. Arguably, the term "at least" creates unnecessary ambiguity. Thus, we delete that term from Petitioner's definition, and otherwise apply Petitioner's definition for purposes of this Decision. *See, e.g.*, Ex. 1001 1:14–62 (describing in the "Background" section of the '961 patent various conventional methods of computation and their alleged deficiencies).

## B.   Claim Construction

We need only construe terms that are in controversy and only to the extent necessary to resolve the controversy. *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017).

Petitioner states that the terms of the challenged claims should be "given their ordinary and customary meaning as understood by a [person of ordinary skill in the art] in accordance with the specification and prosecution history," but does not propose any express interpretations. Pet. 9. Patent Owner disputes the construction of "low precision high dynamic range

---

[2] The declaration of Richard Goodin, P.E. ("Goodin Decl.") is Exhibit 1003.

IPR2021-00155
Patent 10,416,961 B2

(LPHDR) execution unit" that Petitioner proposed in the related district court case (i.e., "low precision and high dynamic range processing element designed to perform arithmetic operations on numerical values"), arguing that Dockser does not teach an LPHDR execution unit because "the processing element itself must be fairly characterized as 'low precision'" and cannot be an execution unit "whose subprecision can be selectively reduced." Prelim. Resp. 13–14 (citing Ex. 2001, 13–17) (emphasis omitted). We conclude that no terms require express interpretation at this time, and address the parties' arguments regarding whether Dockser teaches the recited LPHDR execution unit below. *See infra* § II.C.

### C.  Obviousness over Dockser

Dockser discloses performing floating-point operations with a floating-point processor having selectable precision. Ex. 1007, code (57). Figure 1 of Dockser is reproduced below.

IPR2021-00155
Patent 10,416,961 B2



FIG. 1

Figure 1 depicts floating-point processor (FPP) 100 including floating-point register file (FPR) 110 for storing floating-point numbers, floating-point controller (CTL) 130 "used to select the subprecision of the floating-point operations using a control signal 133," and floating-point mathematical operator (FPO) 140 with components "configured to perform the floating-point operations," such as floating-point adder (ADD) 142 and floating-point multiplier (MUL) 144. *Id.* ¶¶ 15, 18, 19.

Figure 2 of Dockser is reproduced below.

IPR2021-00155
Patent 10,416,961 B2



**FIG. 2**

Figure 2 depicts an exemplary data structure for floating-point register file 110 including 16 addressable register locations 200, each "configured to store a 32-bit binary floating-point number" as "a 1-bit sign 202, an 8-bit exponent 204, and a [23-bit] fraction 206." *Id.* ¶ 17.

"[F]or each instruction of a requested floating-point operation, the relevant computational unit . . . receive[s] from the floating-point register file 110 one or more operands stored in one or more of the register locations" and executes the instruction "at the subprecision selected by the floating-point controller 130." *Id.* ¶¶ 23–24. The precision of the floating-point operation can be reduced by "caus[ing] power to be removed from the floating-point register elements for the excess bits of the fraction that are not required to meet the precision specified by the subprecision select bits" written to the control register. *Id.* ¶¶ 6, 25–26. For example, "if

each location in the floating-point register file contains a 23-bit fraction, and the subprecision required for the floating-point operation is 10-bits, only the 9 commonly significant bits (MSBs) of the fraction are required; the hidden or integer bit makes the tenth." *Id.* ¶ 26. "Power can be removed from the floating-point register elements for the remaining 14 fraction bits." *Id.*

Alternatively, power can be removed in elements of "the logic in the floating-point operator 140 that remains unused as a result of the subprecision selected." *Id.* ¶¶ 7, 27, 29, 32, Fig. 2 (depicting mantissa fraction 206 as having portion 322 for powered bits and portion 324 for unpowered bits). Figures 3A and 3B of Dockser show such removal of power to the floating-point operator logic for a floating-point addition and floating-point multiplication operation, respectively. Figure 3B of Dockser is reproduced below.



FIG. 3B

Figure 3A depicts k-bit multiplicand 402 and k-bit multiplier 404 to be multiplied together "using a shift-and-add technique," where the multiplication occurs in stages 410-1 through 410-m. *Id.* ¶¶ 30–31. A partial

IPR2021-00155
Patent 10,416,961 B2

product 420-i is generated for every bit in multiplier 404 at corresponding stage 410-i and then left-shifted "as a function of the multiplier bit with which it is associated, after which the operation moves on to the next stage." *Id.* ¶ 31. The partial products are eventually added together to generate output value 430. *Id.* "[P]ower may be removed from the logic used to implement the stages to the right of the line 405" indicating the selected subprecision. *Id.* ¶¶ 32–33.

### 1.   Claim 1

### a)   Petitioner's Mapping of Dockser to the Limitations of Claim 1

Petitioner argues that Dockser teaches or suggests all the limitations of claim 1. Pet. 10–39. Petitioner contends that Dockser teaches a "device" (i.e., computing system) comprising a "low precision high dynamic range (LPHDR) execution unit" (i.e., the FPP).[3] *Id.* at 13–15. With respect to the "low precision" aspect of the limitation, Petitioner argues that the FPP is "low precision" because "'the precision' of operations in the FPP is 'reduced'" and because the FPP "operates with the minimum imprecision" required by the subsequent language in claim 1. *Id.* at 15 (quoting Ex. 1007 ¶ 14). With respect to the "high range" aspect of the limitation, Petitioner asserts that the FPP "uses an 8-bit floating-point exponent . . . that provides an even higher dynamic range" than the 6-bit floating-point exponent disclosed in the '961 patent. *Id.* (citing Ex. 1007 ¶ 17; Ex. 1001, 14:61–15:3).

