# EXHIBIT R

| | |
|---|---|
| **From:** | Andrew S. Bruns |
| **To:** | Ercolini, Michael; Matthias Kamber |
| **Cc:** | kvp-singular; wgs-singularv.google@wolfgreenfield.com; abhansali@kblfirm.com; singular@princelobel.com |
| **Subject:** | RE: 1:19-cv-12551-FDS Singular LLC v. Google LLC - Follow-up regarding requested extension |
| **Date:** | Thursday, May 20, 2021 4:32:54 PM |

Michael,

We are disappointed to hear that Singular opposes the extension of the written discovery deadline, given the status of its ESI production.  As noted in the related meet-and-confer call yesterday, in the absence of a stipulated extension, Google plans to move for an extension and has also requested that the Court schedule a status conference.

Setting that aside, I write to correct the record on several statements in your email below in the hopes of expediting the completion of Singular's dilatory ESI production.

As an initial matter, your email today, like your prior correspondence, assumes that the number of search terms in a party's ESI request is somehow a meaningful proxy for the burden imposed by a party's ESI requests.  That is false.  A single unreasonable term may capture more documents than 100s of tailored terms.  That is why the relevant question in this process is how many unique documents hit upon a given set of search terms.  For the last 5 months, Google has diligently tried to work with Singular to develop a set of search terms that are reasonable and proportional to this case.  But Singular has repeatedly refused to provide information that would allow this process to move forward in an orderly fashion.  Indeed, we have identified in prior correspondence and in briefing to the Court numerous instances in which Singular failed to respond to Google's emails regarding ESI for weeks at a time.  And when Singular has responded with updated hit counts, those counts have included unexplained discrepancies or inaccuracies, which you explained only after yet further delay.

The example you raise below regarding your April 7, 2021 email and subsequent communications is illustrative of this pattern.  Your email of that date asked that Google "please provide final terms no later than Monday, April 12" and ambiguously noted that Singular "d[id] not intend to entertain more than 20 additional disaggregated search terms."  Putting aside the question of whether this unilateral approach is appropriate, Google provided additional terms on the date you requested.  You now say that we misinterpreted your email.  But rather than correct that misunderstanding or clarify your meaning, you ignored our message for more than three weeks, including our follow-up request on April 22, finally agreeing to meet and confer on May 6.  Moreover, your eventual reply ignored our request that Singular "provide unique documents with hits, so we can make an informed decision as to which terms to revise."  Delays such as this one and Singular's refusals to engage with Google's requests for pertinent information (such as unique hit counts) are why the parties have been unable to reach a final set of search terms for Singular's ESI.  This conduct also explains why Singular will not be able to complete its ESI production before the current written discovery deadline.

Finally, your email misstates the timeline of Google's attempts to seeks Singular's ESI.  You claim that "Google did not make its first request [for ESI] until the middle of March."  In fact, Google wrote to Singular on December 17, 2020, to propose a set of Singular ESI custodians.  In what is now a familiar pattern, Singular was slow to respond.  On January 5, 2021, my colleague Deeva Shah wrote again to request a response to our December 17 letter.  She sent a second follow-up on January 11.  You did not respond until that evening.  We then provided our initial set of proposed search terms on

January 20, 2021, two months earlier than you assert below.

At present, Google is awaiting a response to another email sent to you on May 13, reiterating our long-standing request for unique hit counts so that we can consider narrowing our search terms, if necessary, and Singular can complete its ESI production.  We hope to receive a response and a list of unique hit counts this week.

Best,

Andy

**Andrew Bruns**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8821 direct | 415 391 5400 main
abruns@keker.com | vcard | keker.com
*Pronouns: he/him/his*

**From:** Ercolini, Michael <mercolini@princelobel.com>
**Sent:** Thursday, May 20, 2021 8:21 AM
**To:** Matthias Kamber <MKamber@keker.com>
**Cc:** Andrew S. Bruns <ABruns@keker.com>; kvp-singular <kvpsingular@keker.com>; wgs-singularv.google@wolfgreenfield.com; abhansali@kblfirm.com; singular@princelobel.com
**Subject:** 1:19-cv-12551-FDS Singular LLC v. Google LLC - Follow-up regarding requested extension

**[EXTERNAL]**

Matthias,

We write to inform you that Singular opposes Google's request for an extension to the written discovery deadline.   I also understand that you spoke with Kevin Gannon yesterday regarding ESI production.  While Mr. Gannon is typically very well informed, on this narrow issue yesterday, he was misinformed.  Singular has already produced in response to 376 of Google's now-776 ESI terms.  That is compared to just 17 terms that Singular requested of Google back in January.  We do not intend to further indulge Google's abuse of this process to stretch the timelines of this case by any means possible.

On April 7th, we wrote Ms. Porto to inform her that Singular would begin rolling production of materials responsive to 376 of Google's then-491 search terms.  For the remaining 115 terms that Google requested, Singular asked Google to reduce those terms to final terms numbering no more than 20 and to delimit those terms so as to narrowly tailor them to specific issues in this case.

Google did neither in responding on April 12th, instead simply adding 96 new terms to its list of then-

491 terms. Ms. Porto has claimed that she was confused by Singular's April 7th request, and instead believed that Singular had asked Google to add 20 *more* terms to its already oversized list of 491.

That explanation strains credulity, as Google neither provided a final list of terms, as Singular had requested, nor added 20 additional terms, as Ms. Porto claims she believed Singular's request had sought, but instead piled on 96 additional items.

Google recently submitted a further list of approximately 400 terms on May 7th, one month after Singular had requested that Google pare its term list to just 20 in light of the fact that Singular had already responded to 376 terms. Given that Google itself has acknowledged that it would take a party at least two months to respond to a request of just 17 terms (i.e., Singular's January request), Google's mid-May request of 400 terms is extraordinarily vexatious.

Google has repeatedly boasted of how it completed its ESI production in March. Of course, the fact that Singular finalized its request in January, and limited it to just 17 narrowly-tailored terms, likely had a great deal to do with that. By contrast, Google did not make its first request until the middle of March, which request exceeded Singular's by some twenty-eight times.

Further, as Ms. Porto recently pointed out, Singular has noted it would likely roll out supplemental productions covering third-party confidential information up to June 1st. We are hoping to get approval from those third parties whose confidential information is at issue well before then. Those productions are expected to be relatively modest to the extent they are even relevant to the claims and defenses at issue in this case.

Please let us know if you have any questions regarding the above.

Best regards,

**Michael Ercolini**

Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, Massachusetts 02110

617 456 8084 direct
mercolini@princelobel.com

This email is intended for the confidential use of the addressees only. Because the information is subject to the attorney-client privilege and may be attorney work product, you should not file copies of this email with publicly accessible records. If you are not an addressee on this email or an addressee's authorized agent, you have received this email in error; please notify us immediately at 617 456 8000 and do not further review, disseminate or copy this email. Thank you.

------------------------------

IRS Circular 230 Disclosure: Any federal tax advice or information included in this message or any attachment is not intended to be, and may not be, used to avoid tax penalties or to promote, market, or recommend any transaction, matter, entity, or investment plan discussed herein. Prince Lobel Tye LLP does not otherwise by this disclaimer limit you from disclosing the tax structure of any transaction addressed herein.