UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 1:19-cv-12551-FDS<br><br>REDACTED VERSION<br><br>Hon. F. Dennis Saylor IV |

**PLAINTIFF'S OPPOSITION TO GOOGLE LLC'S
RENEWED MOTION TO STAY PENDING *INTER PARTES* REVIEW**

TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................... 2
II. LEGAL STANDARDS ............................................................................................... 7
III. ARGUMENT ............................................................................................................... 8
    A. STAGE OF THE PROCEEDINGS ..................................................................... 8
        i. The Case has been Pending for Over 18 Months ................................... 8
        ii. Google, not Singular, has Delayed Discovery ...................................... 10
    B. ALLEGED SIMPLIFICATION OF THE ISSUES ........................................... 12
    C. PREJUDICE TO SINGULAR .............................................................................. 14
IV. CONCLUSION .......................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
   No. 10-cv-1582, 2011 WL 4448972 (C.D. Cal. Sept. 26, 2011) .......................................... 8, 12

*Cellular Comm's Equip., Inc. v. HTC Corp.*,
   No. 6:16-cv-475, 2018 WL 4261194 (E.D. Tex. May 8, 2018)................................................ 15

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................................................... 7

*Gillette Co. v. S.C. Johnson & Son, Inc.*,
   919 F.2d 720 (Fed. Cir. 1990).................................................................................................... 4

*In re Atlantic Pipe Corp.*,
   304 F.3d 135 (1st Cir. 2002)...................................................................................................... 1

*Invensas Corp. v. Samsung Elecs. Co. Ltd.*,
   No. 17-1363, 2018 WL 4762957 (D. Del. Oct. 2, 2018) ........................................................... 6

*Jurgens v. McKasy*,
   927 F.2d 1552 (Fed. Cir. 1991).................................................................................................. 5

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
   688 F.3d 1342 (Fed. Cir. 2012).............................................................................................. 3, 5

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ........................................................................................................ 1, 7, 14

*Light Transform. Techs., LLC v. Light Science Grp. Corp.*,
   No. 2:12-cv-826, 2014 WL 11514322 (E.D. Tex. Mar. 28, 2014) .......................................... 15

*Mintz v. Dietz & Watson, Inc.*,
   679 F.3d 1372 (Fed. Cir. 2012).............................................................................................. 4, 5

*No Spill, Inc. v. Scepter Canada, Inc.*,
   No. 18-2681, 2020 WL 1528542 (D. Kan. Mar. 31, 2020).............................................. 7, 8, 12

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
   No. 2:18-cv-00390, 2019 WL 3826051 (E.D. Tex. Aug. 14, 2019) ........................................ 14

*Personal Audio, LLC v. Google, Inc.*,
   No. 1:15-cv-00350, Dkt. No. 27, (E.D. Tex. Oct. 17, 2017)...................................................... 1

*Realtime Data, LLC v. Rackspace US, Inc.*,
   6:16-cv-00961, 2017 WL 772654 (E.D. Tex. Feb. 27, 2017).................................................... 7

*Saint Lawrence Comm's LLC v. ZTE Corp.*,
　No. 2:15-cv-349, 2016 WL 7338600 (E.D. Tex. Jul. 15, 2016) ........................................... 5, 13

*Teletel, Inc. v. Tel-Tel U.S. Corp.*,
　No. 99 Civ. 4811, 2000 WL 1335872 (S.D.N.Y. Sept. 15, 2000) ............................................ 11

*Trustees of Boston Univ v. Everlight Elecs. Co. Ltd.*,
　No. 12-11935-FDS, 2013 WL 12324363 (D. Mass. Jul. 11, 2013) ........................................ 7, 8

*WBIP, LLC v. Kohler Co.*,
　829 F.3d 1317 Fed. Cir. 2016) ............................................................................................... 4, 5

