UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>GOOGLE LLC,<br><br>          Defendant. | Civil Action No. 1:19-cv-12551 FDS<br><br>Hon. F. Dennis Saylor IV |

**GOOGLE LLC'S REPLY IN SUPPORT OF RENEWED MOTION TO STAY
PENDING *INTER PARTES* REVIEW**

1

1696109

Courts in this District and across the country routinely grant motions to stay in cases like this one where the Patent Trial and Appeal Board ("PTAB") has instituted *inter partes* review ("IPR") as to all asserted patents and claims. In its opening brief, Google cited numerous cases in similar postures in which stays have been granted. Singular did not address a single one of those cases. Google also referred the Court to cases in which a stay has been granted where the litigation was farther along than this one or where IPR had been instituted against only a subset of the asserted patents or claims. Singular chose not to address those cases either. Instead, Singular's opposition tries to litigate the merits of Google's IPR petitions rather than the stay motion itself. In doing so, Singular disregards the thoroughness of the PTAB's institution decisions. To the limited extent Singular does engage with the factors actually relevant to the stay issue, it mischaracterizes the state of discovery, downplays a stay's near-certain benefits, and generally tries to obscure the fact that all three relevant factors counsel in favor of granting Google's motion. Thus, for the reasons discussed herein and in Google's opening brief, Google respectfully requests that the Court stay this litigation pending final written decisions ("FWDs") on Google's recently instituted IPR petitions—decisions that the PTAB must issue in less than a year.

## ARGUMENT

**A.     Singular mischaracterizes the record before the PTAB.**

The bulk of Singular's opposition brief focuses on the merits of Google's IPR petitions before the PTAB, rather than the stay motion currently before this Court. Singular asserts that "the legitimacy of Google's IPR arguments is in doubt." Opp. at 2. But in making this argument, Singular fails to quote from or cite to any aspect of the PTAB's institution decisions, all of which are already in the record. *See* ECF Nos. 183-3, 183-4, 183-5. When read in their entirety, the

PTAB's sweeping institution decisions strongly suggest that all three patents will ultimately be found invalid. As just one example of their breadth, the PTAB's decisions found persuasive Google's obviousness arguments based on four separate grounds of unpatentability. It also explicitly rejected various arguments Singular raised in opposition to Google's petitions.[1] And, as noted in Google's opening brief, the PTAB has already started to narrow the issues before this Court, by embracing interpretations of the parties' disputed claims that are consistent with the constructions put forward by Google.[2]

Instead of addressing what the institution decisions actually say, Singular devotes numerous pages to alleged secondary indicia of obviousness, including out-of-context quotations from Google and Alphabet employees who briefly reviewed Dr. Bates's presentations (not his patents) and who had no part in designing the accused products. Singular's presentation of this evidence is exceptionally misleading.  Regardless, this evidence is not relevant to the factors this

---

[1] *See, e.g.*, ECF No. 183-3 at 36 ("Patent Owner argues that (1) Dockser teaches away because 'Dockser is directed entirely to selectable precision; and disparages the use of non-selectable precision units,' (2) Tong teaches away because 'Tong devotes much of its discussion to the benefits of variable or selectable precision,' and (3) MacMillan teaches away because 'MacMillan is primarily concerned with providing increased performance without increased cost.' At this stage and on this record, we preliminarily determine that the references do not teach away from the claimed devices.") (citations omitted).

[2] For instance, the PTAB confirmed that the LPHDR unit does not require any particular hardware structure. *Compare* ECF No. 183-3 at 18 ("As Petitioner points out, the claim does not recite any structural characteristics of the execution unit . . . .") *with* ECF No. 138 at 2 (Singular construing the "execution unit" to require "an arithmetic circuit paired with a memory circuit"). The PTAB also confirmed that the relevant "possible valid inputs" are those to the first operation rather than "to the LPHDR unit overall." *Compare* ECF No. 183-3 at 21-22 ("The relevant inquiry thus looks at all possible valid inputs to the first operation—not all possible valid inputs to the LPHDR execution unit overall, or all possible valid inputs to other operations. . . . The relevant possible valid inputs for assessing the imprecision limitation, therefore, are the inputs to that operation.") *with* ECF No. 111 at 17 ( explaining Google's position that "the LPHDR execution unit operates on the numerical value represented by the 'first input signal'").

