**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SINGULAR COMPUTING LLC, | Civil Action No. 1:19-cv-12551 FDS |
| Plaintiff, | |
| v. | Hon. F. Dennis Saylor IV |
| GOOGLE LLC, | |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENT RELATING TO DAMAGES**

## I.      INTRODUCTION

Singular's motion addresses disputes that are not ripe for resolution because the parties have never discussed or attempted to solve them. Instead of engaging in a good faith dialogue with Google to address each side's concerns, propose areas of compromise, and identify potential solutions, Singular prematurely seeks the Court's intervention.

But the Court's involvement at this early stage is neither procedurally proper nor necessary. Both the Federal Rules of Civil Procedure and this District's Local Rules require parties to meet and confer in good faith and attempt to resolve or narrow discovery disputes before asking for the Court's assistance. Fed. R. Civ. P. 37(a)(1); Local Rules 7.1(A)(2) and 37.1. By skipping straight to motion practice without first making a meaningful effort to resolve the parties' disputes, Singular violated these rules. Its motion should be denied on this basis alone.

Moreover, a good-faith meet and confer would likely have obviated Singular's motion. Google has never refused to produce information responsive to the discovery requests at issue. Rather, Google requested a discussion regarding the scope of the requests so that it could better assess the relevance of the information requested and the burden of providing it. That additional clarity is necessary because, as drafted, Singular's requests are sweeping in scope and include demands for information untethered to either party's claims or defenses. Singular's interrogatories, for example, request a description of: every item found in each of Google's datacenters (Interrogatory 12); every cost Google has incurred in designing, building, and operating each datacenter (Interrogatory 13); and every third-party product, service, system, or method used in any way in connection with the accused products (Interrogatory 15). But requests that comport with Rule 26's proportionality requirement would not—and could not—ask for identification of every datacenter item, every datacenter cost, and every third-party product used

1

with the accused products. Without a meet and confer, Google has no way of knowing what Singular's requests actually target, why they are relevant, and whether compliance is feasible. Conversely, Singular has no way of knowing whether its requests are overbroad or overly burdensome in light of the needs of the case.

Google's attempts to clarify the scope of Singular's requests are exactly what the meet and confer requirement is intended to facilitate. Ideally, by meeting and conferring in good faith, parties can reach a consensus about what categories of information are responsive and proportional to the needs of the case. And, even if the meet-and-confer process does not avoid motion practice entirely, any remaining disputes will surely be narrower than what Singular has presented here, thus reducing the Court's burden and expediting the resolution of those disputes.

In sum, Singular's motion is premature; the disputes it describes should first be narrowed—if not resolved—by the parties. For that reason, and those discussed below, the Court should deny Singular's motion and order Singular to participate in a good-faith meet and confer with Google before raising any additional disputes through motion practice.

## II. BACKGROUND

In this case, Singular alleges that Google infringes three very similar patents that claim a processor or other device that includes low precision, high dynamic range ("LPHDR") execution units designed to perform approximate arithmetic calculations. *See* Am. Compl. (ECF 37) ¶¶ 32-33. It directs these infringement allegations at versions two and three of Google's proprietary Tensor Processing Units ("TPUs")—computer processors specially designed to be used for machine learning in Google's datacenters. Specifically, Singular alleges that these TPUs contain, in what is called the "matrix multiplication unit" or MXU, individual LPHDR execution units designed to perform approximate calculations, as claimed in the asserted patents. *See, e.g.*, *id.* ¶¶ 90-94.

2

Singular has moved to compel Google to provide supplemental responses to two separate sets of discovery requests directed at Singular's damages theories for these infringement claims. The first is a set of requests for production ("RFPs") that Singular propounded on July 10, 2020. *See* Declaration of Daniel McGonagle in Support of Plaintiff's Motion to Compel ("McGonagle Decl."), Ex. C. In particular, Singular seeks additional responses to eight of its RFPs in that set, which request production of:

- Licenses relating to the accused TPUs (RFP 39);
- Documents showing sales projections, costs, and profits associated with developing and operating the accused TPUs (RFPs 43, 44, 47-49, 82); and
- Documents estimating the value of the benefits provided to Google by the accused TPUs (RFP 87).

