# Exhibit 1



Page 1

September 18, 2020

**VIA EMAIL**

Matthias A. Kamber
Keker, Van Nest & Peters LLP
633 Battery St.
San Francisco, CA 94111

RE:   *Singular Computing LLC v. Google LLC*, 1:19-cv-12551-FDS

Dear Matthias:

I write in response to your letter of September 10, 2020 regarding alleged deficiencies in Singular's interrogatory responses, RFP responses, and its document production.  As to each alleged deficiency, Singular responds as follows:

**1.  Interrogatory Responses**

*a. Interrogatory Nos. 1, 2, 6, & 12*

Singular has not refused to respond to Interrogatory Nos. 1, 2, 6, or 12, despite Google's allegation. Rather, Singular objected to the *timing* of Google's requests (as premature in advance of claim construction), and agreed to supplement its responses within a reasonable time after the Court has issued a claim construction order.  This approach is consistent with the Federal Circuit opinion in *X2Y Attenuators, LLC v. Int'l Trade Com'n*, 757 F.3d 1358 (Fed. Cir. 2014), which Singular cited in its responses to Interrogatories Nos. 1, 2, 6, and 12, and which your letter wholly ignored.

As Judge Reyna wrote in his concurrence in *X2Y*, "all the invalidity defenses raised by Respondents (anticipation, obviousness, indefiniteness, lack of written description and improper inventorship) . . . required that the claims be construed first." 757 F.3d at 1365.  Similarly, each of the issues raised by Google's Interrogatories Nos. (1) conception and reduction to practice); (2) first disclosure; (6) priority; and (12) written description[1] requires a proper claim construction.

Moreover, per the same opinion in *X2Y*, "[the patentee] did not bear an initial burden of proving non-invalidity—including that the patent antedates alleged prior art—because all patents are presumed valid.  Instead, Respondents had the burden to show invalidity by clear and convincing evidence.  Only after Respondents established a prima facie case of invalidity would the burden have shifted to XYZ to prove priority over the invalidating prior art." *Id*.  The same applies here:

---

[1] *See also, e.g., Koninklijke Philips Electronics N.V. v. Cardiac Science Operating Company*, 590 F.3d 1326, 1336 (Fed. Cir. 2010) ("A district court must base its analysis of written description under Section 112, paragraph 1 on proper claim construction.")



Google has not established a *prima facie* case of invalidity; Interrogatories Nos. 1, 2, 6, and 12 are thus premature.

Finally, in addition to ignoring *X2Y*, your September 10 letter cites three district court cases in which the plaintiff had disclosed its date of conception and reduction to practice. None of these is a District of Massachusetts case. Indeed, in all three cases, the court relied upon the N.D. Cal. Local Rule (L.P.R. 3-1(f)) requiring such disclosure (including in *University of Virginia Patent Foundation v. General Elec. Co.*, 2015 WL 48788880 (W.D.Va. Aug. 14, 2015), wherein the parties had agreed to follow the N.D. Cal. Patent Local Rules). As far as we know, the District of Massachusetts' Local Patent Rules do not impose such an obligation.

b. Interrogatory No. 5

Regarding Interrogatory No. 5, Singular maintains that its response, which identified its present theory of damages, is sufficient. Nevertheless, without waiving any right to amend or supplement its response to Interrogatory No. 5 based on information obtained through discovery, Singular can confirm that its present damages theory is based on a reasonable royalty, in addition to enhanced damages based on the willfulness of Google's infringement. Singular is not seeking damages based on lost profits at this time.

c. Interrogatory No. 7

As to Interrogatory No. 7, Singular again stands by its response, which provides a detailed, three-and-a-half page account of the facts and circumstances surrounding Google's willful infringement of Singular's patents, including detailed descriptions of at least three meetings between Dr. Bates and Google between 2011 and 2017 in which Dr. Bates disclosed his inventions pursuant to a non-disclosure agreement between Singular and Google. In each case, Singular included either the specific or approximate dates for those meetings—June 24, 2011; September 17, 2013; and late-February 2017. As Singular further stated at the close of its response, "[b]y May 2017, Google knew or should have known of U.S. Patent Nos. 8,407,273 and 9,218,156 prior to the launch of the accused Cloud Tensor Processing Unit Version 2 (TPUv2 Device) in May 2017. Additionally, prior to the launch of the accused TPUv2 and TPUv3 Device, Google knew or should have known that those accused devices infringed US Patent Nos. 8,407,273 and 9,218,156 or was willfully blind to such infringement."

