UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>  Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>  Defendant. | Civil Action No. 1:19-cv-12551-FDS |

**SINGULAR'S RESPONSE IN OPPOSITION TO
GOOGLE'S MOTION TO MODIFY THE SCHEDULING ORDER**

  Plaintiff, Singular Computing, LLC ("Singular"), respectfully requests that the Court to deny Google's Motion to Modify the Scheduling Order (Dkt 196). Google can establish neither diligence nor good cause for its motion. Instead, Google simply hopes to buttress its argument that this action should be stayed pending completion of *inter partes review* proceedings. In this respect, there is nothing new about Google's motion. Throughout the past year, Google has tried every conceivable game to thwart the progress of discovery, as demonstrated by the below review of the record. To grant Google's motion would reward it for this now-longstanding pattern of vexatious tactics and discovery abuse. It would also prejudice Singular, who has persistently, in good faith, and despite Google's efforts to the contrary, worked to advance discovery and to obtain a speedy resolution of its claims. Regardless, to the extent Google actually requires additional time to serve written discovery—its motion identifies no specific need, while its limit-reaching requests of May 24th indicate there is in fact no need—Google's predicament is of its own making, much as it has been by its own design. For these reasons, detailed below, Google's motion should be denied.

1

## I. BACKGROUND

Since fact discovery opened in July 2020, Singular has diligently and efficiently pursued discovery in this case. Within days of fact discovery opening, Singular served its first set of interrogatories to Google. Ex. A to Gannon Decl. On the same date, Singular noticed the depositions of five key Google witnesses. Ex. B to Gannon Decl. By October, Singular had served a comprehensive 30(b)(6) notice of deposition on Google and was well into the process for obtaining production of custodial electronically stored information ("ESI") from Google. Ex. C to Gannon Decl. By January 13, 2021, Singular had finalized its ESI search terms, which sought production from Google in response to seventeen highly specific search terms that were narrowly tailored to specific issues in this case. Ex. D to Gannon Decl.

Google would ultimately agree to produce in response to Singular's January 13 ESI search terms, but only on the condition that Singular make no further ESI requests. Ex. E. to Gannon Decl. According to Google, it would take approximately "two months" from the time Singular had made its ESI request before Google could fully review and produce all documents responsive to Singular's request. Dkt. 197-4 at 18. Ultimately, Google would complete its response to Singular's seventeen ESI search terms within 72 days of Singular's request, on March 26, 2021.

Only after Singular had finalized its ESI request would Google commence the process of making its own ESI requests, to Singular. Ex. F to Gannon Decl. By then, Google was well aware how long that process was expected to take. Singular had first approached Google about its ESI requests in October 2020. Ex. C to Gannon Decl. Nevertheless, Google did not expect to complete its responsive production until March 2021, at the earliest—two months after

Singular's finalized request.  197-4 at 18.  Thus, assuming a similar timeframe, Google could expect Singular's ESI production to be complete by late-May 2021, at the earliest.

Google served its ESI request on March 11, 2021.  Dkt. 197-11 at 2.  Singular made its first production in response to Google's March 11 request on April 14, 2021, consisting of over 2600 documents, comprising more than 14,000 pages.  Ex. G to Gannon Decl.  For a company of Singular's size, that is, primarily employing just a single individual (Dr. Joseph Bates) since its founding in 2009, this was, in addition to Singular's Initial Disclosure production, already a significant volume of material.  Regardless, Singular would ultimately produce several thousand more pages of responsive ESI materials by the time it completed its ESI response in late May 2021. Ex. H to Gannon Decl.[1]

## II.     ARGUMENT

Since fact discovery opened in July 2020, Singular has diligently and efficiently pursued discovery in the interest of obtaining a speedy resolution of its infringement claims.  During the same time, Google has aggressively tried to thwart Singular efforts by any means available, in order to delay a trial and verdict in this case.  Google's conduct has ranged from the subtle (refusing, on the eve of a depositon noticed weeks beforehand, to produce its own witness, citing vague and unsubstantiated "security" concerns [Ex. I to Gannon Decl.])—to the plainly egregious—such as demanding ESI production from Singular on terms so immoderate as to amount to a blanket request for all electronically stored information ("ESI") in Singular's custody covering a ten-year period.

