1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3

4    SINGULAR COMPUTING LLC,            )
                                        )
5                       Plaintiff       )  Civil Action
                                        )
6                                       )  No. 19-12551-FDS
     vs.                                )
7                                       )
     GOOGLE LLC,                        )
8                       Defendant       )

9

10   BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

11

12                       MOTION HEARING

13

14

                John Joseph Moakley United States Courthouse
15                        1 Courthouse Way
                          Boston, MA 02210
16

17

                          June 10, 2021
18                         1:30 p.m.

19

20

21

22

23               Valerie A. O'Hara, FCRR, RPR
                      Official Court Reporter
24        John Joseph Moakley United States Courthouse
                        1 Courthouse Way
25                      Boston, MA 02210
                   E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The Plaintiff:

3         Prince, Lobel, Tye, LLP, by PAUL J. HAYES, ESQ.,
     One International Place, Boston, Massachusetts 02110;

4

     For the Defendant:
5
          Keker, Van Nest & Peters LLP, by MATTHIAS A. KAMBER, ESQ.,
6    and ANDREW BRUNS, ESQ., 633 Battery March Street,
     San Francisco, California 94111.
7

8    ALSO PRESENT:  Matthew Hollander Google
                    Hen Makish, Goggle
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

1

2          THE CLERK:  Court is now in session in the matter

3     of Singular Computing vs. Google, Inc., Civil Action

4     Number 19-12551.

5          Participants are reminded that photographing,

6     recording or rebroadcasting of this hearing is prohibited

7     and may result in sanctions.

8          Would counsel please identify themselves for the

9     record, start with the plaintiff.

01:31PM 10          MR. HAYES:  Paul Hayes for the plaintiff.

11     Good afternoon, your Honor.

12          THE COURT:  Good afternoon.

13          MR. KAMBER:  Mathias Kamber on behalf of Google.

14     Good afternoon, your Honor.

15          THE COURT:  Good afternoon.  All right.  This is a

16     hearing on Google's motion to stay.  Mr. Kamber, are you

17     taking the lead?

18          MR. KAMBER:  I am, your Honor.

19          THE COURT:  Okay.  The floor, metaphorically

01:31PM 20     speaking, is yours.

21          MR. KAMBER:  Thank you.  One housekeeping matter,

22     your Honor, before we begin.  There are some slides that

23     Singular, the plaintiff, has provided to potentially show

24     during the hearing, and there's an issue with respect to

25     three or four of the slides containing confidential subject

matter.  It's fine for the Court to see it.  It's a little
awkward in these virtual court instances to seal the
courtroom.  I'm not sure how your Honor would like to
handle that.

We would like to maintain the confidentiality and
don't think that they're particularly crucial.  I think you
have copies of them, so it's possible that you could just
look at them and they could be referred to in a very
generic way during that part of the argument, but I really
defer to you in terms of how you handle that type of type
of thing.

THE COURT:  Well, the easiest thing to know if
we've accounted for everyone on the call.  Maybe we
haven't.  There are, I think, six unidentified people here
or people whose videos aren't present who are part of the
Court in one form or another, but...

MR. KAMBER:  I'm certainly happy to identify a
number of those as being associated with us at Google.
That's about half of them, I think, but I'm not sure about
the other names.  Perhaps someone could help us there.

THE COURT:  Let's see if we can do that, and then
someone from the press or whatever is on, maybe handle it
some other way.  Who is on the call that's associated with
Google?

MR. KAMBER:  Sure, Matthew Hollander,

1    Andrew Bruns, Hen Makish, and that's it for us, I believe.

2          THE COURT:  Okay.  And Mr. Hayes, anyone present

3    on behalf of Singular as far as you know?

4          MR. HAYES:  Yes, your Honor, the only people we

5    have are Singular lawyers and a paralegal.

6          THE COURT:  But they're all in the room with you,

7    correct?

8          MR. HAYES:  Yes, no one else is on the call.  I'm

9    not going to make that person to identify themselves who's

01:34PM 10   on the call, so let's why don't I -- you say I do have

11   copies of these, Mr. Kamber?

12         MR. KAMBER:  Yes, I believe Mr. McKillop received

13   a copy of those slides earlier this morning.

14         THE COURT:  And are they on the docket, Matt?

15         THE CLERK:  Judge, I forwarded you these slides

16   probably about an hour and a half ago.

17         THE COURT:  All right.  I'll call up that e-mail,

18   and we'll handle it that way.  Okay.  Got it.  Okay.  All

19   right.  Mr. Kamber.

01:34PM 20         MR. KAMBER:  Thank you, your Honor.  Again,

21   Mathias Kamber on behalf of Google.  As the Court now

22   knows, the patent trial and the appeal board has

23   interpreted inter partes review as to all three patents and

24   all four asserted claims.

25         The institution decisions are particularly

1    thorough in this case.  They address all of the issues that

2    Singular raised in its preliminary responses, and they

3    conclude that Google has a reasonable likelihood of

4    prevailing on its validity challenges.

5          Given the stage of the litigation, the likely

6    impact of those IPRs, and the absence of undue prejudice,

7    Google respectfully asks the Court to stay this case while

8    the PTAB considers the IPRs, so let me start with the first

9    factor, which is the stage of the litigation, including

01:35PM 10   whether discovery is complete and a trial date has been

11   set.

12         The parties obviously have some disagreement about

13   how far along we are in discovery, but there really can't

14   be any disagreement that much remains to be done, and

15   discovery is certainly nowhere near complete.  Only three

16   of 32 fact depositions have been taken thus far.  Many more

17   depositions are on the calendar or in the process or being

18   scheduled for the coming six weeks, but that doesn't

19   include the 30(b)(6) depositions which are also going to be

01:36PM 20   the issue of perhaps some dispute.

21         THE COURT:  Let me ask a question.  Suppose I

22   granted your motion, could those three depositions be used

23   in the IPR proceeding?

