## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>                  Plaintiff,<br><br>      v.<br><br>GOOGLE LLC,<br><br>                  Defendant. | Civil Action No. 1:19-cv-12551 FDS<br><br><br>Hon. F. Dennis Saylor IV |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER

1717736

## I.     INTRODUCTION

Defendant Google, LLC ("Google") brings this motion for a protective order to address Plaintiff Singular Computing LLC's ("Singular") attempt to re-open issues the Court has already ruled on or the parties have already resolved in meet and confers. Specifically, this motion concerns Rule 30(b)(6) deposition topics that were the subject of Singular's June 14, 2021 motion to compel, which the parties argued and the Court ruled on at a hearing on June 30, 2021. Declaration of Christopher Sun in Support of Google's Motion for Protective Order ("Sun Decl."), Ex. A. At that hearing, the Court expressly rejected Singular's demands for detailed financial discovery regarding more than a dozen unaccused Google products and services, as well as sweeping financial discovery regarding Google's data centers. Instead, the Court ordered Google to honor any offers it had made regarding Singular's Rule 30(b)(6) topics, which were reflected in Google's opposition to Singular's motion, and additionally ordered Google to provide testimony on the average cost to build and maintain a data center (Topic 36) and internal analyses concerning the benefits attributable to the accused TPU v2 and v3 (Topic 17). The Court confirmed multiple times at the hearing that it had resolved the issues raised by Singular's June 14 motion, and Singular itself affirmatively represented that there was nothing else it wished to discuss.

All that changed on July 19. Though Google prepared and presented three of its four Rule 30(b)(6) witnesses consistent with the Court's rulings—and without any contemporaneous objections or complaints from Singular—on the eve of the deposition of Google's final Rule 30(b)(6) designee, Singular demanded that Google's witness be prepared to testify on the "complete scope" of Singular's original Rule 30(b)(6) topics—including topics that the Court expressly rejected at the June 30 hearing as overbroad or improper. Singular further demanded that Google designate a witness to testify on at least three topics that Singular had withdrawn in meet and confers. The next day, when Google's counsel stated Google's objections to Singular's eleventh-hour demands on the record at the July 20 deposition of Google's final corporate

1717736

witness, Singular's counsel erupted in a tirade of baseless accusations and insults. Repeatedly interrupting Google's counsel and speaking over her, Singular's counsel denied that the Court had limited or that the parties had ever agreed to narrow any of Singular's topics to anything less than their original scope. His derogatory remarks included accusations that Google's counsel was "pil[ing] lies upon lies," and telling "falsehoods." That kind of uncivil and discourteous behavior has no place in a deposition or any proceeding of this Court. Sadly, it is representative of Singular's conduct not just towards Google's counsel, but towards multiple Google witnesses. That conduct is improper and should end now.

This motion should never have been necessary. The Court has already decided the issues in dispute and directed the parties to complete Singular's Rule 30(b)(6) deposition of Google consistent with the rulings made on the record at the June 30 hearing. Singular is not at liberty to disregard those rulings and harass Google's witnesses about topics the Court has already deemed improper. Nor should Singular be permitted to continue engaging in the abusive and oppressive conduct on display at the July 20 deposition or the many other depositions of Google witnesses in which counsel has harassed, belittled, and insulted the deponents and the lawyers defending them. *See* Sun Decl. Ex. G. For these reasons and those set forth below, the Court should enter a protective order limiting Singular's questioning of Google's Rule 30(b)(6) witnesses to the scope previously ordered by the Court and agreed to by the parties, and admonishing Singular to conduct any remaining depositions with professionalism, courtesy and respect.

## II. BACKGROUND

### A. Singular moved to compel testimony on broad topics related to Google's finances and data centers.

Singular's June 14 motion to compel concerned deposition topics contained in an amended Rule 30(b)(6) deposition notice that Singular served on May 5, 2021. Sun Decl., Ex. B. Following service of the notice, the parties met and conferred extensively on May 14, 2021, regarding the 46 topics contained in the notice. Declaration of Andrew Bruns in support of Google's Motion for Protective Order ("Bruns Decl.") ¶ 3. During this meet and confer, the

parties appeared to resolve their disputes regarding 30 of the 46 topics. As part of that negotiated resolution, Google agreed to produce witnesses to testify on several of Singular's topics, subject to certain modifications, and Singular, in turn, agreed that Google need not produce witnesses to testify on certain other topics. *Id*. The terms of that compromise are memorialized in Exhibit 1 to the Bruns Decl.[1], which identifies (1) the modified topics on which the parties agreed Google would provide a witness (i.e., Topics 1-7, 9, 11, 19, 26, 27, 31, 33, 34, 42, 44, and 45); (2) the topics on which the parties agreed Google need *not* provide a witness (i.e., Topics 8, 14, 15, 16, 35, 38-41, 43 and 46); and (3) topics that were still in dispute at the time Singular filed its June 14 motion, as well the scope of the testimony Google offered to provide in response to each (i.e., Topics 10, 12-13, 17-18, 20-25, 29-30, 32, and 36). *Id.* ¶ 4, Ex. 1.[2]

Despite  this apparent progress, Singular ultimately moved to compel testimony on the 16 topics the parties were not able to resolve. Those topics (13 of which are at issue in this motion for protective order) fall into two broad categories:

- The first category of topics (the "Finance Topics") target detailed financial information regarding at least 16 different Google products and services, which Singular has labeled with the misnomer "Accused Services." *See* ECF No. 227-4 (Topics 10, 12, 13, 17, 18, 29, 30, 32, 37).

