# Exhibit G

| Witness | Deposition Testimony |
|---------|---------------------|
| Obi Felten<br>56:17-57:16 | **Q. Well, why did you reach out to her?**<br>    MR. BRUNS:  I'm going to instruct her not<br>to answer that on the same grounds.<br>    MR. HAYES:  That's not -- I'm not asking<br>what she said to her.  I'm asking you:  **Why did you**<br>**see fit to reach out to the IP counsel after you**<br>**became aware of Bates' invention?**<br>    MR. BRUNS:  I -- I'm going to instruct her<br>not to answer.  She -- you are asking her to divulge<br>why she reached out to counsel.  That -- that's<br>privileged.<br>    **MR. HAYES:  You can answer the question.**<br>    MR. BRUNS:  No.  Again, I'm instructing<br>the witness not to answer the question.<br>BY MR. HAYES:<br>    **Q.  Do you know, ma'am, why you reached out to**<br>**Ms. Tornabene?**<br>    MR. BRUNS:  Paul, I -- I have made this<br>objection three or four times now.  It's -- it's not<br>a matter of whether she knows why she did it.  It's<br>-- the choice to do it or not is privileged, and her<br>decision to do that is privileged.<br>    **MR. HAYES:  Go ahead.**<br>MR. BRUNS:  Same objection.  Same<br>instruction -- instruction. |
| Obi Felten<br>70:10-71:5 |    Q.  And one of the friendly lawyers you added<br>are -- or the two friendly lawyers you added was<br>Jenn Wall, corporate counsel, and Catherine<br>Tornabene, the IP counsel, true?<br>    A.  Yes.  I added Jenn and Catherine.<br>   **Q.  All right.  And what was the reason that**<br>**you decided to add the IP counsel to the team?**<br>    **MR. BRUNS:  Objection.  This calls for**<br>**privileged information.  I'm going to instruct the**<br>**witness not to answer.**<br>BY MR. HAYES:<br>   Q.  Are you going to answer that question?<br>   A.  Nope.<br>   Q.  Okay.  All right.<br>   **Now, the reason that you've added the**<br>**friendly lawyers is you were concerned that, in**<br>**fact, Google or X, infringed; is that correct?**<br>    **MR. BRUNS:  Same objections.  Same** |

1

| | |
|---|---|
| | instruction.  This is the exact same content.<br>**MR. HAYES:  You can answer the question.**<br>MR. BRUNS:  No, I instruct you not to. |
| Obi Felten<br>91:1-8 | Q.  You wrote that.  And Catherine is the IP<br>lawyer, right?<br>    A.  Uh-huh.<br>    Q.  For Google?  So you told --<br>    A.  No.  She's not.  She's an IP lawyer for X.<br>    Q.  For X.  **Whatever you want -- whatever you**<br>**want to call it.  We'll let a jury figure out who is**<br>**X and who is Google, right?** |
| Obi Felten<br>27:11-18 | Q.  Now, ma'am, at this talk, did he give a<br>demonstration of his computer?<br>        MR. BRUNS:  Objection.  Vague.<br>        THE WITNESS:  I'm not sure what you mean<br>by "demonstration."<br>BY MR. HAYES:<br>    **Q.  Are you serious?  You went to Oxford and**<br>**you don't know what the word "demonstration" means?** |
| James Laudon<br>43:23-44:7 | Q.  Okay.  So in that -- the prior e-mail<br>at the bottom of page 2 where it says Jim from<br>Obi Felten?<br>    A.  Uh-huh.<br>    **Q.  She was asking you to do technical due**<br>**diligence; is that correct?***<br>        **MR. BRUNS:  I want to object.  The**<br>**contents of that e-mail are redacted for**<br>**privilege.**  I don't -- I'm going to admonish<br>the witness not to answer that question.<br><br>*referencing the redacted portion of the exhibit* |
| David Patterson<br>32:17-18 | **Q.  Will you just answer the question, sir?  I'll**<br>**get a court order ordering you to.** |
| David Patterson<br>48:7-16 | Q.  And you understand that this problem that was<br>supposed by Dean, was characterized by him, I believe,<br>as scary and daunting problem.  You understand that?<br>        MR. BHANSALI:  Objection.<br>        THE WITNESS:  No, I don't think I -- if I -- I<br>may have said that.  I don't -- I wouldn't characterize<br>that today.<br>BY MR. HAYES: |

