**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SINGULAR COMPUTING LLC, | Civil Action No. 1:19-cv-12551 FDS |
| Plaintiff, | |
| v. | Hon. F. Dennis Saylor IV |
| GOOGLE LLC, | |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

Defendant Google LLC ("Google") respectfully submits this brief in response to Plaintiff's opposition to Google's Motion to Compel.

I.   **ARGUMENT**

   A.   **Interrogatory Nos. 22-24**

In its responses to Interrogatory Nos. 22 and 23, which ask Singular to describe its conception, design, and use of particular 14-bit and 16-bit floating point number point formats, Singular generally averred that "Singular's patents, related applications, and prosecution histories teach such a data type and thoroughly describe its design."  *See* Porto Decl. in Support of Mot. to Compel, Ex. E (Singular's Interrogatory Response).  In its opposition, Singular argues that it cannot respond to these interrogatories because "Dr. Bates does not claim to have conceived of or designed 14-bit/16-bit floating point data types."  Opp. at 2.  But this position is inconsistent with Singular's existing responses to the interrogatories.  *See* Porto Decl., Ex. E ("Singular's patents, related applications, and prosecution histories teach such a data type and thoroughly describe its design.").  If indeed it is now Singular's position that it did not conceive of these number formats, it should supplement its responses to so state.

Separately, Singular argues that the interrogatories "make no sense" because the asserted claims do not "recite such data types."  Opp. at 2.  This is a strawman.  It was Singular that raised its patents in its response to the interrogatories.  If, as Singular argues now, the patents are inapposite because "[n]one of the claims" include those data types, Singular should supplement its responses to remove its own references to its patents.  *Id.*

As for Interrogatory No. 24, which asks Singular to identify any disclosures by Dr. Bates to Google of 14-bit or 16-bit floating point number formats, Singular states that "the patents-in-suit" and "subsequent presentations given by Dr. Bates to Google" contain the information

1

requested, though Singular refuses to specify where and does not cite to any particular documents.  Porto Decl., Ex. E.  In its opposition, Singular cites only general examples of Dr. Bates' supposed disclosures.  *See* Opp. at 4-5 (citing discussions of "approximate floating point," "personal conversations," and the '273 patent's discussion of "a 5 bit integer . . . and a 6 bit fraction").  But none of these statements say anything about the particular "14-bit" or "16-bit" number formats that the interrogatory is directed to.  And, in any event, Singular did not include these references in its response to Interrogatory No. 24.  If Singular contends that Dr. Bates in fact disclosed these particular number formats to Google, Singular should be compelled to supplement its response to say so.

### B.      Interrogatory No. 26

Singular continues to maintain that the "premise" of Interrogatory No. 26 is incorrect, because "the FAC does not allege that the FAC Testing Source Code is an 'accurate model' of the TPU's float 32 multiplication operation."  Opp. at 7.  If Singular's position is that the Testing Source Code it relied upon and cited in its FAC is not an accurate model of the Accused Products, Singular should supplement its interrogatory response to that effect.

### C.      RFP No. 82 and Interrogatory No. 16

RFP No. 82 and Interrogatory No. 16 seek information about Singular's "S2," which was a successor to Singular's asserted practicing product the "S1."  The S2 is relevant to Google's damages defenses because it bears on Singular's efforts to commercialize the S1.  As Singular's former CEO testified, when Singular was unable to acquire customers for the S1, Singular began to develop the S2 as a ▮▮▮▮ chip that would ▮▮▮▮▮▮▮▮▮▮▮" and ▮▮▮▮▮ than the S1, and Singular marketed these features to encourage potential customers to invest in Singular.  Porto Declaration in Support of Google's Reply Mot. to Compel, Ex. 1 (Ozgen Depo. Transcript)

at 52:21-25.  Developing the S2 was meant to address ███████████ Singular was having in

convincing companies like ██████ to adopt Singular's technology.  In other words, the ██████

█████████████████████████████████.  *Id.* at 49:24-50:2.  As the testimony of

Singular's former CEO confirms, the S2 is directly relevant to the S1 and thus Singular's

argument that "the S2 is not indicative of the commercial success . . . of the S1" should be

rejected.  Opp. at 7.

      Furthermore, according to Mr. Ozgen's testimony, the S2 was meant to improve upon the

S1's ████████████████ which Singular has argued are features of the purported invention.

*See* FAC at ¶ 44.  Thus, information about the S2 is relevant to the veracity of Singular's claims

about the benefits of its patents and the S1, which Singular claims practice those patents.

Certainly, information about the S2 is "reasonably calculated to lead to discoverable

information."  *Licensed 2 Thrill, LLC v.Rakuten, Inc.*, No. 13-11257-DJC, 2015 WL 13376540,

at *1 (D. Mass. Oct. 13, 2015).  Rule 26's broad relevance standard "encompass[es] any matter

that bears on, or that reasonably could lead to other matters that could bear on, any issue that is

or may be in the case."  *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978)).  Information about the S2 clearly satisfies that standard here, and thus Singular should

be compelled to produce documents related to the S2 and provide a narrative description about

the S2 in response to Interrogatory No. 16.

      Singular does not seriously contest the S2's relevance.  Instead, Singular suggests that it

"is reluctant" to produce documents or discovery about the S2 because of confidentiality

concerns.  Opp. at 6.  In light of the Protective Order in this case, ECF No. 87, this is not a basis

to refuse discovery.  Just as Singular has already done for other documents about the S2 (and

Google has done for its own proprietary chips), Singular can designate materials about the S2 "Highly-Confidential AEO."

**D.      RFA No. 2**

Singular continues to maintain that RFA No. 2 "involves claim construction," though it refuses to identify any claim construction issue that impacts Singular's response to the request. Opp. at 9.  As Google has pointed out to Singular repeatedly, none of the issues the Court will decide in claim construction bear on whether "the Patents-in-Suit . . . encompass execution units using an 8-bit integer format," which is requested in RFA No. 2.  Porto Decl., Ex. O.  If Singular believes a claim construction issue will bear on its response to RFA No. 2, it should be able to identify which claim construction term(s) prevent it from answering.

Regardless, in justifying its refusal to respond to RFA No. 2, Singular has not addressed the Court's prior order in this case compelling Singular to respond to Google's Interrogatory No. 14, which asked Singular to provide its validity positions.  ECF No. 144 at 1.  As the Court explained in that context, there is no reason that Singular should not have to respond to discovery requests within the normal timeframe, despite Singular's concerns about the pending claim construction order.  *See id.* at 4 ("[T]his court finds reasonable Google's suggestion that Singular, if it believes its response hinges on a particular construction, can in its response offer arguments in the alternative, and if appropriate seek to amend its response at a later date.").  Furthermore, Judge Saylor has already advised the parties that he will not issue a claim construction ruling until later in the case.  *See* July 27, 2021 Hr'g Tr. 8:11-9:14.  But he has also ordered that fact discovery should be complete before a stay pending IPR proceedings goes into effect.  *Id.*  Accordingly, Singular should answer RFA No. 2 now.

## II.       CONCLUSION

For the foregoing reasons, Google respectfully requests that its motion to compel be granted.

Respectfully submitted,

Dated:  July 28, 2021

By:     */s/ Matthias Kamber*
Gregory F. Corbett (BBO #646394)
gregory.corbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nathan.speed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
elizabeth.dimarco@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Asim Bhansali (*pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111

Matthias Kamber (*pro hac vice*)
mkamber@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

*Attorneys for Defendant Google LLC*

1719173

## **CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

*/s/ Nathan R. Speed*
Nathan R. Speed

1719173