1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4      SINGULAR COMPUTING LLC,              )
                                            )
5                         Plaintiff         )  Civil Action
                                            )
6                                           )  No. 19-12551-FDS
       vs.                                  )
7                                           )
       GOOGLE LLC,                          )
8                         Defendant         )

9

10     BEFORE: CHIEF JUDGE F. DENNIS SAYLOR, IV

11

12
             STATUS CONFERENCE CONDUCTED BY VIDEO CONFERENCE
13

14

15           John Joseph Moakley United States Courthouse
                           1 Courthouse Way
16                         Boston, MA 02210

17

18                         July 12, 2021
                            4:34 p.m.
19

20

21

22

23              Valerie A. O'Hara, FCRR, RPR
                      Official Court Reporter
24       John Joseph Moakley United States Courthouse
                        1 Courthouse Way
25                      Boston, MA 02210
                  E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The Plaintiff:

3         Prince, Lobel, Tye, LLP, by PAUL J. HAYES, ESQ.,
     One International Place, Boston, Massachusetts 02110;

4
          Prince, Lobel, Tye, LLP, by KEVIN GANNON, ESQ.,
5    One International Place, Boston, Massachusetts 02110;

6         McCarter & English, LLP, by BRIAN M. SEEVE, ESQ., and
     THOMAS R. FULFORD, ESQ., 265 Franklin Street, Boston,
7    Massachusetts 02110;

8    For the Defendant:

9         Keker, Van Nest & Peters LLP, by MATTHIAS A. KAMBER, ESQ.,
     MICHELLE YBARRA, ATTORNEY, 633 Battery March Street,
10   San Francisco, California 94111.

11        Kwun, Bhansali, Lazarus LLP, by ASIM M. BHANSALI, ESQ.,
     555 Montgomery Street, Suite 750, San Francisco, California
12   94111;

13        Wolf, Greenfield & Sacks, P.C., by NATHAN R. SPEED, ESQ.,
     and ANANT SARASWAT, ESQ., 600 Atlantic Avenue, Boston,
14   Massachusetts 02210;

15

16

17

18

19

20

21

22

23

24

25

1                           PROCEEDINGS

2              THE CLERK:  Civil Action Number 19-12551, Singular

3      Computing vs. Google, and for the people that are Zoom,

4      please abide by Local Rule 83.3, which doesn't allow any

5      photography, recording or broadcasting of these

6      proceedings.

7              Will counsel please identify themselves for the

8      record.

9              MR. HAYES:  Paul Hayes for the plaintiff.

04:34PM 10             MR. GANNON:  Kevin Gannon for the plaintiff.

11             THE COURT:  Good afternoon.

12             MR. KAMBER:  And Matthias Kamber for the

13      defendant, Google.

14             THE COURT:  All right.  Good afternoon.

15             MR. BHANSALI:  And Asim Bhansali with the

16      defendant.

17             MR. SEEVE:  Brian Seeve for the plaintiff,

18      Singular.

19             THE COURT:  Good afternoon.

04:34PM 20             MS. YBARRA:  Michelle Ybarra for defendant,

21      Google.

22             THE COURT:  Good afternoon.

23             MR. BHANSALI:  Asim Bhansali for Google.

24             THE COURT:  Good afternoon.  This is a status

25      conference in this case.  Did I miss anyone?

1          MR. SPEED:  I was going to round it off,

2     Nathan Speed for Google.  Good afternoon.

3          THE COURT:  This is a status conference in this

4     case.  I understand there was a hearing on outstanding

5     discovery motions with the magistrate judge at the end of

6     June.  Where are we otherwise?

7          And I have a question which may be a dumb

8     question, I don't know, but is there anything in the

9     Supreme Court's decision in I keep wanting to call it

04:35PM 10     Anthrax, *Arthrex, Arthrex* that affects what we are doing

11     here in any way?  I guess I might as well start with that.

12     Mr. Hayes.

13          MR. HAYES:  Well, not to my knowledge, Judge, but

14     I may be ignorant of that decision.  No, maybe, I think I

15     am.

16          THE COURT:  This is the recent one about the PTAB.

17          MR. HAYES:  Right.  I think it's just basically

18     decided on the PTAB.  My understanding, it cited something

19     like -- it didn't throw the whole thing out, so as a result

04:36PM 20     of not throwing it out, I don't think it sort of affects us

21     in any way at this point in time.

