UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 1:19-cv-12551-FDS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>MOTION FOR PROTECTIVE ORDER</u>**

Plaintiff, Singular Computing LLC ("Singular"), respectfully submits this brief in opposition to the Motion of defendant, Google LLC ("Google"), for a Protective Order (Dkt. No. 250). For the reasons set forth below, Google's motion ("Motion") should be denied.

## I. BACKGROUND

According to Google, the present Motion is the result of "fundamental disagreements about what occurred at the June 30 hearing." *See* Motion at 4. At that hearing, Google was directed to respond to Singular's damages-related discovery requests. The Motion is simply a continuation of Google's longstanding efforts to stymie Singular's attempts to obtain discovery regarding the admittedly enormous (billions of dollars) financial benefits Google has received by installing the accused TPU devices in all of Google's data centers in the United States.

## II. ARGUMENT

A. <u>RULE 30(b)(6) DEPOSITIONS</u>

As Magistrate Judge Cabell heard during the June 30, 2021 discovery hearing at which this issue was addressed, Singular has been attempting to secure this discovery for months:

> Singular has served in many cases almost a year ago production requests, interrogatories, and a notice of 30(b)(6) deposition to get at this information. How valuable is Google's use of the invention? What are its cost savings? This is a well-accepted methodology for looking at a royalty, and we can discuss in detail every one of these requests but they're basic information.
>
> The bottom line though is, Your Honor, we're three weeks away from the close of fact discovery and despite having served many of these requests or topics nine months ago in the case of the deposition topics, eleven months ago in the case of the request for production, three months in the case of interrogatories, we still don't have responses. We don't have a single witness who has been designated on a single topic, Your Honor.

*See* Ex. A, p. 8.[1]

---

[1] Unless otherwise noted, all exhibits referred to herein are attached to the accompanying Declaration of Kevin Gannon.

1

At that Hearing, counsel for Singular believed the matter had been resolved because counsel for Google represented that there was no objection to Singular's damages discovery requests:

> THE COURT:  All right.  Mr. Kamber, in principle, let's stay away from the specifics in terms of the scope of material that might be sought and whether that might be considered onerous or the like, in principle do you object to providing discovery that would allow them to understand how Google assesses the value of this product as used in the various things Google does?
>
> ATTORNEY KAMBER:  No, and we haven't limited discovery in that way, Your Honor.

*See id.* at p. 9.

After further argument, the Court directed Google to respond to Singular's written damages discovery and provide a knowledgeable Rule 30(b)(6) witness:

> THE COURT:
>
> So I would say if it exists in document form and it's been requested through a request for production of documents, it should be answered that way as well as an interrogatory and as well if it's going to be a topic for a 30(b)(6) designee I think that's fair game.  So Google should proceed accordingly in that regard.

*Id.* at p. 26.

> THE COURT:  Okay.  So, Mr. Ercolini, then what still remains with respect to this?
>
> ATTORNEY ERCOLINI:  The incremental revenues from advertising and profits on those as well, that have actually done these studies.  We've seen snippets of documents that have looked at profitability.  They've looked at incremental revenues attributable to the accused products.
>
> So if that analysis has been done, it really should be produced for as many services as they can.  We don't need to get all of the raw data.  We don't need them to open the books.  But if they have done these analyses, we need to see them because they are a large measure o the use that Google puts the TPUs to.
>
> THE COURT:  Mr. Kamber, I'll give you a chance to respond.  I agree with Mr. Ercolini that if the data exists and in particular if there is data that is so, so, you know, finally [*sic*] honed that it actually allows one to determine how revenues were affected by the use of this product, I think that's core to what we're talking

about here. And so if it does exist, it seems to me that's fair game and should be produced.
Do you have an issue with that?

ATTORNEY KAMBER: I don't have an issue. Hopefully, you can hear me Your Honor.

THE COURT: I can hear you fine.

ATTORNEY KAMBER: I don't have an issue in terms of whether that analysis has been done or that – I'm not sure what analyses Mr. Ercolini is referring to. Again, I'm aware of some efforts to try to qualify/quasi-quantify these benefits or these impacts, and for my commitment earlier that is something for which we anticipate providing a witness and having him testify.

