# EXHIBIT C
## REDACTED



Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Anna Porto**
(415) 962-8857
aporto@keker.com

June 28, 2021

**VIA ELECTRONIC MAIL**

PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA  02110
singular@princelobel.com

Re:    *Singular Computing LLC v. Google LLC*; Civil Action No. 1:19-cv-12551 FDS

Dear Counsel:

We write to discuss several of Singular's recent discovery responses. Please let us know if you are available to meet and confer on Tuesday at 10am PT to discuss these responses.

**Interrogatories**

<u>No. 19</u>

This interrogatory asks Singular to "describe all facts related to your relationship with ▬▬▬, including a description of the ▬▬▬▬▬, SINGULAR-00012070, the negotiation of that agreement, and the results of the research described" in the Research Agreement.  In response, Singular incorporates its response to Interrogatory No. 11.  But Interrogatory No. 11 asks about Singular's attempts to commercialize the S1 generally, it does not relate to "the results of the research described" in the ▬▬▬▬▬▬▬▬▬.  And Singular's response to Interrogatory No. 11 does not explain the results of its research agreement, instead stating only that such an agreement was executed.  Furthermore, Singular's response to Interrogatory No. 11 also does not describe "the negotiations" related to the Research Agreement.  Therefore, please supplement Singular's response to Interrogatory No. 19 to explain the negotiation and results of the ▬▬▬▬▬▬▬▬▬.

<u>No. 21</u>

This interrogatory asks Singular to "identify where and when any systems with one or more S1 chips were put into use, including without limitation the ▬▬▬▬▬▬▬▬▬."

June 28, 2021
Page 2

Via Electronic Mail

Singular responded that "the S1 chips were put into use by various government agencies, including the army and Dr. Bates, including his use thereof in demonstrating same to Google." As specified by the interrogatory, please supplement Singular's response to "identify" the "various government agencies" that used the S1, and state when those systems were used.

Nos. 22 & 23

These interrogatories ask Singular to describe the conception, design, and use of a "14-bit approximate float" and "16 bit floating point number format having an 8-bit exponent and 7-bit fraction" and to identify related documents. Singular responds that "Singular's patents, related applications, and prosecution histories teach such a data type and thoroughly describe its design," and that "subsequent presentations to Google and other entities, as produced by Singular to Google and currently in Google's possession, reference such a data type." Based on our review, the patents, however, contain no discussion of Singular's use of these particular floating-point formats. Thus, please provide column and line number for any portion of the patents that Singular contends describe the number formats set forth in the interrogatories. Furthermore, Singular's response does not identify any related presentations to Google. Please supplement Singular's responses to describe Singular's development of the particular floating-point formats in question and identify any "produced" "presentations" about Singular's use of these floating-point formats by Bates number, both of the presentation as a whole and of the particular pages on which Singular contends that the number formats are disclosed.

No. 24

This interrogatory asks Singular to "identify any disclosure to Google by Singular, including without limitation by Dr. Bates, of either (a) a 14-bit "approximate float" data type or (b) a 16-bit floating-point number format having an 8-bit exponent and 7-bit fraction." Singular responds that its "patents, related applications, and prosecution histories teach such data types," that it "believes that Google was made aware of these patents as early as 2010-2011." The number formats referenced in Interrogatory No. 24, however, are not disclosed in the patents. If you contend that they are so disclosed, we invite you to identify the column and line number(s). And in any event, Singular has not identified any specific disclosures of the patents to Google. Again, if you disagree, please identify the date on which the asserted patents were disclosed to Google by patent number, and identify any supporting documentation of the same. Singular goes on to state that that "Singular disclosed these data types to Google" via "presentations to Google and other entities, as produced by Singular to Google . . .," which "reference such data types as well." Singular's vague response is insufficient with respect to the particular formats identified in the interrogatory. If Singular contends that it has produced presentations disclosing these specific number formats to Google, Singular should supplement its response to identify them by Bates number.

No. 26

Interrogatory No. 26 asks Singular to "explain why Singular contends that the program compiled from the FAC Testing Source Code is an accurate model of the 'TPU's float32 multiplication operation' (see FAC at ¶ 94), including without limitation identifying which variables in the

CONTAINS HIGHLY CONFIDENTIAL AEO INFORMATION

1711550

Via Electronic Mail

June 28, 2021
Page 3

FAC Testing Source Code, if any, correspond to the claimed 'possible valid inputs' to the element in the TPU that Singular contends is 'the LPHDR unit executing the first operation'; which TPU output(s), if any, correspond to the claimed 'first output signal of the LPHDR unit'; and what the corresponding 'result of an claimed exact mathematical calculation' would be for any such 'first output signal.'" Singular refuses to respond because it claims the interrogatory is "based on a flawed premise." Please supplement Singular's response to identify the purported "flawed premise" of the interrogatory, explaining why it impacts Singular's response, and respond to the extent possible. Singular also states that "the source code speaks for itself." But the testing source code that Singular produced says nothing of why Singular believes its program is an accurate model of the TPU's float32 multiplication operation. Singular should supplement its response accordingly.

