IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Civil Action No.: 1:19-cv-12551 FDS<br><br>Hon. F. Dennis Saylor IV |

**DEFENDANT GOOGLE LLC'S MOTION TO ENFORCE PROTECTIVE ORDER PROVISION REGARDING DISCLOSURE OF PARTY CONFIDENTIAL MATERIAL TO THIRD-PARTY EXPERT**

Pursuant to Section 11 of the Stipulated Protective Order (D.I. 87), Google objects to Singular's designation of Dr. Jose Renau as an expert in this matter.

The Protective Order permits Singular to disclose material that Google has designated as confidential to a limited number of third-parties. Among these third parties are technical experts that Singular retains to assist it with prosecuting this case. The Protective Order, however, explicitly provides that certain individuals—no matter their technical qualifications—***cannot*** be retained as experts. These individuals include those who are "a current employee of a Party or of ***a Party's competitor***" and those who "at the time of retention" are "anticipated to become an employee of a Party or of ***a Party's competitor***." Protective Order 2(j) (defining "Expert") (emphases added). Google objects to Singular's request that it be permitted to disclose confidential Google information to Dr. Jose Renau because he (i) is actively consulting for two companies that compete with Google and (ii) has recently consulted with three other companies that compete with Google. As to the three companies where the consultancy is not active,

Singular has not provided any assurance that the arrangement is terminated or will not become active again, and Singular has not disclosed any terms of the consultancy.

Separately, Google also objects to the disclosure of its confidential information to Dr. Renau because, given his active role in the field with which Google competes, there is an objectively reasonable likelihood that he will disclose Google-designated confidential information, even if only inadvertently, to the competitors for whom he is currently acting as a consultant or may work with in the future.

Finally, Singular will not be prejudiced if it cannot disclose Google's confidential information to Dr. Renau. Singular has disclosed two other experts under the Protective Order to whom Google has not objected: Dr. Sunil Khatri and Dr. Sherief M. Reda El-Edel. Singular has neither made nor offered to make any showing that Drs. Khatri and Reda would be unable to offer the necessary opinions in this case. Nor has Singular shown that other experts aside from Drs. Khatri and Reda would be unavailable in this matter. Thus, Singular faces no prejudice from following the Protective Order's requirements and thus refraining from disclosing Google-designated confidential information to Dr. Renau.

I.  **Factual Background**

   A.  **The accused products are Google-designed computer chips optimized for machine learning.**

Singular has sued Google for patent infringement, accusing Google's Tensor Processing Unit versions 2 and 3 of infringement. The TPUs are a computer chip optimized for machine learning. In particular, they "are Google's custom-developed application-specific integrated circuits (ASICs) used to accelerate machine learning workloads."[1] Google has invested

---

[1] https://cloud.google.com/tpu/docs/tpus

substantial resources in the TPUs, which were "designed from the ground up with the benefit of Google's deep experience and leadership in machine learning."[2] Google's designers, including lead architect Norman Jouppi, have described the TPU v2 as a computer architecture specifically for the domain of deep neural networks, which is a method of machine learning. Some publications describe machine learning as a way for a machine to learn from past data automatically without programming.[3] Machine learning can be considered a subset of artificial intelligence, which is technology that allows a machine to simulate human behavior. Google's TPUs provide hardware to accelerate machine learning.

> **B. Google has produced substantial confidential technical and business information regarding its at least its TPU versions 1, 2, 3, and 4, designating it as confidential under the stipulated Protective Order.**

In response to Singular's extensive discovery requests, Google has produced source code, technical specifications, and internal technical correspondence and presentations regarding the TPUs. Mandapati Decl.¶ 4. Google has also produced substantial business information regarding the TPUs and Google data centers. *Id.* Although TPU versions 2 and 3 are accused in this case, some of the produced information covers the earlier TPU version 1 and the later TPU version 4 as well. *Id.* Google treats information regarding all TPU versions that is not otherwise public as confidential and proprietary. *Id.* ¶ 5. Singular has not challenged Google's confidentiality designations for this information.

