**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

SINGULAR COMPUTING LLC,

       Plaintiff,

v.

GOOGLE LLC,

       Defendant.

C.A. No. 1:19-cv-12551-FDS

Hon. F. Dennis Saylor IV


**GOOGLE LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

## I.      INTRODUCTION

In late July 2021, near the close of fact discovery, Google deposed Dr. Joseph Bates, the sole named inventor on the asserted patents, and Robert Plotkin, the attorney who prosecuted the patents before the U.S. Patent & Trademark Office.[1] The testimony elicited at those depositions revealed compelling evidence that Dr. Bates engaged in inequitable conduct by failing to disclose material prior art references of which he was indisputably aware for years before the asserted patents issued. Specifically, Dr. Bates's and Plotkin's testimony demonstrated that Dr. Bates knew of at least two material prior art references published more than a year prior to the filing date of the '156 and '961 patents. Furthermore, Dr. Bates's and Plotkin's inability and unwillingness to explain the failure to disclose these references, which first became clear during their depositions, supported the conclusion that Dr. Bates withheld these publications during prosecution with an intent to deceive the USPTO into granting those patents.

Based on these and other facts uncovered during the last week of fact discovery, Google promptly prepared a draft Second Amended Answer that asserts a new affirmative defense of unenforceability based on inequitable conduct, and served the draft on Singular in August 2021, putting Singular on notice of Google's discovery of facts giving rise to the defense. Google did not move for leave to amend its answer at that time because the case was already stayed pending resolution of Google's petitions for *inter partes* review ("IPR"). The stay has now expired, and Singular has confirmed its intent to proceed to trial on the claims of the asserted patents that survived IPR. Google thus brings this motion seeking leave to amend its answer.

However, despite being on notice for more than ten months of Google's intent to seek leave to amend its answer, Singular opposes amendment, citing the March 12, 2021 deadline to amend the pleadings. *See* Dkt. 59 § 2.[2] Singular's arguments are without merit, and ample good

---

[1] "Google" refers to Defendant Google LLC; "Singular" refers to Plaintiff Singular Computing LLC; the "'156 patent" refers to U.S. Patent No. 9,218,156; and the "'961 patent" refers to U.S. Patent No. 10,416,961.

[2] The Court's July 27, 2020 Scheduling Order, Dkt. 59, was corrected in respects not relevant here by the Court's August 4, 2020 Corrected Scheduling Order. *See* Dkt. 70 § 2.

cause supports Google's request for leave to amend notwithstanding that deadline. The facts supporting Google's inequitable conduct defense were not fully revealed until Dr. Bates's and Plotkin's depositions—months after the March 2021 deadline to amend the pleadings—and upon discovering them, Google promptly prepared and served a draft Second Amended Answer on Singular notwithstanding that the case was already stayed by then. Moreover, Singular will not be prejudiced by the amendment, nor would it be futile. Google therefore moves, pursuant to Rules 15(a)(2) and 16(b)(4) of the Federal Rules of Civil Procedure, for leave to amend its answer in order to assert its inequitable conduct defense, as set forth in the attached Second Amended Answer filed concurrently herewith.[3]

## II.    BACKGROUND

### A.    Procedural History

On June 10, 2021, the Court stayed this case through May 12, 2022 pending issuance of final written decisions in the IPRs of the three asserted patents. Dkt. 212. The Court's stay order nonetheless required "the completion of Fact Discovery in all senses by 7/23/21." *Id.* The parties thus continued fact discovery following the order. As relevant here, Singular offered Dr. Bates for deposition in the last week of fact discovery. Bruns Decl., Ex. 4. Blueshift IP, Plotkin's firm, likewise only offered Plotkin for deposition during the last week of fact discovery, despite Google's request for earlier deposition dates. Bruns Decl., Ex. 3. Google consequently deposed Dr. Bates on July 20 and 21, 2021, and Plotkin on July 23, 2021. Bruns Decl. ¶ 3.

