## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC, | Civil Action No. 1:19-cv-12551-FDS |
| Plaintiff, | |
| v. | Hon. F. Dennis Saylor IV |
| GOOGLE LLC, | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO ENFORCE PROTECTIVE ORDER PROVISION
## REGARDING DISCLOSURE OF PARTY CONFIDENTIAL MATERIAL
## TO THIRD-PARTY EXPERT

Plaintiff, Singular LLC ("Singular"), respectfully submits this opposition to the motion of defendant, Google LLC ("Google"), to enforce a Protective Order provision regarding the disclosure of confidential material to third-party expert (Dr. Joseph Renau). As explained, Dr. Renau is not associated with a "competitor" of Google and good cause does not exist for his exclusion. As such, Google's objections to Dr. Renau are misplaced and its motion should be denied.

## I.       BACKGROUND

On May 27, 2022, counsel for Singular informed counsel for Google that Singular intended to retain Dr. Renau as a technical expert in this case. Google was duly provided with Dr. Renau's personal information pursuant to paragraph 11(a) of the Protective Order. *See* Google Mot., Ex. A (Dkt. No. 335-1). On June 6, 2022, counsel for Google objected to Dr. Renau on the following two grounds:

(1)      Dr. Renau "is actively employed by at least two Google competitors [Esperanto and Imagination] and thus does not qualify as an 'Expert' under the Protective Order";

(2)   "given Dr. Renau's work with competitors, Google has 'objectively reasonable concern' that such work could lead to a situation where Dr. Renau 'will use or disclose Discovery Materials in a way or ways' that would directly violate the Protective Order."

*See id.* Ex. B (Dkt. No. 335-2).

During the ensuing meet-and-confer regarding the present motion, counsel for Singular informed counsel for Google that Dr. Renau is not an employee of Esperanto or Imagination and that Singular disagreed with Google's argument that Dr. Renau expert role in this case would violate the Protective Order.  Singular maintains that position and, therefore, opposes the present motion.

## II.   LEGAL STANDARDS

"Federal courts have the inherent power to disqualify experts, although cases that grant disqualification are rare." *Tr'tees of Boston Univ. v. Everlight Elecs. Co. Ltd.*, No. 12-11935, 2014 WL 345241, at *2 (D. Mass. Jan. 17, 2014) (citing *Koch Ref. Co. v. Jennifer L. Boudreaux MV,* 85 F.3d 1178, 1181 (5th Cir.1996)); *see also Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) ("Disqualification [of an expert] is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely.")  "[The] objecting party has the burden of proving that there exists a conflict of interest warranting disqualification."). *City of Springfield v. Rexnord Corp.*, 111 F. Supp. 2d 71, 73 (D. Mass. 2000).  "In determining whether disqualification is appropriate, the Court may also consider the public interest in permitting experts to "pursue their trade" and parties "to select their own experts." *Palomar Med. Techs., Inc. v. Tria Beauty, Inc.*, No. 09-11081, 2012 WL 517532, at *2 (D. Mass. Feb. 15, 2012) (citation omitted).

### III. ARGUMENT

#### A. DR. RENAU IS NOT AN EMPLOYEE OF ESPERANTO OR IMAGINATION

Google's argument that Dr. Renau is disqualified because he is currently employed by Esperanto and Imagination is incorrect. As counsel for Singular explained during the meet-and-confer, Dr. Renau inadvertently listed those companies as employers. In fact, Dr. Renau is not employed by either company. He has acted only in a non-employee consulting capacity. As a result, Google's first objection should be rejected.

#### B. ABSENCE OF "GOOD CAUSE" FOR EXCLUDING DR. RENAU

Google's second argument is that "good cause" exists for disqualifying Dr. Renau pursuant to paragraph 11(c) of the Protective Order. Paragraph 11(c) reads as follows:

> For purposes of this section, "good cause" shall include and objectively reasonable concern that a Person will use or disclose Discovery Materials in a way or ways that would violate one or more provisions contained in this Order, whether intentionally or inadvertently.

*See* Dkt. No. 87, p. 22.

As the moving party, Google has the burden of demonstrating that good cause exists. *See, e.g.*, *City of Springfield v. Rexnord*, 111 F. Supp. 2d at 73 ("objecting party has the burden of proving that there exists a conflict of interest warranting disqualification."). Google has not carried its burden because it has not provided objectively reasonable evidence that Dr. Renau "would violate one or more provisions contained in this Order, whether intentionally or inadvertently."

