```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2


 3


 4     SINGULAR COMPUTING LLC,          )
                                        )
 5                    Plaintiff,        )
                                        )    No. 1:19-CV-12551
 6     vs.                              )
                                        )
 7     GOOGLE LLC,                      )
                      Defendant.        )
 8


 9


10


11              Before the Honorable F. Dennis Saylor, IV,
            United States District Court Judge Hearing via
12           videoconference held on Wednesday, October 19, 2022.


13     APPEARANCES:

14      For the Plaintiff:
                Prince Lobel Tye LLP, Paul J. Hayes, One
15     International Place, Suite 3700, Boston, Massachusetts 02110.

16      For the Defendant:
                Paul Hastings LLP, Matthias A. Kamber, 101
17     California Street, Ste 48th Floor, San Francisco, California
       94111.
18              Keker, Van Nest & Peters LLP, Robert A. Van Nest,
       Vishesh Narayen, and Anna Porto, 633 Battery Street, San
19     Francisco, California 94111.
                Kwun Bhansali Lazarus LLP, Asim M. Bhansali, 555
20     Montgomery Street, Suite 750, San Francisco, California
       94111.
21


22


23                    Leigh B. Gershowitz, RMR, CRR
                      Official Federal Court Reporter
24                     United States Courthouse
                      300 State Street, Room 303D
25                   Springfield, Massachusetts 01105
```

```
 1                      P R O C E E D I N G S

 2              (Hearing commenced at 2:10 p.m.)

 3              THE CLERK:  Court is now in session in the matter of

 4     Singular Computing LLC vs Google LLC, Civil Action Number

 5     19-12551.  Participants are reminded that photograph and

 6     recording and rebroadcasting of this hearing is prohibited

 7     and may result in sanction.

 8              Would counsel please identify themselves for the

 9     record, starting with the plaintiff.

10              ATTORNEY HAYES:  Paul Hayes for the plaintiff.

11              THE COURT:  Good afternoon.

12              ATTORNEY VAN NEST:  Bob Van Nest -- go ahead,

13     Nathan.

14              ATTORNEY SPEED:  This is Nathan Speed with Wolf,

15     Greenfield and Sacks on behalf of Google.  Go ahead, Bob, if

16     you want to introduce yourself.

17              ATTORNEY VAN NEST:  Bob Van Nest, your Honor.  Good

18     afternoon.  I'm here with Matthias Kamber, Asim Bhansali,

19     Anna Porto, and Vishesh Narayen.  Good afternoon.  And

20     Mr. Speed, of course.

21              THE COURT:  Good afternoon.

22              All right.  This is a status conference in this

23     case.  I have both parties have requested a conference and

24     raise different issues and I have three motions pending.  I'm

25     not sure how to dig into this.  Why don't I start by giving
```

1   both counsel a chance to give their perspective on where we

2   are and where we ought to go from here.

3          Mr. Hayes, I'll start with you.

4          ATTORNEY HAYES:  Yes, your Honor.  We requested this

5   status conference simply to move the case along.  And as I'm

6   sure you're well aware of the claims at issue and two of the

7   patents have been held valid by the patent office.  All fact

8   discovery is done.  And the only thing left now is the expert

9   filings of the expert reports and the depositions.  And what

10  we suggest as the reason for the call is we would ask the

11  Court to order that all deposition, expert depositions be

12  filed or exchanged by November 15, that reply expert reports

13  be December 15th, another 30 days, and that all depositions

14  of the experts be done by January 15th.

15         And we've requested that in hopes that around end of

16  February, March, we can have a pretrial and dispose of the

17  case.  That is the only -- as you know, Judge, this thing has

18  been on the docket now -- it will be soon going over three

19  years and we're already delayed it a year, et cetera.  So I

20  think it is imperative that we get to trial.

21         So I mean, that is basically -- the three motions

22  are the motions -- we've briefed them on the papers.  And,

23  you know, we were so -- we're not going to argue the motions.

24  But in any event, there's three of them.  The three motions

25  are relatively simple.  The plaintiff -- the defendant wants

1    to add willful infringement.  We've briefed that.

2    Inequitable conduct, I'm sorry.  And we've briefed that.  We

3    don't argue any more than the papers other than it is late.

