1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

SINGULAR COMPUTING LLC,                )
                                       )
5              Plaintiff,              )
                                       )
6                                      )    No. 1:19-CV-12551-FDS
    vs.                                )
7                                      )
    GOOGLE LLC,                        )
8              Defendant.              )

9

10

11          Before the Honorable F. Dennis Saylor, IV,
                United States District Court Judge
12              motion hearing via videoconference
                held on Tuesday, October 25, 2022.

13

14

15

16

17

18

19

20

21

22
                    Leigh B. Gershowitz, RMR, CRR
23                 Official Federal Court Reporter
                      United States Courthouse
24                  300 State Street, Room 303D
                   Springfield, Massachusetts 01105
25

1    APPEARANCES:

2    On Behalf of the Plaintiff:

3            PRINCE LOBEL TYE LLP
             By:  Paul J. Hayes
4            -and-
             By:  Kevin Gannon
5            One International Place, Suite 3700
             Boston, Massachusetts 02110
6            617-456-8000
             Phayes@princelobel.com

7    On Behalf of the Defendant:

8
             KWUN BHANSALI LAZARUS LLP
9            By:  Asim M. Bhansali
             555 Montgomery Street, Suite 750
10           San Francisco, California 94111
             415-630-2350
11           -and-
             WOLF, GREENFIELD & SACKS, P.C.
12           By:  Nathan R. Speed
             600 Atlantic Ave
13           Boston, Massachusetts 02210
             617-646-8000
14           -and-
             PAUL HASTINGS LLP
15           By:  Matthias A. Kamber
             101 California Street, 48th Floor
16           San Francisco, California 94111
             415-856-7000
17           Matthiaskamber@paulhastings.com

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              (Hearing commenced at 1:32 p.m.)

3         THE CLERK:  Court is now in session, the matter of

4    Singular Computing LLC versus Google LLC, Civil Action

5    No. 19-12551.  Participants are reminded that photograph and

6    recording and rebroadcasting of this hearing is prohibited

7    and may result in sanction.

8         Would counsel please identify themselves for the

9    record, starting with the plaintiff.

10        ATTORNEY HAYES:  Paul Hayes for the plaintiff.

11        ATTORNEY GANNON:  Kevin Gannon for the plaintiff.

12        THE COURT:  Good afternoon.

13        ATTORNEY SPEED:  Good afternoon, your Honor.  Nathan

14   Speed from Wolf, Greenfield & Sacks on behalf of the

15   defendant, Google.  I'm joined by Asim Bhansali and Matthias

16   Kamber.

17        THE COURT:  All right.  Good afternoon.

18        ATTORNEY BHANSALI:  Good afternoon.

19        ATTORNEY KAMBER:  Good morning, your Honor.

20        THE COURT:  All right.  This is a hearing on what I

21   think is Docket 359, which is Google's motion to amend -- to

22   add certain contentions.  If I'm thinking about this clearly,

23   which may not be correct -- in fact, it is probably more

24   likely not correct than correct -- there's kind of three

25   broad categories.  Google wants to make certain amendments in

1    response to the *Markman* order, wants to make certain

2    amendments in response to what has happened at the PTAB, and

3    then this issue with the -- what is either prior art or not

4    concerning the GRAPE-3 system and the Hamada and Lienhart

5    articles.

6           Unless I'm missing something -- and again I may well

7    be -- I'm inclined to permit the amendments to the -- to the

8    extent that they address the *Markman* order.  And I'm not sure

9    that is terribly controversial, but I could be corrected, and

10   so it is not clear to me we need to spend much time on that.

11   But the other two issues I would like some further argument

12   or explanation.

13          So with that, Mr. Speed, are you taking the lead

14   here?

15          ATTORNEY SPEED:  I think it is going to be

16   Mr. Bhansali.

17          THE COURT:  Okay.  Mr. Bhansali?

18          ATTORNEY BHANSALI:  Thank you, your Honor.

19          And your Honor, I think the categories broadly

20   defined are correct with maybe two nuances.  First, I think

21   that the amendments that we are making with respect to

22   GRAPE-3 that we're proposing to make are also addressed to

23   the *Markman* order.  And so the addition of Hamada and

24   Lienhart relate to obviousness grounds that are intended to

25   address the *Markman* order.  And I can address that in more

1    detail.

