# EXHIBIT AA

# Chicago-Kent Journal of Intellectual Property

Volume 19  
Issue 2 *PTAB Bar Association*

Article 4

1-28-2020

# Litigating Invalidity After IPR Resolution

Libbie DiMarco  
*Wolf Greenfield*, Elizabeth.DiMarco@wolfgreenfield.com

Nathan Speed  
*Wolf Greenfield*, Nathan.Speed@WolfGreenfield.com

Follow this and additional works at: https://scholarship.kentlaw.iit.edu/ckjip

 Part of the Intellectual Property Law Commons

### Recommended Citation
Libbie DiMarco & Nathan Speed, *Litigating Invalidity After IPR Resolution*, 19 Chi. -Kent J. Intell. Prop. 266 (2020).  
Available at: https://scholarship.kentlaw.iit.edu/ckjip/vol19/iss2/4

This Article is brought to you for free and open access by Scholarly Commons @ IIT Chicago-Kent College of Law. It has been accepted for inclusion in Chicago-Kent Journal of Intellectual Property by an authorized editor of Scholarly Commons @ IIT Chicago-Kent College of Law. For more information, please contact jwenger@kentlaw.iit.edu, ebarney@kentlaw.iit.edu.

PTAB declines to institute IPR for any reason—including because the petitioner failed to establish a reasonable likelihood of success on the merits—the petitioner is ***not*** estopped from pursuing those same invalidity theories in a parallel action.[18] As a result, one potential strategy for petitioners to consider is filing multiple petitions to preserve printed publication invalidity theories even if the PTAB is likely to institute on only one. Nevertheless, this strategy is risky in view of PTAB and district court guidance against gamesmanship.[19]

In view of the broad reach of IPR estoppel against paper prior art, paper prior art challenges under §§ 102 and 103 remain a viable option for IPR petitioners in parallel litigation after a final written decision only if uncovering the printed reference required extensive rather than "reasonable" search efforts, such as when there is no available English translation of a foreign reference.[20] On the other hand, the more difficult the reference is to uncover, the greater potential for the reference to face public availability challenges. For example, a thesis that was not properly indexed at a library and thus difficult for the petitioner/defendant to identify in its prior art searching may not be a "publication" given the improper indexing that made the reference difficult to locate in the first instance.

### B. Invalidity Defenses Based on Product Prior Art

IPR is limited by statute to paper prior art challenges.[21] As a result, IPR estoppel does not literally preclude a petitioner from later asserting an invalidity challenge based on product prior art.[22] One potential petitioner strategy

---

18. Milwaukee Elec. Tool Corp. v. Snap-On Inc., 271 F. Supp. 3d 990, 1029 (E.D. Wis. 2017) ("Thus, a petitioned ground for which IPR was not instituted, for whatever reason, does not give rise to IPR estoppel."); *see also* Great W. Cas. Co. v. Intellectual Ventures II LLC, No. IPR2016-01534, Paper 13, at 10 (P.T.A.B. Feb. 15, 2017) ("[T]he Board's determination not to institute an [IPR] . . . is not a final written decision . . . and thereby does not trigger the estoppel provisions under 35 U.S.C. [§] 315(c) . . . .") (internal citations omitted).

19. *E.g.*, Oil-Dri Corp. of America v. Nestlé Purina Petcare Co., No. 15-CV-01067, 2017 WL 3278915, at *8-9 (N.D. Ill. Aug. 2, 2017) (discussing the purpose underlying IPR estoppel which includes preventing petitioners from having a second bite at the apple); Rubicon Comms., LP v. Lego A/S, IPR No. 2016-01187, Paper No. 87, at 6-8 (P.T.A.B. Oct. 5, 2017) (discussing gamesmanship in the context of amendments to identify real parties in interest).

20. *See* SiOnyx, LLC v. Hamamatsu Photonics K.K., 330 F. Supp. 3d 574, 603 (D. Mass. 2018) ("There thus appears to be a genuine question of material fact as to whether a diligent, skilled searcher would have found Adkisson at the time the IPR was field; indeed, the examiner of the '591 patent tried 56 search strings and still did not turn up Adkisson.").

21. *See* 35 U.S.C. § 311(b) (2012).

22. *See SiOnyx*, 330 F. Supp. at 604 ("Therefore, to the extent SiOnyx is contending that defendants are estopped from relying on the S9840 CCD sensor, the motion for summary judgment will be denied."); Zitovault, LLC v. Int'l Bus. Machs. Corp., 2018 WL 2971178, *4 (N.D. Tex. 2018) ("Defendants can rely on the prior art systems in their invalidity contentions to argue anticipation or obviousness.").

to insulate litigation from the impact of IPR estoppel is to sever paper prior art theories from product prior art theories, pursuing paper prior art at the PTAB and product prior art in district court. However, it has become increasingly apparent that although IPR estoppel does not preclude invalidity theories based on product prior art, IPR estoppel has the potential to hinder *how* a petitioner proves invalidity based on product prior art.

