IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>  Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>  Defendant. | C.A. No. 1:19-cv-12551-FDS<br><br>Hon. F. Dennis Saylor IV |

**DEFENDANT GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR A CONTINUANCE OF THE TRIAL**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 1

  A. The Remaining Asserted Claims Are Dependent Claims, and They Share a Common "Exceeds" Limitation. ........................................................................ 1

  B. The PTAB's Final Written Decisions ............................................................... 4

  C. The Pending Federal Circuit Appeal, and Singular's Claim Construction Position in that Appeal. ..................................................................................... 5

  D. Singular's Claim Construction Position at the Federal Circuit Provides Google With Additional Non-Infringement Defenses. ................................................. 8

III. LEGAL STANDARD .................................................................................................. 10

IV. ARGUMENT ................................................................................................................ 11

  A. Good Cause Exists for Continuing the Trial Until the Federal Circuit Issues a Decision in Google's Appeal. ......................................................................... 12

    1. If the Federal Circuit adopts Singular's proposed claim construction for the Exceeds Claims, then that claim construction must be applied in this case. ................................................................................................. 12

    2. Singular's proposed claim construction for the Exceeds Claims provides Google dispositive non-infringement defenses. ................................. 13

  B. A Continuance Will Not Prejudice Singular. .................................................. 13

V. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) .................................................................................... 14

*Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*,
   494 F. Supp. 2d 54 (D. Mass. 2007) .............................................................................. 12

*Data Engine Techs. LLC v. Google LLC*,
   10 F. 4th 1375 (Fed. Cir. 2021) ..................................................................................... 14

*Exergen Corp. v. Kids-Med, Inc.*,
   189 F. Supp. 3d 237 (D. Mass. 2016) ............................................................................ 12

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013) ....................................................................................... 1

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
   688 F.3d 1342 (Fed. Cir. 2012) ..................................................................................... 12

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
   No. C 16-03463 WHA, 2017 WL 6372971 (N.D. Cal. Dec. 13, 2017) ....................... 12

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
   No. 18-cv-12029-ADB, 2019 WL 1767394 (D. Mass. April 22, 2019) ....................... 14

*United States v. Saccccia*,
   58 F.3d 754 (1st Cir. 1995) ..................................................................................... 10, 11

**RULES**

D. Mass. R. 40.3 ................................................................................................................ 1, 11

**I.      INTRODUCTION**

Pursuant to Local Rule 40.3, Defendant Google, LLC ("Google") respectfully requests a continuance of the upcoming jury trial, which is currently scheduled to begin on September 11, 2023.  Dkt. No. 403; *see also* Dkt. No. 443 at 14:5-18.

Plaintiff Singular Computing LLC ("Singular") made the strategic choice to advance before the Federal Circuit a claim construction argument that Singular never advanced before this Court and which is incompatible with its current infringement theories.  Singular's decision has put the parties and this Court in an untenable position in which the jury will be asked in September to consider Singular's infringement theories under this Court's claim constructions even though a key construction may change only weeks later if the Federal Circuit adopts Singular's proposed construction.[1]  Any such change in claim construction creates a high risk of the need for a retrial, rendering the September trial a waste of time and resources.  The only practical recourse left is for the Court to grant a short continuance of the trial pending resolution of the Federal Circuit appeal.  Good cause exists for such a continuance.

**II.     BACKGROUND**

    **A.     The Remaining Asserted Claims Are Dependent Claims, and They Share a Common "Exceeds" Limitation.**

The two asserted claims remaining in this litigation are dependent claim 7 of U.S. Patent No. 9,218,156 and dependent claim 53 of U.S. Patent No. 8,407,273.  Dependent claim 7 of the '156 patent is exemplary and it (along with the claims from which it depends) is provided below:

---

[1] Rather than adopt Singular's proposed claim construction for the Exceeds Claims, the Federal Circuit could instead outright reverse the PTAB's patentability findings, rendering the two remaining asserted claims unpatentable.  This alternate outcome would also upend any previously held trial as Singular's infringement cause of action would be extinguished.  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013).

