# EXHIBIT 4

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | PATENT NUMBER | GROUP ART UNIT | FILE WRAPPER LOCATION |
|---|---|---|---|
| 13/399,884 | 8407273 | 2193 | 9200 |



# Correspondence Address/Fee Address Change

**The following fields have been set to Customer Number 144359 on 07/31/2017**
- **Correspondence Address**
- **Maintenance Fee Address**

**The address of record for Customer Number 144359 is:**

144359
Blueshift IP LLC
1 Broadway, 14th Floor
Cambridge, MA 02142

PART 1 - ATTORNEY/APPLICANT COPY
page 1 of 1

SINGULAR-00001609



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/399,884 | 03/26/2013 | 8407273 | A0006-1001C1 | 2684 |

24208          7590          03/06/2013
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Joseph Bates, Lexington, MA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit <u>SelectUSA.gov</u>.

IR103 (Rev. 10/09)

SINGULAR-00001610

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** **Mail**  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Robert Plotkin, P.C.
15 New England Executive Park
Burlington, MA 01803

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 | 2684 |

TITLE OF INVENTION:

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 02/28/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
|  |  |  |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Robert Plotkin, P.C.
2  _____
3  _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

| (A) NAME OF ASSIGNEE | (B) RESIDENCE: (CITY and STATE OR COUNTRY) |
|---|---|
| Singular Computing LLC | Newton, MA |

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☒ Corporation or other private group entity  ☐ Government

**4a. The following fee(s) are submitted:**
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☒ Payment by credit card. Form PTO-2038 is attached.
☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _501797_ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature  /Robert Plotkin, Reg#43861/    Date  02/25/2013

Typed or printed name  Robert Plotkin, Esq.    Registration No.  43861

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SINGULAR-00001611

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001612

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13399884 |
| **Filing Date:** | 17-Feb-2012 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph Bates |
| **Filer:** | Robert Plotkin |
| **Attorney Docket Number:** | A0006-1001C1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 2501 | 1 | 885 | 885 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

SINGULAR-00001613

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1185** |

SINGULAR-00001614

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 15046402 |
| **Application Number:** | 13399884 |
| **International Application Number:** | |
| **Confirmation Number:** | 2684 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph  Bates |
| **Customer Number:** | 24208 |
| **Filer:** | Robert Plotkin |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | A0006-1001C1 |
| **Receipt Date:** | 25-FEB-2013 |
| **Filing Date:** | 17-FEB-2012 |
| **Time Stamp:** | 20:16:06 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1185 |
| RAM confirmation Number | 24090 |
| Deposit Account | 501797 |
| Authorized User | PLOTKIN, ROBERT |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
|     Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

SINGULAR-00001615

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | Transmittal.pdf | 73534<br>17a2d77f497ab31629c83573aae1e838b6e93fac | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31565<br>d880bb7ef33599c50827fa56f2e1598abb5cf6c7 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | **Total Files Size (in bytes):** | 105099 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SINGULAR-00001616



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 |

**CONFIRMATION NO. 2684**

24208
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

**PUBLICATION NOTICE**



*OC000000058987422*

**Title:**Processing with Compact Arithmetic Processing Element

**Publication No.**US-2013-0031153-A1
**Publication Date:**01/31/2013

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

SINGULAR-00001617

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13399884 | BATES, JOSEPH |
| | Examiner | Art Unit |
| | MICHAEL D YAARY | 2193 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Updated search | 12/07/2012 | MY |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 708 | 490,524 | 11/15/2012 | MY |
| 712 | 221 | 11/15/2012 | MY |
| 382 | 255 | 11/15/2012 | MY |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office

Part of Paper No. : 20121207

SINGULAR-00001618



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

24208          7590          11/30/2012

ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

| EXAMINER |
|---|
| YAARY, MICHAEL D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2193 | |

DATE MAILED: 11/30/2012

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 | 2684 |

TITLE OF INVENTION: Processing with Compact Arithmetic Processing Element

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 02/28/2013 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

SINGULAR-00001619

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>     Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

or <u>Fax</u>   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

24208      7590      11/30/2012
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 | 2684 |

TITLE OF INVENTION: Processing with Compact Arithmetic Processing Element

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | YES | $885 | $300 | $0 | $1185 | 02/28/2013 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| YAARY, MICHAEL D | 2193 | 708-209000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.        ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

SINGULAR-00001620



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 | 2684 |

24208      7590      11/30/2012
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

| EXAMINER |
|---|
| YAARY, MICHAEL D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2193 | |

DATE MAILED: 11/30/2012

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

SINGULAR-00001621

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General, Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001622

| ***Examiner-Initiated Interview Summary*** | Application No. | Applicant(s) | |
|---|---|---|---|
| | 13/399,884 | BATES, JOSEPH | |
| | Examiner | Art Unit | |
| | MICHAEL D. YAARY | 2193 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *MICHAEL D. YAARY*.                    (3)_____.

(2) *Robert Plotkin*.                         (4)_____.

Date of Interview: *14 November 2012*.

Type:   ☒ Telephonic   ☐ Video Conference
         ☐ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes    ☒ No.
   If Yes, brief description: _____.

Issues Discussed   ☐101 ☐112 ☐102 ☐103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _____.

Identification of prior art discussed: *See Continuation Sheet*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

   *Discussed a TD to be filed to tie to patent number 8,150,902. Further in an examiner amendment, examiner will add the term "low precision high dynamic range" to independent claims 14 and 24, in order to define the abbreviation of LPHDR.*

**Applicant recordation instructions**: It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /MICHAEL D YAARY/ Examiner, Art Unit 2193 | |
|---|---|

SINGULAR-00001623

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 13/399,884 | BATES, JOSEPH | |
| | Examiner | Art Unit | |
| | MICHAEL D. YAARY | 2193 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _02/17/2012_.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _1-70_. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _02/17/2012 and 11/26/2012_

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☒ Interview Summary (PTO-413), Paper No./Mail Date _20121115_ .

5. ☒ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

/MICHAEL D YAARY/
Examiner, Art Unit 2193

SINGULAR-00001624

Application/Control Number: 13/399,884                                          Page 2
Art Unit: 2193

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview

with Robert Plotkin on 11/14/2012.


The application has been amended as follows:


In claim 14, line 2 **replace** "LPHDR" **with** "low precision high-dynamic range

(LPHDR)"



In claim 24, line 5 **replace** "LPHDR" **with** "low precision high-dynamic range

(LPHDR)"



## REASONS FOR ALLOWANCE


The following is an examiner's statement of reasons for allowance:

SINGULAR-00001625

Application/Control Number: 13/399,884                                    Page 3
Art Unit: 2193

The prior art of record does not teach or suggest at least wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input; as recited in independent claim 1 and similarly in independent claims 11, 14, and 24.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MICHAEL D. YAARY whose telephone number is (571)270-1249. The examiner can normally be reached on Mon-Fri 9 a.m.-5:30 p.m.

SINGULAR-00001626

Application/Control Number: 13/399,884                                        Page 4
Art Unit: 2193

  If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Chat Do can be reached on 571-272-3721.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

  Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/MICHAEL D YAARY/
Examiner, Art Unit 2193

SINGULAR-00001627

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13399884 | BATES, JOSEPH |
| | **Examiner** | **Art Unit** |
| | MICHAEL D YAARY | 2193 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | |
|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | **NON-CLAIMED** | |
| 708 | 524 | G 0 6 F | 7 / 38 (2006.0) | | | |

### CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
|---|---|
| 708 | 490 |
| 712 | 221 |
| 382 | 255 |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☒ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 42 | 20 | 23 | 39 | 55 | 58 | | | | | | | | |
| 2 | 2 | 43 | 21 | 24 | 40 | 56 | 59 | | | | | | | | |
| 3 | 3 | 44 | 22 | 25 | 41 | 57 | 60 | | | | | | | | |
| 4 | 4 | 45 | 23 | 26 | 42 | 58 | 61 | | | | | | | | |
| 5 | 5 | 68 | 24 | 27 | 43 | 59 | 62 | | | | | | | | |
| 6 | 6 | 69 | 25 | 28 | 44 | 60 | 63 | | | | | | | | |
| 7 | 7 | 70 | 26 | 29 | 45 | 61 | 64 | | | | | | | | |
| 8 | 8 | 11 | 27 | 30 | 46 | 62 | 65 | | | | | | | | |
| 9 | 9 | 12 | 28 | 31 | 47 | 63 | 66 | | | | | | | | |
| 10 | 10 | 13 | 29 | 32 | 48 | 64 | 67 | | | | | | | | |
| 33 | 11 | 14 | 30 | 46 | 49 | 65 | 68 | | | | | | | | |
| 34 | 12 | 15 | 31 | 47 | 50 | 66 | 69 | | | | | | | | |
| 35 | 13 | 16 | 32 | 48 | 51 | 67 | 70 | | | | | | | | |
| 36 | 14 | 17 | 33 | 49 | 52 | | | | | | | | | | |
| 37 | 15 | 18 | 34 | 50 | 53 | | | | | | | | | | |
| 38 | 16 | 19 | 35 | 51 | 54 | | | | | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 70 | |
| /MICHAEL D YAARY/ Examiner.Art Unit 2193 | 11/15/2012 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 6 |

U.S. Patent and Trademark Office

SINGULAR-00001628

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13399884 | BATES, JOSEPH |
| | **Examiner** | **Art Unit** |
| | MICHAEL D YAARY | 2193 |

| ☐ Claims renumbered in the same order as presented by applicant | | | | | | ☐ | CPA | ☒ | T.D. | ☐ | R.1.47 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | 17 | 20 | 36 | 52 | 55 | | | | | | |
| 40 | 18 | 21 | 37 | 53 | 56 | | | | | | |
| 41 | 19 | 22 | 38 | 54 | 57 | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 70 | |
| (Assistant Examiner) | (Date) | | |
| /MICHAEL D YAARY/<br>Examiner.Art Unit 2193 | 11/15/2012 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 6 |

U.S. Patent and Trademark Office

Part of Paper No.  20121115

SINGULAR-00001629

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99**)

| Application Number | 13399884 |
|---|---|
| Filing Date | 2012-02-17 |
| First Named Inventor | BATES, Joseph |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | A0006-1001 |

## U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| /M.Y./ | 1 | 5887160 | | 1999-03-23 | Lauritzen et al. | |
| /M.Y./ | 2 | 5867683 | | 1999-02-02 | Witt et al. | |
| /M.Y./ | 3 | 5809320 | | 1998-09-15 | Jain et al. | |
| /M.Y./ | 4 | 5293500 | | 1994-03-08 | Ishida et al. | |
| /M.Y./ | 5 | 5226166 | | 1993-07-06 | Ishida et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

## U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

## FOREIGN PATENT DOCUMENTS

SINGULAR-00001630

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | | |
|---|---|---|
| Application Number | | 13399884 |
| Filing Date | | 2012-02-17 |
| First Named Inventor | | BATES, Joseph |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | | A0006-1001 |

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

### EXAMINER SIGNATURE

| Examiner Signature | /Michael Yaary/ | Date Considered | 11/15/2012 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

SINGULAR-00001631

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 13399884 |
| --- | --- | --- |
| | Filing Date | 2012-02-17 |
| | First Named Inventor | BATES, Joseph |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | A0006-1001 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Robert Plotkin, Reg#43861/ | Date (YYYY-MM-DD) | 2012-02-17 |
| --- | --- | --- | --- |
| Name/Print | Robert Plotkin, Esq. | Registration Number | 43861 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

SINGULAR-00001632

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001633

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application Number | 13/399,884 |
|---|---|---|---|
| | | Filing Date | 2/17/2012 |
| | | First Named Inventor | Bates |
| | | Art Unit | 2193 |
| | | Client Number | A0006 |
| Page 1 of 2 | | Matter Number | 1001C1 |

| U.S. PATENT DOCUMENTS | | | | | |
|---|---|---|---|---|---|
| Initials | Cite No. | Document Number | Issue/Publication Date | First Named Inventor | T |
| /M.Y./ | 1 | 5892962 | 4/6/1999 | Cloutier | |
| /M.Y./ | 2 | 20040054708 | 3/18/2004 | Happonen | |

| Examiner Signature | /Michael Yaary/ | Date Considered | 11/27/2012 |
|---|---|---|---|

Examiner: Please initial if citation considered, whether or not citation is in conformance with MPEP Section 609.  Please draw a line through the citation if it is not in conformance and it is not considered.  Please include a copy of this form with the next communication to the applicant.

SINGULAR-00001634

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | 13/399,884 |
|---|---|---|
| | Filing Date | 2/17/2012 |
| | First Named Inventor | Bates |
| | Art Unit | 2193 |
| | Client Number | A0006 |
| Page 2 of 2 | Matter Number | 1001C1 |

### GENERAL

Pursuant to 37 C.F.R. 1.97 and 1.98 and to the duty of disclosure set forth in 37 C.F.R. 1.56, the Examiner in charge of the above-identified application is requested to consider and make of record the references listed herewith. A copy of each listed reference, other than U.S. patents/applications and references cited in a parent application, is enclosed.

Although the information submitted herewith may be "material" to the Examiner's consideration of the subject application, this submission is not intended to constitute an admission that such information is "prior art" as to the claimed invention.

In accordance with 37 C.F.R. 1.97(g), the filing of this Information Disclosure Statement shall not be construed to mean that a search has been made.

### TIMING

In accordance with 37 CFR 1.97(b), this Information Disclosure Statement is being filed within three months of the filing of a national application other than a continued prosecution application under 37 CFR 1.53(d); within three months of the date of entry of the national stage as set forth in 37 CFR 1.491 in an international application; before the mailing of a first Office Action on the merits; or before the mailing of a first Office Action after the filing of a request for continued examination under 37 CFR 1.114.

### CERTIFICATION STATEMENT

No certification statement is required.  This Information Disclosure Statement is being filed in accordance with 37 CFR 1.97(b).

### FEE

No fee is required.  This Information Disclosure Statement is being filed in accordance with 37 CFR 1.97(b).

If necessary, the Director is hereby authorized to charge or credit Deposit Account No. 50-1797 for any additional fees, or any underpayment or credit for overpayment in connection herewith.  Please reference attorney docket number A0006-1001C1 for any such charge or credit.

### SIGNATURE

| SIGNATURE | | | |
|---|---|---|---|
| Signature | /Robert Plotkin, Reg#43861/ | Date | 11/26/2012 |
| Name | Robert Plotkin, Esq. | Registration Number | 43861 |

SINGULAR-00001635



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 2684**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | 708 | 2193 | A0006-1001C1 |
| | RULE | | | |

**APPLICANTS**
Joseph Bates, Lexington, MA;

** **CONTINUING DATA** *************************
This application is a CON of 12/816,201 06/15/2010 PAT 8,150,902
which claims benefit of 61/218,691 06/19/2009

** **FOREIGN APPLICATIONS** *************************

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** ** ** SMALL ENTITY **
03/09/2012

| Foreign Priority claimed ☐ Yes ☑ No | ☐ Met after Allowance | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☐ No | | | | | |
| Verified and Acknowledged   /MICHAEL D YAARY/   Examiner's Signature   Initials | | MA | 11 | 70 | 4 |

**ADDRESS**

ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803
UNITED STATES

**TITLE**

Processing with Compact Arithmetic Processing Element

| FILING FEE RECEIVED | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| 2220 | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

SINGULAR-00001636

| | | | | |
|---|---|---|---|---|
| ***Index of Claims*** | **Application/Control No.** 13399884 | **Applicant(s)/Patent Under Reexamination** BATES, JOSEPH | | |
| | **Examiner** MICHAEL D YAARY | **Art Unit** 2193 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA    ☒ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/15/2012 | | | | | | | | |
| 1 | 1 | = | | | | | | | | |
| 2 | 2 | = | | | | | | | | |
| 3 | 3 | = | | | | | | | | |
| 4 | 4 | = | | | | | | | | |
| 5 | 5 | = | | | | | | | | |
| 6 | 6 | = | | | | | | | | |
| 7 | 7 | = | | | | | | | | |
| 8 | 8 | = | | | | | | | | |
| 9 | 9 | = | | | | | | | | |
| 10 | 10 | = | | | | | | | | |
| 33 | 11 | = | | | | | | | | |
| 34 | 12 | = | | | | | | | | |
| 35 | 13 | = | | | | | | | | |
| 36 | 14 | = | | | | | | | | |
| 37 | 15 | = | | | | | | | | |
| 38 | 16 | = | | | | | | | | |
| 39 | 17 | = | | | | | | | | |
| 40 | 18 | = | | | | | | | | |
| 41 | 19 | = | | | | | | | | |
| 42 | 20 | = | | | | | | | | |
| 43 | 21 | = | | | | | | | | |
| 44 | 22 | = | | | | | | | | |
| 45 | 23 | = | | | | | | | | |
| 68 | 24 | = | | | | | | | | |
| 69 | 25 | = | | | | | | | | |
| 70 | 26 | = | | | | | | | | |
| 11 | 27 | = | | | | | | | | |
| 12 | 28 | = | | | | | | | | |
| 13 | 29 | = | | | | | | | | |
| 14 | 30 | = | | | | | | | | |
| 15 | 31 | = | | | | | | | | |
| 16 | 32 | = | | | | | | | | |
| 17 | 33 | = | | | | | | | | |
| 18 | 34 | = | | | | | | | | |
| 19 | 35 | = | | | | | | | | |
| 20 | 36 | = | | | | | | | | |

SINGULAR-00001637

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **_Index of Claims_** | 13399884 | BATES, JOSEPH |
| | **Examiner** | **Art Unit** |
| | MICHAEL D YAARY | 2193 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☒ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 11/15/2012 | | | | | | | |
| 21 | 37 | = | | | | | | | |
| 22 | 38 | = | | | | | | | |
| 23 | 39 | = | | | | | | | |
| 24 | 40 | = | | | | | | | |
| 25 | 41 | = | | | | | | | |
| 26 | 42 | = | | | | | | | |
| 27 | 43 | = | | | | | | | |
| 28 | 44 | = | | | | | | | |
| 29 | 45 | = | | | | | | | |
| 30 | 46 | = | | | | | | | |
| 31 | 47 | = | | | | | | | |
| 32 | 48 | = | | | | | | | |
| 46 | 49 | = | | | | | | | |
| 47 | 50 | = | | | | | | | |
| 48 | 51 | = | | | | | | | |
| 49 | 52 | = | | | | | | | |
| 50 | 53 | = | | | | | | | |
| 51 | 54 | = | | | | | | | |
| 52 | 55 | = | | | | | | | |
| 53 | 56 | = | | | | | | | |
| 54 | 57 | = | | | | | | | |
| 55 | 58 | = | | | | | | | |
| 56 | 59 | = | | | | | | | |
| 57 | 60 | = | | | | | | | |
| 58 | 61 | = | | | | | | | |
| 59 | 62 | = | | | | | | | |
| 60 | 63 | = | | | | | | | |
| 61 | 64 | = | | | | | | | |
| 62 | 65 | = | | | | | | | |
| 63 | 66 | = | | | | | | | |
| 64 | 67 | = | | | | | | | |
| 65 | 68 | = | | | | | | | |
| 66 | 69 | = | | | | | | | |
| 67 | 70 | = | | | | | | | |

SINGULAR-00001638

## EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 696 | (low near5 precision) and (high near5 dynamic) | US-PGPUB; USPAT | OR | ON | 2012/11/15 10:38 |
| L2 | 63 | (low near5 precision) near10 (high near5 dynamic) | US-PGPUB; USPAT | OR | ON | 2012/11/15 10:39 |
| L3 | 2 | (low near5 precision) near10 (high near5 dynamic) and fpga | US-PGPUB; USPAT | OR | ON | 2012/11/15 10:39 |
| L4 | 2 | (low near5 precision) near10 (high near5 dynamic) and "708".clas. | US-PGPUB; USPAT | OR | ON | 2012/11/15 10:39 |
| L5 | 20 | (("5887160") or ("5867683") or ("5809320") or ("5293500") or ("5226166") or ("4380046") or ("5170484") or ("5801715") or ("5966528") or ("6173388") or ("6405185") or ("6728871") or ("6859869") or ("7243333") or ("20050076187") or ("20060031659") or ("20070124565") or ("20070150698") or ("20070247189") or ("20080059764")).PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/11/15 10:40 |
| S1 | 1 | lphdr | US-PGPUB; USPAT | ADJ | ON | 2012/01/24 13:37 |
| S2 | 20 | (("5887160") or ("5867683") or ("5809320") or ("5293500") or ("5226166") or ("4380046") or ("5170484") or ("5801715") or ("5966528") or ("6173388") or ("6405185") or ("6728871") or ("6859869") or ("7243333") or ("20050076187") or ("20060031659") or ("20070124565") or ("20070150698") or ("20070247189") or ("20080059764")).PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/01/24 13:48 |
| S3 | 20 | (("5887160") or ("5867683") or ("5809320") or ("5293500") or ("5226166") or ("4380046") or ("5170484") or ("5801715") or ("5966528") or ("6173388") or ("6405185") or ("6728871") or ("6859869") or ("7243333") or ("20050076187") or ("20060031659") or ("20070124565") or ("20070150698") or ("20070247189") or ("20080059764")).PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/01/24 15:27 |
| S4 | 13 | S3 and (width or wide) | US-PGPUB; USPAT | OR | ON | 2012/01/24 15:27 |
| S5 | 20 | (("5887160") or ("5867683") or ("5809320") or ("5293500") or ("5226166") or ("4380046") or ("5170484") or ("5801715") or ("5966528") or ("6173388") or ("6405185") or ("6859869") | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/02/06 10:38 |

SINGULAR-00001639

EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| | | or ("7243333") or ("20050076187") or ("20060031659") or ("20070124565") or ("20070150698") or ("20070247189") or ("20080059764")).PN. | | | | |
| S6 | 6 | S5 and precision | US-PGPUB; USPAT | OR | ON | 2012/02/06 10:42 |
| S7 | 1 | ("20100325186").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/02/06 10:46 |
| S8 | 13 | S5 and (width or wide) | US-PGPUB; USPAT | OR | ON | 2012/02/06 11:02 |
| S9 | 6 | S8 and precision | US-PGPUB; USPAT | OR | ON | 2012/02/06 11:02 |
| S10 | 22628 | (low near5 precision) | US-PGPUB; USPAT | OR | ON | 2012/02/06 14:10 |
| S11 | 632 | (low near5 precision) and (high near5 dynamic) | US-PGPUB; USPAT | OR | ON | 2012/02/06 14:11 |
| S12 | 59 | (low near5 precision) near10 (high near5 dynamic) | US-PGPUB; USPAT | OR | ON | 2012/02/06 14:11 |
| S13 | 46 | (low near5 precision) near10 (high near5 dynamic) and signal$1 | US-PGPUB; USPAT | OR | ON | 2012/02/06 14:11 |
| S14 | 4323 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution) | US-PGPUB; USPAT | OR | ON | 2012/02/06 15:04 |
| S15 | 611 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution) and mean | US-PGPUB; USPAT | OR | ON | 2012/02/06 15:05 |
| S16 | 140 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution) and mean and precision | US-PGPUB; USPAT | OR | ON | 2012/02/06 15:05 |
| S17 | 28 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution) and mean and ((high or low) near5 precision) | US-PGPUB; USPAT | OR | ON | 2012/02/06 15:05 |
| S18 | 1 | ("20080276232").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/02/06 15:31 |
| S19 | 1 | ("7549145").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/02/06 15:34 |
| S20 | 682 | 382/255.ccls. | US-PGPUB; USPAT | OR | ON | 2012/02/07 10:34 |
| S21 | 494 | 382/255.ccls. and range | US-PGPUB; USPAT | OR | ON | 2012/02/07 10:35 |
| S22 | 208 | 382/255.ccls. and range and wide | US-PGPUB; USPAT | OR | ON | 2012/02/07 10:35 |

