```
1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
2

3                                      )
4   SINGULAR COMPUTING LLC,            )
                                       )
5            Plaintiff,                )
                                       )  Civil Action
6   v.                                 )  No. 1:19-cv-12551-FDS
                                       )  Pages 1 to 33
7   GOOGLE LLC,                        )
                                       )
8            Defendant.                )
                                       )
9

10

11       BEFORE THE HONORABLE CHIEF JUDGE DENNIS F. SAYLOR, IV
                   UNITED STATES DISTRICT JUDGE
12

13                         MOTION HEARING
                        Via Videoconference
14

15                         May 24, 2023
                            2:01 p.m.
16

17          John J. Moakley United States Courthouse
                     One Courthouse Way
18               Boston, Massachusetts 02210

19

20

21

22             Linda Walsh, RPR, CRR
                  Official Court Reporter
23       John J. Moakley United States Courthouse
                     One Courthouse Way
24               Boston, Massachusetts 02210
                   lwalshsteno@gmail.com
25
```

```
 1    APPEARANCES:

 2   On Behalf of the Plaintiff:

 3        MCCARTER & ENGLISH, LLP
          By: Brian M. Seeve, Esq.
 4        265 Franklin Street, Boston, Massachusetts 02110
          617-620-0073
 5        bseeve@princelobel.com

 6        SUNSTEIN LLP
          By: Kerry L. Timbers, Esq.
 7        100 High Street, Boston, Massachusetts 02110
          617-443-9292
 8        ktimbers@sunsteinlaw.com

 9        PRINCE LOBEL TYE LLP
          By: Kevin Gannon, Esq.
10            Adam R. Doherty, Esq.
          One International Place, Suite 3700
11        Boston, Massachusetts 02110
          617-456-8000
12        kgannon@princelobel.com

13   On Behalf of the Defendant:

14        KEKER, VAN NEST & PETERS LLP
          By: Robert A. Van Nest, Esq.
15        633 Battery Street, San Francisco, California 94111
          415-391-5400
16        rvannest@keker.com

17        KWUN BHANSALI LAZARUS LLP
          By: Michael S. Kwun, Esq.
18            Asim M. Bhansali, Esq.
          555 Montgomery Street, Suite 750
19        San Francisco, California 94111
          415-630-2350
20        mkwun@kblfirm.com

21        WOLF, GREENFIELD & SACKS, PC
          By: Nathan R. Speed, Esq.
22        600 Atlantic Avenue, Boston, Massachusetts 02210
          617-646-8000
23        nspeed@wolfgreenfield.com

24                 Proceedings reported and produced
                    by computer-aided stenography.
25
```

P R O C E E D I N G S

THE COURT:  Court is now in session in the matter of Singular Computing LLC versus Google LLC, Civil Action number 19-12551.

02:02    Participants are reminded that photographing, recording, and rebroadcasting of this hearing is prohibited and may result in sanctions.

Will counsel please identify themselves for the record, starting with the plaintiff.

02:02    MR. SEEVE:  This is Brian Seeve representing plaintiff Singular Computing LLC.

THE COURT:  Good afternoon.

MR. SEEVE:  And with me is Kerry Timbers and Kevin Gannon, as well as, I think, Adam Doherty, also representing Singular Computing LLC.

THE COURT:  All right.  Good afternoon.

MR. VAN NEST:  Good afternoon, Your Honor.  Bob Van Nest for defendant Google.  I am here with Asim Bhansali and Michael Kwun from Kwun Bhansali, and Nathan Speed from Wolf Greenfield.

Good afternoon.

THE COURT:  Good afternoon.

All right.  This is a hearing on Google's motion to strike the expert report of Sunil Khatri.  Who's taking the lead for Google?

            1           MR. VAN NEST:  That's going to be Mr. Kwun, Your Honor.

            2           THE COURT:  Okay.

            3           MR. VAN NEST:  Michael.

            4           MR. KWUN:  Your Honor, I would like to discuss really

02:03       5     just two points today.

            6           And first, I would like to walk through the evidence

            7     that shows that the infringement theory that is in Dr. Khatri's

            8     report is a new infringement theory and one that wasn't

            9     previously disclosed by Singular.

02:03      10           And then the second point I would like to discuss is

           11     the legal standard that applies to this motion and basically

           12     that this motion is a Rule 16 motion and not a Rule 37 motion.

           13           But starting with the new infringement theory,

           14     Singular's argument, if I understand it, is that it has always

02:03      15     alleged that infringement -- that Google's TPUs infringe

           16     because they use bfloat16s, 16 bits, instead of 32 bits, FP32s.

           17     And from that disclosure it says we should have known that it

           18     was accusing rounding circuits and that they didn't even have

           19     to tell us where those rounding circuits were, that we should

02:04      20     have been able to figure that out because we know our own

           21     product, where our rounding circuits are.  Wherever it is, it's

           22     accused.

           23           But Local Rule 16.6(d) requires that Singular disclose

           24     in its infringement contentions, with as much specificity as

02:04      25     possible, where and how each element of the claims is met.

