<pre>
 1                        UNITED STATES DISTRICT COURT
                          DISTRICT OF MASSACHUSETTS
 2

 3

 4      SINGULAR COMPUTING LLC,              )
                                            )
 5                          Plaintiff       )   Civil Action
                                            )
 6                                          )   No. 19-12551-FDS
        vs.                                 )
 7                                          )
        GOOGLE LLC,                         )
 8                          Defendant       )

 9

10      BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

11

12                  STATUS CONFERENCE CONDUCTED BY ZOOM
13

14

15              John Joseph Moakley United States Courthouse
                             1 Courthouse Way
16                           Boston, MA 02210

17

18                             July 6, 2023
                                2:00 p.m.
19

20

21

22

23                    Valerie A. O'Hara, FCRR, RPR
                          Official Court Reporter
24          John Joseph Moakley United States Courthouse
                             1 Courthouse Way
25                           Boston, MA 02210
                       E-mail: vaohara@gmail.com
</pre>

```
 1    APPEARANCES VIA ZOOM:

 2    For The Plaintiff:

 3         Prince, Lobel, Tye, LLP, by ADAM R. DOHERTY, ESQ.,
      One International Place, Suite 3700, Boston, Massachusetts
 4    02110;

 5         McCarter & English, LLP, by BRIAN M. SEEVE, ESQ.,
      265 Franklin Street, Boston, Massachusetts 02110;
 6
           Sunstein LLP, by KERRY L. TIMBERS, ESQ.,
 7    100 High Street, Boston, Massachusetts 02110;

 8    For the Defendant:

 9         Keker, Van Nest & Peters LLP, by ROBERT A. VAN NEST, ESQ.,
      RACHAEL E. MENY, ATTORNEY, and DEEVA SHAH, ATTORNEY,
10    633 Battery March Street, San Francisco, California 94111.

11         Kwun, Bhansali, Lazarus LLP, by MICHAEL KWUN, ESQ., 555
      Montgomery Street, Suite 750, San Francisco, California 94111;
12
           Wolf, Greenfield & Sacks, P.C., by NATHAN R. SPEED, ESQ.,
13    600 Atlantic Avenue, Boston, Massachusetts 02210.

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>PROCEEDINGS</u>

1

2       THE CLERK:  Court is now in session in the matter of

3  Singular Computing LLC vs. Google, LLC, Civil Action

4  Number 19-12551.

5       Participants are reminded that photographing,

6  recording or rebroadcasting of this hearing is prohibited and

7  may result in sanctions.

8       Would counsel please identify themselves for the

9  record, starting with the plaintiff.

02:00PM 10       MR. TIMBERS:  Kerry Timbers for plaintiff, Singular,

11  and several others from Prince, Lobel as well.

12       THE COURT:  All right.  Good afternoon.

13       MR. VAN NEST:  Good afternoon, your Honor,

14  Bob Van Nest, Keker, Van Nest & Peters for Google.  I'm here

15  with Rachel Meny and Deeva Shah from our office, as well as

16  Michael Kwun from Kwun, Bhansali, and Nathan Speed from Wolf

17  Greenfield.  Good afternoon.

18       THE COURT:  All right.  Good afternoon.  This is a

19  status conference in this case.  Let me tell you what I think

02:00PM 20  makes sense to do.  I am in agreement that I think I need to

21  set a schedule so the parties can think about it.  What is

22  going to be done, obviously, is going to depend in part on what

23  rulings I make beginning with whether I extend the trial date

24  or not but also if to the extent I exclude witnesses or claims

25  or anything of that sort, obviously, the trial will be

1    narrowed, but I think at present we need to proceed on the

2    assumption that I will not continue the trial nor exclude

3    anything, and so this, obviously, may be affected as we go

4    forward, but I think for planning purposes, we need to have a

5    schedule in place and to begin talking about some of these

6    things.

