## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SINGULAR COMPUTING LLC,

      Plaintiff,

v.

GOOGLE LLC,

      Defendant.

Civil Action No. 1:19-cv-12551-FDS

Hon. F. Dennis Saylor IV

REDACTED VERSION

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO COMPEL DEPOSITION AND DOCUMENT DISCOVERY

Matthew D. Vella (BBO #660171)
Adam R. Doherty (BBO #669499)
Kevin Gannon (BBO #640931)
Brian M. Seeve (BBO #670455)
Daniel McGonagle (BBO #690084)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Fax: (617) 456-8100
Email: mvella@princelobel.com
Email: adoherty@princelobel.com
Email: kgannon@princelobel.com
Email: bseeve@princelobel.com
Email: dmcgonagle@princelobel.com

Kerry L. Timbers (BBO #552293)
**SUNSTEIN LLP**
100 High Street
Boston, MA 02110
Tel: (617) 443-9292
Email: ktimbers@sunsteinlaw.com

ATTORNEYS FOR THE PLAINTIFF

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ..................................................................... 3

      A.  Google's Collection and Late Production of the ███████ ..................................... 3

      B.  Google's Withholding and Subsequent Production of Evidence Linking the
          ████████ to ███████████████████████████████ ........ 4

      C.  Google's Late Production of Additional Email Evidence ████████████
          ████████████████ and Other Documents That Hit on Search Terms But Were
          Nonetheless Not Produced Until Now. .............................................................. 8

      D.  Information Learned Through the Meet and Confer Process and Google's
          Improper Assertions of the Attorney-Client Privilege and Work Product Doctrine. .......... 9

III.  ARGUMENT ..............................................................................................11

      A.  The Court Should Order Google to Submit to a Rule 30(B)(6) Deposition
          Concerning Its Search for Responsive Documents, Regardless of Its Meritless Claims
          of "Privilege." .........................................................................................11

      B.  The Court Should Order the Depositions of █████████████████ ...... 15

      C.  The Court Should Order Google to Produce all Responsive Non-Privileged
          Documents of which Google or Its Counsel are Aware. .................................... 16

      D.  The Court Should Order Google to Produce All Non-Privileged Electronic
          Communications Containing the Name "Bates" in the Possession of the Eleven
          Google Custodians. .................................................................................. 17

IV.   CONCLUSION ......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arthur v. Atkinson Freight Lines Corp.*,
  164 F.R.D. 19 (S.D.N.Y. 1995) ................................................................................. 19

*Bartlett v. Mut. Pharm. Co.*,
  No. CIV.A. 08-CV-358-JL, 2009 WL 3614987 (D.N.H. Nov. 2, 2009) ................................... 19

*BRT Mgmt. LLC v. Malden Storage*, LLC,
  No. CV 17-10005-FDS, 2020 WL 93952 (D. Mass. Jan. 8, 2020)........................................... 16

*Gardner-Alfred v. Fed. Rsrv. Bank of New York*,
  2023 WL 3495091 (S.D.N.Y. May 17, 2023) ............................................................. 18

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
  No. 05-2164, 2007 WL 1054279 (D. Kan. Apr. 9, 2007) ................................................. 13

*L–3 Commc'ns Corp. v. Sparton Corp.*,
  313 F.R.D. 661 (M.D. Fla. 2015)............................................................................ 18

*Raine Grp. LLC v. Reign Cap., LLC*,
  No. 21CV1898JPCKHP, 2022 WL 538336 (S.D.N.Y. Feb. 22, 2022) ................................... 18

*Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*,
  626 F. Supp. 3d 478, 498 (D. Mass. 2022) .......................................................... 16, 19

*Ruiz-Bueno v. Scott*,
  2013 WL 6055402 (S.D. Ohio Nov. 15, 2013) ........................................................ 12

*United States v. Fresenius Med. Care Holdings, Inc.*,
  No. 1:10-CV-1614-AT, 2014 WL 11517841 (N.D. Ga. May 13, 2014) ................................ 18

*Vasoli v. Yards Brewing Co., LLC*,
  2021 WL 5045920 (E.D. Pa. Nov. 1, 2021)............................................................. 12

*Wildlife Solutions, Inc. v. Reilly*,
  2006 WL 8458658 (D. Mass. Apr. 10, 2006)............................................................ 14

