**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SINGULAR COMPUTING LLC, | |
| Plaintiff, | |
| v. | C.A. No. 1:19-cv-12551-FDS |
| GOOGLE LLC, | Hon. F. Dennis Saylor IV |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO
COMPEL DEPOSITION AND DOCUMENT DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND ......................................................................................3

     A.    *Google's Production of Documents Under the Parties' Agreed ESI Protocol* ..............................................................................................................3

     B.    *Google's Supplemental Productions* .................................................................5

     C.    *Singular's motion to compel* ............................................................................8

     D.    *Google's ongoing collection efforts* ...............................................................11

II.    ARGUMENT ............................................................................................................13

     A.    *Google will produce all responsive, non-privileged documents that Google has identified in targeted searches following production of* █████████ ........13

     B.    *Google does not oppose the additional depositions of* ███████████
          ███████* ........................................................................................................15

     C.    *A 30(b)(6) deposition is unwarranted* .............................................................15

     D.    *All documents hitting on the search term "Bates"* ..........................................17

III.   CONCLUSION .........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bryan Corp. v. Chemwerth, Inc.*,
  296 F.R.D. 31 (D. Mass. 2013)................................................................16

*City of Rockford v. Mallinckrodt ARD Inc.*,
  326 F.R.D. 489 (N.D. Ill. 2018)..............................................................18

*Enslin v. Coca-Cola Co.*,
  2016 WL 7042206 (E.D. Pa. June 8, 2016).............................................18

*Johnson v. L'Oreal USA*,
  2020 WL 5530022 (S.D.N.Y. Sept. 15, 2020)..........................................18

**Rules**

L.R. 7.1(a)(2) ..........................................................................................7

Fed. R. Civ. P. 30(b)(6)...........................................................................2

## I.      INTRODUCTION

This dispute arose after Google voluntarily produced several documents that were not responsive to the parties' agreed ESI search protocols.  After Google did so, and after receiving numerous questions and demands from Singular, Google did a further review to identify and correct any issues in its production.  Following that review, Google will be making a limited supplemental production of: (a) documents that were *not* covered by the parties' agreed search protocols, but that Google is voluntarily producing now to avoid any dispute; and (b) a limited number of documents that were covered by those protocols but inadvertently not produced, for reasons explained below.  Google also does not oppose Singular's request to reopen the depositions—if appropriately limited—of ███████████████████████████, and will also be providing additional information that Singular has requested.  In short, Singular is wrong to accuse Google of acting in bad faith during discovery, as the facts below show, and Google has worked and will continue to work in good faith to resolve any issues.

But several other things should also be clear.  First, Singular has massively exaggerated the importance of the documents in Google's supplemental production.  Those documents are cumulative of large amounts of information already produced in discovery, and none is particularly significant.  Contrary to Singular's assertions, none discuss the allegedly inventive technology at issue in this case, which is a highly specific chip architecture (not general ideas about approximate computing that were already in the public domain at the time in question).  Nor is it new or significant that some of Dr. Bates' ideas about approximate computing were shared with some Google employees.  That subject has already been explored in depth in discovery through multiple documents and witnesses, ███████████████████████ ███████████████████████████, and whom Singular questioned at

length ███████████████████████████████████.  Indeed, all the evidence adduced in this case—including the most important evidence, which is the actual design of the accused products and how they differ from Singular's asserted patent claims— points to a single conclusion: ██████████████████████████████ ███████████████████████████████████████.  So Google went in a different direction.

Second, Singular's requests in its motion either could have been resolved with a good faith meet and confer or are overreaching and inappropriate.  As explained below, Google agrees to several of Singular's requests, and this motion could have been avoided if Singular had disclosed the relief it would seek in advance, instead of refusing to do so and rushing to file this motion.  But Singular's request for a Rule 30(b)(6) deposition on discovery should be denied as unmanageable and unnecessary, especially since Google has answered, and will continue to answer, any legitimate question Singular has.  Nor should Google be required to produce all documents from custodians that contain the term "Bates."  That overbroad request would sweep in massive amounts of confidential but irrelevant information—indeed, Singular declared an analogous request "egregious" when Singular was the producing party.  Accordingly, the parties negotiated and agreed to a narrower term, and Google used that agreed term to perform its searches.  There is no reason to reopen and redo discovery on a large scale now, as Singular demands.

