IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC, | |
| Plaintiff, | |
| v. | C.A. No. 1:19-cv-12551-FDS |
| GOOGLE LLC, | Hon. F. Dennis Saylor IV |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S SUR-REPLY TO
SINGULAR'S MOTION TO COMPEL DEPOSITION AND DOCUMENT DISCOVERY**

**TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT......................................................................................................................2

        A.      Google's recent supplementation provides no basis for Singular to modify
                the parties' previous agreement regarding the scope of ESI discovery. ...................2

        B.      Google's transparency about its supplemental productions makes a
                30(b)(6) deposition unnecessary. ..............................................................................5

III.    CONCLUSION...................................................................................................................7

## **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Enslin v. Coca-Cola Co.*,
   No. 2:14-CV-06476, 2016 WL 7042206 (E.D. Pa. June 8, 2016)..........................................3, 5

*Johnson v. L'Oreal USA*,
   No. 18-CV-09786 (LGS), 2020 WL 5530022 (S.D.N.Y. Sept. 15, 2020) ................................3

**Federal Statutes**

Federal Rules of Civil Procedure § 30(b)(6).......................................................................................5

**I.      INTRODUCTION**

Singular's Reply contains several inaccuracies that suggest this discrete and resolvable dispute is larger than it actually is.  First, Singular conflates the dispute over Google's recent supplemental productions with a dispute about Singular's new request to change a long-existing agreement on ESI search terms that the parties negotiated at the outset of discovery.  To be clear, the 7,817 documents that hit on a test search for the term "Bates" that Google conducted during the parties' search term negotiations several years ago have nothing to do with Google's recent supplemental productions.  Google isn't "sitting on" or "cherry picking" from those documents, any more than Singular is "sitting on" thousands of documents that hit on the test search terms that Singular ran during those negotiations and refused to review.  Likewise, Google's recent supplemental productions are not a "subset" of the documents hit by that search term, nor does Google agree that those documents are "relevant and responsive to Singular's discovery requests," as Singular incorrectly asserts.  On the contrary, the "Bates" search term is overbroad and sweeps in large amounts of irrelevant information, which is why the parties agreed years ago <u>not</u> to use the "Bates" search term, but instead to use more narrowly tailored search terms to identify documents that Google reviewed for production.  Google ran those agreed upon search terms years ago and produced documents according to the parties' agreement.  Singular is now trying to leverage this recent dispute about Google's supplemental production to rewrite the parties' prior, carefully negotiated search term agreement (in a way that benefits Singular only) and effectively obtain a do-over of discovery.

Second, a 30(b)(6) deposition is unnecessary given that Google remains forthcoming regarding its document collection and production efforts, despite Singular's continued reluctance to specify what information it seeks before pursuing the Court's intervention.

1

## II.  ARGUMENT

### A.  Google's recent supplementation provides no basis for Singular to modify the parties' previous agreement regarding the scope of ESI discovery.

Singular is attempting to leverage the parties' current dispute about Google's recent supplemental productions to obtain court permission for a fishing expedition for documents it long ago agreed that neither it nor Google would need to review for production. Singular's Reply begins by characterizing Google's recent supplemental production as "a subset of 7,817 un-produced document families" that hit on the search term "Bates." Dkt. 573 ("Reply") at 1 (emphasis in original). Singular also asserts that Google "does not dispute that these documents are relevant and responsive to Singular's discovery requests." *Id.* Both statements are inaccurate.

First, the test search for the term "Bates" that Google conducted as part of the parties' search term negotiations several years ago has nothing to do with Google's recent supplemental productions.[1] In 2021, at Singular's request, Google ran a hit count for the term "Bates" as part of the parties' negotiations over which search terms to use, negotiations during which each party proposed search terms for the other party to test. *See* Dkt. 569 ("Opp.") at 3-4. The parties exchanged search term hit results, then met and conferred to determine the ultimate search terms each would use. In these 2021 negotiations, the parties agreed to exclude the standalone search term "Bates" from Google's searches in favor of narrower, alternative terms that were more likely to return relevant documents. Declaration of Deeva Shah in support of Google's Sur-Reply ("Shah Decl.") Ex. A (Jan. 13, 2021 Email from Ercolini agreeing to "modified search

---

[1] As counsel for Google noted at the August 21 status conference, some of the documents in Google's supplemental productions would be captured by a search for the term "Bates." This is a reflection of the overbreadth of the term, which is why Google objected to it at the outset of discovery, and has no bearing on the relevance of documents responsive to the search.

