```
 1                UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MASSACHUSETTS (Boston)

 3                              No. 1:19-cv-12551-FDS

 4

 5    SINGULAR COMPUTING, LLC,
                Plaintiff
 6

 7    vs.

 8

 9    GOOGLE, LLC
                 Defendant
10

11                        * * * * * * * *

12

13

14                        For Hearing Before:
                  Chief Judge F. Dennis Saylor, IV
15

16                        Status Conference

17                      United States District Court
                        District of Massachusetts (Boston.)
18                      One Courthouse Way
                        Boston, Massachusetts 02210
19                      Thursday, August 31, 2023

20

21                        * * * * * * * *

22

23            REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
24                United States District Court
         One Courthouse Way, Room 5510, Boston, MA 02210
25                      bulldog@richromanow.com
```

```
 1                    A P P E A R A N C E S

 2

 3   ADAM R. DOHERTY, ESQ.
        Prince Lobel Tye, LLP
 4      One International Place, Suite 3700
        Boston, MA 02110
 5      (617) 456-8114
        E-mail: Adoherty@princelobel.com
 6   and
     KERRY L. TIMBERS, ESQ.
 7      Sunstein, LLP
        100 High Street
 8      Boston, MA 02110
        (617) 443-9292
 9      Email: Ktimbers@susteinlaw.com
        For Plaintiff
10

11   ROBERT A. VAN NEST, ESQ. (By zoom.)
     CHRISTOPHER S. SUN, ESQ. (By zoom.)
12      Keker, Van Nest & Peters, LLP
        633 Battery Street
13      San Francisco, CA 94111
        (415) 391-5400
14      Email: Rvannest@keker.com
     and
15   NATHAN R. SPEED, ESQ.  (By zoom.)
        Wolf Greenfield & Sacks, PC
16      600 Atlantic Avenue
        Boston, MA 02210
17      (617) 646-8000
        Email: Nspeed@wolfgreenfield.com
18   and
     ASIM M. BHANSALI, ESQ.  (By zoom.)
19      Kwun Bhansali Lazarus, LLP
        555 Montgomery Street, Suite 750
20      San Francisco, CA 94111
        (415) 630-2350
21      Email: Abhansali@kblfirm.com
        For Defendant
22

23

24

25
```

1      P R O C E E D I N G S

2      (Begins, 12:00 p.m.)

3      THE CLERK:  Singular Computing LLC versus Google,

4  LLC, Civil Action 19-12551.  I just would just remind

5  you that photographing and recording and rebroadcasting

6  of this hearing is prohibited and could result in

7  sanction.  Would counsel please identify themselves for

8  the record, starting with the plaintiff.

9      MR. TIMBERS:  Kerry Timbers for plaintiff,

10  Singular.

11      MR. DOHERTY:  Good morning, your Honor, Adam

12  Doherty also for Singular.

13      THE COURT:  Good afternoon.

14      MR. VAN NEST:  Good afternoon, your Honor, Bob Van

15  Nest of Keker, Van Nest & Peters for Google, and I'm

16  joined by Chris Sun from our office, Nathan Speed from

17  Wolf Greenfield, and Asim Bhansali from Kwun Bhansali.

18  We also have two of our client representatives on call

19  too, Jenn Nafish and Matt Hollender.  Good afternoon.

20      THE COURT:  Yes, good afternoon to all.

21      All right.  This is a status conference.  I have

22  pending what was Mr. Van Nest's request to postpone the

23  trial, which I'm going to deny.  I'll return to that

24  topic momentarily.  The various motions concerning

25  expert witnesses which are still pending and I don't

1    think we need to take up -- from my standpoint I don't

2    think we need to take up today.  But we have this

3    ongoing, um, what I'll call a "supplemental discovery

4    dispute" and, um, tell me where things stand from your

5    perspective, Mr. Timbers.

6         MR. TIMBERS:  Thank you, your Honor.

7         So, your Honor, we have received some new

8    information, we received information that certain

9    documents had not been collected on Monday in a letter

10   to us, and then last night at about 6:00 we received 800

11   pages of documents which we've not yet had a chance to

12   review.  And at this point I think our biggest concern,

13   um, maybe a very concrete action item, is the 7800

14   documents that hit on the word "Bates."

