# EXHIBIT C

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * *
                                 *
SINGULAR COMPUTING, LLC.,        *
                                 * No. C.A. No:
         Plaintiff,              * 1:19-cv-12551-FDS
                                 *
    vs.                          *
                                 *
GOOGLE, LLC.,                    *
                                 *
         Defendant.              *
                                 *
* * * * * * * * * * * * * * * * *

VIDEOCONFERENCE DEPOSITION OF MIRIAM LEESER, Ph.D.,

Deposition taken with all parties appearing remotely,

on Wednesday, March 8, 2023, commencing at 10:59 a.m.

Court Reporter:

Pamela J. Carle, LCR, RPR, CRR

Page 2

```
 1                    APPEARANCES
 2
     For the Plaintiff:
 3
          PRINCE LOBEL TYE
 4        One International Place, Suite 3700
          Boston, Massachusetts 02110
 5        By:  Brian Seeve, Esq.
               Matthias Kamber, Esq.
 6             Cameron Panepinto, Esq.
               Daniel J. McGonagle, Esq.
 7             Matthew Vella, Esq.
          617.456.8000
 8        bseeve@princelobel.com
 9
     For the Defendants:
10
          KEKER VAN NEST & PETERS
11        633 Battery Street
          San Francisco, California 94111
12        By:  Vishesh Narayen, Esq.
               415.773.6635
13             vnarayen@keker.com
14
     Also present:
15
          Brianna Diaz
16        Anant Saraswat
          Nathan Speed
17
```

Page 3

```
 1                       I N D E X
    WITNESS:            MIRIAM LEESER, Ph.D.
 2
    EXAMINATION:                            PAGE
 3  By Mr. Seeve                            4/273
    By Mr. Narayen                          268
 4

 7  EXHIBITS FOR IDENTIFICATION:
 8  LEESER          DESCRIPTION             PAGE
 9
    1     Expert report of Miriam Leeser    12
10
    2     Pavle Belanovic thesis            56
11
    3     Pavle Belanovic/Leeser article    69
12
    4     Leeser article                    167
13
    5     Wang/Leeser paper                 222
14
    6     IEEE Standard for Floating-Point  224
15          Arithmetic
16  7     WILDSTAR™ Hardware Reference      291
            Manual
```

Page 4

    MIRIAM LEESER, Ph.D.,
    having been duly sworn,
    was deposed and testified
    as follows:
    EXAMINATION
BY MR. SEEVE:
    Q.   So good morning, Doctor Leeser.  My name is Brian Seeve; it's nice to meet you remotely.  I'm going to ask you questions at this deposition, and I don't know if you've been deposed before.  Have you?
    A.   No, I have not.
    Q.   Okay.  So I'll go through some of the ground rules, and then we'll begin with the formal testimony.
         So the general idea is that I ask you questions, and your attorney, Vishesh, has the opportunity to object by saying objection, and then you, unless instructed otherwise by your attorney, answer those questions.  Do you understand?
    A.   Yes.
    Q.   Now, this deposition is being videotaped, and you understand that as well, correct?



Page 13
1  Q.  Can you describe in your own words what
2  VFLOAT is?
3      MR. NARAYEN:  Objection, vague.
4  A.  Can you be more specific?
5  BY MR. SEEVE:
6  Q.  I mean, I'm asking you to describe in
7  your own words what one of your own projects is.
8  I can't really be more specific.  What is VFLOAT,
9  I guess is the question.
10     MR. NARAYEN:  Objection, vague.
11 A.  So VFLOAT is a research project I was
12 involved in, as were several of my students, where
13 we looked at variable precisions floating point
14 operations, and particularly mapping them to FPGAs.
15 BY MR. SEEVE:
16 Q.  VFLOAT is a library of VHDL modules, is
17 that right?
18 A.  So there's the VFLOAT project.  Part of
19 that project we made a library of VHDL modules
20 available.  So that is part of the VFLOAT project,
21 yes.
22 Q.  What is the rest of the VFLOAT project?
23     MR. NARAYEN:  Objection, vague.
24 A.  So we use those modules for various
25 different applications.

