# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>GOOGLE LLC,<br><br>             Defendant. | Civil Action No. 1:19-cv-12551 FDS<br><br>Hon. F. Dennis Saylor IV |

# DEFENDANT GOOGLE LLC'S OPPOSITION TO SINGULAR'S MOTION *IN LIMINE* NO. 8

## I.  INTRODUCTION

Singular seeks to exclude evidence and testimony regarding the amounts it was paid under its evaluation agreements with ▆▆▆ and ▆▆▆.  There is no basis to do so.  Singular concedes that the agreements themselves are relevant; indeed, both agreements appear on Singular's own exhibit list.  The payment terms in those agreements are no less relevant than the rest of the agreements' terms.  But Singular seeks to redact the prices paid under these agreements, perhaps in the hopes that jurors will infer the redacted payment amounts were large, and thus that Singular had lucrative arrangements with large corporations.  This implication would be prejudicial to Google and confusing to the jury.  But even were that not the case, the amounts paid under the agreements are relevant to issues in this case, including secondary considerations and damages, and therefore there is no basis to exclude them.

## II.  REDACTING THE AGREEMENTS' PAYMENT TERMS WOULD PREJUDICE GOOGLE AND INTRODUCE CONFUSION.

Redacting the payment terms from the ▆▆▆ and ▆▆▆ agreements would be prejudicial to Google and confusing to the jurors.  As courts have recognized, redacted information for relevance[1] within an otherwise relevant document can "breed suspicions," or "deprive the reader of context."  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08 md 1945 (RJH) (DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009).  Here, any such "suspicions" are likely to prejudice Google, because they may lead the jurors to believe, incorrectly, that the amounts are large sums, particularly given that the agreements are with large corporations.  Singular, meanwhile, stands to benefit from this suggestion, which would tend to support its demand for billions of dollars in damages.  Tellingly, this is the only information that Singular has sought to redact on grounds of an alleged lack of relevance, despite that there is

---

[1] To be clear, Singular cites relevance as the basis for redacting the payment terms, *not* confidentiality.

certainly other inconsequential information within the hundreds of trial exhibits on Singular's exhibit list.

Beyond suggesting that Singular had lucrative agreements with ▇ and ▇, there is no other reason Singular would want to redact payment terms from the agreements. Singular asserts that the payment terms "would mislead or confuse the jury," but it provides no explanation to support that assertion. Dkt. 624 (Mot.) at 3. It never explains why these terms would be confusing or misleading, or how redacting those terms would cure that confusion. If anything, presenting jurors with an incomplete licensing agreement would be more likely to confuse jurors, not less. *See Ford v. Marion Cnty. Sheriff's Dep't*, No. 1:15-cv-1989-WTL-DML, 2018 WL 5282949, at *3 (S.D. Ind. Sept. 5, 2018) (refusing to redact documents because it "might be confusing for the jury to see seemingly random redactions in medical records").

In any event, there is no risk of juror confusion stemming from the payment terms. Singular emphasizes that the evaluation agreements are not comparable. But any confusion about the comparability of the evaluation agreements is caused by the agreements themselves—which Singular does not seek to exclude—not the payment terms. Regardless, jurors aren't likely to be confused by the comparability of the ▇ and ▇ agreements. The parties' experts agree that the ▇ and ▇ agreements are not comparable for purposes of the hypothetical negotiation, so there is no risk of them providing conflicting testimony at trial. Furthermore, neither damages expert relies on *any* comparable licenses, so there is no danger that the jurors will mistake the ▇ and ▇ agreements for comparable licenses. Accordingly, there is no reason under Rule 403 that the payment terms should be excluded.

**III.   THE PAYMENT TERMS SPECIFICALLY ARE RELEVANT TO ISSUES IN THIS CASE.**

Singular's argument that the payment terms are irrelevant is also incorrect. Again, Singular concedes that the rest of the agreements are relevant, which undermines its position that

2

a narrow portion of the very same agreement is irrelevant. In any event, the payment terms are relevant to the issues in this case, including secondary considerations and damages.

