IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGULAR COMPUTING LLC,<br><br>   Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>   Defendant. | C.A. No. 1:19-cv-12551-FDS<br><br>Hon. F. Dennis Saylor IV |

**DEFENDANT GOOGLE LLC'S MOTION TO ESTABLISH
TRIAL PROCEDURES FOR USE OF CONFIDENTIAL INFORMATION**

## **TABLE OF AUTHORITIES**

**CASES**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*,
    2021 WL 5165010 (D. Mass. Nov. 5, 2021) ............................................................................ 2, 3

*Baird v. Blackrock Inst. Trust Co., N.A.*,
    403 F. Supp. 3d 765 (N.D. Cal. 2019) ....................................................................................... 2

*Comput. Scis. Corp. v. Tata Consultancy Servs.*,
    2023 WL 8722033 (N.D. Tex. Dec. 15, 2023) ....................................................................... 2, 3

*FTC v. Standard Fin. Mgmt. Corp.*,
    830 F.2d 404 (1st Cir. 1987) ...................................................................................................... 3

*United States v. Chen*,
    2022 WL 2789557 (N.D. Cal. Jul. 14, 2022) .............................................................................. 3

*Voxer, Inc. v. Meta Platforms, Inc.*,
    No. 20-cv-655 (W.D. Tex. 2022) ............................................................................................... 3

*Wisc. Alumni Res. Found. v. Apple, Inc.*,
    2015 WL 6453837 (W.D. Wisc. Oct. 26, 2015) ........................................................................ 2

Defendant Google LLC ("Google") respectfully requests that the Court establish certain trial procedures to minimize the public disclosure of the following narrowly tailored categories of confidential and highly sensitive information that, if released publicly, would cause significant harm to Google:

(1) Trial exhibits and testimony that discuss specific details of Google's domestic and worldwide TPU deployment data: (a) Google's Total Cost of Ownership ("TCO") and Performance per Total Cost of Ownership ("Perf/TCO") for TPUs, (b) location and volume of TPUs deployed, and (c) operating expenditures ("OPEX") and capital expenditures ("CAPEX") for the TPUs.

(2) Trial exhibits and testimony that discuss the CAPEX and OPEX for Google's data centers.

(3) Trial exhibits and testimony that include source code or technical specifications related to the TPU chips.[1]

These categories of data are confidential and highly sensitive at Google and are not publicly disclosed. Dissemination of TCO and Perf/TCO data could damage Google's ability to negotiate with TPU suppliers by providing suppliers with information about Google's total costs associated with its TPU chips. It could also inflict competitive harm on Google by impacting its ability to compete for limited component supply and affecting its own pricing for Cloud TPU, Google's service that rents out TPUs to customers for machine learning workloads. Disclosure of information about the location and volume of TPU deployments could allow Google's competitors

---

[1] While Google presently seeks only to seal trial exhibits and testimony as to this category of information, Google reserves the right to seek to turn off public monitors or caution witnesses about discussing source code or technical specifications during trial, depending on the scope of the information being discussed.

to evaluate the location and amount of Google's investments in machine learning applications and adjust their own investment and deployment plans accordingly. Disclosure of CAPEX and OPEX data for TPUs could allow Google's competitors to infer volumes of TPU deployments and gross margins on those chips. Disclosure of CAPEX and OPEX for Google's data centers could result in damage to Google's negotiating position by providing negotiating entities with insight into Google's actual or projected costs for the data centers. Public access to source code and technical specifications for the TPUs could allow competitors to replicate Google's technology or appropriate Google's trade secrets. Courts routinely seal these types of financial and technical information, including at trial, recognizing the competitive and business harm resulting from public disclosure of the information. *See, e.g.*, *Wisc. Alumni Res. Found. v. Apple, Inc.*, 2015 WL 6453837, at *1 (W.D. Wisc. Oct. 26, 2015) (granting motion to seal trial exhibits containing sensitive financial information and source code); *Comput. Scis. Corp. v. Tata Consultancy Servs.*, 2023 WL 8722033, at *1 (N.D. Tex. Dec. 15, 2023) (granting motion to seal trial exhibits containing "confidential commercial information" and source code); *see also Abiomed, Inc. v. Maquet Cardiovascular LLC*, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (granting motion to seal financial information, including revenues for certain products); *Baird v. Blackrock Inst. Trust Co., N.A.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) (granting motion to seal "confidential business and financial information").

To streamline the parties' preparation for trial and the presentation of evidence at trial, Google proposes the following procedures for use of these narrowly tailored categories of highly sensitive information at trial.

