# Exhibit 1

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS



    SINGULAR COMPUTING LLC,        )
                                   )
                 Plaintiff         )  Civil Action
                                   )
                                   )  No. 19-12551-FDS
    vs.                            )
                                   )
    GOOGLE LLC,                    )
                 Defendant         )


    BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV



                DAY 2 OF INITIAL PRETRIAL CONFERENCE



           John Joseph Moakley United States Courthouse
                          1 Courthouse Way
                         Boston, MA 02210



                        December 21, 2023
                            2:00 p.m.





                    Valerie A. O'Hara, FCRR, RPR
                       Official Court Reporter
           John Joseph Moakley United States Courthouse
                          1 Courthouse Way
                         Boston, MA 02210
                     E-mail:  vaohara@gmail.com
```

1   know, where we talked to Bates, and then we talked to the
2   lawyer.  It seems to me that that is problematic.  Yes, that
3   doesn't directly elicit the privilege because you're not
4   actually getting the contents of the communication, but what
5   inference are you asking the jury to draw after you talked
6   to Bates, you talked to the lawyer that, you know, you must
7   have done something wrong, worried they were too close to
8   the line, it might have been simple advice, hey, what can't
9   we do and not do with this, who knows, but you're trying to
03:46PM 10   draw an inference from the fact that they sought advice of
11   counsel within some reasonably short amount of time after
12   talking to Bates, and I think that that is -- well, it
13   doesn't directly elicit privilege information.
14          I think it's problematic.  I guess I'll call it
15   Rule 403 because you're seeking to draw an adverse issue
16   simply from the consultation with counsel, and I think that
17   that, even though it's a civil case, I think that's
18   problematic.
19          The business about the knowledge of the existence
03:47PM 20   of patents seems to me to be different.  I don't think
21   there's a claim of privilege there, just read an excerpt
22   from a deposition, and it seems to me that is different, and
23   I want to explore that a little bit.
24          I mean if I -- going back to this timetable, so the
25   patent issues in 2015, and Google says counsel becomes aware

|   |   |
|---|---|
| 1 | in February 2017.  If counsel learns at a meeting, let's |
| 2 | say, counsel learns for the first time in 2017 that the |
| 3 | Singular patents exist but also learns in the same meeting |
| 4 | that he a tech person has known about it for a year, that's |
| 5 | something entirely different, and could there not be subject |
| 6 | matter waiver as to that conversation? |
| 7 | Ms. Shah, let me -- so, Ms. Shah, I'm with you on |
| 8 | this business of drawing the adverse inference simply from |
| 9 | the fact of communicating with counsel, but I want to know |
| 03:48PM 10 | the boundaries here what you think is in or out of bounds in |
| 11 | terms of Google's knowledge of the existence of the patent. |
| 12 | MS. SHAH:  So, your Honor, Google's knowledge of |
| 13 | the existence of the patent is in a rogue response clearly. |
| 14 | There's a statement of when Google about learned it, when |
| 15 | Ms. Tornabene learned about it, and so that raw response |
| 16 | itself, you know, that's not what we're talking about with |
| 17 | this motion. |
| 18 | So that's something that the existence of the |
| 19 | patents and when Google first learned about it, it's clear |
| 03:49PM 20 | enough without getting into any attorney-client specific |
| 21 | communication. |
| 22 | THE COURT:  Well, I thought there was a claim of |
| 23 | privilege as to how the lawyer learned about the patent, |
| 24 | that she was at a meeting and learned about it, and I |
| 25 | thought there was a claim of privilege as to that. |

1     MS. SHAH: Your Honor, I'm not sure that the
2 testimony that Mr. Timbers is referring to is as clean as
3 her saying I was in a specific meeting, and there were other
4 things we discussed in the meeting, and, to be clear, at
5 that point --
6     THE COURT: No testimony is ever as clean, as I
7 think we can all agree on that.
8     MS. SHAH: But I think once we getting into the
9 specifics of questions that were asked of her related to
10 anything either during that meeting or after that meeting,
11 we're now getting into the same vein of issues that are
12 covered by privilege and should remain covered by privilege.
13     I don't think there's a waiver because I'm not sure
14 there's a specific meeting. It might have been an email or
15 something else, I don't know, but, your Honor, this is
16 exactly where the *Knorr-Bremse* case comes in, which is that
17 for willful blindness or willfulness, the fact that an
18 attorney was contacted is exactly what the Federal Circuit
19 has said is a problem under 403, and so that's the only
20 statement of relevance that Mr. Timbers has given.
21     That's the only thing that they've talked about,
22 and the case is so on point that when that information is
23 being used to show that there was willfulness because you
24 contacted a lawyer, you had a conversation with a lawyer,
25 then that's when these communications are not -- they're

1 especially fraught for 403 reasons, and so whether we -- I
2 don't think there's a question of waiver here, your Honor,
3 but, separately, to any relevance that comes from that
4 particular conversation that's covered by the case law is
5 particularly problematic.
6     THE COURT: Mr. Timbers.
7     MR. TIMBERS: Yeah. What I read to you is actually
8 in Google's brief, okay, so I'm unclear about whether -- it
9 sounds in the brief like they think this is inappropriate