---

[3] Petitioner also provides an "alternative mapping" where "the floating-point operator (FPO) inside Dockser's FPP" constitutes an LPHDR execution unit. Pet. 14–15, 19, 38. We need not evaluate those arguments at this time, as we determine that Petitioner has made a sufficient showing on the current record that the FPP is an LPHDR execution unit.

IPR2021-00155
Patent 10,416,961 B2

Petitioner argues that Dockser's FPP is adapted to execute a "first operation" (e.g., "reduced-precision multiplication") on a "first input signal representing a first numerical value" (i.e., input electrical signal representing an operand received at the registers) to produce a "first output signal representing a second numerical value" (i.e., output electrical signal representing an operand sent to a register and then main memory), where the FPP "performs operations on the[] inputs via the FPP's data paths 134–139 and components 140–144." *Id.* at 15–19. Petitioner further argues that "the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000," as recited in claim 1, because the FPP "operates on IEEE-754 32-bit single-format numbers having 8-bit exponents" and, therefore, the dynamic range of normal operands would be "from around $2^{-126}$ (much smaller than 1/65,000) to around $2^{127}$ (much larger than 65,000)." *Id.* at 20.

> The next limitation of claim 1 is that
>
> for at least X=10% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X % of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=0.2% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input.

We refer to this as "the imprecision limitation." With respect to the "statistical mean" aspect of the imprecision limitation, Petitioner argues that a person of ordinary skill in the art would have understood the limitation

> in the context of the '961 patent's stated intent to claim not only "repeatable" deterministic embodiments like digital circuits that always produce the same output when repeating an operation on the same input, but also analog embodiments that are

13

> non-deterministic because they "introduce noise into their
> computations, so the computations are not repeatable."

*Id.* at 22 (quoting Ex. 1001, 3:63–4:2). Specifically, for "non-deterministic
embodiments," the statistical mean would be the average of "the different
outputs produced by the same operation on the same input." *Id.* For
"deterministic digital embodiments" like Dockser, though, the statistical
mean is "the same as the numerical value of the first output signal for any
individual execution of the first operation on each specific input, because
that output is always the same for any specific input." *Id.* at 23.
Consequently, repeatedly executing a multiplication operation using
Dockser's floating-point multiplier "on the same input (*i.e.*, pair of
operands) with the same precision level yields the same result for every
execution; therefore, the statistical mean of the outputs is the same as the
output for any single execution." *Id.*

With respect to the "exact mathematical calculation" aspect of the
imprecision limitation, Petitioner argues that because Dockser performs a
reduced-precision multiplication, the result of the operation differs from
what would be the exact mathematical result of the operation, namely "the
(>32-bit) product that would result if the pair of input 32-bit operands were
multiplied without reducing precision." *Id.* at 24 (emphasis omitted).

Petitioner further explains how Dockser teaches that "for at least
X=10% of the possible valid inputs to the first operation," the statistical
mean of the results of executing the first operation "differs by at least
Y=0.2%" from the result of the exact mathematical calculation. *Id.* at 24–39.
The "possible valid inputs" in Dockser are "the set of possible normal IEEE-
754 32-bit single-format numbers forming pairs of operands in input signals
to the execution unit that can be multiplied together to produce an output

IPR2021-00155
Patent 10,416,961 B2

representing a numerical value (rather than, *e.g.*, an overflow/underflow exception)." *Id.* at 25. Petitioner argues that Dockser's FPP operates at a precision level meeting the claimed X and Y percentages for such input pairs, pointing to Dockser's description of retaining only some of the bits of a mantissa fraction (e.g., the 9 most-significant bits of a 23-bit fraction, as shown in Figure 2 above) and dropping the remaining "excess bits" (e.g., the other 14 bits). *Id.* Dockser teaches dropping the excess bits to reduce precision by either (1) "removing power from storage elements in the FPP's registers that correspond to the excess (dropped) mantissa bits," or (2) "removing power from elements within the multiplier logic that computes the product of the operand mantissas." *Id.* at 26. Petitioner contends that both techniques, used either individually or in combination, teach the recited imprecision. *Id.* at 27–39. We determine that Petitioner has made a sufficient showing on the current record with respect to the first precision-reducing technique, and need not evaluate Petitioner's alternative arguments at this time.

Relying on the first technique and Dockser's example of retaining 9 mantissa bits and dropping 14 mantissa bits, Petitioner argues that a person of ordinary skill in the art "would have understood the output of unpowered storage elements would be tied to zero voltage (*e.g.*, ground), making those 14 'excess' bits zeroes." *Id.* at 29. Multiplying two operands with excess bits dropped results in an output with reduced precision from the exact product, where the amount of error depends on the number of mantissa bits dropped. *Id.* at 30–31. Petitioner contends that an ordinarily skilled artisan would have understood, by "straightforward math" described in Appendix I.A to the Petition, that "the relative error (the claimed 'Y' percentage) of any floating-

IPR2021-00155
Patent 10,416,961 B2

point number output from Dockser's reduced-precision multiplication is the
same as the relative error of its mantissa, independent of its exponent and
sign." *Id.* at 31.

Petitioner provides a detailed explanation as to why a person of
ordinary skill in the art would have understood Dockser as teaching the
recited X and Y percentages of claim 1. *Id.* at 32–35.

First, Petitioner states that "[g]iven the massive number of possible
inputs to Dockser's FPP (including over 70 trillion possible pairs of normal
IEEE-754 single-format mantissas), a [person of ordinary skill in the art]
would have performed Dockser's FPP operation in software to determine the
fraction X of all possible valid inputs that produce at least the claimed
relative error Y when a given number of mantissa bits are dropped." *Id.* at
32. Petitioner states that Mr. Goodin wrote such a program to perform
reduced-precision multiplication retaining 9 mantissa bits and dropping the
14 excess bits as in Dockser that tested all possible valid mantissa pairs and
"produce[d] at least Y=0.2% relative error for 14.6% of possible valid inputs
(greater than X=10%)." *Id.* at 33, 66–68 (citing Goodin Decl. ¶¶ 412–426,
464–469).