Plaintiff, Singular Computing LLC ("Singular"), respectfully submits this brief in opposition to the renewed motion of defendant, Google LLC ("Google"), to bring a halt to this case pending resolution of *inter partes* review ("IPR") proceedings in Google's preferred forum, the Patent Trial and Appeal Board ("PTAB").[1] Managing a court's docket, however, "calls for the exercise of judgment, which *must weigh competing interests and maintain an even balance*." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (*italics* added). Putting this case on ice pending IPR proceedings[2] favors only Google, and would plainly foreclose "maintain[ing] an even balance" between the parties. Moreover, Google's relative size alone disposes of any notion that Google could not readily litigate this case while pursuing its IPR aspirations.[3] As the Court of Appeals for the First Circuit has stated, "it is trite but often true that justice delayed is justice denied," *In re Atlantic Pipe Corp.*, 304 F.3d 135, 147 (1st Cir. 2002). This adage would inevitably prove true here should the stay be entered. Accordingly, and for the reasons set forth below, Google's renewed motion to stay should be denied.

---

[1] All Exhibits referred to herein are attached to the accompanying Declaration of Kevin Gannon.

[2] Google states that it only seeks a stay via this motion through the PTAB's final written decision ("FWD") in the IPRs. *See* Google Br. at 1, 2, 18. This is already Google's second motion to stay this case. Google's first motion was filed prior to institution of any of its six petitions for IPR, and was denied on that basis. *See* Dkt. No. 103. Based on its litigation history herein, Google will likely continue its efforts to halt this case by filing another motion to stay (pending appeal) the PTAB find in favor of Singular in any of the IPRs. *See also* (Ex. A) *Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-00350, Dkt. No. 27, at p. 3 (E.D. Tex. Oct. 17, 2017) (in which Google argued that "keeping the stay in place pending the appeals of the IPR decisions [finding certain claims patentable and others not] to the Federal Circuit will further simplify the case by avoiding duplication and potential conflict").

[3] For just the first quarter of 2021 alone, Alphabet/Google reported quarterly revenues of $55.3 billion. *See* Ex. B.

1

I.     BACKGROUND

Singular filed the complaint in this case almost 18 months ago, on December 20, 2021. Dkt. No. 1.  Much of the heavy-lifting has since been completed in accordance with the deadlines set forth in the Scheduling Order (Dkt. No. 70).  Numerous sets of interrogatories and requests for production have been exchanged and responded to; over 250,000 thousand pages of documents have been exchanged (including source code), including ESI; the written discovery deadline passed on May 24, 2021; depositions have been taken and scheduled; claim construction has been fully briefed, and a *Markman* hearing was conducted as scheduled on March 31, 2021.  Fact discovery is proceeding and is due to be completed On July 23, 2021. *See id.*  Thus, there is no reason to disrupt this on-time schedule by staying the case for years.[4] *See* Fed. R. Civ. P. 1.

Also, as addressed further below, the legitimacy of Google's IPR arguments is in doubt. In the three IPRs that have been instituted, the sole grounds upon which Google requested IPR was obviousness under 35 U.S.C, § 103. *See* Exs. C-E.  That is the sole basis for the PTAB granting the three petitions. *See* Exs. F-H.  However, given the constraints of the Protective Order in this case, Singular is currently prohibited from submitting in the IPRs the evidence of non-obviousness designated "Confidential" by Google herein. *See* Dkt. No. 87, § 5(a).[5]  Such evidence includes skepticism of the invention expressed by others (in this case, Google's own

---

[4] Google spends an inordinate amount of its brief arguing that Singular has been dilatory in this case. *See* Google Br. at 2-5, 9-10.  As set forth *infra*, these arguments are meritless.  Only Google, as a defendant facing a substantial damages claim, has anything to gain from delaying tactics in this case.  Singular is best-served by getting this case to trial as soon as possible, and has proceeded in accordance with this premise.

[5] "All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including . . . inter partes review."

engineers). *See, e.g.*, *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1367 (Fed. Cir. 2012).