Court and others have considered in deciding stays pending IPR. This evidence warrants no further discussion at this time.

**B.      This case is at a sufficiently early stage to benefit from a stay.**

Singular argues that this case is "well-advanced." But every piece of evidence it cites to support that contention shows no such thing. In reality, while the parties have made some progress—primarily related to document discovery—the bulk of the Court's and the parties' efforts in this case have yet to be expended. And to the extent discovery has progressed thus far, any such advancements have been due to Google's diligence. Courts are more likely to stay cases in their early stages because doing so "maximize[s] the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Neste Oil Oyj v. Dynamic Fuels, LLC,* No. 12-662-GMS, 2013 WL 424754, at*5 (D. Del. Jan 31, 2013) (quoting *SenoRx, Inc. v. Hologic, Inc.,* No. 12-173-LPSCJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013)). A stay now would do just that, as the parties have yet to meaningfully engage in the most costly and time-consuming facets of litigation, including depositions, expert discovery, and dispositive motions.

For instance, the parties agreed to up to 16 depositions for each side for a total of 85 hours per party. ECF No. 54 at 5. To date, Singular has taken three depositions spanning no more than 10 total hours. Google has yet to take a single fact deposition due to Singular's failure to complete its production of electronically stored information ("ESI").[3] All told, 29 of the 32 possible depositions (spanning roughly 160 of the allotted 170 hours) in this case remain to be taken. No Rule 30(b)(6) depositions have been scheduled and no corporate witnesses have been

---

[3] Mindful of Singular's delays, Google has attempted to move forward with third-party depositions where Singular's ESI is not relevant, but only one such deposition has been scheduled thus far notwithstanding that Google has asked for numerous others.

designated or gone through the time-consuming effort of preparing for deposition. On the merits, the Court has not issued a claim construction order, no dispositive motions have been filed, and no trial date has been set.

Moreover, due to Singular's delays in discovery, absent a stay, the Court will have to address Google's pending motion to extend the written-discovery deadline as well as an anticipated motion to extend the fact-discovery deadline. Motions to compel will also be forthcoming related to third parties—including the Massachusetts Institute of Technology and a third-party corporation with which Singular had relevant interactions[4]—which Google intends to depose.

Under similar circumstances, courts have liberally granted motions to stay. Google cited numerous cases at similar (or even later) stages of litigation in which courts stayed proceedings pending the resolution of IPRs. ECF No. 182 at 10-11. The caselaw paints a clear picture: this case is at a sufficiently early stage that a stay now would prevent the Court, the parties, and third parties from the potentially needless and substantial expenditure of resources on a case that is likely to be resolved by the PTAB. Singular tellingly fails to engage with a single one of these prior decisions. Instead, Singular dedicates numerous pages to argument related to details that have little to do with the relevant analysis of this factor. Google will briefly address each of these arguments, in turn.

First, Singular notes that "[t]his case has been on the docket for almost 18 months." Opp. at 8. But, the passage of time alone is immaterial to the Court's analysis. What matters is the "stage of litigation." *SurfCast Inc. v. Microsoft Corp.*, No. 2:12-cv-333-JDL, 2014 WL 6388489,

---

[4] Singular has marked its interactions with this company as confidential. Google does not name it here so that this brief can be filed publicly.

at *1 (D. Maine. Nov. 14, 2014). And as Google's opening brief made clear, the case is younger than its age alone suggests. Indeed, the pleading stage was not fully resolved until September 2020. ECF No. 84.

Moreover, while the parties have been proceeding per the Court-scheduled deadlines in the case, discovery has been delayed significantly by Singular's repeated failure to engage in meet-and-confer conversations in a timely manner or complete its ESI discovery.[5] As to the ESI, the delay is the result of Singular's repeated failure to respond to Google's correspondence regarding its proposed search terms. Because the fact that Singular's ESI production is not complete is all that matters for purposes of this motion, Google does not belabor the discussion of Singular's delays here; in any event, they are discussed at length in prior motion practice. *See, e.g.*, ECF No. 155 ¶ 14; 164 ¶ 3.