*See id*. at 7, 10.

Google served responses to these RFPs on August 24, 2020. *See id.*, Ex. D. In its responses, Google committed to producing the following:

- Patent license agreements related to the accused TPUs;
- Documents referring to the cost of the accused TPUs, showing the costs and expenses related to developing the accused TPUs, showing the profits and losses related to Google's sale of the accused Google Cloud TPU products/services, and sufficient to show sales projections for Google Cloud TPU products/services; and
- Analyses of the benefits of the accused TPUs.

*See id.* at 34, 39, 43-44, 56-57, 74, 77.

Following service of Google's RFP responses, Singular wrote to Google on September 18, 2020, raising specific objections to the form of Google's RFP responses and requesting to meet and confer about the responses. Declaration of Christopher Sun in Support of Opposition to Plaintiff's Motion to Compel ("Sun Decl."), Ex. 1 at 3-4. Google responded five days later, offering to meet and confer on September 25, 2020. *Id.*, Ex. 2 at 3. But Singular never took Google up on that offer. *See id.*, Ex. 3 at 4. And even after Google served responsive documents

in the eight months that followed, Singular has never raised any specific concerns about the scope of what Google was producing, identified any problems with Google's productions, sought production of additional documents, or otherwise meaningfully met and conferred with Google about these now-contested RFPs.

In addition to the RFPs, Singular also moves to compel additional responses to its Third Set of Interrogatories, which it served on April 7, 2021. McGonagle Decl., Ex. A. These interrogatories concern Singular's damages claim and seek, among other things:

- A description of "the layout, physical structure, and contents" of each data center that "make[s] use of" the accused TPUs and identification of "all relevant documents" and "the person(s) most knowledgeable" (Interrogatory 12);

- Identification of "the cost to design, build and operate" each data center that contains or utilizes an accused TPU and identification of "all relevant documents" and "the person(s) most knowledgeable" (Interrogatory 13);

- A description of "the amount of any costs or expenses incurred or investments made by [Google] in producing, creating, developing, or otherwise commercializing" the accused TPUs and a description of "any anticipated or actual return on those investments or expenditures in terms of market share, sales, brand recognition, revenues, profits, customers, or other business objectives, including any projections or forecasts" (Interrogatory 14);

- Identification of "every product, service, system, and method of or from a third party . . . that [Google has] used in any way in connection with the design, development, implementation, testing, management, and operation of the Accused Products" (Interrogatory 15);

- A description of the "identity, content, and interpretation of all licenses, technology agreements, authorizations to use, or other such transfer of rights agreements" that "pertain to technology similar (in part or in full) to the Patents-in-suit" or that Google "contend[s] are comparable to a license that [it] would have taken in a hypothetical negotiation in this Case" (Interrogatory 18);

- A description of "any analysis or calculations of financial benefits of any kind . . . conducted by or for [Google], relating to implementing each of the functionalities identified in Plaintiff's Infringement Contentions" including "the use of the BF16 number format within the TPU," "the use of the MXU for matrix multiplication," "the use of the Core Sequencer within the TPU," and "the use of the VPU within the TPU" (Interrogatory 19); and

- A description of "any surveys or other customer analyses, prepared by [Google] that identify or sought to identify customer preference information, desired features, or any other information related to the functionalities identified in Plaintiff's Infringement Contentions" including "the use of the BF16 number format within the TPU," "the use of the MXU for matrix multiplication," "the use of the Core Sequencer within the TPU," and "the use of the VPU within the TPU" (Interrogatory 20).

*Id.* at 5-7.

After Singular served these interrogatories, Google reached out to Singular seeking additional details about Singular's damages theory so that Google could assess how best to respond. In a letter dated May 4, 2021, Google requested that Singular update its initial disclosures and provide a supplemental response to Google's damages-related interrogatory (Google's Interrogatory 5) to describe Singular's damages theory and identify the facts and documents supporting that theory. Sun Decl., Ex. 4. Singular did not respond immediately to this request. *See* McGonagle Decl., Ex. G at 2.