As Singular has yet to receive custodial document production from any of the Google employees who attended these meetings with Dr. Bates, obviously, Singular cannot at this time pinpoint the exact date that Google subjectively became aware of the Asserted Patents (or the precise date that it began to willfully infringe them). That information is uniquely in Google's custody, although Singular is certainly working to obtain it from Google via discovery. In the meantime, Singular's response provides a fulsome, yet discrete list of candidate dates, giving Google more than enough information for it to defend against the willful infringement allegations, to the extent that is possible.



Accordingly, while we are certainly willing to meet and confer with you on this issue, we do not believe a supplement is warranted, much less required, at this time.

*d. Interrogatories Nos. 8 & 11*

Much as you stated in your August 11, 2020 letter, wherein Google unilaterally notified Singular that it would not make its first production of non-custodial documents until the end of September, Singular similarly does not expect to provide its next production of materials, including those responsive to Google's Interrogatories Nos. 8 and 11, until the end of September.  We are, of course, endeavoring to do so as soon as possible, and will keep you informed should anything change in the meantime.

**2. Singular's RFP Responses**

Your September 10 letter also alleges that Singular provided "numerous and often conflicting objections and qualifications that render meaningless many of Singular's commitments to produce documents."  Yet you have only identified two of Singular's responses to Google's RFP as allegedly problematic.  While Singular notes that Google's responses to Singular's RFPs are effectively identical to those of Singular to Google's RFPs (both in terms of the objections stated and what Google has committed to produce), Singular only responds below to the two specific examples addressed by your letter—RFPs 37 and 64.  We are, of course, willing to discuss any other examples, to the extent you provide a particularized account of what Google alleges is problematic about Singular's response.

As to Singular's response to Google's RFP 37, Singular reiterates that response, in which it agreed to produce "all non-privileged documents responsive to the request *to the extent they exist*; are in Singular's possession, custody and control; can be located through a reasonable search; and relate to the specific claims and defenses in this action."  While Singular maintains that "no documents exist that refute Singular's allegations that Google's infringement…is willful," it will certainly produce any if each of the above conditions holds true.

As to Singular's response to Google's RFP 64, Singular will agree to amend its response to read as follows:

"Singular specifically objects to this request on the grounds and to the extent that (1) it calls for, or may be construed as calling for, information protected from discovery by the attorney-client privilege, the work product doctrine, and/or common interest or joint defense privilege; (2) it seeks information and/or documents not within Singular's possession, custody, or control; (3) it seeks documents already within Google's possession, custody or control, and/or that are equally available to Google; and (4) it calls for premature disclosure of materials in advance of any hearing, trial, submission to the Court, or deposition.

Subject to and without waiving the foregoing objections, Singular responds as follows: Singular will produce non-privileged material it uses, introduces into evidence, or relies upon at any



hearing, trial, submission to the Court, or deposition in this matter at the time it uses such material or in accordance with the schedule set by the Court."

We trust these responses will put to rest any lingering concerns you may have as to RFPs 37 and 64.

### 3. Singular's Document Production

Finally, regarding Google's allegation that Singular was required to produce, as part of its initial disclosures, documents relating to funding it received from DARPA (and to identify the same in response to Google Interrogatory No. 9), Singular again refers Google to its response to Google's Interrogatory No. 9.  In short, Dr. Bates conceived and constructively reduced his invention to practice independently of any funding from any university or government organization.  Singular's subsequent work with DARPA, to produce a prototype of the invention, entirely post-dates that conception and constructive reduction to practice.  It is thus of no moment as it relates to ownership of the Asserted Patents.  As such, Singular was not and is not required to produce materials relating to its work with DARPA as part of its initial disclosure obligations in this case.

Please feel free to contact me should you have any questions regarding any of the above.

    Best regards,

    */s/ Paul J. Hayes*
    Paul J. Hayes
    PRINCE LOBEL TYE LLP
    One International Pl., Ste. 3700
    Boston, MA 02110
    T: 617 456 8000
    phayes@princelobel.com