---

[1] A limited subset of Singular's ESI production is currently under review by a third party whose consent, pursuant to a mutual non-disclosure agreement, is required prior to production.  While Singular has diligently provided materials to that third party to obtain its consent, as it has done throughout this litigation, Singular is ultimately limited in what it can do to expedite receipt of that consent.  Nevertheless, Singular expects to be able to produce these materials shorty.

That Google's complaints regarding Singular's ESI production are its most voluble, is ironic, as nowhere have Google's vexatious tactics been on more fulsome display than in the progress of ESI discovery. Google's tactics include requesting ESI production from Singular in response to nearly 600 separate search terms between mid-March 2021 and late-May 2021. This compares to just 17 search terms that Singular requested from Google on January 13, 2021. Ex. D to Gannon Decl. The unprecedented volume of Google's ESI term requests alone violate every model order concerning e-discovery available, including that of the Federal Circuit, and by several orders of magnitude. *See* Model Order Concerning E-Discovery for Federal Circuit (http://www.cafc.uscourts.gov/sites/default/files/announcements/Ediscovery_Model_Order.pdf) (calling for 5 ESI search terms for 5 custodians).

Nor were Google's requests modest in scope despite their outsized number. Instead, Google sought facially overbroad search terms that were plainly intended to maximize Singular's review and production burden, and its costs. Among the literally hundreds of examples from Google's ESI search terms were to be found: (1) the word 'patent' itself; (2) the bare names of Singular's prosecution counsel ("Plotkin") and his law firm ("Blueshift") and prosecution counsel ("Plotkin") for over a decade and across dozens of non-asserted U.S. and foreign patents; (3) hundreds of company names (e.g., "Apple," "Facebook," "Amazon") with no meaningful delimitation. Ex. F to Gannon Decl. Any one of these terms on its own would be expected to (and did in fact) draw in tens of thousands of documents (emails, attachments, etc.) that Singular generated over a ten-year period. An even cursory comparison of Google's immoderate ESI search terms with Singular's modest and narrow requests underscores the chasm between the good faith the parties have respectively shown during this process.

Google has boasted that it "timely" produced its ESI to Singular, having responded in full by March 26, 2021 to Singular's January 13, 2021 ESI request containing just 17 highly narrow terms—a total of 72 days from start to finish. In Google's case, this timeframe is hardly to be boasted of—but for a limited subset of documents requiring third-party consent prior to production (pursuant to longstanding non-disclosure agreements), Singular completed its response to Google's ESI requests in almost exactly the same timframe—despite fielding nearly 22 times the number of search terms, which almost exclusively consisted of terms so overbroad that most had little, if any, specific relevance to this case.

Moreover, in boasting of its timely production, what Google most glaringly neglects to mention is the early timing of Singular's underlying ESI requests. Unlike Google, who waited only until after Singular had finalized its modest request in early January, did Google spring its several hundred unbounded search terms on Singular on March 11, 2021, when Google gave Singular a list of 491 separate search terms.[2] Ex. K to Gannon Decl. As above, those search terms effectively asked Singular to produce every email and email attachment that Singular: (i) sent to or received from dozens of potential licensees over a decade; (ii) in which Singular communicated anything whatsoever with its decade-long prosecution counsel and any foreign