24         MR. KAMBER:  I don't think we would have any

25   objection to those being used in the IPR proceeding.  I

1    think one of them would be rather irrelevant.  I'm not sure

2    about the other two.  The other two I think might be

3    tangentially relevant, but I don't think we would have any

4    objection to them being used in the context of the IPR

5    proceedings, if that was appropriate.

6         THE COURT:  What about document production?

7    Again, I'm making no ruling, obviously, about what would be

8    admissible or relevant or anything but just as a general

9    proposition?

01:37PM 10         MR. KAMBER:  On document production, I don't know.

11   Frankly, I'm not a PTAB or IPR lawyer, and I'm not sure

12   exactly how document productions from a district court

13   litigation can or would be used in the context of a PTAB

14   proceeding.

15         There is some limited discovery in PTAB

16   proceedings I know, and to the extent that they want to use

17   certain documents, I think we would absolutely discuss that

18   issue with Singular, but I don't think the entirety of the

19   document production is really a part of the PTAB

01:37PM 20   proceedings so far as I understand them.

21         THE COURT:  That's not really the question, not

22   whether that's part of the proceeding, but suppose, again,

23   suppose I grant your motion and Singular has, you know,

24   Googled a document that they think is critical or has some

25   critical statement from a witness in a deposition, putting

1    aside whether the PTAB would allow it, I have no idea, but

2    would Google object to say, no, no, that document was

3    produced in the litigation, therefore, it can't be used in

4    the PTAB proceeding?

5         MR. KAMBER:  Your Honor, no, I don't think we

6    would object to confidentiality and that it remains under

7    some terms of a protective order, which might be slightly

8    different or complimentary in the PTAB proceedings.

9         THE COURT:  Okay.  I'm sorry, I interrupted you,

01:38PM 10    go ahead.

11         MR. KAMBER:  No, no problem, your Honor.  Related

12    to this factor, I wanted to emphasize this first factor,

13    two points in response to Singular's claim that it's really

14    only Google that could or would benefit from a stay.

15         First, many third parties would benefit from a

16    stay, including scientists and professors at Sandia, at

17    M.I.T., and lots of third-party companies.  As we

18    understand it, based on Singular's representations, they

19    really only have this single employee and potential

01:38PM 20    witness, Dr. Bates.

21         Accordingly, the other 15 depositions that we're

22    pursuing right now are of third parties, and protecting

23    third parties against unnecessary discovery I think is

24    chief among the aims of the Court.

25         Second, the Court itself would also benefit from a

1    stay.  Without casting blame, this has been and probably

2    will continue to be a contentious case that has consumed a

3    lot of court resources.

4         We've been referred to Judge Cabell in a number of

5    instances, and although he's mostly seen it our way, we

6    recognize Singular also has a motion pending and perhaps

7    more to come, and so in light of the IPRs, overburdening

8    that limited resource would be wasteful, and along similar

9    lines, a stay would make it unnecessary for the Court to

01:39PM 10   rule on the pending claim construction issues presuming

11   that order isn't already close to done as well.

12        So, in short, this motion doesn't reduce down to a

13   balancing of interest between just Google and Singular, as

14   Singular suggests.  Given the high probability that some or

15   all of the claims are going to be held invalid, the

16   statistics suggest about 80 percent, the stay request is

17   equally, if not more, about considering the burdens on

18   third parties and the Court.

19        Beyond that, of course, there's still expensive

01:40PM 20   expert discovery, there's motion practice, there's pretrial

21   filings ahead of us all, and so echoing along, this

22   discovery is not complete, and no trial date has been set.

23   Accordingly, this first factor favors granting a stay.

24        Turning to the second factor, your Honor, whether

25   a stay will simplify the issues in question and trial of

1    the case, there's no question that it will do so.  On the

2    one hand, if the asserted claims are ultimately ruled

3    invalid by the PTAB, then a stay will have avoided much

4    unnecessary work.

5           On the other hand, if the asserted claims are not

6    ruled invalid based on the grounds presented, then the

7    issues going forward will be narrowed, that is, the

8    statutory estoppel will preclude Google from further

9    litigating arguments that it raised or reasonably could

01:41PM 10   have raised at the PTAB, and the Court will also benefit

11   from additional prosecution history, and its further

12   elucidation of the claim scope here.

13          Simply put, there's no way in which the issues

14   wouldn't be simplified by letting the PTAB proceedings run

15   their course, and Singular has not argued otherwise.

16          Rather, what Singular has argued is that the PTAB

17   proceedings won't resolve all of Google's defenses.  That's

18   true, but it's beside the point for this second factor,

19   which is just the question of whether it will simplify.

01:41PM 20   There's no question that it will.

21          The third factor is whether a stay will unduly

22   prejudice or present a clear tactical advantage to the

23   nonmoving party.  Notably, the question is not prejudice

24   but undue prejudice attributable to either dilatory conduct

25   or the absence of legal remedies.

1          Singular doesn't argue either point in its

2     briefing, nor could it.  Google wasn't dilatory in filing

3     its IPR petitions within two months of Singular's

4     identification of the asserted claims and well before the

5     statutory deadline, nor did Google delay even a little in

6     seeking a stay.

7          We first sought a stay very shortly after filing

8     the petitions, and we raised the issue with your Honor at a

9     status conference, and then we renewed our motion to stay

01:42PM 10     after the institution decisions came down.

11          There's also no argument that legal remedies would

12     not be impacted by a stay.  This is the case about money

13     damages, and no injunctive relief has or could be sought.

14     Indeed, as we noted in the briefing, Singular has conceded

15     that Singular and Google are not competitors.

16          And as to Singular's concern in the briefing about

17     fading memories, it's neither credible nor a recognized

18     basis for finding prejudice.  Singular waited for years

19     after Google publicly launched the accused products before

01:43PM 20     filing suit, seemingly unconcerned about the fading

21     memories at that point, and then Singular's repeated

22     arguments that memories will fade while this case is stayed

23     for years is belied by the fact that the PTAB is

24     statutorily bound to issue its final written decisions

25     approximately 11 months from now.  That's the length of the

1    stay that we are asking for here today.