- The second category of topics (the "Data Center Topics") address the costs Google incurred in constructing and operating its data centers. *See id.* (Topics 20-25, 36).

**B.      The Court ruled on Singular's motion at the June 30 hearing and denied relief on topics for which Singular nonetheless demands testimony.**

After Singular's motion to compel had been fully briefed, the parties attended a hearing on June 30, 2021, to resolve that motion (ECF No. 214) and three other discovery motions: (1) Google's motion for protective order contesting the breadth and scope of topics in Singular's

---

[1] This exhibit was previously submitted to the Court in support of Google's June 21, 2021 opposition to Singular's motion to compel and was the subject of discussion at the June 30, 2021 hearing. *See* ECF No. 227-4.

[2] Singular revised the scope of topics 17 and 25 in its June 14 motion to compel. *See* ECF. No. 215 at 3 n.2.

earlier Rule 30(b)(6) notices (ECF No. 153); (2) Singular's motion to compel further responses to its interrogatories and the production of documents in response to its RFPs (ECF No. 187); and (3) Singular's motion to compel the production of certain technical specifications, which Google had not yet opposed at the time of the hearing (ECF No. 228). Given the parties' fundamental disagreements about what occurred at the June 30 hearing, Google lays out the sequence of events below.

### 1.    Google's earlier-filed motion for a protective order was mooted.

The parties began the hearing by addressing Google's motion for a protective order (ECF No. 153). Google informed the Court that the parties had met and conferred about the 46 topics in Singular's operative deposition notice and had managed to reach agreement on 30 of those topics. In light of that agreement, and the fact that the remaining 16 topics were the subject of Singular's motion to compel additional testimony (ECF No. 214), Google agreed that it would be more efficient for the parties to resolve their disputes on those 16 topics in the context of Singular's motion to compel. Sun Decl., Ex A at 4:7-13. At no point did Singular dispute Google's representation that the parties had resolved their disagreements regarding 30 of the 46 topics in Singular's operative Rule 30(b)(6) deposition notice. As a result, the Court determined that the parties had resolved or otherwise mooted Google's earlier-filed motion for protective order. *Id.* at 4:14-17.

The parties and the Court then turned to Singular's motions to compel testimony (ECF No. 214) and to compel production and further responses to interrogatories (ECF No. 187), which Singular's counsel elected to argue simultaneously. Sun Decl., Ex. A 5:2-19.

### 2.    The Court limited the scope of the Finance and Data Center Topics.

Singular began its argument by focusing on the Finance Topics. After hearing argument from both sides, the Court agreed that Singular's proposed Finance Topics were overbroad. *See, e.g., id.* at 14:1-16. However, the Court concluded that Singular was entitled to testimony and documents regarding the value and benefits of the accused products (versions two and three

Google's TPU chips). *Id.* at 14:3-15:6. In response, Google noted that it had already agreed to

produce a witness to testify about the value and benefits of the accused TPUs:

> ATTORNEY KAMBER: That is, there is a witness . . . who has tried to evaluate
> the value and the benefits of the TPUs . . . . That's a person that we are willing to
> provide to testify and documents that we already have and will continue to
> provide. We have no problem with that, Your Honor.

Sun Decl., Ex. A at 15:15-24.

The Court then asked Singular what, if any, additional information it sought. *Id.* at 18:12-

13. In response, Singular raised no issue with Google's proposed resolution of the Finance

Topics, and instead moved on to the Data Center Topics. Sun Decl., Ex. A at 18:16-18.

On the Data Center Topics, the Court agreed with Google that the testimony Singular

sought was overbroad:

> THE COURT: I'm not—listen, we're not going to get into something where how
> much for the concrete? How much for this? It could be how much to build a
> center. Do you really need it down to how much plywood is being used and all of
> that?
>
> . . . all you have to do though is know how much it cost to make one data center.
>
> ATTORNEY ERCOLINI: That's correct, Your Honor.

*Id.* at 23:19-23, 24:11-13. Instead, the Court observed that it would be sufficient if, instead of

providing discovery on the myriad expenses that go into building and running a data center,

Google provided documents and testimony describing the average cost to build and operate a

typical data center. *Id.* at 25:1-14. Google agreed to do so, and the Court directed Google to

"proceed accordingly." *Id.* at 25:11-26:8.

Following argument on the Finance and Data Center Topics, the Court turned its attention

to ensuring that no lingering, unresolved disputes remained. First, the Court asked Google to

clarify the full scope of testimony it was agreeing to provide by affirming that, in addition to

abiding by the commitments it had made at the hearing, Google would also honor any previous

offers it had made regarding Singular's Rule 30(b)(6) topics. Google agreed. *Id.* at 26:9-18.