| | |
|---|---|
| | **Q.  Today.  Sure, because we've got a lawsuit today.** |
| David Patterson<br>58:7-60:10 | Q.  What is that a picture of?<br>    A.  It is -- what the caption says is that it's a mural on the walls of a data center.<br>    Q.  Google's data center; right?<br>    A.  Of a Google data center, in Dublin.<br>    Q.  That's pretty enormous, is it not?<br>    A.  I --<br>        MR. BHANSALI:  Objection.<br>        THE WITNESS:  Yeah, it's a photograph.  I don't actually know.  There's not -- I don't know what to compare it to to see how big the thing is.  And whether that thing is enormous, it's in the mind of the beholder.<br>    **Q.  Oh, you can't tell, Doctor?  You can't make a reasonable assumption by just looking at it?**<br>        **Look at the telephone poles, and they're probably 14 feet high.**  And --<br>    A.  Where are the telephone poles?<br>        MR. BHANSALI:  Well, let him finish his question, and then I can object.  And then --<br>        THE WITNESS:  Sorry.<br>    BY MR. HAYES:<br>    **Q.  Doctor, is it your testimony that you can't tell by looking at that picture, that's an enormous data center?**<br>        MR. BHANSALI:  Objection.<br>        Go ahead.<br>        THE WITNESS:  Which ones are the telephone poles?<br>    BY MR. HAYES:<br>    Q.  Just answer the question.<br>    A.  I can't tell from looking at that picture whether it's a big as a football field or smaller than a football field.<br>    . . .<br>    **Q.  The data centers that are shown in that picture are indeed enormous; correct?**<br>        MR. BHANSALI:  Objection.<br>        THE WITNESS:  So if you're interested technically --<br>    BY MR. HAYES:<br>    **Q.  I'm interested in getting an answer.** |

3

| | |
|---|---|
| David Patterson 73:23-74:11 | Q.  This document, sir -- that's you -- this document's authored by a number of people, including yourself; correct?<br>        MR. BHANSALI:  Objection.  This has been asked and answered.<br>        Go ahead.<br>        THE WITNESS:  We've already been over this. This is not a paper.  This is slides of a talk.  I did not give this talk.  So --<br>BY MR. HAYES:<br>    Q.  The title of this talk --<br>        **MR. BHANSALI:  Wait, wait.  He's finishing his answer.  You asked him a question.  He gets to finish his answer.** |
| David Patterson 92:24-93:3 | Q.  Is the use of reduced precision an architecture utilized in v2 and v3?<br>    A.  I'm --<br>    **Q.  You're under oath.  You have to tell me the truth.** |
| Astro Teller 11:14-18 | A.  My memory is Joe reached out to me.<br>    Q.  Okay.  Okay.  Well that's -- all right.<br>        **You don't have any problem, I assume, with your memory; right?** |
| Astro Teller 28:2-14 | Q.  You didn't cursory read it you studied it; correct?<br>        MR. KAMBER:  Objection.  Asked and answered vague form.<br>        THE WITNESS:  If -- when he sent it to me I would have read the words and maybe thought about it a little bit that doesn't seem like studied to me.<br>        MR. HAYES:  I'll leave it to you to decide.<br>BY MR. HAYES:<br>    **Q.  The jury is going to decide that one, sir.** |
| Astro Teller 58:20-59:2 | Q.  You sent Ng Joe's presentation when he was at Google Brain isn't that a fact?<br>        MR. KAMBER:  Objection to form foundation.<br>BY MR. HAYES: |

| | |
|---|---|
| | Q.  And in fact suggested that he work closely with Ng isn't that -- **could you just tell the truth?** |
| Astro Teller 66:19-24 | Q.  These are your words in the e-mail; correct?<br>        MR. KAMBER:  Objection to form.<br>        THE WITNESS:  Yes.<br>BY MR. HAYES:<br>    **Q.  It's not tough to tell the truth.** |
| Astro Teller 68:15-19 | Q.  You wrote this Exhibit 6; correct?<br>    A.  I can see the e-mail.<br>    **Q.  I'm not asking if you can see it I know you're not blind just answer the question don't evade every single question?** |
| Astro Teller 70:23-71:1 | Q.  Yeah.  All right.  **So you do know what the term game changer means.  It's not too difficult for you; right?**  These your words, game changer? |
| Astro Teller 86:24-87:12 | Q.  And when you you were talking to Bates you suggested did you not to Dr. Bates that at some point in time you suggested that Google could hire him; right?<br>    A.  I guess that certainly was possible an an it was not possible they could hire him for 2 million a year.<br>        I'll take your word for it.<br>    Q.  I want your words.<br>    A.  I don't remember making him that specific offer.  Was that in this e-mail?<br>    Q.  We're going to get to it.  **We'll get to the e-mails when you don't give me the truth.** |
| Astro Teller 93:19-94:9 | Q.  You're not saying it didn't happen you're just saying you don't remember; correct?<br>        MR. KAMBER:  Objection to form. Misstates prior testimony.<br>BY MR. HAYES:<br>    Q.  You can answer the question.<br>    A.  To the extent your question is do I not remember that conversation the answer is Yes, I do not remember the conversation. |