22          THE COURT:  Okay, that's what I thought.  I

23     thought I better check.

24          MR. HAYES:  I think so.  I apologize, I should be

25     more up to date on that.

1          MR. KAMBER:  I think I would agree with Mr. Hayes,

2     the *Arthrex* decision doesn't really have any bearing on the

3     status of the current IPR petitions.

4          THE COURT:  All right.  With that, I understand we

5     do have, I think, all the discovery motions under

6     advisement, and where do things stand generally in that

7     regard in terms of completing discovery, and how much

8     time -- well, I guess you don't know until the decisions

9     come out, but, Mr. Hayes, what's your take on where we are?

04:36PM 10          MR. HAYES:  My take is as follows, Judge:  One is

11     our position is that there should be no extension of any

12     discovery, which ends July 23rd.

13          We, as the plaintiff, have noticed sort of

14     everybody at interest, and they're in the process of being

15     ready come July 23rd to end it, and my position is that to

16     the extent Google wants to extend it, they've had 18

17     months and maybe taken one deposition to date in the last

18     18 months, et cetera, so that's -- so to put it directly to

19     your question from the plaintiff's point of view, by

04:37PM 20     July 23rd, we will have, assuming everybody is deposed that

21     are noticed, we'll be done and ready, period.

22          Now, the only other point that I might make for my

23     Brother to comment on is we think, because you asked this

24     question last time, and we would suggest that a Markman

25     Hearing decision would be very beneficial in this case.

1    It's all briefed, it's argued, et cetera, and, frankly, we

2    don't really need to redo it in another year or whatever,

3    the IPR decision, and I think that the decision on the

4    Markman Hearing is doing the claims and doing the 112 issue

5    would facilitate settlement if there is going to be one,

6    that certainly would be a positive effect.

7           Most importantly, we don't want to have, you know,

8    them to come back and now say in nine months and say, oh,

9    we got to do another Markman Hearing because of blah, blah,

04:39PM 10    blah and delay it any longer.  I think it's all been

11    briefed, et cetera, and we think a decision would be

12    appropriate.

13          With respect to the discovery issues, they were

14    before the magistrate today.  These obviously are decided

15    and/or given instructions as to what to do, and, frankly,

16    the other issue I think before this court now to be sort of

17    discussed is that the defendant is sort of complaining

18    about our production of Dr. Bates for his deposition of a

19    two-day thing, et cetera, and a 30(b)(6) thing, which is

04:40PM 20    your profits relative to the scheduling, but other than

21    that, that's sort of where we are.

22          Now, with respect to the IPR, what you should know

23    is that in the IPR, pursuant to what was discussed the last

24    time with the Court, we have requested a certain amount of

25    documents per usual, though they've refused to produce

1    anything, and they've said with respect to the documents

2    that they will produce an IPR, and they'll only produce

3    them if we sign a protective order that everybody in the

4    IPR can't amend the claims, and that's typically amending

5    the claims is part of the whole business of the IPR, so the

6    bottom line is that there's an expert in the IPR.

7         We tried to notice his deposition.  He's only

8    available until after discovery is over, so the cooperation

9    that was sort of generously offered at the last hearing is

04:41PM 10   nil, but I understand that's not your province as the

11   speech right now, but just to tip you off that we'll have

12   probably have to be filing soon if they won't give us the

13   documents and motioning the Court to allow them to give the

14   documents, et cetera, but that's our position in the whole

15   scheme of things, Judge, and I apologize for not having a

16   suit on, your Honor.  I didn't know it was a Zoom.

17        THE COURT:  That's all right, you're so small on

18   your camera, you shouldn't have confessed to it.

19        MR. HAYES:  All the better, right?

04:41PM 20        THE COURT:  Mr. Kamber.

21        MR. KAMBER:  Thank you, Judge Saylor.  A few

22   things.  So in terms of the status of the depositions,

23   Mr. Hayes is right, we are all on track to complete all the

24   depositions for both sides by July 23rd.  The parties have

25   an agreed calendar with respect to everybody.