THE COURT: Okay. So if that information exists, I am ordering that it be included both in document for. So these analyses –

ATTORNY KAMBER: Right, of course.

THE COURT: -- please produce it and as such the witness should be prepared to comment on them during any deposition.

ATTORNEY KAMBER: Yes, both. I didn't mean to suggest that it was only one of those, You Honor.

*Id.* at pp. 26-28.

Google should comply with these directions of the Court instead if attempting to obtain a Protective Order.

B.   SINGULAR'S MOTION TO COMPEL DOCUMENT REQUESTS

The next issue addressed at the June 30 hearing was Singular's Motion to Compel (Dkt. Nos. 228/230). *See* Ex. A, p. 30. That motion requested the Court to compel Google to produce all documents responsive to Singular's document requests numbered 103-108, 110-113 and 115. *See* Dkt. No. 228 at p. 2. As set forth below, the Court granted the motion.

These requests were specifically tailored to certain categories of documents relating to infringement and damages

3

**REQUEST FOR PRODUCTION NO. 103:**

The final versions of the VPU micro-architecture specification for TPU v2 and TPU v3.

**REQUEST FOR PRODUCTION NO. 104:**

The final versions of the MXU micro-architecture specification for TPU v2 and TPU v3.

**REQUEST FOR PRODUCTION NO. 105:**

The final versions of the TensorCore chip architecture specification for TPU v2 and TPU v3.

**REQUEST FOR PRODUCTION NO. 106:**

The current versions of the VPU micro-architecture specification, the MXU micro-architecture specification, and the TensorCore chip architecture specification for any future TPU products currently in development . . . .

**REQUEST FOR PRODUCTION NO. 107:**

All documents available at go/datacenter-ml-metrics.

**REQUEST FOR PRODUTION NO. 108:**

All documents available at go/perf-metric-tpus.

**REQUEST FOR PRODUCTION NO. 110:**

All documents available at go/pfc-mxu-spec.

**REQUEST FOR PRODUCTION NO. 111:**

All documents available at go/pfc-vpu-spec.

**REQUEST FOR PRODUCTION NO. 112:**

All documents available at go/pfc-tcs-spec.

**REQUEST FOR PRODUCTION NO. 113:**

Any figure or diagram that is referenced or mentioned by citation, hyperlink, or otherwise in any of the documents produced responsive to Requests Nos. [103-112] 1-10.

**REQUEST FOR PRODUCTION NO. 115:**

All documents referenced or mentioned by citation, hyperlink, or otherwise in any of the following documents:

   a) GOOG-SING-00002124
   b) GOOG-SING-00070606
   c) GOOG-SING-00026944
   d) GOOG-SING-00000221
   e) GOOG-SING-00004490
   f) GOOG-SING-00047550
   g) GOOG-SING-00027474
   h) GOOG-SING-00000387
   i) GOOG-SING-00027477
   j) GOOG-SING-00030789
   k) GOOG-SING-00041189

*See* Dkt. No. 230 at 1-5.

At the hearing, the Court stated that the requests are reasonable and noted that Google had no objection:

[THE COURT:]

I think these requests are reasonable requests and I understand, Mr. Kamber you're saying you don't have any objection to turning over what you've got.

*See* Ex. A at p. 41.

The Court thereafter directly asked counsel for Google if they objected to anything being requested:

[THECOURT:]  Am I correct that you are not objecting to anything that is being sought?

ATTORNEY KAMBER:  That's correct.  We are not objecting.

*Id.* at p. 42.

Counsel for Google then attempted to make "two points of clarification." *Id.* at pp. 42-43. First, counsel for Google sought to take a narrow view and have the Court agree to limit the cost data to just the "average cost to build a data center" to the exclusion of a broader range of

5

documents that would include "the cost of designing and the cost of operating a data center." The Court rejected Google argument and directed Google to produce the broader range of cost documents, including design, construction and operation costs:

> ATTORNEY KAMBER: Your Honor, I know it's four o'clock right now. Can I just ask – can I just make two points of clarification in terms of –
>
> THE COURT: Yes.
>
> ATTORNEY KAMBER: -- what am I doing.
>
> In term of the data center costs, what we are going to do, if my understanding is correct just for the record, is to get the average cost to build a data center.
>
> I say that because they also asked about the cost of designing and operating a data center. I just want to be very specific in terms of what I'm trying to get in terms of information for the order side.
>
> THE COURT: To me, to me, that's all part of the costs of a data center. So there is – I mean, money that is going to have to be spent to have a functioning data center is going to include design, construction and operation costs. So this is just me. I would take the broad view, not the narrow view.