<u>No. 30</u>

Interrogatory No. 30 asks Singular to "identify all venture funding received by Singular, including without limitation when the funding was received, who provided it, and what, if any, ownership stake was provided in return." Singular refuses to respond, objecting that this request was overly broad and irrelevant to the claims and issues in this litigation. But Singular's venture funding is relevant to at least damages because it reflects valuations of the asserted patents, and it is also relevant to Singular's invocation of secondary indicia of non-obviousness. Indeed, whether investors saw Singular as worthy of investment speaks to the S1's value, and lack of venture funding would indicate lack of a long-felt need for the claimed invention. Singular should supplement its response to provide the information requested.

**Requests for Production**

<u>RFP No. 82</u>

This RFP requests all documents related to the S2. Singular refuses to respond, objecting that the S2 is "categorically irrelevant." The S2 was a subsequent iteration of the S1, the only practicing product Singular asserts, and was repeatedly <u>referenced by Dr. Bates in his conversations about the claimed invention</u>. *See* Singular-00006470 (""); SINGULAR-00006472 (describing S2 as "next generation design"); SINGULAR-00007237 (describing S2 hardware as a next step for ""). Clearly, then, documents related to the S2 are "reasonably calculated to lead to the discovery of admissible evidence," and thus Singular must produce them. *Licensed 2 Thrill, LLC v. Rakuten, Inc.*, No. CV 13-11257-DJC, 2015 WL 13376540, at *1 (D. Mass. Oct. 13, 2015).

<u>RFP No. 85</u>

RFP No. 85 requests "all emulator code other than what was provided by Singular to ." Singular requests clarity on this request. This request seeks Singular's emulator code, like the emulator code that Singular provided to . Because Google already has the emulator code Singular provided , Google is requesting all other emulator code provided to evaluators of the

CONTAINS HIGHLY CONFIDENTIAL AEO INFORMATION

Via Electronic Mail

June 28, 2021
Page 4

Singular technology.  Please confirm Singular will produce the requested code in light of this clarification.

RFP No. 86

RFP No. 86 requests "all photos of the initial design of the S1 as mocked up on Post-it notes." Singular requests clarity on Google's request.  Singular's document production states that Dr. Bates "mocked up his initial designs for the S1 on Post-It notes, sticking them on his dresser." SINGULAR-00022607.  This RFP requests photos of those Post-It notes.  Please confirm that Singular will produce the requested photos in light of this clarification.

**Requests for Admission**

RFA Nos. 2 & 8

Singular contends that it "lacks sufficient information" to assess these requests given that the Court hasn't issued a claim construction ruling.  Neither of these RFAs is implicated by the Court's claim construction order.  And in any event, the Court has already determined that Singular cannot delay its discovery responses based on the Court's forthcoming claim construction order.  *See* ECF No. 144 ("[I]f [Singular] believes its response hinges on a particular construction, [it] can in its response offer arguments in the alternative, and if appropriate seek to amend its response at a later date.").  Singular should supplement its response to RFA Nos. 2 and 8.

RFA No. 5

RFA No. 5 asks Singular to admit that it "has never granted an outbound license for commercial use of any of the Patents-in-Suit.  Singular denies this statement.  In its response to Interrogatory No. 8, by contrast, Singular identifies only its research license with ▓▓▓▓, and its evaluation license with ▓▓▓▓.  Singular should therefore either update its response to Interrogatory No. 8 to identify its outbound licenses for commercial use, which we also requested in our letter on June 22nd, or revise its response to RFA No. 5 to admit that it has no such commercial licenses.

RFA No. 6

RFA No. 6 asks Singular to admit that "it is not currently trying to commercialize the S1." Singular denies this statement.  But Singular has not supplemented its response to Interrogatory No. 11, served in February 2021, to identify any ongoing commercialization attempts.  If Singular is presently engaged in commercializing the S1, Singular should either update its response to Interrogatory No. 11, which we also requested in our letter on June 22nd, or revise its response to RFA No. 6 to admit that it is not currently attempting to commercialize the S1.

CONTAINS HIGHLY CONFIDENTIAL AEO INFORMATION

Via Electronic Mail

June 28, 2021
Page 5

Sincerely,

KEKER, VAN NEST & PETERS LLP

Anna Porto

AP:nsn

CONTAINS HIGHLY CONFIDENTIAL AEO INFORMATION

1711550