> **C. The Protective Order expressly bars persons employed by competitors from receiving a producing party's confidential information.**

---

[2] *Id.*
[3] https://www.analyticsinsight.net/the-difference-between-artificial-intelligence-and-machine-learning/#:~:text=Artificial%20intelligence%20is%20a%20technology,humans%20to%20solve%20complex%20problems.

The Protective Order limits disclosure of confidential information that a party or non-party produces in discovery. Although disclosed experts may receive information designated at all confidentiality levels, including source code, the Protective Order has specific provisions aimed at protecting a party from having its confidential information disclosed to experts who are working for a party's competitor.

First, the definition of an expert prohibits any individual working with or likely to work with a competitor from receiving a party's information designated confidential under the Protective Order. Section 2(j) of the Protective Order provides:

> "Expert" means a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a current employee of a Party or of a Party's competitor, and (3) is not a past employee of a Party and (4) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

Second, the Protective Order requires disclosing an expert, including "all of the Expert's past and current employment and consulting relationships," prior to providing any information designated as confidential to that expert. Protective Order § 11(a)(iv). Following the disclosure, the other party can object to the expert for "good cause" if the party has "an objectively reasonable concern that the [designated expert] will use or disclose Discovery Materials in a way or ways that would violate one or more provisions contained in [the Protective] Order, whether intentionally or inadvertently." *Id.* § 11(c).

Notably, Singular stipulated to the Protective Order, including its confidentiality provisions and the restrictions on disclosing information to experts working with a competitor. D.I. 74.[4] Singular has used those protections for its own proprietary information, designating

---

[4] The only point where the parties disagreed regarding the Protective Order was on the prosecution bar: on scope, whether it should apply to outside counsel receiving confidential

large swaths of its own technical documentation and internal correspondence as confidential, as well as requiring Google to follow the terms related to production of source code.

> **D. Singular's disclosed expert, Dr. Jose Renau, is currently working with multiple companies that compete with Google in the development of computing chips optimized for machine learning or artificial intelligence.**

Per Section 11(a) of the Protective Order, Singular disclosed Dr. Renau on May 27, 2022.[5] Ex. A. In what Dr. Renau and Singular described as Dr. Renau's list of "Current and Past Employers – Professor Jose Renau," he disclosed three current employers: two companies developing chips and/or chip technology focused on artificial intelligence and/or machine learning, Esperanto.ai and United Kingdom-based Imagination Technologies, and the University of California at Santa Cruz, where he is a professor. *Id.* at 12. Dr. Renau describes his work for Esperanto.ai as including "help in many aspects around . . . AI inference engine." *Id.* He describes his work for Imagination as including "[d]esign" of the "branch predictor," *id.*, which is a computer architecture feature that may be used in helping to achieve "high performance" for a processor.[6]

The employment disclosure also listed three engagements that are not currently active: with the Chinese firms Alibaba (2020-21) and Huawei (2013-19), and with Huawei's U.S.-based

---

information under the Protective Order and on duration, whether it should last for one year or two. D.I. 74. The Court agreed with Google on the scope and with Singular on the duration. D.I. 78.

[5] Singular does not dispute that this Objection is timely. Pursuant to Section 11(b) of the Protective Order, Google wrote to Singular to object in writing to the designation of Dr. Renau on June 6, 2022, within the 10-day period allowed under that Section. Ex. B. The parties met and conferred on June 8, 2022, also within the time period the Protective Order allows. After the parties were unable to resolve this dispute, Google timely filed this Objection within the seven-day period allowed under Protective Order Section 11(b).