Between April and July 2021, the last four months of fact discovery, Singular produced thousands of documents collected from Dr. Bates, including an April 15, 2021 production of over 2,500 documents identifying Dr. Bates as the custodian, May 27-28, 2021 productions of over 2,300 such documents, and a July 12, 2021 production of over 800 such documents. *Id.* ¶¶ 12, 14-15.  Those productions included several thousand emails and attachments specifically involving (e.g., to/from) Dr. Bates: over 1,800 in Singular's April 15, 2021 production, over

---

[3] *See* Declaration of Andrew S. Bruns ("Bruns Decl."), Ex. 2 (Second Amended Answer).

1,500 in Singular's May 27-28, 2021 production, and approximately 700 in its July 12, 2021 production. *Id.* These productions, all occurring within the last several months of fact discovery, represent the majority of documents produced by Singular in this case. *Id.* ¶ 16.

On August 26, 2021, following the depositions of Dr. Bates and Plotkin, Google served a draft of its Second Amended Answer on counsel for Singular, explaining that it "additionally pleads an inequitable conduct defense." *Id.* ¶ 5 & Ex. 1. Google further explained: "Because the case is currently stayed, we do not intend to move to amend at this point in time. Instead, Google sends this draft now to provide Singular notice of the proposed amendment and to alleviate any concerns of undue delay if the stay is lifted. We are available to meet and confer should you wish to do so." *Id.* Singular never responded to Google's August 26 email. *Id.* ¶ 6.

On May 26, 2022, following expiration of the stay, the Court held a status conference to "establish deadlines for the remainder of the case." Dkt. 324 at 1; Dkt. 329. After considering the parties' respective scheduling submissions, the Court took matters under advisement. Dkt. 329. On June 12, 2022, Google followed up with Singular to seek consent to file and serve the Second Amended Answer as its operative pleading. Bruns Decl. ¶ 7. Singular indicated on June 15 that it may not consent. *Id.* The parties conferred further on the issue on June 16, at which time Singular confirmed it would not consent. *Id.* This Motion followed eight days later.

### B.     Google's Affirmative Defense Based on Inequitable Conduct

The Second Amended Answer asserts a new affirmative defense, described above, that the '156 and '961 patents are unenforceable due to inequitable conduct committed by Dr. Bates before the USPTO. Bruns Decl., Ex. 2 ¶¶ 11-13.[4] "Inequitable conduct is an equitable defense to patent infringement, applied where the patentee has unfairly obtained an unwarranted patent through misconduct." *Crane Sec. Techs., Inc. v. Rolling Optics AB*, No. CV 14-12428-LTS, 2016

---

[4] Citations to the proposed Second Amended Answer, which is attached as Exhibit 2 to the attached Declaration of Andrew S. Bruns, are to the separately numbered paragraphs of Google's "Affirmative Defenses" that begin on page 22. The proposed Second Amended Answer omits one immaterial statement from the draft sent to Singular's counsel on August 26, 2021, which is shown in redline in the attached version. Bruns Decl. ¶ 8.

WL 11212375, at *1 (D. Mass. Aug. 29, 2016).[5] One form of inequitable conduct is when "the applicant knew of [a] reference . . . , knew that it was material, and made a deliberate decision to withhold it" from the USPTO. *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1299 (Fed. Cir. 2018).