This case involves technology that is used for applications that use Artificial Intelligence. *See* Mot. at 3. Google unreasonably and overly broadly objects to Dr. Renau due to his work "in the field of A/I learning chips." *Id.* at 9. Google's objection on this basis should be rejected. If Google's position were accepted, Singular would be barred from using as an expert in this case

3

anyone who is associated with any entity involved with "A/I learning chips."  In other words,

any expert knowledgeable regarding the subject matter of this case who has consulted with any

entity doing business in the field of AI is unacceptable to Google.

As courts have recognized, however, such an unreasonably broad objection is both

unworkable and overreaching:

> [i]t would be unfair if "competitor" could be defined so broadly in a narrow field,
> such as gene therapy, that it would threaten to disqualify anyone competent or
> experienced enough to express an opinion.  In addition, [as here], the agreed upon
> Protective Order in this case states that "[t]he approval of independent experts must
> not be unreasonably withheld."

*MediciNova, Inc. v. Genzyme Corp.*, No. 14-cv-2513, 2018 WL 318468, at *5 (S.D. Cal. Jan. 5,

2018).  Similarly, another court reasoned that:

> Characterizing every entity whose activities have an economic effect on
> [defendant] as a competitor goes far beyond what is necessary to serve the purposes
> of the protective order.  Such a broad definition of competitor would threaten to
> capture, at the very least, every entity that participates in some way in the clinical
> laboratory industry, ensnaring plaintiffs in a Catch–22 wherein anyone 'qualified
> to offer an expert opinion [would be] disqualified from reviewing the confidential
> information necessary to form that opinion.'

*Rheumatology Diags. Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847, 2015 WL 1744330, at *11

(N.D. Cal. Apr. 15, 2015) (quoting *Frazier v. Layne Christensen Co.*, No. 04–cv–00315, 2005

WL 372253, at *3 (W.D. Wis. Feb. 11, 2005)).  Accordingly, such a broad interpretation of

competitors "would not be a sensible reading of a protective order designed to allow the parties

to obtain and rely on expert testimony." *Rheumatology v. Aetna*, 2015 WL 1744330, at *11.

In effect, Google wants the Court to transform the "objectively reasonable" standard of

the Protective Order into a "subjectively reasonable" test by which Google can disqualify anyone

that Google, in its sole discretion, chooses.  But that is not what the parties agreed to in the

Protective Order.  Hence, the objectively reasonable test incorporated therein.  Other than

4

speculation, nothing submitted by Google suggests that Dr. Renau would be unable to abide by the terms of the Protective Order.[1]  Thus, Google has not carried its burden of showing that disqualification is warranted regarding Dr. Renau. *See, e.g.*, *Verigy US, Inc. v. Mayder*, No. C07-04430, 2008 WL 4183493, at *1 (N.D. Cal. Sept. 8, 2008) ("Defendants have not [] shown that [the expert is] likely to make unauthorized disclosure of defendant's claimed proprietary property").

It is also clear from Google's own actions (and inaction) that it does not truly regard Esperanto and Imagination as actual competitors.  For example, on its website, Imagination reports that it has a close working relationship with Google and, in turn, Google has expressed thanks for Imagination's support:

> Imagination has been working closely with Google to implement the necessary features in its graphics driver stack to support performance profiling on PowerVR devices.

> * * *

> Jay Kong, Product Manager, Google, says, "With Android GPU Inspector, developers can easily optimize graphics applications without the need to install custom tools.  We'd like to thank the Imagination team for their support and enthusiasm for the Android GPU Inspector."

*See* Gannon Decl., Ex. B.  Furthermore, when reporting to the Securities and Exchange Commission, Google identifies its actual competitors. *See, e.g.*, Gannon Decl., Ex. C.  Tellingly,

---

[1] Dr. Renau has signed Exhibit A to the Protective Order, thereby agreeing to be bound by its terms. *See* Declaration of Kevin Gannon ("Gannon Decl."), Ex. A.  *Cf. Luminati Networks Ltd. v. UAB Tesonet*, No. 2:18-CV-00299, 2019 WL 8331448, at *3 (E.D. Tex. Jul. 15, 2019) (denying disqualification because, *inter alia*, the proposed expert had agreed to be bound by the terms of the Protective Order).

although identifying a plethora of companies by name,[2] Google does not identify either Imagination or Esperanto as an actual competitor. *Id.*

Objective evidence from independent third parties also demonstrates that Imagination and Esperanto are not real competitors to Google.  For example, ZoomInfo lists the top ten competitors for both Imagination and Esperanto. *See* Gannon Decl., Exs. D and E.  Neither list identifies Google. *Id.*  Financial information also provides reliable objective evidence that Imagination and Esperanto are not real competitors to Google.  For example, Google's revenues in 2021 were over $257 **billion**. *See id.*, Ex. C.  In contrast, Imagination's annual revenues are around $150 million. *See id.*, Ex. F.  Esperanto's annual revenues are even smaller, at around $10 million. *See id.*, Ex. G.  This further demonstrates that Google's opposition to Dr. Renau is not "objectively reasonable."