4         And then we wanted to add -- amend -- amend a

5    contention simply to cite through some source code.  And they

6    wanted to amend -- to add some additional validity, slash,

7    noninfringement arguments, all of which are fairly complex

8    arguments, et cetera, they're all briefed.  So we're happy to

9    just let that ride on the papers.  And what we're concerned

10   mostly about, I mean, frankly, is to get this to trial.

11        Now, in that sense, we know with regard to the third

12   patent in suit, which is this 961 patent, last time we had a

13   hearing, I indicated we'd give them a covenant not to sue

14   because we're not intending to go up the hill on a patent

15   that the patent office has already found invalid.  So I sent

16   over a covenant not to sue and I assume that we could work

17   out the language for the covenant not to sue and dispose of

18   that one.

19        And then with respect to the second patent suit that

20   is on file for now at least six months or so, nothing has

21   been done.  And my suggestion on that is we can either stay

22   it, pending a resolution of this trial, or we can dismiss it

23   without prejudice, so long as they agree that they won't run

24   off to the Northern District of California and DJ me.

25        But that all said, I think that will put the case in

5

1    a condition to be tried and get it over with.  Because I

2    mean, frankly, we're not going to get anywhere until we get a

3    verdict given the circumstances here.

4         THE COURT:  All right.  A couple of questions.

5    Don't I need to build in a timetable as well for summary

6    judgment motions?

7         ATTORNEY HAYES:  Yes.  Yes, you do, your Honor.

8    That's why, if January 15th is like -- once of the -- once

9    all of the deps are taken, or the experts by January 15th,

10   then, obviously, between then and March, which is two months,

11   if we had a trial in March, they could file whatever summary

12   judgments and whatever.  I just don't want it to spread out

13   to the summer and then blahh, blahh, and then the 12th of

14   never never comes.  So --

15        THE COURT:  All right.  And explain to me because I

16   don't think I have a good handle on the PTAB appeal, how does

17   all of that affect what we are doing here?

18        ATTORNEY HAYES:  Well, they have appealed the

19   decision and we have too and that will be briefed.  And

20   the -- that -- there will be a decision in the PTAB.  But

21   that -- that could be a year from now by the time the Federal

22   Circuit ends up with reply briefs and brief, arguments, and

23   whatever.  Sometimes it could be 18 months.  So I know my

24   Brother would love just to stay this another 18 months until

25   the 12th of never.

6

1        And by the -- I think the best circumstance is we

2    get a verdict.  Once we get a verdict, then if we want to

3    talk on appeal, take the whole thing up to appellate court

4    and be done with it.  But we need to get this thing to trial,

5    as we see it.  Otherwise it is just another -- another year's

6    worth of delay, which, you know, and -- this is a delay.  And

7    this is not a circumstance where they won in the lower

8    tribunal, the patent office.  They lost.  So, you know --

9        And with respect to the third patent that is going

10    to -- that is irrelevant to them simply because we are going

11    to give them a covenant not to sue on it.  So I think that

12    the only -- the concept of this appeal thing is just to delay

13    it another year, year and a half, which I think is just

14    a -- it is not fair to the plaintiff in this circumstance at

15    all, in my view and argument would be to you.

16        THE COURT:  All right.  And if I were to try to

17    block off a time for a trial, how -- it is kind of an

18    abstract question to me at this time -- how long do you think

19    I would need to block off?

20        ATTORNEY HAYES:  I think the maximum time would be

21    10 trial dates.  And probably if you put us on a clock, it

22    could -- it could get down to eight.  You know, it is -- it

23    is not -- this is not *IBM v Xerox* type of case.  It is a

24    fairly straightforward patent case.  So I can't imagine it

25    taking more than ten days, like any other patent case I've

1    been involved in.

2            THE COURT:  All right.  Who is going to take the

3    lead for Google responding to all of that?

4            ATTORNEY VAN NEST:  Mr. Kamber is going to do that,

5    your Honor.

6            ATTORNEY KAMBER:  I'm happy to do that, your Honor.

7    Matthias Kamber on behalf of Google.  Hopefully you can hear

8    me okay.

9            THE COURT:  Yes.

10           ATTORNEY KAMBER:  Let me take some of those issues

11   that Mr. Hayes raised in order.  With respect to the covenant

12   not to sue, we did receive that yesterday.  That was

13   something that we talked about back in May, the first track

14   we saw was yesterday.  We still are evaluating that.  I think

15   Mr. Hayes is right that we'll have to work out some of the

16   language of that covenant.  But we now have someplace to

17   start from.  And we'll try to resolve that in -- soon.  We

18   just hadn't had a chance to discuss it even with our client

19   yet, so.