2          And then with respect to the -- what your Honor

3    referred to as the PTAB developments, I guess I would -- I

4    would maybe frame that as relating to the positions that

5    Singular is taking on appeal in the Federal Circuit from the

6    PTAB's order  because had Singular not appealed the adverse

7    portions of the PTAB decision, then we wouldn't be seeking to

8    amend our contentions on that front.  And so with that, let

9    me maybe just kind of dive in.

10          I think, as your Honor recognizes, most of the

11   relief that we're seeking is unopposed and is the relief that

12   is directed to the claim construction order, both on the

13   noninfringement contentions as well as on the three other

14   prior art systems, the Leeser, Belanovic, VFloat library

15   system, the Cray system and the CNAPS system are all

16   unopposed.  And we have, you know, in light of the PTAB

17   decision, we've narrowed our prior art case essentially to

18   these four prior art systems.

19          And really the amendments that we're seeking to make

20   to GRAPE-3 are very similar to the others in that what we're

21   seeking to do is to say we had charted this GRAPE-3 system in

22   our original contentions.  And there are certain limitations

23   that arise from your Honor's adoption of the claim

24   construction positions that Singular advocated related to

25   memory and then how that might require some kind of control

1    in the processing element.  And what we're positing is that

2    if you take the GRAPE-3 system, it would've been obvious to a

3    person of ordinary skill in the art to essentially add those

4    features.  And we're pointing to the Hamada and Lienhart

5    references as -- as the additional references that you would

6    combine with GRAPE to show why that would've been obvious.

7          These are not grounds that we could have asserted in

8    the PTAB because the core basis of our -- of this invalidity

9    argument is the GRAPE-3 as a system.  And we're only relying

10   on Hamada and Lienhart for this one, you know, additional

11   element arising out of the claim construction for 103

12   obviousness combination.  Singular doesn't dispute that they

13   had notice of these articles and also that, you know, had

14   they chosen to, they could've taken discovery on GRAPE-3.

15   So --

16          THE COURT:  Let me interrupt you if I can.  You keep

17   referring to GRAPE-3 as a system, which I'm sure it is, but

18   in a way that makes it sound like it is not subject to the

19   usual rules and limitations about prior art.  I mean, I

20   thought you disclosed it as a prior art reference.  I mean,

21   it is not an article in a scholarly journal or a patent, but

22   it is -- isn't it still prior art?  In other words, why would

23   it be differently from any other prior art?  And can't I turn

24   that argument around that you make, well, GRAPE-3 refer to

25   Hamada and Lienhart, so you knew the articles existed, right,

1  if they're referred to in GRAPE-3, and you're saying well, we

2  want to combine Hamada with GRAPE-3 and that shows that it is

3  obvious, meaning Hamada will be treated like prior art,

4  right?  I mean, that's what you're saying, you take these two

5  items of prior art, combine them, and it would've been

6  obvious.  I'm not being very articulate here, but I don't

7  understand why GRAPE-3 should not be treated as any other

8  form of prior art and, for that matter, Hamada and Lienhart,

9  like any other form prior art.

10      ATTORNEY BHANSALI:  Yes, your Honor.  I think

11  GRAPE-3 should be treated as a system, so nonprinted

12  publication prior art.  So, in other words, as your Honor

13  recognized -- I think you have two decisions on this, the

14  *SiOnyx* and *Palomar* cases under, you know, section -- I think

15  it is the estoppel provision that arises after a final

16  written decision of the PTAB only applies to printed

17  publication art.  It doesn't apply to prior art systems.  I

18  think that is -- I don't think Singular itself disputes that.

19  And so --

20      THE COURT:  Hamada itself is a printed publication,

21  correct?

22      ATTORNEY BHANSALI:  Yes, your Honor, it is.  And --

23  but we're not -- we're only relying on Hamada to address this

24  one element.  So it is the memory element.  As you recall,

25  your Honor construed the claim to say that a low precision,

1    high dynamic range execution unit requires an arithmetic

2    circuit paired with memory.  That was Singular's claim

3    construction position.  So they wanted a narrower

4    construction there.  And so Hamada only addresses that

5    one -- one aspect that your Honor found in the claim

6    construction.  The core prior art reference is the GRAPE-3

7    system, which we have two -- we have some different sources

8    of proof for that.  And so all we're saying is this is not a

9    ground that we could have brought before the PTAB because the

10   GRAPE-3 system could not have been raised as prior art before

11   the PTAB.