Obtaining a physical prior art product in the same state it would have existed in at the relevant time period is not a simple feat. Often, no physical sample is available by the time patent litigation is initiated and it is not possible to analyze the product itself. Instead, expert testimony about a product's features is sometimes based on documents that describe the product.[23] Recent developments indicate that IPR petitioners may be estopped from relying on printed documents to prove a product prior invalidity defense if those printed documents constitute "printed publications" that reasonably could have been raised in an IPR.

In particular, several courts have suggested that an IPR petitioner cannot avoid IPR estoppel by relying on printed publications under the guise of a product prior art theory.[24] The Northern District of Illinois squarely addressed this issue in *Oil-Dri Corporation of America v. Nestlé Purina Petcare Company*, explaining that "[w]here there is evidence that a petitioner had reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation."[25] However, the court ultimately concluded that the patentee failed to establish that the disputed printed materials, which included a formulation sheet, were in fact "printed publications" that could have been raised in an IPR.[26] The court, therefore, ruled that IPR estoppel did not apply.[27] Other courts have reached similar conclusions.[28]

---

23. *See SiOnyx*, 330 F. Supp. 3d at 604 ("It is true that defendants' expert did not examine the product itself, but relied on documentation describing the product. But that documentation is evidence of how the product is configured, how it is made, and how it works.").

24. *See Milwaukee Elec. Tool Corp.*, 271 F. Supp. 3d at 1032 ("To the extent these written materials fall within the scope of Section 311(b), they are of course affected by IPR estoppel. Snap–On cannot skirt it by purporting to rely on a device without actually relying on the device itself.").

25. *Oil-Dri II*, 2019 WL 861394, at *10.

26. *Id.* at *10 ("[T]here is no indication that the advertisements contained sufficient detail to constitute a printed publication of the product or that Maxx Scoop's formulation details were ever published.").

27. *Id.*

28. *See SiOnyx*, 330 F. Supp. 3d at 603; Polaris Indus., Inc. v. Arctic Cat Sales Inc., No. 15-CV-04475, 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019).

Case 1:19-cv-12551-FDS   Document 420-2   Filed 01/20/23   Page 5 of 5

272         CHICAGO-KENT J. INTELL. PROP. | PTAB BAR ASSOCIATION          Vol 19:2

In *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, the District of Massachusetts indicated that an IPR petitioner may rely on printed publications describing a product so long as the printed publication, which could have been included in an IPR, is not the sole evidence of how the product works.[29] There, the court permitted the IPR petitioner's expert to rely on both a printed publication and non-public manufacturing specifications to form his invalidity opinion.[30]

Courts have also considered the reverse: whether IPR estoppel is broad enough to preclude an IPR petitioner from relying on the physical product if the product itself is described in a printed publication that reasonably could have been raised in an IPR.[31] Although some uncertainty remains, the growing consensus from the majority of courts that have considered this issue is that § 315(e) does **not** apply to products even if the products embody a printed publication that the IPR petitioner could have relied upon in the IPR.[32]

At least one court has even allowed an IPR petitioner to assert obviousness combinations that pair a product with a printed publication that could have been raised in the IPR. In *Polaris Industries v. Arctic Cat Inc.*, the District of Minnesota found that estoppel did not apply to the IPR petitioner's combination of a physical product with a patent because **that combination** could not have been raised in an IPR.[33]

Under the current state of the law, IPR petitioners can be relatively confident that evidence based on the product itself will not be estopped. Similarly, confidential written evidence of the operation of product prior art likely can be asserted in litigation after an IPR final written decision. However, courts are likely to continue drawing the line at printed publications describing product prior art. Petitioners seeking to assert a product prior art defense should search for evidence that was not publicly available to replace or at least supplement evidence found in printed publications.

---

29. *SiOnyx*, 330 F. Supp. 3d at 601 ("If defendants were relying on the datasheet alone, this might be a close question. . . ").
30. *See id.* at 604 ("Defendants' expert may rely on the combination of the publicly available datasheet and the private manufacturing specification to form his opinion that the publicly available product (in combination with other references) meets the elements of the claims.").
31. *See Polaris*, 2019 WL 3824255 at *3 ("Other courts, and this Court agrees, have held that products embodying patents or printed publications are not subject to § 315(e)(2) estoppel.").
32. *Id.*
33. *Id.* ("Combinations 1, 2, and 5 could not reasonably have been raised during the 433 IPR so Arctic Cat is not estopped from raising them in this case.").