| **Claim 7 of the '156 patent** |
|---|
| **1.** A device comprising: **at least one first low precision high dynamic range (LPHDR) execution unit adapted to execute a first operation** on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value, wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and **for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=0.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input**; and at least one first computing device adapted to control the operation of the at least one first LPHDR execution unit.<br><br>**2.** The method of claim 1, wherein the at least one first computing device comprises at least one of a central processing unit (CPU), a graphics processing unit (GPU), a field programmable gate array (FPGA), a microcode-based processor, a hardware sequencer, and a state machine.<br><br>**3.** The device of claim 2, **wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide**.<br><br>**7.** The device of claim 3, wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/1,000,000 through 1,000,000. |

As the blue annotations above highlight, independent claim 1 of the '156 patent recites a device that includes "at least one" low-precision high-dynamic-range (LPHDR) execution unit that is adapted to perform a first arithmetic operation with a specified minimum amount of error. In independent claim 1 (and via dependency, asserted dependent claim 7), the error limitation is recited as "for at least X=5% of the possible valid inputs to the first operation, [the output] differs by at least Y=0.05% from the result of an exact mathematical calculation of the first operation." In other words, for some first operation (*e.g.*, a multiplication operation), the LPHDR execution unit has to produce an answer that is at least 0.05% wrong (error) at least 5% of the time. As discussed below, the Patent Trial and Appeal Board ("PTAB") found independent claim 1 of the '156 patent unpatentable and Singular dismissed its cross-appeal of that finding, rendering the PTAB's judgment final.

As the red annotations above highlight, dependent claim 3 (from which asserted claim 7 depends) narrows independent claim 1 by requiring that the number of LPHDR execution units in the claimed device "*exceeds by at least one hundred*" the number of "execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide." Thus, as exemplified in asserted claim 7, the asserted claims require comparing the number of (**A**) LPHDR execution units in the device with (**B**) the number of execution units in the device that are "adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide." As Singular alleged in its Amended Complaint, performing multiplication on floating-point numbers that are at least 32 bits wide "is defined in Singular's patent as 'high dynamic range arithmetic of traditional precision.'" Dkt. No. 37 at p. 42. The claimed device thus must have at least one hundred more LPHDR execution units (*i.e.*, execution units that generate errors in excess of the threshold) than execution units that perform multiplication on 32-bit floating-point numbers (*i.e.*, execution units that perform multiplication with traditional precision); in other words, there must be 100 more of (**A**) than (**B**). For simplicity, Google refers to the latter (**B**) execution units as "32-bit FP multipliers."

Claim 53 of the '273 patent is similar to claim 7 of the '156 patent. It too requires that the number of LPHDR execution units in the claimed device "exceeds by at least one hundred" the number of 32-bit FP multipliers in the device. As discussed below, the PTAB found Google had not proven dependent claim 7 of the '156 patent and dependent claim 53 of the '273 patent unpatentable, and Google's appeal of that finding remains pending at the Federal Circuit.

B.     **The PTAB's Final Written Decisions**

Google successfully petitioned for *inter partes* review of Singular's asserted patents[2], and the PTAB issued final written decisions in May 2022. Exs. A-B.[3] At a high-level, those decisions found that Google had proven a first set of Singular's claims unpatentable, but had not proven a second set of claims unpatentable.

In the first set of claims were those claims, like independent claim 1 of the '156 patent, that recite a device that includes "**at least one** first low precision high dynamic range (LPHDR) execution unit" that is adapted to perform a first arithmetic operation with a specified minimum amount of error. The PTAB agreed with Google that the prior-art Dockser reference either alone or in combination with the prior-art Tong reference rendered those claims obvious. *See, e.g.*, Ex. A at 20-64; Ex. B at 20-65.

In the second set of claims were those claims, like the two asserted claims, that require the number of LPHDR execution units in the device "*exceeds by at least 100*" the number of 32-bit FP multipliers in the device. Google will refer to claims falling into this second set as the "Exceeds Claims." Although the PTAB agreed with Google that it would have been obvious to implement a device with at least one LPHDR execution unit, it found Google had not proven that a person of ordinary skill in the art would have been motivated to implement a device with 100 more LPHDR execution units than 32-bit FP multipliers. *See, e.g.*, Ex. A at 64-80; Ex. B at 65-84.