SINGULAR-00001640

| S23 | 86 | 382/255.ccls. and range and wide and mean | US-PGPUB; USPAT | OR | ON | 2012/02/07 10:35 |
| S24 | 42 | 382/255.ccls. and range and wide and mean and blur | US-PGPUB; USPAT | OR | ON | 2012/02/07 10:35 |
| S25 | 92 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution).clm. and mean | US-PGPUB; USPAT | OR | ON | 2012/02/07 10:37 |
| S26 | 1 | ("20080276232").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2012/02/07 10:50 |
| S35 | 1 | ("8150902").PN. | USPAT; USOCR | OR | OFF | 2012/11/14 09:41 |

## EAST Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L6 | 528 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution).clm. | USPAT; UPAD | OR | ON | 2012/11/15 10:43 |
| L7 | 528 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution).clm. | USPAT; UPAD | OR | ON | 2012/11/15 10:43 |
| S27 | 60 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution).clm. and mean | USPAT; UPAD | OR | ON | 2012/02/07 10:37 |
| S28 | 8 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution).clm. and mean.clm. | USPAT; UPAD | OR | ON | 2012/02/07 10:37 |
| S29 | 0 | ("708".clas. or "712".clas. or "382.clas") and (parallel near5 execution).clm. and mean.clm. and precision.clm. | USPAT; UPAD | OR | ON | 2012/02/07 10:38 |
| S30 | 6 | ("708".clas. or "712".clas. or "382.clas") and mean.clm. and precision.clm. | USPAT; UPAD | OR | ON | 2012/02/07 10:38 |
| S31 | 17 | ("708".clas. or "712".clas. or "382.clas") and (low near3 precision).clm. | USPAT; UPAD | OR | ON | 2012/02/07 10:39 |
| S32 | 0 | ("708".clas. or "712".clas. or "382.clas") and (low near3 precision).clm. and deblur.clm. | USPAT; UPAD | OR | ON | 2012/02/07 10:39 |
| S33 | 12 | ("708".clas. or "712".clas. or "382.clas") and (low near3 precision).clm. and (high near3 precision) | USPAT; UPAD | OR | ON | 2012/02/07 10:40 |
| S34 | 8 | ("708".clas. or "712".clas. or "382.clas") and (low near3 precision).clm. and (high near3 precision).clm. | USPAT; UPAD | OR | ON | 2012/02/07 10:40 |

**11/15/2012 10:44:22 AM**
**C:\Users\myaary\Documents\EAST\Workspaces\12816201.wsp**

SINGULAR-00001641

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | 13/399,884 |
|---|---|---|
| | Filing Date | 2/17/2012 |
| | First Named Inventor | Bates |
| | Art Unit | 2193 |
| | Client Number | A0006 |
| Page 1 of 2 | Matter Number | 1001C1 |

| U.S. PATENT DOCUMENTS | | | | | |
|---|---|---|---|---|---|
| Initials | Cite No. | Document Number | Issue/Publication Date | First Named Inventor | T |
| | 1 | 5892962 | 4/6/1999 | Cloutier | |
| | 2 | 20040054708 | 3/18/2004 | Happonen | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| Examiner: Please initial if citation considered, whether or not citation is in conformance with MPEP Section 609.  Please draw a line through the citation if it is not in conformance and it is not considered.  Please include a copy of this form with the next communication to the applicant. | | | |

SINGULAR-00001642

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | **Application Number** | 13/399,884 |
| | **Filing Date** | 2/17/2012 |
| | **First Named Inventor** | Bates |
| | **Art Unit** | 2193 |
| | **Client Number** | A0006 |
| Page 2 of 2 | **Matter Number** | 1001C1 |

| **GENERAL** |
|---|
| Pursuant to 37 C.F.R. 1.97 and 1.98 and to the duty of disclosure set forth in 37 C.F.R. 1.56, the Examiner in charge of the above-identified application is requested to consider and make of record the references listed herewith. A copy of each listed reference, other than U.S. patents/applications and references cited in a parent application, is enclosed. <br><br> Although the information submitted herewith may be "material" to the Examiner's consideration of the subject application, this submission is not intended to constitute an admission that such information is "prior art" as to the claimed invention. <br><br> In accordance with 37 C.F.R. 1.97(g), the filing of this Information Disclosure Statement shall not be construed to mean that a search has been made. |

| **TIMING** |
|---|
| In accordance with 37 CFR 1.97(b), this Information Disclosure Statement is being filed within three months of the filing of a national application other than a continued prosecution application under 37 CFR 1.53(d); within three months of the date of entry of the national stage as set forth in 37 CFR 1.491 in an international application; before the mailing of a first Office Action on the merits; or before the mailing of a first Office Action after the filing of a request for continued examination under 37 CFR 1.114. |

| **CERTIFICATION STATEMENT** |
|---|
| No certification statement is required.  This Information Disclosure Statement is being filed in accordance with 37 CFR 1.97(b). |

| **FEE** |
|---|
| No fee is required.  This Information Disclosure Statement is being filed in accordance with 37 CFR 1.97(b). <br><br> If necessary, the Director is hereby authorized to charge or credit Deposit Account No. 50-1797 for any additional fees, or any underpayment or credit for overpayment in connection herewith.  Please reference attorney docket number A0006-1001C1 for any such charge or credit. |

| **SIGNATURE** | | | |
|---|---|---|---|
| Signature | /Robert Plotkin, Reg#43861/ | Date | 11/26/2012 |
| Name | Robert Plotkin, Esq. | Registration Number | 43861 |

SINGULAR-00001643

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14309210 |
| **Application Number:** | 13399884 |
| **International Application Number:** | |
| **Confirmation Number:** | 2684 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph  Bates |
| **Customer Number:** | 24208 |
| **Filer:** | Robert Plotkin/Karen Del Greco |
| **Filer Authorized By:** | Robert Plotkin |
| **Attorney Docket Number:** | A0006-1001C1 |
| **Receipt Date:** | 26-NOV-2012 |
| **Filing Date:** | 17-FEB-2012 |
| **Time Stamp:** | 18:33:43 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Form (SB08) | rplotkincom-A0006-1001C1_IDS_1449.pdf | 22586<br>4e36b45edada077071c256dfb224b23d6814d32f | no | 2 |

**Warnings:**

**Information:**

SINGULAR-00001644

This is not an USPTO supplied IDS fillable form

| Total Files Size (in bytes): | 22586 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SINGULAR-00001645

PTO/SB/26

**Doc Code: DIST.E.FILE**
**Document Description: Electronic Terminal Disclaimer - Filed**

U.S. Patent and Trademark Office
Department of Commerce

| Electronic Petition Request | **TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT** |
|---|---|
| Application Number | 13399884 |
| Filing Date | 17-Feb-2012 |
| First Named Inventor | Joseph Bates |
| Attorney Docket Number | A0006-1001C1 |
| Title of Invention | Processing with Compact Arithmetic Processing Element |

☒ Filing of terminal disclaimer does not obviate requirement for response under 37 CFR 1.111 to outstanding Office Action

☒ This electronic Terminal Disclaimer is not being used for a Joint Research Agreement.

| Owner | Percent Interest |
|---|---|
| Singular Computing LLC | 100% |

The owner(s) with percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of prior patent number(s)

8150902

as the term of said prior patent is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the prior patent, "as the term of said prior patent is presently shortened by any terminal disclaimer," in the event that said prior patent later:
- expires for failure to pay a maintenance fee;
- is held unenforceable;
- is found invalid by a court of competent jurisdiction;
- is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
- has all claims canceled by a reexamination certificate;
- is reissued; or
- is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

◉ Terminal disclaimer fee under 37 CFR 1.20(d) is included with Electronic Terminal Disclaimer request.

SINGULAR-00001646

○   I certify, in accordance with 37 CFR 1.4(d)(4), that the terminal disclaimer fee under 37 CFR 1.20(d) required for this terminal disclaimer has already been paid in the above-identified application.

○   Applicant claims SMALL ENTITY status.  See 37 CFR 1.27.

○   Applicant is no longer claiming SMALL ENTITY status.  See 37 CFR 1.27(g)(2).

◉   Applicant(s) status remains as SMALL ENTITY.

○   Applicant(s) status remains as other than SMALL ENTITY.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

THIS PORTION MUST BE COMPLETED BY THE SIGNATORY OR SIGNATORIES

I certify, in accordance with 37 CFR 1.4(d)(4) that I am:

◉   An attorney or agent registered to practice before the Patent and Trademark Office who is of record in this application

   Registration Number   43861

○   A sole inventor

○   A joint inventor; I certify that I am authorized to sign this submission on behalf of all of the inventors

○   A joint inventor; all of whom are signing this request

○   The assignee of record of the entire interest that has properly made itself of record pursuant to 37 CFR 3.71

| Signature | /Robert Plotkin/ |
|-----------|------------------|
| Name | Robert Plotkin |

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this certification. See MPEP § 324.

SINGULAR-00001647

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13399884 |
| **Filing Date:** | 17-Feb-2012 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph Bates |
| **Filer:** | Robert Plotkin |
| **Attorney Docket Number:** | A0006-1001C1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Statutory or terminal disclaimer | 2814 | 1 | 80 | 80 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

SINGULAR-00001648

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **80** |

SINGULAR-00001649

Doc Code: DISQ.E.FILE
Document Description: Electronic Terminal Disclaimer – Approved

Application No.:   13399884

Filing Date:        17-Feb-2012

Applicant/Patent under Reexamination:      Bates et al.

Electronic Terminal Disclaimer filed on      November 14, 2012

☒      APPROVED

        **This patent is subject to a terminal disclaimer**

☐      DISAPPROVED

Approved/Disapproved by:  Electronic Terminal Disclaimer automatically approved by EFS-Web

U.S. Patent and Trademark Office

SINGULAR-00001650

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14224776 |
| **Application Number:** | 13399884 |
| **International Application Number:** | |
| **Confirmation Number:** | 2684 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph  Bates |
| **Customer Number:** | 24208 |
| **Filer:** | Robert Plotkin |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | A0006-1001C1 |
| **Receipt Date:** | 14-NOV-2012 |
| **Filing Date:** | 17-FEB-2012 |
| **Time Stamp:** | 13:35:24 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $80 |
| RAM confirmation Number | 11734 |
| Deposit Account | 501797 |
| Authorized User | PLOTKIN, ROBERT |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

SINGULAR-00001651

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Electronic Terminal Disclaimer-Filed | eTerminal-Disclaimer.pdf | 33577<br>72876710d38c0c0fa56b1b5cfa1536b2b539eed2 | no | 2 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 29842<br>3c5834fb9661ff57aba1a1190a375ff7d9346930 | no | 2 |

**Warnings:**

**Information:**

| | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 63419 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

### New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

### National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

### New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SINGULAR-00001652

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
| --- |
| 13/399,884 |

### APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 98 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 310 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 125 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 70 minus 20 = | 50 | x 31 = | 1550 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 4 minus 3 = | 1 | x 125 = | 125 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 2208 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

SINGULAR-00001653



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | 2193 | 2220 | A0006-1001C1 | 70 | 4 |

**CONFIRMATION NO. 2684**

24208
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

**UPDATED FILING RECEIPT**


*OC000000057269243*

Date Mailed: 10/25/2012

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Joseph Bates, Lexington, MA;

**Applicant(s)**

Joseph Bates, Lexington, MA;

**Power of Attorney:** The patent practitioners associated with Customer Number 24208

**Domestic Priority data as claimed by applicant**

This application is a CON of 12/816,201 06/15/2010 PAT 8150902
which claims benefit of 61/218,691 06/19/2009

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

**If Required, Foreign Filing License Granted:** 03/09/2012

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/399,884**

**Projected Publication Date:** 01/31/2013

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***

SINGULAR-00001654

**Title**

Processing with Compact Arithmetic Processing Element

**Preliminary Class**

708

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

SINGULAR-00001655

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage, facilitate, and accelerate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

SINGULAR-00001656

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13399884 |
| **Filing Date:** | 17-Feb-2012 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph Bates |
| **Filer:** | Robert Plotkin |
| **Attorney Docket Number:** | A0006-1001C1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 95 | 95 |
| Utility Search Fee | 2111 | 1 | 310 | 310 |
| Utility Examination Fee | 2311 | 1 | 125 | 125 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 50 | 30 | 1500 |
| Independent claims in excess of 3 | 2201 | 1 | 125 | 125 |
| **Miscellaneous-Filing:** | | | | |

SINGULAR-00001657

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Late filing fee for oath or declaration | 2051 | 1 | 65 | 65 |

| | | | | |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **2220** |

SINGULAR-00001658

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 12688220 |
| **Application Number:** | 13399884 |
| **International Application Number:** | |
| **Confirmation Number:** | 2684 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph  Bates |
| **Customer Number:** | 24208 |
| **Filer:** | Robert Plotkin |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | A0006-1001C1 |
| **Receipt Date:** | 02-MAY-2012 |
| **Filing Date:** | 17-FEB-2012 |
| **Time Stamp:** | 16:44:37 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 2220 |
| RAM confirmation Number | 3694 |
| Deposit Account | 501797 |
| Authorized User | PLOTKIN,ROBERT |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

SINGULAR-00001659

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Fee Worksheet (SB06) | fee-info.pdf | 39631<br>9661398fc9ca882f511202feba510d10676ae72d | no | 2 |

| Warnings: |
|---|
| Information: |

| | Total Files Size (in bytes): | 39631 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SINGULAR-00001660



Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

ROBERT PLOTKIN, PC
15 NEW ENGLAND EXECUTIVE OFFICE PARK
BURLINGTON MA 01803

**MAILED**

APR 2 4 2012

**OFFICE OF PETITIONS**

| | |
|---|---|
| In re Application of: | : DECISION ON REQUEST TO |
| Joseph Bates | : PARTICIPATE IN THE PATENT |
| Application No. 13/399,884 | : PROSECUTION HIGHWAY |
| Filed: February 17, 2012 | : PROGRAM AND PETITION |
| Attorney Docket No. A0006-1001C1 | : TO MAKE SPECIAL UNDER |
| | : 37 CFR 1.102(a) |

This is a decision on the request to participate in the PCT Patent Prosecution Highway (PCT-PPH) pilot program and the petition under 37 CFR 1.102(a), filed February 17, 2012, to make the above-identified application special.

The request and petition are **GRANTED**.

### Discussion

A grantable request to participate in the PCT-PPH pilot program and petition to make special require:

(1) The U.S. application must have an eligible relationship to one or more PCT applications where the ISA or IPEA are the JPO, EPO, KIPO, NPI, NBPR, or USPTO;

(2) At least one claim in the PCT application has novelty, inventive step, and industrial applicability and must be free of any observations in Box VIII in the latest work product in the international stage or applicant must identify and explain why the claim(s) is/are not subject to the observation in Box VIII;

(3) Applicant must submit a copy of the claim(s) from the PCT application(s) that have novelty, inventive step, and industrial applicability along with an English translation thereof and a statement that the English translation is accurate, if the claims are not in the English language;

(4) All the claims in the U.S. application must sufficiently correspond or be amended to sufficiently correspond to the claim(s) that have novelty, inventive step, and industrial applicability in the PCT application(s);

(5) Examination of the U.S. application has not begun;

SINGULAR-00001661

Application No. 13/399,884

(6) Applicant must submit a copy of the latest international work product from the PCT application indicating that the claim(s) have novelty, inventive step, and industrial applicability along with an English translation thereof and a statement that the English translation is accurate if the latest international work product is not in the English language;

(7) Applicant must submit an IDS listing the documents cited by the PCT examiner in the international work product along with copies of documents except U.S. patents or U.S. patent application publications.

The request to participate in the PCT-PPH pilot program and petition comply with the above requirements. Accordingly, the above-identified application has been accorded "special" status.

Telephone inquiries concerning this decision should be directed to Joan Olszewski at 571-272-7751.

All other inquiries concerning the examination or status of the application is accessible in the PAIR system at http://www.uspto.gov/ebc.index.html.

This application will be forwarded to the examiner for action on the merits commensurate with this decision once this application's formality reviews have been completed.


/dab/
David Bucci
Petitions Examiner
Office of Petitions

SINGULAR-00001662

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 |

**CONFIRMATION NO. 2684**

24208
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

**FORMALITIES LETTER**


*OC000000053059903*

Date Mailed: 03/13/2012

# NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

## FILED UNDER 37 CFR 1.53(b)

### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

• The statutory basic filing fee is missing.
  *Applicant must submit $95 to complete the basic filing fee for a small entity.*

The applicant needs to satisfy supplemental fees problems indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

• Additional claim fees of $**1625** as a small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.
• A surcharge (for late submission of filing fee, search fee, examination fee or oath or declaration) as set forth in 37 CFR 1.16(f) of $**65** for a small entity in compliance with 37 CFR 1.27, must be submitted.

**SUMMARY OF FEES DUE:**

Total fee(s) required within **TWO MONTHS** from the date of this Notice is $**2220** for a small entity
• $**95** Statutory basic filing fee.
• $**65** Surcharge.
• The application search fee has not been paid. Applicant must submit $**310** to complete the search fee.
• The application examination fee has not been paid. Applicant must submit $**125** to complete the examination fee for a small entity in compliance with 37 CFR 1.27.
• Total additional claim fee(s) for this application is $**1625**
  • $**125** for **1** independent claims over 3.
  • $**1500** for **50** total claims over 20.

page 1 of 2

SINGULAR-00001663

Replies should be mailed to:

      Mail Stop Missing Parts
      Commissioner for Patents
      P.O. Box 1450
      Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web.
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or visit our website at http://www.uspto.gov/ebc.

    If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

    /mhteklu/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

SINGULAR-00001664



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/399,884 | 02/17/2012 | Joseph Bates | A0006-1001C1 |

**CONFIRMATION NO. 2684**

24208
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

**POA ACCEPTANCE LETTER**


*OC000000053059919*

Date Mailed: 03/13/2012

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 02/17/2012.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/ewondimu/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

SINGULAR-00001665

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 13/399,884 |

### APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 95 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 310 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 125 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 70 minus 20 = | * 50 | x 30 | = 1500 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 4 minus 3 = | 1 | x 125 | = 125 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 2155 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| **AMENDMENT A** | Total (37 CFR 1.16(i)) | * | Minus ** | = | x | = | OR | x | = |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x | = | OR | x | = |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| **AMENDMENT B** | Total (37 CFR 1.16(i)) | * | Minus ** | = | x | = | OR | x | = |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x | = | OR | x | = |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

SINGULAR-00001666



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/399,884 | 02/17/2012 | 2193 | 0.00 | A0006-1001C1 | 70 | 4 |

**CONFIRMATION NO. 2684**

24208
ROBERT PLOTKIN, PC
15 New England Executive Office Park
Burlington, MA 01803

**FILING RECEIPT**

*OC000000053059902*

Date Mailed: 03/13/2012

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**
        Joseph Bates, Lexington, MA;
**Power of Attorney:** The patent practitioners associated with Customer Number 24208

**Domestic Priority data as claimed by applicant**
        This application is a CON of 12/816,201 06/15/2010
        which claims benefit of 61/218,691 06/19/2009

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

**If Required, Foreign Filing License Granted:** 03/09/2012

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/399,884**

**Projected Publication Date:** To Be Determined - pending completion of Missing Parts

**Non-Publication Request:** No

**Early Publication Request:** No
**** SMALL ENTITY ****

page 1 of 3

SINGULAR-00001667

**Title**

Processing with Compact Arithmetic Processing Element

**Preliminary Class**

708

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

<u>**GRANTED**</u>

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

SINGULAR-00001668

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage, facilitate, and accelerate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

SINGULAR-00001669

PTO/SB/81 (01-09)
Approved for use through 11/30/2011. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | Application Number | N/A |
| | Filing Date | N/A |
| | First Named Inventor | BATES, Joseph |
| | Title | Processing with Compact Arithmetic ... |
| | Art Unit | N/A |
| | Examiner Name | N/A |
| | Attorney Docket Number | A0006-1001 |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.

**OR**

☒ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

> 24208

**OR**

☐ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
| --- | --- |
| | |
| | |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

☒ The address associated with the above-mentioned Customer Number.

**OR**

☐ The address associated with Customer Number:

| Firm or Individual Name | |
| --- | --- |
| Address | |
| City | State | Zip |
| Country | | |
| Telephone | Email | |

I am the:

☒ Applicant/Inventor.

**OR**

☐ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

**SIGNATURE of Applicant or Assignee of Record**

| Signature | _(signature)_ | Date | 11 JUNE 2010 |
| --- | --- | --- | --- |
| Name | Joseph Bates | Telephone | 781-538-5664 |
| Title and Company | Managing Partner, Singular Computing, LLC | | |

**NOTE:** Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☒ *Total of ___1___ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

SINGULAR-00001670

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001671

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph Bates |
| **Filer:** | Robert Plotkin |
| **Attorney Docket Number:** | A0006-1001C1 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 95 | 95 |
| Utility Search Fee | 2111 | 1 | 310 | 310 |
| Utility Examination Fee | 2311 | 1 | 125 | 125 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 50 | 30 | 1500 |
| Independent claims in excess of 3 | 2201 | 1 | 125 | 125 |
| **Miscellaneous-Filing:** | | | | |

SINGULAR-00001672

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Late filing fee for oath or declaration | 2051 | 1 | 65 | 65 |

| | | | | |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **2220** |

SINGULAR-00001673

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 12108864 |
| **Application Number:** | 13399884 |
| **International Application Number:** | |
| **Confirmation Number:** | 2684 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph  Bates |
| **Customer Number:** | 24208 |
| **Filer:** | Robert Plotkin |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | A0006-1001C1 |
| **Receipt Date:** | 17-FEB-2012 |
| **Filing Date:** | |
| **Time Stamp:** | 18:57:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Specification | Specification.pdf | 220767 <br> 681af56a03657ea3cb17d0084214c732dcc b8dbb8 | no | 62 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

SINGULAR-00001674

| 2 | Drawings-only black and white line drawings | Drawings.pdf | 2313923<br><br>12b129b8f06f7a213a6c43cff5acf7d4d73af3d | no | 11 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 3 | Oath or Declaration filed | DeclarationSigned.pdf | 1591615<br><br>4f0da5326bfdceb5271d307ef5d8a900f97bd30e | no | 4 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 4 | Power of Attorney | POASigned.pdf | 894833<br><br>b19bd5661c036bbd871796b3551211849dSab502 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| 5 | Fee Worksheet (SB06) | fee-info.pdf | 39247<br><br>b154e552c8272effa5aba1cccef51e22f1bfdf0e | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|

| Information: |
|---|

| | | Total Files Size (in bytes): | 5060385 | | |
|---|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SINGULAR-00001675

Attorney Docket No. A0006-1001C1

# APPLICATION FOR
# UNITED STATES LETTERS PATENT

**Title:**    **Processing with Compact Arithmetic Processing Element**

**Inventor(s):**    **Joseph Bates**

SINGULAR-00001676

Attorney Docket No. A0006-1001C1

# Processing with
# Compact Arithmetic Processing Element

### Cross-Reference to Related Applications

**[0001]**     This application is a continuation of U.S. Patent Application Serial Number 12/816,201, filed on June 15, 2010, entitled, "Processing with Compact Arithmetic Processing Element," which claims the benefit of U.S. Provisional Patent Application Serial Number 61/218,691, filed on June 19, 2009, entitled, "Massively Parallel Processing with Compact Arithmetic Element," both of which are hereby incorporated by reference herein.