1    So --

2              THE COURT:  If I could interject?

3              MR. KWUN:  Yes.

4              THE COURT:  How are you supposed to know?  A chip is

02:04  5    not like a, I don't know, a widget you can just pick up and

6    look at and say, ah, here's how it works.  How are they

7    supposed to know without the source code precisely where these

8    functions are being performed?  I'm talking about the beginning

9    of a lawsuit now.

02:04 10              MR. KWUN:  At the beginning of a lawsuit, what the

11    local rules say is that they have to rely on things such as

12    public information, and that's what they did.  And the public

13    information they relied on wasn't 100 percent accurate.  It

14    wasn't meant to disclose all of these details so precisely.

02:05 15    And so we don't fault them for having gotten it wrong then.

16              However, we went through discovery.  We produced

17    technical documents, and at a bare minimum, they took the

18    deposition of our engineers, who in 2021 disclosed in testimony

19    that the rounding circuits were in the VPU.  And a matter of

02:05 20    fact, the questions that they were asked showed that Singular

21    knew that the rounding circuits were in the VPU.  So at that

22    point they then could move for leave to amend their

23    infringement contentions under 16.6(d), but they didn't do

24    that.  And they did move to supplement eventually to add the

02:05 25    source code citations, and I'll get to that in moment.

02:06

02:06

02:06

02:07

02:07

1       First, I would like to walk through what happened

2   without the source code contentions.  And Your Honor, I'm going

3   to be referring to the slides that we provided you with.  And

4   the first slide is just the cover slide, so I'm going to start

5   with slide 2.  And slide 2 comes from Singular's supplemental

6   infringement contentions.  It's for the '156 patent, but the

7   same disclosure is in their contentions for both patents.  And

8   a matter of fact, the same disclosures are also in their

9   preliminary contentions.

10      And we've circled and kind of blown up three instances

11  on there, just to show you what this disclosure was talking

12  about.  It's only talking about the MXU.  And, again, in their

13  preliminary contentions, maybe they didn't know any better, but

14  by the time of their supplemental contentions, which were in

15  August of 2022, they had known for over a year that the VPU was

16  where the rounding circuits were, and they knew that the VPU

17  wasn't in the MXU either.

18      Then, if you look at slide 3, this is from

19  Dr. Khatri's expert report, and you can see in his expert

20  report he says that the LPHDR execution units are included

21  within the VPU/MXU.

22      THE COURT:  Are you trying to show me slides now?

23  Because I'm not seeing them.  Or is this -- are you talking

24  about what's in the record?

25      MR. KWUN:  These were slides that we had emailed.

```
 1              THE COURT:  Are you trying to show them on the screen?
 2              MR. KWUN:  I am not trying to show them on the screen.
 3              THE COURT:  All right.  Go ahead.
 4              MR. KWUN:  So let me give you a little more context,
 5    then, so that you can see exactly what I'm talking about.
 6              From slide 2, that's from their preliminary
 7    infringement contentions, and that's docket 410-3, and it's on
 8    page 6.  And if you look at it, it just repeatedly, all it's
 9    talking about is the MXU.  Dr. Khatri's infringement report at
10    paragraph 72 says that the LPHDR execution units are included
11    within the VPU/MXU.  So that is a -- that is a new theory that
12    wasn't disclosed in the disclosure of the MXU.
13              And then you can also see it a second way.  So if you
14    go back to their preliminary contentions, so again docket
15    410-3, and this time you look at page 9, you can see their
16    discussion of the required error for the claims, and then in
17    their discussion of the required error, they say, quote, "For
18    each of the possible valid inputs to the multiplication
19    operation performed by the multipliers within the MXU,"
20    unquote, that they did a calculation of the error.  So they're
21    focusing on the inputs to the MXU.
22              And then if you look at Dr. Khatri's report, and this
23    is our slide 5, but Dr. Khatri's report at paragraph 140, he
24    says that the LPHDR execution unit comprises the
25    precision-reducer circuits that convert each of the FP32 input
```

signals.  So from that we know he's talking about inputs that
are in the VPU because they're inputs to the rounding circuits
which he calls precision-reducer circuits.

And this difference -- you know, they say that they
disclosed this in their supplemental contentions in the source
code citations, but the source code citation didn't tell us,
oh, by the way, the rounding circuits are part of the EU now.
They didn't change their disclosure that referred to the MXU
again and again and again, and their source code citation for
the execution unit cited 235 pages of source code without any
explanation at all.  Instead, all it said was see also 232
pages.  And now they say, if you look at one of those pages and
you look at a particular part of one of those pages, well,
then, that disclosed that rounding circuits were involved.  But
frankly, even if they had told us, oh, by the way, rounding
circuits have something to do with our infringement theory,
that doesn't tell us that the rounding circuits are part of the
execution unit.  It could have been that the rounding circuits
were intended as evidence that the multipliers in the MXU
operate at bfloat16 precision.

So without telling us what was going on in those
infringement contentions, they really didn't disclose to us
that they were now relying on the VPU.  And a matter of fact,
when they moved for leave to supplement their infringement
contentions -- and they chose the word "supplement" and not

1    "amend" as in a new theory -- in their motion, this is at

2    docket 355-1, they three times told the Court and Google that

3    they were not seeking to add a new theory of infringement.