7         So I'm going to set some dates.  Inevitably, there is

8    some arbitrariness here, but I will try to explain as I go

9    along what it is I'm trying to do and why, and, obviously,

02:02PM 10   we're going to convene again on the 18th, which is I think in

11   12 days away, something like that, so first I'm going to set a

12   deadline for the filing of witness lists and exhibit lists.

13   That will be July the 25th.

14        There is a tendency, which unfortunately is fueled by

15   unreasonable judges to list every possible exhibit, sometimes

16   numbering into the tens of thousands that might conceivably

17   come up at trial.

18        What I would like, if you want to do that for fear

19   that if something isn't on your exhibit list, I won't allow it,

02:02PM 20   you know, you can do what you want.  The touchstone is always

21   going to be fairness, but part of this exercise is to whittle

22   your exhibit lists and exhibit lists to the things and people

23   that really matter and that you reasonably expect that you're

24   going to need on cross-examination of the other side's

25   witnesses.

1          So cases do take twists and turns, of course, and, you

2     know, it's not uncommon, obviously, for someone to want to put

3     on a witness or introduce an exhibit that wasn't necessarily on

4     the list, and, again, the touchstone is always fairness, but

5     July 25th should be the exhibit list and witness list

6     disclosure dates.

7          Jumping ahead in terms of numbering of exhibits, I

8     want every exhibit to have a unique number, so, first off,

9     we're not going to have letters that get turned into numbers,

02:04PM 10     we're just going to have numbers.  We're not going to have

11     plaintiff's exhibits or defense exhibits, we're just going to

12     have exhibits.

13          I encourage you to group the exhibits, so, for

14     example, a case involving 12 photographs of the scene of the

15     accident, that can be Exhibit 17.1 through Exhibit 17.12, or

16     the medical records of the injured plaintiff can be, you know,

17     all of the hospital records are Exhibit 18, and then they have

18     decimal points for things within them.  I think that's a

19     perfectly sensible way to do it.

02:04PM 20          I leave it up to you, but the point being whatever is

21     Exhibit 32, I want it to be Exhibit 32 whether it comes in or

22     not, whether it's the first exhibit offered or the last.  I

23     don't care about any of that, I don't care about gaps in the

24     exhibit list at trial, I don't care what exhibit is first

25     introduced, but I want everyone to plan and internalize each

1    document as having a unique number.

2         This works best, obviously, if you can agree on

3    things, such as the patents that probably ought to be

4    Exhibit 1, the Exhibits 1, 2, whatever.  And you can start, as

5    sometimes people do, the plaintiffs get, you know, I don't

6    know, Exhibits 1 through 200 and the defense starts with 201.

7    Anything that is sensible works for me, but I don't want two

8    Exhibit 17.

9         And also jumping ahead, I want things to be premarked,

02:05PM 10   and I want documents to be handled smoothly.  I want you to be

11   able to find them, I want you to remember what the number is.

12   All judges have their pet peeves, I have a whole little

13   menagerie of pets that peeve me.  One of them is a lawyer

14   picking up a document at the podium and looking at it like he's

15   never seen it before, you know, reading it, and then thinking

16   about whether he wants to introduce it or not in front of the

17   jury.  I want all this to be smooth and to have you be

18   prepared, and that includes, of course, having a handle on

19   exhibits.  So, July 25th.

02:06PM 20        August 1st will be exchange of deposition

21   designations.  The parties have deposition discovery

22   designations.  I'm not sure what that means, I'm just going to

23   say deposition designations.  This is the opening round.  In my

24   experience, this is one of the most difficult things for me

25   preparing for a trial, so let me talk about that.  Basically

1    there's going to be three rounds, as is typical.  Each side

2    will designate depositions, the other side will

3    counterdesignate with objections, and then they'll be a third

4    round of objections and maybe a stray

5    counter-counterdesignation depending on what was

6    counter-designated.

7          I assume all this is done by video, I hope so, so you

8    have a video that needs to be in some form or another edited.