## I.   **INTRODUCTION**

This motion to compel follows Singular's Motion to Reopen Discovery Regarding Defendant's Production of Relevant Email Evidence on July 12, 2023. Dkt. No. 548. As explained in the Motion to Reopen Discovery, Google's July 12 production included an email revealing for the first time that, in ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████. *Id*. at 3-5. Through conferences between counsel and two additional late document productions by Google, Singular has learned the following facts, among others, which require significant additional discovery concerning the true facts of this case and Google's non-compliance with its discovery obligations:

- On February 10, 2020, ████████████████████████████████████████████ ██████████████████████████████ Google has refused to confirm that all responsive non-privileged documents from that collection have been produced;

- On July 10, 2023, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (the "Accused Products") who previously testified that ███████████████████████████████ ████████████████████ and ██████████████████████████

- The withheld email from ████████████████████████████████████████ which establishes a direct link between ████████████████████████████ ████████████████████████████ was only produced by Google after Singular demanded all forwards to and replies of the ███████████ and filed its Motion to Reopen Discovery;

- On July 26, 2023, Google produced to Singular further additional documents that had not been produced, including 18 emails that would have hit on the search terms Google applied to conduct its search for documents. Google has not explained why or how they were omitted from prior productions;

- One of the emails in the July 26 production that hit on search terms, but was never produced, is ████████████████████████ Singular deposed in this case and

includes ███████████████████████████████████
██████████████████████████████

- In another email included in the July 26 production, a ███████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

- Google and its counsel are aware of and have reviewed additional responsive, non-
privileged documents, but did not produce them if they did not hit on search terms or
if they were not sourced from one of the eleven Google custodians Singular identified
pursuant to the ESI Order, Dkt. No. 68.

Google's late productions, its counsel's reliance on improper privilege assertions to avoid
answering even the most basic questions about Google's search for responsive documents, and the
faulty judgment applied by Google and its counsel to withhold responsive documents, all confirm
that the only way for Singular to investigate Google's compliance with its discovery obligations
is a Rule 30(b)(6) deposition of Google. The late productions and the facts they reveal also require
the continued ██████████████████, which the Court has already approved, as well as the
reopening of the depositions of ██████████████████████████████.

In order to ensure the trial in this matter is on the true facts and not an incomplete record
manufactured by Google, the Court should also order Google to supplement its document
production prior to the four requested depositions. Rule 26(e)(1)(A) requires a party to supplement
its discovery responses "if the party learns that in some material respect the disclosure or response
is incomplete or incorrect . . .." In this case, Google should have known its production would be
incomplete before it ever produced a single document. Specifically, Google insisted on search
terms that it knew or should have known would not capture one of the most relevant, probative
emails of which ██████████████████████████████ – and has continued
to rely on those narrow terms as a justification for to continuing to withhold responsive documents.
But as courts have made clear, search terms – whether negotiated between the parties or otherwise

– do not replace a party's obligation to conduct a reasonably diligent search as required under Rules 26 and 34.

The Court should order Google to produce all non-privileged documents that Google admits hit on the search term "Bates" (7,817 document families) and any and all responsive, non-privileged documents Google and/or its counsel has reviewed or is otherwise aware of, regardless of whether those documents hit on search terms or were sourced from one of the eleven Google custodians. Without those documents, the four requested depositions, and any other additional discovery to which newly discovered information may lead, it will be impossible to conduct a fair trial.

## II.   FACTUAL BACKGROUND

### A.  Google's Collection and Late Production of the █████████.

From the very beginning of this case, Google understood that Dr. Dean's awareness of Singular's invention was of central importance. Paragraph 22 of the original Complaint, filed on December 20, 2019, alleges that Dr. Dean had reviewed presentations by Dr. Bates, including one in September 2013, before his involvement in developing the Accused Products, and compares the content of Dr. Bates' presentations to information provided by Dr. Dean about the Accused Products. Dkt. No. 1, Compl. at ¶ 22.



On ███████████████ before Singular served its first documents requests on ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ Ex. A, July 27, 2023 Letter from C. Sun (counsel to Google) to K. Timbers (counsel to Singular) (the "Keker Van Nest Letter") at Response Nos. 1-4.