For these reasons, and more discussed below, Singular's motion should be denied.

## II.      FACTUAL BACKGROUND

### A.      *Google's Production of Documents Under the Parties' Agreed ESI Protocol*

On July 30, 2020, the parties stipulated to, and the Court entered, the ESI protocol governing this matter, which instructed them to establish "methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery."  *See* Dkt. No. 68 at 2.  Google and Singular then spent several months in 2020 and early 2021 meeting and conferring over the appropriate custodians and search terms for discovery in this action.  Declaration of Christopher Sun in support of Google's Opposition ("Sun Decl.") ¶ 1.  As in all such negotiations, their goal was *not* to design a process for capturing *all* potentially relevant information.  Rather, it was to discuss, define, and ultimately agree upon a specific set of procedures that would balance each side's legitimate discovery needs against the enormous costs and burden that discovery imposes (totaling, in this case, millions of dollars for Google alone).  *Id*.

For example, in 2020, Google proposed that Singular use the search term "Bates or Singular" (which would hit on every document containing either the word "Bates" or the word "Singular"), as well as numerous other search terms, to identify potentially responsive ESI.  Singular ran the "Bates or Singular" term across the ESI repositories it had collected and reported back to Google that the "Bates or Singular" term alone generated 8,054 hits.  Sun Decl. Ex. A at 4.  Singular then told Google that Google's proposed search terms created hit counts that were "extraordinarily high" and, in particular, Google's request that Singular use the term "Bates or Singular" was "egregious"—in other words, even though Singular is the plaintiff here, Singular contended that it was egregiously unfair for Google to ask Singular to review 8,054 documents containing the term "Bates or Singular" to identify potentially responsive ones to

produce in discovery.  *Id*. at 1.  Singular also noted that "Bates or Singular" did not constitute "searches narrowly tailored to specific issues in this case."  *Id*.  Accordingly, Google agreed to replace the "Bates or Singular" term, and other search terms it had proposed that Singular rejected, with narrower ones in order to reduce the number of documents Singular would need to review and potentially produce.  Sun Decl. ¶ 4.  This compromise did *not* assume that the narrower terms that the parties ultimately agreed to would capture all of the relevant and responsive documents that the broader terms would have—on the contrary, the narrower terms inherently excluded from the scope of discovery ESI that the broader terms would have included, notwithstanding that some excluded ESI may have been relevant and responsive.  Rather, Google agreed to the narrower searches as a compromise to balance Google's legitimate need for discovery against the burden and expense to Singular to provide that discovery.  *Id.*

A similar discussion occurred when Singular proposed that Google use an analogous search term—"Bates"—to search Google's ESI repositories for this case.  Google ran that term (which is a common name) and reported back to Singular that it had generated 7,817 hits.  Sun Decl. Ex. B.  Given that excessive number of hits—effectively the same number as what Singular pronounced "egregious" when Singular was the one who would have to review them— the parties negotiated and ultimately agreed to use a narrower term, which is what Google then used (along with other search terms the parties agreed to) to identify potentially responsive ESI for production.  Sun Decl. ¶ 6.  Thus, Singular has known since 2020 how many documents in Google's ESI repositories for this case hit on the term "Bates," and Singular previously agreed that it was unreasonable to ask Google to review all those documents. Yet Singular now asks the Court to order Google to do the same review that Singular previously agreed need not be done.

This same process of negotiation and compromise led to the parties' agreement in 2020 to search for documents from eleven ESI custodians.  Sun Decl. ¶ 7.  Singular was well aware that more than eleven Google employees worked on TPUs and potentially could have had relevant documents.  But the parties met and conferred extensively, ultimately agreeing on eleven custodians to balance the parties' legitimate need for discovery against the burden and cost of providing it.[1]

After extensive negotiations, and ultimate agreement, on the scope of ESI searching, Google implemented the agreed protocols and produced over 240,000 pages of documents.  Google also put up 16 witnesses for more than 60 hours of depositions.  Sun Decl. ¶ 8.