2

terms"). The negotiations that led to that compromise were a two-way street in which both sides made concessions. Singular similarly conducted test searches for terms proposed by Google, such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which Singular rejected as "wholesale email . . . requests." *See id*. Ex. B (Apr. 6, 2021 Email from Ercolini)[2]. Singular ultimately did not use these proposed terms to collect documents for review because Google agreed to narrower terms after Singular objected. *Id.* Ex. C (May 7, 2021 Email from Porto). These rejected search terms undoubtedly would have captured some relevant documents that Singular never produced in discovery. Indeed, Google's recent supplemental productions include many communications from Dr. Bates that Singular never produced, although they were at one time in Singular's possession.[3] *See* Shah Decl. Exs. D - S.

As Singular is well-aware, this is how discovery works. *See Johnson v. L'Oreal USA*, No. 18-CV-09786 (LGS), 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020) ("Plaintiff is not entitled to every single document that could possibly have existed. Discovery must be reasonable, not perfect."); *Enslin v. Coca-Cola Co*., No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("[T]he Federal Rules of Civil Procedure require only a reasonable search for responsive information pursuant to a reasonably comprehensive search strategy. . . There is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files.") (internal quotations omitted). If Singular were correct that

---

[2] The hit counts for some of the terms about which Singular complained were relatively low. Terms like "▮▮▮▮▮" and "▮▮▮▮▮▮," for example, which Singular rejected, had approximately 2,500 hits. *See* Shah Decl. Ex. B.

[3] Singular has not explained why it failed to produce these communications. Even if they were not captured by the parties' agreed-upon search terms, Singular's own reasoning (which Google disputes) would dictate that they should have been produced anyway. *See* Reply at 4 (parties "must search using terms and custodians that fulfill its discovery obligations based on [its] superior knowledge of its own documents").

3

documents hit by search terms tested during negotiations are automatically relevant and should have been produced (it is not), then Singular itself failed to produce thousands of relevant documents that hit upon test search terms that, like "Bates," Singular refused to review, claiming the search term was too broad.[4]

In order to manufacture a connection between Google's recent supplemental productions and the prior, unrelated search term negotiations, Singular characterizes Google's supplemental productions as a "cherry-pick[ed]" "subset" of the 7,817 "Bates" search hits. *See* Reply at 3-4. This is simply untrue. As Google has explained, its recent supplemental productions include several categories of documents inadvertently excluded from prior productions, none of which are related to documents hit by the "Bates" test search, which the parties agreed to exclude. *See* Opp. at 13-14. Singular is attempting to use Google's good faith efforts to fulfill its discovery obligations to rewrite the parties' carefully negotiated search term agreements made years ago.

Second, Google has never "concede[d]" that documents hitting on the "Bates" search term would be relevant, and the parties have no reason to believe that this would be true for the vast majority of such documents. Indeed, "Bates" was excluded from Google's final set of search terms in favor of more narrowly targeted terms because it was overly broad and would capture too many documents unrelated to this case. The narrower search terms that the parties agreed upon, including but not limited to "█████████████," "█████████," and "(Singular AND Bates)," were geared toward capturing a greater portion of relevant documents within that larger set.[5] The mere fact that some documents were not captured does

---

[4] As Google noted in its Opposition, Singular's search for "Bates OR Singular" turned up 8,054 documents. *See* Opp. Ex. A at 4.

[5] Google also ran the following search, per the Parties' agreement: (joe AND (bates OR singular*)) OR █████████████████ OR █████████ OR (Singular AND Bates) OR (singular /2 computing). *See* Dkt. 561, Ex. N to Gannon Decl. in Support of Plaintiff's Mot.

4

not suggest that the entire set is relevant or needs to be reviewed.  *Enslin*, 2016 WL 7042206, at *3 ("In an era where vast amounts of electronic information is available for review, ... [c]ourts cannot and do not expect that any party can meet a standard of perfection.").

> **B. Google's transparency about its supplemental productions makes a 30(b)(6) deposition unnecessary.**

A 30(b)(6) deposition is unnecessary, as Google has answered and will continue to answer legitimate questions regarding its document collection efforts that do not seek privileged or work product information, despite Singular's repeated failure to tell Google what additional information it actually seeks.

In its Reply, Singular advocates for a Rule 30(b)(6) deposition by mischaracterizing Google's privilege assertions, despite the fact that attorney-client and work-product protections would apply equally to a deposition as to the parties' written correspondence.  Singular claims that Google will only provide information regarding "the original discovery process," insinuating that Google asserts privilege over its more recent document collection efforts in their entirety.  Reply at 2.  That is wrong.  As Google clearly stated in its Opposition, in addition to providing "facts detailing the steps it took to collect, search for, and produce responsive documents as part of the original discovery process," it would also provide "information about the steps [it] took to search for and produce documents following its production of the ███████ and steps it took to locate email threads inadvertently omitted ████████████████████."  Opp. at 16. Google has provided information regarding its supplemental document collections and

---

to Compel  (Jan. 11, 2021 Letter from Rapaport); Shah Decl. Ex. A (Jan. 13, 2021 Email from Ercolini).

productions, but it will not disclose attorney-client communications or attorney work product regarding its initial pre-discovery investigation or its trial preparation.