15        We believe that already, based upon documents that

16   have recently been produced in the last 7 weeks,

17   documents that are very important, wouldn't hit on that

18   term, and we believe that the requirements of discovery

19   obligations are to have relevant documents be produced

20   even if the search term doesn't hit it.  And so we would

21   ask your Honor to just have them review the documents

22   and see what is there that's relevant.

23        I am aware that in their papers Google has said

24   there's that -- you know large amounts of relevant

25   information, but that's really not the test, the test is

1   is there going to be something relevant?  And we feel

2   that the proof is already in the pudding because we

3   already have documents that are very important and that

4   should be produced.

5        Our concern is and always has been not what

6   mistake was made or blame, but rather can we get some

7   assurance that relevant documents are going to be

8   produced?  And just so we have a fair playing field,

9   that's true on both sides.

10        In the letter that was sent -- also you're asking

11   where are we?  In the letter that we sent on Monday, um,

12   Google raised issues about our production and we are

13   looking at that.  So what's good for the goose is good

14   for the gander, that's fine, um, so, um, that's the

15   issue, but what we really have in front of us is a very

16   specific request for a very specific set of documents.

17        Remember that these are limited to 11 custodians.

18   Jeff Dean is one of them.  Mr. Phelps is another one.

19   And we now have these e-mails that are -- that we think

20   are very important.  So that's what we'd like to focus

21   on at this point.

22        We're not in a position unfortunately to talk

23   about the 800 pages of documents that were produced last

24   night, and so what we think makes sense unfortunately is

25   to have another status conference in about a week or so

1    so that we can see where we are at that point.  But we

2    would ask for a, um, the production of any relevant

3    documents that are not privileged within that group of

4    7800 documents.

5         THE COURT:  All right, let me, um, put a couple of

6    questions, but let me make an observation.

7         The parties have devoted a lot of energy to

8    debating whether or not any of these documents would

9    have been produceable early on either because they were

10   part or not part of the original ESI search protocols or

11   would have been picked up by those protocols or whether

12   they're subject to automatic discovery or should have

13   been produced for some other reason.  I'm not

14   particularly interested in that right now.  We may get

15   there if we talk about sanctions or something down the

16   line.  But right now for me the focus is on ensuring

17   that the production is complete, never mind how we got

18   from here to there.  That's why at this point I am not

19   enthusiastic -- well it's one of the reasons I'm not

20   enthusiastic about ordering a 30(b)(6) deposition.  I

21   just want to be assured or to ensure, um, I should say,

22   um, that all relevant documents have been, um, produced.

23        What about the depositions, is that on hold

24   pending this document production?

25        MR. TIMBERS:  Yes, your Honor, exactly.

1          THE COURT:  Has anything been scheduled or --

2          MR. TIMBERS:  Nothing has been scheduled yet.

3     And, um, the key issue is what documents are going to be

4     produced, et cetera.  So -- and hopefully it's just the

5     witnesses as we've identified.  If there happened to be

6     additional witnesses, then we'd have to talk to Google

7     about that, et cetera.  My guess is we would work that

8     out, all those depositions would be remote and fairly

9     short, so hopefully setting those dates will not be

10    difficult.

11          THE COURT:  Okay.

12          All right, Mr. Van Nest, are you taking the lead

13    here?

14          MR. VAN NEST:  I am, your Honor.  And let me start

15    by thanking your Honor for allowing us to appear

16    virtually today, it makes a big difference.

17          We've had the same focus, your Honor, yes, and

18    we've been working extremely hard to try to get this

19    thing done and put it behind us.  So let me give you a

20    little report.

21          As I promised on the 21st, we did produce about

22    200 documents later that day and those were in the two

23    categories that I mentioned.  One category was documents

24    that we had received from the client at the beginning of

25    the case before discovery started.  We've produced all

1    of those that are not privileged.  The other category

2    were the so-called "last in thread," "earlier in

3    thread."  Our search protocol didn't pick up sometimes

4    some errant snippets, genuinely insignificant, but part

5    of the thread, and we produced those also.