Page 14
1  BY MR. SEEVE:
2  Q.  So -- I'm sorry.
3  A.  So there's the VFLOAT library, which
4  specifically use those VHDL modules that you talk
5  about, and then there are applications that we take
6  using the VFLOAT library as well.
7  Q.  So is it correct to characterize the
8  VFLOAT library as a tool that can be used to
9  design circuits that can then be implemented on an
10 FPGA?
11 A.  The VFLOAT library is a set of modules
12 that can be used to design circuits that are
13 implemented on an FPGA.
14 Q.  And you're referring to the VFLOAT
15 project as a whole as comprising not only that
16 library, but also the work that you've done using
17 that library to implement various circuits on
18 various FPGAs, is that correct?
19 A.  That's correct.
20 Q.  Okay.  Now, the VFLOAT library is
21 software, is that right?
22 A.  It's a collection of VHDL modules, so
23 VHDL is a hardware description language, so -- but
24 that is code that is designed to map on to
25 hardware.

Page 15
1  Q.  So HDL stands for hardware description
2  language, correct?
3  A.  Correct.
4  Q.  And VHDL is a particular hardware
5  description language, correct?
6  A.  Correct.
7  Q.  And the VFLOAT library is a collection
8  of VHDL files that represent modules for
9  performing arithmetic, right?
10 A.  So the VFLOAT library is a set of
11 modules including modules that perform arithmetic.
12 Q.  It's specifically a set of files that
13 specify modules for performing arithmetic, right?
14 A.  For performing arithmetic and auxiliary
15 functions.
16 Q.  Okay.
17 A.  It's --
18 Q.  Understood.  I'm just drawing a
19 distinction here between modules themselves, which
20 are circuits that are hardware, and the VFLOAT
21 library modules, which are actually computer files
22 which can be used to create hardware.  That's a
23 fair characterization, correct?
24     MR. NARAYEN:  Objection,
25 mischaracterizes the witness' testimony.

Page 16
1  A.  So you're asking about a distinction
2  between software modules and hardware modules, and
3  I never made that distinction.
4  BY MR. SEEVE:
5  Q.  Well, I'm not saying you made the
6  distinction before.  I'm just saying there is a
7  thing -- a hardware module is a physical, tangible
8  thing that exists on an integrated circuit or an
9  FPGA, and it's a circuit.  And a VHDL file, for
10 example, one in the VFLOAT library that defines a
11 module, that is not a circuit, that is a computer
12 file, is that correct?
13     MR. NARAYEN:  Objection,
14 mischaracterizes the witness' testimony.
15 A.  So the VHDL description are software
16 files that describe components -- or, sorry,
17 modules -- that get mapped on to FPGA hardware.  So
18 F -- I still -- I still don't understand your
19 definition of a hardware module.  Like an FPGA,
20 it's programmable hardware.  So it's not -- the
21 hardware module itself isn't a base entity.
22 BY MR. SEEVE:
23 Q.  Okay.  So I, for example, downloaded
24 the VFLOAT library from your website, for example,
25 and I have a directory of VHDL files, and those



Page 41

1 mischaracterizes the witness' prior testimony,
2 asked and answered, argumentative.
3      A.    There are particular circuits designed
4 with the VFLOAT library and downloaded on to the
5 FPGA design and anticipate the claims, and the
6 details are laid out in the report.
7 BY MR. SEEVE:
8      Q.    Okay.  Is one of those circuits the
9 design we talked about, the 61 C2 multipliers?
10      A.    So I discuss in the report how the
11 design with 61 C2 multiplier anticipates some
12 claims.  Like I said, I lay that out in the report.
13      Q.    There are two claims at issue in this
14 case.  You know that, right, Doctor Leeser?
15      A.    That's correct.
16      Q.    And do you believe that the 61 C2
17 multiplier circuit as implemented by you and Pavle
18 Belanovic anticipates both of those claims?
19      A.    Can you explain to me what those two
20 claims are precisely?
21      Q.    Certainly.  So are you aware -- let's
22 mark the patents in suit as exhibits.
23           Rather than doing that, are you aware
24 that this is a patent case involving a claim of
25 patent infringement, Doctor Leeser?