*First*, the agreements' payment terms are relevant to secondary considerations of non-obviousness. Singular intends to defend the asserted patents' validity by relying on secondary considerations of non-obviousness, which "must be considered when present." *Geo M. Martin Co. v. Alliance Machine Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010). To support its non-obviousness position, Singular points to the success of TPUv2 and TPUv3, which Singular argues "power[s] all of [Google's] major products and services." Ex. 1 (Khatri Rebuttal Rept.) ¶ 253. Google should be entitled to rebut this argument by relying on evidence showing that the S-1, which Singular claims practices its patents, was commercially unsuccessful. The ▆▆▆ and ▆▆▆ licenses—including their payment terms—are relevant to this consideration. *Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1361 (Fed. Cir. 1999) ("[S]ales figures alone are [] evidence of commercial success."); *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 605 (N.D. Cal. 2008) ("[T]he decision by other entities to license a claimed invention can support the inference that the invention is not obvious").[2] Indeed, the agreements' payment terms show how much—or, rather, how little—the companies valued Singular's invention, which is critical to the secondary considerations inquiry. *See* Ex. 2 ¶ 693 (Gustafson report discussing the agreements, "*i.e.*, non commercial licenses," in connection with secondary considerations opinion). *TecSec v. Adobe Inc.*, No. 1:10-CV-115, 2018 WL 11388472, at *8 (E.D. Va. Nov. 21, 2018) (denying motion to exclude "amounts paid" under certain licenses because they are relevant to "secondary considerations of obviousness"). The mere existence of a license, without more context, says very little about whether the S-1 was a commercial success.[3]

---

[2] As the *Rambus* court went on to explain, "[t]his inference requires proof beyond the mere existence of a license for the license to carry persuasive weight in the final obviousness analysis conducted by the court." *Id.* By the same reasoning, here, the mere fact that an agreement existed is insufficient to determine whether Singular's invention was a commercial success. *Id.*

[3] Singular attempts to cast doubt on the relevance of the evaluation agreements by suggesting

3

***Second***, the agreements' payment terms are relevant to damages. Although the experts agree that the ▮▮▮ and ▮▮▮ agreements are not comparable to the one resulting from the hypothetical negotiation, they are nonetheless relevant to other *Georgia Pacific* factors. For example, the eighth *Georgia Pacific* factor relates to the commercial success of products made under the patents, and Google's damages expert specifically considered Singular's evaluation agreements in connection with this factor. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *see* Ex. 4 ¶ 139 & n. 263 (Stamm report) (citing agreements with ▮▮▮ and ▮▮▮ ). The amounts paid under the agreements is directly relevant to this factor. *PalTalk Holdings, Inc. v. Microsoft Corp.*, ., No. 2:06-CV-367 (DF), 2009 WL 10677719, at *2 (E.D. Tex. Mar. 8, 2009) (recognizing that "non-comparable agreements may be relevant to a reasonable royalty assessment under *Georgia–Pacific*"). Indeed, the amount that third parties agreed to pay for access to Singular's practicing product is direct evidence of the commercial success of products made under the patents.

For these reasons, Singular's motion *in limine* should be denied.

Respectfully submitted,

Dated: December 13, 2023    By:   */s/ Nathan R. Speed*
Gregory F. Corbett (BBO #646394)
gcorbett@wolfgreenfield.com
Nathan R. Speed (BBO #670249)
nspeed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
edimarco@wolfgreenfield.com
Anant K. Saraswat (BBO #676048)
asaraswat@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.

---

that ▮▮▮ "never received an S-1 prototype." This statement, for which Singular offers no support, is directly contradicted by evidence in the record, including Dr. Bates's testimony. *See, e.g.*, Ex. 3, Bates Depo. at 107-111 (testifying that ▮▮▮ had access to Singular's S1 under the agreements).

4

600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Robert Van Nest (admitted *pro hac vice*)
rvannest@keker.com
Michelle Ybarra (admitted *pro hac vice*)
mybarra@keker.com
Andrew Bruns (admitted *pro hac vice*)
abruns@keker.com
Vishesh Narayen (admitted *pro hac vice*)
vnarayen@keker.com
Christopher S. Sun (admitted *pro hac vice*)
csun@keker.com
Anna Porto (admitted *pro hac vice*)
aporto@keker.com
Deeva Shah (admitted *pro hac vice*)
dshah@keker.com
Stephanie J. Goldberg (admitted *pro hac vice*)
sgoldberg@keker.com
Eugene M. Paige (admitted *pro hac vice*)
epaige@keker.com
Rachael E. Meny (admitted *pro hac vice*)
rmeny@keker.com
Kaiyi A. Xie (admitted *pro hac vice*)
kxie@keker.com
Eric K. Phung (admitted *pro hac vice*)
ephung@keker.com
Spencer McManus (admitted *pro hac vice*)
smcmanus@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400

Michael S. Kwun (*pro hac vice*)
mkwun@kblfirm.com
Asim Bhansali (*pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
(415) 630-2350

Matthias A. Kamber (*pro hac vice*)

5

matthiaskamber@paulhastings.com
PAUL HASTINGS, LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
(415) 856-7000

Ginger D. Anders (*pro hac vice*)
Ginger.Anders@mto.com
J. Kain Day (*pro hac vice*)
kain.day@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
(202) 220-1100

Jordan D. Segall (*pro hac vice*)
jordan.segall@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
(213) 683-9100

*Counsel for Defendant Google LLC*

## CERTIFICATE OF SERVICE

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                         */s/ Nathan R. Speed*
                                                         Nathan R. Speed