First, the Court should order that exhibits and portions of the trial transcript containing the three categories of information specified above be provisionally sealed until a motion to seal is

adjudicated post-trial. Google proposes to submit such a motion supported by a client declaration establishing the "compelling reasons" justifying permanent sealing of this material no later than 30 days following entry of judgment in this case. *See Abiomed, Inc.*, 2021 WL 5165010, at *1 (citing *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). Using this procedure would allow the parties to focus on presenting their cases to the jury, rather than spending time litigating serial sealing issues during the pendency of trial.[2] Provisionally sealing exhibits and trial transcripts until adjudication of a post-trial motion to seal is a common procedure used by courts in cases implicating sensitive financial and technical information. For example, in *United States v. Chen*, the court provisionally sealed all admitted exhibits and trial transcripts until it resolved a post-trial motion to seal brought by the former employer of the defendant who stood accused of theft of trade secrets. 2022 WL 2789557, at *1 (N.D. Cal. Jul. 14, 2022). Within weeks of the conclusion of trial, the former employer filed a motion to seal identifying specific portions of exhibits and lines of the trial transcript discussing sensitive financial and technical information that it was seeking to seal. *Id.* The court granted the motion to seal, ordered that certain exhibits and lines of trial testimony be sealed, and lifted the provisional seal on the remaining exhibits and trial transcripts. *Id.* at **1–2. Other courts have employed similar procedures in cases involving sensitive financial and technical information. *See, e.g.*, *Voxer, Inc. v. Meta Platforms, Inc.*, No. 20-cv-655 (W.D. Tex. 2022), Dkt. 361 (granting post-trial motion to seal select trial exhibits); *Comput. Scis. Corp.*, 2023 WL 8722033, at *1 (granting post-trial motion to seal trial exhibits after

---

[2] Identifying all instances of this information is impractical now because Singular has added hundreds of exhibits to its exhibit list and the confidential information listed above often appears only in small portions of large documents, some of which span hundreds of pages. The more efficient course is to identify the categories of information above and then litigate which specific portions of exhibits and trial testimony should remain sealed after trial through a narrowly tailored motion to seal.

3

the court had "provisionally sealed the documents during the duration of trial and informed the parties it would revisit whether the documents should permanently remain under seal following trial").

Second, when pages of exhibits that contain the first two categories of information are displayed at trial (whether as admitted exhibits or impeachment evidence), the Court should order that monitors facing the public gallery be turned off (which can be effectuated by powering them off, if other means are unavailable). Document monitors facing the Court (i.e., the bench), the jurors, and all counsel would still display the document, but shutting off gallery-facing monitors would prevent disclosure of the sensitive information to the public. In the alternative, if shutting off public-facing monitors is not technologically feasible, for documents containing these categories of information, Google proposes using paper exhibits shown only to the Court, jurors, counsel, and the witness.

Third, when witnesses are discussing the contents of any document containing the first two categories of information listed above, witnesses should be cautioned by the examining attorney to avoid directly stating the data in the categories above. For example, if a witness were asked a question calling for a response that would require reciting Google's TCO for TPUv2 from a document, the witness would be cautioned by counsel to answer the question by reference to a location of the number in the document (e.g., "the number in the third row in the table on this page") rather than stating the TCO number itself, which would be sufficient to identify the number for the jury's comprehension of the evidence. In combination with the procedures for exhibits discussed above, this approach ensures that highly sensitive data is not disclosed to the public through testimony.

The protocols that Google requests will neither affect the merits of Singular's presentation to the jury nor otherwise prejudice Singular. Instead, these procedures ensure that the parties can present their evidence and arguments to the jury with safeguards to prevent significant harm to Google.

For the foregoing reasons, Google requests that the Court approve these trial procedures for the use of those categories of confidential, highly sensitive information.

Respectfully submitted,

Dated: December 29, 2023       By:    */s/ Nathan R. Speed*
Gregory F. Corbett (BBO #646394)
gcorbett@wolfgreenfield.com
Nathan R. Speed (BBO #670249)
nspeed@wolfgreenfield.com
Elizabeth A. DiMarco (BBO #681921)
edimarco@wolfgreenfield.com
Anant K. Saraswat (BBO #676048)
asaraswat@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
Fax: (617) 646-8646

Robert Van Nest (admitted *pro hac vice*)
rvannest@keker.com
Michelle Ybarra (admitted *pro hac vice*)
mybarra@keker.com
Andrew Bruns (admitted *pro hac vice*)
abruns@keker.com
Vishesh Narayen (admitted *pro hac vice*)
vnarayen@keker.com
Christopher S. Sun (admitted *pro hac vice*)
csun@keker.com
Anna Porto (admitted *pro hac vice*)
aporto@keker.com
Deeva Shah (admitted *pro hac vice*)
dshah@keker.com
Stephanie J. Goldberg (admitted *pro hac vice*)
sgoldberg@keker.com
Eugene M. Paige (admitted *pro hac vice*)
epaige@keker.com

5

Rachael E. Meny (admitted *pro hac vice*)
rmeny@keker.com
Eric K. Phung (admitted *pro hac vice*)
ephung@keker.com
Kaiyi A. Xie (admitted *pro hac vice*)
kxie@keker.com
Spencer McManus (admitted *pro hac vice*)
smcmanus@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400

Michael S. Kwun (admitted *pro hac vice*)
mkwun@kblfirm.com
Asim M. Bhansali (admitted *pro hac vice*)
abhansali@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Telephone: (415) 630-2350

Matthias A. Kamber (admitted *pro hac vice*)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Fax: (415) 856-7100

Ginger D. Anders (admitted *pro hac vice*)
Ginger.Anders@mto.com
J. Kain Day (admitted *pro hac vice*)
Kain.Day@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Tel: (202) 220-1100

Jordan D. Segall (admitted *pro hac vice*)
Jordan.Segall@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Tel: (213) 683-9100

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                                                   */s/ Nathan R. Speed*
                                                                                   Nathan R. Speed