10 for the jury to hear.
11     The question: "How did you become aware?" And the
12 answer, "In business discussions," where she doesn't say
13 anything about the content, and then asked, "Did you become
14 aware of them as a result of being given, did somebody give
15 you the patent," right? No content requested, and then
16 because no content is requested, we're not asking, the
17 question doesn't really raise any issues of privilege. The
18 fact that privilege is mentioned by the witness is a
19 separate issue.
20     I don't see how that -- that goes right to the very
21 question: "How did you find out about the patent?" That's
22 part of the story, and that's relevant to the story of
23 willfulness. I don't see how we get beyond that. And we're
24 not asking for an inference that, therefore, willfully
25 infringed because somebody told her about the patent, or not

|   |   |
|---|---|
| 1 | told her, handed her the patent, or she found out about the |
| 2 | patent. |
| 3 | That's just the story of that's how I found out |
| 4 | about the patent, and that's actually an important issue on |
| 5 | both sides because we've heard a million times today about |
| 6 | how Google found out in 2017, and this is how it happened. |
| 7 | I don't know how the jury shouldn't hear that. |
| 8 | THE COURT: Ms. Shah. |
| 9 | MS. SHAH: Your Honor, if I may briefly respond, |
| 03:52PM 10 | the only thing I would say is that the only relevance that's |
| 11 | been given is exactly what has been prohibited by the |
| 12 | Federal Circuit on this issue, and so if the relevance is |
| 13 | when Google found out, we can get that information in simply |
| 14 | through the date that's in the rogue response. |
| 15 | That's information that can come in in other ways, |
| 16 | but to ask for it to be in this specific way where there is |
| 17 | a risk of unfair prejudice, and there's no other inference |
| 18 | here that the jury would make other than something that |
| 19 | would be an adverse inference or an unfair inference because |
| 03:52PM 20 | we can't get into the details of what happened during that |
| 21 | conversation. |
| 22 | There's no reason, if this is a fact we need to |
| 23 | stipulate to, your Honor, that's something else that we can |
| 24 | discuss, but to have this come in and the only way come in |
| 25 | through references to attorney-client communications, I |

1    think that's highly problematic, and that's what the case
2    law specifically addresses.
3            THE COURT: All right. Here's where I'm going to
4    leave this one. The fact that people met with attorneys
5    without more for the purposes of seeking advice, I'm not
6    going to permit, even without revealing the contents of that
7    communication because, again, it seems to me that the
8    purpose of that evidence is to permit improperly an
9    inference that they thought they must have been doing
10   something wrong or, you know, it's in some sense worried or
11   concerned about the legality of their conduct, and I'm not
12   going to permit that.
13           It seems to me that it is quite separate, and I'm
14   not sure I fully understand it, and maybe I need something
15   supplemental here, I don't know. The knowledge -- how
16   Google came to know of the existence of the patent, since
17   she testified about that, there is no claim of privilege to
18   that, and the subject matter waiver is not all
19   communications with Google about the patent, but the
20   circumstances under which Google came to have knowledge of
21   the existence of the patent, there might be subject matter
22   waiver.
23           Now, it could be, you know, that she's in a
24   meeting, and, again, somebody says, hey, I just, you know,
25   learned the day before yesterday about the patent, here it

1    is.  If she testifies I learned about the existence of the
2    patent at a meeting with business people, you know, maybe
3    there's a subject matter waiver there, I don't know, but
4    that's a separate issue from I think everything else we're
5    talking about.
6              Again, I'm not going to permit the testimony we
7    talked to Dr. Bates, and then, you know, I talked to the
8    lawyer, and then Singular gets to argue, oh, you must have
9    been worried or you wouldn't have consulted a lawyer.  I'm
03:54PM 10   not going to permit that.  I think that unfairly burdens the
11   privilege, and if nothing else, is problematic under
12   Rule 403, but I'm not sure I fully understand this issue of
13   when and how Google learned of the existence of the patent
14   and whether any or all of that is privileged, and so maybe I
15   just need some supplemental briefing on that topic.
16             MS. SHAH:  Understood, your Honor.
17             THE COURT:  A stipulation might work, I don't know,
18   but that's how I see it, but maybe seeing is not quite the
19   right verb here, that's how I think I see it, how about
03:55PM 20   that?
21             MR. TIMBERS:  Fair enough, your Honor.
22             MS. SHAH:  Your Honor, we can provide supplemental
23   briefing on that.
24             MR. TIMBERS:  As I understand it, this motion has
25   nothing to do with communications that Dr. Bates was himself

1        C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS ) ss.

5    CITY OF BOSTON )

6             I do hereby certify that the foregoing transcript,

7    Pages 1 through 117 inclusive, was recorded by me

8    stenographically at the time and place aforesaid in Civil

9    Action No. 19-12551-FDS, SINGULAR COMPUTING LLC vs. GOOGLE LLC

10   and thereafter by me reduced to typewriting and is a true and

11   accurate record of the proceedings.

12             Dated December 23, 2023.

13                       s/s Valerie A. O'Hara
                         _____
14                       VALERIE A. O'HARA
                         OFFICIAL COURT REPORTER
15

16

17

18

19

20

21

22

23

24

25