Second, Petitioner argues that a person of ordinary skill in the art
"would also have understood algebraically that Dockser's register bit-
dropping technique meets [the limitation] when performed at certain selected
precision levels by examining the absolute *minimum* relative error produced
by zeroing certain mantissa bit positions." *Id.* at 33. Petitioner explains how
over 12% of possible input operands "have a zero as their most-significant
(leftmost) mantissa fraction bit and ones as their eighth and ninth fraction
bits," such that retaining only 7 mantissa bits of operands would result in

IPR2021-00155
Patent 10,416,961 B2

"*every* input in that 12% produc[ing] at *minimum* 0.39% relative error." *Id.*
at 33, 68–72 (citing Goodin Decl. ¶¶ 427–444).

Claim 1 further recites, "at least one first computing device adapted to
control the operation of the at least one first LPHDR execution unit."
Petitioner asserts that Dockser's main processor meets the computing device
limitation because the processor writes subprecision select bits to the FPP's
control register. Pet. 39. Petitioner asserts that, this way, Dockser's main
processor is adapted to control the FPP's operation by specifying its
precision level. *Id.* (citing Ex. 1007 ¶¶ 15, 18, 25, 35; Goodin Decl. ¶ 310).

Petitioner's contentions regarding claim 1 are supported by the
testimony of Mr. Goodin. *See id.* at 13–39; Goodin Decl. ¶¶ 183–310.

### b) Patent Owner's Arguments

Patent Owner makes two arguments in its Preliminary Response
disputing Petitioner's contentions regarding claim 1. Prelim. Resp. 7–23.

### (1) LPHDR Execution Unit

First, Patent Owner argues that Dockser's FPP is not a "low precision
high dynamic range (LPHDR) execution unit" because it is also "capable of
operating at full precision." Prelim. Resp. 11–12. According to Patent
Owner, "Dockser discloses a 32-bit FPP that includes all of the circuitry
needed for full precision arithmetic on data in IEEE 32-bit format, and also
having additional circuitry allowing for selectable subprecisions." *Id.* at 11.
As support for this reading of Dockser, Patent Owner points to statements in
Dockser that precision "may" be reduced and that certain applications
require "greater precision." *Id.* at 11–12 (citing Ex. 1007 ¶¶ 3, 14, 26, 28).

IPR2021-00155
Patent 10,416,961 B2

Patent Owner also argues that Petitioner incorrectly focuses on whether the FPP is "capable of performing a few operations that are 'low precision'" in a "9-bit subprecision mode," rather than "whether the execution unit itself can be fairly characterized as being 'low precision.'" *Id.* at 12–13. Patent Owner asserts that Dockser's FPP is "a full precision processor that—even when performing operations in a reduced precision mode—includes all of the circuitry and capability needed to perform full precision operations." *Id.* at 13.

We disagree based on the current record. Patent Owner's position is that, to be an LPHDR execution unit, the execution unit must be capable of low-precision operations and nothing else. We are not persuaded that the claim language is so limiting. Claim 1 recites a "device comprising . . . at least one first low precision high dynamic range (LPHDR) execution unit." The only limitations on the execution unit recited in the claim are that the execution unit be "low precision," "high dynamic range," and "adapted to execute a first operation" meeting certain criteria specified in the imprecision limitation (i.e., a minimum relative error Y for a minimum fraction X of possible valid inputs in a specified dynamic range). As Petitioner points out, the claim does not recite any structural characteristics of the execution unit and does not include any negative limitation precluding the execution unit from performing other types of operations. *See* Pet. 31; Reply 1. The recitation of "a first operation" in claim 1 further requires only one or more first operations (that meet the low precision criteria specified in the claim); it does not say that "every" operation must be low precision or exclude other capabilities for other operations. *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("This court has

IPR2021-00155
Patent 10,416,961 B2

repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"). On this record, we see no reason why the claim precludes the execution unit from having additional circuitry for performing other types of operations, as long as the execution unit is capable of performing the recited first operation and meeting the criteria set forth in the imprecision limitation.

Petitioner has provided sufficient evidence at this stage that Dockser performs operations at the precision level specified in the imprecision limitation. Dockser's FPP "perform[s] certain mathematical operations," such as "multiplication," at "reduced precision." Ex. 1007 ¶¶ 1, 30–32. Specifically, Petitioner expressly identifies "reduced-precision multiplication" as the "first operation" in Dockser. Pet. 15–19. And Petitioner calculates the relative error for multiplication of all possible input operands when the operands have 9 retained mantissa bits and 14 dropped mantissa bits.[4] Id. at 25, 30–31. That is consistent with Dockser, which discloses a specific example of multiplying 23-bit operands having 9 retained mantissa bits and 14 dropped mantissa bits. See Ex. 1007 ¶¶ 26, 29.

Importantly, as Patent Owner acknowledges, Dockser's example of 9-bit precision multiplication is a distinct operation from multiplication at other levels of precision. See Prelim. Resp. 20 (arguing that Dockser can "perform an addition operation $a+b$ in full precision mode, 22-bit mode,

---

[4] Accordingly, we do not agree with Patent Owner that Petitioner improperly made a new argument in its Reply that "multiplying two input values in a way that reduces precision down to 9 mantissa bits" constitutes a "first operation." Sur-Reply 2.