Google has produced herein previously-unavailable (to Singular) internal emails that provide compelling evidence that the patented inventions are, in fact, <u>not</u> obvious. For example, in 2010, Dr. Astro Teller was one of Google's most prominent engineers, having earned a B.S. in Computer Science from Stanford University, an M.S. in Heuristic Computation from Stanford, and a Ph.D. in Artificial Intelligence from Carnegie Mellon University. *See* Ex. I, p. 2. Dr. Teller is currently "Captain of Moonshots" at Google's company known as Google "X". *Id.* X is Google's "moonshot factory for building magical, audacious ideas that through science and technology can be brought to reality." *See id* at p. 1.[6] According to his homepage, Dr. Teller is also named as an inventor on at least 60 patents. *See* Ex. J.

Dr. Teller was given access to Dr. Bates' inventions at Google in 2009-2010. In November 2010, he wrote an email to Dr. Sebastian Thrun (another prominent former Google engineer)[7] skeptical of Dr. Bates' inventions, stating as follows:

[redacted]

*See* Ex. L (emphasis added).[8] Such skepticism has long been considered strong evidence of non-obviousness. *See*, *e.g.*, *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 726 (Fed. Cir.

---

[6] According to his biographic website, Dr. Teller is also a "Silicon Valley Forum Visionary" and one of "The Top 25 Most Influential Innovators." *Id.* at p. 2.

[7] At the time, Dr. Thrun was a Vice President of Google and earned Bachelor's, Master's and Doctorate degrees in engineering. *See* Ex. K.

[8] Google designated this email as CONFIDENTIAL under the Protective Order entered in this case, meaning that Singular is currently prohibited from using it in the IPR proceedings.

3

1990) ([the infringer's] skepticism is relevant and persuasive evidence of the nonobviousness of [the] invention."); *see also*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1335 Fed. Cir. 2016).

"[P]raise by others (even from the accused infringer [Google])" is another indicia of non-obviousness. *See*, *e.g.*, *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012). Google's Principal of New Business Development indicated that Google was excited about Dr. Bates' invention in 2011: ███████████████████████████████████████ ████████████ *See* Ex. M. Another Google engineer (Bob Cypher), far from rejecting the invention as old or obvious, also admired Dr. Bates' technology: ████████████ ███████████████████████████████ *See* Ex. N. A third Google engineer (Andrew Ng), one of the founders of Google Brain, wrote to Dr. Bates with emphasis that ████████ ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████

\* \* \*

████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████

Ex. O (emphasis in original). Mr. Ng and Google clearly recognized that Dr. Bates' invention could speed up Google's AI processing by 100 times. No wonder Google was desperate to use the invention in its datacenters.[9] Not surprisingly, none of this evidence was provided by Google to the PTAB. The jury in this case, however, could readily determine that this evidence

---

[9] With a 100x increase in speed, Google could build one new datacenter instead of 100. Thus, at a rough cost of $1 billion per datacenter (*see* Ex. AA, p. 3), Google's use of Dr. Bates' invention has saved it many billions of dollars (for which Google has not paid Dr. Bates a nickel).

4

demonstrates that the patents-in-suit would not have been obvious. *See*, *e.g.*, *Kinetic Concepts*, 688 F.3d at 1367-68.[10]

Other indicia of non-obviousness include copying, acceptance by others and commercial success. *See*, *e.g.*, *Kinetic Concepts*, 688 F.3d at 1367.  At trial, Singular will also present to the jury evidence that, as set forth in the Amended Complaint, Google: (1) appreciated the technical value of the LPHDR inventions in enabling Google to vastly increase its AI processing capabilities, and (2) copied Dr. Bates' inventions.[11] *See* Dkt. No. 37 (Amended Complaint) at ¶¶ 17-22.  Singular will also offer evidence that the inventions have been commercially successful, as demonstrated by Google's retrofitting of its U.S. datacenters with the accused TPU v2 and v3 products.  Such evidence of non-obviousness in this case could hardly be more persuasive. *See*, *e.g.*, *Mintz v. Dietz & Watson*, 679 F.3d at 1378 (secondary considerations of non-obviousness "**may often establish** that an invention appearing to have been obvious in light of the prior art was not") (emphasis added).