As to depositions, the relevant fact is that few depositions have taken place, and Singular's attempt to lay the blame on Google is unavailing. Singular notes it "served its first Notices of Deposition on Google over 10 months ago," but the concomitant implication that these depositions were not conducted last year because of *Google's* alleged refusal to produce these five witnesses is not true. It was *Singular* that voluntarily withdrew each of the individual depositions it noticed in 2020, because, as is customary in a complex litigation, Singular wanted Google's "production of all documents relating to the witnesses" in advance of their depositions. *See* ECF No. 164-1 (July 29, 2020 Letter from Hayes to Kamber).[6] Google timely completed that

---

[5] In its brief, Singular suggests that "[m]uch of the heavy-lifting has been completed" in this case. Opp. at 2. By way of example, Singular points to the fact that "over 250,000 thousand [sic] pages of documents have been exchanged (including source code), including ESI." *Id.* Singular fails to mention that its ESI production is incomplete and that its production thus far accounts for less than twenty percent of that total.

[6] Singular claims that Google "objected to producing these witnesses until after its document and custodial production ("ESI") was completed." Opp. at 11. That is false. As the document

production in March, and Singular subsequently re-noticed all five depositions. One has already been completed, and even while seeking a stay pending IPR, Google has provided dates for the others.

In addition to these individual depositions, Singular also refers to its "long-awaited Rule 30(b)(6) deposition." But Singular fails to note that after serving its first 102-topic Rule 30(b)(6) notice in October, it failed to respond to Google's formal objections and repeated efforts to meet and confer on the topics of examination for more than five months. Ultimately, Singular's inefficient discovery practice forced Google to move for a protective order as to its Rule 30(b)(6) deposition. ECF No. 153. Singular also fails to note that Magistrate Judge Cabell granted Google the relief it sought, ordering Singular to serve an amended Rule 30(b)(6) notice. The parties are in the process of meeting and conferring as to the noticed topics, and it is because of this meet and confer that is finally taking place that no corporate depositions have been set.[7]

Rather than owning up to its role in these delays, Singular claims that only Google has an "incentive" to delay and that Singular is "best-served by getting this case to trial as soon as possible"; however, the evidence of the parties' respective actions in discovery belies these assertions. Opp. at 6, 10. In fact, Google is the party that has produced or provided dates for fact witnesses for depositions and Google is also the party that has completed its ESI production. By contrast, Singular has delayed its ESI production and thus its fact-witnesses' depositions, in a way that's to *its* strategic advantage. As a result of Singular's delays, Google was forced to move

---

Singular cites makes clear, "Singular does not intend to proceed with the depositions it has noticed until Google has made a custodial production." *See* ECF No. 201-27.

[7] Specifically, the parties met and conferred on the subject on May 14. On that call, Singular's counsel agreed to serve an amended deposition notice to reflect the parties meet-and-confer discussions. More than two weeks later, Singular has failed to respond, despite Google's email reminder on May 24, 2021, which Singular has ignored. Ex. A to Declaration of Andrew Bruns (May 24, 2021 email from Bruns to Ercolini).

for an extension of fact discovery. If that motion is not granted, Singular will have had all of Google's ESI for more than four months before the close of fact discovery without concluding its own production until *after* the close of written discovery. Absent an extension of the fact-discovery deadline, Google will be forced to review Singular's ESI and then notice and conduct every fact deposition in the case (and possibly move to compel the depositions of third parties), all within the span of less than two months.

For all of Singular's attempts to muddy the waters on the parties' respective conduct, one thing is clear: Google has done far more than Singular in moving discovery along, and there is no merit to the allegation that Google has "dragged its feet." More importantly, the details that matter to the Court's analysis of this factor, which is the status of the discovery rather than finger-pointing over who's responsible, clearly point in favor of granting a stay here.

Finally, Singular's listing of motions filed in the case thus far is irrelevant to the stay motion. The motions all related to disputes regarding the pleadings, discovery, and the motion for stay pending IPR itself. Because these motions either do not relate to or have not resulted in a merits adjudication of the case, they have no bearing on the factors relevant to the Court's analysis of the "stage of the proceedings."[8]

### C.    A stay will simplify the issues in this case.

Regardless of the outcome of the IPR proceedings, the issues before this Court will be simplified by the PTAB. Singular's arguments to the contrary are without merit.