Google thereafter responded to the above interrogatories on May 7, 2021. In its responses, Google noted that the interrogatories were overbroad and would require Google to provide a glut of information that had no apparent relation to Singular's allegations or disclosures, including a list of every item in Google's datacenters and every third-party service or product used in connection with the accused TPUs. *Id.*, Ex. B at 3-7, 12-16. As a result, Google offered to meet and confer with Singular about the interrogatories so that Google could better understand what information Singular was seeking and why, which, in turn, would allow Google to more efficiently target its efforts at obtaining the information Singular actually wanted to see. *See id.,* Ex. G at 2. Google also responded to Singular's request for identification of comparable licensing agreements by describing a license covering the design of a component used in the accused TPUs. *Id.*, Ex. B at 13.

After receiving Google's interrogatory responses, Singular contacted Google on May 11, 2021, to schedule a meet and confer. *Id.*, Ex. G at 3. At that point, Singular still had not responded to Google's May 4 letter, updated its initial disclosures, or supplemented its responses to Google's damages-related interrogatory. Google responded the next day, reiterating that it was "happy to meet and confer about Google's responses to Singular's Third Set of Interrogatories." *Id.* at 2. Google noted, however, that because Singular's interrogatories sought information related to Singular's damages claim, any meet and confer between the parties likely would not be productive until Singular supplemented its initial disclosures and discovery responses to describe what damages it was claiming. *Id.* As a result, Google proposed postponing the parties' meet and confer until Singular had provided those supplemental disclosures and responses. *Id.*

Singular thereafter supplemented its interrogatory response on May 13, 2021 (but declined to supplement its initial disclosures). The response represented that Singular was seeking damages in the form of a reasonable royalty and described some of the factors Singular might consider in calculating what the reasonable royalty should be, including the royalty rates in comparable licensing agreements and the cost savings and profits that resulted from Google's use and/or sale of the accused TPUs. Sun Decl., Ex. 5. The response did not, however, provide the factual bases for the specific factors. *See id.* In separate correspondence sent on May 13, Singular demanded that Google meet and confer the next day—May 14—to discuss Google's responses to Singular's Third Set of Interrogatories. McGonagle Decl., Ex. G at 1-2.

Upon receiving Singular's supplemental interrogatory response and its request to meet and confer, counsel for Google immediately informed Singular that she would be out of the office on May 14 and thus unavailable to meet and confer on that day. *Id.* at 1. Instead, she offered to schedule for another day, noting that Google would propose some dates and times

once it had completed its review of Singular's supplemental interrogatory response. *Id.* at 1 ("We are reviewing the supplemental response to Interrogatory No. 5 . . . . [W]e can provide times to meet and confer once we complete that review."). Perplexingly, in response to this offer, Singular asserted that Google was refusing to meet and confer and elected to file its motion to compel on May 18, 2021. *Id.*

## III.   ARGUMENT

### A.   Singular has not satisfied its obligation to meet and confer in good faith regarding this dispute.

Both the Federal Rules of Civil Procedure and this District's Local Rules require a party to meet and confer before filing a motion to compel. Federal Rule of Civil Procedure 37(a)(1), for example, "set[s] out specific requirements for a party filing a motion to compel." *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996) (addressing prior version of Federal rule). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

This District's Local Rules contain similar provisions. Among other things, they require that, "before filing *any* motion, counsel must 'certify that they have conferred and have attempted in good faith to resolve or narrow the issue.'" *Hasbro, Inc.*, 168 F.R.D. at 101 (quoting Local Rule 7.1(A)(2)) (emphasis in original). And motions to compel are subject to even more exacting meet and confer requirements under the Local Rules. "Before filing any discovery motion . . . counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent." Local Rule 37.1(a). In particular, a party may only file a discovery motion if "(1) opposing counsel has failed to respond to a request for a discovery conference within . . . 7 day[s] . . . , (2) opposing counsel has failed to attend a discovery

conference within 14 calendar days of the request, or (3) disputed issues are not resolved at the discovery conference." Local Rule 37.1(b).

In filing its motion to compel, Singular did not satisfy any of these three preconditions. Google has not failed to respond, within seven days, to a request to meet and confer; it has not failed to attend a meet and confer within 14 days of the request; and the parties have yet to attempt—much less fail—to resolve their dispute at a meet and confer. For example, Singular has never met and conferred with Google regarding the RFPs its motion identifies, despite Google offering to do so eight months ago. Furthermore, Singular surely cannot use its own failure to meet and confer to justify its motion to compel.