---

[2] Google now argues it actually served its ESI requests on January 20, 2021, rather than on March 11, 2021. Mot. at at 2. But any notion that Google served its actual ESI request before than March 11, 2021 is a fiction. And before Google brought its present motion, its counsel readily conceded this. Dkt. 197-11 at 2. It is also noted that Google *must* argue that it served its ESI request before March 11, 2021. If Google did not serve its ESI requests before March 11, and Singular could be expected to require the same 72 days that it took Google to respond to Singular's ESI request, Singular's response could be expected to be complete by Saturday, May 22, 2021, just two days before the May 24 written discovery deadline. And while Google is technically correct that it served *an* ESI request on January 20, Google again neglects to mention the critical part: Google completely replaced its January 20 ESI search terms after Singular had repeatedly asked Google to moderate those terms, which "hit" (and would thus require review, production and/or privilege logging of) every single document in Dr. Bates' custody over a decade. In its motion, Google now characterizes its March 11, 2021 requests as a "narrowing" revision of its January 20th requests. Mot. at 4. Nothing could be further from the truth. Google's January 20 ESI requests contained just over 200 separate search terms. The replacement search terms that Google provided on March 11, 2021, contained 491 search terms. In other words, Google asks the Court to believe that Google "narrowed" its ESI search terms from January by more than doubling them in March. Ex. K to Gannon Decl.

5

patent agent, regardless of whether the communications actually concerned the three patents-in-suit; (iii) every communication from or to any university with which Dr. Bates has ever been affiliated, whether as a student, professor, or research collaborator, in addition to countless other over-the-line examples.  Exs. J and K to Gannon Decl.

Regardless, by its conduct, indefensible under any reasonable view of the ESI process, Google seemed to be snickering at Singular, apparently viewing Singular as a "sucker," because it had opted to use the ESI process only for the purpose of obtaining needful discovery.  Indeed, what is most troubling about Google's conduct throughout that process is not even the undue burden that Google's outsized and unreasonable request sought to impose on Singular.  Rather, it is how Google has attempted to parlay its indefensible ESI requests into threadbare excuses for refusing to produce its own witnesses for deposition, as it did in moving the Court for an order of protection unless and until Singular had responded to Google's volumninous ESI requests. Dkt. 163 at 7.

The result is one of the more convoluted justifications for seeking protection from entirely ordinary discovery requests such as Singular's 30(b)(1) notices of deposition.  In particular, Google argued that it could not produce its own fact witnesses for deposition because those witnesses might be "unfair[ly]" surprised if asked about communications and documents those witnesses themselves had sent, received or authored.  Dkt. 163 at 7.

In other words, Google argued that it had no obligation to produce, or even schedule the deposition of, a Google witness who might be asked about a documents that was almost undoubtedly in Google's own possession, unless and until Singular produced those same documents back to Google from Singular's own materials, in addition to thousands of other documents that were expected to have little to no relevance to any claims in this action.  While

Google declined in its motion for protection to actually state whether such Google-authored documents were already in its possession when it made its ESI requests of Singular, Google would nonetheless argue that Google may, for all it knew, have destroyed such documents. Dkt. 163 at 7.[3]  According to Google, unless and until Singular responded to Google's 491 search terms, Google could not even schedule the depositions of those witnesses, even months in advance, much less go forward with them.[4]

By early April 2021, after Google had repeatedly refused to moderate its ever expanding ESI requests, Singular decided enough was enough.  On April 6, 2021, Singular informed Google that it intended to produce in response to 376 of Google's 491 search terms from its March 11 request.  Ex. L to Gannon Decl.  For the remaining 115 search terms, Singular provided updated hit counts (including all parent documents, and attachments thereto) and asked

---

[3] Notably, Google's motion for a protective order offered no evidence that Google's "standard course of business" deletion of its own materials and communications to and from Dr. Bates had ever occurred, or was even plausible. More critically, despite Singular's having produced back to Google over 200 of Google's own emails authored or received by the fact witnesses Google had refused to produce (all of which emails had already been produced by Google to Singular), Singular still has not been permitted to depose Jeffrey Dean, Norman Jouppi, Astro Teller, or James Laudon, the four most critical Google witnesses.  Indeed, to the extent Google has even offered deposition dates for these witnesses, their depositions will not proceed until more than a year after Singular first noticed them, on July 10, 2020.