2         So, in sum, your Honor, all three relevant factors

3    weigh in fair of a stay.  We've cited numerous briefs,

4    numerous, excuse me, cases in our briefs where courts,

5    including this court, have granted stays in such

6    circumstances and even in cases that were further along or

7    where the institution decisions were less exhaustive.

8         Singular hasn't addressed any of those cases in

9    its opposition and certainly has not identified any reasons

01:44PM 10  under the three applicable factors as to why the Court

11   should rule any differently here.  Thank you, your Honor.

12        THE COURT:  All right.  Thank you.  Mr. Hayes.

13        MR. HAYES:  Good afternoon, Judge.  I will use

14   these slides because I think they may help the Court in

15   this discussion.

16        THE COURT:  All right.  Let me call them back up.

17   Hold on.

18        MR. HAYES:  The first one is on page 2.  It's

19   entitled, "Justice Delayed is Justice Denied," and I think

01:45PM 20  that that is a relevant factor here in the First Circuit,

21   at least people go by that mantra, and I think if we look

22   at just the facts of the case, we have the case now pending

23   for 18 months.  As scheduled, if nothing is done, the

24   parties will be ready for trial in nine months, no

25   question, February.

1          We'll be ready.  We've tried to be ready from day

2     one.  In any event, we'll have a trial say in February on

3     all issues, 101, 102, et cetera, so we're done and one

4     appeal.  If this case is stayed, you won't be ready for

5     trial until at least February, '25, which is three years

6     from today.

7          First, you have the IPR, which is 12 to 18 months,

8     and given this case with three patents, 99 claims or

9     something to that effect, the government is certainly going

01:46PM 10     to utilize the 18 months, then you have an appeal.

11          There's no question that Google is going to want

12     to stay it after the IPR decision.  They'll tell you, oh,

13     it's only just to them, but as we put in the brief, their

14     history and litigation strategy is absolutely clear,

15     they're up for an appeal then.

16          So then we go for a CAFC Appeal Number 1.  After

17     that we come back to the District Court in '25, we have a

18     trial, and then we go for CAFC Appeal Number 2, and the

19     point I'd like to make is just simply this, having to wait

01:46PM 20     5.25 years between filing a complaint and getting a trial,

21     not just an appeal, a trial, we think is justice denied

22     under any circuit law, just common sense.

23          The next slide, which is page 3, is concerning an

24     even balance, and the reason I bring this up is the

25     Supreme Court case, *Atlantis*, which calls for some type of

1      thinking about some type of even balance between the

2      parties here.

3            You just look at this now.  Bates, there's no

4      question follows the rules.  Bates gets a patent, gets an

5      invention, receives it, provides, et cetera, and is issued

6      three patents under the subject of the case, and he does

7      all this while working with the government, mainly the

8      U.S. Navy to develop this prototype.

9            Pursuant to an NDA that Google prepared, he

01:47PM 10   discloses the invention in 2011 and 2013 to Google at

11     Google, at their request.

12           Upon disclosure, his top engineers, these are the

13     top people at Google, look at the invention, they call it a

14     or characterize it as a, quote, "potential moon shot."  A

15     moon shot to Google is a big thing, something that could

16     change the world.  That's the characterization.

17           The next characterization by another --

18           MR. KAMBER:  Your Honor, I'm sorry, I'm very

19     sorry, Mr. Hayes, to interrupt.  These are the -- this and

01:48PM 20   the next two slides are the ones that have these quotes

21     from confidential Google documents, and I think perhaps

22     they could just be talked at a higher level rather than

23     direct quotes and much more generally.

24           THE COURT:  Well, hold on.  It may be

25     confidential, but I don't see these quotes as revealing a

1    trade secret, and it's limited to these quotes.  I don't

2    see anything confidential or proprietary about this.  It's

3    an opinion that you say is taken out of context, but I'm

4    going to let him keep going.  Go ahead.

5          MR. HAYES:  Thank you, Judge.  By the way, when it

6    says, "incredibly cool," that is from one of the leaders of

7    Google Brain, which we'll get into a second, and then the

8    other generates excitement to the architecture, et cetera.

9          These are all -- as the next slide shows, and this

01:49PM 10   is the slide from Dr. Teller, where he characterizes this

11   as a potential moon shot, right, he's in charge of Google

12   basically X at the time.  He's the man, he's the big wig

13   that's in charge of all of this, all right.  This is not a

14   normal janitor, as my Brother sort of alluded to in his

15   brief.

16         Now, we excluded that because you have it as an

17   exhibit, but we've excluded it from the slides because it's

18   marked confidential.

19         The next document is an e-mail from none other

01:50PM 20   than Andrew Eden.

21         THE COURT:  I'll read it.  Let me just read it

22   here.  I don't see a reason to get into the details in this

23   presentation.

24         MR. HAYES:  Okay.  Fine, your Honor.

25         THE COURT:  I mean, details of the actual e-mail.

1          MR. HAYES:  Okay.  You should note that this is an

2     e-mail from Ng to Bates.  This isn't confidential, it's to

3     Bates, but, anyways, and the next document is of the same,

4     excuse me, from one of the top business developers,

5     et cetera, praising Bates' architecture that's the subject

6     of this case.

7          Now, we compare that, and this is now slide 7, and

8     now I'm comparing that to none other than the acts of

9     Google.  Google didn't follow the rules.  They copied

01:51PM 10     Bates' invention, they launched the product that's the

11     subject of the case for the use, internal use in September,

12     2017 with full knowledge of the patents-in-suit, the '273

13     and '156 patent, and what do they do?

14          Their IP counsel knows of the patent, they launch

15     the product, and they do absolutely zero, nothing, as you

16     can see from their response to this interrogatory.