The Court then asked Singular to confirm that there were no other issues to resolve and no additional testimony it was seeking from Google. *Id.* at 19-20 ("So, Mr. Ercolini, then what still remains with respect to this?"). The only issue Singular raised was testimony regarding benefits attributable to the accused products (topic 17). *Id.* at 26:21-27:1. The Court ordered Google to produce responsive documents and directed that a Google witness "should be prepared to comment on them during any deposition." *Id.* at 28:2-8.

The Court then asked Singular *a second time* to confirm the parties' disputes over Singular's Rule 30(b)(6) topics had been resolved before moving on:

> THE COURT: Hang on. Does that mean, Mr. Ercolini, that we're done with basically [ECF Nos.] 187 and 214?
>
> ATTORNEY ERCOLINI: To the extent that Google is going to provide witnesses, broad responses, and documents and soon because again we've got three weeks left and any follow up we need, we really want to do in a hurry. We've had these pending for a year but we do have another motion that is urgent.
>
> THE COURT: I understand, but you're just not giving me a simple answer. I want to make sure because what we're always concerned about is did we deal with this motion and I just want to hear you say that of the things that you wanted to raise, we've kind of addressed them and then I will happily move on to the motion you're referring to.
>
> ATTORNEY ERCOLINI: Yes. Correct, Your Honor. **We believe we are done with those motions.** Thank you.

*Id.* at 29:17-30:8 (emphasis added).

Before the hearing concluded, Google summarized the Court's rulings from the bench and the scope of what Google had been ordered to provide in response to Singular's motions, and the Court confirmed the same. *See id.* at 42:25-44:20 (confirming that on data centers, Google would provide testimony regarding the "general cost . . . to design [a typical data center], build it, and operate it"); *id.* at 44:10-46:18 (confirming that on benefits attributable to the accused TPUs, Google would produce a witness to testify regarding analyses of "the benefits of the TPUs to [Google's] other business units" identified after a "reasonably diligent search"). Singular raised no objection.

6

**C.      Google repeatedly confirmed—and Singular did not dispute—that the June 30 hearing resolved the parties' disputes.**

Two days after the June 30, 2021 hearing, Google sent Singular a letter designating the four witnesses that would testify on Singular's Rule 30(b)(6) topics. Sun Decl., Ex. C. In that letter, Google noted that its designations were subject to the modifications it had offered during the parties' meet and confers (and memorialized in ECF No. 227-4) and the Court's guidance at the June 30, 2021 hearing. *Id.* Singular never responded. Sun Decl. ¶ 7.

On July 6, 2021, Google again confirmed the scope of the Rule 30(b)(6) testimony it planned to offer, as well as its understanding of what had transpired at the June 30, 2021 hearing:

> To avoid further confusion, it's worth clarifying what the parties argued and the Court ordered at the June 30 hearing. . . . ECF No. 214 [Singular's motion to compel additional testimony] ***focused exclusively*** on the proper scope of discovery into Google products that use the accused TPUs (i.e., the so-called "Accused Services") and Google's data centers. . . .
>
> At the close of the hearing, the Court clarified exactly what it was ordering with respect to the "Accused Services" and Google's data centers. As to the former, Judge Cabell explicitly found that Singular's requests targeting the finances of the so-called "Accused Services" are "too broad." Tr. at 14:15-17. Instead, the Court concluded that discovery into this topic should be limited to "information that would allow [Singular] to determine how Google assessed the value of [the accused TPUs]." *Id*. at 15:1-6. Ultimately, the Court ordered Google to perform a reasonably diligent search for any analyses of the benefits of the TPUs to Google's business units and have a witness prepared to speak on those analyses. *See* Tr. at 44:10-20.
>
> Regarding the data centers, the Court ordered Google to provide testimony as to the average cost to build a data center, but refused to require the broader data-center-related discovery Singular sought . . . .

*Id.*, Ex. D at 2 (emphasis added). Once again, Singular never disputed Google's understanding. Sun Decl. ¶ 8.

On July 16, 2021, Singular deposed three of Google's four Rule 30(b)(6) witnesses: Nishant Patil, Normal Jouppi, and James Maccoun. At no point before or during any of these depositions did Singular raise any serious concerns about the scope of testimony being offered nor did it keep any of the three depositions open. Sun Decl. ¶ 3.

7

**D.      At the last minute before the final Google 30(b)(6) deposition, Singular disregarded the Court's ruling and demanded testimony on the "complete scope" of its original topics.**

On July 19, 2021—the day before Singular's deposition of the last Google 30(b)(6) designee, Kamran Shafiei—Singular threw up a new roadblock to an orderly completion of fact discovery. In an email sent at 3:59 pm ET, Singular demanded that Google confirm that Mr. Shafiei "will be prepared to testify tomorrow as to ***the complete scope***" of his designated topics as drafted by Singular—which included the overbroad Finance and Data Center Topics the Court expressly rejected at the June 30, 2021 hearing. Sun Decl., Ex E at 6. In a follow-up email, Singular further demanded that Google designate witnesses to testify regarding four additional topics (Topics 14-16, and 37) that Singular had previously abandoned.[3] *Id.*

Google responded that same day, noting that the scope of Singular's topics had long since been resolved during the parties' meet and confers and at the June 30 hearing, which Google had confirmed in multiple letters to Singular. *See id.* at 5-6 (citing letters attached as Exs. C and D to the Sun Decl.). Singular reiterated its demand that Mr. Shafiei be prepared to testify on the full scope of Singular's topics as drafted, and argued that "Google's failure to prepare Mr. Shafiei to testify as to any topic on which he is designated, in the absence of a protective order, will be a violation of FRCP 37(d)." *Id.* at 2-4.