| | |
|---|---|
| | **Q.  That was not the question I asked though.  Very nice.  I understand every time your -- your counsel objects that you now have been told to just think about it and just try to evade the question.  I understand that. That's part of his prerogative to coach you like that.** |
| Astro Teller 94:24-95:10 | Q.  Do you have any specific memory disputing the fact that Dr. Bates told you in conversation that his intention was patent protected? <br>    A.  I have no memory -- <br>     MR. KAMBER:  Objection to form. <br> BY MR. HAYES: <br>    Q.  Please answer the question. <br>    A.  I have no memory that that didn't happen. <br>    **Q.  Okay.  That's good enough.  We'll just see who believes who.** |
| Catherine Tornabene 33:12-25 | Q   So you, as part of this legal team, are giving Obi information about how to deal with Bates; right? <br>    MR. KWUN:  Objection; calls for attorney-client privileged information and instruct the witness not to answer it.  If you want to reformulate that question, it's possible there's something she can answer. <br>     (Instruction not to answer.) <br>    **MR. HAYES:  I think she can answer that question.** <br>    **Q   That's what you were doing there?** <br>    MR. KWUN:  Well, I instruct the witness not to answer. |
| Catherine Tornabene 41:15-42:6 | My question to you is, were you involved in discussions or draft of the NDA that went -- the new NDA that went to Bates around 2017? <br>    **MR. KWUN:  I'm going to object that the question calls for attorney-client privileged information and instruct the witness not to answer.** <br>     (Instruction not to answer.) <br>    **MR. HAYES:  What's -- what's privileged about whether or not she participated in drafting it? That's got nothing to did with the price of bread.** |

| | |
|---|---|
| | **Q  Can you answer the question, please?**<br>    MR. KWUN:  It's -- I'm going to instruct the<br>witness not to answer.  If you'd like me to explain<br>why it's privileged, I'm happy to, but you seem to<br>have moved on.  I instruct the witness not to answer.<br>    **MR. HAYES:  Instruct away, Counsel.  The jury<br>will love it.** |
| Catherine<br>Tornabene<br>46:25-47:7 | Q   Well, let me show you -- I think, ma'am,<br>while we're on this point, if you look at -- I think<br>it's Exhibit 2, which is the interrogatories --<br>    MR. KWUN:  You cannot show her the<br>interrogatories because that contains confidential<br>information.<br>    **MR. HAYES:  I gotcha, Buddy.  Don't worry.  You<br>can object all you want to.** |
| Catherine<br>Tornabene<br>53:17-54:7 | **Who suggested putting that in the NDA<br>that was sent to Bates on or about this time, was it<br>you?**<br>    MR. KWUN:  Objection; assumes facts and also<br>calls for attorney-client privileged information, and<br>**I instruct the witness not to answer.**<br>        (Instruction not to answer.)<br>BY MR. HAYES:<br>    Q   You're not going to answer, ma'am?<br>    A   I can't answer that without revealing<br>attorney-client privileged information.<br>    Q   Well, tell me, why is that paragraph<br>generally in there for Google, generally?<br>    MR. KWUN:  You can answer that --<br>BY MR. HAYES:<br>    **Q  Why did you put that in there?** |
| Nishant Patil<br>63:6-13 | Q.   Right but we're talking about the first<br>page of the document you identify the TPU V2 and<br>V3 are Google's training chips; true?<br>    MS. YBARRA:  Objection.  Asked and<br>answered.  Argumentative and counsel, **please<br>watch your tone with the witness.  You're<br>yelling.**<br>        Thank you. |
| Nishant Patil<br>72:25-73:3 | Q.   These are your words, Dr. Patil.<br>    A.   It is what?<br>    MS. YBARRA:  **Watch your tone with the** |

| | |
|---|---|
| | **witness**.  Thank you. |
| Nishant Patil 238:17-21 | Q.   Correct.  Your boss wrote this in your appeal to get promoted; that's correct?<br>  A.  I believe so.<br>  **Q.   You believe so or that's actually the truth?** |
| Joe Bates 146:5-9 | Q. And when you say "this approach," you mean doing exact arithmetic on low precision values.<br><br>MR. HAYES: Objection. That's -- **Counsel, this is the 50th time you've asked the stupid question.** It's been asked and answered. |