1          I think there is one issue outstanding with

2     respect to a witness from Google, Dr. Loudan.  He is

3     available.  We provided a date for his availability this

4     week on the 15th.  I don't know where that stands from

5     Singular's perspective if they intend to proceed on the

6     15th or they want to take that later, which they at one

7     point indicated, but we are otherwise on track to complete

8     all depositions by the 23rd, so by a week from this coming

9     Friday.

04:42PM 10          There is one issue -- well, actually there are two

11     related issues.  One is that's for the 16 depositions that

12     both sides have agreed to.  We have, however, 24 deposition

13     notices, so we've scheduled 16, the 16 that they originally

14     wanted us to schedule as recently as last week.  We got

15     additional deposition notices.  Those we haven't scheduled.

16     They just came in, and they are above and beyond what the

17     parties had agreed to, so we had flagged this issue as

18     early as June 22nd noting that their notices were above the

19     count for the allowable depositions.

04:43PM 20          It sounds to me from what Mr. Hayes said before

21     that we should just get these 16 done, and we'll get them

22     done by July 23rd, and we don't need to be scheduling the

23     additional ones, but I put that to Singular.

24          The other issue is the 30(b)(6) deposition.

25     Mr. Hayes referenced this.  We talked about this briefly

1   with Judge Cabell earlier today, and he thought we should

2   discuss it with you.  As part of the joint case management

3   statement, we agreed that the eight-hour limit for

4   Dr. Bates complies to only testimony he gives in a personal

5   capacity and not testimony he may give as a designated

6   witness under FRCP 30(b)(6).  That's in ECF Number 54, I

7   believe.

8           We are scheduled for two different four-hour

9   sessions with Dr. Bates, their witness, as a fact witness

04:44PM 10   next week.  We've been asking now for two or three weeks

11   for their designation of their corporate witness.  We don't

12   have it yet.  We do have their objections.  They've said

13   they're willing to put up people on their topics, but we

14   don't have a designee and we don't have a date yet.

15           We need one.  Judge Cabell thought we probably

16   should have one, too.  I don't know if there's an issue

17   there, but clearly it was contemplated that it would be

18   30(b)(6) above and beyond the fact deposition testimony of

19   Dr. Bates back in July of 2020 when we agreed to this.

04:45PM 20           THE COURT:  Okay.

21           MR. KAMBER:  So I'm happy to pause there, your

22   Honor.  There are two or three other issues.

23           THE COURT:  Why don't we take these up.  Let's

24   start with the question of whether we're putting aside the

25   30(b)(6) designation, whether we're going to have 16 or 24.

1      Mr. Hayes.

2            MR. HAYES:  Yes, your Honor.  On that issue, we're

3      agreeable to 16 as it is.  The only reason that we have now

4      more than 16 before the end of the month is that my Brother

5      sort of expanded their identification of people

6      knowledgeable, and we kicked out in the 16 originally the

7      people we believed of anybody who has knowledge that would

8      end up showing up at trial.

9            Now, of these other 8 that makes it up to 24,

04:46PM 10     that's the only reason we did them is that if my Brother's

11     agreeable, they're not going to show up for trial out of

12     the blue, then, fine, I don't have to depose anybody that's

13     not going to be, you know, at the hearing, at the trial, so

14     I think my Brother and I can probably work that out, and I

15     would suspect that everybody in the 16 that were noticed

16     are indeed the people coming to trial.

17           If the others aren't, well, then, I'll tell you

18     what we could do is we could work a deal, we'll cut 2 of

19     the ones of the 16, I have to take the people at trial,

04:46PM 20     they've noticed 35 people, and we have 14 depositions or 16

21     depositions, so I don't want to go beyond the July 23rd

22     date, but, you know, obviously, I'll have the opportunity

23     or we could just say I'll take the 16 that we noticed, and

24     if any others end up showing up at trial later, we'll take

25     them before the trial.  It would be a year from now

1    anyways.

2              MR. KAMBER:  Judge --

3              MR. HAYES:  Whatever my Brother wants to work out

4    would be fine with me.

5              THE COURT:  All right.  Mr. Kamber, do you want to

6    respond to that?

7              MR. KAMBER:  Yes, just briefly, your Honor.  It

8    sounds like to me there's no issue with respect to the 16.