*Id.* at p. 42-43.

Second, counsel for Google attempted to have the Court limit the location of Google's search for responsive documents to the "TPU team." The Court also rejected that purported "clarification":

> ATTORNEY KAMBER: I think what [counsel for Singular] is saying is we need to ask everybody else at Google whether they've also done the analysis, which is exactly why I am trying to clarify it. Because it's sort of we're obligated to do a reasonably diligent search.
>
> THE COURT: Right.
>
> ATTORNEY KAMBER: I know where I think I should look, but what Mr. Ercolini is saying look everywhere else too and I don't think we can practically do that.
>
> THE COURT: Well, right. I think you're right in that your obligation is to do a reasonably diligent search. Obviously if you have a basis to believe you might be

> able to find information in a certain area, yeah, you have an obligation to search that area. But beyond that, yes, I guess I tend to agree with you.
>
> ATTORNEY ERCOLINI: Mr. Kamber just said the TPU team and it sounds like once we stop with the TPU team and we don't find it, we're going to stop looking. So the reasonably diligent search is do a reasonably diligent search and don't limit it to the TPU team, what a reasonably diligent search is.
>
> THE COURT: Okay. Fair enough. It's not limited to the team. It's limited to whatever your reasonably diligent search would suggest. That's how broad it needs to be. Wherever that reasonably diligent search leads you and it may lead you to somebody beyond the team who may have had some involvement who may be able to have – be able to provide information bearing on this.

*Id.* at pp. 45-46.

Google should be directed to respond fully to these requests and comply fully with the Court's directions.

C.   GOOGLE'S POST-HEARING CONDUCT

Following the June 30 hearing, Singular initially believed that Google would proceed as ordered by the Court. For example, in an email on July 2, counsel for Google (Matthias Kamber) wrote a confirmatory email to counsel for Singular (Kevin Gannon) stating as follows:

> Attached please find a letter identifying Google's corporate designees.[2] Per your request, we can confirm that Mr. Shafiei's preparation will include discussions with Mr. Mabey, and that Google is supplementing its responses to interrogatories and document productions in accordance with the Court's guidance [*sic*] at the hearing. This includes the linked documents requested by way of the motion that Mr. Seeve argued before Google could file its opposition brief; as noted at the hearing, we were targeting to get that production out today and are on track to do so. Other supplemental productions, including of the financial discussed at the hearing, are also in progress and will be going out next week.

*See* Ex. C.

Alas, Google failed to deliver on these representations. Instead, it unleashed a torrent of emails seeking to justify its failure to comply with the Court's orders at the June 30, hearing. *See*

---

[2] The letter identifying Google's corporate designees is submitted as Exhibit B.

7

Dkt. No. 251-5 (Google Ex. E). Ultimately, the day before the deposition of Google's designee (Mr. Shafiei), counsel for Google stated that the witness would be testifying in response to only several of the noticed topics. *See id.* at p. 2 of 9 (identifying topics 10-13, 18, 20-25, 30 and 36). Viewing this as better than nothing in view of the imminent deadline for fact discovery, Singular attempted to proceed with the Rule 30(b)(6) the next day (July 20).

Singular's hopes of questioning Mr. Shafiei were soon thwarted because counsel for Google improperly refused to allow the deposition to proceed. As soon as Mr. Shafiei was sworn in, counsel for Google insisted on inserting a long-winded, self-serving statement[3] on the record while the witness sat waiting:

> MS. YBARRA:·Before we begin the examination today, it's important that we clarify some things on the record regarding the scope of Mr. Shafiei's deposition testimony today.
>    As Mr. Ercolini knows, Mr. Shafiei has been designated to testify on Topics 10, 11, 12, 13, 18, 20 to 25 and 30, consistent with the scope set forth in Exhibit D to the declaration of Andrew [Bruns] in support of Google's June 21st opposition to Singular's motion to compel.
>    At the June 30th hearing on that motion, Judge Cabell ordered Google to provide a witness on Topic 36, which Mr. Shafiei is also prepared to testify on and Google discussed the substance of the June 30th hearing with Singular in numerous letters and memorialized Google's agreement to produce Mr. Shafiei on these topics in a July 2nd letter to Singular.
>    Until yesterday, Singular never raised any disagreement regarding the scope of the topics for which Mr. Shafiei's been designated and Singular never indicated any intent to renege on positions it took before the Court at the June 30th hearing. Yet, last night Mr. Ercolini informed Google for the first time of Singular's new position that Mr. Shafiei should be prepared to address the full scope of those topics as drafted, notwithstanding Judge Cabell's clear ruling on the record at the June 30th hearing that several of those topics as drafted are overbroad and improper.· And I'm referring specifically to, for example, Topic 18, which seeks 30(b)(6) testimony on P&L statements of any product or business segment responsible or formally responsible for the accused services. Judge Cabell said explicitly that the topic as drafted is too out there and, quote, too broad.

---

[3] This was contrary to Rule 30(c)(2)'s requirement that objections at a deposition must be "stated concisely in a nonargumentative" manner.

8

>Singular's e-mail last night sent the night before Mr. Shafiei's deposition demanding that Mr. Shafiei testify on the full scope of that topic and others completely disregard the guidance from Judge Cabell.
>
>MR. ERCOLINI:  Can we hurry this up?
>
>MS. YBARRA:  Let me finish, Mr. Ercolini, please.
>
>Upon receiving Singular's e-mail, Singular informs Google it intends to put Mr. Shafiei up for deposition only once and only on the scope of the topics reflected in the chart filed with the Court, which Singular never disputed and, in fact, represented to Judge Cabell at the hearing reflected the resolution of the parties' dispute.  Singular's refused to limit its deposition of Mr. Shafiei to the deposition topics and the scope previously agreed on by the parties and discussed with the Court. Mr. Shafiei's cleared his schedule today.  He's prepared to testify on the topics I identified earlier as limited in the chart provided by the Court, plus Topic 36, but we're prepared to proceed with the deposition today only upon Singular's confirmation that Mr. Ercolini will limit his questions properly to the scope of the topics as agreed to and discussed with the Court and not seek additional time with Mr. Shafiei or any 30(b)(6) witness on those same topics later.  Absent that agreement, we intend to suspend today's deposition and seek immediate guidance from Judge Cabell on this new dispute which we had thought was put to bed weeks ago.  I've asked Mr. Ercolini to provide for me --
>
>MR. ERCOLINI:  This is my deposition --
>
>MS. YBARRA:  Mr. Ercolini, I'm almost done.
>
>Please stop interrupting me.

*See* Ex. D at Tr. pp. 5-8.

After several more pages of arguments, counsel for Google terminated the deposition without allowing any questions to be asked on ***any*** of the topics (notwithstanding the prior written representation that Mr. Shafiei would testify regarding topics 10-13, 18, 20-25, 30 and 36):

>BY MR. ERCOLINI:
>
>Q.  Mr. Shafiei, do you understand that you're appearing today as a 30(b)(6) witness?
>
>MS. YBARRA:  Mr. Ercolini, I think your manners are really wanting here.

9

    MR. ERCOLINI:  I think you need to stop with the speaking objections.

    MS. YBARRA:  You're being unprofessional.

    BY MR. ERCOLINI:

    Q.  Mr. Shafiei –

    MS. YBARRA:  We're done today.  Thank you.
Mr. Shafiei, we're going to leave.  We're going to exit the room.  Thank you.

    MR. ERCOLINI:  All right.

*Id.* at Tr. p. 21.

Accordingly, notwithstanding the Court's orders at the June 30 hearing, Google obstructed Singular's attempts to obtain this damages-related discovery.  Google should have at least allowed the deposition to proceed on the topics to which Google agreed (topics 10-13, 18, 20-25, 30 and 36).

Pursuant to Rule 30(c)(2):

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, ***but the examination still proceeds***; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner.