[6] https://en.wikipedia.org/wiki/Branch_predictor

arm Futurewei (2020-22).[7] *Id.* In meet and confer, Singular has not provided confirmation that these engagements have been terminated or otherwise been willing to disclose any terms of the engagement.[8]

Although Dr. Renau's disclosure did not provide any information about current employers Esperanto.ai and Imagination Technologies, their respective websites show that both companies are engaged in development related to hardware for machine learning and/or artificial intelligence.

Esperanto's website indicates that it is developing a chip that is "optimized for ML [machine learning] applications" and includes many "cores" where each core includes "a custom vector/tensor unit." https://www.esperanto.ai/technology/. That chip, the ET-SOC-1 is described in more detail in a publicly available powerpoint presentation on which Dr. Renau appears as a contributor, with the lead contributor being Esperanto's CEO. Ex. C at 1 (available at https://www.esperanto.ai/wp-content/uploads/2021/08/HC2021.Esperanto.Ditzel.Final_.pdf). That presentation confirms that the chip is targeted to machine learning, stating that it aims to show why the chip is "a compelling solution for Machine Learning Recommendation (inference)" and referring to the potential use of the chip in data centers. *Id.* at 2. It further states that this "general-purpose parallel-processing system on a chip can be used for many parallelizable workloads." *Id.* The presentation describes the chip as an "energy-efficient . . .

---

[7] https://www.fierceelectronics.com/electronics/research-arm-futurewei-distances-itself-from-parent-huawei-us-reuters

[8] Google requested written confirmation of the termination of these consulting engagements and their terms in its written objection to Renau on June 6, 2022. Ex. B. Google reiterated this request in an oral meet and confer on June 8. As of June 15, the deadline under the PO for Google to file this objection with the Court, Singular had not yet provided the additional requested information regarding the three non-active engagements.

vector/tensor unit." *Id.* Notably, the first reference in the bibliography is to a publication by Google lead chip designer Norman Jouppi, apparently related to cooling of the chips. *Id.* at 23.

Imagination Technologies's website describes its "PowerVR NNAs [neural network accelerators]" as "driving the AI revolution." Ex. D at 1 (available at https://www.imaginationtech.com/products/ai/). Imagination appears to develop designs for "cores" for such neural network acceleration that can be embedded into other chips. It describes one such family of cores, the IMG Series4 family of cores, as a specialized NNA for automotive applications that includes "tensor tiling" technology. *Id.* at 4 (available at https://www.imaginationtech.com/products/ai/img-series4-nna/). For another such family of cores, it states that with that family, the PowerVR Series 3NX, "manufacturers can build devices that offer fast computation of neural networks at very low power consumption, in minimal silicon area." *Id.* at 7 (available at https://www.imaginationtech.com/products/ai/powervr-series3nx/).

In addition to the companies' publicly available information, which demonstrates that they are competitors in the same field of technology at issue in this case—computing chip hardware for machine learning and/or artificial intelligence, Google employee Anand Mandapati, a Director of Silicon Management, reviewed the companies' websites, and attests that both companies appear to be actively "engaged in development of technology and/or products that are competitive or potentially competitive with Google's TPUs." *See* Mandapati Decl. ¶¶ 7-8.

Likewise, public information suggests that Alibaba, Futurewei, and Huawei are also competitors of Google. Public articles show that Alibaba, more widely known as an online

7

retailer, also designs chips, including chips targeted to artificial intelligence.[9] Huawei is one of the world's largest technology companies, and 2019 announced a chip that it described as "the world's most powerful AI processor."[10] Futurewei is the U.S.-based research arm of Huawei, and lists integrated circuit development (*i.e.*, computing chips) on its website as one of the firm's principal areas of development.[11]

## II.     Argument

Dr. Renau's active, ongoing work for Esperanto.ai and Imagination Technologies, which are both competitors of Google, disqualifies him because he does not meet the definition of an "Expert" under the terms of the Protective Order, which, as noted above, expressly excludes an employee of a party competitor. *See* Protective Order § 2(j). Further, based on Dr. Renau's current and recent past work for Google's competitors, Google has "good cause" to believe that such work creates a substantial risk that disclosure to Dr. Renau of Google's protected material under the Protective Order will result in economic harm and significant competitive disadvantage. *See* Mandapati Decl. ¶¶ 6-8 (attesting that "disclosure of Google's confidential information covered under the Protective Order would be valuable" to Google's competitors, and further attesting that Esperanto.ai and Imagination Technologies are two such competitors).