In the Second Amended Answer, Google alleges that Dr. Bates "knew of at least two material prior art publications demonstrating public use of the claimed inventions," that, "[w]ith specific intent to deceive, Dr. Bates withheld these publications from the [USPTO] during prosecution of the '156 and '961 patents," and that the USPTO "would not have allowed one or more claims of the '156 and '961 patents had it been aware of the withheld prior art." Bruns Decl., Ex. 2 ¶ 12. Specifically, Google alleges that Dr. Bates was aware of, but intentionally failed to disclose to the USPTO, the following prior art: (1) Dr. Pavle Belanović's 2003 thesis titled "Library of Parameterized Hardware Modules for Floating-Point Arithmetic with an Example Application" ("Dr. Belanović's Thesis"), a publication which also publicly disclosed use of a parameterized floating-point library on reconfigurable hardware (the "Parameterized Floating-Point Library") by Dr. Belanović and his thesis advisor at Northeastern University, Dr. Miriam Leeser; and (2) an article by Coleman et al. titled "Arithmetic on the European Logarithmic Microprocessor" and published in 2000 in *IEEE Transactions on Computers* (the "Coleman Article"), which publicly disclosed use of a logarithmic microprocessor (the "Logarithmic Microprocessor"). *Id.* ¶ 13.

The Second Amended Answer explains and alleges facts to support the materiality of Dr. Belanović's Thesis and the Coleman Article. See *id.* ¶¶ 27-55. Specifically, Google alleges that, while "Dr. Bates purported to have invented" the execution of "operations with low precision and a high dynamic range," the Parameterized Floating-Point Library disclosed by Dr. Belanović in his thesis provided for the use of custom floating-point number formats, including formats that Singular contends meet the low precision and high dynamic range limitations of the '156 and

---

[5] Unless otherwise noted, all emphases are added, and internal quotation marks and citations omitted.

'961 patents. *See, e.g.*, *id.* ¶¶ 27-28, 31-32. Google accordingly alleges that Dr. Belanović's Thesis is material prior art because it either anticipates or renders obvious at least one claim of both the '156 and '961 patents. *Id.* ¶ 45. Furthermore, as Google also alleges, Dr. Belanović's Thesis discloses how he and his advisor, Dr. Leeser, chose these custom floating-point formats "for the same reason Dr. Bates later described in his alleged inventions: 'When using floating-point arithmetic, the designer using the library has full control to trade off between range and precision. . . . With a wider exponent field, the designer provides larger range to the signal, while sacrificing precision. Similarly, to increase the precision of a signal at the cost of reduced range, the designer chooses a narrower exponent and wider fraction field.'" *Id.* ¶ 34. Similarly, Google alleges that the Coleman Article disclosed and described a "chip that used logarithmic numbers with floating-point format for certain arithmetic calculations," as well as "a reduced-precision 20-bit format with 11 fractional bits," and that this closely matched the description given by Dr. Bates in his deposition of Singular's S1 chip, which Dr. Bates claimed embodies the invention of the '156 and '961 patents. *Id.* ¶ 50. Google accordingly alleges that the Coleman Article is likewise material prior art because it either anticipates or renders obvious at least one claim of both the '156 and '961 patents. *Id.* ¶ 54.

The Second Amended Answer further explains and alleges facts to support Dr. Bates's knowledge of the withheld references and specific intent to deceive. Regarding Dr. Belanović's Thesis and the related Parameterized Floating-Point Library, Google alleges that "Dr. Bates knew of Drs. Belanović and Leeser's work by February 2014 at the latest"—nearly two years before the '156 patent issued and over five years before the '961 patent issued[6]—based on his deposition testimony that he: ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

---

[6] The '156 patent issued on December 22, 2015; the '961 patent issued on September 17, 2019.

███████████████████████████████████████████████. *Id.* ¶ 36.

Furthermore, the documentary evidence corroborates Dr. Bates's testimony: as Google alleges,

Singular ███████████████████████████████████████████████

███████████████████████████████████████████████████

and Google further alleges that ████████████████████████████

████████████████████████ *Id.* ¶¶ 37-39. Supporting intent to deceive, Google further

cites Dr. Bates's claims at his deposition that ███████████████████████████

███████████████████████████████████ despite admitting that he

████████████████████████████████████████████

███████████████████████████████████████████████████

████████ *Id.* ¶ 40.