Google also argues that "there is ample authority demonstrating that experts actively engaged as 'consultants' for party competitors should be disqualified." Mot. at 10.  Google cites three cases in support. *Id.* at 11.  Google ignores the fact that there is at least equally "ample authority" for denying motions to disqualify experts where, as here, the moving party exaggerates its definition of competitive entities in an attempt to disqualify an opponent's preferred witness. *See*, *e.g.*, *Rheumatology Diags. v. Aetna*, 2015 WL 1744330, at *11; *Frazier v. Layne Christensen*, 2005 WL 372253, at *3; *Univ. of Va. Patent Fdn. v. Gen Elec. Co.*, No. 3:14-cv-51, 2015 WL 7431412, at **2-7 (W.D. Va. Nov. 20, 2015).

On pages 12-13, Google again asserts that Dr. Renau should be disqualified because Imagination and Esperanto "actively work in the same field of technology as the Google

---

[2] Including Baidu, Microsoft, Naver, Seznam, Yahoo, Yandex, Amazon, eBay, Kayak, WebMD, ByteDance, Meta, Snap, Twitter, AppNexus, Criteo, Apple, Alibaba, Salesforce, Disney, Hulu, Netflix and Zoom. *See id.*  These giant companies are the true competition to Google.

products accused in this case." As set forth above, however, this basis of objection is far too broad. As Google asserts, the case involves products used in the field of computing for AI applications. Thus, according to Google, the "same field of technology" is the field comprising products used for AI processing.[3] If Google's prohibitively broad field of qualification were to be accepted, Singular would be barred from using any non-academic expert who has recent industry experience in the field of AI computing. Google's argument, therefore, should be rejected. *See MediciNova. v. Genzyme*, 2018 WL 318468, at \*5; *see also Rheumatology Diags v. Aetna*, 2015 WL 1744330, at \*11.

On page 14, Google asserts that:

> An additional risk of disclosure exists as to Dr. Renau's employers Alibaba, Futurewei, and Huawei: these are companies for which Dr. Renau has disclosed an employment relationship but for which Singular thus far has not provided any written confirmation that the relationship was formally terminated

Dr. Renau states in his Declaration submitted herewith that: (1) he was a consultant for Alibaba and Huawei but currently has no relationship with either of them, and (2) his consulting work with Futurewei has no relevance to the AI technology involved in this case. *See* Renau Decl., ¶ 3.

On pages 15-16, Google asserts that Singular will not be prejudiced by excluding Dr. Renau because Singular did not offer any reason why its two other experts were inadequate for Singular's technical review needs in this case. Not surprisingly, Singular intends to use Dr. Renau because he has knowledge and experience regarding aspects of this case that its other experts do not have concerning datacenters.

---

[3] Google's objection to Dr. Renau because Esperanto uses "similar terminology" (Mot. at 12) is likewise overly broad and indicative of Google's overreaching. On this basis, Google could object to anyone who has consulted for any company that uses terminology "similar" to "AI" or "Artificial Intelligence."

## IV.     CONCLUSION

For the reasons set forth above, Google has not shown objectively reasonable good cause

for disqualifying Dr. Renau.  Accordingly, the present motion should be denied.


Dated: June 29, 2022                          Respectfully submitted,

                                              */s/ Paul J. Hayes*\
                                              Paul J. Hayes (BBO #227000)
                                              Matthew D. Vella (BBO #660171)
                                              Kevin Gannon (BBO #640931)
                                              Daniel McGonagle (BBO #690084)
                                              Brian M. Seeve (BBO #670455)
                                              **PRINCE LOBEL TYE LLP**
                                              One International Place, Suite 3700
                                              Boston, MA 02110
                                              Tel: (617) 456-8000
                                              Fax: (617) 456-8100
                                              Email: phayes@princelobel.com
                                              Email: mvella@princelobel.com
                                              Email: kgannon@princelobel.com
                                              Email: dmcgonagle@princelobel.com
                                              Email: bseeve@princelobel.com

                                              ATTORNEYS FOR THE PLAINTIFF


<u>CERTIFICATE OF SERVICE</u>

I certify that on June 29, 2022, I served this document on Defendant by causing a copy to
be sent via electronic mail to its counsel of record.


                                              */s/ Paul J. Hayes*