20           With respect to the second case, that's -- I think

21   Mr. Hayes said at the last conference as well that they were

22   willing to dismiss that with prejudice.

23           THE COURT:  Without --

24           ATTORNEY KAMBER:  Haven't done so yet --

25           THE COURT:  I thought he said without prejudice.

1      ATTORNEY KAMBER:  Dismiss it without prejudice, yes.

2  Yes.  I'm sorry.  I may have misspoken.  So dismiss without

3  prejudice.

4      And, you know, some of this discussion I think is

5  hypothetical unless and until they do that.  I hear that

6  they're willing to do that, but if they don't do that,

7  managing the schedule and the trial becomes altogether I

8  think a different question.

9      THE COURT:  Well, that is a little more complicated,

10  as he said, which I think is fair.  He doesn't want to

11  dismiss it without prejudice and then have a suit filed the

12  next day in the Northern District of California and he's lost

13  his venue.  Should I just stay it?  And what does the

14  dismissal accomplish that a stay would not?  Other than --

15      MR. VAN NEST:  Your Honor, we'd agree not to DJ it.

16  We'd agree not to DJ it on behalf of Google.  I'd like to

17  have -- we'd like to have it dismissed without prejudice as

18  soon as possible.  And we don't plan to file a DJ on that

19  second case.

20      THE COURT:  All right.  On that piece of it, then,

21  why don't you talk to one another and see if you can agree on

22  a proposal going forward and, you know, we'll take it from

23  there.

24      Okay, Mr. Kamber?

25      ATTORNEY KAMBER:  That would be fine, your Honor.  I

1     think we might be able to wrap that in to the covenant

2     discussion as well and perhaps do it all in one fell swoop.

3     So with respect to the appeal, I just want to correct a few

4     things from Mr. Hayes.  He says two of the patents have been

5     found valid and that we lost at the PTAB.  The reason they're

6     appealing is because that's just plain incorrect.  Dozens of

7     the claims were invalidated.  Four -- there are four asserted

8     claims in this case.  Two of those asserted claims were

9     invalidated.  Two of them are still pending.  Two of them

10    still remain following those PTAB proceedings.

11          So what's happening now is there is a cross appeal.

12    At the last status conference, Singular did not yet have a

13    position as to whether it was planning to appeal.  They now

14    have appealed.  And to put it simply, they're advocating for

15    a claim construction at the Federal Circuit that would

16    crystallize one of Google's noninfringement defenses based on

17    some admissions in the testimony at -- by their expert before

18    the PTAB.

19          So, again, that's -- that's -- this cross appeal,

20    their brief is now due by agreement of the parties, that is

21    Singular's brief is due in December.  And the briefing will

22    not be complete at the Federal Circuit until -- I think it is

23    February 22nd of next year, absent them asking for additional

24    extensions.  So we're looking I think at an argument that

25    would be sometime in the summer, June, July, or August, is

1    based on the current Federal Circuit sort of schedule, that

2    would be taking place.

3            And to be clear, Singular shouldn't be moving

4    forward with a trial when they're the ones who are in

5    parallel advocating for a claim construction that is

6    different than the one that exists before the Federal

7    Circuit.  That is not true with respect to Google.  But it is

8    true that they, Singular, are advocating for a claim

9    construction that is different than the one that is pending.

10           So the construction would impact, for what it is

11   worth, both of the remaining asserted claims in this case,

12   from the 273 and the 156 patent respectively.  And it would

13   be a waste of everyone's resources, I think, including the

14   Court's of course, to go ahead with the trial only to have

15   the appeal result in a different claim construction.  So we

16   do take issue with this idea of barrelling ahead and then

17   just simply taking it up to the Federal Circuit, which is

18   already hearing one of -- one of these issues and is on track

19   to do so by next summer.

20           And it is true.  Mr. Hayes is right, we don't know

21   when any decision would issue.  But I recently heard Chief

22   Judge Moore of the Federal Circuit at their judicial

23   conference explain the decisions, I think, on average are

24   coming out about a month or two after oral argument.