12          And so we're bringing that GRAPE-3 system as the

13   prior art.  But in order to do that, after your Honor's claim

14   construction order, we have to say -- we think our argument

15   is stronger if we say, well, it would've been obvious

16   to -- to the extent that they say that GRAPE-3 doesn't

17   disclose memory, it would've been obvious to add memory as

18   shown in Hamada and Lienhart.  So it is treated -- so it is

19   treated like other prior art.  And under section 315, 315(e),

20   35 USC 315(e) estoppel --

21          THE COURT:  That's the estoppel statute?

22          ATTORNEY BHANSALI:  Yeah, that's the estoppel

23   statute, your Honor.  That doesn't apply to the GRAPE-3

24   system.  And all we're doing is saying, okay, we're going to

25   take this GRAPE-3 system and instead of having just an

1    anticipation ground, we're adding a 103 obviousness ground,

2    which is addressed directly to the limitation that your Honor

3    found in adopting Singular's positions in the *Markman* order.

4             THE COURT:  Okay.

5             ATTORNEY BHANSALI:  I don't know if your Honor has

6    further questions on that.  If not, I can move to the claim

7    construction -- the Federal Circuit claim construction issue.

8             THE COURT:  Okay.

9             ATTORNEY BHANSALI:  As to that issue, I think the

10   important thing, your Honor, just sort of up front, this is

11   not a new position.  Our original infringement contentions --

12   noninfringement contentions and the red line of those to the

13   new position is in sealed Exhibit 2, put Singular on notice

14   that if they take this narrow position on what the claims

15   mean, then that would provide us with a noninfringement

16   argument.  Singular has been on notice of that since -- since

17   very early -- since early in the case.  They took fact

18   discovery.  They deposed our witnesses on this very aspect of

19   the operation of the -- of the accused product.  We lay that

20   out in our opening memorandum of law at page 15.

21            And because this relates to nonpublic -- sort of

22   nonpublic aspect of the -- of the way that the product

23   operates, I'm referring to the sealed papers rather than

24   describing the actual operation, your Honor, since we're in

25   an open hearing.  But I -- obviously, if -- I can try to

1   provide more detail if that would be helpful.

2          So Singular had notice of our position

3   since -- since before they took the depositions of all of

4   our -- all of our engineers.  They asked about this and got

5   discovery on it.  And then they continued to maintain this

6   narrow construction in the PTAB.  The PTAB rejected that

7   position.  And then in July of this year, July of 2022, they

8   filed their notice of appeal in the PTAB.  And as one of the

9   issues they identified as a basis of their appeal is the

10  claim construction that the PTAB rejected.

11         And so all we're seeking to do is to say, look, you

12  were already on notice of this.  And now, our contentions,

13  the amended contentions, would say, if this claim

14  construction is adopted, then we have a dispositive

15  noninfringement argument.  And they need look no further than

16  the admissions of their expert, all of which we laid out in

17  our opening memorandum of law, as to why we would not

18  infringe under this claim construction.

19         So the amendment is really adding clarity and really

20  putting a fine point on a noninfringement position that

21  Singular already had notice of and took -- took discovery

22  about, your Honor.  And the big picture here is, they want to

23  have their cake and eat it too.  They want to advocate a

24  narrow construction in the Federal Circuit to preserve the

25  validity of claims, but they want to walk away from the

1   admissions that would provide a dispositive noninfringement

2   argument under that narrow construction.  And we're just

3   simply trying to put them on the clearest notice possible,

4   beyond what they already had, that that position creates a

5   noninfringement argument.  Particularly because we're about

6   to go into expert discovery and we want to make sure that

7   those positions are all fully aired out in expert discovery.

8           THE COURT:  One of the things I find head

9   scratching -- and really this is from both sides -- is just

10  exactly what I'm supposed to do with this.  There's,

11  obviously, a very good chance that this case will go to trial

12  before the, you know, appeal is resolved.  My decision at

13  this point is law of the case.  I can't quite figure out how

14  this is going to play out in this case and whether or

15  not -- I mean, are these really, you know, infringement or

16  noninfringement contentions or is it judicial estoppel?  I'm

17  having trouble figuring out, as a practical matter, what this

18  means going forward.  I mean, I can say, "All right, you can

19  amend your contentions and your experts can opine," but now

20  what?  What happens at the trial?  How does this work?  I

21  don't get how this is going to play out going forward.

22          ATTORNEY BHANSALI:  Well, your Honor, I think what I

23  would say is Singular's appellate brief is due in December.