---

[2] Google successfully filed petitions against all three patents that were originally asserted in this case, including U.S. Patent No. 10,416,961. After the PTAB found its asserted claims unpatentable, Singular agreed to drop the '961 patent and the parties are in the process of dismissing that patent from the case. Dkt. No. 451.

[3] All exhibits cited herein are attached to the Declaration of Nathan R. Speed.

4

### C. The Pending Federal Circuit Appeal, and Singular's Claim Construction Position in that Appeal.

Google appealed the PTAB's findings regarding the Exceeds Claims, while Singular initially filed cross-appeals seeking reversal of the PTAB's unpatentability findings but later dismissed those cross-appeals.[4] *See Google LLC v. Singular Computing, LLC*, Case Nos. 22-1866, -1867, -1868, -2013, -2014, -2015 (Fed. Cir.) at Dkt. No. 40 (dismissing cross-appeals). Briefing in Google's appeal has ended, and the Federal Circuit indicated it will schedule oral argument sometime between May and October of this year. *Id.* at Dkt. No. 60. A decision from the Federal Circuit would typically issue within one to three months after oral argument[5], which means a decision could potentially issue as early as July 2023 or as late as January 2024.

In short, Google is arguing on appeal that the PTAB committed legal error in finding that POSAs would not have been motivated, in view of Dockser and a different prior-art reference (called MacMillan), to implement a device with at least 100 more LPHDR execution units than 32-bit FP multipliers. In defense of the PTAB's decisions, Singular argues before the Federal Circuit that even if Google was correct that persons of ordinary skill would have been motivated to combine Dockser and MacMillan in the manner Google proposed, the resulting combination would still not render the Exceeds Claims obvious under the proper construction of those claims. It is this claim construction argument Singular is advancing that provides good cause for the Court to continue the jury trial until completion of the Federal Circuit appeal. The claim construction argument can be briefly summarized as follows.

---

[4] Singular dismissed its cross-appeals after Google explained to the Court that Singular's cross-appeals appeared poised to advance a claim construction position that was inconsistent with Singular's district court infringement theories. Dkt. No. 391 at 9:6-11:6. Dismissal of the cross-appeals made final the PTAB's finding that Google had proven obvious those claims of Singular's patents that recited a device with "*at least one*" LPHDR execution unit.

[5] *See, e.g.*, https://tinyurl.com/3run655p

The parties agree that Dockser has different modes of operation and the precision with which Dockser's execution unit (called an FPP) operates is adjustable such that it is adapted in one mode to perform LPHDR operations and is adapted in a different mode to perform 32-bit traditional-precision operations. *See, e.g.*, Ex. C (Singular's Federal Circuit Response Brief) at 10 (describing Dockser's "traditional-precision" and "reduced-precision" modes), 12-13 (similar), 40 (similar), 42 (similar), 62 (similar); Ex. D (Google's Federal Circuit Reply Brief) at 32 (explaining Dockser's execution units "are capable of both low- and full-precision operations"); Ex. E (Dr. Sunil Khatri's IPR Declaration)[6] at ¶¶ 46, 48, 51, 92 (describing Dockser as having a "full-precision mode" and "reduced-precision modes"). Because Dockser's FPP is adapted in certain modes to perform LPHDR operations, the PTAB determined that Dockser's execution unit was an LPHDR execution unit as recited in Singular's claims even though, in a different mode, it could also perform operations with 32-bit precision. Ex. A at 9-18, 27-28; Ex. B at 9-18, 28.

Having dismissed its cross-appeals, Singular no longer disputes that Dockser's execution unit is a claimed LPHDR execution unit. But Singular now argues before the Federal Circuit that Dockser's FPP is not ***only*** a claimed LPHDR execution unit ***but also*** a claimed 32-bit FP multiplier such that each Dockser FPP counts as ***both*** an LPHDR execution unit and a 32-bit FP multiplier. Specifically, Singular argues as follows:

---

[6] Dr. Khatri was Singular's expert during the IPR trials and is also Singular's infringement and invalidity expert in this case.