### Copyright Notice

**[0002]**     A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure, as it appears in the Patent and Trademark Office patent file or records, but otherwise reserves all copyright rights whatsoever.

### Background

**[0003]**     The ability to compute rapidly has become enormously important to humanity.  Weather and climate prediction, medical applications (such as drug design and non-invasive imaging), national defense, geological exploration, financial modeling, Internet search, network communications, scientific research in varied fields, and even the design of new computing hardware have each become dependent on the ability to rapidly perform massive amounts of calculation.  Future progress, such as the computer-aided design of complex nano-scale systems or development of consumer products that can see, hear, and understand, will demand economical delivery of even greater computing power.

**[0004]**     Gordon Moore's prediction, that computing performance per dollar would double every two years, has proved valid for over 30 years and looks likely to continue in some form.  But despite this rapid exponential

SINGULAR-00001677

Attorney Docket No. A0006-1001C1

improvement, the reality is that the inherent computing power available from silicon has grown far more quickly than it has been made available to software. In other words, although the theoretical computing power of computing hardware has grown exponentially, the interfaces through which software is required to access the hardware limits the ability of software to use hardware to perform computations at anything approaching the hardware's theoretical maximum computing power.

[0005]    Consider a modern silicon microprocessor chip containing about one billion transistors, clocked at roughly 1 GHz.  On each cycle the chip delivers approximately one useful arithmetic operation to the software it is running.  For instance, a value might be transferred between registers, another value might be incremented, perhaps a multiply is accomplished.  This is not terribly different from what chips did 30 years ago, though the clock rates are perhaps a thousand times faster today.

[0006]    Real computers are built as physical devices, and the underlying physics from which the machines are built often exhibits complex and interesting behavior.  For example, a silicon MOSFET transistor is a device capable of performing interesting non-linear operations, such as exponentiation. The junction of two wires can add currents.  If configured properly, a billion transistors and wires should be able to perform some significant fraction of a billion interesting computational operations within a few propagation delays of the basic components (a "cycle" if the overall design is a traditional digital design). Yet, today's CPU chips use their billion transistors to enable software to perform merely a few such operations per cycle, not the significant fraction of the billion that might be possible.

## Summary

[0007]    Embodiments of the present invention are directed to a processor or other device, such as a programmable and/or massively parallel processor or other device, which includes processing elements designed to perform arithmetic operations (possibly but not necessarily including, for

SINGULAR-00001678

Attorney Docket No. A0006-1001C1

example, one or more of addition, multiplication, subtraction, and division) on numerical values of low precision but high dynamic range ("LPHDR arithmetic"). Such a processor or other device may, for example, be implemented on a single chip.  Whether or not implemented on a single chip, the number of LPHDR arithmetic elements in the processor or other device in certain embodiments of the present invention significantly exceeds (e.g., by at least 20 more than three times) the number of arithmetic elements in the processor or other device which are designed to perform high dynamic range arithmetic of traditional precision (such as 32 bit or 64 bit floating point arithmetic).

[0008]    In some embodiments, "low precision" processing elements perform arithmetic operations which produce results that frequently differ from exact results by at least .1% (one tenth of one percent).  This is far worse precision than the widely used IEEE 754 single precision floating point standard. Programmable embodiments of the present invention may be programmed with algorithms that function adequately despite these unusually large relative errors. In some embodiments, the processing elements have "high dynamic range" in the sense that they are capable of operating on inputs and/or producing outputs spanning a range at least as large as from one millionth to one million.

## Brief Description of the Drawings

[0009]    FIG. 1 is an example overall design of a SIMD processor according to one embodiment of the present invention.

[0010]    FIG. 2 is an example of the Processing Element Array of a SIMD processor according to one embodiment of the present invention.

[0011]    FIG. 3 is an example of how a Processing Element in a Processing Element Array communicates data with other parts of the processor according to one embodiment of the present invention.

[0012]    FIG. 4 is an example design for a Processing Element according to one embodiment of the present invention.

[0013]    FIG. 5 is an example LPHDR data word format according to one embodiment of the present invention.

- 4 -

SINGULAR-00001679

Attorney Docket No. A0006-1001C1

[0014]    FIG. 6 is an example design for an LPHDR arithmetic unit according to one embodiment of the present invention.

[0015]    FIG. 7 is an original image.

[0016]    FIG. 8 is an image blurred by a blur kernel according to one embodiment of the present invention.

[0017]    FIG. 9 is an image produced by Richardson Lucy deconvolution using floating point arithmetic according to one embodiment of the present invention.

[0018]    FIG. 10 is an image produced by Richardson Lucy deconvolution using LPHDR floating point arithmetic with added noise (fp+noise) according to one embodiment of the present invention.

[0019]    FIG. 11 is an image produced by Richardson Lucy deconvolution using LPHDR logarithmic arithmetic (lns) according to one embodiment of the present invention.

## Detailed Description

[0020]    As described above, today's CPU chips make inefficient use of their transistors.  For example, a conventional CPU chip containing a billion transistors might enable software to perform merely a few operations per clock cycle.  Although this is highly inefficient, those having ordinary skill in the art design CPUs in this way for what are widely accepted to be valid reasons.  For example, such designs satisfy the (often essential) requirement for software compatibility with earlier designs.  Furthermore, they deliver great precision, performing exact arithmetic with integers typically 32 or 64 bits long and performing rather accurate and widely standardized arithmetic with 32 and 64 bit floating point numbers.  Many applications need this kind of precision.  As a result, conventional CPUs typically are designed to provide such precision, using on the order of a million transistors to implement the arithmetic operations.

[0021]    There are many economically important applications, however, which are not especially sensitive to precision and that would greatly benefit, in the form of application performance per transistor, from the ability to draw upon a

- 5 -

SINGULAR-00001680

Attorney Docket No. A0006-1001C1

far greater fraction of the computing power inherent in those million transistors. Current architectures for general purpose computing fail to deliver this power.

[0022]     Because of the weaknesses of conventional computers, such as typical microprocessors, other kinds of computers have been developed to attain higher performance.  These machines include single instruction stream/multiple data stream (SIMD) designs, multiple instruction stream/multiple data stream (MIMD) designs, reconfigurable architectures such as field programmable gate arrays (FPGAs), and graphics processing unit designs (GPUs) which, when applied to general purpose computing, may be viewed as single instruction stream/multiple thread (SIMT) designs.

[0023]     SIMD machines follow a sequential program, with each instruction performing operations on a collection of data.  They come in two main varieties: vector processors and array processors.  Vector processors stream data through a processing element (or small collection of such elements).  Each component of the data stream is processed similarly.  Vector machines gain speed by eliminating many instruction fetch/decode operations and by pipelining the processor so that the clock speed of the operations is increased.

[0024]     Array processors distribute data across a grid of processing elements (PEs).  Each element has its own memory.  Instructions are broadcast to the PEs from a central control until, sequentially.  Each PE performs the broadcast instruction on its local data (often with the option to sit idle that cycle). Array processors gain speed by using silicon efficiently—using just one instruction fetch/decode unit to drive many small simple execution units in parallel.

[0025]     Array processors have been built using fixed point arithmetic at a wide variety of bit widths, such as 1, 4, 8, and wider, and using floating point arithmetic.  Small bit widths allow the processing elements to be small, which allows more of them to fit in the computer, but many operations must be carried out in sequence to perform conventional arithmetic calculations.  Wider widths allow conventional arithmetic operations to be completed in a single cycle.  In practice, wider widths are desirable.  Machines that were originally designed with

- 6 -

SINGULAR-00001681

Attorney Docket No. A0006-1001C1

small bit widths, such as the Connection Machine-1 and the Goodyear Massively Parallel Processor, which each used 1 bit wide processing elements, evolved toward wider data paths to better support fast arithmetic, producing machines such as the Connection Machine-2 which included 32 bit floating point hardware and the MasPar machines which succeeded the Goodyear machine and provided 4 bit processing elements in the MasPar-1 and 32 bit processing elements in the MasPar-2.

[0026]    Array processors also have been designed to use analog representations of numbers and analog circuits to perform computations.  The SCAMP is such a machine.  These machines provide low precision arithmetic, in which each operation might introduce perhaps an error of a few percentage points in its results.  They also introduce noise into their computations, so the computations are not repeatable.  Further, they represent only a small range of values, corresponding for instance to 8 bit fixed point values rather than providing the large dynamic range of typical 32 or 64 bit floating point representations.  Given these limitations, the SCAMP was not intended as a general purpose computer, but instead was designed and used for image processing and for modeling biological early vision processes.  Such applications do not require a full range of arithmetic operations in hardware, and the SCAMP, for example, omits general division and multiplication from its design.

[0027]    While SIMD machines were popular in the 1980s, as price/performance for microprocessors improved designers began building machines from large collections of communicating microprocessors.  These MIMD machines are fast and can have price/performance comparable to their component microprocessors, but they exhibit the same inefficiency as those components in that they deliver to their software relatively little computation per transistor.

[0028]    Field Programmable Gate Arrays (FPGAs) are integrated circuits containing a large grid of general purpose digital elements with reconfigurable wiring between those elements.  The elements originally were single digital gates, such as AND and OR gates, but evolved to larger elements

- 7 -

SINGULAR-00001682

Attorney Docket No. A0006-1001C1

that could, for instance, be programmed to map 6 inputs to 1 output according to any Boolean function.  This architecture allows the FPGA to be configured from external sources to perform a wide variety of digital computations, which allows the device to be used as a co-processor to a CPU to accelerate computation.  However, arithmetic operations such as multiplication and division on integers, and especially on floating point numbers, require many gates and can absorb a large fraction of an FPGA's general purpose resources.  For this reason, modern FPGAs often devote a significant portion of their area to providing dozens or hundreds of multiplier blocks, which can be used instead of general purpose resources for computations requiring multiplication.  These multiplier blocks typically perform 18 bit or wider integer multiplies, and use many transistors, as similar multiplier circuits do when they are part of a general purpose CPU.

[0029]    Existing Field Programmable Analog Arrays (FPAAs) are analogous to FPGAs, but their configurable elements perform analog processing.  These devices generally are intended to do signal processing, such as helping model neural circuitry.  They are relatively low precision, have relatively low dynamic range, and introduce noise into computation.  They have not been designed as, or intended for use as, general purpose computers.  For instance, they are not seen by those having ordinary skill in the art as machines that can run the variety of complex algorithms with floating point arithmetic that typically run on high performance digital computers.

[0030]    Finally, Graphics Processing Units (GPUs) are a variety of parallel processor that evolved to provide high speed graphics capabilities to personal computers.  They offer standard floating point computing abilities with very high performance for certain tasks.  Their computing model is sometimes based on having thousands of nearly identical threads of computing (SIMT), which are executed by a collection of SIMD-like internal computing engines, each of which is directed and redirected to perform work for which a slow external DRAM memory has provided data.  Like other machines that implement standard floating point arithmetic, they use many transistors for that arithmetic.  They are as wasteful of those transistors, in the sense discussed above, as are general

- 8 -

SINGULAR-00001683

Attorney Docket No. A0006-1001C1

purpose CPUs.

**[0031]**     Some GPUs include support for 16 bit floating point values (sometimes called the "Half" format).  The GPU manufacturers, currently such as NVIDIA or AMD/ATI, describe this capability as being useful for rendering images with higher dynamic range than the usual 32 bit RGBA format, which uses 8 bits of fixed point data per color, while also saving space over using 32 bit floating point for color components.  The special effects movie firm Industrial Light and Magic (ILM) independently defined an identical representation in their OpenEXR standard, which they describe as "a high dynamic-range (HDR) image file format developed by Industrial Light & Magic for use in computer imaging applications." Wikipedia (late 2008) describes the 16 bit floating point representation thusly: "This format is used in several computer graphics environments including OpenEXR, OpenGL, and D3DX. The advantage over 8-bit or 16-bit binary integers is that the increased dynamic range allows for more detail to be preserved in highlights and shadows. The advantage over 32-bit single precision binary formats is that it requires half the storage and bandwidth."

**[0032]**     When a graphics processor includes support for 16 bit floating point, that support is alongside support for 32 bit floating point, and increasingly, 64 bit floating point.  That is, the 16 bit floating point format is supported for those applications that want it, but the higher precision formats also are supported because they are believed to be needed for traditional graphics applications and also for so called "general purpose" GPU applications.  Thus, existing GPUs devote substantial resources to 32 (and increasingly 64) bit arithmetic and are wasteful of transistors in the sense discussed above.

**[0033]**     The variety of architectures mentioned above are all attempts to get more performance from silicon than is available in a traditional processor design.  But designers of traditional processors also have been struggling to use the enormous increase in available transistors to improve performance of their machines.  These machines often are required, because of history and economics, to support large existing instruction sets, such as the Intel x86 instruction set.  This is difficult, because of the law of diminishing returns, which

- 9 -

SINGULAR-00001684

Attorney Docket No. A0006-1001C1

does not enable twice the performance to be delivered by twice the transistor count.  One facet of these designers' struggle has been to increase the precision of arithmetic operations, since transistors are abundant and some applications could be sped up significantly if the processor natively supported long (e.g., 64 bit) numbers.  With the increase of native fixed point precision from 8 to 16 to 32 to 64 bits, and of floating point from 32 to 64 and sometimes 128 bits, programmers have come to think in terms of high precision and to develop algorithms based on the assumption that computer processors provide such precision, since it comes as an integral part of each new generation of silicon chips and thus is "free."

[0034]    Embodiments of the present invention efficiently provide computing power using a fundamentally different approach than those described above.  In particular, embodiments of the present invention are directed to computer processors or other devices which use low precision high dynamic range (LPHDR) processing elements to perform computations (such as arithmetic operations).

[0035]    One variety of LPHDR arithmetic represents values from one millionth up to one million with a precision of about 0.1%.  If these values were represented and manipulated using the methods of floating point arithmetic, they would have binary mantissas of no more than 10 bits plus a sign bit and binary exponents of at least 5 bits plus a sign bit.  However, the circuits to multiply and divide these floating point values would be relatively large.  One example of an alternative embodiment is to use a logarithmic representation of the values.  In such an approach, the values require the same number of bits to represent, but multiplication and division are implemented as addition and subtraction, respectively, of the logarithmic representations.  Addition and subtraction may be implemented efficiently as described below.   As a result, the area of the arithmetic circuits remains relatively small and a greater number of computing elements can be fit into a given area of silicon.  This means the machine can perform a greater number of operations per unit of time or per unit power, which gives it an advantage for those computations able to be expressed in the LPHDR

SINGULAR-00001685

Attorney Docket No. A0006-1001C1

framework.

[0036]     Another embodiment is to use analog representations and processing mechanisms.  Analog implementation of LPHDR arithmetic has the potential to be superior to digital implementation, because it tends to use the natural analog physics of transistors or other physical devices instead of using only the digital subset of the device's behavior.  This fuller use of the devices' natural abilities may permit smaller mechanisms for doing LPHDR arithmetic.  In recent years, in the field of silicon circuitry, analog methods have been supplanted by digital methods.  In part, this is because of the ease of doing digital design compared to analog design.  Also in part, it is because of the continued rapid scaling of digital technology ("Moore's Law") compared to analog technology.  In particular, at deep submicron dimensions, analog transistors no longer work as they had in prior generations of larger-scale technology.  This change of familiar behavior has made analog design still harder in recent years.  However, digital transistors are in fact analog transistors used in a digital way, meaning digital circuits are really analog circuits designed to attempt to switch the transistors between completely on and completely off states.  As scaling continues, even this use of transistors is starting to come face to face with the realities of analog behavior.  Scaling of transistors for digital use is expected either to stall or to require digital designers increasingly to acknowledge and work with analog issues.  For these reasons, digital embodiments may no longer be easy, reliable, and scalable, and analog embodiments of LPHDR arithmetic may come to dominate commercial architectures.

[0037]     Because LPHDR processing elements are relatively small, a single processor or other device may include a very large number of LPHDR processing elements, adapted to operate in parallel with each other, and therefore may constitute a massively parallel LPHDR processor or other device.  Such a processor or other device has not been described or practiced as a means of doing general purpose computing by those having ordinary skill in the art for at least two reasons.  First, it is commonly believed by those having ordinary skill in the art, that LPHDR computation, and in particular massive

- 11 -

SINGULAR-00001686

Attorney Docket No. A0006-1001C1

amounts of LPHDR computation, whether performed in a massively parallel way or not, is not practical as a substrate for moderately general computing. Second, it is commonly believed by those having ordinary skill in the art that massive amounts of even high precision computation on a single chip or in a single machine, as is enabled by a compact arithmetic processing unit, is not useful without a corresponding increase in bandwidth between processing elements within the machine and into and out of the machine because computing is wire limited and arithmetic can be considered to be available at no cost.

[0038]    Despite these views—that massive amounts of arithmetic on a chip or in a massively parallel machine are not useful, and that massive amounts of LPHDR arithmetic are even worse—embodiments of the present invention disclosed herein demonstrate that massively parallel LPHDR designs are in fact useful and provide significant practical benefits in at least several significant applications.

[0039]    To conclude, modern digital computing systems provide high precision arithmetic, but that precision is costly. A modern double precision floating point multiplier may require on the order of a million transistors, even though only a handful of transistors is required to perform a low precision multiplication. Despite the common belief among those having ordinary skill in the art that modern applications require high precision processing, in fact a variety of useful algorithms function adequately at much lower precision. As a result, such algorithms may be performed by processors or other devices implemented according to embodiments of the present invention, which come closer to achieving the goal of using a few transistors to multiply and a wire junction to add, thus enabling massively parallel arithmetic computation to be performed with relatively small amounts of physical resources (such as a single silicon chip). Although certain specialized tasks can function at low precision, it is not obvious, and in fact has been viewed as clearly false by those having ordinary skill in the art, that relatively general purpose computing such as is typically performed today on general purpose computers can be done at low precision. However, in fact a variety of useful and important algorithms can be

SINGULAR-00001687

Attorney Docket No. A0006-1001C1

made to function adequately at much lower than 32 bit precision in a massively parallel computing framework, and certain embodiments of the present invention support such algorithms, thereby offering much more efficient use of transistors, and thereby provide improved speed, power, and/or cost, compared to conventional computers.

[0040]     Various computing devices implemented according to embodiments of the present invention will now be described.  Some of these embodiments may be an instance of a SIMD computer architecture.  Other architectures may be used, such as MIMD architectures, programmable array architectures (such as FPGAs and FPAAs), or GPU/SIMT architectures.  The techniques disclosed herein may, for example, be implemented using any processor or other device having such an existing architecture, and replacing or augmenting some or all existing arithmetic units in the processor or other device, if any, with LPHDR arithmetic units in any of the ways disclosed herein.  Devices implemented according to embodiments of the present invention, however, need not start with an existing processor design, but instead may be designed from scratch to include LPHDR arithmetic units within any of the architectures just described, or any other architecture.

[0041]     Embodiments of the present invention may, for example, be implemented using the architecture of a particular kind of SIMD computer, the array processor.  There are many variations and specific instances of array processors described in the scientific and commercial literature.  Examples include the Illiac 4, the Connection Machine 1 and 2, the Goodyear MPP, and the MasPar line of computers.

[0042]     Embodiments of the present invention need not, however, be implemented as SIMD computers.  For example, embodiments of the present invention may be implemented as FPGAs, FPAAs, or related architectures that provide for flexible connectivity of a set of processing elements.  For example, embodiments of the present invention may be implemented as GPU/SIMTs and as MIMDs, among others.  For example, embodiments of the present invention may be implemented as any kind of machine which uses LPHDR arithmetic

SINGULAR-00001688

Attorney Docket No. A0006-1001C1

processing elements to provide computing using a small amount of resources (e.g., transistors or volume) compared with traditional architectures. Furthermore, references herein to "processing elements" within embodiments of the present invention should be understood more generally as any kind of execution unit, whether for performing LPHDR operations or otherwise.

[0043]     An example SIMD computing system 100 is illustrated in FIG. 1. The computing system 100 includes a collection of many processing elements (PEs) 104 .  Sometimes present are a control unit (CU) 106, an I/O unit (IOU) 108, various Peripheral devices 110, and a Host computer 102.  The collection of PEs is referred to herein as "the Processing Element Array" (PEA), even though it need not be two-dimensional or an array or grid or other particular layout. Some machines include additional components, such as an additional memory system called the "Staging Memory" in the Goodyear MPP, but these additional elements are neither essential in the computer nor needed to understand embodiments of the present invention and therefore are omitted here for clarity of explanation.  One embodiment of the present invention is a SIMD computing system of the kind shown in FIG. 1, in which one or more (e.g., all) of the PEs in the PEA 104 are LPHDR elements, as that term is used herein.

[0044]     The Host 102 is responsible for overall control of the computing system 100.  It performs the serial, or mostly serial, computation typical of a traditional uni-processor.  The Host 102 could have more complicated structure, of course, including parallelism of various sorts.  Indeed a heterogeneous computing system combining multiple computing architectures in a single machine is a good use for embodiments of the present invention.

[0045]     A goal of the Host 102 is to have the PEA 104 perform massive amounts of computation in a useful way.  It does this by causing the PEs to perform computations, typically on data stored locally in each PE, in parallel with one another.  If there are many PEs, much work gets done during each unit of time.

[0046]     The PEs in the PEA 104 may be able to perform their individual computations roughly as fast as the Host 102 performs its computations.  This

SINGULAR-00001689

Attorney Docket No. A0006-1001C1

means it may be inefficient to have the Host 102 attempt to control the PEA 104 on a time scale as fine as the Host's or PEA's minimal time step. (This minimal time, in a traditional digital design, would be the clock period.) For this reason, the specialized control unit (CU) 106 may be included in the architecture. The CU 106 has the primary task of retrieving and decoding instructions from an instruction memory, which conceptually is part of the CU 106, and issuing the partially decoded instructions to all the PEs in the PEA 104. (This may be viewed by the CU software as happening roughly simultaneously for all the PEs, though it need not literally be synchronous, and in fact it may be effective to use an asynchronous design in which multiple instructions at different stages of completion simultaneously propagate gradually across the PEA, for instance as a series of wave fronts.)