4         On page 1 they say Singular is not seeking to add any

02:11  5    new theory of infringement.

6         At page 4, they say Singular does not seek to add any

7    new infringement theories.

8         And at page 5, in case we hadn't already figured it

9    out, they say Singular's infringement theories have not

02:11 10    changed.

11         So if indeed those source code citations were intended

12    to put us on notice that they had a new infringement theory,

13    they have a problem because they actively told us that there

14    was no new infringement theory.

02:11 15         So from all of that, I think it's pretty clear that

16    there is a new infringement theory here.  And then, if you ask

17    yourself, does this new infringement theory matter, in their

18    surreply they say the location is irrelevant.  So first of all,

19    under the local rules, location is anything but irrelevant

02:11 20    because they're required to tell us about it.

21         THE COURT:  Let me stop.  You are breezing right by to

22    what I think may be the most important point.  I'm not sure I

23    understand why the location is relevant.  In other words, the

24    claim limitation, as I understand it, is an execution unit.

02:12 25    I'm sure I'm going to get the acronym wrong, but LPHDR.

1          MR. KWUN:  Yes, Your Honor.

2          THE COURT:  Does it really matter whether at the end

3    of the day Google is doing that in one step or two or five

4    if -- and whether the word or the term "execution unit" applies

02:12  5    to that collectively or individually?  I'm just not sure I

6    understand why the geography, if that's the right word, on the

7    chip matters.  I'm not sure I understand that.

8          MR. KWUN:  Yes, Your Honor.  The reason it matters is,

9    first of all, because it's required by the local rules.

02:12 10          But second of all, because when we go to trial, they

11    need to put up evidence to a jury and tell the jury where the

12    execution unit is.  And throughout this case, until we received

13    their expert report, they were telling us we are going to tell

14    the jury that the execution unit can be found in the MXU.  And

02:12 15    only at the time that they served Dr. Khatri's expert report

16    did we learn that, no, they're not actually only going to point

17    to the MXU, they're going to bring in evidence of another part

18    of the chip, the VPU.  So that's why it matters.

19          The point of the patent local rules is to flush out

02:13 20    that disclosure as soon as possible, and then -- and the

21    reason --

22          THE COURT:  It still has to matter.  If I understand

23    this, and I'm sure I'm the least informed person on this call.

24    But, you know, you have these two functions.  You have the

02:13 25    rounding function, if that's the right word, and you have the

multiplication function; right?  And whether those occur in one

black box or two black boxes, isn't the whole idea of the

execution unit is you're doing both things, and that's -- and

so never mind what the local rules say; in other words, you

could be infringing a patent for, I don't know, the light bulb,

and it doesn't matter whether the light bulb is in the ceiling

or in a lamp, it's still a light bulb.  It doesn't matter where

the light bulb is located, and that's what I'm struggling with,

the idea here.  Why does it matter that in fact Google is using

two things, a VPU and an MXU, to perform these two functions

instead of both functions being performed in one unit?

MR. KWUN:  But, Your Honor, if they had disclosed the

VPU and MXU theory, then we could have an argument at trial and

let the jury decide or maybe a further claim construction

decide, let something decide, whether or not having that

function performed in two places falls within the scope of the

claim limitation.

THE COURT:  Can't you still make that argument?

MR. KWUN:  Well, we could.  We could make that

argument if you allowed this argument to go forward, but it

shouldn't go forward because they had to disclose what their

infringement theory was.  So before you get to the question of

whether or not VPU plus MXU can infringe, they first have to

disclose that that in fact is their theory, and they didn't

disclose it until they served Dr. Khatri's expert report.  And

1    as a matter of fact, after they knew in August of 2022, long

2    after they knew that they were -- that the VPU had the rounding

3    circuit, they told us that they were not asserting a new

4    infringement theory.

02:15  5         So the -- the second point I want to get to in today's

6    argument is the legal standard that applies here.  And this is

7    a motion that we brought under Rule 16, and particularly under

8    the Local Rule 16.6(d).  And that makes this a Rule 16 motion,

9    not a Rule 37 motion, and a Rule 16 motion whether or not there

02:15 10   is good cause.  So in this case, good cause for them to be able

11   to amend their contentions.

12         In their surreply, at page 4 of their surreply,

13   Singular says that the applicable law for this motion would be

14   regional circuit law.  So first of all, that's incorrect.  If

02:16 15   you look at *O2 Micro*, which we cited in our opening brief, the

16   Federal Circuit has held that it will apply Federal Circuit

17   law, the patent local rules, like Local Rule 16.6, that are,

18   quote, "Likely to directly affect the substantive patent law

19   theories that may be presented at trial."  That's at 467 F.3d

02:16 20   1355, pincite 1364.  And in *O2 Micro*, the Federal Circuit

21   affirmed a refusal to allow an amended infringement theory

22   because the patentee had delayed by close to three months

23   before moving for leave to amend its contentions.