9    I want attorney colloquy edited out, as a general principle,

02:07PM 10   and people often tend to either under-designate, for example,

11   they don't designate the first five pages.  You can't even

12   figure out who the witness is because they haven't designated

13   the page where the witness says what his name is or what he

14   does for a living, or they overdesignate, you know, they just

15   designate everything no matter how tangential.

16          Again, you're all experienced lawyers.  I'm sure I'm

17   telling you what you already know, but I do want this process

18   to be reasonably thoughtful, and at the end of the day, what

19   I'm going to want is something where things are highlighted so

02:08PM 20   I can tell who has designated it, you know, maybe use yellow,

21   pink and light blue or something, who has designated it and

22   understand what the objections are.

23          So, bottom line, have some mercy on the Judge and the

24   jury here, some mercy on the Judge in terms of what you

25   designate and making clear what you're designating and what you

1    object to on the other side and have some mercy on the jury,

2    make sure that you're including enough information so that the

3    jurors can understand who is testifying and where they're

4    coming from.

5         So that will be, again, in three stages.  The

6    counter-designations will be two weeks later, August 15th, and

7    then the final round of objections and if any

8    counter-counterdesignations will be August 22nd, one week

9    later, so August 1st for the initial designation, August 15th

02:09PM 10    for the counterdesignations and objections and August 22nd for

11    the final round.

12         In terms of -- well, let me talk about jury

13    instructions and voir dire questions.  I don't need them long

14    in advance, particularly jury instructions.  This isn't going

15    to be a one-day trial.  I do want them in advance, but I don't

16    need them two months in advance.

17         I can get for you what I'll call my boilerplate

18    instructions in civil cases.  You don't need to submit jury

19    instructions on the burden of proof or anything like that

02:10PM 20    unless there's some wrinkle, something that might not be

21    obvious to me, but I can get you that stuff, but I will want

22    the jury instructions I'm going to say by August 30th.

23    August 30th -- strike that.  No, I'm going to say August 30th

24    is going to be the date for submission of voir dire questions.

25         Those of you from other parts of the country, we all

1    have different experiences about how juries are impaneled and

2    what about kind of information is elicited from prospective

3    jurors.  Our tradition here, which I very much believe in, is

4    that it's my role to screen prospective jurors for cause but

5    not to spend a whole lot of time and attention screening them

6    so that you can exercise your peremptories more carefully or

7    according to your particular desires.

8         And I'm not going to ask any questions that I think

9    are intrusive, so, for example, what newspapers or magazines or

02:11PM 10   media you read, whether you go to church, whether you drive a

11   Buick, all these kinds of things.  I am a representative of the

12   government wearing a black robe forcing people to answer

13   questions whether they want to or not, and I think it's

14   improper for me to ask any of those kinds of questions.

15        I'm going to screen for cause, the basic framework

16   being I'm going to ask do they know the parties, witnesses, the

17   lawyers, me, have they heard anything about the case, pretrial

18   publicity, do they have hardships, what are their attitudes

19   about patent cases, civil justice cases, attitudes about

02:12PM 20   companies or Google, but it's not going to be a whole lot more

21   than that, so be forewarned.

22        And I'll also make August 30th the date for the

23   proposed form of verdict, and I am not generally a fan of

24   special interrogatories.  They have their place.  Sometimes you

25   need to use them, but I'm not going to use them without a good

1    reason.  As you may know, one of my practices is to give each

2    individual juror a written copy of my charge verbatim to read

3    along with as I read them aloud and to take with them into the

4    jury room, and so to the extent that special interrogatories

5    are designed to walk jurors through the elements of a

6    particular claim or defense, I don't think that's necessary.

7    They'll have that in writing, and so I want to minimize all of

8    that.

9            So those dates will be August 30th, proposed voir dire

02:13PM 10   questions, proposed jury instructions, proposed voir dire.

11   Motions in limine, that deadline will be August 17th, as the

12   parties have agreed, with oppositions to be filed by

13   August 24th.

14           If you want to file a pretrial memorandum, and it may

15   be useful, but I'm not going to insist on it, those should be

16   also filed by August 24th.