On July 10, 2020, Singular served requests for production of documents under Rule 34, which included the following requests, to which ████████████ is responsive:

12.    All documents and things relating to Singular, its products, services, research, technology, and intellectual property.

101.    All documents and things authored by Jeffrey Dean referring or relating to inventor Joseph Bates or Singular, including internal communications, documents, presentations, reports, investigations, emails, memoranda, or any other document authored by Jeffrey Dean referring or relating to inventor Joseph Bates or Singular.

Ex. B, Request for Production. However, despite Google's and its counsel's awareness of ████

████ Google did not produce █████████████████████, two years after fact discovery

closed and just two months prior to trial. Google now takes the position that it was not required to

produce any email (including the ██████████) that does not contain the combination of search

terms Google devised and applied to the ESI of the custodians Singular identified pursuant to the

ESI Order. Dkt. No. 68.

**B. Google's Withholding and Subsequent Production of Evidence Linking ████████**
████████████████████████████

Just three weeks ago, on July 10, 2023, ████████████████████████

██████████████ an additional collection of documents that Google had yet to produce. Ex. A,

Keker Van Nest Letter at 9 (stating the documents at GOOG-SING-00212338-43 ████████

███████████████); *id*. at 11 (stating that documents at GOOG-SING-00242344-

80 ████████████████████████). Those documents included emails by which

another Google employee, ████████████████████████████████

████████████████████████████████ *See* Ex. C,

███████. Google included ████████████ in its July 12, 2023 production along with the

████████████████████████████████

██████████, *see* Ex. D, which also had never been produced.

However, the collection of documents ████████████████████████████████ █████████████████ also included a forward of █████████████ which Google and its counsel withheld from its July 12 production. More specifically, ██████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████ and the email address for ████ ██████████████████████████████ Ex. E, █████████ Three minutes later, after receiving a ███████████████████████████████████████████████████████████████████████ list, █████████ removed that email address and re-circulated ██████████████ this time adding Google engineers ███████████████████████████████:

Ex. F, █████████ The █████████establishes that ██████████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████

███████████████████████ *See* Ex. G at Response 2 (stating that ████████████████

launched in █████████████).

As Google explained in its interrogatory answers, ██████████ was a "key member" of the

███████████████████ that participated on a project named ████████████████. Ex. G, Google's

Sixth Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1-

10) at Response No. 2. Following some early work, the █████████ team pivoted to developing

an Application Specific Integrated Circuit (ASIC). █████████worked on the new project, which

was called █████ *Id*. █████████████████████████ designed the first ASIC, called ████

(a.k.a TPUv1), and went on to design and build the Accused Products, ████████ (a.k.a. TPUv2) and

████████ (a.k.a. TPUv3). *Id*. █████████ participated in the architectural design of the ████

chip and, when Google began the actual implementation of the ████████chip, he was responsible

for the implementation and the design of the ████████████, which subsumes in its entirety the

circuitry Singular relies upon for its infringement case. Ex. H, █████████ at 10:3-15.

At his July 14, 2021 deposition, counsel asked ██████████ point-blank: █████████████████

██████████████████████████████ answered: ██████████ *Id*. at 137:18-20. Of course,

Google had failed as of that date to produce ████████████, which was in █████████████████

possession, so Singular was unable to question ██████████ about whether he had received it, not to

mention the █████████████, which showed that he did.[1]

███████████ is an engineer at Google who other Google employees have referred to as one

of █████████████████ and to whom █████████ reported while working on the █████████████

---

[1] ████████████████and is no longer employed at Google. *Id*. at 6:18-23 (explaining that he was on
leave pending his retirement). Should the Court grant Singular leave to depose █████████████, it may
be necessary to subpoena him at his home in Minnesota, unless Google can secure his appearance
without the need for formal process.

*See* Ex. I, February 2017 Email from  to Dr. Bates (introducing Dr. Bates to ▮▮▮▮▮ and describing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. J, ▮▮▮▮▮ at 27-28 (explaining that the TPUv1 (▮▮▮▮) team and ▮▮▮▮▮ reported to him and that ▮▮▮▮▮ also worked on the design and development of the TPUv2 (i.e. ▮▮▮▮) and TPUv3 (i.e. ▮▮▮▮)).