B.   *Google's Supplemental Productions*

During trial preparation, Google's counsel reviewed ███████████████████

████████████████████████████████████████████ and determined that it

had not been produced.  Sun Decl. ¶ 9.  ████████████ was included in a collection of

documents that Google's Legal Department had sent to Google's outside counsel on February

10, 2020, shortly after the case was filed.  *Id.*  Because it did not hit on the parties' agreed search

terms,[2] it was not collected and produced through the ESI searches done during discovery.  *Id.*



---

[1] Despite this agreement, Singular produced ESI from only one custodian.  Indeed, it was only after the parties negotiated and agreed to mutually collect and search ESI from eleven custodians that Singular informed Google that it would search and produce ESI from only Dr. Bates, and no one else, because all other relevant custodians had left Singular and Singular no longer had ESI for those individuals.  Sun Decl. ¶ 7.

[2] The parties agreed Google would search "Joe Bates" across its custodians.  ████████████ referred to Dr. Bates as "Joseph Bates" and therefore did not hit on this search term or any of the other search terms.  Sun Decl. ¶ 9.

█████████████████████████████████████  *See* Motion ("Mot.") at 5. ███

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████  *Compare* Mot. at 5 █████

████  *with* Appendix Ex. 2 ("'273 Patent") claim 53; Appendix Ex. 3 ("'156 Patent") claim 7;

Dkt. 498 at 11 (Singular arguing in response to Google's motion for summary judgment of patent

ineligibility that the asserted patents claim a "specific solution" for solving the problems that

existed in the prior art, including a "specific" dynamic range, a "specific floor for the error rate,"

a "specific floor on the number of LPHDR execution units that must exceed by at least one

hundred the non-negative integer number of full-precision units").  After reviewing the email

during trial preparation, Google voluntarily produced it on July 12, 2023.  Sun Decl. ¶ 10.

Google also produced several emails from ████████████████████████████████

which also had not hit on ESI search terms and which Google's outside counsel received on July

10, 2023.  *Id*.

On July 14, Singular sent Google a set of demands related to the production, including

requests for all replies to and forwards of ████████████████████████

████████████████  Sun Decl. Ex. C.   Singular also informed Google that the metadata

for ██████████ appeared to be inaccurate, which Google determined was the result of a

technical issue during that production.  Sun Decl. ¶ 12.  The next business day, Google produced

all replies to and forwards of ████████████████████████████████

███████████████████████████████████ with complete and accurate metadata.  *Id.* ¶ 13.

Singular filed its motion to reopen discovery the same day.  Dkt. No. 548.

The Court held a scheduled status conference on July 18, at which it addressed Singular's

motion to reopen discovery.  The Court authorized a deposition of ██████ limited to ██████

██████ and the "penumbra around the email."  Sun Decl. Ex. D at 21:4-14.  The Court also

deferred the question of whether a 30(b)(6) deposition was necessary until the parties could

"mak[e] the best headway [they] can make on that topic voluntarily" through meet and confer

discussions.  *Id*. 22:1-9.

The parties met and conferred between July 20 and July 31.  Sun Decl. ¶ 15.  Following

the initial meet and confer, Singular sent Google a list of questions regarding Google's search

and collection efforts.  Google served fourteen pages of thorough written responses on July 27.

*Id.*  Singular never followed up on Google's July 27 answers with any additional comments or

requests.  *Id*.  In an effort to minimize the issues disputed between the parties, Google also

decided to voluntarily produce additional documents requested by Singular.  *Id.* ¶ 16.

Accordingly, the parties agreed that it would be most efficient to defer reopening any deposition,

including ██████████ until after Google completed its supplemental production.  *Id*.  During the

parties' meet-and-confer discussions, Singular said that it intended to file a motion to compel

discovery.  *Id*. ¶ 17.  Google asked Singular what specific relief Singular would seek in the

motion so Google could tell Singular if it would agree to that relief and thus remove those issues

from dispute.  Notwithstanding the requirements of L.R. 7.1(a)(2), Singular refused to do so,

claiming that a motion to compel was "inevitable" and that Google would learn what specific

relief Singular sought upon reading the motion.  *Id*.  Singular then filed the present motion

without further meet and confer.  Dkt. No. 560.