Next, Singular claims that the information it already possesses regarding the parties' discovery negotiations from late 2020 to early 2021 "do[es] not provide Singular with the information necessary to determine whether Singular has received all the documents it should have during discovery." Reply at 2. But Singular has made no effort in its motion (or in prior meet and confer discussions) to describe the additional "information" it claims to need from Google, instead preferring to keep such information vague as it seeks carte blanche authority to depose Google on a host of overly broad topics, to which no single Google representative could testify.

Finally, Singular lists several topics on which it seeks further information from a 30(b)(6) deponent. Google has already addressed many of these topics, either in its Opposition or in previous correspondence with Singular. As Google noted in its Opposition, Singular did not respond to Google's previous written responses to its questions, but instead prematurely sought relief from the Court. On August 23, Google again requested that Singular provide any "specific questions" regarding Google's productions so that Google could "provide responses and limit the number of issues [the parties] need to address before the Court." *See* Shah Decl. Ex. U. Singular did not respond to that request. So in an effort to move discussions along, Google sent a letter to Singular on August 28 attempting to consolidate and respond to any questions that Singular has claimed are outstanding. *See* Shah Decl. Ex. T. In this 9 page letter, Google addresses: (a) why documents in Google's supplemental productions were not originally produced in discovery (Ex. T at 2); (b) the documents from Google's recent productions that were ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 3-5); (c) the

membership of electronic distribution lists (*Id.* at 5-7); (d) Google's search for the ▮▮▮▮ in the inboxes of ▮▮▮▮ and ▮▮▮▮ (*Id.* at 7); and (e) the search terms Google used to identify replies to and forwards of the ▮▮▮▮ (*Id.* at 7). Google made clear that it wishes to be as transparent as possible, without waiving privilege, and welcomes any follow-up questions Singular has regarding these responses. Singular's meaningful participation in this correspondence will obviate the need for a 30(b)(6) deposition. Moreover, as already noted, unless Singular provides the questions in advance, no 30(b)(6) witness is likely to know the answers to all questions Singular may pose, so responding to written questions is also far more efficient.

### III.  CONCLUSION

For the foregoing reasons, the Court should deny Singular's Motion to Compel.

Respectfully submitted,

Dated: August 28, 2023   By:   */s/ Nathan R. Speed*
Gregory F. Corbett (BBO #646394)
gcorbett@wolfgreenfield.com
Nathan R. Speed (BBO #670249)
nspeed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
edimarco@wolfgreenfield.com
Anant K. Saraswat (BBO #676048)
asaraswat@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Robert Van Nest (admitted *pro hac vice*)
rvannest@keker.com
Michelle Ybarra (admitted *pro hac vice*)
mybarra@keker.com
Andrew Bruns (admitted *pro hac vice*)
abruns@keker.com
Vishesh Narayen (admitted *pro hac vice*)
vnarayen@keker.com

Christopher S. Sun (admitted *pro hac vice*)
csun@keker.com
Anna Porto (admitted *pro hac vice*)
aporto@keker.com
Deeva Shah (admitted *pro hac vice*)
dshah@keker.com
Stephanie J. Goldberg (admitted *pro hac vice*)
sgoldberg@keker.com
Eugene M. Paige (admitted *pro hac vice*)
epaige@keker.com
Rachael E. Meny (admitted *pro hac vice*)
rmeny@keker.com
Eric K. Phung (admitted *pro hac vice*)
ephung@keker.com
Kaiyi A. Xie (admitted *pro hac vice*)
kxie@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

Michael S. Kwun (admitted *pro hac vice*)
mkwun@kblfirm.com
Asim M. Bhansali (admitted *pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Telephone: (415) 630-2350

Matthias A. Kamber (admitted *pro hac vice*)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

Ginger D. Anders (admitted *pro hac vice*)
Ginger.Anders@mto.com
J. Kain Day (admitted *pro hac vice*)
Kain.Day@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Tel: (202) 220-1100

        Jordan D. Segall (admitted *pro hac vice*)
        Jordan.Segall@mto.com
        MUNGER, TOLLES & OLSON LLP
        350 South Grand Avenue, 50th Floor
        Los Angeles, CA 90071-3426
        Tel: (213) 683-9100

        *Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                                */s/ Nathan R. Speed*
                                                                Nathan R. Speed