6         On Monday of this week, as Mr. Timbers mentioned,

7    we sent them a lengthy letter answering what we thought

8    they had asked about at the last hearing, providing

9    information about what we had searched and how,

10   providing information about where the documents we had

11   produced came from and all of that.  We invited a meet-

12   and-confer, we invited further questions.  We haven't

13   heard anything on that.

14        Yesterday we produced what I think is our final

15   supplemental production.  It's only 26 documents.  It

16   may be several hundred pages.  But I'll tell your Honor

17   what these are.  There's a few of them that are simply

18   repeat productions, duplicate productions with the data

19   -- the metadata corrected.  There's a handful that were

20   in the last-in-thread, earlier-in-thread category.  And

21   there's about 18 that are essentially third-party

22   produced or generated documents, they're PDFs or

23   Microsoft Office documents that are file types that we

24   typically wouldn't search because the responsiveness

25   rate is so low, but out of an abundance of caution for

1    the custodians, we searched those and produced 18 of

2    those.

3         So yesterday's production, although Mr. Timbers is

4    right, we just got it to them late afternoon, so I don't

5    want to say too much about it before they've reviewed

6    them, but in general they don't have anything to do with

7    Dr. Bates or Singular, they're third-party-produced

8    publications and articles and so on, but they now have

9    those.

10        So we have completed everything we think needs to

11   be done on the document front and as Mr. Timbers

12   mentioned we're waiting to schedule depositions for

13   Dr. Dean and Dr. Louden.  Dr. Phelps is no longer a

14   Google employee, but we certainly don't object to a

15   subpoena to him, we don't control him.

16        We've tried to be extremely transparent in this

17   process.  We've tried to answer questions that arose.

18   We've invited further meet-and-confer and Singular

19   hasn't taken us up on that.

20        With respect to the Bates documents, that really

21   has nothing to do with the supplemental production we're

22   talking about.  I mean that -- both parties rejected

23   using terms like "Bates" or "Singular" to search

24   documents.

25        THE COURT:  Again I'm not concerned about what you

1    agreed to two or three years ago, I want to talk about,

2    you know, making sure that they have everything now.  So

3    --

4         MR. VAN NEST:  Okay, I think they do.  I think

5    they do.  Because we double-checked what we did with

6    respect to the Bates documents.  We faithfully applied

7    the search terms that the parties agreed to and we've

8    produced those.  And since I discovered -- we discovered

9    this Dean e-mail a month ago, we had checked and double-

10   checked everything.  I believe they have everything, um,

11   that we're obligated to produce.  And at this point we

12   don't intend to make any further productions, your

13   Honor, unless you order us to do that.  But I do not

14   think that it's productive to go back over what we did

15   before with respect to the Bates documents just because,

16   as your Honor noted last week, that might be a very

17   time-consuming task.  I don't know.  We haven't reopened

18   that because that really has nothing to do with the

19   supplemental production that we're making now, that's a

20   request to reopen, which I don't think is justified in

21   the circumstances.

22        So our report is we've done the document searching

23   we thought we had to do.  We've complied with our

24   obligations.  We're not intending to make any further

25   production.  When Singular has had a chance to review

1    yesterday's set, which I don't think will take very

2    long, we're prepared to schedule Dr. Dean and Dr. Louden

3    for the supplemental depositions that were agreed to.

4    And we're cooperating on whatever subpoena they want to

5    serve on Dr. Phelps.  That's our report.

6         THE COURT:  So if I hear you correctly you've

7    produced 2, maybe 3, you know, waves of additional

8    documents, um, and that is a completely separate process

9    from the search Google conducted on the word "Bates"

10   that produced 7,817 results?

11        MR. VAN NEST:  That's right, your Honor.

12        THE COURT:  In other words, they may overlap, they

13   may not, but you don't know?

14        MR. VAN NEST:  That's right.

15        THE COURT:  So let me ask.  We have 7800 documents

16   that have the word "Bates."  It's somewhat voluminous,

17   but it's not 7.8 million documents.  If I were to order

18   you to produce them all, a privilege review would have

19   to be conducted, but surely -- surely Google, of all

20   companies, ought to be able to make sure that the right

21   algorithm is in place to do a privilege screening.