Page 42

1      A.    Yes, I am.
2      Q.    And you are aware of what claims have
3 been asserted against Google in this case, right?
4      A.    So in my report I lay out my response
5 to the claims -- of the asserted claims in section
6 7.  So those are the claims that my report
7 addresses.
8      Q.    Okay.  That's not quite what I asked.
9 I'm sorry, that's not quite what I asked,
10 Doctor Leeser.  I'm just asking if you're aware of
11 what patents have been asserted in this lawsuit,
12 and what particular claims of those patents are at
13 issue in this lawsuit, correct?
14           MR. NARAYEN:  Objection, vague.  Lacks
15 foundation.
16      A.    So I'm aware that this is a patent
17 lawsuit.  I'm aware there are two patents that
18 we're looking at, and two claims which have other
19 claims associated with them, and that's laid out in
20 section 7 of my report.  Those are the two claims
21 that I understand that we're talking about.
22 BY MR. SEEVE:
23      Q.    Understood.  Now, and you've also
24 explained that in order to anticipate a patent
25 claim, you understand that a particular device has

Page 43

1 to satisfy every limitation of that claim,
2 correct?
3           MR. NARAYEN:  Objection, asked and
4 answered, calls for a legal conclusion.
5      A.    I stand by my prior testimony.
6 BY MR. SEEVE:
7      Q.    Again, that's -- that's not an answer.
8 Let me ask the question again.  Let me ask the
9 question again once I log on to the realtime feed,
10 if I can.
11           MR. NARAYEN:  Counsel, if you wouldn't
12 mind refraining from the colloquy and just stick
13 to questions of Doctor Leeser.
14           MR. SEEVE:  Sure.  I just wanted to
15 explain why I'm not asking a question right now,
16 because I'm logging on to the realtime feed.
17           MR. NARAYEN:  No, the editorializing I
18 was referring to saying that that's not an answer.
19 If you could just stick to questions of
20 Doctor Leeser, we would appreciate that.
21 BY MR. SEEVE:
22      Q.    Doctor Leeser, the question that I
23 asked is you've explained -- let me start again.
24 You understand that in order to anticipate a
25 claim, a particular device has to satisfy every

Page 44

1 limitation of that claim, correct?
2           MR. NARAYEN:  Objection, asked and
3 answered, calls for a legal conclusion.
4      A.    Yeah, I'm not going to answer that
5 question.
6 BY MR. SEEVE:
7      Q.    So you're refusing to answer the
8 question, is that correct?  I just want to make
9 sure I understand.
10      A.    Ask the question again.
11      Q.    The question is, you understand that in
12 order to anticipate a claim, a particular device
13 has to satisfy every limitation of the claim,
14 correct?
15           MR. NARAYEN:  Objection, asked and
16 answered, calls for a legal conclusion.
17      A.    That is -- that's my understanding.
18 BY MR. SEEVE:
19      Q.    Okay.  Can you identify any device that
20 you or Pavle Belanovic or any of your graduate
21 students made using the VFLOAT library that
22 anticipates either of the claims asserted in this
23 case?
24           MR. NARAYEN:  Objection, vague,
25 mischaracterizes the witness' report.  The report