IPR2021-00155
Patent 10,416,961 B2

21-bit mode, etc." and that "[e]ach of these operations is distinct, and generally produces different outputs, with some being more precise than others"). Dockser describes exactly how such multiplication is performed, and the functionality of the FPP differs depending on which level of precision multiplication is selected. *See, e.g.*, Ex. 1007 ¶¶ 30–34, Fig. 3B; Pet. 24–36. On this record, we find the fact that Dockser is capable of performing other, different operations (e.g., 23-bit full precision) does not detract from Dockser's disclosure of a specific example meeting the "low precision" requirements of the claim.

Patent Owner further argues that Petitioner fails to show that it would have been obvious to modify Dockser's FPP to be an LPHDR execution unit. Prelim. Resp. 14–17. Patent Owner contends that Dockser teaches away from such a unit because

> rather than committing itself to performing low precision operations on a very high percentage of all possible valid inputs (in order to shrink the size of the execution unit), Dockser specifically teaches that its selectable precision (which means supporting full precision and programmability, both of which increase the size of the execution unit) is the key feature of the Dockser FPP.

*Id.* at 14–15 (citing Ex. 1007 ¶ 3). Dockser's FPP "is more complex than conventional 32-bit microprocessors, not less," so an ordinarily skilled artisan would not be motivated to "reverse course" and make it only capable of low precision operations according to Patent Owner. *Id.* at 16–17 (emphasis omitted). As explained above, however, we disagree on this record with Patent Owner's position that an LPHDR execution unit must be incapable of anything other than low precision operations, and thus do not agree that a modification to Dockser in that respect is necessary. We find Petitioner's analysis as to why a person of ordinary skill in the art would

IPR2021-00155
Patent 10,416,961 B2

have understood Dockser's FPP to be an LPHDR execution unit, supported by the testimony of Mr. Goodin, sufficient at this early stage.

### (2)  Imprecision Limitation

Second, Patent Owner argues that Dockser does not teach or suggest the imprecision limitation because Petitioner fails to show that Dockser's output over all "possible valid inputs" meets the limitation. Prelim. Resp. 17–23. According to Patent Owner, "[t]he range of possible valid inputs for Dockser" includes all possible IEEE 32-bit values "across the entire range of the possible subprecision select bits," not just operands with 9 retained mantissa bits and 14 dropped mantissa bits as Petitioner discussed in the Petition. *Id.* at 19–20. Patent Owner argues that Mr. Goodin's software program addresses "only a small subset of Dockser's possible valid inputs" because it fails to account for "whether the imprecision limitation is met for subprecision select bits corresponding to any implementation where fewer than 14 bits are dropped." *Id.* In Patent Owner's view, the analysis of Dockser needs to take into account operations at "full precision mode, or 22-bit mode, etc." *Id.* at 20–21.

We disagree based on the current record. The imprecision limitation recites that "for at least X=10% of the possible valid inputs to *the first operation*, the statistical mean, over repeated execution of *the first operation* on each specific input from the at least X % of the possible valid inputs to *the first operation*," "executing *the first operation* on that input differs by at least Y=0.2% from the result of an exact mathematical calculation of *the first operation* on the numerical values of that same input." Ex. 1001, 30:23–34 (emphases added). The relevant inquiry thus looks at all possible valid

IPR2021-00155
Patent 10,416,961 B2

inputs to the first operation—not all possible valid inputs to the LPHDR execution unit overall, or all possible valid inputs to other operations. Again, in its mapping of Dockser to claim 1, Petitioner expressly identifies "reduced-precision multiplication" as "the first operation." Pet. 15–19. Dockser discloses a specific example of multiplying operands having 9 retained mantissa bits and 14 dropped mantissa bits. Ex. 1007 ¶¶ 26, 30–34, Fig. 3B. The relevant possible valid inputs for assessing the imprecision limitation, therefore, are the inputs to that operation. On this record, we see no reason why the analysis of Dockser also needs to account for other operations, such as "full precision" multiplication, which Patent Owner acknowledges are "distinct" operations. *See* Prelim. Resp. 20.

Patent Owner also challenges Mr. Goodin's analysis as "impermissibly applying hindsight and using the claims as a roadmap" because "he opines that a [person of ordinary skill in the art] would operate Dockser with the *express goal* of dropping enough bits from the mantissa to meet the imprecision limitation." *Id.* at 16 (citing Goodin Decl. ¶ 280). We disagree based on the current record. The precision level of 9 retained mantissa bits and 14 dropped mantissa bits that Mr. Goodin analyzes is not chosen with the goal of meeting the imprecision limitation, but rather is the specific example described in Dockser. *See* Goodin Decl. ¶¶ 254, 268–269, 273, 275. Mr. Goodin describes the calculations performed by his software program and explains why he believes that a person of ordinary skill in the art would have understood Dockser's description of multiplication at the 9-bit precision level teaches the imprecision limitation. *See id.* ¶¶ 281–283, 412–426. Further, Mr. Goodin cites extensively to language in Dockser describing reduced-precision multiplication in support of his opinions. *See*

IPR2021-00155
Patent 10,416,961 B2

*id.* ¶¶ 247–258. Patent Owner has not presented any evidence at this stage indicating that Mr. Goodin's calculations for Dockser's 9-bit precision level are factually incorrect. As for Petitioner's theory based on retaining 9 mantissa bits, we have reviewed that supporting testimony and are persuaded, based on the current record, that a person of ordinary skill in the art would have understood Dockser to teach the imprecision limitation of claim 1.

As for Petitioner's theory based on retaining 7 mantissa bits (Pet. 33–35), Patent Owner argues that "Petitioner uses a hindsight analysis to posit that it would have been obvious to select 7-bit precision in Dockser because 7-bit precision would meet the imprecision limitation." Prelim. Resp. 21. Patent Owner argues that the 7-bit precision mode is one of at least 17 distinct subprecision modes, and the number of the operations performed at 7-bit precision is less than one percent of the possible valid inputs overall. *Id.*

We invite the parties to address whether the Petition contains a sufficient explanation why a person of ordinary skill in the art would have selected the 7-bit mode over other precision modes in Dockser. *See, e.g.*, Pet. 10–39. The parties are also invited to discuss Petitioner's choice to analyze the 9-bit case using a software program, but analyze the 7-bit case algebraically. *Compare id.* at 68 (analyzing 9 and 5 retained fraction bits), *with id.* at 72 (analyzing 7 and 5 retained fraction bits).