As in its first motion to stay, Google also relies once again upon PTAB statistics. According to Google, based upon January-October 2020 statistics, the PTAB found all claims unpatentable in 57% of FWDs issued in IPRs during that time. *See* Google Br. at 7.  But, 57% means that statistically it is almost as likely as not that all challenged claims will <u>not</u> be found unpatentable in a FWD.  Google should not be allowed to use such an underwhelming and speculative statistic to derail this litigation. *See*, *e.g.*, *Saint Lawrence Comm's LLC v. ZTE Corp.*, No. 2:15-cv-349, 2016 WL 7338600, at *1 (E.D. Tex. Jul. 15, 2016) ("it would be speculative

---

[10] The facts underlying obviousness, including such secondary considerations, are to be decided by the jury. *See*, *e.g.*, *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991).

[11] *See*, *e.g.*, *WBIP v. Kohler*, 829 F.3d at 1336 ("copying tends to show nonobviousness").

for the Court to extrapolate from the cited statistics and conclude that the PTAB will [after institution] invalidate some or all of the claims of the challenged patents"); *see also Invensas Corp. v. Samsung Elecs. Co. Ltd.*, No. 17-1363, 2018 WL 4762957, at *5 (D. Del. Oct. 2, 2018) ("acceptance of a specific statistical threshold as sufficient justification for a stay would abrogate the discretionary nature of the inquiry.")  Moreover, the 57% number is based upon a single IPR. Here, Google needs to win on all three of its IPRs in order to have all of the asserted claim herein invalidated.  The probability of such is 57% x 57% x 57%. Thus the likely overall chance of success for Google in all three IPRs is at best 18.5%.

Finally, continuing its blame the victim (Dr. Bates) mantra, Google spends an inordinate amount of its brief falsely stating that Singular has somehow been dilatory in this case. *See* Google Br. at 2-5, 9-10.  These arguments are without merit.  Only Google, as a defendant facing a substantial damages claim, has anything to gain from delaying this case.[12]  That much is clear from Google's strategy of filing its six motions for IPR and then moving twice to stay these proceedings.  Further, when briefing the Scheduling Order in this case, for each and every deadline/date on which the parties disagreed, Google proposed a date later than the date proposed by Singular. *See* Dkt. 54-1.[13]  In contrast, Singular is best-served by getting this case to trial as soon as possible.  Hence, Singular proposed that a trial date around December 2021 be

---

[12] As to Google's allegations regarding ESI collection and production efforts, Singular will address this topic in detail in Singular's response to Google's Motion to Modify the Scheduling Order (Dkt. 182).  Regardless, document and collection and production efforts are, and for several months already, have been at a very advanced stage.  Both parties have collected, reviewed and produced several thousand custodial and non-custodial documents, as have several third parties.  Indeed, virtually no additional work remains on these considerable efforts, which have been months in the making.

[13] For example, Singular proposed August 25, 2021 as the deadline for filing dispositive motions. *Id.* at 2.  Google proposed January 21, 2022. *Id.*

incorporated into the Scheduling Order. *Id.* Google opposed inserting any trial date into the Scheduling Order. *Id.* Accordingly, Google's allegations of delay on the part of Singular should be rejected. *See, e.g.*, *No Spill, Inc. v. Scepter Canada, Inc.*, No. 18-2681, 2020 WL 1528542, at *2 (D. Kan. Mar. 31, 2020) (denial of stay favored when "Plaintiff's attempts to move the case forward were rebuked.")

## II.     LEGAL STANDARDS

District courts have the inherent power to control their dockets, including the power to grant a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A decision whether to stay a case, *vel non*, lies within the sound discretion of the district court. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How best to manage a court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. In striking that balance when a stay pending Patent Office proceedings is requested, courts typically consider three factors: (1) the stage of the proceedings; (2) whether a stay will simplify issues in question and trial of the case, and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Trustees of Boston Univ v. Everlight Elecs. Co. Ltd.*, No. 12-11935-FDS, 2013 WL 12324363, at *1 (D. Mass. Jul. 11, 2013).