---

[8] If anything, the parties' motion practice thus far illustrates the ways in which Singular has repeatedly delayed discovery. For instance, Google moved to compel or for a protective order repeatedly in recent months. In three separate instances, Singular agreed to produce the documents Google sought, but only *after* forcing Google to file a related motion. *See* ECF Nos. 129 at 2, 175 at 1-2, 185 at 2.

Singular opens its brief by suggesting that "the legitimacy of Google's IPR arguments is in doubt." Opp. at 2. That is so, Singular says, because the petitions that the PTAB is reviewing all focus on obviousness. The PTAB's institution decisions, however, reflect a high likelihood of Google prevailing—that the petitions were premised on obviousness rather than anticipation is immaterial.[9] Moreover, Singular's focus on the petitions' bases also misses the point entirely. The indisputable fact is that a final written decision in Google's favor will completely *resolve* this case, and even a final written decision in Singular's favor will streamline the case considerably.

Even if Google does *not* prevail on all claims before the PTAB, the case before this Court will be dramatically simplified. "[T]he [PTAB's] order will facilitate trial by providing the court with the [PTAB's] expert opinion and likely will clarify the scope of the claims remaining for trial." *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, No. 3:15-cv-30005-MGM, 2016 WL 1735330, at *3 (D. Mass. Apr. 28, 2016). Singular argues that if Google's petitions are denied, the IPR proceedings will not simplify the case due to prior art Google has asserted here but not before the PTAB. Opp. at 12-13. That concern is unwarranted. As Google has previously noted

---

[9] Rather than address the substance of the PTAB's institution decisions, Singular casts Google's chances of success as unlikely based on misleading math related to the PTAB's FWD statistics. Namely, Singular argues that "Google needs to win on all three of its IPRs in order to have all of the asserted claim [sic] herein invalidated. The probability of such is 57% x 57% x 57%. Thus, the likely overall chance of success for Google in all three IPRs is at best 18.5%." Opp. at 6. Singular fails to mention the fact that in addition to the 57% of cases where the PTAB found all claims unpatentable, the PTAB found some (but not all) claims unpatentable in another 22% of cases. It also ignores the fact that the case will be simplified regardless of whether all asserted claims are invalidated. But setting aside those details, Singular's math still doesn't compute. Google's three petitions, like the patents they target, are substantially identical—as are the three institution decisions. Singular has itself acknowledged the patents' similarity by, among other things, copying and pasting the same infringement contentions for each patent. In short, the three petitions will likely stand or fall together; therefore, multiplying probabilities is not, mathematically, the correct approach.

and this Court has previously made clear, after the PTAB issues a FWD, the petitioner is estopped as to any written reference raised or known to Google at the time the petition was filed. *See* Mtn. for Stay at 6-7 (citing 35 U.S.C. § 315(e)(2)); *see also SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 603 (D. Mass. 2018) (Saylor, J.).

Moreover, Singular misreads the caselaw on which it relies. Singular claims that, where "additional defenses . . . can only be resolved in this Court [this factor] weighs against finding that a stay pending the PTAB's proceedings will result in any great simplification of the issues." Opp. at 13. But Singular's lone citation on this score is highly distinguishable. In *Saint Lawrence Comm's LLC v. ZTE Corp.*, "the PTAB . . . instituted IPR on only one of five asserted patents, which amounts to 6 of 38 asserted claims." No. 2:15-cv-349, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017)." The circumstances here could not be more different, as IPR has been instituted as to every asserted patent and every asserted claim, making it more likely than not that none of Google's defense will ever need to be addressed before this Court at all.

Given the high likelihood that the PTAB's FWD will end this case and the certainty that its decision will at least simplify the issues before this Court, this factor counsels strongly in favor of a stay.