Singular also has not satisfied Local Rule 37.1(b)'s preconditions with respect to its interrogatories. Google responded to Singular's request for a meet and confer about the interrogatories within seven days. Singular requested a meet and confer on May 11, 2021, and Google responded to that request the very next day, on May 12, 2021. McGonagle Decl., Ex. G at 2-3. At the time Singular moved to compel, Google also hadn't failed to attend a meet and confer within 14 days of Singular's initial request. Rather, in response to Google's offer to meet and confer, Singular demanded that Google agree to schedule the conference on a particular day and at a particular time. *Id.* at 1-2. And when counsel for Google indicated she would be out of the office that day and offered to reschedule, Singular refused and filed its motion to compel on May 18, 2021—a full week ***before*** the 14-day period had run. Finally, because the parties have yet to meet and confer, it is unclear whether or not they can resolve their dispute, and Singular therefore has not satisfied the final condition of Local Rule 37.1(b).

Local Rule 37.1(b)'s conditions exist to prevent parties from doing exactly what Singular has done here with respect to its interrogatories—refuse to accommodate an opposing party's

8

schedule when demanding to meet and confer, misconstrue the opposing party's unavailability as a refusal to meet and confer, and use that purported "refusal" to justify moving to compel. The Local Rules prohibit parties from moving to compel fewer than 14 days after requesting a meet and confer to allow the parties to work around each other's calendars. By filing its motion before the full 14 days had run, Singular denied the parties that opportunity.

Singular's half-hearted attempts to meet and confer violate the meet and confer requirements in the Federal and Local Rules. Singular cannot simply "go through the motions," nor can it insist that the meet and confer take place on a particular date; it must make a genuine and good faith attempt to resolve its dispute with Google without involving the Court. *Clark v. Berkshire Med. Ctr., Inc.*, No. 17-30186-MGM, 2019 WL 78994, at *2 (D. Mass. Jan. 2, 2019) ("The meet and confer requirement in Rule 37(a)(1) is not an empty formality and cannot be satisfied merely by including copies of correspondence that discuss the discovery at issue, particularly when the correspondence only shows the movant threatening a motion to compel if all the requested discovery is not produced."); *A.J. Amer Agency, Inc. v. Astonish Results, LLC*, No. 12-351S, 2013 WL 9663951, at *1–2 (D.R.I. Feb. 25, 2013) ("Nor do hostile e-mails back and forth that reiterate discovery demands satisfy the meet and confer requirement.").

Singular's failure to make that attempt warrants denying its motion to compel, as other courts in this District have done in similar circumstances. *See Hasbro, Inc.*, 168 F.R.D. at 101 (denying motion to compel as premature because the parties "had not yet reached an impasse in the discussions before the motion was filed" and because the moving party had failed to satisfy the procedural requirements for filing the motion); *see also Stornaiuolo v. New Hampshire Boat Builders*, 113 F.R.D. 655, 658 (1987) (refusing to consider opposition to motion to compel

9

because the opposing party had failed to comply with the Local Rules' meet and confer requirement).

> **B.     A meet and confer is necessary because Singular's interrogatories are facially overbroad and disproportionate to the needs of the case.**

The parties should meet and confer about Singular's interrogatories not only because such a conference is procedurally required, but because engaging in that process would serve a practical purpose. By meeting and conferring, Singular could clarify and narrow the scope of its interrogatories, which are currently overbroad and disproportionate to the needs of the case in that they seek disclosure of minute details that have little-to-no relevance to Singular's allegations that the multiplier portion of individual TPU chips contains circuitry that qualifies as an "LPHDR execution unit." Indeed, Courts in this District have observed that these kinds of interrogatories—ones that "seek extensive minor details rather than dominant facts"—generally "impose an undue burden." *McCord Corp. v. Beacon Auto Radiator Co.*, *Inc.,* No. 50-176, 1951 WL 4645, at *1 (D. Mass. Jan. 12, 1951); *see also Checker Cab Mfg. Corp. v. Checker Taxi Co*., 2 F.R.D. 547, 547 (D. Mass. 1942) ("Where the facts to be elicited are relatively few and important . . . the legal machinery of interrogatories is very useful . . . but where they are very numerous they tend to become unduly burdensome, oppressive and vexatious to the adverse party and difficult for the court to administer."). Singular itself has acknowledged that interrogatories are improper if they "require[] too detailed of an analysis and explanation." McGonagle Decl., Ex. G at 1.