[4] It must be noted just how stupefying the consequences of Google's argument in its motion for protection were. According to Google, Party A could condition Party B's access to discovery from Party A on whether or not Party B had responded in full to Party A's own discovery request, no matter how unduly burdensome or time-consumng Party A's request to Party B might be.  Moreover, if Google's argument were accepted, this would permit Party A to unilaterally and indefinitely stymie Party B's discovery efforts by simply waiting to *make* its request, the completion of and upon which Party A had conditioned its response to Party B's own discovery request.  Lest such a scenario be seen as a farfetched hypothetical, this is *precisely* what Google did in its March 11, 2021 ESI requests.  Indeed, Google has elsewhere complained, albeit baselessly, that Singular "waited" for several "weeks" in responding to Google's ESI requests, and thus bears full responsibility for Google's failure to produce its fact witnesses for depositon.  But what then of the *eight months* of fact discovery (i.e., between late-June 2020 and mid-March 2021) in this case that Google waited before actually making its ESI request?  Might Google have simply waited until the day before the May 24, 2021 deadline to serve written discovery to make its ESI request?  It is undoubtedly with this concern in mind that this Court, and others, have unequivocally refused to permit parties to withhold discovery simply because the requesting party has failed to produce discovery.  *See, e.g.*, *Trustees of Boston University v. Everlight Electronics Co., Ltd.*, 2014 WL 12927018, *3 (D. Mass. 2014) ("[A] party may not excuse its failure to comply with discovery obligations by claiming that its op-posing party is similarly delinquent.  Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent.") (quoting *Genetech, Inc. v. Trustees of Univ. of Penn.*, 2011 WL 7074208, *1 (N.D. Cal. Jun. 10, 2011); *see also Teletel, Inc. v. Tel-Tel U.S. Corp.*, 2000 WL 1335872, at *2 (S.D.N.Y. Sept. 15, 2000).

Google to (a) reduce the remaining 115 terms to no more than 20 final additional search terms (i.e., in addition to the 376 terms to which Singular was already responding); and (b) narrowly limit those up to 20 additional search terms to specific issues in the case using search logic delimiters. *Id*. Singular requested a response from Google by no later than April 12, 2021. *Id.* Google responded on April 12, attempting to now *add* 96 additional search terms to its already outsized list of 491, while refusing to reduce the 115 terms which Singular had asked Google to sensibly delimit. Ex. M to Gannon Decl.

For all of Google's hand-wringing over allegedly delayed ESI production—which has not actually been delayed—it is noteworthy what Google's motion is not—a motion to compel production of Singular's ESI. Google has not filed such a motion, because Google could not possibly defend it. Nor has Singular's ESI production, which has taken no less time from request to completion, even for several times as many terms, appeared to have held up Google in its discovery efforts. For example, Google has now "maxed out" its interrogatory limits, having served a a fifth (and final) set of Interrogatories; a second set of Requests for Production; and a final set of Requests for Admissions on the written discovery deadline (May 24, 2021). Had Singular's ESI production efforts truly held up Google's own efforts, it is hardly imaginable that Google could have done so.

Accordingly, there is no need and no good cause besides to modify the scheduling to extend the written discovery deadline. Both parties have completed their outgoing written discovery requests, having done so at least by the May 24, 2021 deadline and no need for additional written discovery is shown, by Google's motion or otherwise. Accordingly, Singular respectfully requests that the Court deny Google's motion.

Dated: June 7, 2021                             Respectfully submitted,

                                        */s/ Paul J. Hayes*
Paul J. Hayes (BBO #227000)
Matthew D. Vella (BBO #660171)
Kevin Gannon (BBO #640931)
Daniel McGonagle (BBO #690084)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Email: phayes@princelobel.com
Email: mvella@princelobel.com
Email: kgannon@princelobel.com
Email: dmcgonagle@princelobel.com

ATTORNEYS FOR THE PLAINTIFF

## **CERTIFICATE OF SERVICE**

      I certify that on June 7, 2021, I served this document on Defendant by causing a copy to be sent via electronic mail to its counsel of record.

                                        */s/ Paul J. Hayes*