17          So I think that in the end, which is the next

18     slide, I think this is if we're talking balance here, we're

19     talking a stay of three years.  Bates now goes from 65 to

01:51PM 20     68, his aspirations as you can see from his declaration,

21     his will to flight will fade, that's Google strategy while

22     he waits a day in court five years after he filed the

23     complaint.

24          Now, I think that if we talk about that in the

25     interim, Google continues to use the invention, save at

1    least 8 billion a year from not having to build more data

2    centers, et cetera, and we humbling think that that is,

3    quote, "not an even balance to deal with."

4         Now, if we get to the other factors or the factors

5    of the stage of the proceeding, et cetera, the first slide

6    of interest is Slide Number 10, and that says on the top,

7    "We are not in the early stages of litigation."

8         If you look at that slide, Judge, this is

9    everything that's been done is in green except the fact

01:52PM 10   that discovery ends in July, next month.  We have completed

11   three-quarters of the schedule that you issued on day one

12   18 months ago.

13        Now, Google, as my Brother says, oh, the

14   depositions and all the rest, you realize that they have

15   not noticed a single solitary fact deposition in 18 months?

16        Bates is, as he said, the sole person in the

17   Singular group, so to speak, or company, they have never

18   noticed his deposition.  They have ragged the pot

19   continuously, and that's obvious as I think we'll get into

01:53PM 20   it.

21        But if we look at it, we are three-quarters,

22   that's just the fact, is done, and I think that that -- and

23   the next slide is just a bunch of facts, but it's basically

24   documents produced and how much and all that, but there's a

25   lot, as you can see, and the next slide is real simple.

1           As the Court in the last 18 months, everybody

2     hasn't been sitting around doing nothing, the question of

3     patentability has been before you on 101, the question of

4     definiteness under 112 has been before you, briefed and

5     argued at the Markman Hearing, and the parties proposed to

6     raise instructions have all been briefed, argued, briefed,

7     argued, et cetera, forever.

8           And I think that taking all of that, the

9     consideration is pretty simple that we're not in the,

01:54PM 10    quote, "early stages of the litigation," we're actually in

11    the late stages of litigation with discovery closing next

12    month and a trial probably the beginning of next year.

13          Now, as we all know, this case here I think is

14    sort of close to my heart in the sense that Google's

15    argument about the status of the case is diminished, as

16    this case says, by the fact that they have all caused

17    delays, and there's no question if you look at the

18    proceedings that have occurred, Google has delayed this

19    case from day one with the specific strategy to file this

01:55PM 20    motion as it is today, and why do I say that, Judge?  If

21    you look at page 14, these are the deposition notices that

22    we noticed in July, 2020.

23          That's a year ago.  Jeff Dean, who's the key

24    culprit in this case, I tried to notice his deposition in

25    July, and when do I finally get it?  They tell me he's

1   available July 21st, two days before the close of

2   discovery, over a year after he's noticed.  There's been

3   excuse, excuse and excuse.

4        The same thing with Patterson, with that notice

5   July 10th, March 25th, same thing with Dean.  They're all,

6   if you look at this, you can see on the right-hand column,

7   delay that they have done to try to obscure these

8   depositions.

9        We noticed them way back when to get on the hook

01:56PM 10   and start doing something, and all they've done is not

11   produce them.  And this isn't just -- this next slide is

12   15, and it talks about Patterson and the idea that it took

13   eight months to take his deposition, or approximately, but

14   can you believe that the day before we take his deposition,

15   they call up on a Friday and say he's not showing up.

16        He's not showing up because we don't like the

17   status of the equipment that you're using for the dep,

18   though they've known about it forever, and they want us to

19   use Google's products to delay again another month for

01:56PM 20   Patterson.

21        Now, Dean, Dean, as I said, we're talking about a

22   delay here of over a year, and they give me Dean two days

23   before the close of discovery, and then even yesterday,

24   they're still doing it.  Yesterday they send me a letter

25   saying you can depose Dean on the 21st, which is two days

1    before the discovery for a day, but if you want take him

2    less than a day, we can move it earlier.

3           I mean, come on, they're putting the guy down so

4    there's zero follow-up depositions or anything to that

5    effect.  Now, we'll live with this because Bates needs a

6    trial for that to be fair and for this thing to proceed.

7           And, finally, another example of their delay is

8    Andrew Ng.  Andrew Ng is one of the key players in this

9    case.  Ng was in charge of Google Brain.  Ng is the one

01:57PM 10    that took Bates presentations and gave it to the founder of

11    Google.

12           Now, I tried to depose Ng.  He evades service of

13    process for like a month.  He won't come out of his house.

14    I get a new process of service guy, and he evades him for

15    another month, another three or four days won't come out of

16    his house, and then, meanwhile, who is he represented by?

17    None other than Google.  I call Google's counsel up, and I

18    say what's the story?  I'm going to court to get a

19    different service because he's evading service, and what do

01:58PM 20    they do?  Oh, boom, he's available now.  I mean, this is

21    the way they act.

22           The next thing is the delay and productions of

23    image documents.  Do you realize this is a patent case, as

24    I'm sure you're well aware of, Judge?  They produced four

25    licenses like four days ago.  That's it.  We've been asking

1    for damage on documents relative to amounts of money,

2    et cetera, et cetera, and their use, et cetera.  Zero have

3    been produced to date, and there's a bunch of motions to

4    compel already pending, so the idea that they're

5    cooperating with discovery I think is not particularly

6    accurate.

7          Now we get to the next issue, and that is a stay

8    we say would not simplify the case, and this is Slide

9    Number 19.  This is, I think, an important slide.

01:59PM 10    The issues raised by Google as a defense in this

11   case, anticipation, unpatentability, 101, 112, claim

12   construction, et cetera, non-infringement, and obviousness.

13   All of these will have to be tried no matter what happens

14   in the IPR assuming it comes back.

15         This is not going to simplify anything.  They're

16   not going to give up their anticipation claim, they're not

17   going to give up unpatentability.  There's no offer to

18   concede that the patent is valid and get rid of the

19   validity issues on this case if they lose in the IPR, none.