On July 20, 2021, the morning of Mr. Shafiei's deposition, Google informed Singular that its insistence that Mr. Shafiei testify on the "complete scope" of Singular's topics as-drafted was improper, and indicated its intent to seek relief from the Court before producing Mr. Shafiei

---

[3] Singular agreed to drop Topics 14-16 during the meet-and-confers that preceded its June 14, 2021 motion. Bruns Decl. ¶ 4. Accordingly, Google understood Topics 14-16 to be withdrawn. *See* ECF 227-4 (noting there was no dispute on Topics 14-16 and that Google was not providing a witness on them); *see also* Sun Decl., Ex. A at 4:7-8 ("We have, so far as we can tell, agreement on 30 of the topics at this point."). And Singular did not include Topics 14-16 in its motion to compel. The only remaining topic, Topic 37, seeks testimony regarding "Google's corporate return on investment (ROI) policy." Sun Decl., Ex. B at 7. During the parties' meet and confers, Google represented that there was no such policy and, as a result, it could not designate a witness on that topic. Bruns Decl. ¶ 5. Singular nonetheless included topic 37 in its June 14 motion, but did not raise it at the hearing.

for deposition. Sun Decl., Ex. E at 1. Singular refused to postpone the deposition. At the start of the deposition, Google's counsel explained Google's objections to Singular's eleventh-hour demand that Mr. Shafiei testify on the "complete scope" of Singular's original topics in violation of agreements reached during the parties' meet and confers and the Court's rulings at the June 30 hearing. *See generally, Id.*, Ex. F. Google's counsel further noted that Mr. Shafiei, Google's Senior Manager of Finance and Strategy, had cleared his day and was prepared to testify about the topics as narrowed by the parties and ordered by the Court.[4]

Singular's counsel, Mr. Ercolini, repeatedly interrupted Ms. Ybarra's explanation to make improper and unprofessional remarks, including the following:

- MR. ERCOLINI: Can we hurry this up?

- MR. ERCOLINI: This is not your deposition. So if you want to keep grandstanding, you're going to do it on mute.

- MR. ERCOLINI: I've had it. You've had about five minutes of uninterrupted jabbering. I'm done.

- MR. ERCOLINI: You're not going to pile lie upon lie. That's not our agreement.

  MS. YBARRA: Counsel has just called me a liar on the record and I think we—I think—

  MR. ERCOLINI: Oh, my God.

  MS. YBARRA: —we're done here.

  MR. ERCOLINI: No, I said you piled lie upon lie, which is absolutely true. If you're yanking the witness because you're offended by my saying that you're lying, I'd ask you to stop telling falsehoods on the record.

Sun Decl., Ex G at 6:22; 10:16-18; 10:21-22;13:12-25. Following this exchange, Google suspended the deposition so that it could seek the Court's guidance. *Id.* at 20:7-10.

---

[4] Mr. Shafiei had only been noticed as a Rule 30(b)(6) witness. Singular did not seek Mr. Shafiei's deposition in his personal capacity.

## III.   ARGUMENT

The Court may issue a protective order for "good cause" to protect a party subject to discovery "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Here, Google seeks a protective order in response to Singular's July 19 demand that Google produce a witness to testify on the "complete scope" of seventeen Rule 30(b)(6) topics that the parties already narrowed or otherwise eliminated by litigation or negotiation. Fourteen of those topics (Topics Nos. 10, 12, 13, 18, 20-25, 29, 30, 36, 37) were among the Finance and Data Center Topics that the parties litigated as part of Singular's June 14, 2021 motion to compel (ECF No. 214). Singular agreed to abandon the remaining three (Topics 14-16) during the meet-and-confers that preceded that motion. Bruns Decl. ¶ 4; ECF No. 227-4 at 2-4. In both cases, Singular's demands that Google produce a witness to testify on the full, original scope of these topics is improper, and ample good cause exists to enter a protective order limiting Singular's questioning to the scope previously ordered by the Court or agreed to by the parties.

### A.   Singular's demands for testimony on the "complete scope" of its original topics contravenes the Court's rulings at the June 30 hearing.

Litigants have a duty to follow the Court's directions, regardless of the form those directions take. "The fact that the Court's and the MJ's directions [ar]e oral does not negate [that] dut[y]." *Allstate Ins. Co. v. Awan & Assocs. P.C.*, No. 11-11988, 2013 WL 2295435, at *2 (E.D. Mich. May 24, 2013). The parties "have a duty not only to comply with the Court's written orders but also any oral instructions." *Id.*; *see also In re Intuniv Antitrust Litig. (Both Direct & Indirect Cases)*, No. 1:16-cv-12396-ADB, 2020 WL 5045148, at *1-3 (D. Mass. Aug. 26, 2020) (granting motion to strike for failure to comply with the court's "guidelines" and "instruct[ions]" related to summary judgment briefing). In demanding that Google produce a witness to testify on the "complete scope" of the 14 topics the parties previously litigated as part of Singular's June 14 motion to compel (ECF No. 214), Singular has expressly flouted the oral rulings the Court issued at the June 30 hearing.