9    I'll note one thing, which I think is not quite right.  The

04:47PM 10   additional notices were not in response to our amending our

11   disclosures.  There is one witness that they've noticed

12   with these additional extra ones that is on our initial

13   disclosures, and he has been for a long time.  He's an

14   engineer.  Basically his boss and his boss's boss will be

15   deposed this week, so I understand why they didn't notice

16   his deposition.

17             Everybody else are not people we identified on our

18   initial disclosures, so I don't think that's quite correct

19   what Mr. Hayes is saying.

04:48PM 20             THE COURT:  All right.  Let me turn to the

21   30(b)(6) question.  Mr. Hayes.

22             MR. HAYES:  On the 30(b)(6), your Honor, here's

23   the issue is that they've now got Bates for eight hours.

24   We've not deposed anybody in this whole case for four hours

25   that they basically put hard limits on.

1          Now, I agree we agreed to produce Bates for eight

2     hours, and we're going to.  They again now want another

3     eight hours with him for this 30(b)(6).  Obviously, he's

4     the only one in the corporation.  He's the chief cook and

5     bottle washer, and so my position is you can depose him for

6     eight hours and then he's going to be noticed as the

7     30(b)(6) chief cook and bottle washer, and if there's

8     anything else, fine, I don't want him to be deposed 16

9     hours of deposition just because there's a 30(b)(6) notice.

04:49PM 10          If there's anything that they want that they can't

11     get in the eight hours, fine, I mean, that's fine, but I

12     don't want to make it open-ended, so I'm thinking take the

13     deposition for him, you've got eight hours, and we'll

14     designate him as 30(b)(6) on everything, and if there's

15     anything left over, who knows what it might be, we'll give

16     you a couple of hours here and there, but, you know, I

17     don't want to expose him for another eight hours.  The

18     guy's 65 years old.

19          THE COURT:  Be careful, I'm 66.

04:49PM 20          MR. HAYES:  Your Honor, I'm 75.  I'm still doing

21     this.  Hopefully you're not at my age, but, in any event,

22     so that's our fault.

23          THE COURT:  Okay.  Let me offer some general

24     thoughts, and then I'll tell you where I come out on this.

25     The number of depositions, the number of hours per

1  deposition, the date of July 23rd, these are all arbitrary,

2  okay.  They may or may not fit, and in a perfect world, no

3  one would take any discovery that they don't need, and, you

4  know, it would fit within some reasonable period of time.

5       It's difficult for me without spending a whole lot

6  of time to figure out what is reasonable and what is not,

7  but in no particular order, first, it is from my

8  standpoint, it is not the end of the world if some, you

9  know, one deposition or a small handful of depositions

04:50PM 10  extends beyond July 23rd considering where we are in the

11  case, okay, and in terms of whether there will be any

12  addition to the schedule of '16, I'll leave it up to you

13  all, and I'll give you the freedom to agree that you can

14  take additional ones, let's say through July 31st, anyway,

15  without further approval from me.

16       If you agree that, you know, two of them are

17  critical or one of them is critical and that's the only way

18  you can fit it in, I'm indifferent, Point Number 1.

19       Point Number 2, it's difficult in a situation like

04:51PM 20  this where there is one individual who is being deposed as

21  both an individual and as a 30(b)(6) representative.  It is

22  different testimony somewhat.  The 30(b)(6) testimony is

23  binding in a way that the individual testimony is not and

24  so on.

25       And, you know, the presumptive seven-hour limit or

1   eight-hour limit in this case is completely arbitrary.  I

2   am going to permit an additional four hours on top of his

3   eight hours not to be done -- let's say I don't want him to

4   have a longer than eight-hour deposition day, let's put it

5   that way, but it seems to me that a 30(b)(6) deposition is

6   something different from an individual deposition.

7       I can't say whether that requires 15 more minutes

8   or 15 more hours.  I'm going to arbitrarily say it's four

9   hours because that feels about right to me, but that's

04:52PM 10  arbitrary.  If I'm going to have to make a decision, I'm

11  going to make it.

12      Now, having said that, you know, I've been at this

13  for 40 some years.  I've taken a lot of depositions, sat

14  through a lot of depositions, and now I read other people's

15  deposition transcripts.  I will be exceedingly unhappy if I

16  read deposition transcripts at some point and it feels to

17  me that someone is wasting time, and it's tantastic to me

18  how much time lawyers waste in depositions, how they

19  squabble and ask convoluted questions or ask questions

04:53PM 20  about trivial topics and so on.