*See* Fed. R. Civ. P. 30(c)(2) (emphasis added); *see also Gulbankian v. MW Mfg., Inc.*, No. 10-10392, 2013 WL 2146868, at *1 (D. Mass. May 15, 2013); *Crispo v. Harbor Cruises, LLC*, No. 07-10784, 2008 WL 11511511, at *1 (D. Mass. Aug. 13, 2008).[4]  Simply walking

---

[4] As recently stated in another case, "defense counsel may note on the record their objection to a deposition question, but ***must allow*** the deposition to proceed and the deposition to be taken subject to the objection." *Saldarriaga v. Taradex, Inc.*, No. 20-CV-4099, 2021 WL 54086, at *1 (E.D.N.Y. Jan. 6, 2021) (emphasis added).

out of a deposition was improper in view of Rule 30(c)(2).  Google's obstructive tactics should not now be rewarded by the issuance of a Protective Order.

D.     DEPOSITIONS

Finally, Google requests the Court to "admonish Singular to end its campaign of deposition misconduct and abusive questioning" during depositions in this case. Motion at 18-20.  Google's request should be denied for (at least) two reasons.  First, Singular has not engaged in any such "campaign."  Second, in Massachusetts (and elsewhere), "[i]t is axiomatic that a party coming before the court seeking equitable relief must do so with clean hands." *United States v. CCB, Inc.*, No. 15-11934, 2016 WL 4491831, at *3 (D. Mass. Aug. 25, 2016) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933)).  Thus, "[i]t is old hat that a court called upon to do equity should always consider whether the petitioning party has acted in bad faith or with unclean hands." *Texaco Puerto Rico, Inc. v. Dept. of Cons. Affairs*, 60 F.3d 867, 880 (1st Cir. 1995).  Accordingly, the doctrine of unclean hands "closes the door of equity to one tainted with inequitableness or bad faith relative to the matter in which [it] seeks relief." *Id.* (citation omitted).[5]

The harmless conduct of which Google complains pales in comparison to Google's obstructive conduct during depositions in this case, such as at the deposition of Mr. Shafiei described above.  In addition, Singular took the deposition of Catherine Tornabene, Google's former IP attorney, on April 29, 2021.  This deposition was important because Ms. Tornabene's testimony is directly relevant to Singular's claim that Google willfully infringed the patents-in-suit.  During the deposition, counsel for Google repeatedly improperly instructed the witness not

---

[5] Here, for example, Google complains that counsel for Singular used the word "falsehoods." *See* Motion at 2.  At the attempted deposition of Mr. Shafiei, however, counsel for Google made the following accusation to counsel for Singular: "That's just false, Mr. Ercolini." *See* Ex. D at p. 18.

11

to answer on the grounds of privilege. The questions, however, did not seek any privileged information. They merely asked for yes/no answers or information that would have to be disclosed on Google's privilege log. The following are exemplary:



Ex. E, Tr. p. 15.



*Id.* at Tr. p. 41.



*Id.* at Tr. p. 51.

These instructions not to answer at least "yes", "no" or "I don't recall" were improper. In any event, there are at most only two short depositions left to be taken. Given the foregoing, Google's motion regarding the taking of depositions should also be denied.

## III. CONCLUSION

For the reasons set forth above, Google's Motion for Protective Order should be denied.

Dated: August 2, 2021						Respectfully submitted,

							*/s/ Paul J. Hayes*
							Paul J. Hayes (BBO #227000)
							Matthew D. Vella (BBO #660171)
							Kevin Gannon (BBO #640931)
							Daniel McGonagle (BBO #690084)
							Michael J. Ercolini (pro hac vice)
							Thomas R. Fulford (BBO #686160)
							Alyssa H. Ruderman (pro hac vice)
							**PRINCE LOBEL TYE LLP**
							One International Place, Suite 3700
							Boston, MA 02110
							Tel: (617) 456-8000
							Email: phayes@princelobel.com
							Email: mvella@princelobel.com
							Email: kgannon@princelobel.com
							Email: dmcgonagle@princelobel.com
							Email: mercolini@princelobel.com
							Email: tfulford@princelobel.com
							Email: aruderman@princelobel.com

							ATTORNEYS FOR THE PLAINTIFF

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

							*/s/ Kevin Gannon*