### A.     Dr. Renau's active work for Google's competitors is disqualifying.

In its June 6 letter and at the parties' meet and confer on June 8, Google raised these issues with Singular to demonstrate why Dr. Renau is disqualified as an expert. First, Dr.

---

[9] https://techwireasia.com/2021/12/the-newest-chip-by-alibaba-is-the-worlds-first-heres-why/ ("The new chip apparently also meets the needs of artificial intelligence (AI) and other scenarios for large bandwidth, high capacity memory, and extreme computing power.")

[10] https://www.huawei.com/us/news/2019/8/huawei-ascend-910-most-powerful-ai-processor

[11] https://www.futurewei.com/

Renau's *admitted, current, active employment with Google's competitors* in the field of AI/machine learning chips renders him unqualified to meet the plain-language definition of an eligible expert under the Protective Order. Furthermore, both that current employment, and his recent past employment with other competitors—for which Singular has yet to confirm a formal termination of the relationship—give Google "good cause" to believe that he may share confidential information with competitors, even if only inadvertently. Thus, on that basis, Google's objection to Singular's designation of Dr. Renau should be sustained.

In response to these concerns, Singular made only two points in meet and confer. Singular contended that: (1) the Protective Order's prohibition on persons working with competitors doesn't apply to Dr. Renau, because he is a "consultant" and not an "employee" of Esperanto.ai and Imagination Technologies; and (2) Esperanto.ai and Imagination Technologies are not "competitors" of Google. Neither argument withstands scrutiny.

> **1.    Dr. Renau meets the Protective Order's test for employment with a competitor, both factually and legally, and thus is barred from being qualified as an expert under the Protective Order.**

Singular's contention that Dr. Reanu is not employed by Google's competitors is belied, in the first instance, by the disclosure Singular itself submitted pursuant to Section 11(a) of the Protective Order. That disclosure lists Dr. Renau's current "*Employers*" as including both Esperatno.ai and Imagination Technologies. Ex. A at 12. Further, the text describing a publicly-available video that is linked on Esperanto.ai's *own website* identifies Dr. Renau as a "CPU Architect[ ] *from* Esperanto Technologies." Ex. E (available at https://www.esperanto.ai/News/securing-high-performance-risc-v-processors-from-time-speculation-risc-v-barcelona-workshop/). Nothing in that introductory text qualifies his role as being that of an outside consultant or differentiated from other people working with the

company. Similarly, an August 2021 Esperanto Technologies presentation entitled "Accelerating ML Recommendation with over a Thousand RISC-V/Tensor Processors on Esperanto's ET-SoC-1 Chip," lists contributors and includes Dr. Renau–again without any indication that his association with the company is different than the other Esperanto.ai personnel listed. Ex. C at 1. Thus, the public, factual evidence shows that Esperanto.ai holds Dr. Renau out publicly as no different from any other company personnel. Indeed, the only *evidence* in the record regarding Dr. Renau's relationship are the above public documents treating him like other company personnel and his own disclosure of Esperanto.ai as employment. Notably, Singular has not disclosed whether Dr. Renau holds any equity in Esperanto.ai or the rate of his compensation. As to Imagination Technologies, there's no readily available public information about Dr. Renau's role, so the only evidence in the record is his own disclosure of Imagination Technologies as a firm for which he is currently employed.