Regarding the Coleman Article and related Logarithmic Microprocessor, Google alleges

in the Second Amended Answer that: "[i]n September 2014, Dr. Bates met ████████████

██████████████████████████████████████; that he and ████████ "exchanged

emails shortly [there]after about Singular's technology"; and that in those emails, ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████ *Id.* ¶ 48. Google also alleges that Dr. Bates eventually responded to

██████████████████████████████████ *Id.* ¶ 49. Notably, Dr.

Bates's emails with ████████ were all produced by Singular on April 15, 2021, after the

Scheduling Order's deadline for amendment to the pleadings. Bruns Decl. ¶ 9.

Google also alleges that Dr. Bates and Plotkin sought, in effect, to hide the fact and

origins of Dr. Bates's knowledge of these prior art references. During Plotkin's deposition,

Google alleges, he testified that ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████ Bruns Decl.,

Ex. 2 ¶ 22. But when Google asked Dr. Bates whether he ever provided copies of prior art to

Plotkin, and if so which specific reference(s), Singular's counsel repeatedly instructed Dr. Bates

to not answer—and Dr. Bates accordingly refused to answer—on the purported ground that

privilege attached even to the underlying fact of what, if any, prior art Dr. Bates sent to Plotkin,

*id.* ¶¶ 24, 51, thereby preventing Google from confirming who made the apparent decision to

withhold Dr. Belanović's Thesis and the Coleman Article from the USPTO—Dr. Bates, Plotkin,

or both of them in concert.

## III.   LEGAL STANDARD

Under Rule 16, a scheduling order deadline may be modified "for good cause."  Fed. R.

Civ. P. 16(b)(4). Rule 16(b)'s good-cause standard focuses on "the diligence of the party seeking

the amendment." *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-CV-12029-ADB, 2022

WL 104911, at *6 (D. Mass. Jan. 11, 2022). Prejudice to the non-moving party "remains relevant

but is not the dominant criterion." *Id.* Futility may be "another potential bar to amendment," but

only where "the complaint, as amended, would fail to state a claim upon which relief could be

granted." *Id.*

## IV.   ARGUMENT: GOOD CAUSE EXISTS TO GRANT LEAVE TO AMEND

Good cause supports Google's request for leave to amend, notwithstanding the prior

March 2021 deadline for amending pleadings, because Google was diligent, Singular cannot

show it would be prejudiced, and Singular cannot show the amendment would be futile.

### A.   Google Acted Diligently

"An inequitable conduct defense must satisfy the requirements for alleging fraud set forth

in Federal Rule of Civil Procedure 9(b)." *Id.* at *8. "[T]o plead . . . inequitable conduct with the

requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when,

where, and how of the material misrepresentation or omission committed before the PTO."

*Crane Sec. Techs.*, 2016 WL 11212375, at *6. Given this standard, courts in this District and

elsewhere have routinely found good cause to amend to assert an inequitable conduct defense after the deadline for amending pleadings, on the rationale that extensive discovery—including depositions of named inventors or prosecution counsel—was needed to develop an adequate factual basis to allege the defense.[7] *See, e.g.*, *Teva Pharms.*, 2022 WL 104911, at *7-11 (finding "good cause for [defendant's] late-filed motion to amend" to allege inequitable conduct seven months after deadline to amend pleadings, where "full factual information supporting . . . inequitable conduct was fully revealed" in depositions taken after the deadline); *Marical Inc. v. Cooke Aquaculture Inc.*, No. 1:14-CV-00366-JDL, 2017 WL 3254693, at *2, 5-6 (D. Me. July 31, 2017) (granting leave to amend to allege inequitable conduct defense "despite the expiration of the scheduling order deadline for amendment of the pleadings" because amendment was "based on information disclosed during the deposition of [inventor], which deposition was conducted at the close of the discovery period"), *aff'd*, 2018 WL 1811288 (D. Me. Apr. 17, 2018); *Crane Sec. Techs.*, 2016 WL 11212375, at *7 (finding "good cause to modify the Scheduling Order to allow Defendant to amend the Answer" to assert inequitable conduct defense). The Court should reach the same conclusion here.