25           So let me turn now to the schedule and what

1    Mr. Hayes has proposed.  I think there are some practical

2    problems with that.  And by the way, we're not advocating for

3    a stay.  We haven't asked for a stay.  We think that this

4    case should be proceeding in parallel with the Federal

5    Circuit appeal in terms of expert discovery and other things.

6    But we also, I think, need to be realistic about what that

7    has to look like.  And I think we need this covenant resolved

8    and the pending motions resolved before we really understand

9    the scope of expert discovery.

10          I think we'd be fine without a hearing as well, your

11   Honor.  But if you would prefer a hearing once you look at

12   those motions or perhaps you know now whether you want a

13   hearing, we would be happy to set one and then have those

14   issues resolved.  I think that then sets us up for expert

15   discovery.  I think we were -- we were contemplating

16   something along the lines of the following:  To have opening

17   expert reports be due right before the holidays.  For

18   example, December 21st or thereabouts.  Having then

19   responsive reports be due February 1st.  That builds in a

20   little extra than the 30 days, then, that Singular

21   contemplates, but it also, I think, takes into account that

22   we'll all lose a week to ten days of time over the holidays

23   as well.  And then that expert depositions be complete by the

24   1st of March.  So I think that would build in time to resolve

25   these other issues on the front end of expert discovery and

1    allow that to proceed at a pace.

2            And you also raised, your Honor, this issue about

3    motions.  We do anticipate there will be *Daubert* motions in

4    this case.  In particular, we think that there might actually

5    be a heavy *Daubert* burden because there's a relatively novel

6    damages theory, I think, in the works based on what we've

7    learned through discovery already.  So the schedule should

8    account for that.  And we also expect to file for summary

9    judgment.

10           So we don't know if the Court has a preference for

11   doing *Daubert* and dispositive motions at the same time.  I've

12   seen one schedule of yours, your Honor, where the *Daubert*

13   was, I think, scheduled and the briefing was done a month

14   prior.  I think that was the *Fitbit* case a year or two ago.

15   So we defer to your preference there with respect to the

16   briefing.  But if you wanted it staggered, we would propose

17   that *Daubert* briefing be on or about the end of March and

18   then summary judgment on or about the end of April, maybe a

19   month later.  Perhaps the Court wants more time than that to

20   resolve the *Daubert* motions.  But, again, we defer to you on

21   your schedule and what your preference is in terms of the

22   amount of time you would have with it.  And like the

23   *Dauberts*, we anticipate that the summary judgment motions

24   will be important here.  So we do anticipate filing some when

25   the time comes.

1          So, again, work -- just to sum it up, working

2     forwards from today, we see expert discovery getting

3     underway, once the scope is resolved, that would be late this

4     year.  *Dauberts* and summary judgment to be dealt with

5     basically next spring.  And this all happening in parallel to

6     Singular's cross appeal.  And then it is a matter of, I

7     think, finding a trial date at a reasonable point.  And I

8     think that's where schedules may get complicated, depending

9     on your own schedule.  Mr. Van Nest I know has a number of

10    trials scheduled for next fall, I think four back-to-back

11    trials that he can address and explain to the extent that

12    that is a time period that we might be looking at.

13          But that's the schedule, your Honor, that we would

14    propose.  I think it is very much in line with the way that

15    your Honor contemplated this when we last spoke, which was --

16    I think you said, I think setting it the better part of a

17    year in advance is the better way to go.  And we agreed with

18    that, in light of everything that needs to be done by the

19    parties and the Court between now and trial.

20          THE COURT:  And what is -- again, it is an abstract

21    question because we don't quite know what this is going to

22    look like -- but what is your best guess, as you sit here,

23    for the length of the trial?

24          ATTORNEY KAMBER:  I think Mr. Hayes is probably

25    right, that we're looking at two weeks at the outside.  I

1   would like to think that perhaps it could be a little

2   shorter.  But I think fundamentally we agree that it would

3   be -- it is more than a week.  This case will take more than

4   a week to try.  And I invite Mr. Van Nest to say otherwise if

5   he thinks so.  But I think eight to ten days sounds about

6   right to us.

7          ATTORNEY VAN NEST:  I think that is right, your

8   Honor, depending on scope.  But I think it will be a good

9   solid ten days with jury selection, openings, closings, and

10   witness testimony.  So I wouldn't estimate anything shorter

11   than ten.