24  And I think as -- I think your Honor at the last status

25  conference recognized that there's some open issues around

1    the appeal.  And I think what I would propose -- what Google

2    proposes -- is we go through expert discovery with this

3    issue, you know, disclosed as part of our contention so that

4    both sides address it and that we can then address how and if

5    that affects the trial at a future status conference.

6              Because the -- I think, your Honor, the one

7    thing -- you mention that your claim construction is law of

8    the case.  We, obviously, you know, don't -- we're not -- we

9    didn't seek to reconsider your Honor's claim construction and

10   are going to pursue our expert reports under your Honor's

11   claim construction.  But this was not a situation where your

12   Honor rejected the claim construction that Singular is

13   putting forth in the -- in the Federal Circuit.  They never

14   took that position in front of your Honor and it wasn't

15   really relevant to any of the positions Google was taking.

16   It was not as if that was sort of contrary.

17             So there was no reason for us to sort of point to

18   Singular's contention in the claim construction and say,

19   "Hey, look, this supports the Google position" because it

20   wasn't really relevant to any of the arguments that we were

21   making.  And it really is just a narrowing by Singular for

22   validity purposes relative to the way they construed the

23   claim in front of your Honor.  It is the classic Supreme

24   Court view of patents from the 1860s.  You can't have a nose

25   of lax, right?  You can't say it is narrower in front of

1    the -- you know, when you're trying to preserve validity and

2    then say it is broader when you're arguing infringement.

3         And so at this stage, it is a challenging issue

4    because of the timing between the Federal Circuit and the

5    trial in front of your Honor.  But I think we have to -- what

6    I would say is, let's push forward in expert discovery and

7    then kind of have all of the issues aired out so it is all on

8    the table, and then we can address later what to do with it.

9    Because it would, of course, be highly prejudicial to Google

10   for Singular to be able to pursue an infringement theory

11   under a broader claim construction than a narrower claim

12   construction that they ultimately were to prevail on in the

13   Federal Circuit.

14        THE COURT:  Okay.  All right.  Mr. Hayes?

15        ATTORNEY HAYES:  Yes, your Honor.  I gave you a

16   little bit of a -- some slides because my brother's argument

17   that most everything in their brief is unopposed is I think a

18   little much.

19        But in any event, so that it is clear, the first

20   issue, as I see it, is what prior art references are they

21   trying to get into the case?  And there's two.  Lienhart and

22   Hamada.  That's it.  And they're printed publications.  Now,

23   in that slide, as we've had, is, obviously, this local rule.

24   They tried to sort of bootstrap that into the case and say,

25   for some reason, as if it is mandatory.  The rule is, as

1     we've pointed out, it is discretionary.  It says, "maybe

2     amended," not "shall be amended," etcetera.

3              Now, that is important to some degree, the reason

4     being is if we look at the law as it relates to estoppel,

5     they, as a matter of law, black letter law, are prohibited

6     from relying upon those two references.  As we pointed out,

7     they knew, or could've known, but they did know.  And this is

8     undisputed.  As of -- they filed their IPR petition November

9     6th, between October and then the last one, November 6th.

10             At November 6th, they knew of the Lienhart

11    publication.  We know they knew of the Lienhart publication

12    because they sent it to us in an e-mail.  In the Lienhart

13    publication is the reference to the Hamada reference.  So

14    they knew of both of those at the time of the IPR and thus,

15    as a matter of law, per se law, they are prohibited from

16    using them in this litigation in any way, shape, or form.

17    That's just what the law is.

18             So I understand that there's a local rule.  But

19    there's also a statute.  And the statute says, as we brief,

20    that they are prohibited from using these and, therefore,

21    they're out.  Now, they -- they can be out on a summary

22    judgment motion, which we would file anyways with respect to

23    all of the other stuff, or with respect to them here.  But, I

24    mean, clearly, as a matter of law, they can't try to use this

25    local rule to go around the estoppel law.  And the fact is,

1   as a matter of law, these facts, as I put in this slide page

2   5, are undisputed.  And, therefore, as a matter of law, bang,

3   it is out.

4          Now, with respect to -- so that's with respect to

5   the two publications.  I have here the explanation, which we

6   put in the brief, about diligence.  And, obviously, they've

7   been aware of the Lienhart reference for 21 months.

8   Twenty-one months and then they wait until now, August 24th,

9   to try to amend their contentions and try to make it up out

10  of a local rule, vis-à-vis -- vis-à-vis a claim construction

11  event.  I mean, that is -- I think under the *Phillips* case,

12  with the lack of diligence, I mean, it can be dismissed,

13  their motion, on no diligence and prejudice.