> A construction of "adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide" that would exclude the Dockser FPPs would be inconsistent with the ordinary meaning of the claim. A POSA would understand this term to include all units in the device that are designed to perform (or are capable of performing) "multiplication on floating point numbers that are at least 32 bits wide," even if those units can also perform other operations at lower precision.
>
> ***
>
> In sum, under the plain language of the Exceeds Claims, a Dockser FPP is both an LPHDR execution unit and an "execution unit[] adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide." Accordingly, the number of Dockser FPPs cannot exceed the number of "execution units adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide." The combination thus cannot render the Exceeds Claims obvious.

Ex. C at 65-66 (citations omitted); *id*. at 62-64; *but see* Ex. D (Google's Federal Circuit Reply Brief) at 31-35 (explaining errors in Singular's claim construction argument).

Under the claim construction argument that Singular is advancing at the Federal Circuit, a device that contains 100 of Dockser's FPPs will have at least the same number of LPHDR execution units (*i.e.*, 100) as 32-bit FP multipliers (*i.e.*, also 100) such that the "exceeds" language of the Exceeds Claims cannot be satisfied. Singular and Dr. Khatri raised this claim construction argument before the PTAB. Ex. E (Dr. Khatri's IPR Declaration) at ¶¶ 90-100; Ex. F (Singular's Patent Owner Response) at 28-36. The PTAB rejected the argument at the institution stage (Ex. G at 33-35; Ex. H at 31-34), but never reached the issue in its final written decisions.

As discussed immediately below, Singular and its infringement expert (Dr. Khatri) are interpreting the Exceeds Claims differently before this Court than how Singular is urging the Federal Circuit to interpret them. Put simply, Dr. Khatri does not count what he identifies as the accused LPHDR execution units in the accused Google products as **both** an LPHDR execution unit **and** a 32-bit FP multiplier, even though his own report confirms that the accused LPHDR execution unit is adapted to perform 32-bit floating-point multiplication—and thus would count as

7

a 32-bit FP multiplier under Singular's Federal Circuit claim interpretation. Ex. I at ¶¶ 128-129, 142, 148, 151, 163, 176.

### D. Singular's Claim Construction Position at the Federal Circuit Provides Google With Additional Non-Infringement Defenses.

In essence, Singular's claim construction position on appeal is that an execution unit that in certain modes can perform "multiplication on floating point numbers that are at least 32 bits wide," is a claimed 32-bit FP multiplier, even if that same execution unit is also adapted in other modes to perform LPHDR operations. Put another way, a dual-mode execution unit that in some modes performs as an LPHDR execution unit and in other modes performs as a 32-bit FP multiplier counts as both of the claimed execution units when comparing how many of each execution unit is present in the claimed "device." There are several reasons why Google's accused products do not infringe under the Court's current claim construction, but (as explained below), if Singular's appellate interpretation of the claims were adopted, then Google's products would not infringe for two additional reasons beyond those Google already has.

In this case, Dr. Khatri identifies several discrete circuits within Google's accused TPUv2 and TPUv3 circuit boards that he alleges together constitute an LPHDR execution unit. Ex. I at ¶¶ 128-133, 140. Although they are separate and discrete circuits, Dr. Khatri lumps them together as a single LPHDR execution unit and argues that those circuits together perform a single operation that Dr. Khatri calls an "LPHDR multiplication operation," even though that operation is actually two separate arithmetic operations performed by separate circuits. *Id.* at ¶ 128. Google disagrees with Dr. Khatri's litigation-driven box-drawing exercise, but even if the Court and jury were to credit Dr. Khatri's theory, Google still would not infringe under the claim interpretation for the Exceeds Claims that Singular is advancing on appeal for at least two reasons.