[0047]    In a design which includes the CU 106, the Host 102 typically will load the instructions (the program) for the PEA 104 into the CU instruction memory (not shown in FIG. 1), then instruct the CU 106 to interpret the program and cause the PEA 104 to compute according to the instructions. The program may, for example, look generally similar to a typical machine language program, with instructions to cause data movement, logical operations, arithmetic operations, etc., in and between the PEs and other instructions to do similar operations together with control flow operations within the CU 106. Thus, the CU 106 may run a typical sort of program, but with the ability to issue massively parallel instructions to the PEA 104.

[0048]    In order to get data into and out of the CU 106 and PEA 104, the I/O Unit 108 may interface the CU 106 and PEA 104 with the Host 102, the Host's memory (not shown in FIG. 1), and the system's Peripherals 110, such as external storage (e.g., disk drives), display devices for visualization of the computational results, and sometimes special high bandwidth input devices (e.g., vision sensors). The PEA's ability to process data far faster than the Host 102 makes it useful for the IOU 108 to be able to completely bypass the Host 102 for some of its data transfers. Also, the Host 102 may have its own ways of communicating with the Peripherals 110.

SINGULAR-00001690

Attorney Docket No. A0006-1001C1

[0049]    The particular embodiment illustrated in FIG. 1 is shown merely for purposes of example and does not constitute a limitation of the present invention.  For example, alternatively the functions performed by the CU 106 could instead be performed by the Host 102 with the CU 106 omitted.  The CU 106 could be implemented as hardware distant from the PEA 104 (e.g., off-chip), or the CU 106 could be near to the PEA 104 (e.g., on-chip).  I/O could be routed through the CU 106 with the IOU 108 omitted or through the separate I/O controller 108, as shown.  Furthermore, the Host 102 is optional; the CU 106 may include, for example, a CPU, or otherwise include components sufficient to replace the functions performed by the Host 102.  The Peripherals 110 shown in FIG. 1 are optional.  The design shown in FIG. 1 could have a special memory, such as the Goodyear MPP's "staging memory," which provides an intermediate level of local storage.  Such memory could, for example, be bonded to the LPHDR chip using 3D fabrication technology to provide relatively fast parallel access to the memory from the PEs in the PEA 104.

[0050]    The PEA 104 itself, besides communicating with the CU 106 and IOU 108 and possibly other mechanisms, has ways for data to move within the array.  For example, the PEA 104 may be implemented such that data may move from PEs only to their nearest neighbors, that is, there are no long distance transfers.  FIGS. 2 and 3 show embodiments of the present invention which use this approach, where the nearest neighbors are the four adjacent PEs toward the North, East, West, and South, called a NEWS design.  For example, FIG. 2 shows a subset of the PEs in PEA 104, namely PE 202, PE 204, PE 206, PE 208, and PE 210.  When the CU 106 issues data movement instructions, all the PEs access data from or send data to their respective specified nearest neighbor.  For instance, every PE might access a specified data value in its neighbor to the West and copy it into its own local storage.  In some embodiments, such as some analog embodiments, these kinds of transfers may result in some degradation of the value copied.

[0051]    FIG. 3 shows a PE 302 that includes data connections to the IOU 108.  PE 302 is connected at the North to PE 304, at the East to PE 306, at

- 16 -

SINGULAR-00001691

Attorney Docket No. A0006-1001C1

the South to PE 308, and at the West to PE 310.  However, driving signals from inside the PEA 104 out to the IOU 108 usually requires a physically relatively large driving circuit or analogous mechanism.  Having those at every PE may absorb much of the available resources of the hardware implementation technology (such as VLSI area).  In addition, having independent connections from every PE to the IOU 108 means many such connections, and long connections, which also may absorb much of the available hardware resources.  For these reasons, the connections between the PEs and the IOU 108 may be limited to those PEs at the edges of the PE array 104.  In this case, to get data out of, and perhaps into, the PEA 104, the data is read and written at the edges of the array and CU instructions are performed to shift data between the edges and interior of the PEA 104.  The design may permit data to be pushed from the IOU 108 inward to any PE in the array using direct connections, but may require readout to occur by using the CU 106 to shift data to the edges where it can be read by the IOU 108.

[0052]    Connections between the CU 106 and PEA 104 have analogous variations.  One design may include the ability to drive instructions into all the PEs roughly simultaneously, but another approach is to have the instructions flow gradually (for instance, shift in discrete time steps) across the PEA 104 to reach the PEs.  Some SIMD designs, which may be implemented in embodiments of the present invention, have a facility by which a "wired-or" or "wired-and" of the state of every PE in the PEA 104 can be read by the CU 106 in approximately one instruction delay time.

[0053]    There are many well studied variations on these matters in the literature, any of which may be incorporated into embodiments of the present invention.  For example, an interconnect, such as an 8-way local interconnect, may be used.  The local connections may include a mixture of various distance hops, such as distance 4 or 16 as well as distance 1. The outside edges may be connected using any topology, such as a torus or twisted torus.  Instead of or in addition to a local interconnect, a more complex global interconnect, such as the hypercube design, may be used.  Furthermore, the physical implementation of

- 17 -

SINGULAR-00001692

Attorney Docket No. A0006-1001C1

the PEA 104 (e.g., a chip) could be replicated (e.g., tiled on a circuit board) to produce a larger PEA.  The replication may form a simple grid or other arrangement, just as the component PEAs may but need not be grids.

[0054]    FIG. 4 shows an example design for a PE 400 (which may be used to implement any one or more of the PEs in the PEA 104).  The PE 400 stores local data.  The amount of memory for the local data varies significantly from design to design.  It may depend on the implementation technologies available for fabricating the PE 400.  Sometimes rarely changing values (Constants) take less room than frequently changing values (Registers), and a design may provide more Constants than Registers.  For instance, this may be the case with digital embodiments that use single transistor cells for the Constants (e.g., floating gate Flash memory cells) and multiple transistor cells for the Registers (e.g., 6-transistor SRAM cells).  Sometimes the situation is reversed, as may be the case in analog embodiments, where substantial area for capacitance may be needed to ensure stable long term storage of Constants, and such embodiments may have more Registers than Constants.  Typical storage capacities might be tens or hundreds of arithmetic values stored in the Registers and Constants in each PE, but these capacities are adjustable by the designer.  Some designs, for instance, may have Register storage but no Constant storage.  Some designs may have thousands or even many more values stored in each PE.  All of these variations may be reflected in embodiments of the present invention.

[0055]    Each PE needs to operate on its local data.  For this reason within the PE 400 there are data paths 402a-i, routing mechanisms (such as the multiplexor MUX 404), and components to perform some collection of logical and arithmetic operations (such as the logic unit 406 and the LPHDR arithmetic unit 408).  The LPHDR arithmetic unit 408 performs LPHDR arithmetic operations, as that term is used herein.  The input, output, and intermediate "values" received by, output by, and operated on by the PE 400 may, for example, take the form of electrical signals representing numerical values.

[0056]    The PE 400 also may have one or more flag bits, shown as

- 18 -

Attorney Docket No. A0006-1001C1

Mask 410 in FIG. 4.  The purpose of the Mask 410 is to enable some PEs, the ones in which a specified Mask bit is set, to ignore some instructions issued by the CU 106.  This allows some variation in the usual lock-step behaviors of all PEs in the PEA 104.  For instance, the CU 106 may issue an instruction that causes each PE to reset or set its Mask 410 depending on whether a specified Register in the PE is positive or negative.  A subsequent instruction, for instance an arithmetic instruction, may include a bit meaning that the instruction should be performed only by those PEs whose Mask 410 is reset.  This combination has the effect of conditionally performing the arithmetic instruction in each PE depending on whether the specified Register in that PE was positive.  As with the Compare instructions of traditional computers, there are many possible design choices for mechanisms to set and clear Masks.

[0057]     The operation of the PEs is controlled by control signals 412a-d received from the CU 106, four of which are shown in FIG. 4 merely for purposes of example and not limitation.  We have not shown details of this mechanism, but the control signals 412a-d specify which Register or Constant memory values in the PE 400 or one of its neighbors to send to the data paths, which operations should be performed by the Logic 406 or Arithmetic 408 or other processing mechanisms, where the results should be stored in the Registers, how to set, reset, and use the Mask 410, and so on.  These matters are well described in the literature on SIMD processors.

[0058]     Many variations of this PE 400 and PEA design are possible and fall within the scope of the present invention.  Digital PEs can have shifters, lookup tables, and many other mechanisms such as described in the literature. Analog PEs can have time-based operators, filters, comparators with global broadcast signals and many other mechanisms such as described in the literature.  The PEA 104 can include global mechanisms such as wired-OR or wired-AND for digital PEAs or wired-SUM for analog PEAs   Again, there are many variations well described in the literature on digital and analog computing architectures.

[0059]     For example, LPHDR operations other than and/or in addition to

- 19 -

SINGULAR-00001694

Attorney Docket No. A0006-1001C1

addition and multiplication may be supported.  For example, a machine which can only perform multiplication and the function (1-X) may be used to approximate addition and other arithmetic operations.  Other collections of LPHDR operations may be used to approximate LPHDR arithmetic operations, such as addition, multiplication, subtraction, and division, using techniques that are well-known to those having ordinary skill in the art.

[0060]     One aspect of embodiments of the present invention that is unique is the inclusion of LPHDR arithmetic mechanisms in the PEs. Embodiments of such mechanisms will now be described.

[0061]     One digital embodiment of the LPHDR arithmetic unit 408 operates on digital (binary) representations of numbers.  In one digital embodiment these numbers are represented by their logarithms.  Such a representation is called a Logarithmic Number System (LNS), which is well-understood by those having ordinary skill in the art.

[0062]     In an LNS, numbers are represented as a sign and an exponent. There is an implicit base for the logarithms, typically 2 when working with digital hardware.  In the present embodiment, a base of 2 is used for purposes of example.  As a result, a value, say B, is represented by its sign and a base 2 logarithm, say b, of its absolute value.  For numbers to have representation errors of at most, say, 1% (one percent), the fractional part of this logarithm should be represented with enough precision that the least possible change in the fraction corresponds to about a 1% change in the value B.  If fractions are represented using 6 bits, increasing or decreasing the fraction by 1 corresponds to multiplying or dividing B by the 64th root of 2, which is approximately 1.011.  This means that numbers may be represented in the present embodiment with a multiplicative error of approximately 1%.  So, in this example embodiment the fraction part of the representation has 6 bits.

[0063]     Furthermore, the space of values processed in the present embodiment have high dynamic range.  To represent numbers whose absolute value is from, say, one billionth to one billion, the integer part of the logarithm must be long enough to represent plus or minus the base 2 logarithm of one

- 20 -

SINGULAR-00001695

Attorney Docket No. A0006-1001C1

billion.  That logarithm is about 29.9.  In the present embodiment the integer part of the logarithm representation is 5 bits long to represent values from 0 to 31, which is sufficient.  There also is a sign bit in the exponent.  Negative logarithms are represented using two's complement representation.

[0064]     In an LNS, the value zero corresponds to the logarithm negative infinity.  One can choose a representation to explicitly represent this special value.  However,  to minimize resources (for instance, area) used by arithmetic circuits, the present embodiment represents zero by the most negative possible logarithm, which is -32, corresponding to the two's complement bit representation '100000 000000', and denoting a value of approximately 2.33E-10.

[0065]     When computing, situations can arise in which operations cannot produce reasonable values.  An example is when a number is too large to be represented in the chosen word format, such as when multiplying or adding two large numbers or upon divide by zero (or nearly zero).  One common approach to this problem is to allow a value to be marked as Not A Number (NAN) and to make sure that each operation produces NAN if a problem arises or if either of its inputs is NAN.  The present embodiment uses this approach, as will be described in the following.

[0066]     FIG. 5 shows the word format 500 for these numbers, in the present embodiment.  It has one NAN bit 502a, one bit 502b for the sign of the value, and 12 bits 502c-e representing the logarithm.  The logarithm bits include a 5 bit integer part 502d and a 6 bit fraction part 502e. To permit the logarithms to be negative, there is a sign bit 502c for the logarithm which is represented in two's complement form.  The NAN bit is set if some problem has arisen in computing the value.  The word format 500 shown in FIG. 5 is merely an example and does not constitute a limitation of the present invention.  Other variations may be used, so long as they have low precision and high dynamic range.

[0067]     FIG. 6 shows an example digital implementation of the LPHDR arithmetic unit 408 for the representation illustrated in FIG. 5.  The unit 408 receives two inputs, A 602a and B 602b, and produces an output 602c.  The

SINGULAR-00001696

Attorney Docket No. A0006-1001C1

inputs 602a-b and output 602c may, for example, take the form of electrical signals representing numerical values according to the representation illustrated in FIG. 5, as is also true of signals transmitted within the unit 408 by components of the unit 408.  The inputs 602a-b and output 602c each are composed of a Value and a NAN (Not A Number) bit.  The unit 408 is controlled by control signals 412a-d, coming from the CU 106, that determine which available arithmetic operation will be performed on the inputs 602a-b.  In this embodiment, all the available arithmetic operations are performed in parallel on the inputs 602a-b by adder/subtractor 604, multiplier 606, and divider 608. Adder/subtractor 604 performs LPHDR addition and subtraction, multiplier 606 performs LPHDR multiplication, and divider 608 performs LPHDR division.

[0068]    The desired result (from among the outputs of adder/subtractor 604, multiplier 606, and divider 608) is chosen by the multiplexers (MUXes) 610a and 610b.  The right hand MUX 610b sends the desired value to the output 602c. The left hand MUX 610a sends the corresponding NAN bit from the desired operation to the OR gate 612, which outputs a set NAN bit if either input is NAN or if the specified arithmetic operation yields NAN.  The computing architecture literature discusses many variations which may be incorporated into the embodiment illustrated in FIG. 6.

[0069]    LNS arithmetic has the great advantage that multiplication (MUL) and division (DIV) are very easy to compute and take few physical resources (e.g., little area in a silicon implementation).  The sign of the result is the exclusive-or of the signs of the operands.  The logarithm part of the output is the sum, in the case of MUL, or the difference, in the case of DIV, of the logarithm parts of the operands.  The sum or difference of the logarithms can overflow, producing a NAN result.  Certain other operations also are easy in LNS arithmetic.  For instance, square root corresponds to dividing the logarithm in half, which in our representation means simply shifting it one bit position to the right.

[0070]    Thus, the multiplier 606 and divider 608 in FIG. 6 are implemented as circuits that simply add or subtract their inputs, which are two's

- 22 -

SINGULAR-00001697

Attorney Docket No. A0006-1001C1

complement binary numbers (which in turn happen to be logarithms).  If there is overflow, they output a 1 for NAN.

[0071]    Implementing addition and subtraction in LNS, that is, the adder/subtractor 604 in FIG. 6, follows a common approach used in the literature on LNS.  Consider addition.  If we have two positive numbers B and C represented by their logarithms b and c, the representation of the sum of B and C is log(B+C).  An approach to computing this result that is well known to those skilled in the art is based on noticing that log(B+C) = log(B*(1+C/B)) = log(B)+log(1+C/B) = b+F(c-b) where F(x)=log(1+2^x).  Thus, the present embodiment computes c-b, feeds that through F, and adds the result to b, using standard digital techniques known to those skilled in the art.

[0072]    Much of the published literature about LNS is concerned with how to compute F(x), the special function for ADD, along with a similar function for SUB.  Often these two functions share circuitry, and this is why a single combined adder/subtractor 604 is used in the embodiment of FIG. 6.  There are many published ways to compute these functions or approximations to them, including discussions of how to do this when the values are of low precision.  Any such method, or other method, may be used.  Generally speaking, the more appropriate variations for massively parallel LPHDR arithmetic are those that require the minimal use of resources, such as circuit area, taking advantage of the fact that the representation used in the embodiment of FIG. 6 is low precision and that the arithmetic operations need not be deterministic nor return the most accurate possible answer within the low precision representation.  Thus, embodiments of the present invention may use circuitry that does not compute the best possible answer, even among the limited choices available in a low precision representation.

[0073]    In order to enable conditional operation of selected PEs, the present embodiment is able to reset and set the MASK flag 410 based on results of computations.  The mechanism for doing this is that the CU 106 includes instructions that cause the MASK 410 in each PE to unconditionally reset or set its flag along with other instructions to perform basic tests on values entering the

SINGULAR-00001698

Attorney Docket No. A0006-1001C1

MASK 410 on data path 402f and to set the flag accordingly.  Examples of these latter instructions include copying the sign bit or NAN bit of the word on data path 402f into the MASK bit 410.  Another example is to set the MASK bit 410 if the 12 bit value part of the word on data path 402f is equal to binary zero.  There are many additional and alternative ways for doing this that are directly analogous to comparison instructions in traditional processors and which are well understood by those skilled in the art.

[0074]     It is worth noting that while the obvious method of using the above LNS operations is to do LPHDR arithmetic, the programmer also may consider selected values to be 12 bit two's complement binary numbers.  MUL and DIV may be used to add and subtract such values, since that is precisely their behavior in LNS implementations.  The Mask setting instructions can compare these simple binary values.  So besides doing LPHDR computations, this digital embodiment using LNS can perform simple binary arithmetic on short signed integers.

[0075]     Some embodiments of the present invention may include analog representations and processing methods.  Such embodiments may, for example, represent LPHDR values as charges, currents, voltages, frequencies, pulse widths, pulse densities, various forms of spikes, or in other forms not characteristic of traditional digital implementations.  There are many such representations discussed in the literature, along with mechanisms for processing values so represented.  Such methods, often called Analog methods, can be used to perform LPHDR arithmetic in the broad range of architectures we have discussed, of which SIMD is one example.

[0076]     An example of an analog SIMD architecture is the SCAMP design (and related designs) of Dudek.  In that design values have low dynamic range, being accurate roughly to within 1%.  Values are represented by charges on capacitors.  Those capacitors typically are the gates of transistors.  Each PE has several memory cells, analogous to the Registers shown in FIG. 4.  Addition is performed by turning on pass transistors from the two operands, which transfer their charge onto an analog bus, where it is summed by the natural physics of

- 24 -

SINGULAR-00001699

Attorney Docket No. A0006-1001C1

charge and wires, upon which it is gated onto another Register to charge up its capacitor, which then represents the sum of the operands. The detailed mechanism disclosed by Dudek actually produces the negative of the sum, but the basic concept is as described and is a simple way to perform addition and subtraction using analog representations and simple processing mechanisms.

[0077]     Variations of the SCAMP design have been fabricated and used to perform a range of low precision, low dynamic range computations related to image processing. These designs do not perform high dynamic range arithmetic, nor do they include mechanisms for performing multiplication or division of values stored in Registers. However, the Dudek designs suggest the general feasibility of constructing analog SIMD machines. The following describes how to build an analog SIMD machine that performs LPHDR arithmetic, and is thus an embodiment of the present invention.

[0078]     One embodiment of the present invention represents values as a mixture of analog and digital forms. This embodiment represents values as low precision, normalized, base 2 floating point numbers, where the mantissa is an analog value and the exponent is a binary digital value. The analog value may be accurate to about 1%, following the approach of Dudek, which is well within the range of reasonable analog processing techniques. The exponent may be 6 bits long, or whatever is needed to provide the desired high dynamic range.

[0079]     To multiply values, the embodiment proceeds by analogy to traditional floating point methods. The digital exponents are summed using a binary arithmetic adder, a standard digital technique. The analog mantissas are multiplied. Since they represent normalized values between approximately 1/2 and 1, their product may be as small as approximately 1/4. Such a product value needs to be normalized back to the range 1/2 to 1. This is done, in the present embodiment, by comparing the analog mantissa to an analog representation of 1/2, using a threshold circuit. If the mantissa is below 1/2, then it is doubled and one is subtracted from the exponent, where such subtraction is simple digital subtraction. Doubling the mantissa is implemented in a way that corresponds to the chosen analog representation. For example, whatever means are being

- 25 -

SINGULAR-00001700

used to add two analog values can be used to double the mantissa, by adding it to a copy of itself.  For example, if the mantissa is represented as a current, such as copy may be produced by a current mirror, or other suitable mechanism, and addition may be performed by a current summing junction.

[0080]      The means of multiplying the original analog mantissas depends on the representation chosen.  For example, if mantissas are represented using charge, following SCAMP, then any known method from the literature may be used to convert charge to current.  For instance, since the charge on a capacitor determines the voltage on the capacitor, this may be implemented as a conversion from voltage to current, which is a basic technique in analog electronics known to those skilled in the art.  In any case, if the mantissas are represented as currents, or once the mantissas are converted to currents, they may be multiplied using, for instance, the techniques of Gilbert.  The Gilbert multiplier produces a current, representing the product, which may, if necessary, then be converted back to charge (or whatever representation is used).  These are merely examples of how the needed operations might be performed.  The literature discusses these matters extensively and these kinds of analog circuits are known to those skilled in the art.

[0081]      Adding and subtracting values requires pre-normalization of the values to the same exponent, as is done in traditional digital floating point arithmetic.  The present embodiment does this by comparing the exponents and choosing the smaller one.  Then the smaller one is subtracted from the larger, using digital means.  The difference specifies how many times the mantissa which corresponds to the smaller exponent needs to be divided in half.  If that mantissa is represented by (or converted to) a current, then an analog R-2R style ladder may be used to divide the current in half the required number of times, with the stage of the ladder specified by the difference of exponents calculated as above.  The resulting scaled down current is added to (or subtracted from, if this is an LPHDR subtraction operation) the current corresponding to the mantissa associated with the larger exponent to yield the output mantissa.  The output exponent associated with the output mantissa is the larger exponent.

- 26 -

Attorney Docket No. A0006-1001C1

Post-normalization may be needed at this point.  If the output mantissa is greater than 1, then it needs to be divided in half and the output exponent needs to be incremented.  If it is less than 1/2, then it needs to be doubled enough times to exceed 1/2 and the output exponent must be decremented correspondingly, which may be performed by a series of threshold circuits, doubler circuits, and associated decrementer circuits.  These increments and decrements of the binary digital exponent, and corresponding doublings and halvings of the analog mantissa current, are straightforward operations well known to those skilled in the art.

[0082]    The present embodiment represents the exponent as a digital binary number.  Alternate embodiments may represent the exponent as an analog value.  However, it is important that the exponent be represented in storage and computation in such a manner that neither noise nor other errors cause a change in the value it represents.  Such changes in the exponent could introduce factors of two (or in some embodiments larger) changes in the values of the stored numbers.  To maintain accuracy of the exponents, an embodiment may quantize the exponent to relatively few levels, for instance 16 values plus a sign bit.  During processing, slight variations in the analog representation of the exponent may then be removed by circuitry that restores values to the 16 standard quantization levels.  To get sufficient dynamic range in such an embodiment, the floating point numbers may be processed as base 4 numbers, rather than the usual base 2 numbers.  This means, for instance, that normalized mantissas are in the range 1/4 to 1.  The methods discussed above for addition, subtraction, and multiplication apply as described, with slight and straightforward variations.