24         Here, Singular knew about the issue in 2021 when it

02:17 25   took the depositions of our witnesses and didn't move for leave

to amend to add the VPU plus MXU theory ever.  And even when it
did move to supplement, that was well over a year later.  As a
matter of fact, in August of '22 when it moved to supplement
its contentions, that was one day shy of three months where the

02:17  5   stay had lifted in this case.  So it's -- the facts are
remarkably similar to *O2 Micro,* and because *O2 Micro* is Federal
Circuit law, that is the standard that applies.

But even if it was First Circuit law, frankly, the
answer is no different.  If you look at the *O'Connell* case, the

02:17  10  First Circuit says that for a good cause standard the focus is
going to be on the diligence of the party seeking to amend and
less so on prejudice to the other party.

And then if you look at the *Rosario-Diaz* case at 140
F.3d 312, the First Circuit says that as a matter of fact, if

02:18  15  you never move for leave to show good cause, that cuts off any
ability to argue prejudice at all.  So Federal Circuit law
applies, and Federal Circuit law says that even a three-month
delay is too long.  But even if First Circuit law applied, the
answer would be the same.

02:18  20  And the cases that they cite, that Singular cites, all
are Rule 37 cases, and Rule 37 applies to a failure to follow
the dictates of Rule 26(a), which would include expert reports.
So if they had served an expert report late, then there could
have been a Rule 37 motion.  They didn't serve the expert

02:19  25  report late.  The problem is the expert report relies on a

1    theory that they never disclosed under 16.6, Local Rule 16.6.

2        And unless Your Honor has further questions, that's

3    all I have.

4        THE COURT:  Okay.  Who's taking the lead for Singular?

02:19  5        MR. SEEVE:  I am, Your Honor.  Good afternoon.

6        So first I'll address Singular -- or Google's core

7    argument, which is that Dr. Khatri's report puts forth a new

8    theory of infringement, which is not the case.

9        In particular, Google is arguing here that, first,

02:19 10   Google had no way of knowing before Dr. Khatri's report that

11   Singular was pointing to rounding circuits as being part of its

12   infringement theory, and that's not the case.

13       And secondly, Google is saying that even if it knew

14   about the rounding circuits, it still didn't know where these

02:20 15   rounding circuits were, and in particular, it didn't know that

16   the rounding circuits were within what's called the VPU as

17   opposed to the MXU, and that's not the case.

18       And if you take a look at Singular's demonstratives --

19   it's slide 2 -- you can see that Singular's theory has actually

02:20 20   remained the same from the very beginning, from the very start

21   of the case.  This slide shows a snippet from Singular's

22   preliminary infringement contentions, and as you can see

23   highlighted here on this slide, the snippets contained here

24   show that the LPHDR EU under Singular's infringement theory --

02:20 25   and here "EU" stands for execution unit.  So that's LPHDR

execution unit.  Singular's LPHDR execution unit took 32-bit

inputs, and then it reduced the precision of those inputs using

a rounding circuit potentially, although this was before fact

discovery.  And as Your Honor pointed out, there was no way

02:20   Singular had of knowing exactly what circuitry was involved.

And then it took those reduced precision inputs and it

multiplied them together with the MXU.  And the circuitry

responsible for that process is what Singular has identified

since the very start of the case as being the LPHDR execution

02:21   unit.

Now, as Your Honor pointed out, without the benefit of

source code, it's impossible to know exactly what circuits

within this very complicated chip perform the claimed

functions.  And so during fact discovery, Singular and

02:21   Singular's expert, Dr. Khatri, reviewed Google source code, and

in August of 2022, which is only 22 days after Singular

received the source code finally from Google that it requested,

pursuant to its request for source code for its updated

infringement contentions, Singular amended its infringement

02:21   contentions to include citations to the specific source code

that identifies and corresponds to the specific circuits that

it used as part of its infringement theory.

And on slide 3 of Singular's demonstratives, you can

see an excerpt from one of these source code files.  Now, this

02:22   source code file was cited specifically with respect to the

1   LPHDR execution unit claim limitation.  And as Your Honor can

2   see, it very clearly shows not only that this circuit performs

3   rounding, but also that this circuit is located within the VPU.

4   The file name is VpuToMxuFloatConversion, referring to, as the

02:22  5   source code explains, conversion from a format that's used by

6   the VPU to a format that's used by the MXU.  And how does this

7   conversion takes place?  Well, it takes place via rounding, as

8   Your Honor can further see in another excerpt that's

9   highlighted on this slide.

02:22  10   So as far as Singular is concerned, the inquiry should

11   end there.  These amended contentions were timely filed.  The

12   Court ruled that Singular had leave to amended its contentions

13   in August of 2022 when it amended its contentions to add this

14   source code file.  And as Your Honor can see, it very clearly

02:23  15   identifies not only the very same rounding circuit that

16   Dr. Khatri points to in his report, and there's no dispute that

17   it's the same rounding circuit, but it also shows that that

18   rounding circuit is located within the VPU.

19   Now, Google's argument is sort of attempting to

02:23  20   pretend that these contentions never actually were amended.

21   Google is first saying that, oh, yes, it's true that Singular

22   amended its contentions, but it only added this source code as

23   one of several source code files that were cited as part of

24   this limitation.  Well, that's true.  There are a number of

02:23  25   source code files that are related to this very complicated

claim limitation.  But there's also no question that this
rounder was singled out.  This rounder was singled out and its
location within the VPU by Singular six months before
Dr. Khatri's report was served as part of the LPHDR execution
unit that was identified by Singular as the infringing
instrumentality.