17           As a general proposition, I'm a fan of motions in

18   limine because they tend to reduce or eliminate sidebar

19   conferences.  We don't have to anticipate everything, but the

02:14PM 20   more you anticipate, I think the better off all of us will be

21   even if they're a page long.  You do need to confer with your

22   opponents.  I get these things all the time, 17 of them are

23   filed, and it turns out there's no objections to, you know, 12

24   of them, which is just a waste of time for everyone.

25           But as a general proposition, I think they're a good

1    idea, even if it's just to exclude a single statement, a single

2    document, you know, as hearsay or a document that can't be

3    authenticated, whatever, I think they're a very useful exercise

4    and particularly for streamlining the trial and eliminating

5    sidebar conferences, again, and forcing the parties and me for

6    that matter to think about the evidence, what it's really going

7    to look like, how it's going to come in, what are the issues.

8            I very much do not want to have a long sidebar or a

9    recess in the middle of a trial while I'll thinking about some

02:15PM 10   evidentiary issue that, you know, could have been foreseen long

11   before the trial started.

12           And I'm going to set pretrial conferences.  I think it

13   makes sense to have one on September 5th and September 7th, and

14   I'm probably going to set one at some point in August.  I just

15   got a schedule for some minor surgery I have to have in the

16   middle of August, and I need to work around that and think

17   about that.

18           Matt, why don't we go ahead set times on September 5th

19   and 7th for we'll call that a two-day final pretrial

02:16PM 20   conference.  Do I have anything else going on those days?

21           THE CLERK:  Both are open, Judge, all day.

22           THE COURT:  All right.  Why don't we say 10 a.m. both

23   days, the 5th and the 7th.  So that will be --

24           THE CLERK:  Judge, sorry, I didn't know if you want

25   that in person.

1      THE COURT:  Yeah, I think by that point we need to be

2  in person.  We can do it hybrid.

3      MR. VAN NEST:  We'll be here, your Honor, I think that

4  makes more sense to be live.

5      THE COURT:  And some of your team can be hybrid if you

6  want.  You know, I was a partner in a big firm, I spent a big

7  chunk of my life on airplanes for God knows what reason.  I

8  don't want people to travel more than necessary.  I think it

9  makes sense to have the lead lawyers in person, but we can also

02:17PM 10  hook up a Zoom link for other people on your team who maybe are

11  going to be here for the trial but don't necessarily need to be

12  here in advance.

13      And I'm also conscious, just for what it's worth, that

14  by setting this schedule, I'm probably wrecking the summers of,

15  you know, a couple of dozen people, and I can't say I feel good

16  about that, but that's just the way it's going to play out, I

17  think.  Unless I move the trial, which I still haven't decided,

18  that will be the schedule.  It's subject to change, obviously.

19      I'm going to do a whole lot more thinking about a

02:17PM 20  whole lot more issues between now and the next conference,

21  never mind the trial date, but I do think this makes sense from

22  a planning standpoint for you to begin thinking about what is

23  going to be done and how you're going to do that.

24      All right, let me pause there.  Mr. Timbers or anyone

25  on plaintiff's team, any reaction?

1           MR. TIMBERS:  Yes, I wonder if I could make a pitch

2       for moving the initial dates a week earlier.  You know, getting

3       everything ready for that first date is one thing but then

4       there are a lot of things you can't do until you get the other

5       side's stuff.  And responding on evidentiary issues, for

6       example, and counterdesignations is a huge job, and that's why

7       having sort of a little bit bigger time period for the

8       responsive stuff is really, really helpful, and the parties

9       have been working diligently getting ready for trial.

02:18PM 10          And if we could move the 7-25 date and the 8-1 date,

11      for example, one week earlier, this will actually make a pretty

12      big difference because we've got many, many weeks to hit those

13      first deadlines but two weeks to respond can be tight because

14      you have to both respond with objections to designations as

15      well as counterdesignate, and that usually is a great time to

16      cut and cut and cut, which is something I know your Honor wants

17      us to do.