At the status conference the Court held on July 18, 2023, Google's counsel advised that when he saw ▮▮▮▮▮ "recently in connection with trial prep, I felt in fairness it should be produced, and I asked the team to produce it." Ex. K, Status Conference Tr. at 17. However, Google's counsel withheld ▮▮▮▮▮, also in counsel's possession at the time, and only produced it after Singular demanded any replies or forwards of ▮▮▮▮▮ and filed its Motion to Reopen Discovery. *See* Dkt. No. 548 at 10.

During a telephone conference on July 26, 2023, Singular's counsel asked Google's counsel to describe the steps Google took to locate replies and forwards of ▮▮▮▮▮ and more specifically, what steps were taken to locate a copy of the email or any reply or forward of the email in the email files of ▮▮▮▮▮, both of whom Singular identified as a custodian pursuant to the ESI Order and whose files Google is obligated to preserve pending the conclusion of this litigation. Dkt. No. 68. Google's counsel advised that language from ▮▮▮▮▮ was used to search for evidence of the email in the email files of both ▮▮▮▮▮ but would not disclose the search terms used. According to counsel, Google could not locate any evidence of ▮▮▮▮▮ in those files. Throughout Google's counsel's July 27, 2023 letter, Google's counsel repeatedly states that Google and/or its counsel conducted a "reasonable review" or "reasonable and diligent" searches and inquires but fails to provide even basic factual information that would allow Singular and its counsel to test whether

7

Google and its counsel were reasonable or diligent. *See e.g.*, Ex. A, Keker Van Nest Letter at Response Nos. 1, 8, 11, 13, 14, and 18.

    C.  **Google's Late Production of Additional Email Evidence Concerning** ██████████ **Dr. Bates' Invention and Other Documents That Hit on Search Terms But Were Nonetheless Not Produced Until Now.**

        On July 26, 2023, Google's slow pre-trial drip of relevant, responsive documents continued when it made an additional production of documents. That third late production includes 23 emails, 18 of which include one or more of the search terms Google says it applied in its search for documents.[2] Ex. L, July 26 Production (GOOG-SING-00242381-435). Some of the emails were between ████████████████. *See e.g.*, *id*. at GOOG-SING-00242383-96; GOOG-SING-00242399-404. In another email, ████████████████ forwards an email between ████████████████████████████████████████████ *Id*. That email includes ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████ Ex. L at GOOG-SING-00242405. Yet Google had not produced it despite the fact that the email includes Dr. Bates' email address, which was one of Google's search terms.

        The July 26 production also includes a December 10, 2015 email from a ████████████ ████████████████ which, like the rest of the documents in that production, had not been produced before. In that email, ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[2] Singular suspects, but has not confirmed, that the documents produced on July 26, 2023 were also in counsel's possession when it made the July 12, 2023 production. As explained below, should the Court allow a Rule 30(b)(6) deposition of Google, Singular will address that issue at the deposition.

that ██████████████████████████████████████████████████████

██████████████████████████ *Id*. at GOOG-SING-00242381.

The July 26 production includes ██████████████████████, who was out of the office,

*see id*. at GOOG-SING-00242381, but does not include any additional response. It is not clear

what, if any, search Google conducted to determine whether ████████████████████

████████

### D. Information Learned Through the Meet and Confer Process and Google's Improper Assertions of the Attorney-Client Privilege and Work Product Doctrine.

As explained in Singular's Unopposed Motion to Continue the Trial, Dkt. No. 558,

following the July 18 status conference, the Parties followed the Court's instructions and

conducted three conferences to meet and confer in an attempt to avoid the need for a Rule 30(b)(6)

deposition of Google. *See* Ex. K, Status Conference. Tr. at 21-22.

At the first conference on July 20, Google's counsel objected repeatedly to factual

questions about "how the documents were searched for," "how they were collected," and otherwise

"what happened." After that conference, counsel for Singular provided counsel for Google with

extensive caselaw showing that facts concerning a party's search for responsive and discoverable

documents are not privileged. Ex. M, July 24, 2023 Email. Yet in a subsequent conference on July

26 counsel again refused on the basis of "attorney-client" and "work-product" to provide any

substantive response to questions such as: ███████████████████████████

███████████ what other documents that person provided to outside counsel at that time; who

provided the other responsive documents to outside counsel; and what search terms were used to

locate any replies to, or forwards of, █████████ However, counsel did disclose that even as

of today, outside counsel has not reviewed the documents they have in their possession to

determine whether they include unproduced responsive and discoverable documents —

notwithstanding that it is now undisputed that the search terms applied were inadequate to hit these emails.