C.    *Singular's motion to compel*

As discussed below, some of the relief that Singular requests need not have been included in this motion, since Google agrees to several of Singular's requests (and would have told Singular so had it disclosed what relief it wanted).

But Singular's motion dramatically overstates the significance of the documents in Google's supplemental production, which are cumulative of other information produced in discovery and are by no means transformative on any issue.[3]  Google has filed concurrently with this Opposition an Appendix providing relevant context and other information to address Singular's exaggerations.  As a few examples:

- Singular's motion consistently conflates the "patented invention" with general descriptions of "approximate computing" that are not patentable and have only marginal—if any—relevance in this case.  The two patent claims that Singular accuses Google of infringing are directed to a very specific chip architecture— one where, as one key limitation, the number of LPHDR execution units exceeds by at least a hundred the number of single-precision units.  Indeed, Singular itself argued for patent-eligibility purposes that the asserted patents claim a "specific solution" with a "specific" dynamic range requirement and a "specific floor for the error rate," as well as a "specific floor on the number of LPHDR execution units" (and the Court found the claims patent eligible based on these arguments).  Dkt. 498 at 11.  The PTAB has already ruled that Singular's claims directed to more general concepts of approximate computing are invalid because their subject

---

[3] Further, to the extent Singular's motion suggests that Google or its counsel manipulated search terms or otherwise *intentionally* contrived to withhold important information, its assertions are categorically false, as the record should make clear.

matter was already in the public domain when Dr. Bates alleges he invented it, and no such claims are asserted here.  In truth, ██████████████████████ ████████████████████████████████████████████████████ ██████████████ nor anything else in Google's supplemental production relates to the asserted claims.

- Singular's motion falsely suggests that the fact that Dr. Bates' general discussions of approximate computing were shared with Google employees is groundbreaking new information.  In reality, that subject has already been explored in depth in discovery.  For example, Dr. Bates gave a presentation at Google in September 2013.  Google produced documents ████████████████ (and of course Singular already knew about it) and Singular has fully explored it in depositions. Nor is it significant or new that ██████████████████████████ ████████████████████████████████████████ For example, ████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ in January 2014.  Google produced that ██████████████████████ ████████████████████████████████████████ in his deposition.

- Singular mischaracterizes ██████████████ as containing ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████



*See* Sun Decl. Ex. E at 1

. Singular questioned                         in his deposition.

*See* Sun Decl. ¶ 23, Ex. 5 at 204:22-206:7.

- Singular's motion misstates and exaggerates

  role and importance to the issues in this case.  Singular describes them as

                                                        (Mot. at 5.)  But as

  Singular knows,

                              Sun Decl. ¶ 28, Ex. 10 at 15:9-11. (And, in any

  event,

                      And while

                              Sun Decl. ¶ 29, Ex. 11 at 129:2-13, 137:8-16.  As noted above,

          already testified at length about



. The fact ███████████████████████████

███████████████████████████████████████████

██████████████████████ is irrelevant to any issue in this case.

The foregoing are merely examples of Singular's exaggerations.  The accompanying Appendix provides additional context and explanation addressing Singular's claims.

D.    *Google's ongoing collection efforts*

Concurrently with the parties' meet and confer discussions, Google re-reviewed aspects of its document production process to identify and cure any issues.  Google has completed its review and is preparing to serve a supplemental production consisting of the following categories of documents:

i.    All non-privileged documents that Google's in-house counsel sent to outside counsel on February 10, 2020.  While Google believes that there are strong bases to object to doing so where the documents are not from the agreed custodians or otherwise included in the mutually negotiated ESI scope, it is doing so voluntarily to remove an issue from dispute.  This limited supplemental production will consist of documents that were not previously produced. These documents are cumulative of documents that were produced in the normal course of discovery and none of them is particularly significant.[4]

---

[4] Singular is also incorrect in asserting that Google previously withheld these (or any) documents from production because they were somehow harmful to Google's defense.  For example, in one of the documents in this supplemental production, ████████████████████████████████ ███████████████████████████████ Google made its document production in this case by following the discovery protocols that the parties negotiated and mutually agreed to.

ii.   Documents inadvertently omitted from Google's original production.  Google

determined that the documents it has produced (and will produce) were not

previously produced during discovery for one of four reasons: (1) it was not from

the files of a designated custodian, (2) it did not hit on the parties' agreed-upon

search terms, ██████████████████████████████████████

███████████████████████████████████████. With

respect to the fourth reason, ████████████████████████

████████████████████████████████.[5]

This occurred because ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████   from previous productions.