22   There could be things that are irrelevant, I suppose, a

23   donation to Bates College or a joke about the Bates

24   Motel or a Bates-stamping of a document or something.

25   But, um, otherwise really how much effort is involved in

1    producing these things?  If they're duplicative,

2    cumulative, so what, isn't that Mr. Timbers's problem?

3    You're just getting a dump on him, let's call it 7,000

4    documents, and it's his problem now to sort through

5    that.

6         Why is it so burdensome to Google?  I'm struggling

7    to understand that.  I mean I --

8         MR. VAN NEST:  Your Honor --

9         THE COURT:  Yes, go ahead.

10        MR. VAN NEST:  I think the, um -- your Honor, I'm

11   not sure, but I can say this.  With 7800 documents, I'm

12   not sure it's quite so easy as you think to screen it

13   for privilege.  I am sure that of that 7800, there are

14   probably several thousand that have absolutely nothing

15   to do with the case.  I understand your Honor's point

16   that that's maybe not my problem, but it could be if

17   they're confidential documents that relate to other

18   people or other third-parties or other confidential

19   activities.  It's not -- I don't think that it's right

20   that I could push a button and turn those out.  Some of

21   those may be completely irrelevant, as you note, but

22   they may not be jokes about the Bates Motel, they might

23   be something that's confidential to another third-party

24   or to Google.  So, no, I just don't think that that

25   could be done quickly or easily.

1          I know we have to search for privilege.  I know we

2     have to search to determine whether they're

3     confidential.  And again I feel as though I've done

4     everything I can -- remember this started with a

5     voluntary production on our part, no one was asking, no

6     one filed a motion, no one did anything, and we produced

7     the document, and because Singular had follow-up

8     questions, et cetera, et cetera, we've done everything

9     that, you know, that they asked for or that we thought

10    was necessary.  So I don't think, um, it's going to be

11    simple.

12          But I haven't asked the question your Honor just

13    asked, which is what is we were ordered to produce all

14    of that stuff?  But I can tell you that I don't think we

15    could simply willy-nilly turn it over, it might impact

16    the confidential -- the confidentiality of other

17    activities within Google or other third-parties.  So I

18    know we have to check that as well.

19          And again, I don't think this is a highly --

20    likely to be a highly-productive effort anyway, because

21    we've agreed on search terms and faithfully complied

22    with that and produced everything that hit the search

23    terms.  And that's probably many documents within the

24    7800.  But I just don't see this as a productive

25    exercise and I don't think, your Honor, that it would be

1    quick or easy.

2          THE COURT:  Do you want to respond to that,

3    Mr. Timbers?

4          MR. TIMBERS:  Yes, your Honor.

5          It's really a three-step process.  One is are they

6    relevant?  If they're not relevant, you don't have to do

7    anything else, throw them away, right?

8          THE COURT:  Well you said you wanted everything?

9          MR. TIMBERS:  Well we want everything that relates

10   to -- your comment about the Bates Motel is totally

11   correct.  If it's not about Joe Bates or Singular, it's

12   not relevant to the case, and if that's in there, nobody

13   has to look at it.  And we're talking about is this

14   productive, right?

15         So all we're asking is, is there something

16   relevant in there?  If it's irrelevant, no more work is

17   needed.  If it's relevant, the work is worth it because

18   it's relevant.

19         Now we can easily agree, carte blanche, at least

20   at the beginning or for good that it's all confidential

21   attorney-eyes only.  We can get rid of that

22   confidentiality review.  Those things inside are going

23   to be confidential.  It's not a problem.  And then

24   privilege review?  If you're reviewing something for

25   privilege, you've already decided it's relevant.  So I

1   think it's important to split this up into "I'm culling

2   to separate the wheat from the chaff," as we always do,

3   but when you've got the wheat, then the rest of it is

4   done and is appropriate.

5        So that's -- that's, um -- we don't know what's in

6   there but we do know that some very important documents

7   hit on the word "Bates," so we know there's overlap.