Page 45
1  speaks for itself.
2      A.   I would analyze how the design
3  addresses each of the claims in my report.
4  BY MR. SEEVE:
5      Q.   And what design are you referring to?
6           MR. NARAYEN: Objection, asked and
7  answered, vague.
8      A.   Can you ask the question again?
9  BY MR. SEEVE:
10     Q.   You said, I would analyze how the
11  design addresses each of the claims in my report,
12  and I -- my question was, what design are you
13  referring to?
14          MR. NARAYEN: Same objection.
15     A.   I'm just going to stand by the analysis
16  in the report about how the -- about the claims and
17  how VFLOAT anticipates the claims.
18  BY MR. SEEVE:
19     Q.   So you cannot, as you sit here now,
20  identify any particular design that you think
21  satisfies -- excuse me, start again.
22          As you sit here right now, you cannot
23  identify any particular circuit made using the
24  VFLOAT library that you believe anticipates any of
25  the asserted claims, is that correct?

Page 46
1           MR. NARAYEN: Objection.
2  Mischaracterizes the witness' prior testimony,
3  mischaracterizes the witness' report. The report
4  speaks for itself.
5      A.   You just said any of the asserted
6  claims, and I step through it in my report how
7  designs implemented with the VFLOAT library
8  anticipate the -- the claims.
9  BY MR. SEEVE:
10     Q.   So I understand that your report goes
11  limitation by limitation through the asserted
12  claims, and that in each section you make
13  reference to various circuits, some of which you
14  claim meet that limitation, and some of which you
15  just mention.
16          But as you've said, in order to
17  anticipate a claim, there has to be a single one
18  of them that satisfies every single one of the
19  requirements. Can you identify any such circuit
20  as you sit here today?
21          MR. NARAYEN: Objection, vague,
22  compound, mischaracterizes the witness' report,
23  the report speaks for itself.
24     A.   I'll stick with I stand by my report.
25  BY MR. SEEVE:

Page 47
1      Q.   So, Doctor Leeser, I'm asking you a
2  question about what you know right now and can
3  say. Saying that something is disclosed in your
4  report does not -- does not answer that question.
5           If you can't answer a question right
6  now about what you can identify right now as a
7  device that anticipates the claims, that is the
8  answer to my question. The answer would be no.
9           So I'm going to ask you again, can you
10  identify any single circuit that you built using
11  the VFLOAT library and implemented on an FPGA that
12  anticipates the claims?
13          MR. NARAYEN: Objection, asked and
14  answered, argumentative, mischaracterizes the
15  witness' report.
16     A.   So I believe that there are several
17  designs that meet every single one of the
18  limitations, but I am not prepared right now to
19  identify one that does that without further
20  analysis.
21  BY MR. SEEVE:
22     Q.   So you haven't analyzed whether or not
23  these designs actually anticipate the claims;
24  you're saying that further analysis would be
25  required before you could make that determination,

Page 48
1  is that correct?
2      A.   No, that is not correct. I said that I
3  would -- before committing that there is one
4  particular design that anticipates each and every
5  one of the limitations I'd like to do further
6  analysis. So I lay out in the report exactly how
7  the designs anticipate the claims in the patent.
8      Q.   Okay. So let me point you to page 95
9  of your report, paragraph 239.
10     A.   Okay.
11     Q.   Are you there?
12     A.   Yes.
13     Q.   You see how it says, Even if our system
14  containing 61 C2 multipliers is considered or
15  deemed not to anticipate the claim, do you see
16  that sentence?
17     A.   Uh-hum.
18     Q.   Is it fair to say that your report
19  argues that that system does anticipate the claim?
20  That is your argument, correct?
21     A.   So the claim that's being discussed
22  there is, I believe, the claim -- I'm not sure,
23  actually.
24          Not to anticipate the claim with
25  respect to this limitation. I'm not actually sure