IPR2021-00155
Patent 10,416,961 B2

### c)  Conclusion

On this record, we are persuaded that Petitioner has shown a reasonable likelihood of prevailing on its assertion that claim 1 is unpatentable over Dockser.

### 2.  Claims 2, 4, 5, 10, 13, and 14

We have reviewed Petitioner's contentions regarding claims 2, 4, 5, 10, 13, and 14 and are persuaded that Petitioner has made a sufficient showing at this stage for those claims as well. *See* Pet. 40–41. Petitioner explains how each limitation of the dependent claims is taught or rendered obvious by the disclosure of Dockser. *Id.* For example, claim 2 recites that "the at least one first computing device comprises at least one of a central processing unit (CPU), a graphics processing unit (GPU), a field programmable gate array (FPGA), a microcode-based processor, a hardware sequencer, and a state machine." Ex. 1001, 30:38–42. Dockser discloses a general purpose processor. Ex. 1007 ¶ 35; *see* Pet. 40. Petitioner's contentions are supported by the testimony of Mr. Goodin and are persuasive based on the current record. *See id.* at 36–38; Goodin Decl. ¶¶ 311–312. Patent Owner does not argue the challenged dependent claims separately, only disputing Petitioner's arguments regarding independent claim 1. *See* Prelim. Resp. 7–23. We disagree with Patent Owner's arguments based on the current record for the reasons explained above. *See supra* § II.C.1.

On this record, we are persuaded that Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 2, 4, 5, 10, 13, and 14 are unpatentable over Dockser.

IPR2021-00155
Patent 10,416,961 B2

### D.    Obviousness over Dockser and Tong

#### 1.    Tong

Tong is an IEEE journal article entitled "Reducing Power by Optimizing the Necessary Precision/Range of Floating-Point Arithmetic." Ex. 1008, 273. Tong teaches reducing power consumption by minimizing the bitwidth representation of floating-point data. *Id.* According to Tong, using a variable bitwidth floating-point unit saves power. *Id.*

#### 2.    Claim 1

Petitioner asserts that "Tong, like Dockser . . . , confirms that the number of mantissa bits used in a high-dynamic-range floating-point execution unit was a well-known result-effective variable impacting power consumption and precision."[5] Pet. 43 (citing Ex. 1008, 273–278, Goodin Decl. ¶¶ 323–325). Petitioner relies on Tong's Figure 6, reproduced below with Petitioner's annotations. *Id.* at 44.

---

[5] Petitioner presents sufficient evidence on the current record to establish a reasonable likelihood that Tong is a prior art printed publication under 35 U.S.C. § 102(b). *See* Pet. 42–43 (citing Ex. 1025 ¶¶ 8–11; Ex. 1026, 27; Ex. 1027, 27).

IPR2021-00155
Patent 10,416,961 B2



Tong's Figure 6, above, is a line graph showing program accuracy, from 0% to 100%, on the vertical axis and mantissa bitwidth, from 1 to 23, on the horizontal axis. *Id.* at 43–44. The figure shows this data for five programs: ALVINN, Bench22, Fast DCT, PCASYS, and Sphinx. *Id.* The programs implement different signal-processing tasks. *See, e.g.*, Ex. 1008, 278 (Table IV). ALVINN, for example, is a neural network trainer that uses backpropagation. *Id.* And Sphinx is a speech-recognition program. *Id.*

For the ALVINN and Sphinx line plots in Tong's Figure 6, Petitioner added a dashed red line extending vertically through the data points with a mantissa bitwidth of 5. Pet. 44. Petitioner asserts that, for these programs, Tong teaches that "the accuracy does not change significantly with as few as 5 mantissa [fraction] bits." *Id.* (quoting Tong 278, § V.B.). In Petitioner's view, Tong omits unnecessary bits to reduce waste and power consumption.

IPR2021-00155
Patent 10,416,961 B2

*Id.* Petitioner characterizes Tong as "[h]aving empirically determined the minimum number of mantissa bits necessary to maintain acceptable accuracy of particular applications." *Id.* (citing Tong 273, 274, 279, 284).

Petitioner concludes that "Tong's teaching that a precision level retaining 5 mantissa fraction bits is sufficient in some applications (including ALVINN and Sphinx[]) would have motivated a POSA to configure Dockser's FPP . . . to operate at a selected precision level retaining as few as 5 mantissa fraction bits." *Id.* at 45. According to the Petition, one of ordinary skill in the art would have done so "to conserve power when running those applications, or others empirically determined (using Tong's techniques) to not require greater precision." *Id.* (citing Goodin Decl. ¶ 333). Petitioner also concludes that determining the "optimum range of imprecision to achieve the best power reduction without sacrificing accuracy for a particular application" was a matter of routine optimization of a result-effective variable. *Id.* at 46–47.

Patent Owner argues that Dockser is deficient for the same reasons discussed in connection with the challenge based on Dockser alone (Ground 1), and Tong does not remedy those deficiencies. Prelim. Resp. 23–24. In Patent Owner's view, Petitioner's Dockser-Tong analysis, like the analysis of Dockser alone, accounts for "only a cherry-picked subset of the 'possible valid inputs.'" *Id.* at 24 (citing Pet. 46). Patent Owner argues that Petitioner's analysis ignores the remaining possible valid inputs across all subprecision selections. *Id.*

Yet Patent Owner's argument about all subprecision selections (Prelim. Resp. 23–24) does not squarely address Petitioner's obviousness rationale—i.e., that one of ordinary skill in the art would have been

motivated to configure Dockser's FPP at a "selected precision level" according to Tong (Pet. 45). Specifically, Petitioner's rationale proposes using a selected precision level "retaining as few as 5 mantissa fraction bits." Pet. 45. Instead of addressing the analysis of Dockser at this selected precision level, Patent Owner's arguments focus on Dockser alone. *See* Prelim. Resp. 23–24.