The party seeking a stay bears the burden of showing that such a delay in proceedings is appropriate. *Landis*, 299 U.S. at 255. There is no rule in patent cases that litigation must be stayed pending Patent Office proceedings. *See, e.g.*, *Realtime Data, LLC v. Rackspace US, Inc.*, 6:16-cv-00961, 2017 WL 772654, at *2 (E.D. Tex. Feb. 27, 2017). Such a rule "would invite parties to unilaterally derail litigation." *Id.* "Federal calendars should not be hijacked in this manner." *Id.* "[I]t is trite but often true that justice delayed is justice denied." *Atlantic Pipe*, 304 F.3d at 147. Thus, a "Defendant's argument that the case is still in its early stages is

7

significantly diminished by the fact that Defendants themselves have caused substantial delays in the progress of the case." *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No. 10-cv-1582, 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011); *see also No Spill v. Scepter Canada*, 2020 WL 1528542, at *2 (denial of stay favored when "Plaintiff's attempts to move the case forward were rebuked.")

**III.   ARGUMENT**

As set forth above, among the factors courts generally consider when addressing a motion to stay are: (1) the stage of the proceedings; (2) potential simplification of the issues, and (3) potential prejudice to the non-moving party. *Trustees of Boston Univ.*, 2013 WL 12324363, at *1.

A.   STAGE OF THE PROCEEDINGS

i.   The Case has been Pending for Over 18 Months

This case has now been on the docket for almost 18 months. Thus, contrary to Google's argument, this case is now well-advanced. Much of the heavy-lifting has been completed in accordance with the deadlines set forth in the Scheduling Order. Dkt. No. 70. More particularly, the current status regarding those deadlines is as follows:

| | |
|---|---|
| Submit Proposed Protective Order | Completed |
| Submit ESI Order | Completed |
| Preliminary Infringement Disclosure | Completed |
| Patent-related disclosures conference | Completed |
| Preliminary Invalidity and Non-Infringement Disclosures | Completed |
| Amendment to Pleadings | Completed (none requested) |
| Exchange claim terms for construction | Completed |
| Exchange opening claim construction briefs | Completed |
| Exchange reply claim construction briefs | Completed |
| Finalize disputed terms for construction | Completed |
| *Markman* hearing | Completed |
| Written discovery deadline | Completed |
| Fact discovery | To be completed 7/23/21 |

8

| | |
|---|---|
| Expert reports | To be served 8/27/21 |
| Rebuttal expert reports | To be served 9/24/21 |
| Expert discovery deadline | 10/22/21 |
| Dispositive motion deadline | 11/17/21 |

Singular is currently on target with this schedule. Infringement and invalidity contentions have been prepared and exchanged. Numerous sets of interrogatories and requests for production have been exchanged and responded to; thousands of documents have been exchanged, including ESI; depositions have been taken and scheduled; claim construction has been fully briefed, and a *Markman* hearing was conducted as scheduled on March 31, 2021. Thereafter, additional briefing was submitted. *See* Dkt. Nos. 145, 146, 149. Thus, there is no reason to disrupt this on-time schedule by staying the case for years. *See* Fed. R. Civ. P. 1.

The date for completion fact discovery is July 23, 2021. *See* Dkt. No. 70. To that end, documents have been exchanged, interrogatories have been served and responded to, and depositions taken and scheduled. Google has issued twenty discovery subpoenas to numerous third parties, including BAE Systems, Carnegie Mellon, DARPA, MIT, Office of Naval Research, NVIDIA, Blueshift, Xilinx, USC and others, many of which have responded.

In addition, the following motions have been filed:

- Google's first Rule 12(b)(6) motion to dismiss under 35 U.S.C. § 101 (Dkt. No. 22);

- Google's second Rule 12(b)(6) motion to dismiss under 35 U.S.C. § 101 (Dkt. No. 40;

- Singular's Rule 8 motion to deem admitted (Dkt. No. 75);

- Google's first motion to stay pending IPR (Dkt. No. 90);

- Singular's motion to compel production of accused products (Dkt. No. 97);

- Google's motion to compel (Dkt. No. 116);

- Google's motion for protective order re: depositions (Dkt. No. 153);

9

- Google's renewed motion to compel (Dkt. No. 169);

- Google's second motion to stay (Dkt. No. 181);

- Singular's second motion to compel (Dkt. No. 187).