**D.      A stay would neither unduly prejudice nor tactically disadvantage Singular.**

As noted in Google's opening brief, the third and final relevant factor weighs "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *SurfCast*, 2014 WL 6388489, at *1. Because "staying any case pending an IPR risks delaying the final resolution of the dispute," the "potential for delay does not, by itself, establish *undue* prejudice." *SCVNGR*, 2014 WL 4804738, at *9 (quoting *Neste Oil Oyj,* 2013 WL 424754, at *2) (emphasis in original). ***Undue*** prejudice may be found where the moving party was dilatory in

seeking a stay or filing its IPR petitions or where the parties are competitors or where the plaintiff has sought injunctive relief. *See* ECF 182 at 15 (citing cases). Notably, Singular does not contend that ***any*** of these circumstances are applicable here (nor could it).[10]

Instead, Singular points to a lone source of purported undue prejudice[11] that would befall it should the Court grant Google's motion: the risk of witnesses' memories fading over time. Opp. at 15. But that argument is flawed in multiple ways. First, to the extent any witness's memory has "faded" here, ***Singular's*** delay in bringing this suit is to blame. Google publicly announced its accused TPUs in May 2017[12], at which point two of the three patents-in-suit had issued. Singular waited more than two-and-a-half years before filing this suit in late-December 2019. It then voluntarily amended its complaint three months later, nearly three years after the public announcement of Google's TPUs.

Second, Singular overstates the import of the risk of faded memory to this factor in the Court's analysis. The cases it cites for the proposition that "risk of memories fading over time cuts against granting a stay" do not actually stand for that conclusion. In both cases that Singular relies on, the non-moving party feared that ***documentary*** evidence (not just testimonial evidence)

---

[10] In fact, Singular acknowledges that it does not compete with Google, as Dr. Bates's declaration notes that he has tried, and failed, to commercialize his purported invention for more than a decade. *See* Opp. at 14. While Singular suggests that granting a stay would "prejudice Dr. Bates' ability to bring his invention to market," Opp. at 15, it offers no support for this conclusion, which is at odds with Dr. Bates's decade-long, unsuccessful attempts at commercialization.

[11] Singular also suggests that a stay is inappropriate here because of its founder's age (65 years). Opp. at 15. It is not clear, however, whether or how that fact is relevant to the Court's analysis. Nor does Plaintiff cite to a single case in which such a factor has been considered (let alone found to be relevant) in a Court's stay analysis. To the contrary, Singular's argument on this score boils down to the notion that mere delay itself amounts to undue prejudice. But that is clearly not the case. *SCVNGR*, 2014 WL 4804738, at *9.

[12] Peter Bright, "Google brings 45 teraflops tensor flow processors to its compute cloud," *Ars Technica* (May 17, 2017), https://arstechnica.com/information-technology/2017/05/google-brings-45-teraflops-tensor-flow-processors-to-its-compute-cloud/.

would be lost should a stay be granted. For instance, in *Cellular Commc'ns Equip., Inc. v. HTC Corp.*, No. 6:16-cv-475, 2018 WL 4261194, at *2 (E.D. Tex. May 8, 2018), cited by Singular, the plaintiff feared that documents would be lost because the defendant had not yet finished its production. No such concern exists here, as Google has completed its ESI production months ago. Moreover, the fear of lost testimony in these cases was not focused exclusively on fading memory. In *Cellular Commc'ns Equipment*, the plaintiff noted that the defendant had recently been acquired by another company. As a result, many relevant witnesses, including the defendant's Rule 30(b)(6) designee on all technical issues in the suit, were expected to leave the defendant's employ before IPR proceedings would be completed. No such concern exists here.

Given the relevant facts here, any speculative risk of fading memories cannot justify denying a stay. In fact, despite the added concrete risks of lost evidence in *Cellular Commc'ns Equipment*, that court found that the factor only "slightly weigh[ed] against a stay." *Id.*

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant a stay of the case pending the PTAB's final written decisions on Google's IPR petitions on the asserted patents.

Respectfully submitted,

Dated:  June 1, 2021

By:  */s/ Matthias Kamber*
Gregory F. Corbett (BBO #646394)
gregory.corbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nathan.speed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
elizabeth.dimarco@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210

1696109

Telephone: (617) 646-8000
Fax: (617) 646-8646

Asim Bhansali (*pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111

Matthias Kamber (*pro hac vice*)
mkamber@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

*Attorneys for Defendant Google LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing pleading was served upon the attorneys of record for all parties by electronically filing the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to registered attorneys of record.

Dated: June 1, 2021                                   /s/ Nathan R. Speed
                                                     Nathan R. Speed

1696109