In light of Singular's failure to meet and confer, an exhaustive recitation of the various ways in which Singular's interrogatories are overbroad would not be productive. To the extent Singular is able and willing to acknowledge and address those deficiencies, it should do so through the meet and confer process—as the Local and Federal Rules require—not through

motion practice. But even a cursory review of Singular's interrogatories reveals why Google felt it necessary to meet and confer about them.  Take, for example, Singular's request that Google identify the "contents" of its datacenters. McGonagle Decl., Ex. A at 5 (Interrogatory 12). Answering that interrogatory as written would seemingly require Google to list everything housed in its massive datacenters. That would include not only servers that employ the accused the TPUs, but servers that don't. Responding to the interrogatory would also presumably require Google to list all of the discrete components that make up each server, because those components are all technically contained by the datacenter. Worse, to respond fully, Google would have to list equipment and materials contained in its datacenters that have nothing to do with processing data at all, from the office furniture to the supply closets. And none of this has any connection with the accused functionality within an individual chip.

As another example, Singular's request that Google identify all of the costs to build and operate its datacenters, *id.* (Interrogatory 13), would require Google to list the salaries of not just network engineers and technicians but also janitorial staff, the price to pour the concrete in the building's foundation, and the expenses associated with purchasing the bulbs that keep the datacenters lit—information that has nothing to do with Singular's claims. Similarly, Singular's request that Google list every third-party product, system, or service used in connection with the accused TPUs, *id.* (Interrogatory 15), would require Google to identify every third-party component of every server that housed an accused TPU, even though what is accused is a sub-part of an individual TPU.

As a final example, one of Singular's interrogatories requests that Google identify all licenses that "pertain to technology similar (in part or in full)" to the asserted patents or that Google "contend[s] are comparable to a license that [it] would have taken in a hypothetical

negotiation in this Case." *Id.* at 6 (Interrogatory 18). Google identified a license in response to this interrogatory,[1] but Singular contends that Google should have also identified other licenses of patent portfolios, cross-licenses, and licenses of different technology in the same general field as the claimed invention. *See* Mot. at 6-7. But, although licenses of comparable technology can inform a damages inquiry, licenses of patent portfolios,[2] cross-licenses,[3] and licenses of different technology in the same field[4] generally are not probative. Thus, they have limited relevance to Plaintiffs' damages theory or its infringement claims.

Of course, Google trusts that Singular did not intend Google to provide the expansive responses that its interrogatories require on their face, which is precisely why Google sought to meet and confer with Singular about the interrogatories in the first place. Google could thereby have obtained insight into the categories of information that Singular actually wanted Google to include in its responses (and, conversely, what information Singular did not want). Absent that guidance, Google would have been left to guess what information Singular might think was

---

[1] Google also represented that its investigation into the interrogatory was ongoing and that it would supplement its response to the interrogatory to reflect additional information to the extent warranted.

[2] *See In re Koninklijke Philips Pat. Litig.*, No. 18-cv-01885-HSG, 2020 WL 7398647, at *9 (N.D. Cal. Apr. 13, 2020) ("Portfolio-wide license rates are simply not a reasonable starting point for measuring the fair market value of an invention.").

[3] *See AptarGroup, Inc. v. Summit Packaging Sys., Inc.*, 178 F.3d 1306, at *9 (Fed. Cir. 1998) (unpublished) (accepting that any royalty rate derived from cross-licenses is "suspect").

[4] *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit. ") (emphasis in original); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009) (observing that "a reasonable juror could only conclude that [a] license agreement for multiple patents to broad, PC-related technologies is directed to a vastly different situation than the hypothetical licensing scenario of the present case involving only one patent . . . directed to a narrower method of using a graphical user interface tool").