02:00PM 20    And so in that circumstance, my Brother talks

21   about this notion, as he said, well, there's this estoppel

22   issue.  Well, we know what's going to happen with that

23   because I've been through this before is what they are

24   going to do is say that the new art that we just filed is

25   not really the same art or they're going to rely upon art

1    where it's like made by another that cannot be before the

2    patent office or something to that effect, but you can bet

3    your booties at the end of the day, if they lose, they're

4    going to be back here on obviousness and certainly back on

5    anticipation, which is another semi, you know, 103 type,

6    102 argument, and the case we cite specifically is for the

7    proposition that when that occurs, it is clear that it's

8    not necessarily going to simplify the case.

9            And now we get to the actual decision on the IPR.

02:01PM 10    The case we cite on page 20, this flywheel case, Peloton's

11    flywheel, et cetera, stands for the proposition that

12    because of the SAS decision where the patent office must

13    now consider all of the claims in the patent, the merit or

14    the weight that is to be given in a stay motion is a lot

15    less than it used to be.

16            As it says, the institution decision is less

17    indicative that all claims will be found unpatentable, and

18    the probability -- so I think it is clear given that

19    circumstance that, in fact, just because it's been

02:01PM 20    instituted, it's not a final decision.

21            Further, if you read the institution of it on say

22    the '156 patent, they didn't even mention the claim at

23    issue that's being litigated, zero, and on the '273 patent,

24    it's just thrown in in a paragraph at the end.

25            So, I think that simply because it's issued does

1   not necessarily mean per se that, in fact, it's going to

2   wipe out these patents come a fourth patent, and also given

3   that, Judge, it keeps using statistics, and my Brother, I

4   think, has a problem with statistics because he cites the

5   statistics say to invalidate all claims of one patent, it's

6   57 percent.

7         They have to go three for three.  They have to be

8   at bat three times and hit three singles, and it's a lot

9   less odds to hit three singles in a row than it is simply

02:02PM 10   just once, and I think that is applicable here, but at

11   least it shows that these statistics are not what my

12   Brother says they are.

13         And, finally, we talk about the prejudice that

14   would come to Singular, and first this is page 21, and the

15   first one is we argue that it will hinder Bates' efforts to

16   attract and secure investments, and that's a fact, and

17   Bates filed an affidavit.  That affidavit, as you can see

18   reading it, was not written by any lawyer, it's written

19   straight out from Bates without a coma changed and just

02:03PM 20   given straight to you, and according to Bates and Bates'

21   affidavit that, in fact, having this case with Google,

22   who's appropriated his invention, is making it very

23   difficult.

24         And the same thing, his efforts to democratize the

25   artificial intelligence, which my Brother doesn't mention,

1    and which, frankly, it never really -- I never appreciated

2    frankly, to tell the truth, until I read his declaration

3    that Bates wants to save the world besides getting his due

4    efforts from Google, this guy is a dedicated scientist, and

5    he's having a very difficult time trying to do it,

6    particularly if it gets stayed.

7         And here's the other thing.  The next paragraph or

8    page is page 22.  Now, this, Judge, is directed to exactly

9    your question to my Brother, and here's the situation.  The

02:04PM 10   patent office, the PTAB rules discouraged the use of

11   confidential information, period.

12        The rules require that the confidential

13   information be redacted, right, to prove commercial success

14   or to prove copying, all critical evidence is of

15   nonobviousness.  I have to prove infringement, namely that

16   they copied the invention, et cetera.

17        They are never going to be able to do that in the

18   IPR because all of their documents are identified as not

19   just confidential but attorney's eyes only.  There's no way

02:05PM 20   Google is going to agree to provide me with the source code

21   and not mark it confidential so that they can be seen, can

22   be reviewed by the IPR people.

23        If the only way that we are going to get a fair

24   trial in this obviousness issue is, in fact, if it's in the

25   district court where, in fact, all of this can be before

1    the Court, namely copying, maybe Google itself doubting the

2    invention, Google itself praising the invention, all these

3    secondary considerations, which, as we now know, are not

4    secondary anymore.  They're as good as all the rest.

5         So, this is critical that you're not going to get

6    a trial in the IPR that's going to allow us to put the

7    correct evidence before, and so, obviously, if that's not

8    prejudicial, nothing is.

9         And, finally, my Brother talked about loss of

02:06PM 10    memory.  Loss of memory, we've all been trying cases for

11    too long, but clearly loss of memory is an issue.  You

12    delay it for three years, and I get Google's people on the

13    witness stand or at a deposition, and it's going to be a

14    semi-outsider barrage of memory.

15         I took the deposition, just as an example, just to

16    tell you, of Ms. Tornabene, their IP counsel.  I deposed

17    her for 60 pages, and 40 times she says I don't remember, I

18    don't remember, I don't remember.

19         That's going to increase, another three years,

02:06PM 20    absolutely.  And I think after that three years, people may

21    leave.  Key witnesses may leave, Ng may leave, and who

22    knows where he's going to go, and he's certainly not going

23    to volunteer, so to speak, to be deposed given the examples

24    of Ng, so if you take it all together, Judge, I think

25    clearly we're not going to get a fair trial in the IPR in

1    any sense.  There's a good probability we're coming back

2    anyways, and the time to end this case is now.

3         The time is not the delay for three years, come

4    back and then have Google start all over between.  They

5    haven't taken any discovery, not a single deposition to

6    date, and discovery closes in a month and a half.  Not one

7    fact discovery, and now they come in and complain, oh, we

8    got to take 34 more depositions, therefore, why we can't

9    stay, it will never be ready.

02:07PM 10         If they're not ready, that's their fault; if I'm

11   not ready, that's my fault.  But we intend to go up the

12   hill and give Bates some justice because I think he needs

13   it, and I think he deserves it given this circumstance.

14        I think these factors favor in this particular

15   instance because in this particular instance, the

16   commercial success and all the rest that we would prove is

17   Google's success, and Google itself will never give us the

18   source code to prove it.  They know it.