For example, at the June 30 hearing, the Court observed that Singular's Finance Topics, which sought testimony on the financial results for a wide variety of different Google businesses were "just too out there" and "too broad." Sun Decl., Ex A at 14:16. As a result, instead of compelling Google to testify on the full scope of those topics, the Court ordered Google to provide the testimony it had already offered during the parties' meet and confers, *id.* 26:9-18, and additional testimony on the "value and the benefits of the [accused] TPUs," *id.* at 15:18.

Now, despite that ruling, Singular demands that Google provide testimony on the original and full scope of several of those ***same topics***, which the Court previously found to be "too broad," *id.*, Ex. A at 14:16, including:

- Topic 10: Revenues, costs and/or expenses, and profits for any products or services (including the Accused Services) making use of the Accused Products.

- Topic 12: Projections for sales, use or cost savings for any products or services (including the Accused Services) making use of the Accused Products.

- Topic 13: Development profit and loss statements for any products or services (including the Accused Services) making use of the Accused Products.

- Topic 18: Profit and loss (P&L) statements of any product group or business segment(s) responsible (or formerly responsible) for the Accused Services.

*See* ECF No. 227-4 at 2-3; Sun Decl., Ex. E at 6-7.

Moreover, at the June 30 hearing the Court observed that the Data Center Topics were "too far afield" because they would require Google's testimony to address "reams and reams and reams of details on what it takes to build a [data]center." Sun Decl., Ex. A at 22:18, 23:25-24:1. Instead of instructing Google to produce a witness to testify on the full breadth of those topics, the Court directed Google to provide testimony on the topics it had already offered, *id.* 26:9-18, as well as the "average" cost to build and operate a data center*, id.* at 25:15-26:8.

Despite that direction, Singular demands that Google provide testimony on the same Data Center Topics that the Court deemed overbroad. These include, for example:

- Topic 20: Capital asset requests and analyses associated with developing Google's data centers without the Accused Products.

1717736

- Topic 21: Google's long-term capital investment plans relating to its data centers.

- Topic 22: Projections of Google's long-term data center needs and shortfalls.

- Topic 23: Capital asset requests and analyses associated with developing Google's data centers with the Accused Products.

- Topic 24: Operating budgets and plans for Google data centers operating with and without the Accused Products, including without limitation size and energy requirements.

- Topic 25: Profit and loss statements or other financial analyses prepared by Google related to the actual operation of its data centers with and without the Accused Products.

*See* ECF No. 227-4 at 3-4; Sun Decl., Ex. E at 6-7.

Singular's eleventh-hour demands for testimony that the Court already denied is improper. Singular is not at liberty to disregard the decisions reached by the Court at the June 30 hearing. *See Allstate Ins. Co.*, 2013 WL 2295435, at *2. The parties have already litigated the appropriate scope of these topics and the Court has issued its ruling. That ruling is binding. *See id.* Singular cannot simply wish it away.

Moreover, Singular's misconduct threatens to squander the substantial resources devoted by the Court and the parties to briefing, arguing, and resolving the parties' disputes over the scope of Singular's Rule 30(b)(6) topics, which have been the subject of two separate motions, two hearings, multiple meet and confers, and multiple status updates to the Court. Singular's attempt to re-litigate issues that the Court and the parties worked hard to resolve—and did resolve, weeks ago—has upended the completion of depositions during the final week of fact discovery. This is neither an efficient way to approach discovery nor proper conduct of a litigant. Singular's attempt to rewind the clock and nullify the prior efforts of the parties and the Court in order to obtain testimony to which it was never entitled is baseless.

Any suggestion on Singular's part that the Court's rulings from the bench at the June 30 hearing were unclear cannot be credited. Google confirmed and memorialized—both at the June 30 hearing and afterward—its understanding of the Court's rulings and the scope of testimony it was ordered to provide. Sun Decl., Ex. A at 42:25-44:20; *see id.*, Exs. C, D. Singular never

contested Google's understanding, and instead, waited until July 19, 2021—the eve of the deposition of Google's final 30(b)(6) designee—to demand that Google produce a witness to testify on the full scope of Singular's original topics.

Moreover, Singular has long since waived any argument challenging the Court's decision to narrow the scope of its deposition topics. "Few principles are more sacrosanct in this circuit than the principle that issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 6 (1st Cir. 2005) (internal quotation marks omitted). "[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Id.* If Singular wanted a broader scope for any of its topics than what Google had offered or the Court had ordered, it had an opportunity to argue as much at the June 30 hearing. In fact, the Court expressly invited Singular to raise any other issues it wanted to discuss regarding the deposition topics. Singular declined. Sun Decl., Ex. A at 30:1-8. Nor did Singular file a motion for reconsideration of the Court's rulings. Having chosen not to contest the narrowed scope of its deposition topics at the June 30 hearing, Singular cannot do so now.