21      I am being indulgent a little bit here.  I'm

22  allowing 12 hours of deposition of a single witness.  It

23  doesn't mean you need to take it, it doesn't mean you need

24  to go right up to the wire just because you can, that you

25  can ask questions that take an entire page of transcript.

1          The point of this exercise is discovery, and

2     because the point of it is discovery, I would expect to see

3     a number of open-ended questions beginning with the letter

4     W because that's what I'm trying to permit here, and so I'm

5     not going to police this in realtime, but I'm just offering

6     the observation that I expect some reasonable degree of

7     conciseness, precision, getting to the point, however you

8     want to frame it, and asking clear questions that are

9     intended to provide discovery, not simply to harass the

04:54PM 10     witness or walk through endless piles of e-mails, which is

11     another thing that I see all the time.

12          So, with that general prefatory language, I will

13     permit without further motion practice an additional four

14     hours of 30(b)(6) deposition testimony provided that he is

15     not deposed for more than eight hours on any single day.

16          All right.  Mr. Kamber, you said you had another

17     couple points.

18          MR. KAMBER:  I do, your Honor.  One is related to

19     depositions as well, and this is just something that was

04:55PM 20     perhaps an unintended consequence of where we are now,

21     which is that the Court intends to enter a stay after the

22     fact discovery is complete.  That is on damages related

23     discovery.

24          We have a deposition happening on Friday of

25     Mr. Patil and a deposition next week on Tuesday of a

1    30(b)(6) witness on other financial topics, and then -- oh,

2    and on Friday, we also have a licensing witness.

3         We understand that both Singular and the Court

4    wants to get that discovery done and kind of in the can.

5    We just wanted to flag that if we're go through the effort

6    of doing this now, we don't want to be in a position where

7    a year or two from now if and when the stay is lifted and

8    we're back before the Court that we have to redo all of

9    this damages discovery.

04:56PM 10        We've been working very hard, and so has Singular,

11   in terms of getting these documents produced and getting

12   the witnesses ready, and we want to make sure that if we're

13   going to go through this effort to do all the damages

14   topics now that those aren't things that we're going to

15   then try to reopen and retake if and when we need to.

16        THE COURT:  Okay.  I can't answer that question in

17   the abstract.  As you know, parties have an obligation to

18   supplement their discovery responses, and so ongoing

19   damages, particularly if it's an arithmetic calculation or

04:56PM 20   whatever, need to be supplemented, but even if they're not,

21   you know, if it's based on sales volume projections or

22   something, you know, whatever it is, if the responses

23   change, the responses will need to be supplemented, and

24   supplementation sometimes means that in fairness further

25   discovery is required, so it depends.

1    You asked for the stay.  I'm granting it, you

2   know, provided fact discovery is completed first, and one

3   of the consequences of that is there may be a delay, and

4   with delay, things change sometimes, and I'll just take it

5   up in due course.  If we need to reopen discovery for some

6   specific purposes, that's what we'll do.

7    MR. KAMBER:  Understood, and that's all that we're

8   saying, and we agree in terms of supplementation on

9   documents, that's fully contemplated.  We're hoping that

04:57PM 10   there will have to be a good cause shown if and when anyone

11   wants to try to reopen depos, and I think that would apply

12   to both sides, of course.

13    THE COURT:  And it isn't, of course, just, you

14   know, that documents need to be supplemented, discovery

15   responses need to be supplemented, and that may go for

16   expert reports as well depending on where we are.  That's

17   all.

18    MR. KAMBER:  Then on this issue, I guess, maybe

19   just counsel will just get back to me about the scheduling

04:58PM 20   of the Dr. Laudon deposition at some point if they agree.

21    MR. HAYES:  Yes, we'll let you know.

22    MR. KAMBER:  I'm sorry, your Honor, one other

23   thing.  We did, I mentioned that we had an follow discovery

24   conference with Judge Cabell earlier today.  That was

25   helpful.  I think all the other motions have been dealt

1    with and addressed.  He did encourage us because we weren't

2    able to resolve some things that we had previously met and

3    conferred about and now we're also looking to move on.