Regardless, whether Dr. Renau is, in a strict employment-law sense, a consultant and not employee—something Singular has not to date actually established factually—is irrelevant to the purpose of the Protective Order, which is to ensure that confidential information from a disclosing party is not disclosed to someone actively working with a competitor. Indeed, courts do not recognize a distinction between an active "consultant" and an "employee" for purposes of prohibiting disclosure of confidential material to individuals working for a party competitor. The dispositive issue in cases addressing such objections is whether the individual is *actively* engaged in work for a competitor—as a consultant, or otherwise. Indeed, there is ample authority demonstrating that experts actively engaged as "consultants" for party competitors should be disqualified.

In *Wang Laboratories, Inc. v. CFR Assocs., Inc.*, 125 F.R.D. 10, 13 (D. Mass. 1989), the court barred disclosure of confidential information to the disclosed expert "who admit[ted] in his resume that he *currently consults* companies about products that compete with Wang's products." (Emphasis added). Further, the court in *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *13 (N.D. Cal. June 13, 2019) noted that "[c]ourts find substantial risk [that confidential information will be misused] where individuals have *active and ongoing relationships* with competitors." (Emphasis added). Similarly, in *GPNE Corp. v. Apple Inc.*, No. 5:12-cv-2885-LHK (PSG), 2014 WL 1027948, at *2 (N.D. Cal. Mar. 13, 2014), the court granted Apple's objection to a disclosed expert in part because "[h]e *is an active consultant in the field at issue*." (Emphasis added). The court further noted: "In the very recent past, he has worked for several of Apple's competitors, and there has been no representation or agreement that he will not do so again in the very near future." *Id*.

In *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974, at *2 (N.D. Cal. Aug. 20, 2012), the defendant objected to plaintiff's proposed expert because he actively "provide[d] private consulting services in the very area in which [defendant] develops its products and he also publishes in this same field." The court held that the proposed expert's "ongoing work" in the relevant field (*i.e.*, "virtualization") and "ongoing relationships with competitors" by "*actively consult[ing]* with Defendant's competitors" in that field created a "tangible risk" that the proposed expert "will not be able to separate the highly confidential information he gleans from reviewing Defendant's source code with his *consulting* and publication work in that same technical field and this finding is not outweighed by a showing that he has expertise that other experts do not." *Id.* at *3 (emphasis added). The same result is warranted here. Indeed, it is indisputable that Dr. Renau is *currently* engaged in work for both

Esperanto.ai and Imagination Technologies in the relevant field, and Singular cannot show that Dr. Renau has expertise that other individuals do not possess.

In sum, Singular's attempt to downplay the substantial risk of Dr. Renau's active, ongoing work for Google's competitors by characterizing him as a "consultant" rather than an "employee" has no support and should be rejected. Indeed, Dr. Renau's current work for Google's competitors is disqualifying under the plain terms of the Protective Order and the prevailing case law.

> **2. Both Esperanto.ai and Imagination Technologies constitute competitors to Google, because they actively work in the same field of technology as the Google products accused in this case.**

Singular's contention that Esperanto.ai and Imagination Technologies are not Google "competitors" is without merit. Notably, Singular did not contend in meet and confer that either company operated in a different technological field from Google's TPUs. Indeed, public information about both Esperanto.ai and Imagination Technologies shows unequivocally that both companies are active in the same field of technology that is at issue in this case–computing chip hardware for machine learning and/or artificial intelligence. *See supra* Part I.D. Esperanto.ai's publicly available presentation about its products underscores the similarity to Google's TPUs, using similar terminology to describe the products and even citing publicly available materials from Google's lead designer in the presentation. That evidence is sufficient for purposes of disqualifying Dr. Renau as an expert. *See, e.g.*, *GPNE Corp.*, 2014 WL 1027948, at *2 (disqualifying proposed expert on the grounds that he actively consulted "in the *field* at issue" (*i.e.*, "mobile technology"); *Symantec Corp.*, 2012 WL 3582974, at *3 (disqualifying proposed on the grounds that he actively consulted "in the *field* of virtualization"). Likewise, while Imagination Technologies provides designs for AI-related chip "acceleration" rather than

designing entire chips itself, it is in the same field, *i.e.*, computing chips for machine learning/AI, as Google's TPUs. Furthermore, a Google employee familiar with the accused TPUs has reviewed the websites for Esperanto.ai and Imagination Technologies and confirmed that both companies are "engaged in development of technology and/or products that are competitive or potentially competitive with Google's TPUs." Mandapati Decl. ¶¶ 7-8.