As the Second Amended Answer itself reflects, the evidence cited as factual support for Google's inequitable conduct allegations comes from Singular's own documents, many of which were produced after the Scheduling Order's March 12, 2021 deadline to amend pleadings, and from the depositions of Dr. Bates and Plotkin, both of which took place during the last week of fact discovery in July 2021. For example, the emails between ███████ and Dr. Bates were produced by Singular on April 15, 2021, including the September 2014 email in which Dr. Bates

---

[7] As one Federal Circuit judge recently explained: "Because it is often the case that the critical evidence necessary to prove inequitable conduct can be obtained only from the patentee, it is common for claims of inequitable conduct to arise only after discovery has been conducted. In many instances, as in this case, fact discovery is not completed until after the deadline for amending pleadings. For that reason . . . a party who wishes to assert inequitable conduct . . . often finds itself seeking leave to add a claim of inequitable conduct after the date for amending pleadings has passed, and frequently after the close of fact discovery." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. CV 19-622 (WCB), 2020 WL 4794576, at *3 (D. Del. Aug. 18, 2020) (Bryson, J., sitting by designation).

apparently ███████████████████████████. Bruns Decl. ¶ 9. While Dr. Bates's copy of ███████████████ was produced by Singular before the deadline for amending pleadings, the majority of the allegations regarding his knowledge and non-disclosure of the thesis, and of Dr. Belanović's and Dr. Leeser's work more generally—all key to establishing knowledge and intent to deceive—are appropriately based on Dr. Bates's and Plotkin's deposition testimony. Indeed, Singular's pre-March 2021 document production established only that ███████████ ███████████████████████; it did not provide the proof, obtained through deposition testimony, about the extent of his knowledge of and familiarity with the work of Dr. Belanović and Dr. Belanović's advisor and collaborator, Dr. Leeser. "Fundamentally, . . . given the heightened pleading standard for inequitable conduct claims . . . it was reasonable for [Google] to further develop its claim through deposition testimony before moving to amend." *Teva Pharms.*, 2022 WL 104911, at *8; *see also Lipocine*, 2020 WL 4794576, at *3 ("[I]t is not unreasonable for patent challengers to postpone raising allegations of inequitable conduct until sufficient discovery has been conducted to enable the challenger confirm its suspicions and gather the evidence necessary to sustain its claim."); *Marical*, 2017 WL 3254693, at *6 ("Because Dr. Harris was a principal inventor who directly participated in the patent prosecution process, it was appropriate for Defendants to depose him before advancing a claim of inequitable conduct.").

Moreover, Google was not dilatory in seeking Dr. Bates's and Plotkin's depositions. It is routine for key depositions to occur near or at the end of fact discovery, to ensure all documents relevant to the deposition have first been produced and can be carefully reviewed. *See GCP Applied Techs. Inc. v. AVM Indus., Inc.*, No. CV 19-7475, 2021 WL 4527757, at *2 (C.D. Cal. July 23, 2021) (granting leave to amend, noting: "it was reasonable for AVM to wait to depose [inventor] until after AVM had ample opportunity to sift through and become familiar with the relevant documents produced in discovery. Given [inventor's] central role in the case, the Court will not fault AVM for waiting until the end of the discovery period to conduct his deposition"); *Marical*, 2017 WL 3254693, at *2 (granting leave to amend to allege inequitable conduct