12          THE COURT:  All right.  All right.  In no particular

13   order what I'm going to do is I'm going to rule on two of the

14   motions because I don't want to catch you flat-footed.  I

15   want to set up a Zoom conference, I don't know, a week to ten

16   days out to talk about the third.  I'm not sure I quite

17   understand it and I think oral argument would be helpful as

18   to that.

19          I'm going to set a timetable for expert disclosures

20   and depositions and dispositive motions and, I suppose,

21   *Daubert* motions.  And I think what makes sense is to -- me to

22   get back on track with frequent, reasonably frequent, status

23   conferences to try to stay on top of things.  I'm not quite

24   ready to set a trial date, although I do think we need to

25   block that time off well in advance.  And jumping ahead a

1    little bit, what I'm going to do is I'm going to set this for

2    a further status in -- somewhere 30 to 45 days.  And at that

3    conference, I will ask you in advance of the conference to

4    indicate the weeks in which you would know you are

5    unavailable.  I guess to be safe, we should do it for really

6    up until next October 1st.  Let's say that.  July and August

7    are difficult, as you know, for a trial that exceeds more

8    than a week.  It is hard to get jurors.  But I'm not going to

9    rule that out.  And, obviously, all of you are going to have

10   different vacation schedules, lots of other things going on

11   in your lives in addition to your trial dates.  But I think I

12   need to start working with at least the obvious conflicts

13   that you know you have over the next year or so so we can try

14   to identify a two-week period of time and block it off.  Even

15   if I wind up postponing that for some reason, at least we

16   have a target.  I'm not going to be able to turn on a dime on

17   this.  I can't and you can't.  So let's at least see if we

18   can identify those periods and work with that.

19          That trial date may be sooner, perhaps, than the

20   defense wants, if that is what works out best.  And you'll

21   have to live with that.  And it may be later than the

22   plaintiff wants, conversely, and they'll have to live with

23   that.  The one thing I can promise, this is going to be less

24   than perfect, all right, in terms of scheduling, you know,

25   all of the things that need to be done pretrial and so on.

1    Just do the best we can.

2         So let me start by addressing two of the three

3    motions.  And I'm just going to do this in summary form.  I

4    have read the pleadings and I'm reasonably competent that I

5    understand them.  The oldest pending motion is number 336,

6    which is Google's motion for leave to file an amended answer

7    and affirmative defenses that essentially arise from the

8    contention that discovery revealed inequitable conduct.

9    Based on my review of the papers, I'm going to deny that

10   motion based on a combination of undue delay, undue prejudice

11   and futility, largely for the reasons indicated by Singular

12   in its opposition.  I am limiting that ruling to the matter

13   raised in the motion that is the -- effectively the

14   affirmative defense of inequitable conduct.

15        As to 355, which is Singular's motion for leave to

16   file supplemental infringement contentions, which essentially

17   concern what Singular says arises out of -- what it says was

18   the delayed production of source code and supplemental

19   contentions arising out of that, Google contends there has

20   been undue delay and a lack of identification of the precise

21   nature of the infringement, which I am sympathetic to, but

22   I'm going to grant the motion, that is grant 355, and permit

23   the supplemental infringement contentions as requested by

24   Singular.

25        And what I want argument on is number 359, which is

1   Google's motion for leave to supplement their noninfringement

2   contentions and invalidity contentions and particularly this

3   issue of are they improperly raising prior art in violation

4   of the statutory estoppel bar and so on.  I'm not sure I

5   quite understand these issues well enough to rule on them.

6   And I think some argument would be helpful.

7           And we may as well set that time before too much

8   time goes by.  I was supposed to be on trial next week and

9   one of the lawyers got COVID, so I have lots of free

10  mornings.  But I know some of you are in California.  Let's

11  see.  How about Tuesday the 25th at 2:00 in the afternoon

12  work for a Zoom hearing on that motion?

13          ATTORNEY HAYES:  Fine with me, Judge.

14          ATTORNEY BHANSALI:  Your Honor, this Asim Bhansali

15  for Google.  Let me check my calendar real fast.  I think

16  that works but let me make sure.

17          THE COURT:  Again I have every morning free that

18  week, but I don't want to make --

19          ATTORNEY BHANSALI:  Actually, the mornings would be

20  okay too, but the 25th at 11:00 -- did you say 2:00 p.m.