14         Now, here's another thing.  Now, discovery closed

15  July 23rd, 2021.  So now, four months -- 14 months after the

16  close of discovery, they want to add two publications that

17  they've known about for 21 months, all conveniently after all

18  of their witnesses have been deposed.  Clearly, we didn't

19  depose anybody on these publications because they never

20  identified them as any -- as even being in their contentions.

21  So my position is I think, as a matter of law, the Court

22  should get rid of these two publications under the estoppel

23  law.

24         Now, for the Court's edification, we intend, fairly

25  soon, to file a summary judgment motion because we believe

1    that, in fact, all of their art is out.  Now, the reason I

2    say that, Judge, is my brother said at least three times that

3    when it comes to GRAPE-3, or a system, that that does not

4    have anything to do with the estoppel law.  That is

5    absolutely incorrect as a matter of law.  What you have to

6    understand, the only evidence that they've produced, to date,

7    on this GRAPE-3 system, or any of these other two systems,

8    are printed publications describing those systems.

9          And, in fact, they submitted claim charts where they

10   represented to the -- in the claim charts that these

11   publications have each and every element of the claim that

12   they anticipate on the face of it.  So the law, contrary to

13   my brother's argument, is that if, in fact, that is the

14   circumstance, if, in fact, they try -- this, quote, system

15   is, quote, described in a printed publication, then they

16   could've put that before the patent office and it is

17   excluded.

18         And we've cited -- we have a bunch of cases to that

19   effect.  We didn't cite that in this case because it is sort

20   of like a little bit -- I didn't realize my brother was going

21   to make the argument that the estoppel doesn't apply to

22   systems because it does.  It just depends on the

23   circumstance.  So in any event, the only issue here before

24   the Court are the two publications on that matter.  And I

25   think, as a matter of law and the statute, that they should

1   be excluded.

2          Now, when we talk about the infringement stuff,
3   this, in our view, is nothing more than trying to get a
4   second bite at the claim construction apple.  All right?
5   They base their idea of this, of -- to amend all of this
6   stuff, on the theory of a position that Singular took in the
7   IPR.  They keep talking about that.  Well, here's the point,
8   Judge.  They knew of this position as of February 2021.  They
9   knew of the position we took with respect -- an argument with
10  respect to a Singular piece of prior art.  They knew about
11  that.  Right?  No dispute about that.

12         The *Markman* hearing is in March 2021.  Did they
13  bring that to your attention and say, Listen, this is the
14  position that they're taking in the IPR, so you shouldn't
15  construe the claim the way you did.  You should construe it
16  in a different manner?  Answer, no.  Did they -- did they
17  bring this to the Court's attention after you issued your
18  *Markman* hearing -- ruling?  No.  Did they move for
19  reconsideration after you issued your *Markman* hearing?  No.
20  Zero.

21         They made the tactical -- the tactical decision not
22  to bring in anything relative to the IPR.  Why would that be?
23  Because they argued in the IPR that, in fact, everything is
24  just clear and ordinary.  And then they had all of these
25  other arguments to you.  So they want two bites at the apple.

1    If they were that concerned about these statements -- and we

2    didn't address every single little nuance of them, but if

3    they were that concerned, they should've brought it up in

4    your court to let you know about it, not now, after the fact

5    and after the fact we have all of this makeup stuff about the

6    Appeals Court and this and that.

7          And the bottom line is claim construction is done.

8    As a matter of law, you don't have to even look at claim

9    construction in the PT -- in the IPR circumstance.  That is

10   irrelevant.  Actually, whatever it is, they can argue.  But

11   the point is, that has nothing to do with the price of bread

12   for the purposes of this case.

13         If they wanted that claim construction to be

14   anything relative to these arguments that my brother is

15   hallucinating, they bring it up to you and make a decision.

16   What they want you to do, eventually down the road -- because

17   we've been doing this for too long -- is they want some

18   negative inference where you don't infringe if you do this.

19   They want a claim construction do over on that.  And the law

20   on that is egregious, is difficult to have that done.  This

21   is like a back door whatever.

22         So my position on this is Google made a

23   tactical -- particular tactical decision not to bring any of

24   the statements made by either side to the -- to this Court.

25   And now, losing in the IPR, they want a whole redo.  And

1   losing in the claim -- in the -- of the *Markman*, they want a

2   redo.  And I think it is just not time for that, Judge.  It

3   is just too much.  And then, you know, all they want is -- it

4   is just -- whatever.  So that's our cir -- that's our

5   position.