8

First, as Google's technical expert (Dr. Martin Walker) explained in his expert report addressing non-infringement, the various circuits that Dr. Khatri has lumped together as the alleged LPHDR execution unit within the accused products perform what Dr. Khatri calls an "LPHDR multiplication operation" on floating point numbers *that are at least 32-bits wide*. Ex. J at ¶¶ 262-263. This is true under *all modes* of the accused devices' operation. Under Singular's claim construction theory before the Federal Circuit, the circuits Dr. Khatri identified would thus be 32-bit FP multipliers as claimed even if (contrary to fact) they were also LPHDR execution units as he alleges. Indeed, in the IPR proceeding, Dr. Khatri testified that one reason why Dockser's FPP was allegedly a 32-bit FP multiplier as claimed was the fact that it "takes input operands that are 32 bits wide," just like the identified set of circuits Dr. Khatri alleges constitute a claimed LPHDR execution unit. Ex. E at ¶ 92. On this basis alone, there would be no infringement under the interpretation Singular is offering in the Federal Circuit.

Second, even if Singular could somehow get past the above-described problem with its infringement theory, it would face the separate problem that the accused devices include a ▮▮▮▮▮ that performs what Dr. Khatri considers a multiplication operation, and takes as inputs floating point numbers that are at least 32-bits wide, and that ▮▮▮▮▮ under Singular's infringement mapping and thus, under Singular's proposed construction in the Federal Circuit, would not constitute LPHDR execution units. Specifically, the collection of circuits Dr. Khatri identifies as the claimed LPHDR execution unit can perform ▮▮▮▮▮, even under Dr. Khatri's theory, ▮▮ of what he calls the "LPHDR multiplication operation" (i.e., the combination of two

separate operations).7  Ex. J at ¶¶ 259-261 (providing technical details on the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Dr. Khatri explained at his IPR deposition that such an execution unit, i.e., one that performs ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, is nonetheless a 32-bit FP multiplier as claimed in the Exceeds Claims.  Ex. K at 127-137.

For at least these two reasons, even if Dr. Khatri was somehow correct that the various discrete circuits he identifies constitute an LPHDR execution unit(s) as claimed[8], then the identified execution unit(s) would also be a claimed 32-bit FP multiplier under Singular's claim construction theory before the Federal Circuit because those circuits can perform 32-bit floating-point multiplication.  Google's accused TPUv2 and TPUv3 circuit boards would therefore not meet the "exceeds" element of the Exceeds Claims under Dr. Khatri's infringement theory because the devices would have at least the same number of 32-bit FP multipliers as LPHDR execution units.[9]

## III.  LEGAL STANDARD

As the First Circuit has observed, "[t]rial management is peculiarly within the ken of the district court.  That court has great latitude in managing its docket, including broad discretion to grant or withhold continuances."  *United States v. Saccccia*, 58 F.3d 754, 770 (1st Cir. 1995).  Among the factors that district courts consider in determining whether good cause exists

---

[7] Dr. Khatri did not address the ▇▇▇▇▇▇▇▇ in his infringement report even though Google's non-infringement theories specifically identified the ▇▇▇▇▇▇▇▇ and how it was inconsistent with Singular's proposed construction of the claims before the PTAB.  Dkt. No. 361-2 at 2-3.

[8] To be clear, Google does not concede that Dr. Khatri's infringement theory for what constitutes an LPHDR execution unit in the accused TPUv2 and TPUv3 boards is correct, but this motion does not turn on that issue.

[9] In fact, if Singular's construction was adopted and Dr. Khatri's identification of an LPHDR execution unit within Google's TPU circuits boards was credited, there would be ***8,200 more*** 32-bit FP multipliers than LPHDR execution units because Dr. Khatri identified 8,200 32-bit FP multipliers separate from the circuits he calls an LPHDR execution unit.  Ex. I at ¶¶ 248, 253.

10

for a continuance are "the probable utility of a continuance, the extent of inconvenience to others (such as the court, the witnesses, and the opposing party) should a continuance ensue, and the likelihood of injustice or unfair prejudice attributable to the denial of a continuance." *Id.*; *see also* L.R. 40.3 (setting "good cause" standard for motions for a continuance).