[0083]    The analog and mixed signal embodiments discussed above are merely examples and do not constitute a limitation of the present invention.  The published literature on neuromorphic, analog, and mixed signal techniques provides a wealth of methods that enable LPHDR storage and processing to be implemented.  Such storage and processing may introduce noise as well as fabrication errors into the behavior of machines performing LPHDR arithmetic.

- 27 -

SINGULAR-00001702

Attorney Docket No. A0006-1001C1

The results we present below, on software applications running using "fp+noise" arithmetic, show that despite these very "un-digital" qualities a machine built in this way is surprisingly useful.

[0084]    Evidence that LPHDR arithmetic is useful in several important practical computing applications will now be provided.  The evidence is presented for a broad variety of embodiments of the present invention, thereby showing that the usefulness does not depend much on the detailed implementation.

[0085]    For the goal of showing usefulness, we choose a very general embodiment of an LPHDR machine.  Our model of the machine is that it provides at least the following capabilities: (1) is massively parallel, (2) provides LPHDR arithmetic possibly with noise, (3) provides a small amount of memory local to each arithmetic unit, (4) provides the arithmetic/memory units in a two-dimensional physical layout with only local connections between units (rather than some more powerful, flexible, or sophisticated connection mechanism), and (5) provides only limited bandwidth between the machine and the host machine. Note that this model is merely an example which is used for the purpose of demonstrating the utility of various embodiments of the present invention, and does not constitute a limitation of the present invention.  This model includes, among others, implementations that are digital or analog or mixed, have zero or more noise, have architectures which are FPGA-like, or SIMD-like, or MIMD-like, or otherwise meet the assumptions of the model.  More general architectures, such as shared memory designs, GPU-like designs, or other sophisticated designs subsume this model's capabilities, and so LPHDR arithmetic in those architectures also is useful.  While we are thus showing that LPHDR arithmetic is useful for a broad range of designs, of which SIMD is only an instance, for purpose of discussion below, we call each unit, which pairs memory with arithmetic, a Processing Element or "PE".

[0086]    Several applications are discussed below.  For each, the discussion shows (1) that the results are useful when computation is performed in possibly noisy LPHDR arithmetic, and (2) that the computation can be

SINGULAR-00001703

Attorney Docket No. A0006-1001C1

physically laid out in two dimensions with only local flow of data between units, only limited memory within each unit, and only limited data flow to/from the host machine, in such a way that the computation makes efficient use of the machine's resources (area, time, power). The first requirement is referred to as "Accuracy" and the second requirement "Efficiency." Applications that meet both requirements running in this model will function well on many kinds of LPHDR machines, and thus those machines are a broadly useful invention.

[0087]   Applications are tested using two embodiments for the machine's arithmetic. One uses accurate floating point arithmetic but multiplies the result of each arithmetic operation by a uniformly chosen random number between .99 and 1.01. In the following discussion, this embodiment is denoted "fp+noise". It may represent the results produced by an analog embodiment of the machine.

[0088]   A second embodiment uses logarithmic arithmetic with a value representation as shown in FIG. 5. The arithmetic is repeatable, that is, not noisy, but because of the short fraction size it produces errors of up to approximately 1-2% in each operation. In the following discussion, this embodiment is denoted "lns". It may represent the results produced by a particular digital embodiment of the machine.

[0089]   To demonstrate usefulness of embodiments of the invention, we shall discuss three computational tasks that are enabled by embodiments of the invention and which in turn enable a variety of practical applications. Two of the tasks are related to finding nearest neighbors and the other is related to processing visual information. We shall describe the tasks, note their practical application, and then demonstrate that each task is solvable using the general model described above and thus solvable using embodiments of the present invention.

<u>Application 1: Finding Nearest Neighbors</u>

[0090]   Given a large set of vectors, called Examples, and a given vector, called Test, the nearest neighbor problem ("NN") is to find the Example which is closest to Test where the distance metric is the square of the Euclidean

- 29 -

SINGULAR-00001704

Attorney Docket No. A0006-1001C1

distance (sum of squares of distances between respective components).

**[0091]**     NN is a widely useful computation.  One use is for data compression, where it is called "vector quantization".  In this application we have a set of relatively long vectors in a "code book" (these are the Examples) and associated short code words (for instance the index of the vector in the code book).  We move through a sequence of vectors to be compressed, and for each such vector (Test), find the nearest vector in the code book and output the corresponding code word.  This reduces the sequence of vectors to the shorter sequence of code words.  Because the code words do not completely specify the original sequence of vectors, this is a lossy form of data compression.  Among other applications, it may be used in speech compression and in the MPEG standards.

**[0092]**     Another application of NN would be in determining whether snippets of video occur in a large video database.  Here we might abstract frames of video from the snippet into feature vectors, using known methods, such as color histograms, scale invariant feature extraction, etc.  The Examples would be analogous feature vectors extracted from the video database.  We would like to know whether any vector from the snippet was close to any vector from the database, which NN can help us decide.

**[0093]**     In many applications of nearest neighbor, we would prefer to find the true nearest neighbor but it is acceptable if we sometimes find another neighbor that is only slightly farther away or if we almost always find the true nearest neighbor.  Thus, an approximate solution to the nearest neighbor problem is useful, especially if it can be computed especially quickly, or at low power, or with some other advantage compared to an exact solution.

**[0094]**     We shall now show that approximate nearest neighbor is computable using embodiments of the present invention in a way that meets the criteria of Accuracy and Efficiency.

**[0095]**     Algorithm.  The following describes an algorithm which may be performed by machines implemented according to embodiments of the present invention, such as by executing software including instructions for performing the

- 30 -

SINGULAR-00001705

Attorney Docket No. A0006-1001C1

algorithm. The inputs to the algorithm are a set of Examples and a Test vector. The algorithm seeks to find the nearest (or almost nearest) Example to the Test.

[0096]      In the simplest version of the algorithm, the number of Examples may be no larger than the number of PEs and each vector must be short enough to fit within a single PE's memory. The Examples are placed into the memories associated with the PEs, so that one Example is placed in each PE. Given a Test, the Test is passed through all the PEs, in turn. Accompanying the Test as it passes through the PEs is the distance from the Test to the nearest Example found so far, along with information that indicates what PE (and thus what Example) yielded that nearest Example found so far. Each PE computes the distance between the Test and the Example stored in that PE's memory, and then passes along the Test together with either the distance and indicator that was passed into this PE (if the distance computed by this PE exceeded the distance passed into the PE) or the distance this PE computed along with information indicating this PE's Example is the nearest so far (if the distance computed by this PE is less than the distance passed into the PE). Thus, the algorithm is doing a simple minimization operation as the Test is passed through the set of PEs. When the Test and associated information leave the last PE, the output is a representation of which PE (and Example) was closest to the Test, along with the distance between that Example and the Test.

[0097]      In a more efficient variant of this algorithm, the Test is first passed along, for example, the top row, then every column passes the Test and associated information downward, effectively doing a search in parallel with other columns, and once the information reaches the bottom it passes across the bottom row computing a minimum distance Example of all the columns processed so far as it passes across the row. This means that the time required to process the Test is proportional to (the greater of) the number of PEs in a row or column.

[0098]      An enhancement of this algorithm proceeds as above but computes and passes along information indicating both the nearest and the second nearest Example found so far. When this information exits the array of

- 31 -

SINGULAR-00001706

Attorney Docket No. A0006-1001C1

PEs, the digital processor that is hosting the PE array computes (in high precision) the distance between the Test and the two Examples indicated by the PE array, and the nearer of the two is output as the likely nearest neighbor to the Test.

[0099]    Accuracy. We expressed the arithmetic performed by the enhanced algorithm described above as code in the C programming language. That code computes both nearest neighbors, which are discussed here, along with weighted scores, which are discussed below.

[0100]    The C code performs the same set of arithmetic operations in the same order using the same methods of performing arithmetic as an actual implementation of the present invention, such as one implemented in hardware. It thus yields the same results as the enhanced algorithm would yield when running on an implementation of the present invention.   (How the algorithm is organized to run efficiently on such an implementation is discussed below in the section on Efficiency.)

[0101]    In particular, when computing the distance between the Test and each Example, the code uses Kahan's method, discussed below, to perform the possibly long summation required to form the sum of the squares of the distances between vector components of the Test and Example.

[0102]    The C code contains several implementations for arithmetic, as discussed above.  When compiled with "#define fp" the arithmetic is done using IEEE standard floating point.  If a command line argument is passed in to enable noisy arithmetic, then random noise is added to the result of every calculation. This is the "fp+noise" form of arithmetic.  When compiled without "#define fp" the arithmetic is done using low precision logarithmic arithmetic with a 6 bit base-2 fraction.  This is the "lns" form of arithmetic.

[0103]    When the code was run it produced traces showing the results of the computations it performed.  These traces, shown below, show that with certain command line arguments the enhanced algorithm yielded certain results for LPHDR nearest neighbor calculations.  These results provide details showing the usefulness of this approach.  We shall discuss the results briefly here.

- 32 -

SINGULAR-00001707

Attorney Docket No. A0006-1001C1

[0104]     The first results are for "fp+noise".  Ten distinct runs were performed.  Each run generated one million random Example vectors of length five, where each component of each vector was drawn from N(0,1)—the Gaussian (normal) distribution with mean zero and standard deviation 1.  Each run then generated one hundred Test vectors of length five, where each component of each vector also was drawn from N(0,1).  For each Test, the nearest neighbor was computed both according to the enhanced algorithm above and according to the standard nearest neighbor method using high precision floating point arithmetic.  A count was kept of the number of times the enhanced algorithm yielded the same result as the standard floating point method.  The results were as follows:

```
% ./a.out 5 10 1000000 100 1
Representation is Floating Point with noise.
Run 1. On 100 tests, 100(100.0%) matches and 0.81% mean score error.
Run 2. On 100 tests, 100(100.0%) matches and 0.84% mean score error.
Run 3. On 100 tests, 100(100.0%) matches and 0.98% mean score error.
Run 4. On 100 tests, 100(100.0%) matches and 0.81% mean score error.
Run 5. On 100 tests, 100(100.0%) matches and 0.94% mean score error.
Run 6. On 100 tests, 100(100.0%) matches and 0.82% mean score error.
Run 7. On 100 tests, 100(100.0%) matches and 0.78% mean score error.
Run 8. On 100 tests, 100(100.0%) matches and 0.86% mean score error.
Run 9. On 100 tests, 100(100.0%) matches and 0.85% mean score error.
Run 10. On 100 tests, 99(99.0%) matches and 0.86% mean score error.
Average percentage of time LPHDR (with final DP correction) finds
nearest example = 99.90%.
Average score error between LPHDR and DP = 0.85%.
```

[0105]     The "mean score error" values are considered below in the discussion of weighted scores.  The "matches" information is relevant here.

[0106]     Of the ten runs, only one had any test, of the 100 tests performed, which yielded a nearest neighbor different from what the usual high precision method yielded.  Thus, the average percentage of matches between the enhanced algorithm running with "fp+noise" arithmetic and the usual method was 99.9%.

[0107]     A similar computation was then performed using "lns" arithmetic.  In this case, the results were:

- 33 -

SINGULAR-00001708

Attorney Docket No. A0006-1001C1

```
% ./a.out 5 10 1000000 100 0
Representation is LNS without noise.
Run 1. On 100 tests, 100(100.0%) matches and 0.15% mean score error.
Run 2. On 100 tests, 100(100.0%) matches and 0.07% mean score error.
Run 3. On 100 tests, 100(100.0%) matches and 0.08% mean score error.
Run 4. On 100 tests, 100(100.0%) matches and 0.09% mean score error.
Run 5. On 100 tests, 100(100.0%) matches and 0.11% mean score error.
Run 6. On 100 tests, 100(100.0%) matches and 0.16% mean score error.
Run 7. On 100 tests, 100(100.0%) matches and 0.07% mean score error.
Run 8. On 100 tests, 100(100.0%) matches and 0.13% mean score error.
Run 9. On 100 tests, 99(99.0%) matches and 0.17% mean score error.
Run 10. On 100 tests, 98(98.0%) matches and 0.16% mean score error.
Average percentage of time LPHDR (with final DP correction) finds
nearest example = 99.70%.
Average score error between LPHDR and DP = 0.12%.
```

[0108]    The average percentage of matches was 99.7%, slightly worse than for "fp+noise".

[0109]    The accuracy shown by the enhanced nearest neighbor algorithm using two forms of LPHDR arithmetic is surprising.  To perform many calculations sequentially with 1% error and yet produce a final result with less than 1% error may seem counter-intuitive.  Nonetheless, the LPHDR arithmetic proves effective, and the accuracy shown is high enough to be useful in applications for which approximate nearest neighbor calculations are useful.

[0110]    As an extreme case, a variant of fp+noise was tested in which the noise varied uniformly from +10% to -5%.  Thus, each arithmetic operation produced a result that was between 10% too large and 5% too small.  The enhanced nearest neighbor algorithm, as described above, was performed where each run generated 100,000 Example vectors.  The surprising results, below, show that even with this extreme level of imprecise, noisy, and non-zero mean LPHDR arithmetic, useful results can be achieved.

```
Run 1. On 100 tests, 97(97.0%) matches.
Run 2. On 100 tests, 100(100.0%) matches.
Run 3. On 100 tests, 100(100.0%) matches.
Run 4. On 100 tests, 98(98.0%) matches.
Run 5. On 100 tests, 98(98.0%) matches.
Run 6. On 100 tests, 99(99.0%) matches.
```

- 34 -

SINGULAR-00001709

Attorney Docket No. A0006-1001C1

Run 7. On 100 tests, 99(99.0%) matches.
Run 8. On 100 tests, 99(99.0%) matches.
Run 9. On 100 tests, 99(99.0%) matches.
Run 10. On 100 tests, 99(99.0%) matches.
Average percentage of time LPHDR (with final DP correction) finds nearest example = 98.80%.

[0111]     Efficiency.  In contrast to the surprising Accuracy results, it is clear to those having ordinary skill in the art that the calculations of the enhanced nearest neighbor algorithm can be performed efficiently in the computing model presented, where the arithmetic/memory units are connected in a two-dimensional physical layout, using only local communication between PEs. However, this does not address the matter of keeping the machine busy doing useful work using only low bandwidth to the host machine.

[0112]     When computing the nearest neighbor to a single Test, the Test flows across all the PEs in the array.  As discussed above, if the array is an MxM grid, it takes at least O(M) steps for the Test to pass through the machine and return results to the host.  During this time the machine performs O(MxM) nearest neighbor distance computations, but since the machine is capable of performing O(MxM) calculations at each step, a factor of O(M) is lost.

[0113]     This speedup, compared to a serial machine, of a factor of O(M) is significant and useful.  However, the efficiency can be even higher.  If sufficiently many Test vectors, say O(M), or more, are to be processed then they can be streamed into the machine and made to flow through in a pipelined fashion.  The time to process O(M) Tests remains O(M), the same as for a single Test, but now the machine performs O(M) x O(MxM) distance computations, and thus within a constant factor the full computing capacity of the machine is used.

[0114]     Thus, the machine is especially efficient if it is processing at least as many Test vectors as the square root of the number of PEs.  There are applications that fit well into this form, such as pattern recognition or compression of many independent Tests (e.g., blocks of an image, parts of a file, price histories of independent stocks) as well as the problem of finding the nearest neighbor to every Example in the set of Examples.  This is in contrast to the

- 35 -

SINGULAR-00001710

Attorney Docket No. A0006-1001C1

general view among those having ordinary skill in the art, as discussed above, that machines with very many arithmetic processing elements on a single chip, or similar, are not very useful.

Application 2: Distance Weighted Scoring

[0115]    A task related to Nearest Neighbor is Distance Weighted Scoring.  In this task, each Example has an associated Score.  This is a number that in some way characterizes the Example.  For instance, if the Examples are abstractions of the history of prices of a given stock, the Scores might be historical probabilities of whether the price is about to increase or decrease. Given a Test vector, the task is to form a weighted sum of the Scores of all the Examples, where the weights are a diminishing function of the distance from the Test to the respective Examples.  For example, this weighted score might be taken as a prediction of the future price of the stock whose history is represented by the Test.  This use of embodiments of the invention might help support, for instance, high speed trading of stocks, as is performed by certain "quantitative" hedge funds, despite the general view by those having ordinary skill in the art that low precision computation is not of use in financial applications.

[0116]    The C code described above computes weighted scores along with nearest neighbors.  The scores assigned to Examples in this computation are random numbers drawn uniformly from the range [0,1].  The weight for each Example in this computation is defined to be the un-normalized weight for the Example divided by the sum of the un-normalized weights for all Examples, where the un-normalized weight for each Example is defined to be the reciprocal of the sum of one plus the squared distance from the Example to the Test vector. As discussed above, the code performs a number of runs, each producing many Examples and Tests, and compares results of traditional floating point computations with results calculated using fp+noise and lns arithmetic.

[0117]    Looking again at the trace results of running the simulation, above, we see that for fp+noise the LPHDR weighted scores on average were within .85% of the correct value and never were as much as 1% different.  For lns arithmetic the errors were even smaller, averaging just .12% error.

- 36 -

SINGULAR-00001711

Attorney Docket No. A0006-1001C1

[0118]    These results are surprising given that computing an overall weighted score involves summing the individual weighted scores associated with each Example.  Since each run was processing 1,000,000 Examples, this means that the sums were over one million small positive values.  The naive method of summing one million small values with errors of about 1% in each addition should yield results that approximate noise.  However, the code performs its sums using a long known method invented by Kahan (Kahan, William (January 1965), "Further remarks on reducing truncation errors", Communications of the ACM 8 (1): 40).  The method makes it feasible to perform long sums, such as are done for Distance Weighted Scores, or as might be used in computational finance when computing prices of derivative securities using Monte Carlo methods, or for performing deconvolution in image processing algorithms, as will be discussed next.

[0119]    The Efficiency of this algorithm is similar to that of NN, as discussed earlier.  If many Test vectors are processed at once, the machine performs especially efficiently.

Application 3: Removing motion blur in images

[0120]    In order to gather sufficient light to form an image, camera shutters are often left open for long enough that camera motion can cause blurring.  This can happen as a result of camera shake in inexpensive consumer cameras as well as with very expensive but fast moving cameras mounted on satellites or aircraft.  If the motion path of the camera is known (or can be computed) then the blur can be substantially removed using various deblurring algorithms.  One such algorithm is the Richardson-Lucy method ("RL"), and we show here that embodiments of the present invention can run that algorithm and produce useful results.  Following the discussion format above, we discuss criteria of Accuracy and Efficiency.

[0121]    Algorithm.  The Richardson-Lucy algorithm is well known and widely available.  Assume that an image has been blurred using a known kernel.  In particular, assume that the kernel is a straight line and that the image has been oriented so that the blur has occurred purely in a horizontal direction.

SINGULAR-00001712

Attorney Docket No. A0006-1001C1

Consider the particular kernel for which the J'th pixel in each row of the blurred image is the uniformly weighted mean of pixels J through J+31 in the original unblurred image.

[0122]   Accuracy.   We implemented in the C programming language a straightforward version of the RL method that uses LPHDR arithmetic.  The program reads a test image, blurs it using the kernel discussed above, then deblurs it using either fp+noise or lns arithmetic.  The RL algorithm computes sums, such as when convolving the kernel with the current approximation of the deblurred image.  Our implementation computes these sums using the Kahan method, discussed earlier.  FIG. 7 shows the test image in original form.  It is a satellite picture of a building used during Barack Obama's inauguration.  FIG. 8 shows the image extremely blurred by the kernel.  It is difficult to see any particular objects in this image.  FIG. 9 shows the result of deblurring using standard floating point arithmetic.  FIG. 10 shows the result of deblurring using fp+noise arithmetic, and FIG.11 shows the result of deblurring using lns arithmetic.  In all these cases the image is sufficiently restored that it is possible to recognize buildings, streets, parking lots, and cars.

[0123]   In addition to displaying the images herein for judgement using the human eye, we computed a numerical measure of deblurring performance. We computed the mean difference, over all pixels in the image, between each original pixel value (a gray scale value from 0 to 255) and the corresponding value in the image reconstructed by the RL method.  Those numerical measures are shown below in Table 1:

| Image type | Mean pixel error |
|---|---|
| Blurred | 32.0 |
| RL using standard floating point | 13.0 |
| RL using fp+noise | 13.8 |
| RL using lns | 14.8 |

**Table 1**

[0124]   These results, together with the subjective but important judgements made by the human eye, show that LPHDR arithmetic provides a substantial and useful degree of deblurring compared to standard floating point arithmetic.  Further, in this example we chose an extreme degree of blurring, to

SINGULAR-00001713

Attorney Docket No. A0006-1001C1

better convey the concept and visual impact of the deblurring using LPHDR arithmetic.  On more gentle and typical blur kernels, the resulting deblurred images are much closer to the originals than in this case, as can be seen by shrinking the kernel length and running the RL algorithm with LPHDR arithmetic on those more typical cases.

[0125]     Efficiency.  It is clear to those with ordinary skill in the art that Richardson-Lucy using a local kernel performs only local computational operations.  An image to be deblurred can be loaded into the PE array, storing one or more pixels per PE, the deconvolution operation of RL can then be iterated dozens or hundreds of times, and the deblurred image can be read back to the host processor.  As long as sufficient iterations are performed, this makes efficient use of the machine.

[0126]     An extreme form of image deblurring is the Iterative Reconstruction method used in computational tomography.  Reconstructing 3D volumes from 2D projections is an extremely computational task.  The method discussed above generalizes naturally to Iterative Reconstruction and makes efficient use of the machine.

[0127]     Among the advantages of embodiments of the invention are one or more of the following.

[0128]     PEs implemented according to certain embodiments of the present invention may be relatively small for PEs that can do arithmetic.  This means that there are many PEs per unit of resource (e.g., transistor, area, volume), which in turn means that there is a large amount of arithmetic computational power per unit of resource.  This enables larger problems to be solved with a given amount of resource than does traditional computer designs.  For instance, a digital embodiment of the present invention built as a large silicon chip fabricated with current state of the art technology might perform tens of thousand of arithmetic operations per cycle, as opposed to hundreds in a conventional GPU or a handful in a conventional multicore CPU.  These ratios reflect an architectural advantage of embodiments of the present invention that

SINGULAR-00001714

Attorney Docket No. A0006-1001C1

should persist as fabrication technology continues to improve, even as we reach nanotechnology or other implementations for digital and analog computing.

[0129]    Doing arithmetic with few resources generally means, and in the embodiments shown specifically means, that the arithmetic is done using low power.  As a result, a machine implemented in accordance with embodiments of the present invention can have extremely high performance with reasonable power (for instance in the tens of watts) or low power (for instance a fraction of a watt) with reasonably high performance.  This means that such embodiments may be suitable for the full range of computing, from supercomputers, through desktops, down to mobile computing.  Similarly, and since cost is generally associated with the amount of available resources, embodiments of the present invention may provide a relatively high amount of computing power per unit of cost compared to conventional computing devices.