Now, Google said in its briefs, and Mr. Kwun just said
in his argument, that Google was totally blind-sided by this
argument when it appeared for the first time in Dr. Khatri's
report.  Well, that's not true, and we can see that from the
invalidity reports that Google itself filed on the same day
that Dr. Khatri's report was served.  And if you look at slide
4 of Singular's demonstratives, you can see, for example,
Google's invalidity expert, Dr. Leeser, is talking about a
prior art system called bfloat, and she identifies purportedly
an LPHDR execution unit that she says is located within the
bfloat reference.  And one of the components of that supposed
LPHDR execution unit, as you can see from the excerpt here, is
a rounding and normalization circuit that performs a rounding
operation.  And it's not just Dr. Leeser that talks about
rounding and rounders as related to the LPHDR execution unit,
but it's also Google's other invalidity expert, Dr. Gustafson.

And on slide 5 of Singular's demonstratives, you can
see a figure from Dr. Gustafson's invalidity report that
purports to show another LPHDR execution unit supposedly within

1    the prior art.  And at the bottom of this figure, there's a

2    block that's highlighted in yellow called RND underscore norm.

3    And what does that block do?  Well, you can see from the quote

4    on the slide that it performs rounding, and these aren't the

02:25  5    only references to rounding within Google's invalidity reports.

6        If you look at slide 6 of Google's demonstratives --

7    am I getting it right?  Yes, slide 6 -- you can actually see an

8    excerpt from Dr. Gustafson's table of contents where he devotes

9    actually 20 pages of his report to rounders and rounding and

02:25  10    how they're relevant to the LPHDR execution units that are

11    claimed in this case.  If Google truly were blind-sided by

12    Dr. Khatri's argument, if it truly had no idea how rounders

13    related to the arguments at issue, it would not have devoted

14    such a substantial amount of its validity reports, which were

02:26  15    served the same day that Dr. Khatri's report was served, to

16    rounding and how it relates to the asserted claims.

17        Now, when it comes to this argument that, oh, it's in

18    the VPU as opposed to the MXU, Your Honor's question I think

19    really gets to the heart of the matter, which is why does it

02:26  20    matter where this rounding circuit is located.  The fact is, it

21    doesn't.  Not only do Google's contentions very clearly explain

22    that the rounding circuit is located within the VPU -- that's

23    what the source code on slide 3 shows -- but also it's not

24    actually part of Singular's theory at all.

02:26  25        Mr. Kwun referred to the fact that Singular's initial

contentions placed the rounder in the MXU rather than the VPU,
not as a result of Singular being wrong but as a result of
Google's documentation being wrong.  Now, I could explain all
the details and I could go down that rabbit hole, but
02:26    fundamentally, what's at issue here is it simply doesn't matter
where the rounding circuit is located.  The VPU and the MXU are
both terms that Google has invented, Google has used internally
to refer to different regions of what is fundamentally the same
device, a single chip.

02:27         It doesn't matter whether a particular rounding
circuit is located in the VPU or the MXU.  This is an arbitrary
distinction.  What matters is what the rounding circuit does
and whether it performs the functionality that constitutes
infringement in this case.  There's no dispute that it performs
02:27    the functionality identified by Dr. Khatri.

         Now, when it comes to the legal standard at issue in
this case, I just have a couple of points to make.  Mr. Kwun
first pointed out a whole bunch of cases about timely
disclosures and whether Singular should be allowed to amend.
02:27    The question of whether Singular should be allowed to amend has
already been litigated in this case.  Google objected when
Singular asked for leave to supplement its infringement
contentions.  And the Court rejected Google's arguments, and it
granted Singular leave to amend.  The Court found that Singular
02:28    was timely, the Court found that Singular was diligent, and the

1    Court found that Singular was not seeking to add a new theory.

2         Now, Google is attempting to pretend that Singular's

3    amendments never happened or, in the alternative, it's trying

4    to say that Singular's amendments to its contentions never

02:28  5    should have been allowed in the first place, but that issue has

6    already been decided.  That's not the issue that's before the

7    Court now.

8         When it comes to the question of Rule 16 versus Rule

9    37 and what standard should apply, I should point to the fact

02:28  10   that Google is essentially attempting to do an end run around

11   the summary judgment standard.  This is fundamentally a summary

12   judgment motion, and it's not just me saying this.  Google in

13   one of its summary judgment motions actually tells the Court

14   that if the Court grants this motion, then summary judgment of

02:28  15   noninfringement would be warranted.

16        So there's no question what Google here is trying to

17   achieve.  Google here is effectively trying to get summary

18   judgment, but it doesn't actually want to use the summary

19   judgment standard to prove it.  And this is actually consistent

02:29  20   with Google's tactics in the remainder of this litigation.

21   This motion that's before the Court right now is one of three

22   motions that are currently pending in which Google is

23   attempting to get the entire expert report of Dr. Khatri tossed

24   out on legal or procedural grounds without even getting to the

02:29  25   facts or to the merits, and for the same reason as the other

two motions, should be denied, the instant motion should also

be denied for the reasons I just explained.