18          THE COURT:  Okay.  But, notice, I didn't set a

19      deadline for objections to exhibits.  That's something that I

02:19PM 20      assume is going to come with the motion in limine process, but

21      why don't we do this.  I hear the point.  I'm a little

22      reluctant to also have you maybe spinning wheels that maybe you

23      don't need to spin until you know what it is that I'm going to

24      do, you know, in terms of rulings and the trial and so forth.

25          Why don't we move the first date from the 25th to the

1     21st and the second date from August 1st to July 28th, I'll

2     give you, whatever that is, four more days on each.

3           MR. VAN NEST:  Your Honor, can I interrupt for a

4     moment?

5           THE COURT:  Yes.

6           MR. VAN NEST:  I was going to say kind of just the

7     opposite of that.  The exhibit list is a bear.  You know from

8     experience people overdesignate the exhibit list.  The 18th is

9     a date when we think we're going to be getting rulings from

02:20PM 10     your Honor per your discussion last week.

11           The staffs are also working extremely hard.  I thought

12     the 25th was aggressive myself and was going to ask that that

13     be slid back a few days to the end of that week, but I really

14     think moving it up is a mistake.  We're already here on

15     July 6th.  We're going to have rulings from your Honor probably

16     I believe in 12 days.  I think having a week between your

17     rulings and the 25th is a lot -- is not much is what I mean,

18     and I really think it's a mistake to move it up.

19           People do better when they know what the Court's

02:21PM 20     rulings are with respect to all these things, and so because

21     the exhibit list is such a bear, I really think that moving

22     that up is a mistake.  I care less about the witness list, but

23     the exhibit list I think is something that the 25th is plenty

24     aggressive and gives us all plenty of time to go back and forth

25     on.

1          THE COURT:  So, again the exhibit lists -- well, I

2     would hope that by this stage, you pretty much know how you

3     want this case to be presented and what the exhibit lists are,

4     and if the other side designates things you think are not

5     admissible, you have all the way until August 17th for motions

6     in limine, and even then you really haven't waived anything,

7     you can object to it at trial, although, God knows, I would

8     want it taken up by the 17th, so your own exhibit list, which

9     is really what we're talking about here, shouldn't be that

02:22PM 10     monumental.

11          How about I do this, I'm going to move those dates up

12     on the exhibit lists and witness lists, and then I'm going to

13     permit supplementation of those lists three weeks later,

14     whatever that is.  That would be August 11th, okay.  And,

15     again, a fantastic amount of time in my experience is wasted on

16     these peripheral exhibits that are not likely to come in, but

17     everybody is scared to death, that, you know, it's not on your

18     list, it can't come in for any purpose, even if a witness says

19     something that nobody expected, and, you know, just you ought

02:22PM 20     to be able to put on your case, right, you ought to know the

21     core of what your claims defenses are, and that piece of it

22     shouldn't be that hard.

23          Depositions, it is a word-by-word, line-by-line

24     exercise.  I understand the difficulty of that.  I will tell

25     you on that one, I'm going to revert to August 1st, leave it

1    where I put it originally, okay, so I'm moving up the exhibit

2    and witness list, permitting supplementation three weeks later,

3    and I'm going to leave the initial deposition designations to

4    August 1st, okay?

5         MR. VAN NEST:  So, your Honor, the new date for

6    exhibit lists and witness lists is the 21st?

7         THE COURT:  Correct.

8         MR. VAN NEST:  Then you can supplement both of those

9    three weeks later?

02:23PM 10         THE COURT:  By the 11th.

11         MR. VAN NEST:  August 11th, okay, thank you.

12         THE COURT:  But, again, and, I'm sorry, none of you, I

13   don't think have ever tried a case in front of me, so I'm

14   preaching to the converted here, but just the amount of time

15   that lawyers spend on things that are really peripheral,

16   documents, witnesses, whatever, Count 17 of the complaint, you

17   know, way out of proportion to what the case is really about,

18   right?