At the July 18 conference and during the meet and confer process, Google's counsel would not explain the omission of ████████ and other relevant documents recently produced from Google's prior productions, other than repeatedly justifying the non-production of responsive documents on the grounds that they did not hit on the applied search terms. *See* Ex. K, Status Conference Tr. at 17-18. The negotiation of the search terms derived from the ESI Order entered on August 4, 2020. Dkt. No. 68. The ESI Order provides that "in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, [the parties] will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery." *Id*. at ¶ 4(a)). Nothing in the ESI Order limits the universe of discoverable documents to those recovered through "search terms." *See generally id*. The purpose of collaborating on "methods to search ESI" was to *assist* in the fulfillment of the parties' discovery obligations, not to restrict them. Google confirmed as much during the search-term negotiation process, stating in a letter to Singular's counsel: "Google . . . will not treat search term hits as a substitute for relevance and responsiveness . . .." Ex. N, January 11, 2021 Letter from Keker Van Nest to Prince Lobel.

Further, the search terms came from Google, the party in the best position to know what terms would hit relevant documents. On October 20, 2020, Singular requested that Google run the search terms "Singular OR Bates OR Joe" on the ESI held by eleven identified Google custodians. Ex. O, Plaintiff's First Request for Email Production. Such a search would have captured both ██ ████████████████████. However, on November 11, 2020, Google informed Singular that counsel had "tested the proposed search strings" and they yielded "an inordinate amount of

irrelevant and non-responsive material." Ex. P, Nov. 11, 2020 Letter. On January 11, 2021, at Singular's request, Google broke out the results of its testing of different terms and reported that searching for "Bates" led to 7,817 responsive electronic messaging strings (or "family groups"). Ex. N, January 11, 2021 Letter. To avoid further delay of ESI discovery, on January 13, 2021, Singular agreed to Google's proposed search terms, which confined the search of "Bates" to the appearance of that name combined with other words. *See* Ex. N, January 11, 2021 Letter (listing the modified search terms that Google ultimately applied in its search for responsive ESI).

Finally, based on representations by Google's counsel, it appears that Google and its counsel are aware of and reviewed relevant responsive documents concerning Dr. Bates and Singular but have not produced them if (a) they did not hit on the search terms, or (b) they were not sourced from one of the eleven Google custodians. For example, during the conferences between counsel, Google's counsel explained that they have only produced documents provided by Google if they were from one of the eleven Google custodians. If a document was relevant and responsive but did not originate from the files of one of the custodians, Google did not produce it. Counsel later confirmed in writing that Google and its counsel are aware of relevant, responsive documents that have not been produced. Specifically, counsel responded in the affirmative to the following questions:

- "Are there any other non-privileged documents provided to counsel (at any time) that were not produced?"; and

- "Are there any other non-privileged documents of which counsel is or was aware (at any time) that were not produced?"

Ex. A, Keker Van Nest Letter at Response Nos. 20 and 21.

## III.   ARGUMENT

### A. The Court Should Order Google to Submit to a Rule 30(B)(6) Deposition Concerning Its Search for Responsive Documents, Regardless of Its Meritless Claims of "Privilege."

11

In its Motion to Reopen Discovery, Singular requested leave to conduct a Rule 30(b)(6) deposition of Google concerning Google's search for, collection and production of relevant documents and information. Dkt. No. 548 at 8. Singular has followed the Court's instructions and conferred in a good faith attempt to obtain the information it requires without the need for a deposition. However, Google's unwillingness to provide relevant information, and its improper assertions of the attorney-client and work product privileges to avoid answering basic factual questions about the steps it took to satisfy its obligations under Rules 26 and 34, make it impossible for Singular to obtain this information and documents without a deposition. Indeed, the information Google has provided through counsel and its additional productions on July 17 and July 26 have only raised more questions.