In addition to producing these documents, Google will provide Singular with the current

members of ████████████████████████████████████████████

████   who joined those groups before September 11, 2013.  Singular previously requested historic

membership data for these electronic distribution lists so that it could determine who received ████

████   email in September 2013, and Google explained that it does not retain such information.

However, Google can cull the current members of each list by the date they joined and determine

which Google employees currently have ████████████████████████████

---

[5] For example, several of the documents included in this supplemental production consist of ████████████████████████████████████████████████ ████████████████████   Google will nonetheless produce these documents, and all other non-privileged documents that ████████████████████   on February 10, 2020 that were not previously produced, for the sake of completeness.

████████, which will provide a partial list of individuals who were members of the ████

████████████████████████████████████████████████████ in September 2013.

## II.   ARGUMENT

Singular's motion demands the following discovery: (1) a 30(b)(6) deposition concerning Google's search for responsive documents; (2) production of "all responsive non-privileged documents of which Google or its counsel are aware"; (3) depositions of ████████████████

████████████; and (4) production of nearly 8,000 documents from Google custodians that hit on the search term "Bates," regardless of their responsiveness.  Mot. at 2-3.

Motion practice on these issues was unnecessary.  The parties' efforts to resolve their dispute voluntarily did not stall—Singular cut them off.  Moreover, Google has undertaken an extensive investigation, is in the process of completing a second supplemental production, and is willing to provide additional information regarding the steps it took to search for and collect documents.  Had Singular not abandoned the meet and confer process, it would not have burdened the Court with several requests that Google does not oppose, as explained below. However, a 30(b)(6) deposition is unnecessary given Google's willingness to voluntarily provide information regarding its collection efforts, and it would also be unmanageable.  Likewise, Google opposes producing nearly 8,000 documents merely because they contain the word "Bates," which the parties have long agreed lies outside the scope of ESI production.

A.   *Google will produce all responsive, non-privileged documents that Google has*

---

[6] Google will provide Singular with this partial list of individuals who were members of the ████, despite the fact that ████████████████████████████████████████  *See* Appendix at 3.

*identified in targeted searches following production of* ████████

Singular's request for "all [r]esponsive [n]on-[p]rivileged documents of which Google or its counsel [is] aware" is prohibitively vague and goes far beyond the scope of discovery contemplated in the ESI Order.  Mot. at 16; *see* Dkt. 68 at 2 ("The parties . . . will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.").  Indeed, depending on how the request is construed, it is incredibly overbroad, since under the broadest interpretation, "Google" could be said to be aware of anything that any of its hundreds of thousands of employees knows, which certainly cannot be what Singular intended.

Nonetheless, as noted above, Google has undertaken a reasonable and good faith review of its production, and it will produce all relevant and responsive documents captured by that review, regardless of whether they fall within the agreed discovery protocols.[7]  This forthcoming production will include all non-privileged documents that were not previously produced from the sets of documents sent to Google's outside counsel on February 10, 2020 and July 10, 2023, as well as all relevant, responsive ████████████████████ in Google's previous document productions.  *See* Section II.D., *supra*.  The vast majority of these documents are duplicative of Google's previous productions, and the new material is largely non-substantive.  Indeed, the production contains several of Dr. Bates' communications that *Singular itself* possessed but did not produce.  Sun Decl. ¶ 16

Google has never skirted its discovery obligations.  To suggest otherwise, Singular resorts to misconstruing Google's voluntary responses to Singular's poorly posed questions.  For

---

[7] As noted in Section III.C, below, to address Singular's complaints, Google will also provide Singular with additional details of its post-discovery search process.

example, Singular asserts that Google "confirmed in writing that Google and its counsel are aware of relevant, responsive documents that have not been produced."  Mot. at 11.  But Singular's questions on this subject made no mention of responsiveness at all.  *See id.* ("Are there any other non-privileged documents provided to counsel (at any time) that were not produced?").  Google's affirmative response to this question in no way suggests that it withheld *responsive* documents.  Singular's accusations of gamesmanship are baseless and unproductive, and they ignore the fact that Google voluntarily supplemented its document production with ██ ██ email in the first place.