8   The Jeff Dean e-mail mentions "Bates" and so -- and his

9   forward to Phelps mentions "Bates."  So we know that

10  there's overlap.  So it's not a fishing expedition, it's

11  likely -- very likely there's important stuff there.

12  But importance isn't the test.

13       MR. VAN NEST:  Your Honor, if I could respond to

14  that?

15       THE COURT:  Yes.

16       MR. VAN NEST:  Number 1, I won't bother the Court

17  with this point much, but the documents that have been

18  produced don't change a thing in terms of a case

19  narrative or the evidence, that's for sure.  But we

20  already did what Mr. Timbers just suggested we do.  In

21  other words, if the point is what's in here that's

22  relevant?  We already, in conjunction with the

23  plaintiffs, did search these 7800 using search terms

24  somewhat narrower than "Bates" and "Singular," not a

25  lot, and produced everything that wasn't privileged

1    within that set.  So if the task is to produce what's

2    relevant, unless you're going to review every single one

3    of the 7800 documents, which I don't think anyone is

4    suggesting we do, you're going to run search terms

5    against them, and we did that in agreement with the

6    plaintiff and produced what was generated by that.  It

7    would be doing the same thing again.  But we already

8    know we did that and we did it correctly.  And so I'm

9    not sure really what is -- what is being requested.  I

10   thought your Honor was suggesting we just dump the whole

11   7800 on them after doing a privilege review and I don't

12   think that's practical.

13        And if what Mr. Timbers is saying, and I think he

14   is, all we want is anything relevant out of there, well

15   I think he has that already.  But the way you would

16   determine it is applying a search term in addition to

17   "Bates" or "Singular," which we already agreed on and

18   did.

19        MR. TIMBERS:  You'd have to --

20        THE COURT:  All right, here's what I'm going to

21   do.  I'm going to -- I would like assurances that there

22   isn't anything in those 7800 documents, um, and I think

23   the sensible thing to do is they have been searched

24   according to the search terms that were developed at the

25   beginning, maybe those were too narrow or were not

1    properly framed, who knows.  But I want you to meet and

2    confer and see if you can agree on some reasonable set

3    of search terms that would ensure there isn't anything

4    in there that didn't get picked up on the first serve.

5    And when I say "reasonable," I mean "Joe Joseph Bates,"

6    "Bates Singular," "LPDHR," if I'm remembering the

7    acronym correctly, you know whatever it is.  Just some

8    reasonable subset, it may not be perfect, but it would

9    have -- let's call it a 99 percent probability that if

10   there was a relevant document in there, it would be

11   picked up.  And, um, I think that's an exercise worth

12   doing.  That presumably would narrow this considerably

13   and I think that's worthwhile.

14        And never mind what you agreed upon before, there

15   obviously was some imperfection in it.  Why don't you

16   see if you can't do that and see what that number looks

17   like and then we can take it from there.  If it's 25

18   documents, it's not a big deal.  If it's 16, you've only

19   eliminated one document and maybe we need a different

20   plan.  But I don't know.

21        MR. VAN NEST:  Thank you, your Honor, that's a

22   good point.  We can carry that out.  Thank you.

23        THE COURT:  All right.

24        In the meantime, um, Mr. Timbers, enjoy your Labor

25   Day weekend reviewing all these documents and why don't

1     yes reconvene in a week or 10 days and see where we are.

2          MR. TIMBERS:  Thank you, your Honor.

3          THE COURT:  Before I forget the point, let me

4     return to the point of why I'm not postponing the trial.

5     The trial was originally set for September 11th.  I

6     swore in blood and on my mother's grave that I was not

7     going to postpone it, I relented and granted a 4-month

8     continuance.

9          I recognize the work that goes into trying a

10    complex case, I myself did it for many years, um, as

11    lead counsel as well as more junior roles in the early

12    part of my career.  I recognize the human cost that goes

13    into all of this.  As an aside, my experience, a lot of

14    that is not really necessary and merely derives from the

15    insecurity of counsel really more than legitimate needs,

16    so putting that aside, I do recognize the human cost

17    that any capable lawyer is going to, um, pay to get

18    really any case ready for trial, but particularly a

19    complex one.  And for what's it's worth, I don't think

20    there's any judge in the United States that's more

21    sympathetic to, um, trying to avoid the demands on

22    people's personal lives and respecting vacations and,

23    um, family needs and all of that.