Page 49

1  which limitation I'm referring to there.  I believe
2  it's the limitation, let me check, on page 83 which
3  refers to the number of execution units.  On page
4  83.
5      Q.   All right.  So what you're telling me
6  is that you're not prepared to tell me which
7  circuits designed using VFLOAT, if any, meet all
8  of the claim requirements of the asserted claims,
9  correct?
10           MR. NARAYEN:  Objection, asked and
11  answered, mischaracterizes the witness' prior
12  testimony.
13      A.   So I laid out in my report how designs
14  designed with the VFLOAT library anticipate the
15  claims, and I would like to further analyze one
16  particular design against all the claims, but I lay
17  out in the report, the paragraph you referred to,
18  paragraph 239, refers particularly to the
19  limitation regarding the number of LPHDR execution
20  units in the device.
21  BY MR. SEEVE:
22      Q.   All right, okay.  So let me go through
23  that, because I think -- so you said you laid out
24  in your report how designs anticipate the claims.
25  You said you'd like to analyze further one

Page 50

1  particular design against all of the claims.
2           Is it fair to interpret that to say
3  that you talked about how various designs meet
4  individual limitations of the claim, but you
5  analyzed one design that meets all of them,
6  correct?
7           MR. NARAYEN:  Objection, compound,
8  mischaracterizes the witness' testimony.  Brian, I
9  didn't even understand that question.
10           MR. SEEVE:  That is not really the
11  standard, Vishesh.
12           MR. NARAYEN:  It didn't make
13  grammatical sense, I couldn't follow.  If you
14  wouldn't mind reasking it.
15           MR. SEEVE:  So the witness said I laid
16  out in my report how designs designed with the
17  VFLOAT library anticipate the claims, and I would
18  like to further analyze one particular design
19  against all of the claims.  I'm just trying to
20  clarify what that means.
21  BY MR. SEEVE:
22      Q.   What did you mean when you said that?
23      A.   So the report lays out design --
24  circuits designed with a VFLOAT library how they
25  anticipate the claims in the patent.

Page 51

1           And the particular paragraph you asked
2  me to look at particularly refers to the number of
3  units.  I would like to analyze one particular
4  design, the 61 C2 multipliers, take that one,
5  against all of the claim before I go on record
6  saying that that one design addresses all of the
7  limitations.
8      Q.   So as you sit here now without
9  referencing your report further, you don't know
10  whether that design with 61 C2 multipliers
11  satisfies all of the requirements of the claim,
12  you can only speak as to this one requirement that
13  you're looking at right now?
14           MR. NARAYEN:  Objection,
15  mischaracterizes the witness' testimony and her
16  report.
17      A.   So I would like to further analyze one
18  particular design against all the limitations
19  before stating that that particular design
20  anticipates all of the limitations.  I believe
21  that --
22  BY MR. SEEVE:
23      Q.   When you say -- I'm sorry, I have a
24  question about what you mean when you say analyze.
25  Do you mean that you would need to perform further

Page 52

1  analysis to determine whether or not that
2  particular design meets the requirements of the
3  claim?
4           MR. NARAYEN:  Objection, vague.
5      A.   I would like to sit down with every
6  particular limitation and confirm that, in fact,
7  this one design does meet every single limitation
8  before I unequivocally state that this one design
9  anticipates every limitation.
10  BY MR. SEEVE:
11      Q.   So you're saying that at present
12  without, I guess, analysis that you have not yet
13  done, you cannot say whether this design with 61
14  C2 multipliers anticipates the claim?
15           MR. NARAYEN:  Objection, vague,
16  mischaracterizes the witness' prior testimony,
17  asked and answered.
18      A.   My belief is that this one design
19  probably does meet the limitations, but I'm not
20  prepared to go on record stating that without
21  further checking each of the limitations.  So I
22  believe that it does, but it requires further
23  analysis.
24  BY MR. SEEVE:
25      Q.   Okay.  So you believe it probably