Petitioner's relative-error analysis of the Dockser-Tong combination, though, is different from the one in the ground based on Dockser alone. *See* Pet. 45–46. In particular, Petitioner used a software program to determine the relative error when retaining 5 mantissa fraction bits—i.e., the number of bits that Dockser would use under Petitioner's proposed combination with Tong. *Id.* at 46 (citing Goodin Decl. ¶ 335). Also, the algebraic analysis cited by Petitioner uses 5 mantissa fraction bits. *Id.* (citing Goodin Decl. ¶ 336). Because Petitioner's rationale relies on modifying Dockser with Tong to have a particular precision level, we are not persuaded at this stage that Petitioner's relative-error analysis is deficient for not considering all possible subprecision selections. *See* Prelim. Resp. 23–24; *supra* § II.C (explaining why Petitioner's asserted ground based on Dockser alone is not deficient for failing to address all possible IEEE 32-bit values, rather than just operands with 9 retained mantissa bits and 14 dropped mantissa bits).

We find Petitioner's analysis, supported by the Goodin Declaration, sufficient to show a reasonable likelihood of prevailing on its assertion that claim 1 is unpatentable over Dockser and Tong.

### 3.  Claims 2, 4, 5, 10, 13, 14, 21, 24, and 25

We have reviewed Petitioner's contentions regarding claims 2, 4, 5, 10, 13, 14, 21, 24, and 25. *See* Pet. 42–49 (citing *id.* at 40–41). We are persuaded that Petitioner has made a sufficient showing at this stage for those claims as well. Petitioner explains how each limitation of the dependent claims is taught or rendered obvious by the disclosure of Dockser and Tong. *Id.* at 40–49. Petitioner's contentions are supported by the Goodin Declaration and are persuasive based on the current record. *See id.* Patent Owner does not argue the claims separately. *See* Prelim. Resp. 23–24. We disagree with Patent Owner's arguments based on the current record for the reasons explained above. *See supra* § II.D.2.

On this record, we are persuaded that Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 2, 4, 5, 10, 13, 14, 21, 24, and 25 are unpatentable over the Dockser-Tong combination.

### E.  Obviousness over Dockser and MacMillan

#### 1.  MacMillan

MacMillan is a U.S. Patent entitled "Circuit for Enhancing Performance of a Computer for Personal Use." Ex. 1009, code (54). MacMillan teaches using Single Instruction Multiple Data (SIMD) parallel-processing architectures for adding supercomputer performance to personal-use computers. *See id.* at 5:22–54. MacMillan's computer system comprises a "Host CPU" (i.e., "a 386, 486 or Pentium[] processor") and SIMD-random access memory (SIMD-RAM) device. *Id.* at 9:30–31, Figs. 3, 5. MacMillan describes an example architecture where the SIMD-RAM device has 256 processing elements (PEs), but states that the disclosed architecture "allows

IPR2021-00155
Patent 10,416,961 B2

scaling to higher or lower density chips with more or fewer PEs." *Id.* at 12:60–13:4, 13:39–41, 16:20–22.

### 2.   *Claim 1*

In this ground, Petitioner cites MacMillan for its teachings about multiple floating-point execution units and concludes that it would have been obvious to implement a device with multiple Dockser FPPs operating in parallel. Pet. 51–53.

Patent Owner argues that MacMillan does not remedy Dockser's deficiencies. Prelim. Resp. 24–27. Apart from this argument, Patent Owner does not present arguments specifically analyzing MacMillan as it is used in Petitioner's challenge to claim 1. *See id.* Rather, Patent Owner refers to the arguments about the challenge based on Dockser alone. *See id.* at 25 ("MacMillan does not remedy the deficiency of Dockser as set forth in Sections III.A.2 and III.A.3 above[, which discuss the ground based on Dockser alone]."). Thus, for the reasons discussed in connection with Dockser alone (Ground 1), and because we conclude that Petitioner has made a sufficient showing of obviousness based on the combination with MacMillan, we determine that Petitioner has established a reasonable likelihood of prevailing with respect to the ground based on Dockser and MacMillan challenging claim 1.

### 3.   *Claim 3*

Claim 3 recites, in part, "wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the

IPR2021-00155
Patent 10,416,961 B2

operation of multiplication on floating point numbers that are at least 32 bits wide." Ex. 1001, 30:42–48.

As for claim 3, Petitioner asserts that MacMillan teaches 256 processing elements (PEs), and the Dockser-MacMillan combination would have "a single Host CPU and at least one FPP in each PE (of which there are at least 256)." Pet. 54 (citing Goodin Decl. ¶¶ 372–373). Under Petitioner's obviousness rationale, the "number (256 or more) of LPHDR execution units (Dockser FPPs) exceeds by over 100 its number (one) of traditional-precision execution units (the single Host CPU floating-point unit)." *Id.* at 54–55 (citing Goodin Decl. ¶ 377). Petitioner asserts that, in this way, the Dockser-MacMillan combination addresses the limitation that "the number of LPHDR execution units in the device *exceeds by at least one hundred* the non-negative integer number of" the other execution units. Ex. 1001, 30:43–48 (emphasis added).