Accordingly, contrary to Google's argument, the case is not in its early stages. Much work has been done, and much effort has been expended by the parties to date in these proceedings.

    ii. <u>Google, not Singular, has Delayed Discovery</u>

In an effort to bolster its motion, Google makes numerous unfounded arguments that Singular has been dilatory in this case. As set forth in the Background section above, there is no incentive for Singular to delay in this case. The only party having such an incentive is Google. Essentially, Google asserts that Singular delayed depositions and other discovery. *See* Google Br. at 3-5. These allegations are unfounded as Singular has attempted to pursue discovery from the earliest stages of the case. In an attempt to slow the case down in order for its petitions for IPR to progress as part of its ongoing strategy to have the case stayed, Google, not Singular, has dragged its feet in this case.

For example, Singular served its first Notices of Deposition on Google over 10 months ago, in July 2020. More particularly, on July 10, 2020, Singular served notices for the following key current and former Google employees knowledgeable regarding when and how Dr. Bates disclosed his invention to Google:

- Astro Teller for September 25, 2020 (Ex.P);

- Jeffrey Dean noticed for September 28, 2020 (Ex. Q);

- Norman Jouppi for September 30, 2020 (Ex. R);

- David Patterson for September 29, 2020 (Ex. S);

- Jennifer Roden Wall for September 30, 2020 (Ex. T).

Of these, Singular has (ten months later) only been able to take the deposition of David Patterson.[14]  Moreover, Google limited this deposition to 4 hours. *See* Ex. V.[15]

Google first objected on the ground that Drs. Teller, Patterson and Dean were apex witnesses and that Singular should first seek discovery through less intrusive methods than depositions. *See* Ex. X.  But that excuse did not prevail because these individuals met personally with Dr. Bates at Google and, therefore, had unique knowledge of the facts of what occurred during those meetings.  Google next objected to producing these witnesses until after its document and custodial production ("ESI") was completed which would be much later in the case. *See* Ex. Y.

Next, Google objected to producing these witnesses claiming that Singular needed to complete its production of ESI before Google these witnesses could be deposed.  However, Google's position was untenable because a party cannot condition depositions upon its adversary's discovery responses. *See*, *e.g.*, *Teletel, Inc. v. Tel-Tel U.S. Corp.*, No. 99 Civ. 4811, 2000 WL 1335872, at *2 (S.D.N.Y. Sept. 15, 2000).  Moreover, infringement is proven via the actions of Google, not Singular.  Thus, the completion of Singular's ESI production should not

---

[14] Singular also served a subpoena directed to Google's former in-house IP attorney (Catherine Tornabene) in July 2020. Ex. U. Singular eventually took Ms. Tornabene's deposition on April 29, 2021.

[15] On February 4, 2021, Singular served second notice of deposition for David Patterson requesting a deposition on February 17, 2021.  Google served objections but eventually agreed to produce Dr. Patterson for a deposition more than a month later on March 10, 2021.  The night before the deposition was to take place, Google cancelled the deposition over alleged "security risks." Ex. W at p. 2.  Specifically, Google objected to Singular using Zoom and insisted that Singular use other transcription products to take the depositions of Google's witnesses. *Id.*  Google finally produced Dr. Patterson for deposition on March 25, 2021, nearly two months after his second deposition notice and eight months after the original deposition notice.

have been a prerequisite for Google producing these witnesses. Nonetheless, Google objected and refused to produce these witnesses for deposition.