1692730

relevant and responsive.

It is for this same reason that Google requested postponing the meet and confer about Singular's interrogatories until after Singular updated its initial disclosures and/or interrogatory responses to clarify its damages theories, given the "continuing duty to supplement its responses until they [a]re complete." *Holmes Grp., Inc. v. RPS Prod., Inc.*, 2010 WL 7867756, at *25 (D. Mass. June 25, 2010). Without adequate disclosure about the factual underpinning for the damages claim underlying this discovery, Google cannot calibrate its related discovery responses. This is not a "tit for tat" approach to discovery. Mot. at 5. Rather, Google hoped that, if Singular provided additional details on its damages theories, Google could better understand what information its interrogatories were seeking—and in doing so make the parties' meet and confer more productive. If, for example, Singular had described what kinds of expenses it believed Google saved by adopting the claimed invention, Google would have known to quantify those expenses in its responses to Singular's interrogatories.

So, to reiterate, Google has not refused to provide substantive responses to Singular's interrogatories. To the contrary, it has always intended to do so.[5] Google simply wanted Singular to clarify what information the interrogatories were seeking so that it could better respond. But instead of engaging cooperatively in the meet-and-confer process, Singular made a premature

---

[5] While many of Singular's interrogatories are facially and unreasonably broad, Google would have been willing to provide substantive responses to at least some of the interrogatories, were Singular to properly limit and clarify them. Indeed, where it could, Google did in fact provide substantive responses to some of Singular's interrogatories. However, given the overlapping subject matter of many of Singular's interrogatories and their common focus on Singular's damages claims, it was more efficient for the parties to negotiate the scope of those interrogatories before Google investigated the requests and provided responses. That way, Google could use the parties' discussions to target its search for responsive information and avoid having to double back and re-gather information or documents.

13

motion to this Court. Accordingly, there is not yet a need for the Court to resolve this dispute, which the parties can and should at least narrow, if not entirely remedy, themselves. For that reason, the Court should deny Singular's motion. *See Hasbro, Inc.*, 168 F.R.D. at 101 ("[T]he purpose of a full consultation pursuant to Local Rule 37.1(A) is to enable the parties to attempt to narrow, if not resolve, their dispute. It is not up to the Court to expend its energies when the parties have not sufficiently expended their own.").

### C. Meeting and conferring would allow Singular to explain what, if any, additional documents it is seeking.

A good faith meet and confer would have also helped the parties work out any issues with Singular's RFPs. As described above, Singular has moved to compel responses to a number of its RFPs. But Google has already committed to producing documents in response to these requests. The parties have never discussed—and Singular's motion does not describe—what additional documents these RFPs seek that Google has not already agreed to provide. It may be the case that Google has already agreed to produce the documents Singular is seeking in its motion to compel, or it may be the case that Google would otherwise agree to produce those documents to the extent it has not already done so. Until the parties meet and confer about these requests, there is no way to know whether there is any dispute, much less one that requires resolution by the Court. Consequently, Singular's motion to compel is premature and the Court should deny it.

### D. Singular's failure to meet and confer in good faith precludes granting its request for sanctions.

Singular's motion also requests an award of reasonable costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), though it never describes why such an award would be appropriate. The Court should deny this request. Rule 37(a)(5)(A) directs courts to issue an attorney's fee award to a party that has successfully moved to compel additional discovery responses. Fed. R. Civ. P. 37(a)(5)(A). But the Rule expressly notes that such an

award is improper where—as here—the moving party "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." *Id.*

## IV.     CONCLUSION

Singular's motion to compel is premature. The parties can and should attempt to resolve this dispute before involving the Court. Therefore, the Court should deny the motion.

Respectfully submitted,

Dated: June 3, 2021

By:     */s/ Matthias Kamber*
Gregory F. Corbett (BBO #646394)
gregory.corbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nathan.speed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
elizabeth.dimarco@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Asim Bhansali (*pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111

Matthias Kamber (*pro hac vice*)
mkamber@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

*Attorneys for Defendant Google LLC*

1692730

## <u>CERTIFICATE OF SERVICE</u>

   I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.


             */s/ Nathan R. Speed*
             Nathan R. Speed

1692730