19        For example, they wouldn't even let the slides

02:08PM 20   come in today, let alone you think they're going to hand

21   over the source code in the IPR, I don't think so, so I

22   would ask the Court at the end of the day, before you make

23   your decision that you do read in detail the declaration of

24   Dr. Bates.

25        I ask you that, Judge, simply because he says to

1    me will the Court read it?  I said, well, I'm going to ask

2    him to read it.  I think it's good for everybody to read

3    that to see what harm will be done if we have to go off for

4    another three years, you know, on a frolicking bear hunt.

5    Thank you, Judge.

6         MR. KAMBER:  Can I respond?

7         THE COURT:  Hold on.  I have one more page.  I'm

8    embarrassed to say I know who Rosie, the robot, is.

9         MR. HAYES:  Unfortunately, I do, too, but we

02:09PM 10   couldn't build them, that's the problem.

11        THE COURT:  All right.  Mr. Kamber.

12        MR. KAMBER:  Thank you, your Honor, I'll try to be

13   brief, but I want to address a few things that Mr. Hayes

14   mentioned.  First of all, this evidence of secondary

15   indicia of nonobviousness is really orthogonal to the

16   issues before the Court on the stay motion.  As a legal

17   matter, it's not even clear whether it's relevant at all to

18   the case.

19        As the Supreme Court in the *KSR* case recognized

02:10PM 20   that even strong evidence of secondary indicia of

21   nonobviousness cannot overcome a strong prima facie case of

22   obviousness.

23        At best, this evidence goes to the second factor

24   regarding the likely impact or outcome of the IPRs, but

25   even there, as I discussed before, if it's considered

1   dispositive by the PTAB and Singular prevails in the IPR

2   proceedings, the issues will be simplified because

3   statutory estoppel will apply.

4        With respect to the deposition scheduling issue,

5   your Honor, frankly, I find the chart highly misleading.

6   Those deposition notices that were served last July, they

7   were served, and then they were withdrawn.

8        As we pointed out at the time, we hadn't even

9   begun our document production, and what we said was we're

02:10PM 10   happy to provide dates for some or all of these witnesses,

11   but you have to understand that you would be going in

12   without the documents, and you wouldn't have the ability to

13   renotice them or retake those depositions later on.

14        So they were withdrawn, and Google completed its

15   ESI productions in March, and that's when depositions were

16   renoticed, and since then, depositions have been

17   proceeding, including as Mr. Hayes mentioned of Ms.

18   Tornabene, of David Patterson, who's a former professor at

19   Berkeley for many years, and Mr. Kwun is on the line, too,

02:11PM 20   in case your Honor wants to hear about the situation with

21   Mr. Ng.

22        Mr. Ng is a former employee who has his own

23   startup company.  He's very busy.  We were not authorized

24   to accept service on his behalf, but there is an agreement

25   now, and his deposition is scheduled for later in June, so

1    I think there's really no issue there at that point.

2           As for Google and depositions, we've tried to

3    handle it slightly differently.  We have asked for dates

4    for depositions for many witnesses, I think probably close

5    to a dozen at this point.  We usually just as a matter of

6    practice try to ask for dates and then send the notice

7    rather than send the notice and then ask for dates.

8           It's a slightly different approach, but we've

9    asked for dates including of Dr. Bates.  We haven't been

02:12PM 10    given one yet, but I'm sure that Singular is working on

11    that.

12           As for probabilities, everyone, of course, can use

13    statistics to their benefit.  I would note that this idea

14    that you're supposed to multiply the probabilities and

15    somehow get to a less than 20 percent chance of prevailing

16    is odd in this case.

17           The claims, as your Honor knows, from the Markman

18    proceedings are near identical across the three patents.

19    Not surprisingly, the institution decisions are near

02:13PM 20    identical in terms of form and format and content, so the

21    idea that we have to go to bat and hit three singles in a

22    row, I think is not quite right.

23           I think the more apt analogy is that three balls

24    are being thrown at once, and we just need to swing and hit

25    all three of them, and I think the probability based on

1    PTAB statistics is pretty high.

2         I want to address a few other things that happened

3    there at the end of Mr. Hayes' discussion.  He mentioned

4    something about source code and the IPR.  I don't frankly

5    understand that.  Source code has nothing to do with the

6    issues in the IPR, which relate to a different piece of

7    prior art.

8         There's no infringement aspect of the IPR

9    proceedings, and there's no question that source code has

02:14PM 10    been and is available to Singular for inspection.  It's

11    been so for months.

12         As for the idea that this is going to be delayed

13    for three years, again, that's not what we're saying.  This

14    is a motion to stay this case pending a final written

15    decision from the PTAB, which is anticipated statutorily

16    within the next 11 months.

17         The PTAB has rarely, if ever asked, or granted

18    itself an extension.  I don't think that Singular could

19    point to an example.  It's near impossible to get, and so

02:14PM 20    this should be wrapped up.  We should know where we are in

21    11 months, and we can in the process save the parties, save

22    the Court, save third parties a lot of pain in the interim,

23    and, finally, your Honor, I just want to say, none of this

24    is to spite Dr. Bates.

25         The way this is being set up as an attack on him

1    personally, your Honor has seen enough of this to know that

2    parties file and ask for stays in the context of IPR

3    proceedings for obvious procedural reasons.  Google does it

4    in its cases typically, and I'm sure your Honor has seen

5    other parties do it in your cases, and, therefore, there's

6    a lot of law that we've cited in our briefing in support of

7    why courts do, in fact, stay cases in this particular

8    instance.

9          This isn't about us trying to take away his day in

02:15PM 10    court.  The stay request is about the efficiency of the

11    process, and I leave it to you to decide what is most

12    efficient ultimately.