**B.      Singular's conduct violates the parties' discovery agreements.**

Singular also cannot resurrect topics it agreed to abandon as part of the parties' meet and confers. Parties have long been free to enter into agreements defining the scope of discovery. In fact, courts have recognized "[i]f parties did not resolve most discovery matters by consent and stipulation the court[s] would be inundated with discovery motions." *Milazzo v. KG Enters., Inc.,* CIV. 97-649-SD, 1999 WL 1327394, *2 (D.N.H. Feb. 16, 1999). As a result, courts do not look kindly on a party's attempt to "renege on [its] agreement to limit discovery." *Mawulawde v. Bd. of Regents of the University System of Georgia*, No. CV 105-099, 2007 WL 2460774, at *7 (S.D. Ga. Aug. 24, 2007).

Here, Singular agreed to forgo testimony on several topics during the meet and confers that preceded its June 14 motion. Google memorialized those compromises in its opposition to

Singular's motion, *see* ECF No. 224-7, and confirmed its understanding at the June 30 hearing. *See* Sun Decl., Ex. A at 4:8 (Google's counsel noting that the parties had "agreement on 30 of [Singular's deposition] topics"); *see also* ECF No. 224-7 (identifying those same 30 topics as not in dispute). Singular did not disagree. As a result, at the June 30 hearing, the Court deemed Google's then-pending motion for a protective order (ECF No. 153) on those 30 topics resolved.

Despite the parties' agreement, however, Singular now demands that Google produce a witness to testify on three topics (Topics 14-16) that it had previously agreed to abandon. *See* ECF 227-4 at 2-4; Sun Decl., Ex. E at 6. The Court should not permit Singular "to renege on [its] agreement to limit discovery." *Mawulawde*, 2007 WL 2460774, at *7. Google engaged in its meet and confer with Singular in good faith. In exchange for Singular agreeing to abandon these four topics, Google agreed to expanded testimony on other topics. And, because it believed the parties had reached agreement on these four topics and 26 others, Google elected not to further litigate its motion for a protective order (ECF No. 153) at the June 30 hearing. Sun Decl., Ex. A at 4:2-18. Singular cannot pocket these concessions and refuse to honor its side of the agreement. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med, Sys., Inc.*, 130 F.R.D. 281, 283 (S.D.N.Y. 1989) (observing that agreements between the parties "cannot be dispensed with when they finally become inconvenient to one of the parties").

### C.    The testimony Singular seeks is irrelevant, burdensome, and disproportional to the needs of the case.

Even if the Court were inclined to permit Singular to reopen issues that were already settled, Singular has failed to justify its demand for testimony on the "full scope" of the topics at issue. The Federal Circuit has made clear that "discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *See Micro Motion, Inc. v Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (1990) (emphasis in original). A patentee must be able to articulate a cognizable theory of damages before the doors to discovery of a defendant's sensitive financial information swing open. *See, e.g., Allen v. Howmedica Leibinger GmhH*, 190 F.R.D. 518 (1999) (denying financial discovery

where plaintiff failed to demonstrate relevance to damages); *Largon Precision Co., Ltd. v. Samsung Elecs. Co. Ltd.*, 13-CV-2740 DMS (NLS), 2014 WL 12199980, at *5 (S.D. Cal. Dec. 11, 2014) (denying financial discovery regarding unaccused products). Moreover, "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement, but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Singular's topics flunk these standards by demanding unfettered financial discovery untethered from any cognizable damages theory.

*First*, Singular's Topics 10, 12-13, 81, and 29-30 seek detailed financial discovery regarding more than a dozen products and services that are not accused of infringement. Singular's only theory of relevance hinges on the unsupported assertion that the accused TPUs, which are complex computing systems with multiple levels of components and/or subsystems, enable increased machine-learning capacity that indirectly benefits all of Google's services. But Singular's infringement theory, when fairly read, only covers one component: the matrix multiplication unit, or "MXU."[5] Singular has never offered any damages theory that would link its infringement claims to the broad discovery it seeks. Even if Singular's patents could be fairly read to cover the entire TPU chip (they cannot), Singular still could not justify the overbroad discovery it now demands. For example, Singular alleges that "the accused TPUv2 and TPUv3 Devices provide AI capabilities that enhance the performance of its Ads platform," allowing Google to maximize Ads revenue. ECF No. 37 (FAC) ¶ 25. Singular does not even attempt to draw a meaningful connection between the accused TPUs and any Google service except Ads, arguing only that broad financial discovery into services such as Google Photos, Translate, Gmail, and others is warranted because Google "leverages public engagement with these services to enhance its Ads platform" and the services "generate at least tens of billions of dollars

---

[5] Even when Singular sometimes suggested that the reach of its infringement accusations includes the MXU plus other discreet components, Singular has never suggested that its claims cover the entire chip.

per year in profit." *Id.* On that justification alone, Singular contends it is entitled to sweeping

financial discovery into more than a dozen unaccused Google products and services.