4         We will probably have a motion on file on

5    Thursday, and Judge Cabell will deal with those issues I

6    think as quickly as he can, but just to let the Court know

7    that there still will be at least one discovery motion

8    filed in the case.

9         THE COURT:  And I should say implicit in all of

04:59PM 10   this is that there may be or some party may think new

11   discovery is required based on the magistrate judge's

12   ruling.  There could be an appeal to me.  All of this is a

13   natural consequence of setting a deadline, and we'll see

14   how this plays out.

15        MR. KAMBER:  Right, understood.  There's one issue

16   that Mr. Saraswat is on as well that relates to

17   unfortunately there was an injury.  Our code review expert

18   suffered an injury, and it sort of is influencing how and

19   when we might need to be able to review code, but I'll let

04:59PM 20   him address the particulars.

21        THE COURT:  Okay.

22        MR. SARASWAT:  Thank you, your Honor, and I'm

23   Anant Saraswat with Wolf, Greenfield for the defendant.

24   So, the issue, your Honor, as Mr. Kamber mentioned, is that

25   our source code expert, Dr. Walker, he unfortunately had an

1    injury.  He's based in the Bay Area in California.

2        Singular is currently hosting its source code here

3    in Boston at a third-party vendor called BDO.  We had

4    planned to have Dr. Walker travel here a few weeks ago to

5    review Singular's source code.  He suffered a fall and had

6    a head injury, and as a result of that injury, his doctors

7    have told him that it's not safe for him to travel to

8    Boston.

9        At this time we don't know when he'd be cleared

05:00PM 10    for travel.  I spoke with him this morning, and he says it

11    definitely won't be prior to July 23rd.  It may not be for

12    a week or two after that, but he has been cleared by his

13    doctors to work.  He doesn't have to travel, he can stay in

14    the Bay Area, so because of this, we had asked Singular if

15    they would agree to host their source code computer in the

16    San Francisco area where we understand their vendor has an

17    office somewhere there so Dr. Walker can review the code

18    there next week.

19        We've agreed that we'll pay any setup and

05:00PM 20    transportation costs to get the computer there and any

21    difference in the cost of hosting the computer between

22    hosting it in Boston vs. San Francisco, and we think that

23    we can come to an agreement.  We hope we can.

24        The sticking point thus far, your Honor, has been

25    what happens if Dr. Walker's medical condition changes and

1    for some reason he's not able to complete his review by the

2    23rd.

3         At this time, we have no reason to believe he

4    won't be able to do it, and, as I said, I spoke to him this

5    morning.  He thinks he said he's feeling fine, but what

6    Singular has said is that they will only agree to host the

7    computer in San Francisco if Google waives its right to ask

8    for an extension of the source code review time in the

9    event that Dr. Walker's condition changes and worsens, and

05:01PM 10   we don't really think we could agree to waive that right

11   just because if his condition unexpectedly worsens, he

12   won't be able to complete his review, so all we're asking

13   at this point, your Honor, is just that Singular host its

14   source code computer in the San Francisco area with Google

15   agreeing to pay those costs that I mentioned but to leave

16   us the option to ask the Court for an extension to let him

17   finish his review if it becomes medically necessary, and

18   again, your Honor, at this time, we have no reason to

19   believe that it will, we just want to make sure we have

05:02PM 20   that option in case some other unexpected medical issue

21   comes up.

22           THE COURT:  Mr. Hayes.

23           MR. HAYES:  That's fine.

24           THE COURT:  Okay.

25           MR. HAYES:  I have no reason to dispute anything

1    he said.

2         THE COURT:  Okay.  Let's leave it open, and,

3    again, from my standpoint, if because of his injury,

4    recovery or whatever, if this gets done on July 27th

5    instead of July 23rd, I don't think that makes a practical

6    difference here.

7         And I think what I would like to do, just to make

8    sure we stay on track, is to reconvene in a couple of weeks

9    and just kind of see what is still dangling, if anything,

05:03PM 10   and talk about how we're getting all those things resolved.

11         I was going to suggest two weeks from today.

12   Ironically, I have jury duty in state court.  State courts

13   have opened up.  I was hoping that they would drag their

14   feet a little bit, but they didn't.  Assuming I don't get

15   impaneled, I'm available on the 27th.  How about the 27th

16   at 4:00 eastern time?