Singular's only contention in meet and confer regarding Dr. Renau's current employers was to suggest that they are not competitors to Google because they are smaller companies than Google. But that contention finds no support in the Protective Order, which does not contain any provision allowing employees of smaller competitors to receive disclosure of confidential information. Likewise, the case law construes competitors for this purpose simply as companies in the same field, without regard to their size. *See, e.g.*, *GPNE Corp.*, 2014 WL 1027948, at *2; *Symantec Corp.*, 2012 WL 3582974, at *3. Indeed, because the Protective Order is focused on the risk of improper disclosure of confidential information to a competitor, the size of the competitor is not relevant to that risk.

Simply put, Dr. Renau's undisputed active, ongoing work for two companies that compete with Google in the field of computing chip hardware for machine learning and/or artificial intelligence is disqualifying under the plain terms of the Protective Order. He cannot qualify as an expert entitled to receive confidential information under the Protective Order.

    **B.**    **Dr. Renau's current work for certain Google competitors and his recent work for other competitors provides good cause for Google to object to Singular's disclosure of Dr. Renau as someone entitled to receive Google confidential information.**

As previously discussed, the Protective Order defines "good cause" for purposes of objections to expert designations as "an objectively reasonable concern that the [designated expert] will use or disclose Discovery Materials in a way or ways that would violate one or more

provisions contained in [the Protective] Order, whether intentionally or inadvertently." Protective Order § 11(c). Notably this provision provides a basis for objecting to an expert under the Protective Order, even if the individual might otherwise meet the definition of an expert, *i.e.*, that they aren't employed by a competitor in the first instance. Because Dr. Renau fails to meet the expert definition due to his current employment for multiple competitors, this good cause provisions sets for *an additional* basis on which he should not be allowed to receive disclosure of Google's confidential information under the Protective Order.

As to Dr. Renau's current employers, the existence of good cause to object is indisputable. Case law recognizes that there exists a risk that a person employed by a competitor, even with the best of intentions, may inadvertently disclose confidential information to that competitor. *See, e.g.*, *Wang Laboratories*, 125 F.R.D. at 13; *Intel Corp.*, 2019 WL 2476620, at *13; *GPNE Corp.*, 2014 WL 1027948, at *2; *Symantec Corp.*, 2012 WL 3582974, at *3. Thus, there exists a risk here that Dr. Renau will disclose Google confidential information to Esperanto.ai and/or Imagination Technologies, and that provides good cause to object to his disclosure under the Protective Order.

Furthermore, an additional risk of disclosure exists as to Dr. Renau's employers Alibaba, Futurewei, and Huawei: these are companies for which Dr. Renau has disclosed an employment relationship but for which Singular thus far has not provided any written confirmation that the relationship was formally terminated, despite written and oral requests for such information in meet and confer. Specifically, Dr. Renau's list of "Current and Past Employers" states that he performed work for Alibaba as recently as 2021, for Huawei as recently as 2019 (with a relationship that stretched back to 2013), and with Huawei's U.S.-based arm Futurewei as recently as this year. Given that Singular has not provided any confirmation that there has been a

formal termination of any of these three employment relationships with Google competitors, Google has no assurance that Dr. Renau will not continue to work for those companies in the near future. Thus, barring confirmation of a formal termination, Dr. Renau's relationship with those very recent employers creates a substantial risk that disclosure to Dr. Renau of Google's protected material under the Protective Order will result in economic harm and significant competitive disadvantage, because "there has been no representation or agreement" that Dr. Renau will not work for those competitors "again in the very near future." *See GPNE Corp.*, 2014 WL 1027948, at *2. Moreover, if those relationships have not been formally terminated, then they would cause Dr. Renau to fall outside the definition of a "Expert" separate and apart from the Esperanto.ai and Imagination Technologies relationships. *See* Protective Order § 2(j) (requiring not only that an "Expert," not actively work for a competitor but also that they are not someone "*anticipated* to become an employee" of a party competitor) (emphasis added).