supported by "information obtained on the final day of fact-related discovery"). Taking the same approach here was clearly appropriate, as Singular continued producing large volumes of documents in the last several months of fact discovery, including productions on April 15, May 27-28, and July 12, 2021 comprising over 5,500 documents collected from Dr. Bates, the vast majority of which were Dr. Bates's own emails. Bruns Decl. ¶¶ 12, 14-15. Indeed, the majority of documents produced by Singular in this case were produced between April and July 2021, after the March 2021 deadline to amend pleadings, and most of those documents were collected from Dr. Bates. *Id.* ¶¶ 12, 14-16. Under these circumstances, it was eminently reasonable for Google to have not prematurely pursued depositions of Dr. Bates and Plotkin. In any event, the only dates Singular offered for Dr. Bates's deposition were in the last week of fact discovery. Bruns Decl., Ex. 4. Likewise, Blueshift IP only offered Plotkin for deposition on July 22 or 23, despite Google's request for earlier deposition dates. Bruns Decl., Ex. 3.

Google was likewise diligent following the depositions of Dr. Bates and Plotkin. On August 26, 2021, less than three weeks after receiving the final deposition transcripts, Google served on Singular a draft of the Second Amended Answer that included its inequitable conduct allegations and affirmative defense. Bruns Decl. ¶¶ 4-5. Google did not move for leave to amend at that point because the case was already stayed, as it explained to Singular at the time.[8] Dkt. 212; Bruns Decl., Ex. 1. Once the stay of the case expired in May 2022, and within a few weeks after the Court's May 26 status conference to discuss a schedule for the remainder of the case, Google requested consent to file the Second Amended Answer and then moved for leave to amend shortly after Singular confirmed it would not consent. Bruns Decl. ¶ 7. None of Google's actions evidences undue delay or lack of diligence. *See Lipocine*, 2020 WL 4794576, at *5 (waiting less than three months "after critical information was obtained ha[s] been held not to

[8] Likewise, during an August 10, 2021 status conference with the Court, when Google sought the Court's guidance on whether it would entertain a motion for leave to amend while the case was already stayed, Google noted that it did not think such a motion "can or should be resolved right now," particularly because it could be "moot depending on the outcome of the PTAB proceedings." Bruns Decl., Ex 5 at 6. Singular did not disagree, and certainly never took the position that Google could or should have moved for leave to amend while the case was stayed.

constitute 'undue delay'" for purposes of leave to amend); *Crane Sec. Techs.*, 2016 WL 11212375, at *7 (granting leave to amend to allege inequitable conduct, finding defendant "acted with sufficient diligence in requesting a meet-and-confer about the proposed counterclaim on May 20, 2016, and in submitting the instant Motion on June 7, 2016").

> **B.      Singular Cannot Show That It Will Be Prejudiced**

"The party opposing amendment bears the burden of showing prejudice." *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014 WL 988915, at *2 (N.D. Cal. Mar. 10, 2014); *see also Lipocine*, 2020 WL 4794576, at *6 ("The burden of proof on the issue of prejudice . . . is on the non-moving party, in this case [plaintiff].").

Singular cannot show that it will be prejudiced, as is its burden, because: (1) although fact discovery is closed, the facts relevant to the defense are, and always have been, in Singular's possession, such that Singular has no need to take further fact discovery; (2) expert discovery has not yet occurred; (3) no adjustment to the case schedule will be necessary; and (4) Singular has known since August 2021 that Google intended to assert an inequitable conduct defense, and has been on notice since that time of the facts Google would allege to support the defense.

"Typically, the plaintiff in an inequitable conduct dispute has access to all the information that is pertinent to its case" because "the issues of intent and materiality ordinarily turn on evidence in the patentee's possession and do not require factual discovery." *Lipocine*, 2020 WL 4794576, at *7 (collecting cases). "For that reason, courts have noted that the loss of an opportunity for discovery on inequitable conduct typically does not result in prejudice to the patentee." *Id.* Thus, although fact discovery has closed, that does not prejudice Singular. *See, e.g.*, *id.*; *Marical*, 2017 WL 3254693, at *6 n.8 (rejecting argument that plaintiffs would be prejudiced by amendment because "[i]nsofar as the amendment is based on information known to and disclosed by the principal inventor of one the patents-in-suit," plaintiffs were "presumably aware of the information well before the deposition of Dr. Harris").