21  Eastern, right?

22          THE COURT:  2:00 p.m. Eastern.

23          ATTORNEY BHANSALI:  Yeah, that works for me.

24          THE COURT:  Okay.  Why don't we make it 1:30 Eastern

25  just to -- I've got a 3 o'clock.  Just in case somehow I get

1    embroiled in this so that -- all right.  So that will be a

2    hearing on that.

3            And then in terms of the schedule going forward,

4    obviously, there's some level of arbitrariness to this, but I

5    just think I need to do this to get matters on track.  So I'm

6    going to direct that initial expert reports be filed by

7    December the 1st, that responsive expert reports -- I could

8    prank you and make those due January the 1st, but I think I

9    won't be quite so unkind.  Let's make those January the 13th.

10           MR. VAN NEST:  Thank you, your Honor.

11           THE COURT:  And expert depositions, which you

12   probably ought to start working on the scheduling of those

13   now, should be completed by February the 17th.  And I'm going

14   to combine the *Daubert* and summary judgment motion deadline

15   and we'll make that March the 17th.  And I will set this for

16   a further status -- let's see -- how about the -- the stub

17   week before Thanksgiving, Tuesday, the 22nd at 4:00 Eastern.

18           MR. VAN NEST:  That would be a Zoom call, your

19   Honor?

20           THE COURT:  Yeah.  And we may not have much to talk

21   about but I want to get back on track with checking in

22   periodically.

23           MR. VAN NEST:  That is okay.

24           ATTORNEY HAYES:  That is fine with us, Judge.

25           ATTORNEY KAMBER:  Your Honor, one issue.

1          THE COURT:  Yes.

2          ATTORNEY KAMBER:  I'm sure that other counsel can

3    help with that.  I might not be able to join that day because

4    of Thanksgiving travel the 26th.

5          THE COURT:  Which is fine.  I don't -- this is a

6    status, probably a pretty unimportant one in the scheme of

7    things, not much will have happened by then probably.  But I

8    just -- I want to get back on track with checking in.

9          MR. VAN NEST:  We'll be able to cover it, your

10   Honor.  On Tuesday the 22nd at 1:00 Pacific.

11         THE COURT:  Yes, 4:00 Eastern.  And I'm going to

12   order that nobody change their Thanksgiving travel.  It is

13   just not that important.

14         ATTORNEY KAMBER:  Thank you.

15         THE COURT:  I should actually -- maybe if I can keep

16   anybody off the roads on the east coast that might be a good

17   idea.

18         MR. VAN NEST:  I'm in California too.

19         ATTORNEY HAYES:  Judge, so long as we can eat turkey

20   as opposed to spam, we're all set.

21         THE COURT:  All right.  Here we have the horrendous

22   Boston to New York travel, which is soul deadening.  Although

23   I've heard that Tuesday is the new Wednesday and that if you

24   leave Wednesday at 5:00, there's no traffic at all, which is

25   counterintuitive to say the least.

1              ATTORNEY KAMBER:  I think that is probably true.

2              THE COURT:  All right.  So that's the tentative

3    schedule.  And in terms of giving me your trial black out

4    dates so to speak, let's make that April 1st through October

5    1st.  And it is just -- it may be only the beginning of a

6    conversation, but I think we need to start doing that to get

7    that time blocked off.  All right?

8              ATTORNEY HAYES:  Thank you, judge.

9              THE COURT:  I will try to be reasonable going

10   forward in terms of deadlines.  But, you know, let's -- let's

11   try to move this thing forward, okay?

12             ATTORNEY HAYES:  Thank you, Judge.

13             MR. VAN NEST:  Thank you, your Honor.  See you next

14   Tuesday.

15             THE COURT:  Anything else?

16             ATTORNEY HAYES:  That's it.  Have a good one.

17             THE COURT:  Okay.  All right.  Thank you.

18    (Whereupon, the proceedings were concluded at 2:41 p.m.).

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, Leigh B. Gershowitz, Registered Merit

5    Reporter and Certified Realtime Reporter, in and for the

6    United States District Court for the District of

7    Massachusetts, do hereby certify that the foregoing

8    transcript is a true and correct transcript of the

9    stenographically-reported proceedings held in the

10   above-entitled matter, to the best of my knowledge and

11   ability.

12

13

14                         /s/ Leigh B. Gershowitz_____

15                         Leigh B. Gershowitz, RMR, CRR

16

17

18

19

20

21

22

23

24

25