6          THE COURT:  So --

7          ATTORNEY HAYES:  Go ahead.

8          THE COURT:  You're saying I should not take this

9   into account at all, that Singular -- I don't hear you

10  contradicting this -- taking a different view in this court

11  than in the IPR proceeding?  In other words, taking a broad

12  view of the patent here and narrow view in the PTAB

13  proceeding and say that, to the extent that that difference

14  exists, they've waived their right to assert it here; is what

15  I think I hear you're saying?

16         ATTORNEY HAYES:  Exactly.  First of all, first of

17  all, I didn't get into disputing that they're saying we're

18  taking different positions here and there because we're not

19  at all.  That was not what the circumstance is.  They

20  cite -- they -- it is too complicated to get into that.  It

21  would not have been complicated should we have had that

22  before you in a *Markman* hearing where we could brief and

23  argue it, et cetera.

24         But I think for the purposes here, my brother's

25  statement that we're taking different views is wrong, first

1   of all.  And, two, it related to a nonasserted claim and, in

2   this case, not even related to prior art that is going to be

3   in this case.  It started to distinguish a piece of prior art

4   of a non -- in a nonasserted claim.  And they want to

5   trans -- they want that to be bootstrapped into some type of

6   noninfringement defense because in their claim construction

7   they just happened to lose.

8           So I think that, obviously, that's -- that -- that's

9   our position here.  They waived it.  Plain and simple.  And

10  if they have anybody to blame about it, it is themselves

11  because they never cited it or brought it up to you, for

12  obvious reasons.  We never briefed it.  We never got to

13  address all of that stuff relative to what they say was said,

14  Google said, et cetera, at all.

15          So that's -- that's sort of our position on this,

16  Judge.  One is with respect to -- with respect to this --

17  their noninfringement theory, we think they waived that by

18  not giving it to you and letting you decide it.  And, two,

19  with respect to the first one, as a matter of law, those

20  publications cannot be part of this lawsuit.

21          And with respect to the -- this system, we will file

22  a summary judgment motion, sort of shortly, because this

23  seems like this is probably a good time to do it right now.

24  The group 3 system is -- cannot be used either.  And we have

25  law and the cites and everything to that effect.  So there

1  will be a motion, Judge, with your permission, obviously, to

2  chuck out validity in this case.

3            THE COURT:  All right.  Mr. Bhansali, do you want to

4  respond?

5            ATTORNEY BHANSALI:  Yes, your Honor.

6            Let me start with the claim construction issue.  I

7  think it is important to recognize again that this is a

8  position that Singular is advocating in the Federal Circuit,

9  the appellate court, whose decision would be, on a claim

10 construction, would be binding on your Honor and on Singular.

11 And we've laid out in our briefing, in quite detail, why,

12 under their own expert's clear admission, that would put us

13 in a position where we have a dispositive noninfringement

14 argument based on their admission.

15           The only tactical behavior here is Singular taking

16 these inconsistent positions.  We had no reason -- have no

17 reason and had no reason -- to advocate for that construction

18 in front of your Honor.  That's not our position.  We

19 advocated for the opposite construction in the PTAB.  And

20 won.  But if Singular were to prevail in the Federal Circuit,

21 then that would be inconsistent with their infringement read

22 before your Honor.

23           And so -- and this construction does not relate to

24 an unasserted claim.  It goes to the definition of the low

25 precision high dynamic range execution unit, which is in

1    every claim, including the asserted claims of the patent.

2    And so the only way to address this is for the parties to

3    address this in expert discovery and then, your Honor, for us

4    to address it in a -- at a later status conference when the

5    parties' positions on appeal are more fully fleshed out

6    because, you know, we haven't seen Singular's appellate brief

7    yet.  All we know is thus far is that in July they told the

8    Federal Circuit that they intend to appeal the claim

9    construction.  And so that's what we're expecting.

10              And, again, there's no prejudice to Singular from

11   this issue being in the case because they don't dispute that

12   our infringement contentions had them on notice of this and

13   that they took discovery on this very feature, which is the

14   one that they're saying if a -- if a chip has that, then it

15   can't be a low precision high dynamic range execution unit.