## IV. ARGUMENT

Good cause exists to grant Google's requested continuance. Should the Federal Circuit adopt Singular's proposed claim construction, that construction will be binding in this case and must be applied by the jury in determining whether Google's products infringe or if the asserted claims are invalid. This is also not an academic exercise because the claim construction of the Exceeds Claims that Singular advances before the Federal Circuit is one that provides Google with at least two additional dispositive defenses to Singular's infringement theories. Put simply, if the Federal Circuit agrees with Singular's interpretation of the Exceeds Claims, then Google cannot infringe under Singular's infringement theories.

Moreover, Singular should not be heard to claim prejudice from a continuance. The need for a continuance is entirely due to Singular's strategic attempt to construe the Exceeds Claims before the Federal Circuit in a way that Singular believes will preserve their validity while construing them another way before this Court to piece together an infringement theory, albeit a flawed one. Singular cannot have it both ways, and thus cannot claim prejudice from a continuance, where the continuance is required solely because of Singular's conduct and is necessary to ensure the same construction is applied consistently for both infringement and validity. Regardless, Singular cannot demonstrate prejudice because (1) any continuance would be short given the likelihood that the Federal Circuit will issue an opinion by January 2024 at the latest and (2) Singular seeks only money damages which will be available even if the trial is delayed by a few weeks or months.

> **A.     Good Cause Exists for Continuing the Trial Until the Federal Circuit Issues a Decision in Google's Appeal.**
>
> **1.     If the Federal Circuit adopts Singular's proposed claim construction for the Exceeds Claims, then that claim construction must be applied in this case.**

There should be no dispute that if the Federal Circuit adopts Singular's claim construction argument, then the parties, this Court, and the jury would be obligated to apply in this case Singular's construction of the limitation "*adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.*" *See, e.g., Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1363 (Fed. Cir. 2012) (explaining prior Federal Circuit panel's construction of a claim term is "binding on the district court"); *Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 494 F. Supp. 2d 54, 60 (D. Mass. 2007) ("Where the Federal Circuit has already construed the claims here disputed, then that higher Court's construction is binding, and this Court cannot modify its holding."); *Exergen Corp. v. Kids-Med, Inc.*, 189 F. Supp. 3d 237 (D. Mass. 2016) ("The claim construction effectively adopted by the Federal Circuit is binding legal precedent that cannot be modified in this case.").

Given the binding nature of any claim construction ruling that the Federal Circuit may issue, proceeding to trial prior to the Federal Circuit's decision creates a significant risk that any trial that occurs in September 2023 will need to be re-tried so that a jury can apply a different construction to the issues of infringement, invalidity, and damages. *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, No. C 16-03463 WHA, 2017 WL 6372971, at *11 (N.D. Cal. Dec. 13, 2017) ("Having won on invalidity based on those representations [to the Federal Circuit regarding claim scope], Straight Path cannot now take a different position for purposes of proving infringement."). Singular has no one to blame for this potential procedural mess other than itself

12

as Singular was the one who opted to advance a claim construction argument before the Federal Circuit that is inconsistent with its infringement theories in this Court.

### 2. Singular's proposed claim construction for the Exceeds Claims provides Google dispositive non-infringement defenses.

Google has at least two dispositive non-infringement defenses under the claim construction for the Exceeds Claims that Singular is advancing on appeal. *Supra* pp. 8-10.

First, if his infringement theories are credited, then the operation that Dr. Khatri says the alleged LPHDR execution units in Google's product perform is a multiplication operation that is performed "on floating point numbers that are at least 32 bits wide." *Supra* p. 9. The alleged LPHDR execution units in Google's products would therefore also be 32-bit FP multipliers, and the "exceeds" limitation of the Exceeds Claims could not be satisfied.

Second, even apart from the mode that Dr. Khatri focuses on in his infringement report, the alleged LPHDR execution units in Google's products that Dr. Khatri accuses can also operate in ▮▮▮▮▮▮ that performs what Dr. Khatri considers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Supra* pp. 9-10. Again, the alleged LPHDR execution units in Google's products would therefore under Singular's appellate claim construction position also be 32-bit FP multipliers for this separate reason, and the "exceeds" limitation of the Exceeds Claims could not be satisfied.