[0130]    The SIMD architecture is rather old and is frequently discarded as an approach to computer design by those having ordinary skill in the art. However, if the processing elements of a SIMD machine can be made particularly small while retaining important functionality, such as general arithmetic ability, the architecture can be useful.  The embodiments presented herein have precisely those qualities.

[0131]    The discovery that massive amounts of LPHDR arithmetic is useful as a fairly general computing framework, as opposed to the common belief that it is not useful, can be an advantage in any (massively or non-massively) parallel machine design or non-parallel design, not just in SIMD embodiments.  It could be used in FPGAs, FPAAs, GPU/SIMT machines, MIMD machines, and in any kind of machine that uses compact arithmetic processing elements to perform large amounts of computation using a small amount of resources (like transistors or volume).

[0132]    Another advantage of embodiments of the present invention is that they are not merely useful for performing computations efficiently in general, but that they can be used to tackle a variety of real-world problems which are typically assumed to require high-precision computing elements, even though

- 40 -

SINGULAR-00001715

Attorney Docket No. A0006-1001C1

such embodiments include only (or predominantly) low-precision computing elements.  Although several examples of such real-world problems have been presented herein, and although we have also had success implementing non-bonded force field computations for molecular dynamics simulation and other tasks, these are merely examples and do not constitute an exhaustive set of the real-world problems that embodiments of the present invention may be used to solve.

[0133]    The embodiments disclosed above are merely examples and do not constitute limitations of the present invention.  Rather, embodiments of the present invention may be implemented in a variety of other ways, such as the following.

[0134]    For example, embodiments of the present invention may represent values in any of a variety of ways, such as by using digital or analog representations, such as fixed point, logarithmic, or floating point representations, voltages, currents, charges, pulse width, pulse density, frequency, probability, spikes, timing, or combinations thereof.  These underlying representations may be used individually or in combination to represent the LPHDR values.  LPHDR arithmetic circuits may be implemented in any of a variety of ways, such as by using various digital methods (which may be parallel or serial, pipelined or not) or analog methods or combinations thereof.  Arithmetic elements may be connected using various connection architectures, such as nearest 4, nearest 8, hops of varying degree, and architectures which may or may not be rectangular or grid-like.  Any method may be used for communication among arithmetic elements, such as parallel or serial, digital or analog  or mixed-mode communication.  Arithmetic elements may operate synchronously or asynchronously, and may operate globally simultaneously or not.  Arithmetic elements may be implemented, for example, on a single physical device, such as a silicon chip, or spread across multiple devices and an embodiment built from multiple devices may have its arithmetic elements connected in a variety of ways, including for example being connected as a grid, torus, hypercube, tree, or other method.  Arithmetic elements may be connected to a host machine, if any, in a variety of

SINGULAR-00001716

ways, depending on the cost and bandwidth and other requirements of a particular embodiment. For example there may be many host machines connected to the collection of arithmetic elements.

[0135] Although certain embodiments of the present invention are described as being implemented as a SIMD architecture, this is merely an example and does not constitute a limitation of the present invention. For example, embodiments of the present invention may be implemented as reconfigurable architectures, such as but not limited to programmable logic devices, field programmable analog arrays, or field programmable gate array architectures, such as a design in which existing multiplier blocks of an FPGA are replaced with or supplemented by LPHDR arithmetic elements of any of the kinds disclosed herein, or for example in which LPHDR elements are included in a new or existing reconfigurable device design. As another example, embodiments of the present invention may be implemented as a GPU or SIMT-style architecture which incorporates LPHDR arithmetic elements of any of the kinds disclosed herein. For example, LPHDR elements could supplement or replace traditional arithmetic elements in current or new graphics processing unit designs. As yet another example, embodiments of the present invention may be implemented as a MIMD-style architecture which incorporates LPHDR arithmetic elements of any of the kinds disclosed herein. For example, LPHDR arithmetic elements could supplement or replace traditional arithmetic elements in current or new MIMD computing system designs. As yet another example, embodiments of the present invention may be implemented as any kind of machine, including a massively parallel machine, which uses compact arithmetic processing elements to provide large amounts of arithmetic computing capability using a small amount of resources (for example, transistors or area or volume) compared with traditional architectures.

[0136] Although certain embodiments of the present invention are described herein as executing software, this is merely an example and does not constitute a limitation of the present invention. Alternatively, for example, embodiments of the present invention may be implemented using microcode or a

- 42 -

SINGULAR-00001717

Attorney Docket No. A0006-1001C1

hardware sequencer or state machine or other controller to control LPHDR arithmetic elements of any of the kinds disclosed herein. Alternatively, for example, embodiments of the present invention may be implemented using hardwired, burned, or otherwise pre-programmed controllers to control LPHDR arithmetic elements of any of the kinds disclosed herein.

[0137]    Although certain embodiments of the present invention are described herein as being implemented using custom silicon as the hardware, this is merely an example and does not constitute a limitation of the present invention. Alternatively, for example, embodiments of the present invention may be implemented using FPGA or other reconfigurable chips as the underlying hardware, in which the FPGAs or other reconfigurable chips are configured to perform the LPHDR operations disclosed herein. As another example, embodiments of the present invention may be implemented using any programmable conventional digital or analog computing architecture (including those which use high-precision computing elements, including those which use other kinds of non-LPHDR hardware to perform LPHDR arithmetic, and including those which are massively parallel) which has been programmed with software to perform the LPHDR operations disclosed herein. For example, embodiments of the present invention may be implemented using a software emulator of the functions disclosed herein.

[0138]    As yet another example, embodiments of the present invention may be implemented using 3D fabrication technologies, whether based on silicon chips or otherwise. Some example embodiments are those in which a memory chip has been bonded onto a processor or other device chip or in which several memory and/or processor or other device chips have been bonded to each other in a stack. 3D embodiments of the present invention are very useful as they may be denser than 2D embodiments and may enable 3D communication of information between the processing units, which enables more algorithms to run efficiently on those embodiments compared to 2D embodiments.

[0139]    Although certain embodiments of the present invention are described herein as being implemented using silicon chip fabrication technology,

- 43 -

SINGULAR-00001718

Attorney Docket No. A0006-1001C1

this is merely an example and does not constitute a limitation of the present invention.  Alternatively, for example, embodiments of the present invention may be implemented using technologies that may enable other sorts of traditional digital and analog computing processors or other devices.  Examples of such technologies include various nanomechanical and nanoelectronic technologies, chemistry based technologies such as for DNA computing, nanowire and nanotube based technologies, optical technologies, mechanical technologies, biological technologies, and other technologies whether based on transistors or not that are capable of implementing LPHDR architectures of the kinds disclosed herein.

[0140]    Certain embodiments of the present invention have been described as "massively parallel" embodiments.  Although certain embodiments of the present invention may include thousands, millions, or more arithmetic units, embodiments of the present invention may include any number of arithmetic units (as few as one).  For example, even an embodiment which includes only a single LPHDR unit may be used within a serial processing unit or other device to provide a significant amount of LPHDR processing power in a small, inexpensive processor or other device.

[0141]    For certain embodiments of the present invention, even if implemented using only digital techniques, the arithmetic operations may not yield deterministic, repeatable, or the most accurate possible results within the chosen low precision representation.  For instance, on certain specific input values, an arithmetic operation may produce a result which is not the nearest value in the chosen representation to the true arithmetic result.

[0142]    The degree of precision of a "low precision, high dynamic range" arithmetic element may vary from implementation to implementation.  For example, in certain embodiments, a LPHDR arithmetic element produces results which include fractions, that is, values greater than zero and less than one.  For example, in certain embodiments, a LPHDR arithmetic element produces results which are sometimes (or all of the time) no closer than 0.05% to the correct result (that is, the absolute value of the difference between the produced result and the

- 44 -

SINGULAR-00001719

correct result is no more than one-twentieth of one percent of the absolute value of the correct result).  As another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.1% to the correct result.  As another example, a LPHDR arithmetic element may produce results which are sometimes (or al of the time) no closer than 0.2% to the correct result.  As yet another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.5% to the correct result. As yet further examples, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 1%, or 2%, or 5%, or 10%, or 20% to the correct result.

[0143]    Besides having various possible degrees of precision, implementations may vary in the dynamic range of the space of values they process.  For example, in certain embodiments, a LPHDR arithmetic element processes values in a space which may range approximately from one millionth to one million.  As another example, in certain embodiments, a LPHDR arithmetic element processes values in a space which may range approximately from one billionth to one billion.  As yet another example, in certain embodiments, a LPHDR arithmetic element processes values in a space which may range approximately from one sixty five thousandth to sixty five thousand.  As yet further examples, in certain embodiments, a LPHDR arithmetic element processes values in a space which may range from any specific value between zero and one sixty five thousandth up to any specific value greater than sixty five thousand.  As yet further examples, other embodiments may process values in spaces with dynamic ranges that may combine and may fall between the prior examples, for example ranging from approximately one billionth to ten million.  In all of these example embodiments of the present invention, as well as in other embodiments, the values that we are discussing may be signed, so that the above descriptions characterize the absolute values of the numbers being discussed.

[0144]    The frequency with which LPHDR arithmetic elements may yield only approximations to correct results may vary from implementation to

- 45 -

SINGULAR-00001720

Attorney Docket No. A0006-1001C1

implementation.  For example, consider an embodiment in which LPHDR arithmetic elements can perform one or more operations (perhaps including, for example, trigonometric functions), and for each operation the LPHDR elements each accept a set of inputs drawn from a range of valid values, and for each specific set of input values the LPHDR elements each produce one or more output values (for example, simultaneously computing both sin and cos of an input), and the output values produced for a specific set of inputs may be deterministic or non-deterministic.  In such an example embodiment, consider further a fraction F of the valid inputs and a relative error amount E by which the result calculated by an LPHDR element may differ from the mathematically correct result.  In certain embodiments  of the present invention, for each LPHDR arithmetic element, for at least one operation that the LPHDR unit is capable of performing, for at least fraction F of the possible valid inputs to that operation, for at least one output signal produced by that operation, the statistical mean, over repeated execution, of the numerical values represented by that output signal of the LPHDR unit, when executing that operation on each of those respective inputs, differs by at least E from the result of an exact mathematical calculation of the operation on those same input values, where F is 1% and E is 0.05%.  In several other example embodiments, F is not 1% but instead is one of 2%, or 5%, or 10%, or 20%, or 50%.  For each of these example embodiments, each with some specific value for F, there are other example embodiments in which E is not 0.05% but instead is 0.1%, or 0.2%, or 0.5%, or 1%, or 2%, or 5%, or 10%, or 20%.  These varied embodiments are merely examples and do not constitute limitations of the present invention.

[0145]    For certain devices (such as computers or processors or other devices) embodied according the present invention, the number of LPHDR arithmetic elements in the device (e.g., computer or processor or other device) exceeds the number, possibly zero, of arithmetic elements in the device which are designed to perform high dynamic range arithmetic of traditional precision (that is, floating point arithmetic with a word length of 32 or more bits).  If NL is the total number of LPHDR elements in such a device, and NH is the total

- 46 -

SINGULAR-00001721

Attorney Docket No. A0006-1001C1

number of elements in the device which are designed to perform high dynamic range arithmetic of traditional precision, then NL exceeds T(NH), where T() is some function.  Any of a variety of functions may be used as the function T().  For example, in certain embodiments, T(NH) may be twenty plus three times NH, and the number of LPHDR arithmetic elements in the device may exceed twenty more than three times the number of arithmetic elements in the device, if any, designed to perform high dynamic range arithmetic of traditional precision.  As another example, in certain embodiments, the number of LPHDR arithmetic elements in the device may exceed fifty more than five times the number of arithmetic elements in the device, if any, designed to perform high dynamic range arithmetic of traditional precision.  As yet another example, in certain embodiments, the number of LPHDR arithmetic elements in the device may exceed one hundred more than five times the number of arithmetic elements in the device, if any, designed to perform high dynamic range arithmetic of traditional precision.  As yet another example, in certain embodiments, the number of LPHDR arithmetic elements in the device may exceed one thousand more than five times the number of arithmetic elements in the device, if any, designed to perform high dynamic range arithmetic of traditional precision.  As yet another example, in certain embodiments, the number of LPHDR arithmetic elements in the device may exceed five thousand more than five times the number of arithmetic elements in the device, if any, designed to perform high dynamic range arithmetic of traditional precision.  Certain embodiments of the present invention may be implemented within a single physical device, such as but not limited to a silicon chip or a chip stack or a chip package or a circuit board, and the number NL of LPHDR elements in the physical device and the number NH of elements designed to perform high dynamic range arithmetic of traditional precision in the physical device may be the total counts of the respective elements within that physical device.  Certain embodiments of the present invention may be implemented in a computing system including more than one physical device, such as but not limited to a collection of silicon chips or chip stacks or chip packages or circuit boards coupled to and communicating

- 47 -

SINGULAR-00001722

Attorney Docket No. A0006-1001C1

with each other using any means (such as a bus, switch, any kind of network connection, or other means of communication), and in this case the number NL of LPHDR elements in the computing system and the number NH of elements designed to perform high dynamic range arithmetic of traditional precision in the computing system may be the total counts of the respective elements within all those physical devices jointly.

[0146]     Certain embodiments of the present invention may constitute, or may be part of, processors, which are devices capable of executing software to perform computations.  Such processors may include mechanisms for storing software, for using the software to determine what operations to perform, for performing those operations, for storing numerical data, for modifying data according to the software specified operations, and for communicating with devices connected to the processor.  Processors may be reconfigurable devices, such as, without limitation, field programmable arrays.  Processors may be co-processors to assist host machines or may be capable of operating independently of an external host.  Processors may be formed as a collection of component host processors and co-processors of various types, such as CPUs, GPUs, FPGAs, or other processors or other devices, which in the art may be referred to as a heterogeneous processor design or heterogeneous computing system, some or all of which components might incorporate the same or distinct varieties of embodiments of the present invention.

[0147]     Embodiments of the present invention may, however, be implemented in devices in addition to or other than processors.  For example, a computer including a processor and other components (such as memory coupled to the processor by a data path), wherein the processor includes components for performing LPHDR operations in any of the ways disclosed herein, is an example of an embodiment of the present invention.  More generally, any device or combination of devices, whether or not falling within the meaning of a "processor," which performs the functions disclosed herein may constitute an example of an embodiment of the present invention.

[0148]     More generally, any of the techniques described above may be

- 48 -

SINGULAR-00001723

Attorney Docket No. A0006-1001C1

implemented, for example, in hardware, software tangibly stored on a computer-readable medium, firmware, or any combination thereof.  The techniques described above may be implemented in one or more computer programs executing on a programmable computer including a processor, a storage medium readable by the processor (including, for example, volatile and non-volatile memory and/or storage elements), at least one input device, and at least one output device.  Program code may be applied to input entered using the input device to perform the functions described and to generate output.  The output may be provided to one or more output devices.

[0149]     Each computer program within the scope of the claims below may be implemented in any programming language, such as assembly language, machine language, a high-level procedural programming language, or an object-oriented programming language.  The programming language may, for example, be a compiled or interpreted programming language.

[0150]     Each such computer program may be implemented in a computer program product tangibly embodied in a machine-readable storage device for execution by a computer processor.  Method steps of the invention may be performed by a computer processor executing a program tangibly embodied on a computer-readable medium to perform functions of the invention by operating on input and generating output. Suitable processors include, by way of example, both general and special purpose microprocessors. Generally, the processor receives instructions and data from a read-only memory and/or a random access memory.  Storage devices suitable for tangibly embodying computer program instructions include, for example, all forms of non-volatile memory, such as semiconductor memory devices, including EPROM, EEPROM, and flash memory devices; magnetic disks such as internal hard disks and removable disks; magneto-optical disks; and CD-ROMs.  Any of the foregoing may be supplemented by, or incorporated in, specially-designed ASICs (application-specific integrated circuits) or FPGAs (Field-Programmable Gate Arrays).  A computer can generally also receive programs and data from a storage medium such as an internal disk (not shown) or a removable disk. These

- 49 -

SINGULAR-00001724

Attorney Docket No. A0006-1001C1

elements will also be found in a conventional desktop or workstation computer as well as other computers suitable for executing computer programs implementing the methods described herein, which may be used in conjunction with any digital print engine or marking engine, display monitor, or other raster output device capable of producing color or gray scale pixels on paper, film, display screen, or other output medium.

SINGULAR-00001725

Attorney Docket No. A0006-1001C1

## Claims

1. A device:

comprising at least one first low precision high dynamic range (LPHDR) execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input.

2. The device of claim 1, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

SINGULAR-00001726

Attorney Docket No. A0006-1001C1

3. The device of claim 1, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

4. The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

5. The device of claim 1, wherein the number of LPHDR execution units in the device exceeds by at least ten the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

6. The device of claim 5, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

7. The device of claim 1, wherein the at least one first LPHDR execution unit comprises at least one hundred LPHDR execution units.

8. The device of claim 1, wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

9. The device of claim 1, wherein the at least one first LPHDR execution unit comprises at least five hundred LPHDR execution units.

10. The device of claim 1, wherein the number of LPHDR execution units in the device exceeds by at least five hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

SINGULAR-00001727

Attorney Docket No. A0006-1001C1

11. A device comprising a computer processor and a computer-readable memory storing computer program instructions, wherein the computer program instructions are executable by the processor to emulate a second device comprising:

at least one first low precision high-dynamic range (LPHDR) execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value;

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input.

12. The device of claim 11, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

13. The device of claim 11, wherein the number of LPHDR execution units in the second device exceeds by at least ten the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

14. A device:

comprising at least one first LPHDR execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first

- 53 -

SINGULAR-00001728

Attorney Docket No. A0006-1001C1

operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input;

wherein the number of LPHDR execution units in the device exceeds the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

SINGULAR-00001729

Attorney Docket No. A0006-1001C1

15. The device of claim 14, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

16. The device of claim 14, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

17. The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

18. The device of claim 14, wherein the number of LPHDR execution units in the device exceeds by at least ten the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

19. The device of claim 18, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

20. The device of claim 14, wherein the at least one first LPHDR execution unit comprises at least one hundred LPHDR execution units.

21. The device of claim 14, wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

22. The device of claim 14, wherein the at least one first LPHDR execution unit comprises at least five hundred LPHDR execution units.

SINGULAR-00001730

Attorney Docket No. A0006-1001C1

23. The device of claim 14, wherein the number of LPHDR execution units in the device exceeds by at least five hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

24. A device comprising a computer processor and a computer-readable memory storing computer program instructions, wherein the computer program instructions are executable by the processor to emulate a second device comprising:

at least one first LPHDR execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least 5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least 5% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least .05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input;

wherein the number of LPHDR execution units in the second device exceeds the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

- 56 -

SINGULAR-00001731

Attorney Docket No. A0006-1001C1

25. The device of claim 24, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

26. The device of claim 24, wherein the number of LPHDR execution units in the second device exceeds by at least ten the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

27. The device of claim 8, wherein X = 10%.

28. The device of claim 8, wherein Y=.1%.

29. The device of claim 8, wherein Y=.15%.

30. The device of claim 8, wherein Y=.2%.

31. The device of claim 8, wherein X = 10% and wherein Y = .1%.

32. The device of claim 8, wherein X = 10% and wherein Y = .15%.

33. The device of claim 8, wherein X = 10% and wherein Y = .2%.

34. The device of claim 8, wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/1,000,000 through 1,000,000.

35. The device of claim 1, wherein the at least one first LPHDR execution unit comprises a plurality of locally connected LPHDR execution units.

36. The device of claim 1, wherein the device has a SIMD architecture.

SINGULAR-00001732

Attorney Docket No. A0006-1001C1

37. The device of claim 1, wherein the device includes memory locally accessible to the at least one first LPHDR execution unit.

38. The device of claim 1, wherein the device is implemented on a silicon chip.

39. The device of claim 1, wherein the device is implemented on a silicon chip using digital technology.

40. The device of claim 1, wherein the device further comprises a digital processor adapted to control the operation of the at least one first LPHDR execution unit.

41. The device of claim 1, wherein the at least one LPHDR execution unit comprises at least five hundred locally connected LPHDR execution units, wherein the device includes memory locally accessible to at least one of the LPHDR execution units, and wherein the device is implemented on a silicon chip using digital technology.

42. The device of claim 1, wherein the device is part of a mobile device.

43. The device of claim 1, wherein the at least one first LPHDR execution unit represents numbers using a logarithmic representation.

44. The device of claim 1, wherein the at least one first LPHDR execution unit represents numbers using a floating point representation.

45. The device of claim 1:
    wherein the device further comprises input means for receiving data representing an input image; and
    wherein the input image includes the first input signal.

- 58 -

SINGULAR-00001733

Attorney Docket No. A0006-1001C1

46. The device of claim 45, wherein the device is part of a mobile device.

47. The device of claim 45, wherein the device is adapted to deblur the input image.

48. The device of claim 1, wherein the device is adapted to perform nearest neighbor search.

49. The device of claim 21, wherein X = 10%.

50. The device of claim 21, wherein Y=.1%.

51. The device of claim 21, wherein Y=.15%.

52. The device of claim 21, wherein Y=.2%.

53. The device of claim 21, wherein X = 10% and wherein Y = .1%.

54. The device of claim 21, wherein X = 10% and wherein Y = .15%.

55. The device of claim 21, wherein X = 10% and wherein Y = .2%.

56. The device of claim 21, wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/1,000,000 through 1,000,000.

57. The device of claim 14, wherein the at least one first LPHDR execution unit comprises a plurality of locally connected LPHDR execution units.

58. The device of claim 14, wherein the device has a SIMD architecture.

SINGULAR-00001734

Attorney Docket No. A0006-1001C1

59. The device of claim 14, wherein the device includes memory locally accessible to the at least one first LPHDR execution unit.

60. The device of claim 14, wherein the device is implemented on a silicon chip.

61. The device of claim 14, wherein the device is implemented on a silicon chip using digital technology.

62. The device of claim 14, wherein the device further comprises a digital processor adapted to control the operation of the at least one first LPHDR execution unit.

63. The device of claim 14, wherein the at least one LPHDR execution unit comprises at least five hundred locally connected LPHDR execution units, wherein the device includes memory locally accessible to at least one of the LPHDR execution units, and wherein the device is implemented on a silicon chip using digital technology.

64. The device of claim 14, wherein the device is part of a mobile device.

65. The device of claim 14, wherein the at least one first LPHDR execution unit represents numbers using a logarithmic representation.

66. The device of claim 14, wherein the at least one first LPHDR execution unit represents numbers using a floating point representation.

67. The device of claim 14:

    wherein the device further comprises input means for receiving data representing an input image; and

    wherein the input image includes the first input signal.