THE COURT:  Okay.  Mr. Kwun, any response?

MR. KWUN:  Yes, Your Honor.  Just a few points.

First of all, I just wanted to mention that this is a

patent claiming a device.  It claimed the actual structural

elements of a device.  And the notion that they should just be

able to say somewhere in your TPU you can find all of these

elements would make a mockery of the patent rules and the

requirement of their disclosures.  If all they had to do is say

that it's somewhere in the TPU and the exact location doesn't

matter, then there's no need for any preliminary disclosures at

all.  They could just say it's in the TPU, and that would be

enough.  So it's not enough because we need to know what their

actual theory is.

Second of all, our invalidity experts relied on

rounding in prior art systems that invalidate the asserted

claims.  That means that we knew that our theory for those

pieces of prior art involved rounding circuits.  What we didn't

know was that their theory for infringement based on our

systems involved the rounding circuits in the VPU.

And according to Mr. Seeve, the disclosures said, oh,

you know, there's a rounding circuit and now you're just

complaining that the rounding circuit was somewhere else.  If

you look at the disclosures, they actually don't say that

there's a rounding circuit.  They say that the multipliers

operate at reduced bfloat 16 precision.  They say that the

inputs are at FP32.  They are entirely silent about what

happened in between, whether it's rounding, whether it's a

02:31 5   mathematical operation that produces FP -- or excuse me, a BF16

by some other means, whether it's truncation, whether it's

something else.  So they never even disclosed that it was a

rounding circuit, let alone where that rounding circuit was.

And, Your Honor, I would like to make two other points

02:31 10   from our slides.  So, first of all, our sixth slide comes from,

again, from the infringement contentions at 410-3 on the

docket, and now it's at page 10.  And in their infringement

contentions, both their preliminary contentions and their

post-amendment infringement contentions, for the '156 patent

02:31 15   when they had to identify at least one competing device adapted

to control the LPHDR execution units, one of the things they

identified as controlling the execution unit was the VPU.

So if they're saying that they amended their

contentions and it was clear in their contentions that the VPU

02:32 20   was part of the EU, it would make no sense that they left their

contentions about the competing device adapted to control still

saying, oh, by the way, the VPU controls the EU.  That would

make the VPU part of the EU while it simultaneously is outside

of it controlling the VPU.  That makes no sense whatsoever, and

02:32 25   that I think shows that their theory is incorrect.

1        And then the last one I want to point out is from

2   Dr. Khatri's expert report.  At paragraph 162 of Dr. Khatri's

3   expert report he says something very interesting.  He says that

4   the BF16 multiplication that takes place in the MXU occurs, and

02:33  5   then I'm quoting, quote, "without further loss of precision,"

6   unquote.  So he is saying what we said in our noninfringement

7   contentions a couple of years ago, which is that the

8   multipliers in the MXU perform exact math.  So if your patent

9   is about math that is inexact, that's going to be a problem.

02:33 10        So this is why they need to assert a different theory

11   than an MXU-only theory for the execution unit.  And that's why

12   the theory that places part of it in the VPU is a different

13   theory than the one that was disclosed to us.

14        Thank you, Your Honor.

02:33 15        THE COURT:  All right.  Last word, Mr. Seeve?

16        MR. SEEVE:  So just a couple of extremely brief points

17   in response to what Mr. Kwun just said.

18        First of all, Mr. Kwun's assertion that we never

19   pointed to a rounding circuit at all, let alone where it was

02:33 20   located, once again, he's arguing in this universe where we

21   never amended our contentions, but we did amend our

22   contentions.  And we very clearly identified not only a

23   rounding circuit but the very particular rounding circuit

24   located within the VPU that performs the claims functionality.

02:34 25   So that's point one.

1          Point two, relating to this argument about the

2     controlling circuit, et cetera, I really don't want to go down

3     the rabbit hole of the merits of the infringement argument.

4     That's something that can be decided by the jury, and I'm not

02:34   5     sure sort of where the noninfringement argument starts and

6     where Google's argument on the present motion ends, but I will

7     merely say that Google's argument about this controller is

8     inaccurate.  Google is ignoring certain key disclosures in our

9     infringement contentions that clearly point to the core

02:34  10     sequencer as being the thing that controls the LPHDR execution

11     units.

12          I'll also mention that the VPU is not just one thing,

13     it's not just the rounding circuits.  The VPU is this large

14     region of the chip that includes not just rounding circuits but

02:34  15     a whole bunch of other circuitry as well.

16          But the idea that the VPU might be partially

17     responsible for controlling the LPHDR execution units that

18     include the rounder that are also in the VPU is not nonsensical

19     as Mr. Kwun would have the Court believe.

02:35  20          So those are just the two points I would like to make

21     in sort of a final argument against what Mr. Kwun is saying.

22     Our argument was fully disclosed.  It's not a new theory.  It

23     was merely supplemented in our supplemental contentions, and

24     it's identical to the theory that Dr. Khatri used six months

02:35  25     later in his expert report.