19         I hope I know what the central claims are, surely, you

02:24PM 20   do, and the central defenses, and, you know, I feel sometimes

21   if I told the lawyers, okay, you've got an hour, put on your

22   case, that you could probably get about 95 percent of it done

23   in that hour, and just, again, you know, think in that time

24   frame, do I really need this?

25         And if you want sort of your emergency supplemental

1   exhibit list, you know, depending on how witnesses testify,

2   here's the 10,000 that might come up, fine.  If you want to do

3   that, fine, but really how many exhibits are going to have?  Do

4   you want people to read them?  Are you going to use them?  You

5   know, ask people about them, how big could that number possibly

6   be, and if you tell me it's going to be a thousand, then, you

7   know, my reaction is you don't know how to try a case, and I'm

8   sure that's not true.

9          So, and having said that, I also understand how

02:25PM 10  maddening it is to have, you know, last minute rulings from the

11  Judge, and I don't know if this qualifies as last minute, but

12  it's close enough.  I understand the drill, okay, but, still.

13  This is the best I can do under the circumstances, so that's

14  what I'm going to do.

15         All right.  Mr. Timbers, anything else?

16         MR. TIMBERS:  I had a question about time management

17  for the trial, which follows from your latest comments.  Do you

18  keep a clock?

19         THE COURT:  Here's the thing, I don't like chess

02:25PM 20  clocks or anything like that.  I feel it's a gimmick for me to

21  say, all right, you've got 17 hours or something that is wholly

22  arbitrary.  So, you know, I like people to be able to I want to

23  say try their case, try a streamlined version of their case.

24         I'm also conscious that the plaintiff goes first and

25  the defense, you know, sometimes gets pressured at the end of

1    the trial when the plaintiff is taking too much time.  My

2    preference is to approach it this way.  I have set aside a

3    finite amount of time.  My ability to go beyond that is pretty

4    limited.  You're presumed innocent, everyone.  If I think you

5    are wasting time or we're falling behind, I will slowly tighten

6    the screws, and I'm going to be tightening the screws in a way

7    that I think is fair to both parties, including the fact that

8    the defense has to go second, although, of course, sometimes

9    it's defense cross-examination is what takes up the time, so it

02:26PM 10   depends.

11        So that is my preference because I don't know how to

12   otherwise do it except to just set arbitrary times, and I just

13   don't know how I can do that fairly.

14        MR. TIMBERS:  Right.

15        THE COURT:  I don't know what's involved.

16        MR. TIMBERS:  Fair enough, your Honor.  I just wanted

17   to confirm the finite of time, the days that you have set

18   aside, so we have no doubts about that?

19        THE COURT:  All right.  Is it literally finite in the

02:27PM 20   sense that the world will collapse if it goes on farther, no,

21   but, you know, as we get into late September, early October, I

22   have other things, I have an out-of-state wedding I need to

23   attend, I have a couple vacation days, there's just other

24   things going on, and it would be best if this case were tried

25   in a reasonably finite amount of time.  Time is a limited

1    resource, my time is a limited resource, I'd like to get the

2    case done, you know, in a reasonable amount of time, and I need

3    your help, obviously, in doing that, and just every time that

4    you use, you know, a phrase like "with respect to," oh, "and

5    insofar as" or "theretofore," you know, think about whether you

6    really want to do that.

7         Every word that comes out of your mouth, every single

8    one has the power to detract from every other word you utter,

9    and as I like to say when the second question is, "Please tell

02:28PM 10  me in your own words what is your current residential address"

11   as opposed to "where do you live," you're slowly, slowly,

12   slowly, eating into your time.

13        MR. VAN NEST:  Your Honor, could I join Mr. Timbers in

14   getting a little more specificity with I think your Honor is

15   aware, we're moving a large team out --

16        THE COURT:  Yes.

17        MR. VAN NEST:  -- from around the country, hotels,

18   catering.  There's a lot that goes into this.  We understood

19   that this would be essentially a two-week trial, the week of

02:29PM 20  the 11th and the week of the 18th.