By way of example, the fact that ███████████████████████████ ███████████ relevant, responsive documents as recently as July 10, 2023, suggests that ████████████████████████████████████████████ ██████████ Singular is entitled to know the steps Google has taken to locate responsive documents before, during and after fact discovery and what relevant, responsive documents Google has reviewed or of which Google is otherwise aware. That information is not privileged. *Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *4 (S.D. Ohio Nov. 15, 2013) ("[T]here is a vast difference between describing, factually, what a party has done to comply with a document request and revealing discussions between counsel and the client about that process."); *Vasoli v. Yards Brewing Co., LLC*, 2021 WL 5045920, at *2 (E.D. Pa. Nov. 1, 2021) (the steps used to identify responsive documents "go[] to the underlying facts of what documents are responsive to Plaintiff's document request.").

The July 26 production also establishes that Google's search for and review of responsive documents was, at best, negligent. Eighteen of the 23 emails in that production actually hit on the search terms Google used to search for responsive documents but were not produced until now. Many of them were ██████████████████████████████ *see* Ex. L at GOOG-SING-00242383-96 and GOOG-SING-00242399-404, and another email ██████████ ████████████████████████ *Id.* at GOOG-SING-00242405. Singular is entitled to discover what steps were taken by Google to search for, collect, and review documents for responsiveness. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 1054279, at *4 (D. Kan. Apr. 9, 2007) (allowing Rule 30(b)(6) deposition of search methods used in responding to discovery requests).

It is also necessary for Singular to question Google about the distribution lists to which ██ ████████████████ According to Google's counsel, (a) there is no way for Google to determine who was a member of those lists at the time the email was sent, (b) there is no way for Google to determine who worked on ██████████ for which the distribution lists were created at the time the email was sent,[3] and (3) ██████████████████████ Ex. A, Keker Van Nest Letter at Response No. 8. While ██████████ did not reach ████████████ ████████ then made sure the email went to ██████████████, who presumably were members of the ██████████████. *See* Ex. F, ██████████ ("████████████████ ████████████████████████████████████████████████████"). ██████████ also chose to send that email, which includes ████████████████████ ██████████████████ Singular needs to know whether other Google employees

---

[3] These assertions are belied by the fact that Google was somehow able to identify members of ██████████████ in order to respond to Interrogatory No. 2. Ex. G at Response No. 2.

who ultimately participated in the design and build of the █████████████████████ ██████████████ Singular needs sworn answers as to what, if anything, has been done to identify the members of that distribution list and what more can be done. The information provided to date is not sufficient and Singular should not be required to accept Google's counsel's conclusory assertion that a "reasonable and diligent inquiry" failed to identify the members of ████████ ██████████████████████████ at the time the email was sent. *See* Ex. A, Keker Van Nest Letter at Response No. 8.

Singular also needs answers as to what, if anything, Google has done to locate copies of ███████████ in the email files of other custodians, another topic to which Google's counsel refused to respond despite the fact that the information is not even arguably privileged. For example, according to Google's counsel, Google used search terms to perform searches of the email files of ██████████████, to whom █████████████ Ex. F, ███████████ However, counsel refused to disclose the terms used to conduct that search based on the attorney-client privilege and work product doctrine, which do not apply.  *See e.g.*, *Wildlife Solutions, Inc. v. Reilly*, 2006 WL 8458658, at *4 (D. Mass. Apr. 10, 2006) (ordering defendant to file a written certification "outlining what steps were taken to attempt to locate (responsive) documents."). Singular needs to know exactly what Google did to locate additional copies of ███████████in the files of its custodians. And, if, as counsel advised, the email files of custodians like ███████████ ███████████ do not contain any evidence of █████████████ that will lead to questions as to whether Google has properly preserved the files of its custodians and others likely to have discoverable information.

For all these reasons, Singular requests that this Court order Google to provide a witness to testify about the topics listed on the Rule 30(b)(6) Deposition Notice attached to its Motion to Compel as Exhibit 1.

**B.  The Court Should Order the Depositions of** ██████████████████████████.[4]

Singular should be afforded a reasonable time to take appropriate depositions limited to new information revealed by Google's late production of documents. Singular cannot now anticipate what depositions will be necessary, but they will include at least ████████████ ██████████████ for the same reason the Court has already ordered that it can reopen Dr. Dean's deposition.[5] Both engineers received ████████████████████████████████ one of the designers of the Accused Products and ████████████████████████████" was the engineer assigned to ████████████████████████████████████████████████one month before Google ████████████████████████████████.