      B.    *Google does not oppose the additional depositions of* ██████████████

      *As Google* has informed Singular, although Google believes that production of ██████ ██ is not a basis for reopening the depositions of ██████████, Google nonetheless will not oppose reopening these depositions for the limited purpose of questions regarding ████████.  To ensure that these depositions are narrow in scope, Google requests that they be limited to two hours on the record, which should be more than enough time to cover this narrowly defined subject.  *See* Sun Decl. Ex. D at  21:7-8 (noting the Court's statement that a deposition of ██████████████ "is not going to take seven hours or anything close *to it").*

      C.    *A 30(b)(6) deposition is unwarranted*

     Google opposes Singular's request for a 30(b)(6) deposition on Google's search protocols.  A 30(b)(6) deposition would not be productive or efficient given the breadth of topics Singular proposes, which no individual Google employee could reasonably be expected to cover.  *See, e.g.*, Mot. Ex. 1 at 6 ("The Documents Google has produced to Singular.").  Despite the Court's guidance that the parties should meet and confer regarding a 30(b)(6) deposition,

Singular did not wish to discuss its request for a 30(b)(6) deposition during the telephonic meet and confer that preceded Singular's motion, nor did Singular ask any follow-up questions when Google responded to its initial set of questions.  Rather, Singular insisted that motion practice was "inevitable" and rushed into Court before the parties ever reached an actual impasse. Google is willing to provide information and, if necessary, a sworn declaration corroborating the representations counsel has made during the parties' conferences, which should obviate the need for a 30(b)(6) deposition.

 ***Post-discovery searches***: Singular claims that Google has improperly asserted attorney-client and work-product privilege "to avoid answering basic factual questions about steps it took to satisfy its [discovery] obligations."  Mot. at 12.  To be clear, Google does not assert privilege over facts detailing the steps it took to collect, search for, and produce responsive documents as part of the original discovery process.  Singular should already have this information, as the parties engaged in extensive negotiations about the specific search methods and protocols each would use.  Google will also provide Singular with information regarding its document searches and productions after discovery in this matter closed, including information about the steps Google took to search for and produce documents following its production of ███████████ and steps it took to locate email threads inadvertently omitted ████████████████ . However, Singular has also requested information regarding Google's initial, pre-discovery investigation into the case and its preparation for trial, which is privileged.  *See Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 37 (D. Mass. 2013) (holding that because "documents were prepared in order to aid counsel in possible future litigation, they are entitled to protection under the work product doctrine").  For example, Google cannot respond to Singular's questions regarding how ██████████ was initially identified and collected during trial preparation

without revealing attorney work-product.  *See* Mot. Ex. A at 2, 7 (Questions 7, 15, and 16). Google's privilege assertions would apply equally to a 30(b)(6) deposition as they do to Google's written responses.



████████████████ Singular seeks membership records for ██████ ████████████████████████████████████████████████████████████ ████████████████.  Mot. at 13.  Google explained that it does not maintain ██████ ████████████████████████████ and is only able to determine current members. Mot. Ex. A at 3.  A 30(b)(6) deposition would reveal no new information on this topic. However, Google will provide Singular with a ████████████████ that either (1) are current ████████████████████████████████████████ ██████████, or (2) Google determined, after a reasonable search, ████████████████ ████████████████████.  *See supra* pg. 10 n. 6. This information is the most complete list of who received ████████████████████.  A 30(b)(6) deposition will not uncover further information regarding these distribution lists.

D.    *All documents hitting on the search term "Bates"*

The parties agreed long ago to exclude the standalone term "Bates" from both sides' custodial searches because, as Singular itself told Google, that term is "egregious[ly]" broad. Sun Decl. Ex. A.  Despite Singular's acknowledgement that the term is overinclusive, it now seeks production of nearly 8,000 documents hitting on this term *regardless of their responsiveness or relevance*.  This request directly contravenes the Court's directive that supplemental discovery stemming from Google's production of ████████████████ would not be grounds for "a whole other bite at the apple."  Sun Decl. Ex. D at 22:23-25.