24          Having said all of that, the fact is I gave you 4

25    extra months, not 4 fewer months.  It still, um, permits

```
 1    6 or 7 days for final logistics before the trial starts.
 2    Even if people take time off for Christmas and New
 3    Year's, um, there's a lot of work that can be done now.
 4    There's a lot of lawyers involved in this case.  I know
 5    it's not as simple as that, but lead counsel needs to
 6    have a finger, if not a whole hand, wrist, and arm in
 7    every pie, but still I gave you 4 extra months.  And I
 8    think under the circumstances you all can get it done
 9    without, um, making all of the people junior to you
10    miserable.  And so January 8th it is, it fits best with
11    my schedule, and we impanel in this court on Mondays
12    typically.
13         I suppose I should add there that sometimes some
14    -- if we do have a lot of impanelments on one day,
15    sometimes things are bumped to Tuesday because of the
16    complexity of impanelment.  Typically civil cases are
17    not bumped, but it's at least a possibility that somehow
18    we'd wind up impaneling the next day, but I don't know
19    that yet and won't for sometime.
20         So January 8th it is.  And, um, I recognize and
21    respect what you're doing and hope you have a good
22    holiday, not just Christmas and New Year's, but the one
23    coming up.
24         And, um, let's reconvene, Matt, um -- at about
25    September 11th?
```

1          THE CLERK:  September 11th at 12:00.

2          THE COURT:  September 11th at 12:00 Eastern time,

3     does that work for everyone?

4          MR. TIMBERS:  Yes, your Honor.

5          MR. VAN NEST:  That works fine, your Honor.  The

6     11th, a week from Monday, at noon in Boston.

7          THE COURT:  Noon Eastern time, okay, and we'll see

8     where we are at that point.

9          And again, if you haven't figured this out, I'm

10    holding off, I'm reluctant on the Rule 30(b)(6) motion,

11    it seems to me that that would, um -- there's nothing to

12    be gained there, very little to be gained there in terms

13    of, um, producing additional documents I think, it's

14    more, um, directed to how Google complied with its

15    discovery obligations.  I would be surprised if the

16    process of searching, collecting, and producing

17    responsive documents was not undertaken by lawyers,

18    there are at best complex issues of privilege and work

19    product and, um, it's not obvious to me that that is

20    worth the candle.  But again I'm holding off on that

21    until, um, until I'm confident, reasonably confident

22    that, um, the discovery process has been completed and

23    we'll see where we are.

24          All right?

25          MR. VAN NEST:  Your Honor, I just have one

1    question.

2          THE COURT:  Yes.

3          MR. VAN NEST:  And that is we agreed, your Honor

4    entered a pretrial filing scheduled last time, but we

5    don't yet have replacement dates for the pretrial

6    conferences.  We had a couple set when we had our

7    September trial.

8          THE COURT:  Okay.

9          MR. VAN NEST:  I'm not asking for any today, but

10   I'm just reminding the Court that we need a day or two

11   on that.

12         THE COURT:  All right, let me talk to the Clerk

13   about that.  I like, I'm a fan of pretrial management.

14   I'm sure you all have tried cases, particularly in state

15   court, where there's no pretrial management at all, and

16   it's bad.  Okay?

17         MR. VAN NEST:  We agree.

18         THE COURT:  Okay.  Thank you all.

19         (Ends, 12:30 p.m.)

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3

 4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

 5    hereby certify that the forgoing transcript of the

 6    record is a true and accurate transcription of my

 7    stenographic notes, before Chief Judge F. Dennis Saylor,

 8    IV, on Thursday, August 31, 2023, to the best of my

 9    skill and ability.

10

11

12    /s/ Richard H. Romanow 09-05-23
      _____
13    RICHARD H. ROMANOW  Date

14

15

16

17

18

19

20

21

22

23

24

25
```