Page 53

1 anticipates the claim, that's -- that's your
2 testimony?
3    A.   Yes.
4    Q.   Okay.  So let's talk a little bit about
5 that system, that C2 system with the 61
6 multipliers on it.  And you're not sure whether
7 that system anticipates the claim, but I'm going
8 to ask you some questions about it anyway.  Is
9 that okay?
10         MR. NARAYEN:  Objection, compound.
11 Mischaracterizes the witness' prior testimony.
12   A.   I believe that that system does
13 anticipate all the limitations.  I'd like to do
14 further analysis before I unequivocally state that,
15 and I'm happy to answer more questions about that
16 particular system.
17 BY MR. SEEVE:
18   Q.   I think you said you believe the system
19 probably anticipates though, wasn't that your
20 testimony?
21         MR. NARAYEN:  Objection,
22 mischaracterizes the witness' prior testimony.
23 Asked and answered.
24         MR. SEEVE:  It doesn't mischaracterize
25 the witness' testimony.  It's a direct quote from

Page 54

1 the witness' prior testimony, Vishesh.  If you
2 could keep those objections to where they're
3 appropriate, I think we'll all get through this
4 faster.  Let me reask that question.
5 BY MR. SEEVE:
6    Q.   So I believe your testimony,
7 Doctor Leeser, was that you think the C2 system
8 with the 61 multipliers probably anticipates the
9 claim, right?  Is that correct?
10         MR. NARAYEN:  Same objections.
11   A.   I believe the system with the 61
12 multipliers anticipates all of the claim
13 limitations, but I would like to analyze further
14 before I go on the record stating that that is the
15 case.
16 BY MR. SEEVE:
17   Q.   Okay.  So now I'm going to ask you a
18 few questions about that system that you believe
19 might anticipate the claim.  Is that okay?
20   A.   Yes.
21   Q.   Now, you say in your report that
22 this -- and just for the -- the 61 C2 multiplier
23 system was performed as a test to validate your
24 work, is that right?
25   A.   The 61 C2 multipliers was downloaded on

Page 55

1 the FPGA and tested as part of the research that
2 Pavle Belanovic did for his thesis.
3    Q.   And it was part of an experiment to
4 show how many of a given module could fit on an
5 FPGA, is that right?
6    A.   So it was one of the designs that we
7 downloaded on to the FPGA.  Yes, we were looking at
8 how many designs could fit on to an FPGA.
9    Q.   Okay.  So from now on, just because
10 saying 62 C2 multipliers system is cumbersome, I'm
11 going to refer to that as the C2 multiplier test
12 system.
13         Okay, so when I say C2 multiplier test
14 system, I am referring to the system described in
15 your report created by you and Pavle Belanovic in
16 which you placed 61 C2 multipliers on an FPGA
17 using a WILDSTAR connected to a host workstation.
18 Is that fair?
19   A.   Yes.
20   Q.   Okay.
21   A.   It is 61 multipliers.  You keep saying
22 62, but it's 61.
23   Q.   I'm sorry, it's just C2 and 61, I get
24 confused sometimes.  Maybe I'll just restate that
25 just so we're absolutely clear.

Page 56

1         MR. NARAYEN:  Counsel, it sounds like
2 you're moving on to another topic.
3         MR. SEEVE:  Not really.
4         MR. NARAYEN:  Time for a break?
5         MR. SEEVE:  I mean, if the witness
6 wants to take a break, that's fine, but, I mean we
7 can -- we can break or not.
8         MR. NARAYEN:  Doctor Leeser said a few
9 more minutes is fine.
10         MR. SEEVE:  And, Doctor Leeser, when
11 you want to take a break just say so, and we will.
12         THE WITNESS:  We can keep going.
13         MR. SEEVE:  So I'm going to mark as an
14 exhibit the thesis of Pavle Belanovic as Exhibit 2
15 to this deposition.  Give me a moment.  And
16 momentarily it should show up in that folder.  Let
17 me know when it does.
18 (Leeser Exhibit 2 was marked for identification.)
19   A.   I can see it.
20         MR. SEEVE:  And I'd just like to
21 explain that this copy of Doctor Belanovic's
22 thesis is not the copy Google produced, because
23 the copy Google produced has all the images
24 backward for some reason, but it is the copy that
25 I downloaded from the Northeastern website that is