Patent Owner argues that "Dockser and MacMillan cannot possibly disclose the limitation of claim 3, even if one were to assume the Dockser FPP to be an LPHDR execution unit." Prelim. Resp. 26. Patent Owner argues that, because (1) Petitioner asserts that MacMillan's processor is the only claim 3 execution unit (EU) and (2) Dockser's FPPs are designed to perform multiplication on 32-bit numbers, "the number of claim 3 32-bit EUs in the Dockser/MacMillan combination must *always* be greater than or equal to the number of 'LPHDR' Dockser FPPs." *Id.* (emphasis in original).

But, under Petitioner's theory, the 32-bit EUs in claim 3 (i.e., "execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide") are different from what Petitioner identifies as the LPHDR execution units (i.e.,

a Dockser FPP in each of the 256 PEs of MacMillan). *See* Pet. 54. So, under
Petitioner's rationale, Dockser's FPPs do not count toward the number of
32-bit EUs in the Dockser-MacMillan combination. *See id.* Specifically,
Petitioner has shown, on this preliminary record, that the claimed "LPHDR
execution unit" at least encompasses Dockser's FPP. *See supra* § II.C.1.
Petitioner asserts that the '961 patent describes the LPHDR execution units
as "sometimes" producing results that are different from the correct result, in
contrast to 32-bit EUs, which the '961 patent describes as "'traditional
precision' execution units that do not 'sometimes' produce results different
from the correct traditional-precision result." Pet. 54. Thus, if the proposed
combination has 256 FPPs (LPHDR execution units) and one host CPU (the
32-bit EUs), the number of LPHDR execution units is greater than the
number of 32-bit EUs by the amount recited in claim 3.

Petitioner supports its contentions with respect to claim 3 with
citations to the '961 patent. We preliminarily agree with Petitioner that the
cited parts of the patent distinguish between the two sets of units. For
example, the patent describes the 32-bit arithmetic elements as "traditional"
precision: "'arithmetic elements . . . designed to perform . . . floating point
arithmetic with a word length of 32 or more bits' are 'designed to perform . .
. arithmetic of traditional precision.'" *Id.* (citing Ex. 1001, 28:9–16). As for
the LPHDR units, the paragraph cited by Petitioner explains how the
precision may vary across implementations. *See* Ex. 1001, 26:63–27:16. We
preliminarily agree with Petitioner that all of these embodiments, unlike the
32-bit arithmetic elements, are described as producing results that are
"sometimes" or "all of the time" not closer than a certain amount to the
correct result. Pet. 54 (citing Ex.1001, 26:61–27:4). Thus, Petitioner's

IPR2021-00155
Patent 10,416,961 B2

distinction between the 256 FPPs and one host CPU in the proposed
combination is consistent with the language of claim 3 and adequately
supported on this preliminary record.

We find Petitioner's analysis, supported by the Goodin Declaration,
sufficient to show a reasonable likelihood of prevailing on its assertion that
claim 3 is unpatentable over Dockser and MacMillan.

### 4.   Claims 2, 4, 5, 10, 13, and 14

We have reviewed Petitioner's contentions regarding claims 2, 4, 5,
10, 13, and 14. *See* Pet. 49–55 (citing *id.* at 40–41). We are persuaded that
Petitioner has made a sufficient showing at this stage for those claims as
well. Petitioner explains how each limitation of the dependent claims is
taught or rendered obvious by the disclosure of Dockser and MacMillan. *Id.*
Petitioner's contentions are supported by the Goodin Declaration and are
persuasive based on the current record. *See id.* Patent Owner does not argue
claims 2, 4, 5, 10, 13, and 14 separately. *See* Prelim. Resp. 24–27. We
disagree with Patent Owner's arguments based on the current record for the
reasons explained above. *See supra* §§ II.E.2–3.

On this record, we are persuaded that Petitioner has shown a
reasonable likelihood of prevailing on its assertion that claims 2, 4, 5, 10, 13,
and 14 are unpatentable over the Dockser-MacMillan combination.

### F.   Obviousness over Dockser, Tong, and MacMillan
#### 1.   Claims 1–5, 10, 13, 14, 21, and 23–25

Petitioner asserts that it would have been obvious to operate the FPPs
in the Dockser-MacMillan combination at Tong's precision levels. Pet. 56

IPR2021-00155
Patent 10,416,961 B2

(citing Ex. 1008, 278, Table IV). Petitioner concludes that using Dockser's
FPP with Tong's precision levels in MacMillan's multiple PEs would have
achieved "supercomputer performance" while conserving power. *Id.* (citing
Goodin Decl. ¶ 384).

Patent Owner argues that "Petitioner relies on the same flawed
reasoning as discussed [in the Preliminary Response] with respect to
Dockser and Tong" but does not present separate arguments directed to the
combination of Dockser, Tong, and MacMillan. *See* Prelim. Resp. 27. We
disagree with Patent Owner's arguments based on the current record for the
reasons explained above. *See supra* § II.C. On this record, we are persuaded
that Petitioner has shown a reasonable likelihood of prevailing on its
assertion that claims 1–5, 10, 13, 14, 21, and 23–25 are unpatentable over
the combination of Dockser, Tong, and MacMillan.

## 2. *Petitioner's Alternative Interpretation of Claims 3 and 23*

Claim 3 recites, in part, "wherein the number of LPHDR execution
units in the device exceeds by at least one hundred the non-negative integer
number of execution units in the device *adapted to execute at least the
operation of multiplication on floating point numbers that are at least 32
bits wide*." Ex. 1001, 30:42–48 (emphasis added). Claim 23 similarly recites
that "the number of LPHDR execution units in the second device exceeds by
at least one hundred the non-negative integer number of execution units in
the second device *adapted to execute at least the operation of multiplication
on floating point numbers that are at least 32 bits wide*. *Id.* at 32:62–67
(emphasis added).