Given the foregoing and because the Fact Discovery deadline of July 23, 2021 was approaching, on March 25, 2021, Singular requested that the Court to schedule a Status Conference to address Google's refusal to produce its witnesses for deposition. Dkt. No. 150. The next day, Google moved for a Protective Order with respect to Singular's Rule 30(b)(6) and 30(b)(1) notices of deposition. Dkt. No. 153. With the fact discovery deadline of July 23, 2021, Google has now proposed dates of July 9 and July 21 for key witnesses Teller and Dean, respectively. As set forth above, Singular served the original notices for these depositions almost a year ago in July 2020. As of the filing of the present pleading, Singular's long-awaited Rule 30(b)(6) deposition of Google has also yet to begin. Clearly, Google is attempting to delay these depositions until it hopes it can obtain a stay of the case. Such conduct should not be rewarded by granting the stay.

As the foregoing demonstrates, Singular has pushed for discovery from very early on in the case. Google should not be permitted to benefit from attempting to delay until its motion to stay is decided. *See*, *e.g.*, *Biomet Biologics v. Bio Rich Med.*, 2011 WL 4448972, at *2 ("Defendant's argument that the case is still in its early stages is significantly diminished by the fact that Defendants themselves have caused substantial delays in the progress of the case."); *see also No Spill v. Scepter Canada*, 2020 WL 1528542, at *2 (denial of stay favored when "Plaintiff's attempts to move the case forward were rebuked.")

B. <u>ALLEGED SIMPLIFICATION OF THE ISSUES</u>

Google repeats its argument that a stay will simplify the issues to be resolved in this case. Google Br. at 12-15. However, the only live issue in the three instituted IPRs is invalidity for

12

obviousness under 35 U.S.C. § 103.  Google ignores the other numerous invalidity arguments it makes herein that will not be addressed in the IPR proceedings.  For example, in its First Affirmative Defense, Google alleges that the patents-in-suit are invalid under 35 U.S.C. §§ 101, 102, 103 and 112.  *See* Dkt. No. 53 at p. 23.[16]  The PTAB proceedings will not address Google's Section 101, 102 or 112 defenses raised in this Court.  Notably, Google has not agreed to drop these invalidity defenses should one or more of the asserted claims survive the IPRs.  The assertion of such additional defenses that can only be resolved in this Court weighs against finding that a stay pending the PTAB's proceedings will result in any great simplification of the issues.  *See, e.g.*, *Saint Lawrence Comm's LLC v. ZTE Corp.*, No. 2:15-cv-349, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017).

Likewise, Google's IPR petitions cite only three third-party prior art references – Dockser, Tong and McMillan.  *See* Dkt. No. 92, Exs. 2, 4 and 6.  In contrast, Google's invalidity contentions in this litigation cite a further 27 prior art references.  *See* Dkt. No. 101-2 at pp. 5-7.  The PTAB will not address any of these additional references or the myriad obviousness combinations Google has asserted in this case.  Again, Google has not agreed to drop any of its (101, 102, 103 or 112) invalidity defenses should it not succeed in the PTAB.  Thus, very little, if any, simplification to the issues to be tried in this case will be provided by waiting years for resolution of the IPRs in the PTAB proceedings.  *See, e.g.*, *Saint Lawrence*, 2017 WL 3396399, at *2 (IPR involving two references not likely to simplify case where defendant relied in litigation upon more than 30 references).

---

[16] The Court previously denied Google's Rule 12(b)(6) motion to dismiss for lack of patentable subject matter under Section 101. *See* Dkt. No. 51.

13

C. PREJUDICE TO SINGULAR

Pursuant to the PTAB and appellate Rules, a stay could put this case on ice until 2024 or beyond.[17] That is well-past the likely trial date next year. Moreover, at the end of the IPR process, one or more of the challenged claims is likely to survive. Per the Supreme Court, managing a court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. Granting a stay now would not maintain an even balance. The only party benefitting from such a stay would be Google. Singular would be left on the sideline waiting years for the IPR proceedings to play out. Moreover, Singular's principal, the inventor Dr. Bates, is 65 years old. What possible benefit could inure to him from any delay of this case? None.