13          THE COURT:  All right.  Last word, Mr. Hayes.

14          MR. HAYES:  One, couple of questions, Judge, is

15    that a couple of points is that my Brother talks about

16    these depositions that he noticed Google.  They noticed

17    Bates like four days ago.  They waited 18 months, and they

18    noticed it obviously for a simple reason, if you deny their

19    motion, their plan doesn't work, but it took them 18 months

02:16PM 20    to depose one witness through the whole case.

21          That's a bit much, and my Brother, the source code

22    is absolutely critical in the IPR to show secondary

23    considerations, absolutely critical because they have to

24    prove infringement, and they've already -- so my Brother's

25    thing, it's got nothing to do with anything is a bit much.

1    They will oppose every single document relative to

2    commercial success of their products in that IPR, and it

3    will be a nightmare.  Thank you.

4         THE COURT:  All right.

5         MR. KAMBER:  Your Honor, I hate to interject one

6    more point, but, if I may, with respect to the noticing of

7    the depositions, the ESI production was completed about a

8    week ago.  We did not have any documents from the ESI

9    production from Singular until that time.  We held off on

02:17PM 10   noticing or asking for any depos because we had no

11   documents, and we wanted and needed those before we could

12   proceed.  That might be the subject of these other

13   extension issues, but I think that's our explanation.  It

14   has nothing to do with this motion.

15        THE COURT:  All right.  I'm going to rule from the

16   bench, metaphorically, again, I'm sitting at my desk.  This

17   is a motion for a stay pending the IPR proceeding before

18   the PTAB.  Obviously, I was requested to stay this

19   proceeding based on a request for IPR review, which I

02:18PM 20   denied.  The IPR has been instituted, which changes things

21   somewhat.

22        These things tend to be framed as presenting one

23   of two choices.  One is that I stay everything and that we

24   come back a year or two or three from now when everything

25   is covered in dust and pick up again, depending on how the

1    IPR came out, and the other is to do nothing and to have

2    these parallel proceedings which could be entirely wasteful

3    and in some ways undermine what the IPR process is intended

4    to do.

5           Of course, I don't know now how the IPR is going

6    to come out.  If I did, it would be easy.  I have to make

7    intelligent choices or as intelligent as I can make them

8    along the way.

9           The IPR process is intended to provide a

02:19PM 10  streamlining function.  It also permits an opportunity for

11   delay, particularly when litigation has begun.  And delay

12   is inevitable with any kind of stay for any period of time,

13   and unless the PTAB invalidates the patents, it's probably

14   not worth the candle, although it's obvious in some cases,

15   it does, at least, offer the possibility of streamlining

16   things.

17          Here's what I'm going to do, I'm going to try to

18   take a middle position.  I think the sensible thing to do

19   here, and it's something of a compromise, is in simple

02:19PM 20  terms, I want fact discovery to be completed, and then I'm

21   going to institute a stay.

22          I think given where we are, how the parties are in

23   high gear with all these depositions arranged, more to

24   come, I think if I simply institute the stay and then we

25   try to pick up where we left off next May or whenever it's

1   going to happen, there would be a great deal of wasteful

2   effort involved in that.  This effort may be wasteful as

3   well, of course, if all the claims are invalidated, but I

4   think it's a sensible solution, but I also want to respect

5   the IPR process.

6          Given where we are, including the stage of the

7   litigation, the likelihood of simplifying or eliminating

8   the issues, and the balance of prejudice, I think some

9   aspect of a stay makes sense.

02:20PM 10          Let me flesh this out a little bit.  First, as to

11   the standard, the IPR has instituted the proceeding.  There

12   is at least presumably some reasonable likelihood that

13   Google will prevail.  It does affect or does implicate

14   every claim of every patent because the claim is

15   invalidity.

16          This stage of the litigation is not as early as

17   Google suggests or as far out along as Singular suggests,

18   but certainly discovery is not complete.

19          The claim construction issues are pending.  There

02:21PM 20   is still quite a bit to do.  No trial has been set.

21   Unfortunately, due to the pandemic, we are quite backed up

22   here, and this case under any scenario is not going to go

23   to trial at the beginning of 2022 because I have wall to

24   wall trials in other cases that have been hung up because

25   of the pandemic between now and then, and that's just an

1    unfortunate fact.

2            The IPR, I think, does have a reasonable

3    possibility of simplifying the issues, again, even assuming

4    that the case survives.  I don't think that it's so unduly

5    prejudicial to Singular other than the inevitable delays

6    that counsel is entirely granting the stay.

7            This matter does involve money damages, not

8    injunctive relief, and I don't think there's any question

9    that the plaintiff and the defendant are in competition

02:22PM 10    with one another.

11            Delay is, of course, always prejudicial and

12    unfortunate, but, again, weighing the balance here, I think

13    the stay is in order.

14            As I indicated, I do think that fact discovery

15    ought to be completed.  It is well underway.  A great deal

16    of effort has gone into where we are so far, and I think on

17    balance, it makes sense to complete that process.  And when

18    I say fact discovery completed, that includes, among other

19    things, any subsequent things that flow from that,

02:23PM 20    including any litigation concerning motions to compel or

21    for protective orders, so it may not all be done by

22    July 23rd, and I will not rule out extending the deadline,

23    although I'm not prepared to do it now.

24            I would prefer to do it, if at all, for specific

25    reasons, like a specific deposition of a specific person

1    with a specific date in mind rather than simply given the

2    parties an open-ended license to continue fact discovery.

3         I also think that whatever discovery has been

4    taken in this case, if it is admissible in the IPR

5    proceeding or would advance the interests of justice, that

6    it ought to be used.  That would be up to the PTAB to

7    decide what they'll accept and what they'll not, but I will

8    certainly consider, and it won't go any farther that,

9    consider a targeted motion to rule that some particular

02:24PM 10   piece of information should not be deemed confidential so

11   that it can be at least attempted to be used in the PTAB.

12        Again, I think these two processes ought not to be

13   entirely independent of one another, and I express no view

14   as to whether or not any particular document should be

15   confidential or whether anything would be admissible or

16   should be admissible in the IPR proceeding, which is up to

17   the PTAB.