The law holds otherwise. A patentee seeking damages discovery "must be able to

'articulate the possible linkage between the discovery sought and admissible evidence.'" *Allen*,

190 F.R.D. at 522, 524. It "must enunciate some factual support for the [damages] theory with

some degree of particularity. Broad, general conclusory allegations . . . will not suffice." *Id.* at

524. Singular's allegations are precisely the type that the *Allen* court deemed "too tenuous." *Id.*

Singular apparently contends that if any of Google's services use TPUs in any way,

invasive financial discovery into those services is fair game. Such an approach is neither

reasonable nor sanctioned by the law. *See Largon*, 2014 WL 12199980, at *5. Yet this overreach

pervades all of Singular's topics seeking testimony about financial and business aspects of

unaccused Google services. *See, e.g.*, Topics 10, 12-13, 18. As drafted, these topics would

require Google to identify, designate, and prepare witnesses from across its business to testify

about a glut of irrelevant information. The Court has already rejected Singular's demand for this

information, and should do so again here.

***Second***, Topics 20-25 seek detailed financial discovery regarding Google's data centers.

But Singular's only link between a theoretical damages calculation and the broad discovery it

seeks regarding Google's data centers is rank speculation based on an unattributed statement in

which Google purportedly credited an ***unaccused*** TPU product with data center cost-savings.

*See* ECF 215 at 3 n.1. Singular admits that the data center discovery it seeks rests on a statement

about "TPU v1 (which is not accused)," and Singular's speculation that "***it is almost certain***" the

accused TPU v2 and TPU v3 have resulted in similar cost-savings for Google.[6] But "information

is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the

---

[6] Singular fails to articulate any justification whatsoever for discovery into Google data centers located abroad. *See, e.g.*, *Rodhe & Schwarz GmbH & Co., KG v. Tektronix, Inc.*, CV 18-02402-SJO (FFMx), 2019 WL 4391114, at *2 (C.D. Cal. May 31, 2019) (finding patentee's contentions "too speculative to justify burdening Defendant with worldwide [damages] discovery").

party's mere suspicion or speculation." *Micro Motion, Inc.*, 894 F.2d at 1326; *see also In re Google Litig.*, C 08-03172 RMW (PSG), 2011 WL 286173, at *9 (N.D. Cal. Jan 27, 2011) (denying damages discovery where patentee could only "speculate what [the documents] 'likely contain'"). The Court has already ordered (and Google has already agreed to provide) a Rule 30(b)(6) witness to testify about the average cost to build and maintain a data center. The Court should reject Singular's untimely and baseless demand for more.

Finally, even if Singular had established the testimony it seeks is relevant (it has not), relevance alone is insufficient to justify the overbroad and burdensome financial discovery Singular demands. *See* Fed. R. Civ. P. 26(b)(1); *see also Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167 (S.D.N.Y. 2004), *order clarified*, No. 00 Civ. 5141 GBDJCF, 2005 WL 1514284 (S.D.N.Y. June 24, 2005) (denying motion to compel where discovery related to non-accused products was "'relevant' under the broad definition of that term that applies in the context of discovery," but failed the "proportionality test" of Rule 26). Here, Singular has demanded burdensome financial discovery into at least 16 Google products and services that span all aspects of Google's business. *See* Topics 10, 12, 13, 18; *see also* ECF No. 215 at 7 (arguing that Singular is entitled to detailed financial discovery regarding Search, Image Search, Google News, Google Ads, Gmail, Docs, Translate, Speech, Maps, YouTube, the Play Store, and more). But because these are distinct Google entities with their own product management teams, a different witness might be necessary to testify to the finances of each product. Singular offers no defense of how the expansive and burdensome discovery it seeks is tailored or proportional to the needs of the case. *See Novanta, Corp., v. Iradion Laser, Inc.*, No. 15-1033-SLR-SRF, 2016 WL 4987110, at *4 (D. Del. Sept. 16, 2016) (denying broad discovery into accused infringer's corporate records because it "is not narrowly tailored or proportional to [plaintiff's] infringement claims."). The Court has already rejected Singular's demand for broad and onerous discovery into the financials for all of Google's products and services. Sun Decl. Ex. A at 14:15-16. It should do so here again.

**D.     The Court should admonish Singular's counsel to stop engaging in uncivil conduct.**

Singular's conduct with respect to depositions—including but not limited to Mr. Shafiei's 30(b)(6) deposition—further warrants issuance of a protective order. From the beginning, Singular's approach to depositions has been marked by refusal to meet and confer, foot-dragging, and baseless accusations of wrongdoing by Google.

But Singular's recent misconduct, which includes Singular's treatment of Google's witnesses themselves, is far more serious. Singular's counsel has been consistently discourteous and unprofessional in depositions and has repeatedly insulted the intelligence and integrity of Google's attorneys and witnesses, as reflected in the following exchanges:

> Q. You wrote this Exhibit 6; correct?
>
> A. I can see the e-mail.
>
> Q. ***I'm not asking if you can see it I know you're not blind just answer the question don't evade every single question?***

*Id.*, Ex. G (Teller Depo.) at 68:15-19 (emphasis added).

> Q. And you understand that this problem that was supposed by Dean, was characterized by him, I believe, as scary and daunting problem. You understand that?
>
> MR. BHANSALI: Objection.
>
> THE WITNESS: No, I don't think I -- if I – I may have said that. I don't -- I wouldn't characterize that today.
>
> BY MR. HAYES:
>
> Q. ***Today. Sure, because we've got a lawsuit today.***

*Id.*, Ex. G (Patterson Depo.) at 48:7-16 (emphasis added).