17         MR. HAYES:  That's fine with the plaintiff, Judge.

18   You name it, we'll be there.

19         MR. KAMBER:  We can confirm, but I think that

05:03PM 20   would be fine, your Honor, July 27th at 4:00 eastern time,

21   correct?

22         THE COURT:  Yes.

23         MR. KAMBER:  That would be fine, thank you.

24         THE COURT:  Just another status conference.  I'm

25   not asking to have lots of things dangling, but I would

1    like to see whether anything is and have a road map for,

2    you know, resolving it going forward.

3            MR. HAYES:  Judge, only one question, if I may.

4            THE COURT:  I want you to wear a suit, Mr. Hayes.

5            MR. HAYES:  Huh?

6            THE COURT:  I want you to wear a suit.

7            MR. HAYES:  I will definitely if I know it's a

8    Zoom.  Last time we didn't have a Zoom, and I do have a

9    suit, but the question I have, Judge, is do you think we're

05:04PM 10   going to get a decision on the Markman or what?

11           THE COURT:  Well, it's not clear to me whether

12   that's sensible or not in light of where we are.  I guess

13   I'm still thinking about that.  I'll make a final decision

14   in two weeks.  It's not clear to me that's a sensible thing

15   to do.

16           MR. HAYES:  Thank you, Judge.

17           THE COURT:  I have one other thing.  I think there

18   is a motion pending at least on the Docket Number 150,

19   which was a request back in March for a status conference,

05:04PM 20   and I think we're kind of well beyond that.  I'm going to

21   ask the clerk to terminate that.  I think all the other

22   pending motions are discovery.

23           MR. KAMBER:  That's correct, your Honor.  I

24   actually think you did grant our request.  Maybe I'm

25   incorrect, but I think it can be terminated.

1          THE COURT:  Whatever.  We've had conferences both

2     in front of me and the magistrate judge.

3          MR. KAMBER:  Indeed.

4          THE COURT:  Okay.  All right.  So I appreciate

5     your cooperation and patience.  Let's see what the next two

6     weeks bring, and we'll reconvene on July 27th.  If I am

7     impaneled on a jury, the clerk will get back to you and

8     we'll figure out some other plan.

9          MR. SEEVE:  Your Honor, this is Brian Seeve.  I

05:05PM 10  just wanted to raise one more question.

11          THE COURT:  Yes.

12          MR. SEEVE:  Regarding the production of source

13     code, Google has asked if we produce source code in

14     San Francisco, we'd just ask that that be reciprocal, that

15     they produce their source code in Boston, which they have

16     refused to do, and regarding source code, that's the only

17     other request that we have.  We're happy to produce the

18     source code in San Francisco to accommodate their expert.

19     We just hope that's reciprocal.

05:06PM 20          THE COURT:  Why don't you renew that discussion in

21     light of this conference and see whether you can come to

22     agreement on that.  Okay.  I'm assuming, I don't know how

23     this works, I don't know why it has to be done physically

24     at some location as opposed to doing it remotely.  You

25     don't need to explain it to me, but it seems to me that it

1   ought to work the same for both parties, but I'll leave

2   that up to you to discuss.

3           MR. SEEVE:  Thank you, your Honor.

4           THE COURT:  That would include paying for it,

5   obviously.  Thanks, everyone, and we'll talk to you in

6   about two weeks.

7           MR. KAMBER:  Thank you, your Honor.

8           THE COURT:  Thank you.

9           (Whereupon, the hearing was adjourned at

10  5:06 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS ) ss.

5    CITY OF BOSTON )

6

7            I do hereby certify that the foregoing transcript,

8    Pages 1 through 24 inclusive, was recorded by me

9    stenographically at the time and place aforesaid in Civil

10   Action No. 19-12551-FDS, SINGULAR COMPUTING LLC vs. GOOGLE LLC

11   and thereafter by me reduced to typewriting and is a true and

12   accurate record of the proceedings.

13            Dated July 28, 2021.

14

15                    s/s Valerie A. O'Hara

16            _____

17                    VALERIE A. O'HARA

18                    OFFICIAL COURT REPORTER

19

20

21

22

23

24

25