      **C.    Singular will suffer no prejudice from the Court's sustaining Google's objection to Dr. Renau.**

The Protective Order does not require the absence of prejudice to disqualify an expert from receiving confidential information based on their employment with a competitor, and the case law considers only whether the designated expert possesses expertise that is unavailable elsewhere. *See, e.g.*, *Wang Laboratories*, 125 F.R.D. at 13 n.2; *GPNE Corp.*, 2014 WL 1027948, at *2; *Symantec Corp.*, 2012 WL 3582974, at *3. Singular has not attempted to, nor can it demonstrate any prejudice from being unable to provide confidential information to Dr. Renau: it has made no showing that he possesses unique expertise regarding the technology at issue that cannot be obtained from another expert. Indeed, Singular has already designated two other experts to receive Google's confidential information, and Google did not object to either of them. When asked in meet and confer, Singular did not offer any reason why these two other experts

15

were inadequate for Singular's technical review needs in the case, or why it would be unable to find other experts not currently and recently employed with Google's competitors.

### III. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court sustain Google's objection and issue an Order directing Singular to withdraw its designation of Dr. Renau as an expert under the Protective Order.

Respectfully submitted,

Dated: June 15, 2022

> */s/ Nathan R. Speed*
> Gregory F. Corbett (BBO #646394)
> gregory.corbett@wolfgreenfield.com
> Nathan R. Speed (BBO # 670249)
> nathan.speed@wolfgreenfield.com
> WOLF, GREENFIELD & SACKS, P.C.
> 600 Atlantic Avenue
> Boston, MA 02210
> Telephone: (617) 646-8000
> Fax: (617) 646-8646
>
> Robert Van Nest (admitted pro hac vice)
> rvannest@keker.com
> Michelle Ybarra (admitted pro hac vice)
> myabarra@keker.com
> Andrew Bruns (admitted pro hac vice)
> abruns@keker.com
> Anna Porto (admitted pro hac vice)
> aporto@keker.com
> Deeva Shah (admitted pro hac vice)
> dshah@keker.com
> KEKER, VAN NEST & PETERS LLP
> 633 Battery Street
> San Francisco, CA 94111-1809
> (415) 391-5400
>
> Michael S. Kwun (admitted pro hac vice)
> mkwun@kblfirm.com
> Asim Bhansali (admitted pro hac vice)
> abhansali@kblfirm.com

KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
(415) 630-2350

Matthias A. Kamber (admitted pro hac vice)
PAUL HASTINGS, LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
matthiaskamber@paulhastings.com

COUNSEL FOR DEFENDANT GOOGLE LLC

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

      I, Nathan R. Speed, counsel for Defendant Google LLC, hereby certify that counsel for Google conferred with counsel for Singular on June 8, 2022, and counsel for Singular indicated they are opposed to the relief sought in this motion.

Date: June 15, 2022                  */s/ Nathan R. Speed*
                                          Nathan R. Speed (BBO # 670249)
                                          nathan.speed@wolfgreenfield.com
                                          WOLF, GREENFIELD & SACKS, P.C.
                                          600 Atlantic Avenue
                                          Boston, MA 02210
                                          Telephone: (617) 646-8000
                                          Fax: (617) 646-8646

**CERTIFICATE OF SERVICE**

    I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

|  |  |
|---|---|
| Dated: June 15, 2022 | */s/ Nathan R. Speed*<br>Nathan R. Speed |