To the extent any aspects of inequitable conduct are appropriately the subject of expert opinion, expert discovery has yet to occur, so Singular cannot be prejudiced in this regard. *See*

*Teva Pharms.*, 2022 WL 104911, at *8 (finding no prejudice because "no further discovery will be needed beyond the contemplated expert discovery").

Singular also cannot be prejudiced by any adjustment to the trial date or case schedule as a result of the amendment, because there is presently no trial date or schedule for the remainder of the case. *See id.* (finding no prejudice because "the case scheduling order will not need to be altered"); Dkt. 329.

Finally, Singular cannot claim surprise because it has known since August 2021 both that Google intended to assert an inequitable conduct defense and the specific facts Google would allege to support the defense.

### C.      Singular Cannot Show That the Proposed Amendment Is Futile

To the extent Singular argues that Google's proposed amendment would be futile, which Singular bears the burden of showing if it so contends, Google will respond to such an argument in its reply brief. *The Hilsinger Co. v. Kleen Concepts, LLC*, 164 F. Supp. 3d 195, 201 (D. Mass. 2016) (non-moving party has the "burden of showing" futility); *Cypress Semiconductor Corp.*, 2014 WL 988915, at *2 ("The party opposing amendment bears the burden of showing . . . futility[.]").

## V.      CONCLUSION

For these reasons and for good cause shown, Google respectfully requests that the Court allow this Motion and grant Google leave to file and serve the attached Second Amended Answer as its operative answer.

Respectfully submitted,

Dated: June 24, 2022          By:     */s/ Nathan R. Speed*
                                              Gregory F. Corbett (BBO #646394)
                                              gregory.corbett@wolfgreenfield.com
                                              Nathan R. Speed (BBO # 670249)
                                              nathan.speed@wolfgreenfield.com
                                              Elizabeth A. DiMarco (BBO #681921)
                                              elizabeth.dimarco@wolfgreenfield.com
                                              Anant K. Saraswat
                                              asaraswat@wolfgreenfield.com
                                              WOLF, GREENFIELD & SACKS, P.C.

12

600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Robert Van Nest (admitted *pro hac vice*)
rvannest@keker.com
Michelle Ybarra (admitted *pro hac vice*)
mybarra@keker.com
Vishesh Narayen (admitted *pro hac vice*)
vnarayen@keker.com
Anna Porto (admitted *pro hac vice*)
aporto@keker.com
Andrew Bruns (admitted *pro hac vice*)
abruns@keker.com
Deeva Shah (admitted *pro hac vice*)
dshah@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

Michael S. Kwun (admitted *pro hac vice*)
mkwun@kblfirm.com
Asim M. Bhansali (admitted *pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Telephone: (415) 630-2350

Matthias A. Kamber (admitted *pro hac vice*)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California St., Ste. 48th floor
San Francisco, CA 94111
Telephone: (415) 856-7000

*Counsel for Defendant Google LLC*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I, Nathan R. Speed, counsel for Defendant Google LLC, hereby certifies that counsel for Defendant conferred with Plaintiff's counsel in a good-faith attempt to resolve or narrow the issue raised by this motion.  Plaintiff's counsel indicated that it did not consent to the relief requested in this motion.

*/s/ Nathan R. Speed*      
Nathan R. Speed

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing document was served upon the attorneys of record for all parties by electronically filing the document with the Clerk of Court using the Court's electronic-filing system, which will automatically send e-mail notification of such filing to registered attorneys of record. Therefore, pursuant to Federal Rule of Civil Procedure 5(d)(1)(B) and Local Rule 5.2(a), no certificate of service required.

Dated: June 24, 2022              */s/ Nathan R. Speed*     
                        Nathan R. Speed