16   So that's on the claim construction issue.

17              On the prior art, your Honor, I think one thing

18   to -- I think it is worth pointing to the language of the

19   statute.  And your Honor has addressed this statute in the

20   *Palomar* and *SiOnyx* decisions.  What the estoppel relates to

21   is on any ground.  In other words, what it says is that you

22   may not -- you may not request or maintain a proceeding with

23   respect to that claim on any ground that the petitioner

24   raised or reasonably could've raised during that inter partes

25   review.

1          And the ground here is based on a system, the

2     GRAPE-3 system.  And if later Mr. Hayes wants to challenge

3     whether GRAPE-3 is a system at summary judgment, that's his

4     prerogative.  We'll address that when it's -- when he makes

5     that argument and we have a full discovery -- expert

6     discovery record addressing -- addressing that.  But that's

7     not before the Court right now, whether GRAPE-3 is or isn't

8     properly brought as a system reference.  The only issue

9     before the Court is whether, in light of the claim

10    construction order, we can refer to the Hamada and Lienhart

11    articles to address the limitations that were found and

12    adopted in your Honor's claim construction order.  And as to

13    that --

14          THE COURT:  And that is limited to this -- to the

15    language about being paired with a memory?

16          ATTORNEY BHANSALI:  Yeah, paired with the memory,

17    yes, your Honor.  And there's a section, which Singular

18    hasn't addressed, where we say, well, in light of that, your

19    Honor sort of kind of has some discussion of control.  So we

20    point to -- we point to a portion of the references that also

21    discusses control.  It is limited to those two issues with

22    respect to Hamada and Lienhart.  Otherwise, we're just

23    relying on GRAPE-3 as it existed in the preexisting chart.

24          And exhibit -- let me just make sure I have the

25    right exhibit number, look at the charts.  I think it is

1    Exhibit 5 -- I'm sorry, your Honor.  Exhibit 6.  361-6 is our

2    red line claim chart for GRAPE-3, for the GRAPE-3 system

3    grounds.  And as you'll see, it is, like, one paragraph in

4    there that just addresses this limitation.

5         So it is not like we're bringing in these articles

6    to kind of address all of the elements.  It is really just

7    that one piece.  And that will be -- that is very clear from

8    the red line that we submitted as Exhibit 6 to our -- it is

9    Exhibit 6 in my declaration in support of the motion.  So

10   that is 361-6, ECF 361-6.

11        But, again, the black letter law, your Honor, to be

12   clear -- since Mr. Hayes used the phrase "black letter

13   law" -- the black letter law is that you can combine a system

14   reference with a publication without being estopped because

15   that is a ground, which is the language in the statute that

16   could not have been raised in the Federal Circuit.  And,

17   again, these were not -- this issue wasn't briefed in any

18   detail, but I would point your Honor to your *SiOnyx* decision,

19   330 F. Supp. 3d 574, 2018, and your *Palomar* decision, 373

20   F. Supp. 3d 322, 2019, which actually lay these -- lay out

21   this principal in, you know, with some clarity.  And in

22   fact --

23        THE COURT:  Well, as I like to say, I hope you have

24   better authority than that.

25        ATTORNEY BHANSALI:  Your Honor, we did cite

1   other authority -- I mean, the better authority is the

2   statute.  The statute is very clear on that.  But I -- I

3   would just simply say that we are allowed to rely on

4   publications to prove the elements and content of the system.

5   And the law is clear on that, so.

6           THE COURT:  Okay.  All right.  Mr. Hayes, last word.

7           ATTORNEY HAYES:  Your Honor, just, first of all, my

8   brother just indicated or said to you somehow that the

9   statement in the IPR goes to the definition of the low

10  precision high dynamic range.  If my brother believed that to

11  be a correct assessment of the circumstance, he would've

12  brought that to your attention during the *Markman* hearing,

13  which he didn't, after the *Markman* hearing, which he didn't,

14  or reconsideration motion, which he didn't.

15          As far as we're concerned -- and if you look at

16  the -- we didn't brief all of this because it is not a -- I

17  don't think it is apparent -- appropriate, is that

18  they -- the statement that they say we did make there and

19  that the expert's testimony, they cropped his testimony.  I

20  mean, and it has been done over and over and over.  No one

21  has had a chance to do any of this, which they would've had

22  we had a *Markman* hearing where they didn't play the game and

23  not bring it before you.  That's the first thing.