### B. A Continuance Will Not Prejudice Singular.

Google expects that Singular will argue that any continuance is prejudicial to Singular because it will delay Singular's day in court. Respectfully, however, any prejudice to Singular from a short delay of the trial is both self-inflicted and minimal.

To begin, it was Singular's choice—and its choice alone—to advance a claim construction argument before the Federal Circuit that is inconsistent with its infringement theories before this

13

Court. The Federal Circuit has "repeatedly rejected efforts," like Singular's efforts here, "to twist claims, like a 'nose of wax,' in one way to avoid [invalidity] and another to find infringement." *Data Engine Techs. LLC v. Google LLC*, 10 F. 4th 1375, 1381 (Fed. Cir. 2021) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001)). Singular should not be heard to claim prejudice from a short continuance that will ensure Singular does not unfairly get to treat the claims one way to try to preserve their validity at the Federal Circuit and another way to cobble together an infringement theory in this Court.

Even if Singular can be heard to claim prejudice, any prejudice it could suffer is minimal. Singular seeks only monetary relief, and that relief will remain available to Singular whether the trial is held later this year or in early 2024. *Cf. Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029-ADB, 2019 WL 1767394, at *8 (D. Mass. April 22, 2019) ("Any delay to a party's recovery of monetary damages is not meaningful where the prevailing party in patent cases may recover prejudgment interest.") (cleaned up).

The short duration of the requested continuance also minimizes any prejudice Singular suffers. As noted above, a decision from the Federal Circuit is expected to issue as early as July 2023 or as late as January 2024. Thus, if a continuance is needed, the longest the continuance would delay the trial is roughly four months. The prejudice (if any) to Singular of a short four-month delay of the trial is far outweighed by the potential inefficiencies inherent in trying a case under a construction that the Federal Circuit may upend only weeks later.

## V.     CONCLUSION

Google does not request continuation of the upcoming trial lightly, but there is good cause for continuing the trial pending resolution of Google's Federal Circuit appeals. Google plainly has dispositive non-infringement positions under Singular's claim construction for the Exceeds Claims, which is why Singular has not advanced that construction in this Court. Allowing this

14

case to proceed to trial makes little sense when there is a potential that the Federal Circuit will adopt Singular's claim construction thereby potentially necessitating a re-trial.

Respectfully submitted,

Dated: April 21, 2023    By:    /s/ *Nathan R. Speed*
Gregory F. Corbett (BBO #646394)
gcorbett@wolfgreenfield.com
Nathan R. Speed (BBO # 670249)
nspeed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
edimarco@wolfgreenfield.com
Anant K. Saraswat (BBO #676048)
asaraswat@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Robert Van Nest (admitted *pro hac vice*)
rvannest@keker.com
Michelle Ybarra (admitted *pro hac vice*)
mybarra@keker.com
Andrew Bruns (admitted *pro hac vice*)
abruns@keker.com
Vishesh Narayen (admitted *pro hac vice*)
vnarayen@keker.com
Christopher S. Sun (admitted *pro hac vice*)
csun@keker.com
Anna Porto (admitted *pro hac vice*)
aporto@keker.com
Deeva Shah (admitted *pro hac vice*)
dshah@keker.com
Stephanie J. Goldberg (admitted *pro hac vice*)
sgoldberg@keker.com
Eugene M. Paige (admitted *pro hac vice*)
epaige@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

Michael S. Kwun (admitted *pro hac vice*)
mkwun@kblfirm.com
Asim M. Bhansali (admitted *pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750

15

San Francisco, CA 94111
Telephone: (415) 630-2350

Matthias A. Kamber (admitted *pro hac vice*)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

Ginger D. Anders (admitted *pro hac vice*)
Ginger.Anders@mto.com
J. Kain Day (admitted *pro hac vice*)
Kain.Day@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Tel: (202) 220-1100

Jordan D. Segall (admitted *pro hac vice*)
Jordan.Segall@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Tel: (213) 683-9100

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

       I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                                                */s/ Nathan R. Speed*
                                                                                Nathan R. Speed