SINGULAR-00001735

Attorney Docket No. A0006-1001C1

68. The device of claim 67, wherein the device is part of a mobile device.

69. The device of claim 67, wherein the device is adapted to deblur the input image.

70. The device of claim 14, wherein the device is adapted to perform nearest neighbor search.

SINGULAR-00001736

Attorney Docket No. A0006-1001C1

## **Abstract**

A processor or other device, such as a programmable and/or massively parallel processor or other device, includes processing elements designed to perform arithmetic operations (possibly but not necessarily including, for example, one or more of addition, multiplication, subtraction, and division) on numerical values of low precision but high dynamic range ("LPHDR arithmetic").  Such a processor or other device may, for example, be implemented on a single chip.  Whether or not implemented on a single chip, the number of LPHDR arithmetic elements in the processor or other device in certain embodiments of the present invention significantly exceeds (e.g., by at least 20 more than three times) the number of arithmetic elements, if any, in the processor or other device which are designed to perform high dynamic range arithmetic of traditional precision (such as 32 bit or 64 bit floating point arithmetic).

SINGULAR-00001737



100

104

106

Control
Unit (CU)

Processing Element
Array (PEA)

108

Input/Output Unit (IOU)

102

110

Host

Peripherals

FIG. 1

SINGULAR-00001738



FIG. 2

SINGULAR-00001739



FIG. 3

SINGULAR-00001740



FIG. 4

SINGULAR-00001741



FIG. 5

SINGULAR-00001742



FIG. 6

SINGULAR-00001743



FIG. 7

SINGULAR-00001744



FIG. 8

SINGULAR-00001745



FIG. 9

SINGULAR-00001746



FIG. 10

SINGULAR-00001747



FIG. 11

SINGULAR-00001748

Doc Code: Oath
Document Description: Oath or declaration filed

PTO/SB/01 (04-09)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION (37 CFR 1.63) | Attorney Docket Number | A0606-1001 |
|---|---|---|
| | First Named Inventor | BATES, Joseph |
| | *COMPLETE IF KNOWN* | |
| [X] Declaration Submitted With Initial Filing  OR  [ ] Declaration Submitted After Initial Filing (surcharge (37 CFR 1.16(f)) required) | Application Number | N/A |
| | Filing Date | N/A |
| | Art Unit | N/A |
| | Examiner Name | N/A |

I hereby declare that: (1) Each inventor's residence, mailing address, and citizenship are as stated below next to their name; and (2) I believe the inventor(s) named below to be the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought on the invention titled:

Processing with Compact Arithmetic Processing Element

*(Title of the Invention)*

the application of which

[X]     is attached hereto

OR

[ ]     was filed on (MM/DD/YYYY) _____ as United States Application Number or PCT International

        Application Number _____ and was amended on (MM/DD/YYYY) _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above identified application, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

## Authorization To Permit Access To Application by Participating Offices

[X]     If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the above-identified patent application is filed access to the above-identified patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the above-identified patent application is filed to have access to the above-identified patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the above-identified patent application with respect to: 1) the above-identified patent application-as-filed; 2) any foreign application to which the above-identified patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the above-identified patent application; and 3) any U.S. application-as-filed from which benefit is sought in the above-identified patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing the Authorization to Permit Access to Application by Participating Offices.

[Page 1 of 3]

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 21 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

SINGULAR-00001749

PTO/SB/01 (04-09)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## DECLARATION — Utility or Design Patent Application

### Claim of Foreign Priority Benefits

I hereby claim foreign priority benefits under 35 U.S.C. 119(a)-(d) or (f), or 365(b) of any foreign application(s) for patent, inventor's or plant breeder's rights certificate(s), or 365(a) of any PCT international application which designated at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application for patent, inventor's or plant breeder's rights certificate(s), or any PCT international application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application Number(s) | Country | Foreign Filing Date (MM/DD/YYYY) | Priority Not Claimed | Certified Copy Attached? YES | NO |
|---|---|---|---|---|---|
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |
| | | | ☐ | ☐ | ☐ |

☐   Additional foreign application number(s) are listed on a supplemental priority data sheet PTO/SB/02B attached hereto.

[Page 2 of 3]

SINGULAR-00001750

PTO/SB/01 (04-09)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## DECLARATION — Utility or Design Patent Application

| Direct all correspondence to: | ☒ | The address associated with Customer Number: | 24208 | | OR | ☐ | Correspondence address below |
|---|---|---|---|---|---|---|---|

| Name | |
|---|---|

| Address | |
|---|---|

| City | | State | | Zip | |
|---|---|---|---|---|---|

| Country | | Telephone | | Email | |
|---|---|---|---|---|---|

**WARNING:**

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available. Petitioner/applicant is advised that documents which form the record of a patent application (such as the PTO/SB/01) are placed into the Privacy Act system of records DEPARTMENT OF COMMERCE, COMMERCE-PAT-7, System name: *Patent Application Files*. Documents not retained in an application file (such as the PTO-2038) are placed into the Privacy Act system of COMMERCE/PAT-TM-10, System name: *Deposit Accounts and Electronic Funds Transfer Profiles*.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| NAME OF SOLE OR FIRST INVENTOR: | ☐ A petition has been filed for this unsigned inventor |
|---|---|

| Given Name (first and middle [if any]) | Family Name or Surname |
|---|---|
| Joseph | Bates |

| Inventor's Signature | | Date | 11 JUNE 2010 |
|---|---|---|---|

| Residence: City | State | Country | Citizenship |
|---|---|---|---|
| Lexington | MA | US | US |

| Mailing Address | | | |
|---|---|---|---|
| 50 Waltham Street #206 | | | |

| City | State | Zip | Country |
|---|---|---|---|
| Lexington | MA | 02421 | US |

| ☐ Additional inventors or a legal representative are being named on the | supplemental sheet(s) PTO/SB/02A or 02LR attached hereto |
|---|---|

[Page 3 of 3]

SINGULAR-00001751

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001752

Doc Code: PPH.PCT.652
Document Description: Petition to make special under PCT-Patent Pros Hwy

PTO/SB/20PCT-KR (06-10)
Approved for use through 01/31/2015. OMB 0651-0058
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

### REQUEST FOR PARTICIPATION IN THE PATENT COOPERATION TREATY – PATENT PROSECUTION HIGHWAY (PCT-PPH) PILOT PROGRAM BETWEEN THE KOREAN INTELLECTUAL PROPERTY OFFICE (KIPO) AND THE USPTO

| Application No.: | 13/399,884 | First Named Inventor: | BATES, Joseph |
|---|---|---|---|
| Filing Date: | 02/17/2012 | Attorney Docket No.: | A0006-1001C1 |

| Title of the Invention: | Processing with Compact Arithmetic Processing Element |
|---|---|

THIS REQUEST FOR PARTICIPATION IN THE PCT-PPH PILOT PROGRAM ALONG WITH THE REQUIRED DOCUMENTS MUST BE SUBMITTED VIA EFS-WEB. INFORMATION REGARDING EFS-WEB IS AVAILABLE AT HTTP://WWW.USPTO.GOV/EBC/EFS_HELP.HTML.

**APPLICANT HEREBY REQUESTS PARTICIPATION IN THE PCT-PPH PILOT PROGRAM AND PETITIONS TO MAKE THE ABOVE-IDENTIFIED APPLICATION SPECIAL UNDER THE PCT-PPH PILOT PROGRAM.**

The above-identified application is (1) a national stage entry of the corresponding PCT application, or (2) a national stage entry of another PCT application which claims priority to the corresponding PCT application, or (3) a national application that claims domestic/ foreign priority to the corresponding PCT application, or (4) a national application which forms the basis for the priority claim in the corresponding PCT application, or (5) a continuing application of a U.S. application that satisfies one of (1) to (4) above, or (6) a U.S. application that claims domestic benefit to a U.S. provisional application which forms the basis for the priority claim in the corresponding PCT application.

The corresponding PCT application number(s) is/are: PCT/US2010/038769

The international filing date of the corresponding PCT application(s) is/are: 06/16/2010

I.  List of Required Documents:

   a.  **A copy of the latest international work product (WO/ISA, WO/IPEA, or IPER) in the above-identified corresponding PCT application(s)**

      ☑  is attached.

      ☐  is not attached because the document is already in the U.S. application.

   b.  **A copy of all claims which were indicated as having novelty, inventive step and industrial applicability in the above-identified corresponding PCT application(s)**

      ☑  is attached.

      ☐  is not attached because the document is already in the U.S. application.

   c.  **English translations of the documents in a. and b. above are attached (if the documents are not in the English language). A statement that the English translation is accurate is attached for the document in b. above.**

   d.  **(1) An information disclosure statement listing the documents cited in the international work products (ISR, WO/ISA, WO/IPEA, IPER) of the corresponding PCT application.**

      ☑  is attached.

      ☐  has already been filed in the above-identified U.S. application on _____

      **(2) Copies of all documents (except for U.S. patents or U.S. patent application publications)**

      ☑  are attached.

      ☐  have already been filed in the above-identified U.S. application on _____

[Page 1 of 2]

This collection of information is required by 35 U.S.C. 119, 37 CFR 1.55, and 37 CFR 1.102(d). The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.

SINGULAR-00001753

PTO/SB/20PCT-KR (06-10)
Approved for use through 01/31/2015. OMB 0651-0058
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## REQUEST FOR PARTICIPATION IN THE PCT-PPH PILOT PROGRAM BETWEEN THE KIPO AND THE USPTO
(continued)

| Application No.: | 13/399,884 | First Named Inventor: | BATES, Joseph |
|---|---|---|---|

**II. Claims Correspondence Table:**

| Claims in US Application | Patentable Claims in the corresponding PCT application | Explanation regarding the correspondence |
|---|---|---|
| 1-48 | 3-50 | Claims 1-48 in the US application are identical to claims 3-50 in the PCT |
| | | application, except that multiple-dependent claims in the PCT application |
| | | have been converted into single-dependent claims in the US application. |
| 49-70 | 29-50 | Claims 49-70 in the US application are identical to claims 29-50 in the PCT |
| | | application, except that multiple dependencies in the PCT application |
| | | have been converted into single dependencies in the US application. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**III.  All the claims in the US application sufficiently correspond to the patentable claims in the corresponding PCT application.**

| Signature | /Robert Plotkin, Reg#43861/ | Date | 02/17/2012 |
|---|---|---|---|
| Name (Print/Typed) | Robert Plotkin, Esq. | Registration Number | 43861 |

[Page 2 of 2]

SINGULAR-00001754

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001755

# PATENT COOPERATION TREATY

From the
INTERNATIONAL PRELIMINARY EXAMINING AUTHORITY

| To: |
| --- |
| ROBERT PLOTKIN |
| ROBERT PLOTKIN, P.C 15 NEW ENGLAND EXECUTIVE PARK BURLINGTON MA 01803 USA |

# PCT

**NOTIFICATION OF TRANSMITTAL OF INTERNATIONAL PRELIMINARY REPORT ON PATENTABILITY**
(Chapter II of the Patent Cooperation Treaty)

( PCT Rule 71.1 )

| Date of mailing *(day/month/year)*   04 NOVEMBER 2011 (04.11.2011) |
| --- |

| Applicant's or agent's file reference A0006-1001PC | **IMPORTANT NOTIFICATION** |
| --- | --- |

| International application No. **PCT/US2010/038769** | International filing date *(day/month/year)* 16 JUNE 2010 (16.06.2010) | Priority date *(day/month/year)* 19 JUNE 2009 (19.06.2009) |
| --- | --- | --- |

| Applicant |
| --- |
| **SINGULAR COMPUTING, LLC et al** |

1. The applicant is hereby notified that this International Preliminary Examining Authority transmits herewith the international preliminary report on patentability and its annexes, if any, established on the international application.

2. A copy of the report and its annexes, if any, is being transmitted to the International Bureau for communication to all the elected Offices.

3. Where required by any of the elected Offices, the International Bureau will prepare an English translation of the report (but not of any annexes) and will transmit such translation to those Offices.

4. **REMINDER**

   The applicant must enter the national phase before each elected office by performing certain acts (filing translations and paying national fees) within 30 months from the priority date (or later in some Offices) (Article 39(1)) (see also the reminder sent by the International Bureau with Form PCT/IB/301).

   Where a translation of the international application must be furnished to an elected Office, that translation must contain a translation of any annexes to the international preliminary report on patentability. It is the applicant's responsibility to prepare and furnish such translation directly to each elected Office concerned.

   For further details on the applicable time limits and requirements of the elected Offices, see Volume II of the *PCT Applicant's Guide.*

   The applicant's attention is drawn to Article 33(5), which provides that the criteria of novelty, inventive step and industrial applicability described in Article 33(2) to (4) merely serve the purposes of international preliminary examination and that "any Contracting State may apply additional or different criteria for the purposes of deciding whether, in that State, the claimed invention is patentable or not" (see also Article 27(5)). Such additional criteria may relate, for example, to exemptions from patentability, requirements for enabling disclosure, clarity and support for the claims.

| Name and mailing address of the IPEA/KR | Authorized officer |
| --- | --- |
| Korean Intellectual Property Office Government Complex-Daejeon, 189 Cheongsa-ro, Seo-gu, Daejeon 302-701, Republic of Korea | COMMISSIONER <br> Telephone No.  82-42-481-5208 |



SINGULAR-00001756

PCT/US2010/038769

## PATENT COOPERATION TREATY

# PCT

### INTERNATIONAL PRELIMINARY REPORT ON PATENTABILITY

(Chapter II of the Patent Cooperation Treaty)

(PCT Article 36 and Rule 70)

| Applicant's or agent's file reference<br><br>A0006-1001PC | FOR FURTHER ACTION | See Form PCT/IPEA/416 |
|---|---|---|
| International application No.<br><br>**PCT/US2010/038769** | International filing date *(day/month/year)*<br><br>**16 JUNE 2010 (16.06.2010)** | Priority date *(day/month/year)*<br><br>19 JUNE 2009 (19.06.2009) |

International Patent Classification (IPC) or national classification and IPC

*G06F 9/38(2006.01)i, G06F 9/46(2006.01)i, G06F 13/14(2006.01)i*

Applicant

**SINGULAR COMPUTING, LLC  et al**

1. This report is the international preliminary examination report, established by this International Preliminary Examining Authority under Article 35 and transmitted to the applicant according to Article 36.

2. This REPORT consists of a total of _____**4**_____ sheets, including this cover sheet.

3. This report is also accompanied by ANNEXES, comprising:

   a. ☒ (sent to the applicant and to the International Bureau) a total of _____**16**_____ sheets, as follows:

   ☒ sheets of the description, claims and/or drawings which have been amended and/or sheets containing rectifications authorized by this Authority, unless those sheets were superseded or cancelled, and any accompanying letters (see Rules 46.5, 66.8, 70.16, 91.2, and Section 607 of the Administrative Instructions).

   ☐ sheets containing rectifications not taken into account by this Authority because they were not available at the time when this Authority began to draw up this report, and any accompanying letters (Rules 66.4bis, 70.2(e), 70.16 and 91.2).

   ☐ superseded sheets and any accompanying letters, where this Authority either considers that the superseding sheets contain an amendment that goes beyond the disclosure in the international application as filed, or the superseding sheets were not accompanied by a letter indicating the basis for the amendments in the application as filed, as indicated in item 4 of Box No. I and the Supplemental Box (see Rule 70.16(b)).

   b. ☐ *(sent to the International Bureau only)* a total of (indicate type and number of electronic carrier(s)) _____ containing a sequence listing, in electronic form only, as indicated in the Supplemental Box relating to Sequence Listing (see Section 802 of the Administrative Instructions).

4. This report contains indications relating to the following items:

   ☒ Box No. I  Basis of the report

   ☐ Box No. II  Priority

   ☐ Box No. III  Non-establishment of opinion with regard to novelty, inventive step and industrial applicability

   ☐ Box No. IV  Lack of unity of invention

   ☒ Box No. V  Reasoned statement under Article 35(2) with regard to novelty, inventive step and industrial applicability; citations and explanations supporting such statement

   ☐ Box No. VI  Certain documents cited

   ☒ Box No. VII  Certain defects in the international application

   ☐ Box No. VIII  Certain observations on the international application

| Date of submission of the demand<br><br>**28 APRIL 2011 (28.04.2011)** | Date of completion of this report<br><br>31 OCTOBER 2011 (31.10.2011) |
|---|---|
| Name and mailing address of the IPEA/KR<br><br>Korean Intellectual Property Office<br>Government Complex-Daejeon, 189 Cheongsa-ro,<br>Seo-gu, Daejeon 302-701, Republic of Korea | Authorized officer<br><br>Hwang, Seung Hee<br><br>Telephone No.  82-42-481-5749 |

SINGULAR-00001757

| INTERNATIONAL PRELIMINARY REPORT ON PATENTABILITY | International application No. PCT/US2010/038769 |
|---|---|

**Box No. I    Basis of the report**

1. With regard to the **language**, this report is based on:

    ☒ the international application in the language in which it was filed.

    ☐ a translation of the international application into _____ which is the language of a translation furnished for the purposes of:

        ☐ international search (under Rules 12.3(a) and 23.1(b)).

        ☐ publication of the international application (under Rule 12.4(a)).

        ☐ international preliminary examination (under Rules 55.2(a) and/or 55.3(a) and (b)).

2. With regard to the **elements** of the international application, this report is based on *(replacement sheets which have been furnished to the receiving Office in response to an invitation under Article 14 are referred to in this report as "originally filed" and are not annexed to this report)*:

    ☐ the international application as originally filed/furnished

    ☒ the description:

        pages  1-42, 44-48 _____ as originally filed/furnished

        pages* 43 _____ received by this Authority on 28/04/2011

        pages* _____ received by this Authority on _____

    ☒ the claims:

        pages _____ as originally filed/furnished

        pages* _____ as amended (together with any statment) under Article 19

        pages* 49-61 _____ received by this Authority on 28/04/2011

        pages* _____ received by this Authority on _____

    ☒ the drawings:

        pages  1/11-11/11 _____ as originally filed/furnished

        pages* _____ received by this Authority on _____

        pages* _____ received by this Authority on _____

    ☐ the sequence listing - see Supplemental Box Relating to Sequence Listing.

3. ☒ The amendments have resulted in the cancellation of:

    ☐ the description, pages _____

    ☒ the claims, Nos.  1-2 _____

    ☐ the drawings,  sheets _____

    ☐ the sequence listing *(specify)* : _____

4. ☐ This report has been established as if (some of) the amendments annexed to this report and listed below had not been made, since either they are considered to go beyond the disclosure as filed, or they were not accompanied by a letter indicating the basis for the amendments in the application as filed, as indicated in the Supplemental Box (Rules 70.2(c) and (c-bis)):

    ☐ the description, pages _____

    ☐ the claims, Nos. _____

    ☐ the drawings,  sheets _____

    ☐ the sequence listing *(specify)*: _____

5. ☐ This report has been established:

    ☐ taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rules 66.1(d-bis) and 70.2(e)).

    ☐ without taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rules 66.4bis and 70.2(e)).

6. ☐ Supplementary international search report(s) from Authority(ies) _____ has/have been received and taken into account in establishing this report (Rule 45*bis*.8(b) and (c)).

\* *If item 4 applies, some or all of those sheets may be marked "superseded."*

SINGULAR-00001758

INTERNATIONAL PRELIMINARY REPORT ON PATENTABILITY

International application No.

**PCT/US2010/038769**

| Box No. V   Reasoned statement under Article 35(2) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement |

1. Statement

| Novelty (N) | Claims | 3-50 | YES |
| | Claims | NONE | NO |
| Inventive step (IS) | Claims | 3-50 | YES |
| | Claims | NONE | NO |
| Industrial applicability (IA) | Claims | 3-50 | YES |
| | Claims | NONE | NO |

2. Citations and explanations (Rule 70.7)

Reference is made to the following documents:

D1: US 5887160 A1 (LAURITZEN, M. et al.) 23 March 1999
D2: US 5867683 A1 (WITT, D.B. et al.) 02 February 1999
D3: US 5809320 A1 (JAIN, A. et al.) 15 September 1998
D4: US 5293500 A1 (ISHIDA, H. et al.) 08 March 1994
D5: US 5226166 A1 (ISHIDA, H. et al.) 06 July 1993


1. Novelty and Inventive Step
1.1 Claims 3, 13, 16, and 26
Claim 3 relates to a device comprising a plurality of low precision high dynamic range(LPHDR) executions units and at least one high-precision execution unit. D1 is the closest prior art of the subject matter of claim 3. D1 discloses the device comprising a integer execution unit for integer operations and a floating point execution unit for floating point operations. The subject matter of claim 3 differs from D1 in the detail features of the execution units and the component ratio of the execution units. Also, those features of claim 3 are not shown in any other prior art documents. Hence, claim 3 is novel and involves an inventive step under PCT Article 33(2) and (3).

The features of independent claims 13, 16, and 26 are substantially the same as those of claim 3 in that claims 13,16, and 26 includes LPHDR execution units for operations. Therefore, claims 13, 16 and 26 are also novel and involve an inventive step under PCT Article 33(2) and (3).

1.2 Claims 4-12, 14-15, 17-25, and 27-50
Claims 4-12, 14-15, 17-25, and 27-28 are dependent on claims 1, 13, 16, and 26, respectively. Claims 28-36 are dependent on claims one of claims 3-28, and claims 37-50 are dependent on one of claims 1, 13, 16, and 26.
Consequently, claims 4-12, 14-15, 17-25, and 27-50 are also considered to be novel and involve an inventive step under PCT Article 33(2) and (3).


2. Industrial Applicability
Claims 3-50 are industrially applicable under PCT Article 33(4).

SINGULAR-00001759

INTERNATIONAL PRELIMINARY REPORT ON PATENTABILITY

International application No.

PCT/US2010/038769

**Box No. VII   Certain defects in the international application**

The following defects in the form or contents of the international application have been noted:

According to the requirement of PCT Rule 11.13(c), the scale of the drawings and the distinctness of their graphical execution shall be such that a photographic reproduction with a linear reduction in size to two-thirds would enable to be distingushied without difficulty. However, figures 7-11 do not meet the requirement.

Claims 29-47, and 50 do not comply with PCT Rule 6.4(a) because the multiple dependent claim does not refer to other claims in the alternative way.

SINGULAR-00001760

PCT/US 2010. / 0 3 8 7 69

IPEA / KR 2 8. 04. 2011.

6-4-2011-0000852-76



PCT/US2010/038769
2011.04.28
국제예비심사기관(박진서)

ATTORNEY'S DOCKET NO: A0006-1001PC

IN THE KOREAN INTELLECTUAL PROPERTY OFFICE AS

INTERNATIONAL PRELIMINARY EXAMINING AUTHORITY

Applicant:     SINGULAR COMPUTING, LLC
Serial No:     PCT/US10/38769
Filed:         June 16, 2010
For:           Processing with Compact Arithmetic Processing
               Element

Korean Intellectual Property Office
Government Complex Daejeon Building 4
189, Cheongsa-ro, Seo-gu
Daejeon, 302-701
Republic of Korea

### AMENDMENT UNDER ARTICLE 34

Please amend the above-referenced application by

replacing page 43 with the attached page 43.  The replacement

page corrects an error in paragraph [0140] of the original

page 43, which stated that "For example, in certain

embodiments, a LPHDR arithmetic element produces results which

are sometimes (or all of the time) no closer than 0.05% to the

correct result (that is, the absolute value of the difference

between the produced result and the correct result is no more

than one-twentieth of one percent of the absolute value of the

correct result)."  In the replacement page 43, the phrase "no

more than" has been replaced with the phrase "no less than" to

- 1 -

SINGULAR-00001761

PCT/US 2010 / 0 3 8 7 69

IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

make the paragraph internally consistent.  The replacement

phrase "no less than" is consistent with the statement earlier

in the same sentence that "a LPHDR arithmetic element produces

results that are… no closer than 0.05% to the correct result."