1          Thank you, Your Honor.

2          THE COURT:  All right.  Thank you.  All right.  In

3     light of where we are in the case, I'm going to rule now from

4     the bench rather than writing an opinion.  There's always a

02:35  5     danger I'm going to misspeak or get something wrong or use a

6     shorthand phrase when I mean something more precise, but I

7     think it's important to resolve this issue.

8          So I'm going to deny the motion to strike.  My

9     understanding is that since this litigation began, Singular has

02:36 10     advanced an infringement theory that there were two components

11     or pieces or functions here, a rounding or precision-reducing

12     circuit and a multiplier.  As I understand it, Singular

13     apparently believed at the outset based on publicly available

14     information that the precision-reducing circuit was in the MXU.

02:36 15     It said it did that based on publicly available Google

16     documents which it says were incorrect.

17          In any event, that proved to be not quite accurate,

18     and at some point Singular says it's after the production of

19     the source code that Google says it was the source code plus

02:37 20     depositions of engineers, but in any event, at some point, and

21     about three weeks or so after the source code was produced,

22     Singular supplemented its contentions.  I don't think it much

23     matters in terms of whether that was deemed an amendment or a

24     supplementation.  In any event, it occurred.  And the

02:37 25     supplemental contentions make clear that the precision-reducing

1    or rounding circuit is in the VPU.

2         I am struggling to see, and I'm not convinced that

3    this distinction is material, that is, where the rounding

4    function occurs geographically on the chip.  I think the

02:37  5    critical issue is whether the device infringes by using a

6    precision-reducing circuit and a multiplier, which taken as a

7    whole, represent an LPHDR execution unit, and the devices

8    that -- the accused device is the Google TPU.

9         But in any event, I see no violation or material

02:38  10   violation of the Court's order or the local rules concerning

11   disclosure of infringement contentions, much less a violation

12   serious enough to warrant preclusion, which is an

13   extraordinarily serious response.

14        And I agree with the proposition that this is not a

02:38  15   Rule 37 discovery issue.  It's really a Rule 16 issue, speaking

16   broadly.  That is the Court's orders concerning disclosures and

17   the applicable local rules.

18        To the extent that there were any imperfections or

19   delays in all of this, it seems to me that they are minor.  I

02:39  20   certainly see no material prejudice.  Google has had the

21   supplemental contentions available to it for about a year or

22   so.  It's had the expert report of Dr. Khatri since last

23   December.  It's now May.  Trial is not until September.  I

24   believe that Google has had ample time to respond under the

02:39  25   circumstances, and I need not now decide anything broader than

the narrow issue of whether I strike the expert report on these grounds.

I certainly do not need to decide noninfringement or, you know, to what extent Google can or cannot make certain arguments at trial.  That, if anything, will be left for another day.  So to eat what is on my plate, metaphorically speaking, I'm going to deny the motion to strike, which is docket entry number 408.

While we are together, and changing subjects, there have been a plethora, perhaps more than one plethora, of motions to seal, which I have not looked at.  I will -- I think they are all agreed upon, and I will look at them.  As a general proposition, I think Courts have gotten into a habit of oversealing things, particularly in business disputes.  And since I haven't even read these, I'm only expressing sort of broad-based reactions here, but one outcome, because it's a common outcome, is for me to grant it provisionally subject to targeted redactions, and I'll just look and see what you did, but I will clean that up before too much time passes.

In other words, I'm constantly being asked to seal things where people are asking me to seal a 20-page -- 25-page document based on about three pages of confidential information and which is inappropriate.

And otherwise, I think -- we have a number of substantive motions pending.  Are they all ripe?  It looks like

```
 1   perhaps --
 2            MR. VAN NEST:  Your Honor, could I address that?
 3            THE COURT:  Yes, Mr. Van Nest.
 4            MR. VAN NEST:  Thank you for raising that.  Yes, by
 5   next Friday, by a week from Friday, the Dauberts and the
 6   summary judgment motions will all have been fully briefed.  The
 7   replies are due a week from this Friday.  So I was going to ask
 8   or suggest that if Your Honor is contemplating a hearing on
 9   those motions, which --
10            THE COURT:  Yes.
11            MR. VAN NEST:  -- I think the parties have requested,
12   that while we're all together today, we could perhaps choose a
13   date.
14            THE COURT:  Yes.  Let's do that in about three weeks
15   or thereabouts.  Matt, what do I have?
16            THE CLERK:  Would Friday, June 16th at 2:00 o'clock
17   work?
18            THE COURT:  Why don't we make that 1:30 just because
19   it's a Friday before a summer weekend.  We may have a lot of
20   ground to cover.  1:30 Eastern Time.
21            MR. VAN NEST:  Your Honor, I'm in a jury trial in San
22   Francisco that starts on the 12th, and it's expected to run for
23   a couple of weeks.
24            THE COURT:  I may be out the following week.  Is that
25   right, Matt, am I?
```