21        THE COURT:  That is my target, yes.

22        MR. VAN NEST:  Okay.  I think it would benefit both of

23   us to hear that that's our trial.

24        THE COURT:  Yes.

25        MR. VAN NEST:  And we can get there in terms of

1    divvying up the time.

2         THE COURT:  Yes, it is.  Monday, the 25th is

3    Yom Kippur, if it goes to the 26th, is that the end of the

4    world?  No.  Things happen.  I understand.  I'm pretty sure I'm

5    out Friday, the 29th and may be out the 28th, I've got things

6    the week of October 2nd.  I want it to fit into this window.

7    It should be a two-week trial.  I'm sure things can happen.

8         MR. VAN NEST:  So we should plan on completing this in

9    those two weeks?

02:30PM 10         THE COURT:  Yes.

11         MR. VAN NEST:  And I know your Honor has -- is it a

12   five day a week schedule?

13         THE COURT:  Yes, it's five days a week.  My normal

14   trial day is 9 to 1 with a bathroom break at 11:00 and a chance

15   to stretch your legs at ten and noon.  I want to meet with the

16   lawyers every day at 8:30, sometimes at 8:00, again, to go over

17   what is happening for the day.  I will be open to afternoon

18   sessions, although I don't like them particularly, and jurors

19   certainly don't like them.  I'm amenable to starting a little

02:30PM 20   early, going a little late, get the witness on and off the

21   stand, that kind of thing, but, you know.

22         MR. VAN NEST:  Okay, understood.

23         THE COURT:  It really ought to be a two-week trial.

24         MR. VAN NEST:  In your eyes, we would spend Monday

25   picking a jury and maybe doing openings?

1        THE COURT:  Yes.

2        MR. VAN NEST:  And then the 22nd doing closings, if

3   not sooner is the idea?

4        THE COURT:  Yes, and, obviously, jury deliberation is

5   a different issue.

6        MR. VAN NEST:  Sure, understood.

7        THE COURT:  I think you can expect on Monday the 11th

8   we would impanel, do openings.  I think it's unlikely that we

9   would get to a witness.  I'll have a better feel as we get

02:31PM 10   closer.  One of the great advantages of being Chief Judge is I

11   impanel last, and the first Monday after Labor Day weekend is a

12   time where traditionally judges impanel a lot of juries, so I

13   don't know when in the day we'll get to me, but, you know, I

14   should know that, have a better sense as we get closer.

15        All right.  So I'm going to have or send to you some

16   boilerplate jury instructions, again, just for you to have an

17   idea of what those are.  I may circulate some other things that

18   I think may help jumpstart some of this, and --

19        MR. VAN NEST:  Your Honor, I end two questions on the

02:32PM 20   defense side.  One is to the extent you mentioned setting a

21   pretrial conference in August?

22        THE COURT:  Yes, I think we ought to reconvene in

23   August, mid-August, roughly, but I --

24        MR. VAN NEST:  That's fine.  We could -- you're

25   probably contemplating doing that over Zoom?

1      THE COURT:  Yes, Zoom, or telephone, even if

2  necessary.

3      MR. VAN NEST:  I'm out of the country until the 19th,

4  I'm available and back starting the 21st of August, so the last

5  two weeks I'm here.

6      THE COURT:  Okay.

7      MR. VAN NEST:  And except for --

8      THE COURT:  I will try to accommodate that as best I

9  can.

02:33PM 10      MR. VAN NEST:  Thank you, I appreciate it.  My second

11  question is whether you would consider, you mentioned limited

12  voir dire.  I appreciate that.  Attitudes about tech companies

13  are running high these days.  Would you consider if the parties

14  could agree on it, a very simple one-page questionnaire that we

15  gave jurors ahead of time so that if there were sensitive

16  answers, we wouldn't be saying them out loud in the courtroom

17  or asking people to do that?