Google's failure to timely produce ████████████ and its reluctant, late production of ██ ██████████ deprived Singular of the opportunity to question ██████████████████████ ██████████████████████████████████ that he was not familiar with Dr. Bates.

---

[4] During counsel's July 26 meet and confer, Singular's counsel advised Google's counsel that Singular planned to seek leave to reopen the depositions of ████████████████. Google has not rejected Singular's request to reopen the depositions but suggested that the Parties revisit the issue once the Court rules on what, if any, additional document discovery will be allowed. While Singular does not wish to take the depositions until any additional document discovery is complete, it disagrees that the Court's ruling on document discovery will have any impact on Singular's need to reopen the depositions of ████████████████ and, for that reason, Singular moves to compel those depositions now.

[5] Singular has not had the opportunity to meet and confer with Google concerning the reopening of the depositions of ████████████████████████ who are the sender and recipients of the email included in the email produced for first time on July 26, 2013, in which ████████████████████████████████████████████████ *See* Ex. L. Singular reserves the right to seek leave to reopen those depositions.

If Singular is not allowed to reopen the depositions of these two centrally relevant witnesses, it will be manifestly unfair to Singular and will reward Google's inappropriate behavior. *BRT Mgmt. LLC v. Malden Storage*, LLC, No. CV 17-10005-FDS, 2020 WL 93952, at *2 (D. Mass. Jan. 8, 2020) (holding that where defendant "produced the documents after the close of fact discovery, and in so doing denied plaintiffs any opportunity for follow-on inquiry," not permitting "further discovery would be manifestly unfair to plaintiffs and would reward inappropriate behavior.").

### C. The Court Should Order Google to Produce all Responsive Non-Privileged Documents of which Google or Its Counsel are Aware.

There is no good faith basis to dispute that a party is obligated to produce responsive documents and information of which it is actually aware. The 1993 amendment to Fed. R. Civ. P. 26(e)(1)(A) makes that clear, requiring not just that a party supplement by turning over new evidence, but requiring supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, 626 F. Supp. 3d 478, 498 (D. Mass. 2022) ("[T]here is some authority for the proposition that Rule 26(e) requires a party to turn over not only responsive documents of which it is actually aware, but also documents of which it is reasonably should be aware."). As Wright and Miller puts it: "there is no excuse under the restyled rule for failure to supplement where the information was in the responding party's possession at the time the incomplete response was made." Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2049.1 1993 Expansion of Duty to Supplement or Correct (3d ed.).

As mentioned in Section III.A., above, in addition to the ESI collection and review, it appears ███████████████████████, at various times, selectively searched for and reviewed relevant, responsive documents and █████████████████████████████████

16

████████. However, due to counsel's privilege assertions and refusal to answer questions as to whether those documents have been produced, there is no way to determine whether all responsive documents of which Google and its counsel are aware have been produced. As explained above, counsel's admissions that there are documents that have been provided to counsel that have not been produced, and that counsel is aware of non-privileged documents that have not been produced, establish that Google has improperly withheld relevant, responsive documents. The Court should order Google to review all documents, including, but not limited to ESI, that Google's in-house counsel or outside counsel have reviewed or are aware of, and immediately supplement its production as required by Rule 26(e)(1)(A) by producing all such non-privileged documents and information.

###### D. The Court Should Order Google to Produce All Non-Privileged Electronic Communications Containing the Name "Bates" in the Possession of the Eleven Google Custodians.

Singular requests that the Court order Google to produce all non-privileged documents containing the name "Bates" possessed by the eleven Google custodians. According to Google's counsel, a previous search for such documents resulted in 7,817 responsive electronic messaging strings (or "family groups"). Ex. N, January 11, 2021 Letter. Singular believes, and Google's counsel has admitted during the meet and confer process, these documents are likely to include a significant number of communications concerning Dr. Bates and Singular.

Thus far, Google has raised only one reason for its refusal to produce these documents: the fact that they did not contain search terms. But the inadequacy of those search terms does not relieve Google of its discovery obligations, and certainly offers no excuse to continue to withhold relevant, non-privileged documents.