Singular asserts that because Google found *and voluntarily produced* a handful of documents, Singular is entitled to thousands of documents that were not captured by agreed-upon search terms and likely have no bearing on this case.  The only justification Singular provides for its position is that the parties' original search terms did not capture ██████████ and therefore must be inadequate.  Mot. at 19.  This argument betrays (or feigns) ignorance regarding the realities of ESI discovery, which are the same now as they were several years ago when Singular agreed through a negotiated process on the exact search terms Google would run on its ESI. "With key word searching (as with any retrieval process), without doubt, relevant documents will be produced, and without doubt, some relevant documents will be missed and not produced."  *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 493 (N.D. Ill. 2018); *see also Johnson v. L'Oreal USA*, No. 18-CV-09786 (LGS), 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020) ("Plaintiff is not entitled to every single document that could possibly have existed.  Discovery must be reasonable, not perfect.").  The fact that the agreed search terms ████████████████████████████ (which Google then voluntarily produced) does not undermine the thoroughness and completeness of Google's collection.  *See Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("There is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files.").  Indeed, many of ████████████████ in Google's forthcoming production, which are in Singular's possession, were not produced by Singular either.  Sun Decl. ¶ 16.  Having failed to produce these documents itself, Singular cannot reasonably claim that Google is to blame for not producing them.

## III.    CONCLUSION

For the foregoing reasons, Google requests that the Court deny Singular's motion to

compel a 30(b)(6) deposition and production of all documents hitting on the search term "Bates."

Singular's remaining demands are moot.

Respectfully submitted,

Dated: August 14, 2023         By:   /s/ Nathan R. Speed
                                      Gregory F. Corbett (BBO #646394)
                                      gcorbett@wolfgreenfield.com
                                      Nathan R. Speed (BBO #670249)
                                      nspeed@wolfgreenfield.com
                                      Elizabeth A. DiMarco (BBO #681921)
                                      edimarco@wolfgreenfield.com
                                      Anant K. Saraswat (BBO #676048)
                                      asaraswat@wolfgreenfield.com
                                      WOLF, GREENFIELD & SACKS, P.C.
                                      600 Atlantic Avenue
                                      Boston, MA 02210
                                      Telephone: (617) 646-8000
                                      Fax: (617) 646-8646

                                      Robert Van Nest (admitted *pro hac vice*)
                                      rvannest@keker.com
                                      Michelle Ybarra (admitted *pro hac vice*)
                                      mybarra@keker.com
                                      Andrew Bruns (admitted *pro hac vice*)
                                      abruns@keker.com
                                      Vishesh Narayen (admitted *pro hac vice*)
                                      vnarayen@keker.com
                                      Christopher S. Sun (admitted *pro hac vice*)
                                      csun@keker.com
                                      Anna Porto (admitted *pro hac vice*)
                                      aporto@keker.com
                                      Deeva Shah (admitted *pro hac vice*)
                                      dshah@keker.com
                                      Stephanie J. Goldberg (admitted *pro hac vice*)
                                      sgoldberg@keker.com
                                      Eugene M. Paige (admitted *pro hac vice*)
                                      epaige@keker.com
                                      Rachael E. Meny (admitted *pro hac vice*)
                                      rmeny@keker.com
                                      Eric K. Phung (admitted *pro hac vice*)
                                      ephung@keker.com

Kaiyi A. Xie (admitted *pro hac vice*)
kxie@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

Michael S. Kwun (admitted *pro hac vice*)
mkwun@kblfirm.com
Asim M. Bhansali (admitted *pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Telephone: (415) 630-2350

Matthias A. Kamber (admitted *pro hac vice*)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

Ginger D. Anders (admitted *pro hac vice*)
Ginger.Anders@mto.com
J. Kain Day (admitted *pro hac vice*)
Kain.Day@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Tel: (202) 220-1100

Jordan D. Segall (admitted *pro hac vice*)
Jordan.Segall@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Tel: (213) 683-9100

*Counsel for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

*/s/ Nathan R. Speed*
Nathan R. Speed