IPR2021-00155
Patent 10,416,961 B2

Petitioner provides an alternative interpretation of the italicized adapted-to clause. Pet. 59–60. In particular, Petitioner argues that a unit could meet the adapted-to clause if it is capable of 32-bit multiplication in *some* configurations. *Id.* Under this interpretation, Dockser's FPP would not be such a unit because it has registers and multiplier with less than 32 bits, and thus is not capable of 32-bit multiplication in the proposed combination—rather, only the host CPU floating-point unit would meet the adapted-to clause in claim 3. *Id.* at 60 (citing Goodin Decl. ¶ 398). According to Petitioner, "POSA would have been motivated to customize Dockser's FPPs in MacMillan's PEs to only operate at precision levels lower than full FP 32-bit operations, in view of Tong's teachings that 'the fine precision of the 23-bit mantissa is not essential.'" *Id.* at 58.

Patent Owner argues that Petitioner does not provide a specific level of precision for its combination. Prelim. Resp. 30–31 (citing Pet. 58–59). Patent Owner argues that "Tong suggests 11 bits of precision for certain signal processing applications, and Petitioner provides no analysis of whether 11 bits of precision would meet the imprecision limitation." *Id.* at 29. Also, Patent Owner argues that Petitioner does not show that, for example, one bit lower than full 32-bit operation would meet the claimed imprecision limitation. *Id.* at 31.

We disagree with Patent Owner on this record. Petitioner states that "the selected precision levels are unchanged from Grounds 1–3." Pet. 59. In Ground 2 based on Dockser and Tong, for example, Petitioner states that "Tong's teaching that a precision level retaining 5 mantissa fraction bits is sufficient in some applications (including ALVINN and Sphinx[]) would have motivated a POSA to configure Dockser's FPP . . . at a selected

IPR2021-00155
Patent 10,416,961 B2

precision level retaining as few as 5 mantissa fraction bits." *Id.* at 45.

Petitioner also used a software program determine the relative error when

retaining 5 mantissa fraction bits—i.e., the number of bits that Dockser

would use under Petitioner's proposed combination with Tong. *Id.* at 46

(citing Goodin Decl. ¶ 335). In at least this way, Petitioner has adequately

explained, for the purpose of institution and on this preliminary record,

which of Tong's precision levels would be used in the proposed

combination.

Patent Owner also argues that each reference teaches away from the

proposed combination. Prelim. Resp. 29–30. In particular, Patent Owner

argues that (1) Dockser teaches away because "Dockser is directed entirely

to selectable precision; and disparages the use of non-selectable precision

units," (2) Tong teaches away because "Tong devotes much of its discussion

to the benefits of variable or selectable precision," and (3) MacMillan

teaches away because "MacMillan is primarily concerned with providing

increased performance without increased cost." *Id.*

At this stage and on this record, we preliminarily determine that the

references do not teach away from the claimed devices. The mere disclosure

of more than one alternative does not constitute a teaching away. *In re

Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004). Specifically, Patent Owner

points to a statement that Tong makes about power savings: "This FP

bitwidth reduction can deliver a significant power savings through the use of

a variable bitwidth FP unit." Prelim. Resp. 30 (quoting Ex. 1008, 273). Yet

Tong's statement does not discredit, criticize, or otherwise discourage the

claimed invention's approach so as to teach away from it. *See Fulton*, 391

IPR2021-00155
Patent 10,416,961 B2

F.3d at 1201. Instead, the statement merely explains the benefits provided by Tong's alternative approach. Ex. 1008, 273.

Likewise, although Patent Owner argues the combination with MacMillan would increase manufacturing costs, Patent Owner does not provide sufficient evidence to support this position. *See* Prelim. Resp. 30. Even assuming MacMillan warns against the costs, Patent Owner's argument is unsupported by any specific cost analysis. *Id.* To be sure, Patent Owner may introduce evidence that supports this argument during trial. We also note that "[t]hat a given combination would not be made by businessmen for economic reasons does not mean that persons skilled in the art would not make the combination because of some technological incompatibility," for example. *In re Farrenkopf*, 713 F.2d 714, 718 (Fed. Cir. 1983). But, at this stage and on this record, Patent Owner's argument is unpersuasive.

On this record, we are persuaded that Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 3 and 23 are unpatentable over the combination of Dockser, Tong, and MacMillan.

## III. CONCLUSION

Based on the arguments presented in the Petition, we conclude that Petitioner has demonstrated a reasonable likelihood of prevailing with respect to at least one claim of the '961 patent challenged in the Petition. Accordingly, we institute a trial on all claims and all grounds asserted in the Petition. The Board has not made a final determination under 35 U.S.C. § 318(a) with respect to the patentability of the challenged claims.

IPR2021-00155
Patent 10,416,961 B2

## IV. ORDER

It is

ORDERED that, under 35 U.S.C. § 314(a), an *inter partes* review of claims 1–5, 10, 13, 14, 21, and 23–25 of the '961 patent is instituted for all grounds in the Petition; and

FURTHER ORDERED that, under 35 U.S.C. § 314(a), *inter partes* review of the '961 patent is instituted on this Decision's entry date, and under 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is given of the trial's institution.

IPR2021-00155
Patent 10,416,961 B2

FOR PETITIONER:

Elisabeth H. Hunt
Richard F. Giunta
Anant K. Saraswat
WOLF, GREENFIELD & SACKS, P.C.
ehunt-ptab@wolfgreenfield.com
rgiunta-ptab@wolfgreenfield.com
asaraswat-ptab@wolfgreenfield.com


FOR PATENT OWNER:

Peter Lambrianakos
Vincent J. Rubino, III
Enrique W. Iturralde
FABRICANT LLP
plambrianakos@fabricantllp.com
vrubino@fabricantllp.com
eiturralde@fabricantllp.com