As set forth in his accompanying Declaration, Dr. Bates has spent at least the last decade of his life developing his patented LPHDR computers and attempting to commercialize same for the benefit of society. *Id.* at ¶¶ 1-13. As alleged in the Amended Complaint, Google copied Dr. Bates' invention and installed LPHDR computers in all of Google's data centers in the U.S., allowing Google to process data multiple times faster with multiple times less on-board computer real estate, thereby saving Google tens of billions of dollars *See* Dkt. No. 37 at ¶¶ 22-24.

Contrary to the Supreme Court's admonition in *Landis*, it would be neither fair, nor evenly balanced, to impose a stay that favors one party at the exclusion of providing any benefit

---

[17] The last IPR was just instituted on May 14, 2021. The PTAB has one year to issue its FWDs, and that period can be extended from up to another 6 months should the PTAB so desire (Nov. 14, 2022). *See* 35 U.S.C. § 316(a)(11). Thereafter, according to fairly recent statistics, should either Google or Singular appeal, a further delay of up to another 15 months or more would be likely (Feb. 14, 2024). *See, e.g., Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-cv-00390, 2019 WL 3826051, at *4 (E.D. Tex. Aug. 14, 2019).

14

to the other. Granting a stay will prejudice Dr. Bates' ability to bring his invention to market, and presents a clear tactical advantage to Google. Bates Decl. at ¶¶ 1-13. Thus, this factor weighs against granting a stay. To Google, this case is just about money. To Dr. Bates, however, this case is not only about just compensation, but also about his life's work and his company's ability to bring to market and universities throughout the world his signatory contribution to science. *See* Bates Decl. at ¶¶ 1-13.

Courts have also recognized that a stay pending IPR can result in loss of memory and other evidence. *See*, *e.g.*, *Light Transform. Techs., LLC v. Light Science Grp. Corp.*, No. 2:12-cv-826, 2014 WL 11514322, at *1 (E.D. Tex. Mar. 28, 2014). This is of particular importance herein given that Singular's claim for willful infringement is predicated, *inter alia*, upon Google's knowledge of Dr. Bates' inventions via meetings and communications between Dr. Bates and Messrs. Teller, Dean and Jouppi (Google's architects of the accused products) and Catherine Tornabene (Google's former in-house IP attorney). *See*, *e.g.*, Amended Complaint (Dkt. No. 37), ¶¶ 18-22. The witnesses' memories of what occurred during these meetings is directly relevant to Singular's claim for willful infringement. As demonstrated from the transcript of her deposition taken by Singular in this case, Ms. Tornabene's memory has already begun to fade. In a transcript of just 62 pages, Ms. Tornabene testified over 40 times that she could not recall/remember regarding prior events that are directly relevant to Singular's willful infringement claims in this case. *See* Ex. Z. Such risk of memories fading over time cuts against granting a stay. *Light Transform. v. Light Science*, 2014 WL 11514322, at *1; *see also Cellular Comm's Equip., Inc. v. HTC Corp.*, No. 6:16-cv-475, 2018 WL 4261194, at *2 (E.D. Tex. May 8, 2018).

## IV. CONCLUSION

Singular submits that there is only one way to expeditiously and fairly resolve this case; and, that is by a trial here in early 2022. At trial in this Court, all infringement, invalidity, willfulness and damages issues can be address at one time and requiring a single judgment and a single appeal. For the foregoing reasons, Singular respectfully requests that the Court deny Google's renewed motion to stay.

Dated: May 28, 2021                                    Respectfully submitted,

*/s/ Paul Hayes*
Paul J. Hayes (BBO #227000)
Matthew D. Vella (BBO #660171)
Kevin Gannon (BBO #640931)
Daniel McGonagle (BBO #690084)
Brian M. Seeve (BBO #670455)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Fax: (617) 456-8100
Email: phayes@princelobel.com
Email: mvella@princelobel.com
Email: kgannon@princelobel.com
Email: dmcgonagle@princelobel.com
Email: bseeve@princelobel.com

ATTORNEYS FOR THE PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Paul J. Hayes*