18        And I should add, I suppose, if it makes a

19   difference, I was struck by Dr. Bates saying he's 65 and

02:25PM 20   he's an old man.  I'm 66.  I suppose he's wounding me a

21   little bit here, but there may be people as to whom

22   deposition testimony needs to be preserved, not simply

23   because they're extremists but for any other reason, and I

24   would entertain a motion to take a deposition to preserve

25   testimony for that reason as well.

1          As far as the length of the stay, I have no

2     intention of staying this through any appeal or for three

3     years or any of the other doomsday scenarios.  It's not at

4     all clear I will do that, but we'll have to see how things

5     turn out.

6          What I'm going to do is stay this case except for

7     the completion of fact discovery and other matters that

8     I've indicated, stay it through May 12th, 2022, which I

9     think is the one-year anniversary from the institution of

02:26PM 10     the IPR proceeding, if I have that date right.

11          So, again, bottom line, fact discovery to be

12     completed in all senses, including any mopping up

13     operations concerning motions to compel or for protective

14     orders or anything of that sort to be completed by

15     July 23rd unless extended.

16          I think that any fact discovery in this case

17     should at least be let's say presumptively available for

18     use in the IPR proceeding, again, at least from the

19     district court standpoint, and I would consider ruling on

02:27PM 20     matters that have been deemed confidential.

21          I do not want wholesale motions covering the

22     waterfront, but, again, some targeted set of particular

23     items that you think, for whatever reason, ought not

24     properly be deemed confidential and that there's some

25     reasonable chance that the PTAB would accept them in its

1     proceeding.

2            And let me stop there.  Again, this is something

3     of a hybrid.  I make this decision with considerable

4     reservations because I don't like delay, but, again, I also

5     want to respect the IPR process and to try to permit an

6     opportunity to go forward while at least minimizing delay

7     in this proceeding.

8            Let me pause there.  Mr. Kamber, any reactions or

9     requests for clarifications?

02:28PM 10            MR. KAMBER:  No, your Honor, I think we understand

11     the Court's ruling and the middle position that you've

12     outlined here.

13            THE COURT:  Mr. Hayes.

14            MR. HAYES:  No, your Honor.  The only question I

15     would have of the Court is not that.  Do you know when we

16     can we expect the status of the Markman Hearing provision?

17            THE COURT:  Well, that's a good question.  I guess

18     I'm not sure the answer.  Obviously, it would move the case

19     forward to have me resolve that if there is going to be

02:29PM 20     litigation, but it's not quite like taking depositions

21     either.  In other words, it's all been briefed and argued.

22            I guess why don't I do this.  Why don't I ponder

23     that some more.  Maybe you could even file supplemental

24     briefs.  What I was going to suggest is that we reconvene

25     maybe the second week of July or thereabouts, talk about

1    where we are in terms of wrapping up discovery, what issues

2    remain, and we can talk about that at that point, whether

3    you think it makes sense for me to do that.  I mean, I

4    don't know the answer to that.

5        MR. HAYES:  Okay.  Thanks, Judge.

6        THE COURT:  Let me get a date for that.  Let's

7    see, I'm not looking at your deposition schedule here, so I

8    don't want to interfere with anything.  Let's see, how

9    about Monday, July 12th at 4:30 eastern time?

02:30PM 10        MR. KAMBER:  You said 4:30 eastern?

11        THE COURT:  Yes, Monday, July 12th.

12        MR. KAMBER:  I don't believe we have any

13    depositions on the calendar for the 12th.  Mr. Hayes can

14    correct me if I'm wrong.  I don't believe there's anything

15    scheduled for that day, so that should work.

16        THE COURT:  Let's do this, too.  The depositions

17    are harder to schedule than this status conference, okay,

18    so if you need to schedule a deposition during that time

19    period and taking into account time changes and everything,

02:30PM 20    we'll find another time.  I'd like to meet somewhere, you

21    know, in that time frame, a week to 10 days or so before

22    discovery closes, okay?

23        MR. KAMBER:  Understood.

24        THE COURT:  Feel free to contact the clerk, and we

25    can do it very late in the day as well, you know, well, not

1    midnight.  As long as I have a stenographer and a clerk

2    present, we can handle it.  Does that work for you,

3    Mr. Hayes?

4            MR. HAYES:  That's fine, Judge.

5            THE COURT:  All right.  Let's do that.  I don't

6    think I'm going to issue a written order to this effect

7    except maybe something along the lines of, you know, bare

8    bones stay is issued subject to completion of fact

9    discovery as stated in open court for the reasons

02:31PM 10   indicated, but I'm not going to write anything more

11   complicated than that, and, again, there's probably

12   something I'm not thinking of here, but we can take that up

13   in July when we meet as well if you need something further.

14   Okay.

15           All right.

16           MR. KAMBER:  Thank you, your Honor.

17           THE COURT:  Thank you, everyone, and we will

18   reconvene in about a month.

19           MR. HAYES:  Thank you, Judge.

02:32PM 20          THE COURT:  Thank you.

21           MR. KAMBER:  Thank you.

22           (Whereupon, the hearing was adjourned at

23   2:32 p.m.)

24

25

```
 1                      C E R T I F I C A T E

 2

 3     UNITED STATES DISTRICT COURT )

 4     DISTRICT OF MASSACHUSETTS ) ss.

 5     CITY OF BOSTON )

 6

 7             I do hereby certify that the foregoing transcript,

 8     Pages 1 through 41 inclusive, was recorded by me

 9     stenographically at the time and place aforesaid in Civil

10     Action No. 19-12551 -FDS, SINGULAR COMPUTING LLC vs. GOOGLE LLC

11     and thereafter by me reduced to typewriting and is a true and

12     accurate record of the proceedings.

13             Dated June 14, 2021.

14

15                             s/s Valerie A. O'Hara

16                        _____

17                        VALERIE A. O'HARA

18                        OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```