> Q. And when you say "this approach," you mean doing exact arithmetic on low precision values.
>
> MR. HAYES: Objection. That's -- ***Counsel, this is the 50th time you've asked the stupid question.*** It's been asked and answered.

*Id.* Ex G (Bates Depo., Vol. 1, ) at 146:5-9 (emphasis added).

> Q. Now, ma'am, at this talk, did he give a demonstration of his computer?
>
> MR. BRUNS: Objection. Vague.

18

THE WITNESS: I'm not sure what you mean by "demonstration."

BY MR. HAYES:

Q. ***Are you serious? You went to Oxford and you don't know what the word "demonstration" means?***

Sun Decl., Ex. G (Felton Depo) at 27:11-18 (emphasis added).

The misconduct has not stopped there. Singular's counsel has repeatedly pressured

witnesses to ignore instructions to not answer questions that call for privileged communications:

**Q.  Well, why did you reach out to her?**

MR. BRUNS:  I'm going to instruct her not to answer that on the same grounds.

MR. HAYES:  That's not – I'm not asking what she said to her.  I'm asking you:  **Why did you see fit to reach out to the IP counsel after you became aware of Bates' invention?**

MR. BRUNS:  I – I'm going to instruct her not to answer.  She -- you are asking her to divulge why she reached out to counsel.  That – that's privileged.

**MR. HAYES:  You can answer the question.**

MR. BRUNS:  No.  Again, I'm instructing the witness not to answer the question.

BY MR. HAYES:

**Q.  Do you know, ma'am, why you reached out to Ms. Tornabene?**

MR. BRUNS:  Paul, I -- I have made this objection three or four times now.  It's – it's not a matter of whether she knows why she did it.  It's -- the choice to do it or not is privileged, and her decision to do that is privileged.

**MR. HAYES:  Go ahead.**

*Id.* Ex G (Felten Depo.) at 56:17-57:16 (emphasis added); *see also id.*, Ex. G (Felten Depo.) at

70:10-71:5; Ex. G (Tornabene Depo.) at 33:12-25. In one instance, Singular's counsel quipped,

"Instruct away, Counsel. The jury will love it." *Id.*, Ex. G (Tornabene) Depo. at 41:15-42:6.

Similarly, Singular's counsel has attempted to violate the protective order by showing witnesses

confidential material over Google's objection, *id.*, Ex. G (Tornabene Depo.) at 8:11-10:12,

46:25-47:7, and by demanding that witnesses testify about redacted portions of Google

documents, *id.* Ex. G (Laudon Depo.) at 43:23-44:7. These are not isolated incidents. Though

Google submits additional examples of Singular's misconduct with this motion, *see* Sun Decl.

19

Ex. G, it could have included a dozen more similar outbursts showing a pattern of abusive and harassing misconduct by Singular.

Singular's conduct reached new lows *during* Mr. Shafiei's July 20 deposition. On the eve of that deposition, Singular demanded, without justification, that Mr. Shafiei—who was only noticed pursuant to Rule 30(b)(6) and not obligated to testify in his personal capacity—be prepared to testify on the "complete scope" of 14 of Singular's Rule 30(b)(6) topics, many of which the Court had already deemed overbroad and improper. In light of Singular's apparent intent to harass Mr. Shafiei by questioning him on topics on which he was not prepared and had no obligation to prepare, Google's counsel opened Mr. Shafiei's deposition by attempting to state Google's objections to Singular's conduct on the record. Singular's counsel Mr. Ercolini repeatedly interrupted Google's counsel as she attempted to do so, stating "if you want to keep grandstanding, you're going to do it on mute," and accusing Google's counsel of "jabbering" and "pil[ing] lie upon lie." *Id.*, Ex. F (Shafiei Depo.) at 6:17-8:15, 10:8-25, 12:25-13:25. Mr. Ercolini's bullying tone matched his rhetoric. Sun Decl., ¶ 4.[7]

No witness or attorney should be subjected to such misconduct. Under the circumstances, Google would be well within its rights to seek fees and an order barring the counsel who have engaged in past misconduct from taking further depositions. *Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover,* No. 4:04CV743-DJS, 2005 WL 8176846, at *2 (E.D. Mo. Sept. 8, 2005). However, Google does not seek such extreme sanctions. It asks only that Singular not be rewarded for its conduct with a broader scope of testimony than the Court has already ordered or Google has agreed to provide, and that the Court admonish Singular to end its campaign of deposition misconduct and abusive questioning.

## IV.  CONCLUSION

For the foregoing reasons, Google requests that its motion be GRANTED.

---

[7] Because the nature of Mr. Ercolini's rhetoric may not be apparent from the paper record, Google will lodge a copy of the video of Mr. Shafiei's deposition. *See* Sun Decl., Ex H.

Respectfully submitted,

Dated: July 21, 2021

By:   */s/ Matthias Kamber*
Gregory F. Corbett (BBO #646394)
gregory.corbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nathan.speed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
elizabeth.dimarco@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Asim Bhansali (*pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111

Matthias Kamber (*pro hac vice*)
mkamber@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

*Attorneys for Defendant Google LLC*

1717736

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.


/s/ *Matthias Kamber*
Matthias  Kamber

22