24          And the second thing, my brother's assessment of the

25  law is, with all due respect, wrong.  That is not -- simply

1    because you say, "Oh, I have a device," who cares if you have

2    a device?  They told the -- they submitted claim charts

3    saying that device in itself anticipates based what?  Based

4    solely upon a printed publication.  Not -- we have

5    not -- they never produced the device.  Who knows who made

6    it.  No evidence whatsoever.  The only evidence of quoted

7    device is a printed publication that they specifically

8    represented at each and every element of the claim.  And the

9    law on that is exactly opposite to what my brother just said.

10         And, in fact, the case -- I mean, I have a, shall we

11   say, a draft of the summary judgment on all of this.  But the

12   law is that, under these particular circumstances, that those

13   three devices are out.  Because all they -- they could've put

14   those publications before the patent office.  They decided

15   not to, for whatever reason.  And they have to live with the

16   consequences of their act.

17         And so -- and by the by, that is not even before the

18   Court now.  We are not before the Court on whether

19   group -- this 3 or, whatever, is a system, in or out.  The

20   only issue is whether these two publications are indeed

21   precluded as a matter of law, which they are.  You can't say,

22   well, we're only going to use them for paragraph 4 or

23   paragraph 7, relate to this, that, and whatever.  That you

24   can't do.  They cannot be used for anything.  Why?  Because

25   they were known at the time and they could've been given to

1    the patent office and they chose not to.  I mean, that is

2    just the law.

3              We could supplementary brief this group thing, but I

4    don't think it is -- this group 3 system, et cetera, with the

5    law on that.  But I don't think it is -- like, right before

6    you at this point in time.

7              ATTORNEY BHANSALI:  Your Honor, that was a little

8    more than a last word.  Might I have an opportunity to

9    briefly respond?

10             THE COURT:  All right.

11             ATTORNEY BHANSALI:  I think Mr. Hayes's last point

12   is really the one that should dispose of the GRAPE-3 issue,

13   which is it is not before you right now whether GRAPE-3 is

14   properly brought as a ground for invalidity.  And if GRAPE-3

15   is a proper ground, then all we're doing -- or -- if it is

16   not before you whether GRAPE-3 is a proper ground, then the

17   only issue is whether, in light of the *Markman* order, we can

18   amend, in order to amend our contentions, in order to address

19   the limitations in the *Markman* order.  That is all we're

20   seeking to do.  And then if he wants to challenge later the

21   propriety of GRAPE-3 or of these grounds, he can do that.

22   But what is before your Honor right now is whether this

23   amendment is driven by the *Markman* order.  And we've shown in

24   our papers and I've explained here why it is.  Because it is

25   just addressed to those limitations.  So that should really

1    dispose of that issue.

2          And on the claim construction, your Honor, their

3    position seems to be that we should have regaled your Honor

4    with all of the back and forth that both parties were taking

5    in the IPR when that entire proceeding was interlocutory

6    because there was no decision.  That doesn't -- that would

7    be -- that would make the claim construction a mess, your

8    Honor.  We didn't bring it to you because it wasn't directly

9    relevant to either party's sort of opposed arguments in the

10   *Markman*.  And it wasn't a decision yet of the PTAB, much less

11   one that is being advocated before the Federal Circuit.

12         And as I said before, if they weren't appealing the

13   PTAB decision, we wouldn't be here on that issue.  But

14   they're the ones taking it to the Federal Circuit, which is

15   why we want to add that clarity to our contentions so that

16   the issue is addressed in the discovery in this case.  The

17   expert discovery.  It has been addressed in the fact

18   discovery, but in the expert discovery, your Honor.

19         THE COURT:  All right.  I'm going to take this under

20   advisement.  I want to digest this a little bit and go back

21   and look at the briefs in light of this.  I'm not quite ready

22   to rule from the bench.  But I will try to get that decision

23   out as quickly as I can.  Okay?

24         ATTORNEY BHANSALI:  Thank you, your Honor.

25         ATTORNEY HAYES:  Thank you.

1            THE COURT:  All right.  Thank you.

2   (Whereupon, the proceedings were concluded at 2:14 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    CERTIFICATE OF OFFICIAL REPORTER

3

4

5            I, Leigh B. Gershowitz, Registered Merit

6    Reporter and Certified Realtime Reporter, in and for the

7    United States District Court for the District of

8    Massachusetts, do hereby certify that the foregoing

9    transcript is a true and correct transcript of the

10   stenographically-reported proceedings held in the

11   above-entitled matter, to the best of my knowledge and

12   ability.

13

14

15                              /s/ Leigh B. Gershowitz_____

16                              Leigh B. Gershowitz, RMR, CRR

17

18

19

20

21

22

23

24

25