Applicant therefore requests that the original page 43 be

replaced with the attached page 43.

Applicant further requests that the claims originally

filed be amended as indicated in the attached replacement set

of claims.  The replacement claims are supported by the

specification as originally filed and therefore do not

introduce new matter.

Respectfully submitted,

Robert Plotkin, Esq.                    April 27, 2011
Reg. No. 43,861                         Date

Robert Plotkin, P.C.
15 New England Executive Park
Burlington, MA 01803  USA
Tel: (978) 318-9914
Fax: (978) 318-9060

2

SINGULAR-00001762

PCT/US 2010 / 0 3 8 7 6 9

IPEA / KR 2 8. 04. 2011

of the present invention may include thousands, millions, or more arithmetic units, embodiments of the present invention may include any number of arithmetic units (as few as one). For example, even an embodiment which includes only a single LPHDR unit may be used within a serial processing unit or other device to provide a significant amount of LPHDR processing power in a small, inexpensive processor or other device.

[0139]    For certain embodiments of the present invention, even if implemented using only digital techniques, the arithmetic operations may not yield deterministic, repeatable, or the most accurate possible results within the chosen low precision representation. For instance, on certain specific input values, an arithmetic operation may produce a result which is not the nearest value in the chosen representation to the true arithmetic result.

[0140]    The degree of precision of a "low precision, high dynamic range" arithmetic element may vary from implementation to implementation. For example, in certain embodiments, a LPHDR arithmetic element produces results which include fractions, that is, values greater than zero and less than one. For example, in certain embodiments, a LPHDR arithmetic element produces results which are sometimes (or all of the time) no closer than 0.05% to the correct result (that is, the absolute value of the difference between the produced result and the correct result is no less than one-twentieth of one percent of the absolute value of the correct result). As another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.1% to the correct result. As another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.2% to the correct result. As yet another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.5% to the correct result. As yet further examples, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 1%, or 2%, or 5%, or 10%, or 20% to the correct result.

[0141]    Besides having various possible degrees of precision, implementations may vary in the dynamic range of the space of values they



SINGULAR-00001763

IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

## Claims

1 (canceled).

2 (canceled).

3 (new). A device:

comprising at least one first low precision high
dynamic range (LPHDR) execution unit adapted to execute a
first operation on a first input signal representing a first
numerical value to produce a first output signal representing
a second numerical value,

wherein the dynamic range of the possible valid
inputs to the first operation is at least as wide as from
1/65,000 through 65,000 and for at least X=5% of the possible
valid inputs to the first operation, the statistical mean,
over repeated execution of the first operation on each
specific input from the at least X% of the possible valid
inputs to the first operation, of the numerical values
represented by the first output signal of the LPHDR unit
executing the first operation on that input differs by at
least Y=.05% from the result of an exact mathematical
calculation of the first operation on the numerical values of
that same input.

49

AMENDED SHEET (ART. 34)

SINGULAR-00001764

PCT/US 2010 / 038769

IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

4 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

5 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

6 (new). The device of claim 5, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

7 (new). The device of claim 3, wherein the number of LPHDR execution units in the device exceeds by at least ten the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

8 (new). The device of claim 7, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

AMENDED SHEET(ART.34)

SINGULAR-00001765

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

9 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least one hundred LPHDR execution units.

10 (new). The device of claim 3, wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

11 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least five hundred LPHDR execution units.

12 (new). The device of claim 3, wherein the number of LPHDR execution units in the device exceeds by at least five hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

13 (new). A device comprising a computer processor and a computer-readable memory storing computer program



SINGULAR-00001766

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

instructions, wherein the computer program instructions are
executable by the processor to emulate a second device
comprising:

at least one first low precision high-dynamic range
(LPHDR) execution unit adapted to execute a first operation on
a first input signal representing a first numerical value to
produce a first output signal representing a second numerical
value;

wherein the dynamic range of the possible valid inputs to
the first operation is at least as wide as from 1/65,000
through 65,000 and for at least X=5% of the possible valid
inputs to the first operation, the statistical mean, over
repeated execution of the first operation on each specific
input from the at least X% of the possible valid inputs to the
first operation, of the numerical values represented by the
first output signal of the LPHDR unit executing the first
operation on that input differs by at least Y=.05% from the
result of an exact mathematical calculation of the first
operation on the numerical values of that same input.


14 (new). The device of claim 13, wherein the at least
one first LPHDR execution unit comprises at least ten LPHDR
execution units.


AMENDED SHEET (ART. 34)

SINGULAR-00001767

IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769    Attorney Docket No. A0006-1001PC

15 (new). The device of claim 13, wherein the number of LPHDR execution units in the second device exceeds by at least ten the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

16 (new). A device:

comprising at least one first LPHDR execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input;

SINGULAR-00001768

(PEA / ZR 2 8. 04. 2011

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

    wherein the number of LPHDR execution units in the device

exceeds the non-negative integer number of execution units in

the device adapted to execute at least the operation of

multiplication on floating point numbers that are at least 32

bits wide.


    17 (new). The device of claim 16, wherein the at least

one first LPHDR execution unit comprises at least part of an

FPGA.


    18 (new). The device of claim 16, wherein the at least

one first LPHDR execution unit comprises at least ten LPHDR

execution units.


    19 (new). The device of claim 18, wherein the at least

one first LPHDR execution unit comprises at least part of an

FPGA.


    20 (new). The device of claim 16, wherein the number of

LPHDR execution units in the device exceeds by at least ten

the non-negative integer number of execution units in the

device adapted to execute at least the operation of

multiplication on floating point numbers that are at least 32

bits wide.

AMENDED SHEET (ART. 34)

SINGULAR-00001769

PCT/US2010 / US 3 8 7 6 9

IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769    Attorney Docket No. A0006-1001PC

21 (new). The device of claim 20, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

22 (new). The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least one hundred LPHDR execution units.

23 (new). The device of claim 16, wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

24 (new). The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least five hundred LPHDR execution units.

25 (new). The device of claim 16, wherein the number of LPHDR execution units in the device exceeds by at least five hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of

55

AMENDED SHEET(ART. 34)

SINGULAR-00001770

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

multiplication on floating point numbers that are at least 32 bits wide.


26 (new). A device comprising a computer processor and a computer-readable memory storing computer program instructions, wherein the computer program instructions are executable by the processor to emulate a second device comprising:

at least one first LPHDR execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least 5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least 5% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least .05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input;



AMENDED SHEET (ART. 34)

SINGULAR-00001771

PCT/US 2010 / 0 3 8 7 69
IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

wherein the number of LPHDR execution units in the second device exceeds the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

27 (new). The device of claim 26, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

28 (new). The device of claim 26, wherein the number of LPHDR execution units in the second device exceeds by at least ten the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

29 (new). The device of any of claims 3-28, wherein X = 10%.

30 (new). The device of any of claims 3-28, wherein Y=.1%.

SINGULAR-00001772

IPEA / KR 2 8. 04. 2011

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

31 (new). The device of any of claims 3-28, wherein Y=.15%.

32 (new). The device of any of claims 3-28, wherein Y=.2%.

33 (new). The device of any of claims 3-28, wherein X = 10% and wherein Y = .1%.

34 (new). The device of any of claims 3-28, wherein X = 10% and wherein Y = .15%.

35 (new). The device of any of claims 3-28, wherein X = 10% and wherein Y = .2%.

36 (new). The device of any of claims 3-28, wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/1,000,000 through 1,000,000.

37 (new). The device of any of claims 3, 13, 16, or 26, wherein the at least one first LPHDR execution unit comprises a plurality of locally connected LPHDR execution units.

58

SINGULAR-00001773

PCT/US 2010 / 0 3 8 7 6 9
IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769    Attorney Docket No. A0006-1001PC

38 (new). The device of any of claims 3, 13, 16, or 26, wherein the device has a SIMD architecture.

39 (new). The device of any of claims 3, 13, 16, or 26, wherein the device includes memory locally accessible to the at least one first LPHDR execution unit.

40 (new). The device of any of claims 3, 13, 16, or 26, wherein the device is implemented on a silicon chip.

41 (new). The device of any of claims 3, 13, 16, or 26, wherein the device is implemented on a silicon chip using digital technology.

42 (new). The device of any of claims 3, 13, 16, or 26, wherein the device further comprises a digital processor adapted to control the operation of the at least one first LPHDR execution unit.

43 (new). The device of any of claims 3, 13, 16, or 26, wherein the at least one LPHDR execution unit comprises at least five hundred locally connected LPHDR execution units,



SINGULAR-00001774

IPEA / KR 2 8. 04. 2011

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

wherein the device includes memory locally accessible to at
least one of the LPHDR execution units, and wherein the device
is implemented on a silicon chip using digital technology.


44 (new). The device of any of claims 3, 13, 16, or 26,
wherein the device is part of a mobile device.


45 (new). The device of any of claims 3, 13, 16, or 26,
wherein the at least one first LPHDR execution unit represents
numbers using a logarithmic representation.


46 (new). The device of any of claims 3, 13, 16, or 26,
wherein the at least one first LPHDR execution unit represents
numbers using a floating point representation.


47 (new). The device of any of claims 3, 13, 16, or 26:

    wherein the device further comprises input means for
receiving data representing an input image; and

    wherein the input image includes the first input signal.


48 (new). The device of claim 47, wherein the device is
part of a mobile device.

SINGULAR-00001775

IPEA / KR 2 8. 04. 2011.

Application Serial No. PCT/US10/38769    Attorney Docket No. A0006-1001PC

49 (new). The device of claim 47, wherein the device is adapted to deblur the input image.

50 (new). The device of any of claims 3, 13, 16, or 26 wherein the device is adapted to perform nearest neighbor search.

AMENDED SHEET(ART. 34)

SINGULAR-00001776

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 13399884 |
| --- | --- | --- |
| | Filing Date | 2012-02-17 |
| | First Named Inventor | BATES, Joseph |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | A0006-1001 |

| U.S.PATENTS | | | | | |
| --- | --- | --- | --- | --- | --- |
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 5887160 | | 1999-03-23 | Lauritzen et al. | |
| | 2 | 5867683 | | 1999-02-02 | Witt et al. | |
| | 3 | 5809320 | | 1998-09-15 | Jain et al. | |
| | 4 | 5293500 | | 1994-03-08 | Ishida et al. | |
| | 5 | 5226166 | | 1993-07-06 | Ishida et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | |
| --- | --- | --- | --- | --- | --- |
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

**FOREIGN PATENT DOCUMENTS**

EFS Web 2.1.17

SINGULAR-00001777

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | | |
|---|---|---|

| Application Number | 13399884 |
|---|---|
| Filing Date | 2012-02-17 |
| First Named Inventor | BATES, Joseph |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | A0006-1001 |

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

**NON-PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc) date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.17

SINGULAR-00001778

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 13399884 |
|---|---|---|
| | Filing Date | 2012-02-17 |
| | First Named Inventor | BATES, Joseph |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | A0006-1001 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Robert Plotkin, Reg#43861/ | Date (YYYY-MM-DD) | 2012-02-17 |
|---|---|---|---|
| Name/Print | Robert Plotkin, Esq. | Registration Number | 43861 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

SINGULAR-00001779

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

SINGULAR-00001780

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 12109374 |
| **Application Number:** | 13399884 |
| **International Application Number:** | |
| **Confirmation Number:** | 2684 |
| **Title of Invention:** | Processing with Compact Arithmetic Processing Element |
| **First Named Inventor/Applicant Name:** | Joseph  Bates |
| **Customer Number:** | 24208 |
| **Filer:** | Robert Plotkin |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | A0006-1001C1 |
| **Receipt Date:** | 17-FEB-2012 |
| **Filing Date:** | |
| **Time Stamp:** | 20:14:27 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Petition to make Special under PCT-Patent Pros Hwy | PPHPetition.pdf | 166102  00bc01645776071aac5dd9b7b5dee5bcc6d 234b7 | no | 3 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

SINGULAR-00001781

| 2 | Petition to make Special under PCT-Patent Pros Hwy | IPRP.pdf | 14623456<br><br>3c99d5b7952e4b573718d43a708f712148550d47 | no | 21 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | Petition to make Special under PCT-Patent Pros Hwy | Claims.pdf | 126578<br><br>59a72dd2a7ba9b3895ede1e52e9854ef221b09d6 | no | 16 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | Petition to make Special under PCT-Patent Pros Hwy | IDS.pdf | 31690<br><br>f9a6984c85af8b39f86858365e9e040c77c7b8ac | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 14947826 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

SINGULAR-00001782

**ATTORNEY'S DOCKET NO: A0006-1001PC**

**IN THE KOREAN INTELLECTUAL PROPERTY OFFICE AS**

**INTERNATIONAL PRELIMINARY EXAMINING AUTHORITY**


Applicant:     SINGULAR COMPUTING, LLC

Serial No:     PCT/US10/38769

Filed:         June 16, 2010

For:           Processing with Compact Arithmetic Processing
               Element

Korean Intellectual Property Office

Government Complex Daejeon Building 4

189, Cheongsa-ro, Seo-gu

Daejeon, 302-701

Republic of Korea


**AMENDMENT UNDER ARTICLE 34**

Please amend the above-referenced application by replacing page 43 with the attached page 43.  The replacement page corrects an error in paragraph [0140] of the original page 43, which stated that "For example, in certain embodiments, a LPHDR arithmetic element produces results which are sometimes (or all of the time) no closer than 0.05% to the correct result (that is, the absolute value of the difference between the produced result and the correct result is no more than one-twentieth of one percent of the absolute value of the correct result)."  In the replacement page 43, the phrase "no more than" has been replaced with the phrase "no less than" to

- 1 -

SINGULAR-00001783

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

make the paragraph internally consistent.  The replacement phrase "no less than" is consistent with the statement earlier in the same sentence that "a LPHDR arithmetic element produces results that are… no closer than 0.05% to the correct result."

Applicant therefore requests that the original page 43 be replaced with the attached page 43.

Applicant further requests that the claims originally filed be amended as indicated in the attached replacement set of claims.  The replacement claims are supported by the specification as originally filed and therefore do not introduce new matter.


Respectfully submitted,


_____          April 27, 2011
Robert Plotkin, Esq.             Date
Reg. No. 43,861

Robert Plotkin, P.C.
15 New England Executive Park
Burlington, MA 01803  USA
Tel: (978) 318-9914
Fax: (978) 318-9060


2

SINGULAR-00001784

of the present invention may include thousands, millions, or more arithmetic units, embodiments of the present invention may include any number of arithmetic units (as few as one).  For example, even an embodiment which includes only a single LPHDR unit may be used within a serial processing unit or other device to provide a significant amount of LPHDR processing power in a small, inexpensive processor or other device.

[0139]    For certain embodiments of the present invention, even if implemented using only digital techniques, the arithmetic operations may not yield deterministic, repeatable, or the most accurate possible results within the chosen low precision representation.  For instance, on certain specific input values, an arithmetic operation may produce a result which is not the nearest value in the chosen representation to the true arithmetic result.

[0140]    The degree of precision of a "low precision, high dynamic range" arithmetic element may vary from implementation to implementation.  For example, in certain embodiments, a LPHDR arithmetic element produces results which include fractions, that is, values greater than zero and less than one.  For example, in certain embodiments, a LPHDR arithmetic element produces results which are sometimes (or all of the time) no closer than 0.05% to the correct result (that is, the absolute value of the difference between the produced result and the correct result is no less than one-twentieth of one percent of the absolute value of the correct result).  As another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.1% to the correct result.  As another example, a LPHDR arithmetic element may produce results which are sometimes (or al of the time) no closer than 0.2% to the correct result.  As yet another example, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 0.5% to the correct result. As yet further examples, a LPHDR arithmetic element may produce results which are sometimes (or all of the time) no closer than 1%, or 2%, or 5%, or 10%, or 20% to the correct result.

[0141]    Besides having various possible degrees of precision, implementations may vary in the dynamic range of the space of values they

SINGULAR-00001785

## Claims

1 (canceled).

2 (canceled).

3 (new). A device:

comprising at least one first low precision high dynamic range (LPHDR) execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input.

4

SINGULAR-00001786

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

4 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

5 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

6 (new). The device of claim 5, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

7 (new). The device of claim 3, wherein the number of LPHDR execution units in the device exceeds by at least ten the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

8 (new). The device of claim 7, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

SINGULAR-00001787

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

9 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least one hundred LPHDR execution units.


10 (new). The device of claim 3, wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.


11 (new). The device of claim 3, wherein the at least one first LPHDR execution unit comprises at least five hundred LPHDR execution units.


12 (new). The device of claim 3, wherein the number of LPHDR execution units in the device exceeds by at least five hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.


13 (new). A device comprising a computer processor and a computer-readable memory storing computer program

6

SINGULAR-00001788

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

instructions, wherein the computer program instructions are executable by the processor to emulate a second device comprising:

at least one first low precision high-dynamic range (LPHDR) execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value;

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input.


14 (new). The device of claim 13, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

SINGULAR-00001789

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

15 (new). The device of claim 13, wherein the number of LPHDR execution units in the second device exceeds by at least ten the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

16 (new). A device:

comprising at least one first LPHDR execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least X=5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least X% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least Y=.05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input;

8

SINGULAR-00001790

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

wherein the number of LPHDR execution units in the device exceeds the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

17 (new). The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

18 (new). The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

19 (new). The device of claim 18, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

20 (new). The device of claim 16, wherein the number of LPHDR execution units in the device exceeds by at least ten the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

9

SINGULAR-00001791

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

21 (new). The device of claim 20, wherein the at least one first LPHDR execution unit comprises at least part of an FPGA.

22 (new). The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least one hundred LPHDR execution units.

23 (new). The device of claim 16, wherein the number of LPHDR execution units in the device exceeds by at least one hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

24 (new). The device of claim 16, wherein the at least one first LPHDR execution unit comprises at least five hundred LPHDR execution units.

25 (new). The device of claim 16, wherein the number of LPHDR execution units in the device exceeds by at least five hundred the non-negative integer number of execution units in the device adapted to execute at least the operation of

10

SINGULAR-00001792

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

multiplication on floating point numbers that are at least 32 bits wide.


26 (new). A device comprising a computer processor and a computer-readable memory storing computer program instructions, wherein the computer program instructions are executable by the processor to emulate a second device comprising:

at least one first LPHDR execution unit adapted to execute a first operation on a first input signal representing a first numerical value to produce a first output signal representing a second numerical value,

wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/65,000 through 65,000 and for at least 5% of the possible valid inputs to the first operation, the statistical mean, over repeated execution of the first operation on each specific input from the at least 5% of the possible valid inputs to the first operation, of the numerical values represented by the first output signal of the LPHDR unit executing the first operation on that input differs by at least .05% from the result of an exact mathematical calculation of the first operation on the numerical values of that same input;

11

SINGULAR-00001793

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

wherein the number of LPHDR execution units in the second device exceeds the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

27 (new). The device of claim 26, wherein the at least one first LPHDR execution unit comprises at least ten LPHDR execution units.

28 (new). The device of claim 26, wherein the number of LPHDR execution units in the second device exceeds by at least ten the non-negative integer number of execution units in the second device adapted to execute at least the operation of multiplication on floating point numbers that are at least 32 bits wide.

29 (new). The device of any of claims 3-28, wherein X = 10%.

30 (new). The device of any of claims 3-28, wherein Y=.1%.

12

SINGULAR-00001794

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

31 (new). The device of any of claims 3-28, wherein Y=.15%.

32 (new). The device of any of claims 3-28, wherein Y=.2%.

33 (new). The device of any of claims 3-28, wherein X = 10% and wherein Y = .1%.

34 (new). The device of any of claims 3-28, wherein X = 10% and wherein Y = .15%.

35 (new). The device of any of claims 3-28, wherein X = 10% and wherein Y = .2%.

36 (new). The device of any of claims 3-28, wherein the dynamic range of the possible valid inputs to the first operation is at least as wide as from 1/1,000,000 through 1,000,000.

37 (new). The device of any of claims 3, 13, 16, or 26, wherein the at least one first LPHDR execution unit comprises a plurality of locally connected LPHDR execution units.

13

SINGULAR-00001795

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

38 (new). The device of any of claims 3, 13, 16, or 26, wherein the device has a SIMD architecture.

39 (new). The device of any of claims 3, 13, 16, or 26, wherein the device includes memory locally accessible to the at least one first LPHDR execution unit.

40 (new). The device of any of claims 3, 13, 16, or 26, wherein the device is implemented on a silicon chip.

41 (new). The device of any of claims 3, 13, 16, or 26, wherein the device is implemented on a silicon chip using digital technology.

42 (new). The device of any of claims 3, 13, 16, or 26, wherein the device further comprises a digital processor adapted to control the operation of the at least one first LPHDR execution unit.

43 (new). The device of any of claims 3, 13, 16, or 26, wherein the at least one LPHDR execution unit comprises at least five hundred locally connected LPHDR execution units,

14

SINGULAR-00001796

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

wherein the device includes memory locally accessible to at least one of the LPHDR execution units, and wherein the device is implemented on a silicon chip using digital technology.

44 (new). The device of any of claims 3, 13, 16, or 26, wherein the device is part of a mobile device.

45 (new). The device of any of claims 3, 13, 16, or 26, wherein the at least one first LPHDR execution unit represents numbers using a logarithmic representation.

46 (new). The device of any of claims 3, 13, 16, or 26, wherein the at least one first LPHDR execution unit represents numbers using a floating point representation.

47 (new). The device of any of claims 3, 13, 16, or 26:

wherein the device further comprises input means for receiving data representing an input image; and

wherein the input image includes the first input signal.

48 (new). The device of claim 47, wherein the device is part of a mobile device.

15

SINGULAR-00001797

Application Serial No. PCT/US10/38769   Attorney Docket No. A0006-1001PC

49 (new). The device of claim 47, wherein the device is adapted to deblur the input image.

50 (new). The device of any of claims 3, 13, 16, or 26 wherein the device is adapted to perform nearest neighbor search.

SINGULAR-00001798

DocCode - SCORE

# SCORE Placeholder Sheet for IFW Content

**Application Number: 13399884**          **Document Date: 2/17/2012**

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above. This content is stored in the SCORE database.

- Drawings – Other than Black and White Line Drawings

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist. The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

To access the documents in the SCORE database, refer to instructions developed by SIRA.

At the time of document entry (noted above):
- Examiners may access SCORE content via the eDAN interface.
- Other USPTO employees can bookmark the current SCORE URL (http://es/ScoreAccessWeb/).
- External customers may access SCORE content via the Public and Private PAIR interfaces.

Form Revision Date: February 8, 2006

SINGULAR-00001799