02:42 (line 5)
02:42 (line 10)
02:42 (line 15)
02:43 (line 20)
02:43 (line 25)

```
 1              THE CLERK:  That's correct, Judge.
 2              THE COURT:  Can someone else from your office cover,
 3    Mr. Van Nest?  They seem smart to me.  I think they could
 4    probably handle this.
 5              MR. VAN NEST:  I would really -- on the summary -- I
 6    assume that we're talking about the substantive motions, the
 7    summary judgment --
 8              THE COURT:  Yes.
 9              MR. VAN NEST:  -- and Daubert?  I would really prefer
10    to do that myself, at least on one of them.
11              THE COURT:  All right.  Let's look at the end of June
12    then.  I'm not quite sure how much is involved, and I'm
13    prepared to issue rulings rapidly, as I did today, to keep this
14    on track, and if I need to do that, I will.  Am I on the last
15    week of June; is that right, Matt?
16              THE CLERK:  Yes, you are, Judge.
17              How about Tuesday, June 27th at 1:30?
18              MR. VAN NEST:  I think that would work for me, Your
19    Honor, Tuesday, the 27th.
20              THE COURT:  Okay.
21              MR. SEEVE:  And I think that works for us, Your Honor.
22    Anyone else on my team who's on the call object if that's not
23    the case, but I'm nearly certain that will work for us.
24              THE COURT:  Okay.  Okay.  And I think that the
25    motions -- the pending motions, other than the motions to seal,
```

02:43 (line 5)
02:43 (line 10)
02:44 (line 15)
02:44 (line 20)
02:44 (line 25)

```
 1    there's a motion to continue the trial, 453; motion for summary
 2    judgment of noninfringement, 460; motion for partial summary
 3    judgment of no invalidity based on CNAPS and GRAPE-3, 464;
 4    motion to exclude testimony of Laura Stamm and Martin Walker
02:45  5    regarding reasonable royalty, 466; motion for summary judgment
 6    concerning patent ineligibility, 467; 471 is a motion to
 7    exclude opinion testimony of Dr. Gustafson; 474 is a motion, a
 8    partial summary judgment of no invalidity under Section 101;
 9    475 is to exclude certain documents and testimony of Dr. Leeser
02:45  10   due to IPR estoppel; 476 is to exclude certain opinion
 11   testimony of Philip Green; and 479 is to exclude certain expert
 12   testimony of Dr. Khatri.  I think that is it.  That's quite a
 13   handful.
 14          I don't know -- well, let's leave it this way:  Unless
02:46  15   you hear otherwise from me, why don't you be prepared to
 16   discuss all of those, but I may -- I may not have a hearing on
 17   all of them to save time.  Some of these are going to be more
 18   important than others and -- or be prepared to do an expedited
 19   discussion on some of them.  I read them all so.
02:46  20          Mr. Van Nest?
 21          MR. VAN NEST:  I'm assuming on the 27th we'll be live?
 22   Or are you contemplating a virtual hearing or are you
 23   contemplating a hearing live in Court?
 24          THE COURT:  Well, I can do either one.  You all are
02:46  25   the ones from California.
```

```
    1              MR. VAN NEST:  I think we'd prefer to be live.

    2              THE COURT:  It's fine with me.

    3              MR. SEEVE:  It's fine with us, too, Your Honor.

    4              THE COURT:  All right.  Live it is.

02:47  5              MR. VAN NEST:  Okay.  The only other thing I was going

    6    to mention is that the -- and I -- we're not requesting a

    7    hearing on it, but you mentioned the motion to continue.

    8    That's -- all I was going to say about that is it's fully

    9    briefed, and if you wanted to hear something, we could do it on

02:47 10    the 27th or you could decide it on what we filed.  I don't

   11    think there's much to add to what is in the papers, but the

   12    reply briefs are in.

   13              THE COURT:  Okay.

   14              MR. VAN NEST:  And it's fully briefed.

02:47 15              THE COURT:  All right.  I will take a look at that.

   16    And I -- to grossly understate things, I have quite a bit on my

   17    plate, and some of these rulings are going to be more expedited

   18    than perfect, I guess let's put it that way, because I want to

   19    hold this trial date and make sure -- I don't want to be

02:47 20    making, you know, significant rulings on the Friday before a

   21    Monday trial.

   22              Obviously I want to make sure you all know what this

   23    thing is going to look like, assuming we get that far.  But

   24    obviously if I continue the trial, that relieves that

02:48 25    particular pressure.  That's just going to be the way it is,
```

1    okay?

2            MR. VAN NEST:  Okay.  We didn't have anything else for

3    today, Your Honor, unless Your Honor has further questions.

4            THE COURT:  No, I don't think so.

02:48  5            Mr. Seeve, anything from your end?

6            MR. SEEVE:  Nothing further, Your Honor.

7            THE COURT:  Okay.  Thank you.

8            MR. VAN NEST:  Thank you, Your Honor.  Appreciate your

9    time.

02:48 10            MR. SEEVE:  Thank you, Your Honor.

11            (Adjourned at 2:48 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Linda Walsh, Registered Professional Reporter

4    and Certified Realtime Reporter, in and for the United States

5    District Court for the District of Massachusetts, do hereby

6    certify that the foregoing transcript is a true and correct

7    transcript of the stenographically reported proceedings held in

8    the above-entitled matter, to the best of my skill and ability.

9              Dated this 28th day of May, 2023.

10

11

12              /s/ Linda Walsh

13              Linda Walsh, RPR, CRR

14              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```