18      THE COURT:  That sounds fine in the abstract, but

19  here's the issue with juror questionnaires, and, obviously, in

02:33PM 20  certain types of cases, I have to use them.  This is not a

21  highly publicized case, it's not something that involves sexual

22  assault or something, you know, that's particularly private or

23  difficult.  You have to distribute the questionnaires to the

24  jurors, get them back, photocopy them, distribute them to the

25  lawyers, and we have to walk through it.  It's a very

1    time-consuming process, and I'll listen to you.

2         I'm not ruling anything out here, but I'll also tell

3    you I'm prejudiced against it for that very reason.  It

4    consumes a lot of time, and I will need to be convinced that

5    there's something special about this case that requires that

6    kind of response because it is a huge devotion of resources,

7    plus, it's the clerk's office, and we have to have people to

8    collect them all and so on, and then you have to go through

9    them all, and you need a special portion of the jury pool set

02:34PM 10    aside for that.

11         You know, if we're impaneling six juries that day, we

12    can't have jurors who might be in one of the other five cases

13    filling out a questionnaire relating to patent cases, so

14    there's a lot involved in that, and so I am deeply skeptical, I

15    guess, I'd say.

16         MR. VAN NEST:  I'm fairly warned.  Let me ask two

17    questions.

18         THE COURT:  Yes.

19         MR. VAN NEST:  If the parties were to agree on it and

02:35PM 20    submit it, when would you like to get it?  To the extent that

21    you thought it made sense in this case, what is the date by

22    which you'd like to get it?

23         THE COURT:  Reasonably in advance, how about three

24    weeks before the start of the trial?

25         MR. VAN NEST:  Okay, and thank you.  And with respect

1    to the panel, typically when would we get from chambers a panel

2    list?

3         THE COURT:  When you walk into the courtroom that

4    morning.

5         MR. VAN NEST:  Okay.

6         THE COURT:  You will not have it in advance.  You'll

7    have a randomized list that will have a name, an address, a

8    town, or city, occupation, and spouse's occupation.  Sometimes

9    those are blank, and I have to ask questions to fill them in,

02:36PM 10   and you won't even know that first thing Monday morning because

11   that's going to depend on what jurors actually show up in my

12   courtroom, again, from impaneling other jurors, people get

13   shuffled around and get sent back, so you won't have anything

14   in advance.

15        MR. VAN NEST:  Okay.  So that will be on the 11th when

16   we show up?

17        THE COURT:  Yes.

18        MR. VAN NEST:  Okay, thank you.  That's all I had,

19   your Honor.

02:36PM 20        THE CLERK:  Judge.

21        THE COURT:  Yes, Matt.

22        THE CLERK:  Sorry, you'll probably get that list about

23   two to five minutes before the jurors walk into the courtroom,

24   not when you first show up in the morning, just want to let you

25   know.

1          MR. VAN NEST:  Okay.

2          THE COURT:  All right.  So I think that's enough for

3     now.  We'll reconvene in 12 days, and we'll take it from there,

4     okay?

5          MR. VAN NEST:  Very well, thank you, your Honor.

6          MR. TIMBERS:  Thank you, your Honor.

7          (Whereupon, the hearing was adjourned at 2:36 p.m.)

8

9               C E R T I F I C A T E

10

11    UNITED STATES DISTRICT COURT )

12    DISTRICT OF MASSACHUSETTS ) ss.

13    CITY OF BOSTON )

14         I do hereby certify that the foregoing transcript,

15    Pages 1 through 25 inclusive, was recorded by me

16    stenographically at the time and place aforesaid in Civil

17    Action No. 19-12551-FDS, SINGULAR COMPUTING LLC vs. GOOGLE LLC

18    and thereafter by me reduced to typewriting and is a true and

19    accurate record of the proceedings.

20         Dated July 10, 2023.

21              s/s Valerie A. O'Hara
                _____
22              VALERIE A. O'HARA
                OFFICIAL COURT REPORTER
23

24

25