The Courts recognize that a producing party is "in the better position to identify gaps in the electronic production that resulted from the parties' discovery parameters." *United States v. Fresenius Med. Care Holdings, Inc.*, No. 1:10-CV-1614-AT, 2014 WL 11517841, at *6 (N.D. Ga. May 13, 2014). "The party responsible for production will usually be most familiar with its own records, and therefore will be 'best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'" *L–3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015), quoting Sedona Conference, Sedona Principles at 38 (2d ed.2007); see also *Fresenius Med. Care Holdings, Inc., supra* at *6 ("[T]he requesting party must rely on the producing party's good faith effort to . . . use search terms that are likely to produce a thorough set of relevant documents.")

Accordingly, courts have held that "an ESI protocol and search terms" do not "replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34," but rather "work in tandem" with those obligations. *Raine Grp. LLC v. Reign Cap., LLC*, No. 21CV1898JPCKHP, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022) (emphasis supplied). The producing party must not merely seek agreement on search terms with opposing counsel but must use "search terms <u>it believes</u> are needed to fulfill its obligations under Rule 26." *Id.* "While it is true that parties are generally encouraged to meet and confer on the appropriate search terms to employ for ESI discovery . . . the producing party, even absent agreement or discussion about the appropriate terms, still has an independent obligation to craft search terms to fulfill the requirements of Rules 26 and 34." *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 2023 WL 3495091, at *15 (S.D.N.Y. May 17, 2023).

In addition to Google's independent duty to craft effective search terms based on its superior knowledge of its own documents, Rule 26(e) requires it to "supplement . . . its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete . . . and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Google now knows – and likely has known since before the search terms were negotiated – that its production is incomplete because its search terms failed to capture ████████ ████████████████████ and likely many other emails. "[T]here is no excuse . . . for failure to supplement where the information was in the responding party's possession at the time the incomplete response was made." Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2049.1 1993 Expansion of Duty to Supplement or Correct (3d ed.). Here, Google is refusing to supplement its production notwithstanding the known inadequacy of the search terms it ran. This, at a minimum, violates Fed. R. Civ. P. 26(e). *Red Wolf Energy Trading,* 626 F. Supp. 3d at 498 ("[T]here is some authority for the proposition that Rule 26(e) requires a party to turn over not only responsive documents of which it is actually aware, but also documents of which it reasonably should be aware." *Bartlett v. Mut. Pharm. Co*., No. CIV.A. 08-CV-358-JL, 2009 WL 3614987, at *4 (D.N.H. Nov. 2, 2009); see also *Arthur v. Atkinson Freight Lines Corp*., 164 F.R.D. 19, 20 (S.D.N.Y. 1995) ("[T]he federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably ought to have been aware.").

If Google is not ordered to produce all non-privileged documents that hit on the search term "Bates," the trial in this matter likely will not achieve its truth-seeking function and Google will be rewarded for its gamesmanship and weaponization of the search terms in direct contravention of both the spirit and the letter of Rules 26 and 34. The Court should order Google

to conduct a privilege review of the 7,817 document families that hit on the term "Bates" and to immediately produce all non-privileged documents. Given Google's prior failure to timely produce responsive documents, including documents that hit on the search terms, and the judgment applied by Google and its counsel throughout the discovery process, no documents should be withheld on any non-privilege ground, including responsiveness or relevancy.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Singular respectfully requests that this Court allow its Motion to Compel Deposition and Document Discovery and grant all relief requested in the Motion.

Dated: July 31, 2023                          Respectfully submitted,

<u>/s/ Kevin Gannon</u>
Matthew D. Vella (BBO #660171)
Adam R. Doherty (BBO #669499)
Kevin Gannon (BBO #640931)
Brian Seeve (BBO#670455)
Daniel McGonagle (BBO #690084)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Email: mvella@princelobel.com
Email: adoherty@princelobel.com
Email: kgannon@princelobel.com
Email: bseeve@princelobel.com
Email: dmcgonagle@princelobel.com

Kerry L. Timbers (BBO #552293)
**SUNSTEIN LLP**
100 High Street
Boston, MA 02110
Tel: (617) 443-9292
Email: ktimbers@sunsteinlaw.com

ATTORNEYS FOR THE PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Kevin Gannon*